# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| **In re:** | § § § § Chapter 11 |
| **SERTA SIMMONS BEDDING, LLC, et al.,** | § § Chapter 11 |
| Debtors. | § § **Case No. 23-90020 (DRJ)** § |
| | **(Jointly Administered)** |

| | |
|---|---|
| **SERTA SIMMONS BEDDING, LLC, INVESCO SENIOR SECURED MANAGEMENT, INC., CREDIT SUISSE ASSET MANAGEMENT, LLC, BOSTON MANAGEMENT AND RESEARCH, EATON VANCE MANAGEMENT, AND BARINGS LLC,**<br><br>         **Plaintiffs,**<br><br>                 v.<br><br>**AG CENTRE STREET PARTNERSHIP L.P., AG CREDIT SOLUTIONS NON-ECI MASTER FUND, L.P., AG SF MASTER (L), L.P., AG SUPER FUND MASTER, L.P., SILVER OAK CAPITAL, L.L.C., ASCRIBE III INVESTMENTS, LLC, COLUMBIA CENT CLO 21 LIMITED, COLUMBIA CENT CLO 27 LIMITED, COLUMBIA FLOATING RATE INCOME FUND, A SERIES OF COLUMBIA FUNDS SERIES TRUST II, COLUMBIA STRATEGIC INCOME FUND, A SERIES OF COLUMBIA FUNDS SERIES TRUST I, CONTRARIAN CAPITAL FUND I, L.P., CONTRARIAN CENTRE STREET PARTNERSHIP, L.P., CONTRARIAN DISTRESSED DEBT FUND, L.P., GAMUT CAPITAL SSB, LLC, LCM XXII LTD., LCM XXIII LTD., LCM XXIV LTD., LCM XXV LTD., LCM 26 LTD., LCM 27 LTD., LCM 28 LTD., NORTH STAR DEBT HOLDINGS, L.P., SHACKLETON 2013- III CLO, LTD., SHACKLETON 2013-IV-R CLO, LTD., SHACKLETON 2014-V-R CLO, LTD., SHACKLETON 2015-VII-R CLO, LTD., SHACKLETON 2017-XI CLO, LTD., Z CAPITAL CREDIT PARTNERS CLO 2018-1 LTD., AND Z CAPITAL CREDIT PARTNERS CLO 2019-1 LTD.**<br><br>         **Defendants.** | **Adversary No. 23-09001** |

# SERTA SIMMONS BEDDING, LLC'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Serta Simmons Bedding, LLC (the "**Company**") respectfully submits this Statement of Uncontroverted Facts in support of its Motion for Summary Judgment declaring (i) that the recapitalization transaction that the Company entered into in 2020 (the "**Transaction**") was permitted under the term loan agreement dated November 8, 2016 (the "**Term Loan Agreement**"), (ii) that the Company did not breach the implied covenant of good faith and fair dealing in entering the Transaction; and (iii) that North Star is a Disqualified Institution under the Term Loan Agreement and therefore not allowed to hold First Lien Loans.

**Serta Simmons Bedding**

1. The Company, together with its subsidiaries and affiliates, is one of the leading manufacturers and distributors of mattresses in North America, and owns and manages some of the best-selling bedding brands in the mattress industry: Serta®, Beautyrest®, Simmons®, and Tuft & Needle®. ECF 66 ¶ 30.

2. The Company distributes its brands through national, hospitality, and regional and independent retail channels as well as through direct-to-consumer channels. ECF 1 ¶ 29.

**Serta Simmons Bedding's Pre-Transaction Capital Structure**

3. The Company was a party to a first lien term loan agreement, dated as of November 8, 2016 (the "**Term Loan Agreement**"), that provided for $1.95 billion in first lien term loans ("**First Lien Term Loans**"). ECF 1-1.

4. The Company was a party to a second lien term loan agreement, dated as of November 8, 2016, that provided for $450 million in second lien term loans ("**Second Lien Term Loans**"). Ex. 1.

5. The Company was a party to an agreement providing it a $225 million asset-based revolving credit facility, dated as of November 8, 2016. Ex. 2.

**Serta Simmons Bedding Solicits and Negotiates Potential Refinancing Transactions**

6. In early 2020, as COVID-19 spread throughout the United States, the Company began exploring potential alternatives for raising liquidity and reducing its debt and interest expense, including potential refinancing transactions. ECF 1 ¶¶ 32-33.

7. The Board of Managers of Dawn Intermediate, LLC (the Company's parent) formed an independent finance committee and appointed two new independent directors to serve on the committee (the "**Independent Finance Committee**"). Ex. 3.

8. The Independent Finance Committee was tasked with evaluating potential refinancing transactions and ultimately providing the Dawn Intermediate Board of Managers with a recommendation on whether to proceed with a particular refinancing transaction. *Id.*

9. On June 3, 2020, the Dawn Intermediate Board of Managers delegated to the Independent Finance Committee full authority to authorize the Company to enter into a refinancing transaction. ECF 1 at n.3; Ex. 4.

10. The Company, through its outside advisor Evercore Inc. ("**Evercore**"), solicited proposals from and negotiated with numerous lender groups, including a group holding the majority of the Company's debt (the "**PTL Lenders**") and a group including North Star Debt Holdings, L.P. (an affiliate of Apollo Global Management, Inc.), AG Centre Street Partnership L.P. and other entities affiliated with Angelo Gordon, and Gamut Capital SSB, LLC, among others (the "**Drop-Down Group**"). Ex. 5.

11. Evercore also solicited proposals from and negotiated with lenders outside of the Company's capital structure, as well as with other of the Company's existing lenders, including Barings LLC ("**Barings**"), Oaktree Capital Management ("**Oaktree**"), and Sixth Street Partners ("**Sixth Street**"). *Id.*

12. In total, the Company negotiated with lenders holding over 70% of the Company's existing debt. Ex. 6.

13. The Independent Finance Committee considered each of the proposals that the Company received from the market, but the decision ultimately came down to the proposals from the PTL Lenders and the Drop-Down Group. *Id.*

14. The Independent Finance Committee voted to approve the recapitalization transaction proposed by the PTL Lenders (the "**Transaction**") because it offered the best holistic financing solution for the Company. *Id.*

15. The Company issued a press release on June 8, 2020, announcing it had entered into a transaction support agreement with the PTL Lenders to effectuate the Transaction. Ex. 7.

16. Prior to the Transaction closing, Barings, Oaktree, and TPG joined the PTL Lender's proposal and participated in the Transaction. Ex. 8.

17. The PTL Lenders held more than 50% of the Company's existing debt. Ex. 6.

**The Terms of the Transaction**

18. The Transaction provided for a new super-priority term loan facility with two tranches: (i) a $200 million new money tranche and (ii) a debt-for-debt exchange tranche, pursuant to which approximately $875 million of priority terms loans were issued as consideration for the open market purchase of approximately $1.2 billion of existing First Lien Term Loans and Second Lien Term Loans. Ex. 7.

19. The Transaction employed an exchange ratio of $74 of super-priority "second out" debt in exchange for each $100 of Existing First Lien Term Loans and $39 of super-priority "second out" debt in exchange for each $100 of Existing Second Lien Term Loans. Ex. 8.

20. The Transaction reduced the Company's debt by approximately $400 million, lowered the Company's all-in interest expense and increased the Company's cash position to $300 million. Ex. 7.

21. The Transaction also created new collateral for the benefit of all the existing lenders, including Defendants, which secured both the new priority term loans and the existing first lien loans *pari passu*. Ex. 9.

**The Alternate Transaction**

22. The Drop-Down Group put forth a proposed refinancing transaction to the Company in May 2020. Ex. 6.

23. The Drop-Down Group's proposal: (1) provided $200 million in new money and (2) exchanged approximately $630 million of their existing debt for approximately $470 million of new debt. *Id.*

24. The Drop-Down Group's proposal also called for the creation of a new bankruptcy remote subsidiary that would have been assigned the Company's valuable intellectual property (which secured the Company's existing First Lien debt). Certain real estate assets would have also been moved to this bankruptcy remote entity, and a pledge of the stock of Serta, Inc. would have been made to this new bankruptcy remote entity. This new bankruptcy remote entity would have been the Guarantor for the Drop-Down Group's new debt. *Id.*

25. The Drop-Down Group proposal would have increased the Company's total debt by $38 million and increased the Company's total interest payments by approximately $37 million. *Id.*

**The Company Amends the Term Loan Agreement to Effectuate the Transaction**

26.  To effectuate the Transaction, the Company and the PTL Lenders entered into certain amendments to the Term Loan Agreement pursuant to section 9.02(b) of the Term Loan Agreement. ECF 1-2.

27.  The Company entered into a separate Super-Priority Term Loan Agreement, dated June 22, 2020 (the "**PTL Credit Agreement**"). Ex. 10.

28.  The Company entered into an Open Market Purchase and Cashless Exchange Agreement, dated June 22, 2020 (the "**Exchange Agreement**"). ECF 1-3.

29.  The Company entered into a First Lien Intercreditor Agreement, dated June 22, 2020. Ex. 9.

30.  The Transaction closed on June 22, 2020. Ex. 11.

**Legal Challenges to the Transaction**

31.  On June 11, 2020, the Drop-Down Group filed a complaint in New York state court seeking a temporary restraining order and preliminary injunction to halt the Transaction. Ex. 12.

32.  On June 18, 2020, LCM's collateral manager simultaneously sought to intervene in the Drop-Down Group Action and filed its own separate complaint in New York state court on behalf of LCM entities that are issuers of collateralized loan obligations ("**LCM CLOs**"). Ex. 13.

33.  The New York state court denied the Drop-Down Group's request for a preliminary injunction on June 19, 2020. Ex. 14.

34.  The Drop-Down Group moved to voluntarily discontinue their New York state court action over the Company's objection on July 10, 2020. Ex. 15.

35.  The New York state court granted the Drop-Down Group's motion to voluntarily discontinue on November 30, 2020. Ex. 16.

36. LCM's collateral manager withdrew its request to intervene in the Drop-Down Group New York state action and voluntarily discontinued their standalone action without prejudice on July 2, 2020. Ex. 17.

37. On July 2, 2020, a subgroup of LCM CLOs holding approximately $7.4 million in First Lien Term Loans, filed a new suit in the Southern District of New York against the Company and the PTL Lenders, alleging the Transaction breached the Term Loan Agreement. Ex. 18.

38. The Southern District of New York dismissed that action for lack of subject matter jurisdiction on March 10, 2021. Ex. 19.

39. The same subgroup of LCM CLOs filed a new action in the Southern District of New York on May 4, 2021, naming only the Company as a defendant. Ex. 20.

40. The Southern District of New York denied the Company's motion to dismiss in that action on March 29, 2022. Ex. 21.

41. Almost two years after voluntarily discontinuing their lawsuit, the Drop-Down Group refiled a complaint against the Company and the PTL Lenders asserting claims arising out of the Transaction in New York state court on November 3, 2022. Ex. 22.

42. The Company filed for chapter 11 protection in this Court on January 23, 2023. Ex. 23.

43. The Drop-Down Group removed the portion of their New York state court case against the PTL Lenders to the Southern District of New York on January 23, 2023 (shortly after the Company filed for chapter 11). Ex.24.

**North Star Attempted Purchase of First Lien Term Loans**

44. Defendant North Star does not hold any of the Company's debt and is not a party to the Term Loan Agreement. Ex. 8.

6

45. Defendant North Star attempted to purchase First Lien Term Loans on the secondary market in March 2020.  Ex. 25.

46. Although North Star attempted to settle the trades and submitted assignment agreements to the Agent, the trades did not settle.  ECF 66 ¶ 290.

47. Defendant North Star is an affiliate of Apollo Global Management, Inc.  *Id.* ¶ 23.

48. Apollo Investment Corporation is a Disqualified Institution.  Ex. 26.

49. The Company notified the Agent that Defendant North Star was a Disqualified Institution (as that term is defined in the Term Loan Agreement).  Ex. 27.

Dated: New York, New York
February 24, 2023

Respectfully submitted,

*/s/ David J. Lender*
WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
David J. Lender (admitted *pro hac vice*)
Alexander W. Welch (admitted *pro hac vice*)
Luna N. Barrington (admitted *pro hac vice*)
Richard D. Gage (admitted *pro hac vice*)
Taylor B. Dougherty (admitted *pro hac vice*)
Joseph R. Rausch (admitted *pro hac vice*)
Michael P. Goodyear (admitted *pro hac vice*)
Nicholas J. Reade (admitted *pro hac vice*)
767 Fifth Avenue
New York, NY 10153
Tel:   (212) 310-8000
Fax:   (212) 310-8007
Email: Ray.Schrock@weil.com
       David.Lender@weil.com
       Alexander.Welch@weil.com
       Luna.Barrington@weil.com
       Richard.Gage@weil.com
       Taylor.Dougherty@weil.com
       Joseph.Rausch@weil.com
       Michael.Goodyear@weil.com
       Nick.Reade@weil.com

Gabriel A. Morgan
Stephanie N. Morrison
700 Louisiana Street, Suite 1700
Houston, TX 77002
Tel: (713) 546-5040
Fax: (713) 224-9511
Email:  Gabriel.Morgan@weil.com
        Stephanie.Morrison@weil.com

*Proposed Attorneys for Serta Simmons Bedding, LLC, as debtor and debtor-in-possession*