# Exhibit 13

Case 23-09001   Document 70-9   Filed in TXSB on 02/24/23   Page 2 of 8

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

North Star Debt Holdings, L.P., Silver Oak
Capital, L.L.C., AG Credit Solutions Non-ECI
Master Fund, AG Centre Street Partnership
L.P., AG Super Fund Master, L.P., and Grant
Capital SSB, LLC,

                           Plaintiffs,

            v.

Serta Simmons Bedding, LLC, Advent
International Corporation, Eaton Vance Corp.,
Invesco Ltd., Credit Suisse Group AG, Barings
LLC, and Does 1-50,

                           Defendants,


 LCM Asset Management LLC,

                Proposed-Intervenor.

Index No. 652243/2020

Commercial Division

Part 48, Justice Masley

**MEMORANDUM IN SUPPORT OF**
**<u>LCM ASSET MANAGEMENT LLC'S MOTION TO INTERVENE</u>**

Proposed-Intervenor LCM Asset Management LLC ("LCM") submits this memorandum of law in support of its motion to intervene.

## PRELIMINARY STATEMENT

Two days ago, the Court held a hearing on an application for a temporary restraining order to enjoin a proposed recapitalization that would create super-priority debt and subordinate the rights and liens of Serta's first-lien debtholders (the "Proposed Transaction"). LCM, a manager of collateralized debt obligations ("CLOs") that have long held Serta debt, agrees with Plaintiffs that the Proposed Transaction is unlawful and will cause irreparable harm to the first-lien debt-holders, including Plaintiffs, LCM, and other minority first-lien lenders, and that it should be enjoined.

Although LCM initially believed Plaintiffs were fully capable of representing the rights of Serta's minority lenders, LCM found intervention necessary upon reviewing the papers filed by Defendants, and their heavy emphasis on Plaintiffs' supposed "unclean hands." According to Defendants, Plaintiffs have "unclean hands" because they "became [first-lien] lenders only three months ago, and only for the purpose of positioning themselves for a deal designed to take advantage of Serta's financial challenges solely for their own benefit." Lender Defendants' Opp. to Motion for TRO at 21, Doc. No. 29 (June 16, 2020).

Defendants can level no similar arguments against LCM. LCM purchased Serta debt on the open market starting in 2016, and it has been a first-lien lender ever since. Most of its purchases took place over two years ago, at or near par value. LCM did not engage in any private conversations with Serta about restructuring its debt. It was not privy to any such conversations. LCM was never asked for its views on the Proposed Transaction. It was never asked whether it consented to the still-undisclosed amendments that Serta now proposes to push

Case 23-09001   Document 70-9   Filed in TXSB on 02/24/23   Page 4 of 8

through on the basis of secret talks with preferred lenders.  LCM learned that Serta was going to subrogate LCM's debt from press reports—and it was never given the option to participate.

This is not how the debt markets are supposed to operate.  Beyond its deficiencies of process, the Proposed Transaction would upset settled expectations across a wide range of financings and, if permitted, would deprive first-tier lenders of bargained-for protections.  LCM respectfully seeks intervention to ensure the Court is able to evaluate the illegality of Defendants' scheme, the serious inequity on which it is based, and the serious harm it will inflict on innocent minority debtholders like LCM.

LCM's intervention will afford the Court additional perspectives to guide its analysis. For one, LCM can offer the vantage point—currently absent in these proceedings—of a long-standing and active long-term investor in the loan market.  In addition, although defendants had purposely tried to hide the details of the Proposed Transaction to make it difficult to challenge, Defendants have been forced to disclose its details in their filings in this action.  LCM's memorandum in support of its motion for a temporary restraining order addresses these newly revealed contract arguments.

Out of an abundance of caution, LCM has also filed a new action and application for a TRO (copies of which are submitted herewith).

## **BACKGROUND**

LCM serves as an asset manager of securitized debt products, such as CLOs.  In that capacity, LCM actively selects and manages pools of assets that serve as collateral for investors in LCM's CLOs.  These CLOs have consistently held first-lien loans issued by Serta since 2016. Today, LCM holds $18M of first-lien loans, most of which was purchased over two years ago at or near par value.

2

Case 23-09001 Document 70-9 Filed in TXSB on 02/24/23 Page 5 of 8

As a CLO asset manager, a key aspect of LCM's business is selecting which assets to include in its CLOs' collateral pools. The structural seniority of the loans is a key part of this review process. Investors typically pay a premium to secure top structural seniority because it affords the greatest protection in the event of a debtor's default by providing a claim to the debtors' assets that supersedes other creditors' claims. If debtors can change the structural seniority and subrogate the rights of minority debtholders through secret side deals with a group of lenders who are offered a reward for going along—as Serta is attempting to do here—it will not just substantially and irreparably injure LCM, but will also substantially and adversely affect the credit market.

## ARGUMENT

Under CPLR 1013, the Court has discretion to allow intervention where the proposed intervenor's "claim or defense and the main action have a common question of law or fact." CPLR 1013. "Intervention is liberally allowed by courts," *Yuppie Puppy Pet Prods., Inc. v. Street Smart Realty, LLC*, 77 A.D.3d 197, 201 (1st Dep't 2010) and "should be permitted where the intervenor has a real and substantial interest in the outcome of the proceedings." *Berkoski v. Bd. of Trustees of Inc. Village of Southampton*, 67 A.D.3d 840, 843 (2d Dep't 2009).

There can be no dispute that LCM's claims raise common questions to the underlying action. Plaintiffs and LCM are both first-lien lenders to Serta that are at risk of having their rights subrogated by the Proposed Transaction. In addition, like Plaintiffs, LCM asserts that the Proposed Transaction violates the Credit Agreement and the covenant of good faith and fair dealing and that the Proposed Transaction should be enjoined. *See* Affirmation of Michael S. Shuster Exs. A & B (LCM's complaint and TRO brief).

3

Nor can it be disputed that LCM has a real and substantial interest in the outcome of these proceedings. The Court's disposition of this matter will determine whether Serta can subrogate LCM's first-lien rights, which would irreparably injure LCM. Moreover, were the Court to deny Plaintiffs' and LCM's motions for a temporary restraining order, the Proposed Transaction would effectively strip minority lenders of their liens, reduce the value of their loans, and result in a new debt structure that may be impossible to undo if the Court ultimately finds the Proposed Transaction is unlawful.

Defendants also cannot credibly assert that intervention here is untimely or would cause undue delay or prejudice to them. LCM filed this motion less than two weeks after first learning of the Proposed Transaction, within one week of the complaint initially being filed, and prior to the Court's decision of the Plaintiffs' motion for a temporary restraining order. *See Yuppie Puppy*, 77 A.D.3d at 201 ("As [intervenor] sought to intervene a mere two weeks after the negotiations to obviate the motion to intervene ended, it cannot be said the motion was untimely."). Moreover, LCM is seeking intervention only two days after Defendants advanced its "unclean hands" argument against Plaintiffs—this was the first time LCM appreciated that Plaintiffs might not adequately represent the interests of LCM and of other minority lenders.

While the reasons above are sufficient to grant intervention under CPLR 1013, it is worth noting that intervention is also necessary to protect LCM's rights, which are currently not adequately represented in this action. LCM has been a first-lien lender to Serta since 2016. It had no knowledge of Serta's Proposed Transaction until Serta announced publicly that it intended to subrogate LCM's—and other minority first-lien lenders'—rights. Nor has LCM been involved in any separate discussions with Serta in an effort to subrogate other first-lien lenders' rights to LCM's benefit, as Defendants allege of Plaintiffs.

4

Case 23-09001 Document 70-9 Filed in TXSB on 02/24/23 Page 7 of 8

Accordingly, Defendants cannot assert—as they have against Plaintiffs—that LCM has "unclean hands" or that the equities favor denying a temporary restraining order for that reason. To the contrary, as LCM details in its memorandum in support of its motion for a temporary restraining order, the equities heavily favor enjoining the Proposed Transaction. Shuster Aff. Ex. B.

## **CONCLUSION**

The Court should grant LCM's motion to intervene.

Dated: June 18, 2020
   New York, New York

       HOLWELL SHUSTER & GOLDBERG LLP

       By */s/ Michael S. Shuster*
       Michael S. Shuster
       Vincent Levy
       Daniel M. Horowitz

       425 Lexington Avenue
       New York, NY 10017
       (646) 837-5151
       mshuster@hsgllp.com

       *Counsel to Proposed-Intervenor*

5

## CERTIFICATION OF COMPLIANCE
## <u>(NYS COMMERCIAL DIVISION RULE 17)</u>

Pursuant to Rule 17 of the Rules of the Commercial Division, Supreme Court, New York County, I hereby certify that this memorandum of law, based on a computerized word-count, contains 1,269 words, excluding the caption and signature block, which are exempted under Rule 17.  I further certify that this memorandum of law complies with the word count limit set forth in Rule 17.


Dated: June 18, 2020                      <u>*/s/ Michael S. Shuster*      </u>
                                          Michael S. Shuster