# Exhibit 14

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART IAS MOTION 48EFM

-----------------------------------------------------------------X

| | |
|---|---|
| NORTH STAR DEBT HOLDINGS, L.P., SILVER OAK CAPITAL, L.L.C., AG CREDIT SOLUTIONS NON-ECI MASTER FUND, AG CENTRE STREET PARTNERSHIP L.P., AG SUPER FUND MASTER, L.P., GAMUT CAPITAL SSB, LLC, | INDEX NO. 652243/2020 |
| | MOTION DATE N/A |
| | MOTION SEQ. NO. 001 |
| Plaintiffs, | |
| - v - | **DECISION + ORDER ON MOTION** |
| SERTA SIMMONS BEDDING, LLC, ADVENT INTERNATIONAL CORPORATION, EATON VANCE CORP., INVESCO LTD., CREDIT SUISSE GROUP AG, BARINGS LLC, DOES 1-50 | |
| Defendants. | |

-----------------------------------------------------------------X

HON. ANDREA MASLEY:

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 11, 12, 13, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 48, 49, 50, 51, 52, 53, 54, 56

were read on this motion to/for         INJUNCTION/RESTRAINING ORDER         .

Upon the foregoing documents, it is

Plaintiffs North Star Debt Holdings, L.P. (Apollo),[1] Silver Oak Capital, L.L.C., AG Credit Solutions Non-ECI Master Fund, AG Centre Street Partnership L.P., and AG Super Fund Master, L.P., and Gamut Capital SSB, LLC move by Order to Show Cause, pursuant to CPLR 6301, 6311, 6313, for a TRO and preliminary injunction enjoining defendant Serta Simmons Bedding, LLC (Serta) from implementing a refinancing transaction set to close on Monday, June 22, 2020. (NYSCEF 51, Term Sheet ¶4,

---

[1] The defendants Eaton Vance Management, Invesco Senior Secured Management, Inc., Credit Suisse Asset Management, LLC, and Boston Management and Research challenge Apollo's standing. For the purposes of this decision only, the court presumes plaintiffs have standing.

652243/2020   NORTH STAR DEBT HOLDINGS, L.P. vs. SERTA SIMMONS BEDDING, LLC,   Page 1 of 11
Motion No. 001

1 of 11

Termination; 6/16/20 Tr. at 12:22-25.) Plaintiffs also seek expedited disclosure including responses to a document request and depositions.[2]

The collateral at issue here is Serta's intellectual property and associated royalty streams. (NYSCEF 19, Roopesh K. Shah, Senior Director Evercore, Inc., Serta advisor, affidavit, ¶15.) Plaintiffs insist that their rights to the security for their loans will be "gutted" by subordinating their existing loans by improper "super-priority" loans, in blatant violation of their existing credit agreement with Serta. Defendants argue that plaintiffs' collateral remains in place and the proposed transaction is consistent with the credit agreement relying on an exception therein.

Defendant Advent International Corporation acquired a majority interest in Serta in October 2012. (NYSCEF 1, Complaint ¶38).

Serta entered into a credit facility on November 8, 2016 which consists of three separate credit agreements. (NYSCEF 1, ¶39). At issue here is a first lien term loan agreement (the Credit Agreement) which provides for $1.95 billion in term loans (the First Lien Term Loan). (Id.) Plaintiffs hold $600 million of the First Lien Term Loan or 30%.[3] (NYSCEF 1, Complaint ¶2.) Defendants on the other side of this disputed transaction are: Eaton Vance Management, Invesco Senior Secured Management, Inc., Credit Suisse Asset Management, LLC, and Boston Management and Research

---

[2] The term sheet was produced on June 13, 2020, two days after this action was filed. (NYCEF 50, Lewis R. Clayton Affirmation, June 16, 2020, ¶3; Tr. 61:2-13.) For the reasons stated on the record, the court denied plaintiffs' request for a draft of the agreement. (Tr at 59:12-74:24.)

[3] If the Lender Defendants hold at least 50.1% of the First Term Loan, then mathematically, even if the court were to add the holdings of the proposed intervenors, and any other lenders who have improperly contacted this court ex parte to object to the transaction, the total value of the plaintiffs' holdings cannot sum to the requisite 50.1%.

652243/2020  NORTH STAR DEBT HOLOINGS, L.P. vs. SERTA SIMMONS BEDDING, LLC,   Page 2 of 11
Motion No. 001

2 of 11

(collectively the Lender Defendants) which will hold "at least 50.1%."[4] (NYSCEF 51, Term Sheet, p. 1 Structure; see also NYSCEF 19, Shah Aff ¶7.)

Plaintiffs focus on two sections of the Credit Agreement. First, the waterfall provision allocates proceeds in the case of an event of default. (NYSCEF 31, Credit Agreement, §§ 2.18[b], 2.18[c].) Section 2.18(b) provides that after certain expenses are paid, the proceeds of collateral are to be divided *pro rata* among the lenders. Section 2.18(c) provides that, to the extent any lender receives payment on account of its loans that is of a greater proportion than that received by others, the excess value must be shared "ratably" among the lenders.

Second, plaintiffs assert the limitations on amendments set forth in the Credit Agreement. While some provisions can be amended by more than 50% of the lenders, six rights --"sacred rights," according to plaintiffs -- may only be amended by securing "the consent of each lender directly and adversely affected thereby." (*Id.* § 9.02[b] [A], NYSCEF 1, Complaint 42, 44, 45, 48, 53.) At issue here is section 9.02[b] [A] [6] which provides that each affected lender must approve any agreement that "waives, amends or modifies sections 2.1[b] or [c] of this Agreement in a manner that would by its terms alter the *pro rata* sharing of payments required thereby (except in connection with any transaction permitted under Sections 2.22, 2.23, 9.02( c ), and/or 9.05(g) or as otherwise provided in this section 9.02)."

Plaintiffs insist that the Credit Agreement requires unanimous consent since the exceptions do not apply here. Section 2.22 of the Credit Agreement provides for the

---

[4] These entities were substituted as defendants by stipulation and the action was discontinued against Eaton Vance Corp., Invesco Ltd., and Credit Suisse Group AG. (NYSCEF 81, Stipulation.)

652243/2020 NORTH STAR DEBT HOLDINGS, L.P. vs. SERTA SIMMONS BEDDING, LLC,
Motion No. 001

Page 3 of 11

issuance of incremental additional loans. Section 2.23 provides for the extension of maturity of existing loans. Section 2.23 requires that the extensions be offered to each lender on the same terms, and made available on a *pro rata* basis. Section 9.02(c) permits the refinancing or replacement of existing term loans. Like sections 2.22 and 2.23, section 9.02(c)(i)( C ) provides that any replacement loans may be "*pari passu* with or junior to existing loans." Finally, section 9.05(g) allows lenders to assign their rights on non-*pro rata* basis in certain limited circumstances through either Dutch Auctions or open market purchases. (*Id.* § 9.05[g].)

On June 8, 2020, Serta announced in a press release that it had entered into a transaction support agreement with the Lender Defendants -- holders of the majority of its First Lien and Second Lien Term Loans --to recapitalize the company. (NYSCEF 7, Press Release.) According to the press release, the proposed transaction will create: (a) "$200 million of newly funded super-priority 'first out' debt, nominally under the First Lien Credit Agreement, but ranking ahead of the existing First Lien Term Loans;" (b) "$875 million of super-priority 'second out' debt ranking ahead of Existing First Lien Term Loans in exchange for Existing First Lien and Second Lien Term Loans; and (c) an unspecified amount of "'third out' that would rank ahead of the Existing First Lien Term Loans that can be used for further exchanges of Existing First Lien Term Loans." (*Id.* at 2.)

According to defendants, this transaction is the culmination of months of negotiation, a process that started in 2019 due to Serta's firm competition. (NYSCEF 20, Affidavit of Allen Barry Canipe, Serta CFO, June 15, 2020, ¶¶5, 6.) On March 11, 2020, the Serta board authorized a committee to consider refinancing alternatives. (*Id.*

652243/2020 NORTH STAR DEBT HOLDINGS, L.P. vs. SERTA SIMMONS BEDDING, LLC,
Motion No. 001

Page 4 of 11

4 of 11

at ¶8.) The COVID 19 pandemic and government closures impacted Serta's liquidity. (*Id.* at ¶10.) The committee considered alternatives including "new money financing," discounting existing debt to ensure liquidity in short term, "de-levering" debt, and reducing debt. (*Id.* at ¶11-12.) In April and May, 2020, Serta solicited proposals. (NYSCEF 19, Shah Aff ¶5.) Plaintiffs participated in this process, but their proposal was rejected; had plaintiffs succeeded, they would have been in the coveted super priority position. (*Id.* at ¶¶6,12-20.) Serta accepted the Lender Defendants' competing proposal on June 8, 2020 which expires on June 22, 2020. (*Id.* at ¶27.)

As a result of this transaction, plaintiffs fear they will lose their priority as first lien holders and "and one day, likely more, given the potential 'third out' tranche." (NYSCEF 3, Plaintiffs' Memo of Law p 12.) Plaintiffs also argue that "[i]n the case of an event of default, more than $1 billion in debt ahead of plaintiffs' debt would be paid in full before the plaintiffs saw even a single penny, notwithstanding that all of the debt under the Proposed Transaction purports to be First Lien Term Loan." (*Id.*)

On June 11, 2020, plaintiffs initiated this action alleging causes of action for: (1) breach of contract against Serta and the Lender Defendants, based on the November 8, 2016 Credit Agreement for loans to Serta secured by Serta's assets, Serta's intellectual property; (2) breach of the implied covenant of good faith and fair dealing against Serta and the favored lenders; (3) tortious interference with contract against Advent; (4) tortious interference with prospective economic relations by plaintiff NSDT against Advent; (5) declaratory judgment that the proposed transaction violates the Credit Agreement; and (6) declaratory judgment that Apollo has a valid assignment for the First Lien Term Loans that it has purchased.

652243/2020  NORTH STAR DEBT HOLDINGS, L.P. vs. SERTA SIMMONS BEDDING, LLC, Motion No. 001

Page 5 of 11

5 of 11

On June 12, 2020, the court granted the TRO requested by plaintiffs, enjoining defendants "from consummating the proposed transaction, from taking any action to waive, amend, or modify sections 2.18(b) or 2.18(c) of the Credit Agreement in a manner that would alter the *pro rata* sharing of payments required thereby, without the consent of each Lender directly and adversely affected, and, if the Proposed Transaction has already been consummated, from trading, exchanging, or otherwise disposing of any loans made to Serta in connection with the Proposed Transaction." (NYSCEF 48, signed Order to Show Cause.) The OSC was returnable on June 16, 2020 and the argument was heard via Skype for business. In addition, the argument was streamed and made available to all callers, press, students, and the public. The transcript of that argument is incorporated in this decision. After argument on June 16, 2020, the court modified the TRO to enjoin defendants from closing the proposed transaction until further order of the court. (NYSCEF 56, Interim Order, June 17, 2020).

A preliminary injunction is a "drastic remedy." (*Edgeworth Food Corp. v Stephenson*, 53 AD2d 588, 588 [1st Dept 1976].) Before a court may issue a preliminary injunction, the movant must establish (1) a likelihood of success on the merits of the action, (2) the danger of irreparable harm in the absence of a preliminary injunction, and (3) a balance of equities in favor of the moving party. (*W. T. Grant Co. v Srogi*, 52 NY2d 496, 517 [1981] (citations omitted).) As discussed at the argument on the OSC and for the reasons stated here, plaintiffs' request is denied.

With respect to the first factor, "[t]o establish a likelihood of success on the merits, a prima facie showing of a reasonable probability of success is sufficient." (*Barbes Rest. Inc. v ASRR Suzer 218*, LLC, 140 AD3d 430, 431 [1st Dept 2016][internal

652243/2020　NORTH STAR DEBT HOLDINGS, L.P. vs. SERTA SIMMONS BEDDING, LLC, Motion No. 001

Page 6 of 11

6 of 11

quotation marks and citations omitted].) Plaintiffs assert likelihood of success only as to its first two causes of action; breach of contract and breach of the implied covenant of good faith and fair dealing. "The elements of a breach of contract claim are formation of a contract between the parties, performance by the plaintiff, the defendant's failure to perform, and resulting damage." (*Flomenbaum v New York Univ.*, 71 AD3d 80, 91 [1st Dept 2009] (citation omitted), aff'd, 14 NY3d 901 [2010].) In the complaint, plaintiffs allege breach of the Credit Agreement:

> "79. Defendants, by contrast, have breached the express terms of the Credit Agreement by (a) entering into the transaction support agreement, which violates the Credit Agreement's restrictions on any collateral-releasing "agreement"; and (b) entering into an agreement that purports to alter the pro rata distribution provisions of Sections 2.18(b) and 2.18(c) without obtaining the consent of all affected Lenders as required by Section 9.02.
>
> 80. As a consequence of Defendants' material breaches, Plaintiffs have been deprived of their bargain as First Lien Lenders, namely, the right to receive a pro rata share of collateral proceeds." (NYSCEF 1, Complaint.)

Plaintiffs argue that the transaction would have the effect of impermissibly amending section 2.18(b)'s waterfall provision in a way that alters the *pro rata* sharing of payments it requires. Plaintiffs are concerned that if the proposed transaction is allowed to close, then under section 2.18(b) of the Credit Agreement, the proceeds of any liquidation of collateral would go first to holders of the "Super-Priority Loans," before plaintiffs. (NYSCEF 7, Press Release). Plaintiffs rely on section 9.02(b) which provides that all affected lenders must approve any amendment that "amends or modifies the provisions of sections 2.18(b) or (c) of [the Credit] Agreement in a manner that would by its terms alter the pro rata sharing of payments required thereby." (NYSCEF 31, Credit Agreement, § 9.02(b).) Plaintiffs insist that the proposed transaction is such an amendment, that it was not approved by all affected lenders and therefore violates the

652243/2020 NORTH STAR DEBT HOLDINGS, L.P. vs. SERTA SIMMONS BEDDING, LLC,
Motion No. 001

Page 7 of 11

Credit Agreement. However, plaintiffs fail to address the exceptions in the waterfall provision.

The Credit Agreement seems to permits the debt-to-debt exchange on a non-pro rata basis as part of an open market transaction. Section 9.05(g) provides: "any Lender may, at any time assign all or a portion of its rights and obligations under this Agreement in respect of its Term Loans to any Affiliated Lender [defined to include SSB] on a non-pro rata basis. . .through open market purchases. . .without the consent of the Administrative Agent." (NYSCEF 31, Credit Agreement.) The "proposal does not require the release of or guarantee by any collateral that is subject to [Serta's] existing First Lien Term Loans." (Shah Aff ¶25.) Since the amendments do not affect plaintiff's so-called "sacred rights"[5] under the Credit Agreement, plaintiffs' consent does not appear to be required. Rather, the Credit Agreement requires only the consent of a simple majority of the First Lien Term Lenders to amend the Credit Agreement. Section 9.02(b) provides "neither this Agreement nor any other Loan Document or any provision hereof or thereof may be waived, amended or modified, except (i) in the case of this Agreement, pursuant to an agreement or agreements in writing entered into by [Serta] and the Required Lenders." (NYSCEF 31, Credit Agreement.) Section 1.01 defines "Required Lenders" as "Lenders having Loans or unused Commitments representing more than 50% of the sum of the total Loans." (*Id.*) Accordingly, plaintiffs' reliance on *BDCM Opportunity Fund II LP v Yucaipa Am Alliance Fund I, LP*, 112 AD3d 509, 510 (1st Dept 2013), leave to appeal dismissed in part and denied in part, 22 NY3d 1171

---

[5] The six rights set forth in 9.02(b)(A) that require consent of all lenders prior to amendment.

652243/2020 NORTH STAR DEBT HOLDINGS, L.P. vs. SERTA SIMMONS BEDDING, LLC,
Motion No. 001
Page 8 of 11

8 of 11

(2014) is misplaced; there, the agreement was found to have required all lenders to consent. The Credit Agreement is different; it does not require such approval under all circumstances. Therefore, as to breach of contract at this juncture, the court cannot find likelihood of success.

Plaintiffs also assert a claim for breach of the implied covenant of good faith and fair dealing as a basis for the preliminary injunction. Plaintiffs allege that

> "84. If consummated, the Proposed Transaction will destroy Plaintiffs' rights to receive the fruits of the Credit Agreement by stripping them of collateral and altering the provisions for payment in an Event of Default without their consent, in violation of the implied covenant of good faith and fair dealing.
>
> 85. Serta's and the Favored Lenders' actions in pursuing the Proposed Transaction have disregarded Plaintiffs' rights and have not been in good faith." (NYSCEF 1, Complaint)

"The implied covenant of good faith and fair dealing between parties to a contract embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." (*Moran v Erk*, 11 NY3d 452, 456 [2008] [internal quotation marks and citation omitted].) "While the covenant of good faith and fair dealing is implicit in every contract, it cannot be construed so broadly as effectively to nullify other express terms of a contract, or to create independent contractual rights." (*Fesseha v TD Waterhouse Inv. Servs.*, 305 AD2d 268, 268 [1st Dept 2003](citation omitted).) Moreover, "[w]here a good faith claim arises from the same facts and seeks the same damages as a breach of contract claim, it should be dismissed." (*Mill Fin., LLC v Gillett*, 122 AD3d 98, 104 [1st Dept 2014](citation omitted).) Moreover, a good faith and fair dealing claim cannot be maintained where it is "intrinsically tied to the damages allegedly resulting from a breach of the contract." (*MBIA Ins. Corp. v Merrill Lynch*, 81 AD3d 419, 419-420 [1st Dept

652243/2020 NORTH STAR DEBT HOLDINGS, L.P. vs. SERTA SIMMONS BEDDING, LLC, Motion No. 001

Page 9 of 11

9 of 11

2011] [internal quotation marks and citations omitted].) Here, plaintiffs' second cause of action appears to be identical to its breach of contract claim, and thus, it is unlikely to survive a motion to dismiss. Accordingly, plaintiffs cannot establish likelihood of success based on an alleged breach of the covenant of good faith and fair dealing.

Plaintiffs also have not established irreparable harm at this juncture. As to irreparable harm, "[d]amages compensable in money and capable of calculation, albeit with some difficulty, are not irreparable." (*SportsChannel America Associates v National Hockey League*, 186 AD2d 417, 418 [1st Dept 1992](citations omitted).) Money damages are available to plaintiffs here and plaintiffs' supplemental brief does not change that. Rather, plaintiffs' assertion of irreparable harm relying on *U.S. Bank N.A. v MOA Hospitality, Inc.*, 2007 WL 4639452 (Sup Ct NY County 2007), a case about insolvency, impermissibly invites speculation. However, while the court takes judicial notice of the impact of the COVID pandemic on the world's economy, the only mention in this record of insolvency is Canipe's reference to Serta's "retail partner." (See Canipe Aff ¶5). Further, harm to plaintiffs' bargaining leverage as a secured creditor is not sufficient to establish irreparable harm. (*See Eaton Vance Mgmt v Wilmington Sav. Fund Socy, FSB*, Index No. 654397/2017 (Sup Ct, NY County, [Kornreich, J. June 29, 2017]) NYSCEF 49, Decision denying preliminary injunction in J Crew case; NYSCEF 50 Transcript.) While the calculation of damages may not be simple, it can certainly be accomplished by a competent professional. (*Van Wagner Adv. Corp. v S & M Enters.*, 67 NY2d 186 [1986]. Moreover, as discussed at argument, the market and rating agencies seems to be able to assess value here which undermines plaintiffs' assertion that damages cannot be calculated. (Tr 57:4-18.)

652243/2020 NORTH STAR DEBT HOLDINGS, L.P. vs. SERTA SIMMONS BEDDING, LLC,
Motion No. 001
Page 10 of 11

10 of 11

When balancing the equities, "the harm to plaintiff from denial of the injunction as against the harm to defendant from granting it" must "tip in plaintiff's favor" for an injunction to issue. (*Edgeworth Food Corp.*, 53 AD2d at 588.) The court finds that the harm to defendants in delaying this deal far exceeds that to plaintiffs, particularly given that money damages are available to plaintiffs. According to Shah, the transaction will provide Serta with more liquidity, less debt and flexibility for additional decreases in debt. (Shah Aff 32.) The court cannot overlook the importance of such factors in light of the COVID shutdown and the eventual reopening of the world economy.

The court has considered the parties' remaining arguments and finds them unavailing, without merit, or otherwise not requiring an alternate result.

Accordingly, it is

ORDERED that plaintiffs' motion by OSC for a preliminary injunction is denied.

Motion Seq. No. 01:

June 19, 2020
DATE

ANDREA MASLEY, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | x | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | x | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

652243/2020   NORTH STAR DEBT HOLDINGS, L.P. vs. SERTA SIMMONS BEDDING, LLC,   Page 11 of 11
Motion No. 001

11 of 11