# Exhibit 19

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LCM XXII LTD.; LCM XXIII LTD.; LCM XXIV LTD.; :
LCM XXV LTD.; LCM 26 LTD.; LCM 27 LTD.;                  :
LCM 28 LTD.,                                                            :
                                   :

                              Plaintiffs,      :

                                    :

                -against-                       :

SERTA SIMMONS BEDDING, LLC; ADVENT            :
INTERNATIONAL CORPORATION; EATON VANCE :
MANAGEMENT; INVESCO SENIOR SECURED            :
MANAGEMENT INC.; CREDIT SUISSE ASSET          :
MANAGEMENT LLC; BOSTON MANAGEMENT             :
AND RESEARCH; BARINGS LLC,                             :
                                    :

                             Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM DECISION**
**AND ORDER**

20 Civ. 5090 (GBD)

GEORGE B. DANIELS, United States District Judge:

     Plaintiffs LCM XXII Ltd., LCM XXIII Ltd., LCM XXIV Ltd., LCM XXV Ltd., LCM 26 Ltd., LCM 27 Ltd., LCM 28 Ltd. (collectively "Plaintiffs") bring this action against Defendants Serta Simmons Bedding, LLC, Advent International Corporation, Eaton Vance Management, Invesco Senior Secured Management Inc., Credit Suisse Asset Management LLC, Boston Management and Research, and Barings LLC ("Defendants"). (Compl., ECF No. 1.) Plaintiffs allege that Defendants entered into a debt exchange transaction that improperly subordinated Plaintiffs' debt, depriving them of their first-lien, priority, *pro rata* payment rights. (*Id.* at ¶ 1.) Plaintiffs contend this transaction constitutes a breach of the parties' First Lien Term Loan Agreement. (*Id.* at ¶ 2.) Defendants moved to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to

Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 39, 44, 46.) Defendants' motion to dismiss

for lack of subject matter jurisdiction is GRANTED.[1]

## I.    FACTUAL BACKGROUND[2]

### A.  The Parties

Plaintiffs are seven "issuers of collateralized loan obligations" ("CLOs") that regularly

purchase and hold first-lien debt. (Compl. ¶ 6.) Each of the Plaintiffs is an exempted company

incorporated under the laws of the Cayman Islands. (*Id.* ¶¶ 7–13.) The Complaint also asserts that

each Plaintiffs' "principal place of business is in the Cayman Islands." (*Id.*) Pursuant to a

Collateral Management Agreement ("CMA"), Plaintiffs' assets are managed by LCM Asset

Management, LLC, ("LCM" or "LCM Asset Management") which "selects and manages pools of

assets that serve as collateral for investors in its CLOs." (State Court Compl. ¶¶ 10, 26.) Each

CMA expressly authorizes LCM Asset Management "to exercise on behalf of the CLO any right

or remedy regarding the CLOs' investments." (*Id.* ¶ 10.) LCM Asset Management is a limited

liability company organized under Delaware law and has "a principal place of business in New

York, NY." (*Id.*)

Defendants are: Serta Simmons Bedding, LLC ("Serta"), North America's largest bedding

manufacturer; Advent International Corporation, the holder of a majority interest in Serta since

October 2012; and Eaton Vance Management, Invesco Senior Secured Management Inc., Credit

---

[1] Only the Lender Defendants fully briefed the lack of subject matter jurisdiction argument, but other Defendants joined in this argument. (*See* ECF 39, at 21.) In any event, this argument does not need to be raised by the parties because subject matter jurisdiction cannot be waived. *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000); *see also* Fed. R. Civ. P. 12(h)(3).

[2] The facts provided in this section are drawn from Plaintiffs' Complaint (ECF No. 1) and a prior complaint filed in New York state court by Plaintiffs' Collateral Manager. *See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,* 146 F.3d 66, 70 (2d Cir.1998)("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") "Judicial notice may encompass the status of other lawsuits in other courts and the substance of papers filed in those actions." *Schenk v. Citibank/Citigroup/Citicorp,* No. 10–CV–5056, 2010 WL 5094360, at *2 (S.D.N.Y. Dec. 9, 2010).

Suisse Asset Management LLC, Boston Management and Research, and Barings LLC ("Lender Defendants"), a collection of lenders which, at the time of the debt exchange transaction, held a majority of first lien and second lien debt in Serta. (Compl. ¶¶ 27–29, 30.) Importantly, certain Lender Defendants are citizens of New York for the purposes of diversity jurisdiction. (*Id.* ¶¶ 17, 18.)

### B. The First Lien Agreement and The Debt Exchange Transaction

Plaintiffs have held first-lien loans issued by Serta since October 2016. (*Id.* ¶ 25.) In November 2016, Serta entered into multiple credit facility agreements. (*Id.* ¶ 30.) Most relevant here is a first-lien term loan agreement ("First Lien Agreement") that provided for $1.95 billion in first lien term loans. (*Id.*) Plaintiffs currently hold $7.4 million in first lien Serta loans. (*Id.* ¶ 25.)

In April 2020, Serta began having discussions with potential lenders, including the Lender Defendants, to explore options for Serta to raise liquidity and restructure its debt. (*Id.* ¶ 38.) On June 8, 2020, Serta announced that it had accepted the Lender Defendants' proposal to recapitalize the company. (*Id.* ¶ 39.) The transaction, which closed two weeks later, provided for (i) "$200 million of newly funded super-priority 'first out' debt," (ii) "$875 million of super-priority 'second out' debt," and (iii) the "capacity to incur" additional super-priority debt which would be "third out" according to Plaintiffs. (*Id.* ¶¶ 40, 41.) Plaintiffs contend they were not invited to participate in these restructuring discussions, that they were never offered an opportunity to participate in the "new super-priority $200 million financing," and that the transaction improperly subordinates their first lien debt, constituting a breach of the First Lien Agreement. (*Id.* ¶ 43,59, 68–73.)

### C. Procedural History

Prior to the closing of the debt exchange transaction, a group of minority first lien lenders filed a lawsuit in New York State Supreme Court seeking a temporary restraining order. (*Id.* ¶ 6

3

n.2.; *see also North Star Debt Holdings, L.P. et al v. Serta Simmons Bedding, LLC, et al.*, Index No. 652243/2020, Dkt. No. 88 (N.Y. Sup. Ct. 2020).) Shortly after the state court held a hearing on the TRO, Plaintiffs' asset manager, LCM Asset Management, moved to intervene and also sought to file a separate action. (Compl. ¶ 6 n.2.) The state court denied the TRO on June 19, 2020. *North Star*, 2020 WL 3411267, at *4–5. On July 2, 2020, LCM Asset Management voluntarily dismissed its motion to intervene and dismissed its state court complaint. (*See NorthStar*, Index No 652243/2020 Dkt. 124.) On the same day, Plaintiffs (without LCM Asset Management) filed this action asserting the same claims LCM Asset Management had brought in the state court action.

Defendants now move to dismiss arguing, among other things, that this Court lacks subject matter jurisdiction because there is not complete diversity among the parties.

## II. LEGAL STANDARD

A Rule 12(b)(1) motion to dismiss challenges the court's subject matter jurisdiction over the action before it. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), courts "must take all uncontroverted facts in the complaint [ ] as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). But when "jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Id.* (citations omitted). The plaintiff, as the party seeking to invoke the subject matter jurisdiction of the district court, bears the burden of demonstrating by a preponderance of

the evidence that there is subject matter jurisdiction in the case. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

### III.   THIS COURT LACKS SUBJECT MATTER JURISDICTION

The "federal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000). Federal courts have jurisdiction over cases that either raise a "federal question" (i.e., cases involving the United States Government, the Constitution, or other federal laws) or cases involving "diversity of citizenship." The sole basis for jurisdiction set forth in the Complaint is diversity of citizenship pursuant to 28 U.S.C. § 1332(a). (Compl. ¶ 21.)

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332(a)(1). Thus, "diversity jurisdiction is available only when all adverse parties to a litigation are completely diverse in their citizenships." *Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001). When an action is "premised on diversity of citizenship, diversity must exist at the time the action is commenced." *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002). Under 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."

In *Hertz Corp. v. Friend*, the Supreme Court held that the phrase "principal place of business" means:

> the place where a corporation's officers direct, control, and coordinate the
> corporation's activities . . . . And in practice, it should normally be the place where
> the corporation maintains its headquarters—provided that the headquarters is the
> actual center of direction, control, and coordination, *i.e.*, the "nerve center," and not

5

simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

559 U.S. 77, 92–93 (2010).

Defendants argue that Plaintiffs' principal place of business is New York, where Plaintiffs are "managed, controlled, and operated" by LCM Asset Management. (Lender Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 44, at 2.) Defendants contend that Plaintiffs' government filings show that they do not manage any investment activities and "do not disclose any Cayman-based employees, offices or operations." (*Id.* at 14; Decl. of Randy Mastro, ECF No. 52, Ex 16.) Defendants' also point to public statements made in LCM Asset Management's state court complaint and its website, both of which seemingly demonstrate that the Plaintiffs' activities are coordinated and controlled by New York-based LCM. (Defs.' Mot. at 14.) Moreover, Plaintiffs' Indentures contain multiple references to New York; Plaintiffs define their "Business Day" to be the day "in New York, New York;" select their trustee to be Deutsche Bank, a "New York banking corporation;" direct notices to be sent to New York; and their authorized agent for service of process receives service "in the Borough of Manhattan, The City of New York." (*See e.g.*, Decl. of Vincent Levy, ECF No. 63, Ex. A.)

Having challenged the jurisdictional facts in the Complaint the burden is on the Plaintiffs to demonstrate that there is subject matter jurisdiction over this action. *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 65 (2d Cir. 2012). Plaintiffs make three arguments in support of the contention that there is complete diversity among the parties.

First, Plaintiffs assert that "the complaint pleads that the Defendants are all domestic and that Plaintiffs are all foreign" and that those allegations "establish[] complete diversity." (Pls.' Opp'n to Mot. to Dismiss ("Pls.'Opp'n"), ECF No. 62, at 4.) But these allegations alone are insufficient once disputed. While a plaintiff must include in its complaint "a short and plain

6

statement of the grounds upon which the court's jurisdiction depends," Fed. R. Civ. P. 8(a)(1), once challenged, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations." *Phoenix Four, Inc. v. Strategic Res. Corp.*, 446 F. Supp. 2d 205, 212 (S.D.N.Y. 2006); *see also Jarvis v. Cardillo,* No. 98 Civ. 5793 (RWS), 1999 WL 187205, at \*2 (S.D.N.Y. 1999) (courts "need not accept as true contested jurisdictional allegations.") Indeed, Plaintiffs' threadbare recitals that the Cayman Islands are their principal place of business are inadequate because "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)(internal quotations omitted).

Second, Plaintiffs argue, despite the Supreme Court's holding in *Hertz*, that the key factors for determining the citizenship of an investment or holding company are the location where board meetings are held and where corporate records are kept. To support the proposition that holding companies should be subjected to this lower standard, which the Second Circuit has yet to weigh in on, Plaintiffs cite to two out of circuit cases, *Johnson v. SmithKline Beecham Corp.* 724 F. 3d. 337 (3d Cir. 2013) and *3123 SMB LLC v. Horn*, 880 F.3d 461 (9th Cir. 2018). Plaintiffs' reliance on these cases is misplaced.

*SmithKline* involved determining the citizenship of a limited liability company, which is dictated by the citizenship of each of its members. 724 F.3d at 347–348. The LLC's sole member, GSK Holdings, was a holding company that the Third Circuit found to have a principal place of business in Delaware based, in part, on the location of its board meetings. *Id.* at 356. The court reasoned that because GSK Holdings was a holding company the location of its board meetings was "a more significant jurisdictional fact" and decided to cabin *Hertz* and its holding to operating companies with "extensive activities." *Id.* at 354. *SmithKline* is not binding in this Circuit and the

7

facts are too dissimilar to consider its analysis persuasive here. The record in *SmithKline* was replete with evidence of the operational decisions made by GSK's board of directors, *id.* 353–356, including, the board's "sole authority to adopt binding resolutions affecting the corporation's investments." *Id.* at 356. Here, outside of representations of counsel at oral argument, Plaintiffs have not offered any evidence that board meetings take place in the Cayman Islands and have not explained what decisions, if any, are made at that location. *See Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F.Supp.3d 224, 255 n. 36, 2014 WL 812820, at *22 n.36 (S.D.N.Y. 2014) (noting the lack of any "evidence in the record" supporting one of the party's allegations, "other than counsel's conclusory assertions at oral argument, which of course is not evidence.")

Similarly, the company at issue in *Horn*, was a limited liability company whose sole member was a holding company that had only been in existence for 25 days. 880 F.3d at 467. In that limited amount of time, the only business activity the holding company had "conducted was to incorporate." *Id.* Given that the holding company had no activity other than incorporation, the Ninth Circuit concluded that "a recently-formed holding company's principal place of business is the place where it has its board meetings . . . unless evidence shows that the corporation is directed from elsewhere." *Id.* at 468. Here, not only are Plaintiffs not newly formed, their activities are directed from New York, making it their principal place of business.

*Hertz* instructs that a corporation's principal place of business is its "nerve center" or "corporate brain," this means the "single place" from which the "officers direct, control and coordinate the corporation's activities." *Hertz*, 559 U.S. at 80, 92–93, 95. To support the proposition that the Cayman Islands is their principal place of business the Plaintiffs cite to paragraph 15 of the Levy Declaration. ("Pls. Opp'n" at 5.) That paragraph of the declaration cites to the Plaintiffs' Articles of Association, which only demonstrate that Plaintiffs are formed as an

8

exempted company under the laws of the Cayman Islands, that "the business of the Company shall be managed by the Directors who *may* exercise all the powers of the Company," and that Plaintiffs are required to maintain books of account.  (Levy Decl. ¶¶ 15–17, Ex. W) (emphasis added.) Indeed, a Cayman Island exempted company (which is what Plaintiffs are) is defined as a company "the objects of which are to be carried out mainly outside the Islands . . . ." *See* Companies Law (2020 Revision), Part VII, § 163.  Outside of proving that the Plaintiffs are incorporated in the Cayman Islands (which is not in dispute), the Articles of Association do no affirmatively establish that the Directors actually make management decisions in the Cayman Islands, that board meetings are actually held there[3], or that books and records are actually maintained there.[4]

Furthermore, the Articles of Association underscore the fact that Plaintiffs' "Registered Office" is a P.O. Box located "at the offices of MaplesFS Limited, PO Box 1093 Queensgate House" in the Cayman Islands. (*Id.* Ex. W at 1; Ex. Z at 113.)  Plaintiffs affirmatively assert this fact to aide their jurisdictional argument. (Pls.' Sur-Reply to Defs' Mot. to Dismiss ("Pls.' Sur-Reply"), ECF No. 71-1, at 2–3.)  But *Hertz* cautions that when a corporation's alleged nerve center is simply "a mail drop box, a bare office with a computer, or the location of an annual executive retreat" it may reveal "attempts at manipulation" and "courts should instead take as the 'nerve center' the place of actual direction, control, and coordination, in the absence of such manipulation." *Hertz*, 559 U.S. at 97.  Additionally, Plaintiffs make no assertions of where their

---

[3] At oral argument counsel for Plaintiffs represented that "board meetings are conducted at the offices of the registered agent, as far as I know, which is called Maples and Walkers." (Tr. of Oral Arg. Dated Jan. 14 2021, ECF No. 84 at 64:3-5.)  But counsel did not point to any evidence in the record, and again, these statements at oral argument are not evidence.  Moreover, it appears from the record that the "Process Agent" (i.e. the registered agent) is located in New York, New York and not the Cayman Islands. (*See* Levy Decl., Ex. A at 53.)

[4] Plaintiffs fail to carry their burden even when applying the lower standard they urge this Court to adopt. Plaintiffs have provided no evidence establishing where the board of directors holds its meetings or where their corporate records are kept.

9

bank accounts are, whether they have any employees (beyond their two Directors who are employees of a Cayman Island trust entity), and could not point to what business is actually conducted in the Cayman Islands outside their directors being in the Cayman Islands and the Indentures and Collateral Management Agreements being signed by the Cayman Directors. (Pls.' Sur-Reply at 2.) Plaintiffs have failed to establish that their principal place of business is the Cayman Islands.

Third, and finally, Plaintiffs argue that looking at the activities of LCM Asset Management in New York would ignore Plaintiffs' corporate form and "impute a third-party's principal place of business to Plaintiffs." (Pls. Opp'n at 5–6; Pls.' Sur-Reply at 4.) Plaintiffs cite no binding authority to support this point and, in any event, LCM Asset Management's principal place of business is not being imputed to Plaintiffs. Rather, the analysis here is focused on the single place from which Plaintiffs activities are directed, controlled, and coordinated.

Plaintiffs rely heavily on *Eugenia VI Venture Holdings Ltd. v. Surinder Chabra*. In *Eugenia*, the district court held that that the plaintiff had a principal place of business in the Cayman Islands in large part because the plaintiffs were managed by a Cayman trust entity. 419 F.Supp.2d 502, 504, 506 (S.D.N.Y. 2005). Much like here, the *Eugenia* court was not imputing the principal place of business of the Cayman entity to Eugenia; instead, it was focusing on where Eugenia's business activities were conducted. Here, Plaintiffs' business activities are managed by a New York entity who makes investment decisions on their behalf. (State Court Compl. ¶¶ 10, 26.) The CMA between LCM and Plaintiffs makes clear that LCM "agrees to perform, on behalf of the [Plaintiffs], certain investment management duties" and that LCM's functions "includ[e] without limitation, directing and supervising the investment in and reinvestment of Collateral Debt Obligations and Eligible Investments and performing certain administrative functions." (Levy

10

Decl., Ex H. at 1–2, 4.) A review of LCM's activities on Plaintiffs' behalf, and Plaintiffs' lack of

activities in the Cayman Islands, demonstrates that Plaintiffs' primary activities and principal place

of business are in New York. Therefore, there is no complete diversity among the parties and this

Court lacks subject matter jurisdiction.

## IV.    CONCLUSION

Defendants' motion to dismiss for lack of subject matter jurisdiction, (ECF No. 44), is

GRANTED.  Plaintiffs' Complaint is dismissed.  The Clerk of Court is directed to close the

motions accordingly.  The Clerk of the Court is also directed to close ECF Nos. 39 and 46.


Dated: New York, New York
       March 9, 2021

                                        SO ORDERED.

                                        _George B. Daniels_
                                        GEORGE B. DANIELS
                                        United States District Judge