**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re:<br><br>SERTA SIMMONS BEDDING, LLC, et al.,<br><br>Debtors, | : | Chapter 11<br><br>Case No. 23-90020 (DRJ)<br>(Jointly Administered) |
| SERTA SIMMONS BEDDING, LLC, et al.,<br><br>Plaintiffs and Counterclaim Defendants,<br><br>v.<br><br>AG CENTRE STREET PARTNERSHIP L.P., et al.,<br><br>Defendants, Counterclaim Plaintiffs and Third-Party Plaintiffs,<br><br>v.<br><br>AGF FLOATING RATE INCOME FUND, et al.,<br><br>Third-Party Defendants. | : | Adversary Proc. No. 23-09001 (DRJ) |

**EXCLUDED LENDERS' COUNTERSTATEMENT OF CONTROVERTED FACTS IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

FRIEDMAN KAPLAN SEILER ADELMAN & ROBBINS LLP
7 Times Square
New York, NY 11036-6516
(212) 833-1100

*Attorneys for the Excluded Lenders*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, TX 77002
(713) 226-6000

*Attorneys for the Excluded Lenders with respect to Plaintiffs' Claims and Counterclaims Only*

Defendants and counterclaim/third-party plaintiffs AG Centre Street Partnership L.P., AG Credit Solutions Non-ECI Master Fund, L.P., AG Super Fund Master, L.P., AG SF Master (L), L.P., and Silver Oak Capital, L.L.C., Contrarian Capital Fund I, L.P., Contrarian Distressed Debt Fund, L.P., and Contrarian Centre Street Partnership, L.P., Gamut Capital SSB, LLC, Z Capital Credit Partners CLO 2018-1 Ltd. and Z Capital Credit Partners CLO 2019-1 Ltd., Shackleton 2013-III CLO, Ltd., Shackleton 2013-IV-R CLO, Ltd., Shackleton 2014-V-R CLO, Ltd., Shackleton 2015-VII-R CLO, Ltd., and Shackleton 2017-XI CLO, Ltd., North Star Debt Holdings, L.P., Ascribe III Investments, LLC, and Cent CLO 21 Limited, Columbia Cent CLO 27 Limited, Columbia Floating Rate Fund, a series of Columbia Funds Series Trust II, and Columbia Strategic Income Fund, a series of Columbia Funds Series Trust I (collectively, the "Excluded Lenders") respectfully submit the following responses to the Statement of Uncontroverted Facts in support of the Motion for Summary Judgment submitted by plaintiff Serta Simmons Bedding ("Serta"). (Dkt. No. 70.)[1]

## THE EXCLUDED LENDERS' RESPONSE TO SERTA'S STATEMENT OF UNCONTESTED FACTS

### Serta Simmons Bedding

**Statement No. 1: The Company, together with its subsidiaries and affiliates, is one of the leading manufacturers and distributors of mattresses in North America, and owns and manages some of the best-selling bedding brands in the mattress industry: Serta®, Beautyrest®, Simmons®, and Tuft & Needle®. ECF 66 ¶ 30.**

Response to Statement No. 1: Undisputed.

[1] All text in bold type is from Serta's Statement of Uncontroverted Facts. By including headings for ease of reference, the Excluded Lenders do not admit or agree with any characterizations or allegations therein, and to the extent a response is required, all such headings are contested. Similarly, the Excluded Lenders' responses use certain of the defined terms used in Serta's Statement of Uncontroverted Facts for ease of reference only.

**Statement No. 2: The Company distributes its brands through national, hospitality, and regional and independent retail channels as well as through direct-to-consumer channels. ECF 1 ¶ 29.**

Response to Statement No. 2: Undisputed.

**Serta Simmons Bedding's Pre-Transaction Capital Structure**

**Statement No. 3: The Company was a party to a first lien term loan agreement, dated as of November 8, 2016 (the "Term Loan Agreement"), that provided for $1.95 billion in first lien term loans ("First Lien Term Loans"). ECF 1-1.**

Response to Statement No. 3: Undisputed.

**Statement No. 4: The Company was a party to a second lien term loan agreement, dated as of November 8, 2016, that provided for $450 million in second lien term loans ("Second Lien Term Loans"). Ex. 1.**

Response to Statement No. 4: Undisputed.

**Statement No. 5: The Company was a party to an agreement providing it a $225 million asset-based revolving credit facility, dated as of November 8, 2016. Ex. 2.**

Response to Statement No. 5: Undisputed.

**Serta Simmons Bedding Solicits and Negotiates Potential Refinancing Transactions**

**Statement No. 6: In early 2020, as COVID-19 spread throughout the United States, the Company began exploring potential alternatives for raising liquidity and reducing its debt and interest expense, including potential refinancing transactions. ECF 1 ¶¶ 32-33.**

Response to Statement No. 6: Disputed. The Excluded Lenders have not had an opportunity to discover information that is essential to evaluating and responding to this Statement. Accordingly, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, to the extent this Statement is material to plaintiffs' motions for partial summary judgment, the Court should deny or defer considering the motion pending the completion of appropriate discovery. *See Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986) (generally, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover

information that is essential to his opposition."); *Xerox Corp.* v. *Genmoora Corp*., 888 F.2d 345, 354 (5th Cir. 1989) ("Summary judgment should not . . . ordinarily be granted before discovery has been completed.") (internal quotation marks omitted).

**Statement No. 7: The Board of Managers of Dawn Intermediate, LLC (the Company's parent) formed an independent finance committee and appointed two new independent directors to serve on the committee (the "Independent Finance Committee"). Ex. 3.**

Response to Statement No. 7: Disputed. The Excluded Lenders have not had an opportunity to discover information that is essential to evaluating and responding to this Statement. Accordingly, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, to the extent this Statement is material to plaintiffs' motions for partial summary judgment, the Court should deny or defer considering the motion pending the completion of appropriate discovery. *See Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986) (generally, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."); *Xerox Corp.* v. *Genmoora Corp*., 888 F.2d 345, 354 (5th Cir. 1989) ("Summary judgment should not . . . ordinarily be granted before discovery has been completed.") (internal quotation marks omitted).

**Statement No. 8: The Independent Finance Committee was tasked with evaluating potential refinancing transactions and ultimately providing the Dawn Intermediate Board of Managers with a recommendation on whether to proceed with a particular refinancing transaction. *Id.***

Response to Statement No. 8: Disputed. The Excluded Lenders have not had an opportunity to discover information that is essential to evaluating and responding to this Statement. Accordingly, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, to the extent this Statement is material to plaintiffs' motions for partial summary judgment, the Court

should deny or defer considering the motion pending the completion of appropriate discovery. *See Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986) (generally, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."); *Xerox Corp.* v. *Genmoora Corp.*, 888 F.2d 345, 354 (5th Cir. 1989) ("Summary judgment should not . . . ordinarily be granted before discovery has been completed.") (internal quotation marks omitted).

**Statement No. 9: On June 3, 2020, the Dawn Intermediate Board of Managers delegated to the Independent Finance Committee full authority to authorize the Company to enter into a refinancing transaction. ECF 1 at n.3; Ex. 4.**

Response to Statement No. 9: Disputed. The Excluded Lenders have not had an opportunity to discover information that is essential to evaluating and responding to this Statement. Accordingly, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, to the extent this Statement is material to plaintiffs' motions for partial summary judgment, the Court should deny or defer considering the motion pending the completion of appropriate discovery. *See Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986) (generally, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."); *Xerox Corp.* v. *Genmoora Corp.*, 888 F.2d 345, 354 (5th Cir. 1989) ("Summary judgment should not . . . ordinarily be granted before discovery has been completed.") (internal quotation marks omitted).

**Statement No. 10: The Company, through its outside advisor Evercore Inc. ("Evercore"), solicited proposals from and negotiated with numerous lender groups, including a group holding the majority of the Company's debt (the "PTL Lenders") and a group including North Star Debt Holdings, L.P. (an affiliate of Apollo Global Management, Inc.), AG Centre Street Partnership L.P. and other entities affiliated with Angelo Gordon, and Gamut Capital SSB, LLC, among others (the "Drop-Down Group"). Ex. 5.**

Response to Statement No. 10: Disputed. The Excluded Lenders have not had an opportunity to discover information that is essential to evaluating and responding to this Statement. Accordingly, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, to the extent this Statement is material to plaintiffs' motions for partial summary judgment, the Court should deny or defer considering the motion pending the completion of appropriate discovery. *See Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986) (generally, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."); *Xerox Corp.* v. *Genmoora Corp*., 888 F.2d 345, 354 (5th Cir. 1989) ("Summary judgment should not . . . ordinarily be granted before discovery has been completed.") (internal quotation marks omitted).

**Statement No. 11: Evercore also solicited proposals from and negotiated with lenders outside of the Company's capital structure, as well as with other of the Company's existing lenders, including Barings LLC ("Barings"), Oaktree Capital Management ("Oaktree"), and Sixth Street Partners ("Sixth Street"). *Id.***

Response to Statement No. 11: Disputed. The Excluded Lenders have not had an opportunity to discover information that is essential to evaluating and responding to this Statement. Accordingly, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, to the extent this Statement is material to plaintiffs' motions for partial summary judgment, the Court should deny or defer considering the motion pending the completion of appropriate discovery. *See Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986) (generally, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."); *Xerox Corp.* v. *Genmoora Corp*., 888 F.2d 345,

354 (5th Cir. 1989) ("Summary judgment should not . . . ordinarily be granted before discovery has been completed.") (internal quotation marks omitted).

**Statement No. 12: In total, the Company negotiated with lenders holding over 70% of the Company's existing debt. Ex. 6.**

Response to Statement No. 12: Disputed. The Excluded Lenders have not had an opportunity to discover information that is essential to evaluating and responding to this Statement. Accordingly, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, to the extent this Statement is material to plaintiffs' motions for partial summary judgment, the Court should deny or defer considering the motion pending the completion of appropriate discovery. *See Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986) (generally, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."); *Xerox Corp.* v. *Genmoora Corp*., 888 F.2d 345, 354 (5th Cir. 1989) ("Summary judgment should not . . . ordinarily be granted before discovery has been completed.") (internal quotation marks omitted).

**Statement No. 13: The Independent Finance Committee considered each of the proposals that the Company received from the market, but the decision ultimately came down to the proposals from the PTL Lenders and the Drop-Down Group. *Id.***

Response to Statement No. 13: Disputed. The Excluded Lenders have not had an opportunity to discover information that is essential to evaluating and responding to this Statement. Accordingly, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, to the extent this Statement is material to plaintiffs' motions for partial summary judgment, the Court should deny or defer considering the motion pending the completion of appropriate discovery. *See Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986) (generally, "summary

judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."); *Xerox Corp.* v. *Genmoora Corp*., 888 F.2d 345, 354 (5th Cir. 1989) ("Summary judgment should not . . . ordinarily be granted before discovery has been completed.") (internal quotation marks omitted).

**Statement No. 14: The Independent Finance Committee voted to approve the recapitalization transaction proposed by the PTL Lenders (the "Transaction") because it offered the best holistic financing solution for the Company. *Id.***

Response to Statement No. 14: Disputed. The Excluded Lenders have not had an opportunity to discover information that is essential to evaluating and responding to this Statement. Accordingly, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, to the extent this Statement is material to plaintiffs' motions for partial summary judgment, the Court should deny or defer considering the motion pending the completion of appropriate discovery. *See Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986) (generally, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."); *Xerox Corp.* v. *Genmoora Corp*., 888 F.2d 345, 354 (5th Cir. 1989) ("Summary judgment should not . . . ordinarily be granted before discovery has been completed.") (internal quotation marks omitted).

**Statement No. 15: The Company issued a press release on June 8, 2020, announcing it had entered into a transaction support agreement with the PTL Lenders to effectuate the Transaction. Ex. 7.**

Response to Statement No. 15: Undisputed.

**Statement No. 16: Prior to the Transaction closing, Barings, Oaktree, and TPG joined the PTL Lender's proposal and participated in the Transaction. Ex. 8.**

Response to Statement No. 16: Undisputed.

**Statement No. 17: The PTL Lenders held more than 50% of the Company's existing debt. Ex. 6.**

Response to Statement No. 17: Undisputed.

**The Terms of the Transaction**

**Statement No. 18: The Transaction provided for a new super-priority term loan facility with two tranches: (i) a $200 million new money tranche and (ii) a debt-for-debt exchange tranche, pursuant to which approximately $875 million of priority terms loans were issued as consideration for the open market purchase of approximately $1.2 billion of existing First Lien Term Loans and Second Lien Term Loans. Ex. 7.**

Response to Statement No. 18: Disputed. Exhibit 7, Serta's news release about the Transaction, does not use the term "open market purchase," and the Transaction did not involve an open market purchase. *See* Expert Declaration of Marti P. Murray dated March 16, 2023 ("Murray Decl.") ¶¶ 100-129; Expert Declaration of Sarah M. Ward dated March 16, 2023 ("Ward Decl.") ¶¶ 9-13, 73-79; Excluded Lenders' Memorandum of Law in Opposition to Plaintiffs' Motions for Partial Summary Judgment ("Excluded Lenders' Br.") Exs. A, U-Z.

**Statement No. 19: The Transaction employed an exchange ratio of $74 of super-priority "second out" debt in exchange for each $100 of Existing First Lien Term Loans and $39 of super-priority "second out" debt in exchange for each $100 of Existing Second Lien Term Loans. Ex. 8.**

Response to Statement No. 19: Undisputed.

**Statement No. 20: The Transaction reduced the Company's debt by approximately $400 million, lowered the Company's all-in interest expense and increased the Company's cash position to $300 million. Ex. 7.**

Response to Statement No. 20: Disputed. The Excluded Lenders have not had an opportunity to discover information that is essential to evaluating and responding to this Statement. Accordingly, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, to the extent this Statement is material to plaintiffs' motions for partial summary judgment, the Court should deny or defer considering the motion pending the completion of appropriate discovery.

*See Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986) (generally, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."); *Xerox Corp.* v. *Genmoora Corp*., 888 F.2d 345, 354 (5th Cir. 1989) ("Summary judgment should not . . . ordinarily be granted before discovery has been completed.") (internal quotation marks omitted).

**Statement No. 21: The Transaction also created new collateral for the benefit of all the existing lenders, including Defendants, which secured both the new priority term loans and the existing first lien loans *pari passu*. Ex. 9.**

Response to Statement No. 21: Disputed. The Transaction both added and removed some collateral and, in any event, as a practical matter, made all of the collateral unavailable to the non-participating lenders by subordinating them. *See* ECF #1-2 (Amendment to First Lien Term Loan Agreement dated June 22, 2020); ECF #70-4 (Ex. 9 to Serta Statement of Uncontested Facts, First Lien Intercreditor Agreement dated June 22, 2020).

**The Alternate Transaction**

**Statement No. 22: The Drop-Down Group put forth a proposed refinancing transaction to the Company in May 2020. Ex. 6.**

Response to Statement No. 22: Disputed. Term sheets concerning potential refinancing terms were exchanged between the parties and Serta terminated discussions before a proposal was finalized. *See* Declaration of Ryan Mollett dated March 16, 2023 ("Mollett Decl.") ¶¶ 11-14; Declaration of Michael Hanigan dated March 16, 2023 ("Hanigan Decl.") ¶¶ 5-8 & Exs. 1-8; Declaration of Theodore Kwon dated March 16, 2023 ("Kwon Decl.") ¶¶ 19, 21-23 & Exs. 1-8.

**<u>Statement No. 23:</u> The Drop-Down Group's proposal: (1) provided $200 million in new money and (2) exchanged approximately $630 million of their existing debt for approximately $470 million of new debt. *Id.***

<u>Response to Statement No. 23:</u> Disputed. The Excluded Lenders refer the Court to the term sheets that were exchanged for the terms they proposed for their complete and accurate contents. The discussions terminated before a proposal was finalized. *See* Mollett Decl. ¶¶ 11-14; Hanigan Decl. ¶¶ 5-8 & Exs. 1-8; Kwon Decl. ¶¶ 19, 21-23 & Exs. 1-8.

**<u>Statement No. 24:</u> The Drop-Down Group's proposal also called for the creation of a new bankruptcy remote subsidiary that would have been assigned the Company's valuable intellectual property (which secured the Company's existing First Lien debt). Certain real estate assets would have also been moved to this bankruptcy remote entity, and a pledge of the stock of Serta, Inc. would have been made to this new bankruptcy remote entity. This new bankruptcy remote entity would have been the Guarantor for the Drop-Down Group's new debt. *Id.***

<u>Response to Statement No. 24:</u> Disputed. More than one term sheet was exchanged, and the Excluded Lenders refer the Court to the term sheets for their complete and accurate contents. The discussions terminated before a proposal was finalized. *See* Mollett Decl. ¶¶ 11-14; Hanigan Decl. ¶¶ 5-8 & Exs. 1-8; Kwon Decl. ¶¶ 19, 21-23 & Exs. 1-8.

**<u>Statement No. 25:</u> The Drop-Down Group proposal would have increased the Company's total debt by $38 million and increased the Company's total interest payments by approximately $37 million. *Id.***

<u>Response to Statement No. 25:</u> Disputed. More than one term sheet was exchanged, and the Excluded Lenders refer the Court to the term sheets for their complete and accurate contents. The discussions terminated before a proposal was finalized. *See* Mollett Decl. ¶¶ 11-14; Hanigan Decl. ¶¶ 5-8 & Exs. 1-8; Kwon Decl. ¶¶ 19, 21-23 & Exs. 1-8.

**<u>The Company Amends the Term Loan Agreement to Effectuate the Transaction</u>**

**<u>Statement No. 26:</u> To effectuate the Transaction, the Company and the PTL Lenders entered into certain amendments to the Term Loan Agreement pursuant to section 9.02(b) of the Term Loan Agreement. ECF 1-2.**

<u>Response to Statement No. 26:</u> Disputed. The Excluded Lenders do not dispute that the Company and the Favored Lenders purported to make certain amendments to the Term Loan Agreement, but dispute that the amendments were permissible under section 9.02(b) of the Term Loan Agreement or under any other provision of that agreement.

**<u>Statement No. 27:</u> The Company entered into a separate Super-Priority Term Loan Agreement, dated June 22, 2020 (the "PTL Credit Agreement"). Ex. 10.**

<u>Response to Statement No. 27:</u> Undisputed.

**<u>Statement No. 28:</u> The Company entered into an Open Market Purchase and Cashless Exchange Agreement, dated June 22, 2020 (the "Exchange Agreement"). ECF 1-3.**

<u>Response to Statement No. 28:</u> The Excluded Lenders do not dispute that the Company entered into an agreement that it labeled as an Open Market Purchase and Cashless Exchange Agreement dated June 22, 2020, but dispute that the exchange effected by the agreement was, in fact, an open market purchase. *See* Murray Decl. ¶¶ 100-129; Ward Decl. ¶¶ 9-13, 73-79; Excluded Lenders' Br. Exs. A, U-Z.

**<u>Statement No. 29:</u> The Company entered into a First Lien Intercreditor Agreement, dated June 22, 2020. Ex. 9.**

<u>Response to Statement No. 29:</u> Undisputed.

**<u>Statement No. 30:</u> The Transaction closed on June 22, 2020. Ex. 11.**

<u>Response to Statement No. 30:</u> Undisputed.

**<u>Legal Challenges to the Transaction</u>**

**<u>Statement No. 31:</u> On June 11, 2020, the Drop-Down Group filed a complaint in New York state court seeking a temporary restraining order and preliminary injunction to halt the Transaction. Ex. 12.**

<u>Response to Statement No. 31:</u> Undisputed.

**Statement No. 32: On June 18, 2020, LCM's collateral manager simultaneously sought to intervene in the Drop-Down Group Action and filed its own separate complaint in New York state court on behalf of LCM entities that are issuers of collateralized loan obligations ("LCM CLOs"). Ex. 13.**

Response to Statement No. 32: Undisputed.

**Statement No. 33: The New York state court denied the Drop-Down Group's request for a preliminary injunction on June 19, 2020. Ex. 14.**

Response to Statement No. 33: Undisputed.

**Statement No. 34: The Drop-Down Group moved to voluntarily discontinue their New York state court action over the Company's objection on July 10, 2020. Ex. 15.**

Response to Statement No. 34: Undisputed.

**Statement No. 35: The New York state court granted the Drop-Down Group's motion to voluntarily discontinue on November 30, 2020. Ex. 16.**

Response to Statement No. 35: Undisputed.

**Statement No. 36: LCM's collateral manager withdrew its request to intervene in the Drop-Down Group New York state action and voluntarily discontinued their standalone action without prejudice on July 2, 2020. Ex. 17.**

Response to Statement No. 36: Undisputed.

**Statement No. 37: On July 2, 2020, a subgroup of LCM CLOs holding approximately $7.4 million in First Lien Term Loans, filed a new suit in the Southern District of New York against the Company and the PTL Lenders, alleging the Transaction breached the Term Loan Agreement. Ex. 18.**

Response to Statement No. 37: Undisputed.

**Statement No. 38: The Southern District of New York dismissed that action for lack of subject matter jurisdiction on March 10, 2021. Ex. 19.**

Response to Statement No. 38: Undisputed.

**Statement No. 39: The same subgroup of LCM CLOs filed a new action in the Southern District of New York on May 4, 2021, naming only the Company as a defendant. Ex. 20.**

Response to Statement No. 39: Undisputed.

**Statement No. 40: The Southern District of New York denied the Company's motion to dismiss in that action on March 29, 2022. Ex. 21.**

   Response to Statement No. 40: Undisputed.

**Statement No. 41: Almost two years after voluntarily discontinuing their lawsuit, the Drop-Down Group refiled a complaint against the Company and the PTL Lenders asserting claims arising out of the Transaction in New York state court on November 3, 2022. Ex. 22.**

Response to Statement No. 41: Undisputed.

**Statement No. 42: The Company filed for chapter 11 protection in this Court on January 23, 2023. Ex. 23.**

Response to Statement No. 42: Undisputed.

**Statement No. 43: The Drop-Down Group removed the portion of their New York state court case against the PTL Lenders to the Southern District of New York on January 23, 2023 (shortly after the Company filed for chapter 11). Ex.24.**

Response to Statement No. 43: Undisputed.

**North Star Attempted Purchase of First Lien Term Loans**

**Statement No. 44: Defendant North Star does not hold any of the Company's debt and is not a party to the Term Loan Agreement. Ex. 8.**

Response to Statement No. 44: Disputed. *See* Kwon Decl. ¶¶ 3-18, 20; Excluded Lenders' Br. Exs. S-T.

**Statement No. 45: Defendant North Star attempted to purchase First Lien Term Loans on the secondary market in March 2020. Ex. 25.**

Response to Statement No. 45: Undisputed.

**Statement No. 46: Although North Star attempted to settle the trades and submitted assignment agreements to the Agent, the trades did not settle. ECF 66 ¶ 290.**

Response to Statement No. 46: Disputed. *See* Kwon Decl. ¶¶ 3-15; Excluded Lenders' Br. Exs. S-T.

**Statement No. 47: Defendant North Star is an affiliate of Apollo Global Management, Inc. *Id.* ¶ 23.**

Response to Statement No. 47: Undisputed.

**Statement No. 48: Apollo Investment Corporation is a Disqualified Institution. Ex. 26.**

Response to Statement No. 48: Disputed. See response to Statement No. 49

**Statement No. 49: The Company notified the Agent that Defendant North Star was a Disqualified Institution (as that term is defined in the Term Loan Agreement). Ex. 27.**

Response to Statement No. 49: Disputed. To the extent that the Company gave such notice, it was invalid. *See* ECF No. 72-10 [filed under seal] (Ex. 27 to Serta Statement of Uncontroverted Facts, May 19, 2020 email); Kwon Decl. ¶¶ 3-18, 20; Excluded Lenders' Br. Exs. S-T.

## STATEMENT OF ADDITIONAL MATERIAL FACTS

The following are additional material facts that the Excluded Lenders contend support summary judgment in favor of the Excluded Lenders or which, at a minimum, are facts as to which there is a genuine dispute and which preclude granting summary judgment to Plaintiffs.

50. The Unlawful Exchange Transaction was not an "open market purchase" within the meaning of Section 9.05(g) of the Credit Agreement. *See* Murray Decl. ¶¶ 100-129; Ward Decl. ¶¶ 9-13, 73-79; Excluded Lenders' Br., Exs. A, U-Z.

51. The Favored Lenders did not share the proceeds from the Unlawful Exchange Transaction with the Excluded Lenders as required under the *pro rata* sharing provisions in Section 2.18(c) of the Credit Agreement.

52. Serta recognized that the Unlawful Exchange Transaction would harm its relationship with those lenders who did not participate in the transaction. *See* ECF No. 72-5 (Ex. 6 to Serta Statement of Uncontroverted Facts, June 5, 2020 Slide Deck at slide 12).

53. Serta and the Favored Lenders breached the duty of good faith and fair dealing which is implied in the Credit Agreement by using their position as majority lenders to illegally usurp the Excluded Lenders' rights to collateral that were contractually superior to all

others in the event of a default, and to share ratably in all payments of principal and interest on the loans, thereby destroying the Excluded Lenders' rights to receive the fruits of the Credit Agreement. (*See* Mollett Decl. ¶¶ 5-16; Ryan Decl. ¶¶ 5-6; Kreutzer Decl. ¶¶ 5-6; Excluded Lenders' Br. Ex. F.)

Dated: New York, New York
March 16, 2023

**FRIEDMAN KAPLAN SEILER ADELMAN & ROBBINS LLP**

s/ Eric Seiler
Lawrence S. Robbins*
Eric Seiler*
Anne E. Beaumont*
Jamuna D. Kelley*
Blair R. Albom*
7 Times Square
New York, NY 11036-6516
(212) 833-1100
lrobbins@fklaw.com
eseiler@fklaw.com
abeaumont@fklaw.com
jkelley@fklaw.com
balbom@fklaw.com

*Attorneys for the Excluded Lenders*

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Kenneth S. Ziman*
Brian S. Hermann*
Lewis R. Clayton*
Andrew J. Ehrlich*
Michael J. Colarossi*
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
kziman@paulweiss.com
bhermann@paulweiss.com
lclayton@paulweiss.com
aehrlich@paulweiss.com
mcolarossi@paulweiss.com

*Attorneys for the Excluded Lenders with respect to Plaintiffs' Claims and Counterclaims Only*

**PORTER HEDGES LLP**
John F. Higgins (TX 09597500)
M. Shane Johnson (TX 24083263)
Megan N. Young-John (TX 24088700)
1000 Main Street, 36th Floor
Houston, TX 77002
(713) 226-6000
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com

**admitted pro hac vice*

*Attorneys for the Excluded Lenders with respect to Plaintiffs' Claims and Counterclaims Only*