# EXHIBIT D
# (Part 1 of 4)

# EXHIBIT 3

*EXECUTION VERSION*

OPEN MARKET PURCHASE AND CASHLESS EXCHANGE AGREEMENT

by and among

DAWN INTERMEDIATE, LLC,

SERTA SIMMONS BEDDING, LLC,

NATIONAL BEDDING COMPANY, L.L.C.,

SSB MANUFACTURING COMPANY,

and

THE SPECIFIED LENDERS
LISTED ON THE SIGNATURE PAGES HERETO

Dated as of June 22, 2020

# TABLE OF CONTENTS

**Page**

ARTICLE I DEFINITIONS ......................................................................................................... 2
    1.1.    Definitions ............................................................................................................ 2
    1.2.    Interpretation ....................................................................................................... 4

ARTICLE II PURCHASE, RELEASE AND EXTINGUISHMENT ....................................... 4
    2.1.    First Lien and Second Lien Debt Purchase and Other Transactions .................. 4
    2.2.    Purchase Effective Date Deliverables ................................................................ 5
    2.3.    Releases ............................................................................................................... 5
    2.4.    Compensation ...................................................................................................... 7
    2.5.    Premiums Non-Refundable .................................................................................. 7

ARTICLE III REPRESENTATIONS AND WARRANTIES OF THE COMPANY
PARTIES ....................................................................................................................................... 7
    3.1.    Power and Authority ........................................................................................... 7
    3.2.    Enforceability ...................................................................................................... 8
    3.3.    Governmental Consents; No Conflicts ................................................................ 8
    3.4.    . ........................................................................................................................... 8

ARTICLE IV REPRESENTATIONS AND WARRANTIES OF THE Specified Lenders ...................... 8
    4.1.    Power and Authority ........................................................................................... 8
    4.2.    Enforceability ...................................................................................................... 8
    4.3.    Governmental Consents; Compliance with Laws ............................................... 8
    4.4.    Receipt of Information ......................................................................................... 8
    4.5.    Sophistication ...................................................................................................... 9
    4.6.    Certain Tax Matters ............................................................................................ 9
    4.7.    Others .................................................................................................................. 9
    4.8.    Required Lenders ................................................................................................ 9

ARTICLE V GENERAL PROVISIONS .................................................................................. 10
    5.1.    Notices ............................................................................................................... 10
    5.2.    Partial Invalidity ............................................................................................... 10
    5.3.    Execution in Counterparts ................................................................................ 11
    5.4.    Governing Law; Waiver of Jury Trial .............................................................. 11
    5.5.    Assignment; Successors and Assigns ............................................................... 11
    5.6.    Titles and Headings .......................................................................................... 11
    5.7.    Entire Agreement; Amendments ...................................................................... 11
    5.8.    Waivers ............................................................................................................. 12
    5.9.    Termination ....................................................................................................... 12
    5.10.    Representation by Counsel ................................................................................ 12
    5.11.    Further Assurances ........................................................................................... 12
    5.12.    Confidentiality .................................................................................................. 12

**OPEN MARKET PURCHASE AND CASHLESS EXCHANGE AGREEMENT**

This OPEN MARKET PURCHASE AND CASHLESS EXCHANGE AGREEMENT (this "Exchange Agreement") is dated as of June 22, 2020, by and among (i) Dawn Intermediate, LLC, a Delaware limited liability company ("Holdings"), (ii) Serta Simmons Bedding, LLC, a Delaware limited liability company (the "Top Borrower"), (iii) SSB Manufacturing Company, a Delaware corporation ("SSB Manufacturing" and, together with the Top Borrower, the "Specified Borrowers"), (iv) National Bedding Company, L.L.C., an Illinois limited liability company ("National Bedding" and, together with the Top Borrower, Holdings and SSB Manufacturing, the "Company Parties"), (v) the undersigned First Lien Lenders (as defined below) who are signatory hereto (collectively, the "Specified First Lien Lenders") and (vi) the undersigned Second Lien Lenders (as defined below) who are signatory hereto (collectively, the "Specified Second Lien Lenders" and, together with the Specified First Lien Lenders, the "Specified Lenders"). The Company Parties, each Specified Lender and each other Person that becomes a party hereto in accordance with the terms hereof are collectively referred to as the "Parties" and individually as a "Party."

W I T N E S S E T H

WHEREAS, the Company Parties are party to that certain First Lien Term Loan Agreement, dated as of November 8, 2016, by and among the Company Parties, UBS AG, Stamford Branch, as administrative agent (in such capacity, together with its successors and assigns in such capacity, the "First Lien Bank Agent"), and the lenders from time to time party thereto (solely in their capacity as such, the "First Lien Lenders") (the "Existing First Lien Credit Agreement" and as amended by that certain Amendment No. 1 to First Lien Term Loan Agreement, dated as of June 22, 2020, and as further amended, supplemented or otherwise modified from time to time, the "First Lien Credit Agreement" and the loans thereunder, the "Existing First Lien Term Loans");

WHEREAS, the Company Parties are party to that certain Second Lien Term Loan Agreement, dated as of November 8, 2016, by and among the Company Parties, Goldman Sachs Bank USA, as administrative agent (in such capacity, together with its successors and assigns in such capacity, the "Second Lien Bank Agent"), and the lenders from time to time party thereto (solely in their capacity as such, the "Second Lien Lenders") (the "Existing Second Lien Credit Agreement" and as amended by that certain Amendment No. 1 to Second Lien Term Loan Agreement, dated as of June 22, 2020, and as further amended, supplemented or otherwise modified from time to time, the "Second Lien Credit Agreement" and the Loans thereunder, the "Existing Second Lien Term Loans" and, together with the Existing First Lien Term Loans, the "Existing Term Loans");

WHEREAS, the Top Borrower, SSB Manufacturing and National Bedding (collectively, the "Borrowers"), Holdings, the Specified Lenders and UBS AG, Stamford Branch, as administrative agent (in such capacity, together with its successors and assigns in such capacity, the "Priority Lien Agent" and, together with the First Lien Bank Agent and the Second Lien Bank Agent, the "Bank Agents") are entering into that certain Super-Priority Term Loan Credit Agreement, dated as of the date hereof (the "PTL Credit Agreement"), which provides for a super-priority term loan credit facility, comprised of a (i) $200,000,000 super-priority new money term loan tranche and (ii) up to a $875,000,000 super-priority exchange term loan tranche, consisting of Initial Exchanged Term Loans (as defined below);

WHEREAS, Holdings is entering into that certain Support and Standstill Agreement, dated as of the date hereof (the "Support and Standstill Agreement") with each of the holders party thereto (the "Holders");

WHEREAS, the Specified Borrowers have engaged in negotiations with each Specified Lender regarding the consummation of an open market purchase of the Existing Term Loans owned by

such Specified Lender and as a result of such negotiations, the Specified Borrowers have agreed with such Specified Lender that, on the Purchase Effective Date (as defined below), (i) with respect to each Specified First Lien Lender, pursuant to Section 9.05(g) of the First Lien Credit Agreement, the Specified Borrowers will purchase on the open market from such Specified Lender all of its Existing First Lien Term Loans as reflected in the Register (as defined in the First Lien Credit Agreement) as of the Purchase Effective Date (collectively, all Existing First Lien Term Loans of all Specified Lenders being purchased pursuant to this Exchange Agreement, the "Purchased First Lien Loans") and the consideration for such purchase shall be the issuance to such Specified First Lien Lender of Initial Exchanged Term Loans on the terms and subject to the conditions set forth herein, and (ii) with respect to each Specified Second Lien Lender, pursuant to Section 9.05(g) of the Second Lien Credit Agreement, the Specified Borrowers will purchase on the open market from such Specified Lender all of its Existing Second Lien Term Loans as reflected in the Register (as defined in the Second Lien Credit Agreement) as of the Purchase Effective Date (collectively, all Existing Second Lien Term Loans of all Specified Lenders being purchased pursuant to this Exchange Agreement, the "Purchased Second Lien Loans") and the consideration for such purchase shall be the issuance to such Specified Second Lien Lender of Initial Exchanged Term Loans on the terms and subject to the conditions set forth herein;

WHEREAS, Section 2.18(c) under each of the Existing First Lien Credit Agreement and the First Lien Credit Agreement does not apply to any payments made as consideration for the assignment of Existing First Lien Term Loans pursuant to Section 9.05 thereof;

WHEREAS, Section 2.18(c) under each of the Existing Second Lien Credit Agreement and the Second Lien Credit Agreement does not apply to any payments made as consideration for the assignment of Existing Second Lien Term Loans pursuant to Section 9.05 thereof;

WHEREAS, on the Purchase Effective Date, among other things: (a) in exchange for the consideration set forth herein, (i) each Specified First Lien Lender will sell, assign and transfer their Purchased First Lien Loans to the Specified Borrowers and (ii) each Specified Second Lien Lender will sell, assign and transfer their Purchased Second Lien Loans to the Top Borrower; (b) each Specified Borrower shall immediately retire and cancel the Purchased First Lien Loans and Purchased Second Lien Loans purchased by it; and (c) (i) each Specified First Lien Lender shall receive from the Company Parties an agreed and specified principal amount of Initial Exchanged Term Loans as set forth on such Specified First Lien Lender's signature page hereto and (ii) each Specified Second Lien Lender shall receive from the Company Parties an agreed and specified principal amount of Initial Exchanged Term Loans as set forth on such Specified Second Lien Lender's signature page hereto.

NOW, THEREFORE, in consideration of the mutual terms, conditions, and other covenants and agreements set forth herein, the Parties hereby agree as follows:

## ARTICLE I
## DEFINITIONS

1.1.    **Definitions**.  In addition to the other words and terms defined elsewhere in this Exchange Agreement, as used in this Exchange Agreement, the following words and terms have the meanings specified or referred to below:

"Affiliates" has the meaning set forth in the PTL Credit Agreement.

"Business Day" means any day other than a Saturday, Sunday, or other day on which commercial banks are authorized to close under the Laws of, or are in fact closed in, the state of New York.

"Causes of Action" means any and all claims, actions, causes of action, choses in action, suits, debts, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, whether direct, indirect, derivative, or otherwise, and whether arising in law, equity or otherwise.

"Closing Date" has the meaning set forth in the PTL Credit Agreement.

"Governmental Entity" means any domestic or foreign, national, supranational, federal, state, municipal, county, city, local or other administrative, legislative, regulatory or other governmental authority, commission, agency, court of competent jurisdiction or other judicial entity, tribunal, office, principality, registry, legislative, regulatory or self-regulatory body, instrumentality, or quasi-governmental agency, commission or authority or any arbitrator or arbitral tribunal.

"Initial Exchanged Term Loans" means those new super-priority senior secured term loans to be issued by the Borrowers to the Specified First Lien Lenders and the Specified Second Lien Lenders under the PTL Credit Agreement in the principal amount thereof specified on such Person's signature page hereto.

"Law" means any federal, state, local or foreign law (including common law), statute, code, ordinance, directive, rule, regulation, Order or other requirement of or rule or law promulgated, issued, enforced or entered by any Governmental Entity.

"Liens" means any mortgage, deed of trust, lien, hypothecation, pledge, charge, assessment, security interest, lease, lien, adverse claim, levy, charge or other encumbrance of any kind.

"New Money Term Loans" has the meaning set forth in the PTL Credit Agreement.

"Order" means any order, consent, injunction, judgment, decree, stipulation, ruling, opinion, decision, writ, assessment or arbitration award, including any consent decree or consent agreement.

"Person" means any individual, corporation, partnership, limited liability company, trust, joint stock company, business trust, unincorporated association, joint venture, Governmental Entity or other entity of any nature whatsoever.

"Priority Lien Obligations" means the sum of (i) the principal amount of outstanding Loans (as defined in the PTL Credit Agreement) plus (ii) accrued and unpaid interest on such outstanding Loans (as defined in the PTL Credit Agreement).

"Purchase Effective Date" means the date on which the First Lien Debt Purchases and the Second Lien Debt Purchases are consummated.

"Related Persons" means, with respect to any specified Person, such Person's current or former affiliates, and each of its and their current or former affiliates' respective current and former directors, managers, officers, control persons, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, participants, managed accounts or funds, fund advisors, predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, investment managers, and other professionals (including any attorneys,

accountants, consultants, financial advisors, investment bankers and other professionals retained by such persons), together with their respective successors and assigns, each solely in its capacity as such.

"Required Specified First Lien Lenders" means Specified First Lien Lenders holding more than 50% of the aggregate outstanding principal amount of the Purchased First Lien Loans.

"Required Specified Lenders" means, as of the relevant date, each of (i) the Required Specified First Lien Lenders and (ii) the Required Specified Second Lien Lenders.

"Required Specified Second Lien Lenders" means Specified Second Lien Lenders holding more than 50% of the aggregate outstanding principal amount of the Purchased Second Lien Loans.

**1.2.** **Interpretation**. Unless the context of this Exchange Agreement otherwise requires, (i) words of any gender include each other gender, (ii) words using the singular or plural number also include the plural or singular number, respectively, (iii) the terms "hereof," "herein," "hereby" and derivative or similar words refer to this entire Exchange Agreement, (iv) the terms "Article", "Section", or "Exhibit" refer to the specified Article or Section of or Exhibit attached to this Exchange Agreement, (v) the words "include," "includes" and "including" shall be deemed to be followed by the phrase "without limitation" and (vi) the word "will" shall be construed to have the same meaning and effect as the word "shall."

**ARTICLE II**
**PURCHASE, RELEASE AND EXTINGUISHMENT**

**2.1.** **First Lien and Second Lien Debt Purchase and Other Transactions**. Subject to the terms and conditions hereof:

(a) On the Purchase Effective Date, pursuant to Section 9.05(g) of the First Lien Credit Agreement each of the Specified First Lien Lenders shall sell, assign and transfer its Purchased First Lien Loans to the Specified Borrowers pursuant to the Master Assignment Agreement set forth as Exhibit A hereto (each, a "First Lien Debt Purchase"). In consideration of the applicable First Lien Debt Purchase, each Specified First Lien Lender shall receive from the Borrowers the amount of Initial Exchanged Term Loans equal to 74.0% of the amount of such Specified First Lien Lender's Purchased First Lien Loans.

(b) On the Purchase Effective Date, pursuant to Section 9.05(g) of the Second Lien Credit Agreement each of the Specified Second Lien Lenders shall sell, assign and transfer its Purchased Second Lien Loans to the Top Borrower pursuant to the Master Assignment Agreement set forth as Exhibit B hereto (the "Second Lien Debt Purchase"). In consideration of the Second Lien Debt Purchase, each of the Specified Second Lien Lenders shall receive from the Borrowers the amount of Initial Exchanged Term Loans equal to 39.0% of such Specified Second Lien Lender's Purchased Second Lien Loans.

(c) The Specified Borrowers, as assignees and holders of (i) all of the Purchased First Lien Loans and (ii) all of the Purchased Second Lien Loans, and each Specified First Lien Lender or Specified Second Lien Lender, as applicable, hereby instruct the First Lien Bank Agent or the Second Lien Bank Agent, as applicable, to execute the Master Assignment Agreement and process and record each assignment

4

in connection with the First Lien Debt Purchase or Second Lien Debt Purchase, as applicable, on the Purchase Effective Date.

(d) On the Purchase Effective Date, pursuant to Section 9.05(g) of the First Lien Credit Agreement and Section 9.05(g) of the Second Lien Credit Agreement, the Specified Borrowers, as assignees and holders of all of the Purchased First Lien Loans and the Top Borrower, as assignee and holder of all of the Purchased Second Lien Loans, shall immediately retire and cancel all Purchased First Lien Loans and Purchased Second Lien Loans held by such Borrower and shall direct (i) the First Lien Bank Agent to record the cancellation of the Purchased First Lien Loans pursuant to Section 9.05(g) of the First Lien Credit Agreement in the Register (as defined in the First Lien Credit Agreement) and (ii) the Second Lien Bank Agent to record in the Register (as defined in the Second Lien Credit Agreement) the cancellation of the Purchased Second Lien Loans pursuant to Section 9.05(g) of the Second Lien Credit Agreement, in each case immediately following the First Lien Debt Purchase and the Second Lien Debt Purchase, respectively.

(e) On the Purchase Effective Date, the Specified Borrowers' obligation to issue Initial Exchanged Term Loans to each Specified Lender under the PTL Credit Agreement shall be deemed to have been fully performed and satisfied upon the consummation of the transactions contemplated by this Section 2.1.

(f) Each of the Specified Lenders hereby consents, requests and instructs each Bank Agent to take any and all actions as such Bank Agent, in its sole discretion, may determine to be necessary, advisable or desirable in carrying out, effectuating or otherwise in furtherance of the transactions set forth in this Section 2.1 and the express consents, requests and instructions of the Specified Lenders.

(g) After giving effect to the foregoing, each of the Specified Lenders hereby ratifies any and all actions taken (or not taken) by any Bank Agent as such Bank Agent, in its sole discretion, may determine to be necessary, advisable or desirable in carrying out, effectuating or otherwise in furtherance of the transactions set forth in this Section 2.1 and the express consents, requests and instructions of the Specified Lenders.

**2.2.** **Purchase Effective Date Deliverables**. On the Purchase Effective Date, the Specified Lenders shall deliver to the Company Parties an executed copy of each Master Assignment Agreement and, to the extent requested by the Company Parties, a duly completed and executed IRS Form W-9 or W-8 (as applicable) of each Specified Lender. The Company Parties and each Specified Lender agree to use commercially reasonable efforts to cooperate with each other in good faith to execute and deliver such other instruments, notices and other documents as may be reasonably necessary to effectuate the consummation of this Exchange Agreement and the transactions contemplated hereby. Each Specified Lender that has signed and released its signature page to this Exchange Agreement shall be deemed (x) to have consented to, approved or accepted, or to be satisfied with, each document or other matter required hereunder to be consented to or approved by, or acceptable or satisfactory to, a Specified Lender and (y) to have acknowledged and agreed that all conditions precedent to the transactions set forth in Section 2.1 have been satisfied or waived.

**2.3.** **Releases**.

(a)   Each of the Company Parties hereby unconditionally and forever releases, waives and discharges all Causes of Action that could have been, or may be, asserted by or on behalf of such Company Parties (or any affiliate thereof) against each of the Bank Agents, the Specified Lenders and the Related Persons of any of the foregoing (other than (i) the Company Parties themselves or (ii) any equity holder of Holdings) that are based in whole or in part on any act, omission, transaction, event, occurrence or facts or circumstances taking place, being omitted, existing or otherwise arising on or prior to the Purchase Effective Date in any way relating to any debts or securities issued by the Company Parties or the transactions contemplated by this Exchange Agreement (including the PTL Credit Agreement, the First Lien Credit Agreement and the Second Lien Credit Agreement, and the loans made pursuant to the terms thereof), or any transaction, contract, instrument, release, or other agreement or document created or entered into in connection therewith or herewith, in each case to the fullest extent provided by applicable law.

(b)   Each of the Specified Lenders hereby unconditionally and forever releases, waives and discharges all Causes of Action that could have been, or may be, asserted by or on behalf of such Specified Lender (or any affiliate thereof) against each of the Bank Agents, the Company Parties and the Related Persons of any of the foregoing (other than the Specified Lenders themselves) that are based in whole or in part on any act, omission, transaction, event, occurrence or facts or circumstances taking place, being omitted, existing or otherwise arising on or prior to the Purchase Effective Date in any way relating to any debts or securities issued by the Company Parties or the transactions contemplated by this Exchange Agreement (including the PTL Credit Agreement, the First Lien Credit Agreement and the Second Lien Credit Agreement, and the loans made pursuant to the terms thereof), or any transaction, contract, instrument, release, or other agreement or document created or entered into in connection therewith or herewith, in each case to the fullest extent provided by applicable law.

(c)   Each of the Parties represents and warrants that they have not, prior to the Purchase Effective Date, (i) assigned or otherwise transferred any of the Causes of Action released pursuant to this Section 2.3, and (ii) individually or with any other person or entity, filed or commenced any charges, lawsuits, complaints or proceedings (a "Proceeding") with any court, governmental agency or arbitration tribunal with respect to any Cause of Action released pursuant to this Section 2.3.  Each of the Parties covenants and agrees that after the Purchase Effective Date, such Party will not, and will cause each of its affiliates not to, individually or with any other person or entity file or commence any such Proceeding with respect to any Cause of Action released pursuant to this Section 2.3, and if notwithstanding the foregoing, any such Proceeding is so commenced, then the Party commencing such Proceeding (or whose affiliate commences such Proceeding) shall immediately cause it to be dismissed, and the Party or other released person or entity subject thereto shall have the right to be reimbursed by the Party that commenced such Proceeding (or whose affiliate commenced such Proceeding) for all reasonable fees, costs and expenses incurred in connection therewith, without limitation of any other rights and remedies.

(d)   No Bank Agent or any of its Related Persons shall have any liability to any Specified Lender, any Company Party or any Related Persons of any of the foregoing for any losses, costs, damages or liabilities incurred, directly or indirectly, as a result of any Bank Agent or any of its Related Persons, or their counsel or other

representatives, taking or not taking any action in accordance with the express terms of this Exchange Agreement or the consents, requests and/or instructions of the Specified Lenders.

2.4.  **Compensation**. In connection with, and in consideration of the agreements contained in this Exchange Agreement, the PTL Credit Agreement, and the Support and Standstill Agreement, the Specified Borrowers hereby agree to pay (or cause to be paid) the following premiums:

(a)   To the Priority Lien Agent, for the benefit of the Specified Lenders, an upfront premium equal to 1.50% of the aggregate amount of the New Money Term Loans to be provided on the Closing Date (which upfront premium may be structured as an original issue discount or may be paid (including by way of net funding) out of the New Money Term Loan proceeds when funded on the Closing Date (the "***Upfront Premium***")), in each case, which Upfront Premium shall be due and payable to the PTL Lenders under the PTL Credit Agreement on, and subject to the occurrence of, the Closing Date and the funding of the New Money Term Loans, based on their ratable share (or purchased share) of the New Money Term Loans provided on the Closing Date.

(b)   To the Priority Lien Agent, for the benefit of the Holders, a backstop premium equal to 1.50% of the aggregate amount of New Money Term Loans to be provided on the Closing Date (which backstop premium may be structured as an original issue discount or may be paid (including by way of net funding) out of the New Money Term Loan proceeds when funded on the Closing Date (the "***Backstop Premium***" and together with the Upfront Premium, the "***Premiums***")), which Backstop Premium shall be due and payable solely to, and deemed fully earned by, the Holders who have agreed to enter into the Support and Standstill Agreement, and have executed the PTL Credit Agreement on the Closing Date, based on their ratable share (or purchased share) of the New Money Term Loans provided on, and subject to the occurrence of, the Closing Date and the funding of the New Money Term Loans.

2.5.   **Premiums Non-Refundable**.   The Premiums hereunder or any part thereof, once paid, are nonrefundable under any circumstance and not creditable against any other premium payable in connection with any Loan Document (as defined in the PTL Credit Agreement) or otherwise. All Premiums payable hereunder shall be paid in immediately available funds in U.S. dollars free and clear of and without deduction for any and all present or future applicable taxes, levies, imposts, deductions, charges or withholdings, and all liabilities with respect thereto (with appropriate gross-up for withholding taxes). Without limiting the foregoing, the obligation of the Specified Borrowers to pay the Premiums when due hereunder, or to cause the Premiums to be paid when due, shall be absolute and unconditional and shall not be subject to reduction by way of setoff or counterclaim or otherwise.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF
## THE COMPANY PARTIES

Each of the Company Parties represents and warrants, on a joint and several basis, to each of the Specified Lenders and the Bank Agents as follows:

3.1.   **Power and Authority**.   It has and shall maintain all requisite corporate, partnership or limited liability company power and authority to enter into this Exchange Agreement and to carry out the transactions contemplated by, and perform its respective obligations under this Exchange Agreement,

and the execution and delivery of this Exchange Agreement by it and the performance of its obligations hereunder have been duly authorized by all necessary action on its part.

      **3.2.**   **Enforceability**.  This Exchange Agreement is the legally valid and binding obligation of it, enforceable in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency, reorganization or other similar laws and equitable principles limiting creditors' rights generally.

      **3.3.**   **Governmental Consents; No Conflicts.**  The execution, delivery, and performance by it of this Exchange Agreement (a) does not and shall not require any material registration or material filing with, material consent or material approval of, or material notice to, or other action to, with, or by, any Federal, state, or other governmental authority or regulatory body, except (i) such filings as may be necessary and/or required for disclosure by the Securities and Exchange Commission and applicable state securities or "blue sky" laws and (ii) (A) filings of amended articles of incorporation or formation or other organizational documents with applicable state authorities and (B) other registrations, filings, consents, approvals, notices, or other actions that are reasonably necessary to maintain permits, licenses, qualifications, and governmental approvals to carry on the business of the Company Parties, (b) will not violate any (i) of such Company Party's organizational documents or (ii) Law applicable to such Company Party which violation, in the case of this clause (b)(ii), could reasonably be expected to have a Material Adverse Effect (as defined in the First Lien Credit Agreement) and (c) will not violate or result in a default under any material contractual obligation to which such Credit Party is a party which violation, in the case of this clause (c), could reasonably be expected to result in a Material Adverse Effect (as defined in the First Lien Credit Agreement).

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF THE SPECIFIED LENDERS

      Each of the Specified Lenders hereby represents and warrants, and, subject to <u>Section 4.8</u>, certifies, severally and not jointly, to the Company Parties and the Bank Agents, as follows:

      **4.1.**   **Power and Authority**.  Such Specified Lender has and shall maintain all requisite corporate, partnership or limited liability company power and authority to enter into this Exchange Agreement and to carry out the transactions contemplated by, and perform its respective obligations under this Exchange Agreement, and the execution and delivery of this Exchange Agreement by it, and the performance of its obligations hereunder have been duly authorized by all necessary action on its part.

      **4.2.**   **Enforceability**.  This Exchange Agreement is the legally valid and binding obligation of it, enforceable in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency, reorganization or other similar laws and equitable principles limiting creditors' rights generally.

      **4.3.**   **Governmental Consents; Compliance with Laws**.  The execution, delivery, and performance by it of this Exchange Agreement does not and shall not require any material registration or material filing with, material consent or material approval of, or material notice to, or other action to, with, or by, any Federal, state, or other governmental authority or regulatory body.

      **4.4.**   **Receipt of Information**.  It has received updated financial and operating information relating to the Company Parties and their subsidiaries and has been afforded the opportunity to ask questions of, and to discuss with, the Company Parties, the Company Parties' operating results, financial condition and liquidity position, and such Specified Lender acknowledges that the Company Parties are

currently seeking to restructure their indebtedness in order to deleverage the Company Parties and avoid the possibility of a near-term default under their indebtedness.

       4.5.    **Sophistication**.  It has independently and without reliance upon the Company Parties, the Bank Agents or any of their respective affiliates, and based on such information as it has deemed appropriate, made its own analysis and decision to enter into this Exchange Agreement, except that it has relied upon the Company Parties' express representations, warranties, covenants and agreements in this Exchange Agreement. Such Specified Lender can bear the economic risk of the transactions contemplated hereby. Such Specified Lender has sufficient knowledge and experience in financial or business matters that such Specified Lender is capable of evaluating the merits and risks of the transactions contemplated hereby. Such Specified Lender acknowledges and agrees that (1) the Specified Borrowers or their subsidiaries or affiliates may have, and later may come into possession of, material non-public information with respect to Holdings, the Specified Borrowers and/or any of their respective subsidiaries and/or their respective securities ("MNPI"), (2) it has made its own analysis and determination to participate in the transactions contemplated by this Exchange Agreement (including the First Lien Debt Purchase and/or the Second Lien Debt Purchase, as applicable, and the respective Master Assignment Agreements) notwithstanding such Specified Lender's lack of knowledge of the MNPI, (3) none of Holdings, any Borrower, any of their respective subsidiaries, any Bank Agent, or any of their respective Affiliates shall have any liability to such Specified Lender, and such Specified Lender hereby waives and releases, to the extent permitted by applicable Law, any claims it may have against Holdings, each Borrower, each of their respective subsidiaries, each Bank Agent and each of their respective Affiliates, under applicable Law or otherwise, with respect to the nondisclosure of the MNPI and (4) the MNPI may not be available to any of the Bank Agents or the other Specified Lenders.

       4.6.    **Certain Tax Matters**.  The information provided to the Specified Borrowers by it in any IRS Form W-9 or W-8 (as applicable), and any other information provided to such Borrower by it, is true, complete and correct in all material respects. It will notify the Top Borrower promptly if any information contained in an IRS Form W-9 or W-8 or any other tax related information provided to any Specified Borrower (or its agents) becomes untrue, misleading or otherwise requires updating at any time. It agrees to provide each Borrower (or its agents) in a timely manner any additional tax information or documentation that such Borrower (or its agents) reasonably believe is required or will enable such Borrower to comply with or mitigate any of its tax reporting, tax withholding, and/or tax compliance obligations, or which may arise as a result of a change in law or in the interpretation thereof.

       4.7.    **Others**.  It is the legal and beneficial owner of the Purchased First Lien Loans or Purchased Second Lien Loans, as applicable, set forth on such Specified Lender's signature page hereto in the principal amount indicated therein and that such Purchased First Lien Loans or Purchased Second Lien Loans, as applicable, are being sold, assigned and transferred free and clear or any Lien or other adverse claim. Such Specified Lender acknowledges that the Company Parties will rely upon the truth and accuracy of the above acknowledgments, representations and agreements. It agrees that if any of the acknowledgments, representations or agreements it is deemed to have made by it is no longer accurate, it will promptly notify the Company Parties. It hereby consents to such reliance.

       4.8.    **Required Lenders**.  Prior to giving effect to Section 2.1 hereof, the Specified First Lien Lenders constitute "Required Lenders" under and as defined in the First Lien Credit Agreement. Prior to giving effect to Section 2.1 hereof, the Specified Second Lien Lenders constitute "Required Lenders" under and as defined in the Second Lien Credit Agreement.

## ARTICLE V
## GENERAL PROVISIONS

**5.1.** **Notices**. All notices and other communications given or made pursuant to this Exchange Agreement shall be in writing and (a) if sent by hand or overnight courier service, or mailed by certified or registered mail, shall be deemed to have been given when delivered in person or by courier service and signed for against receipt thereof or three Business Days after dispatch if sent by certified or registered mail, in each case, delivered, sent or mailed, (b) if sent by e-mail or other electronic means, shall be deemed to have been given upon transmission with confirmed delivery, and (c) notices and other communications to the Parties hereunder may be delivered or furnished by electronic communications at the following addresses (or at such other addresses as shall be specified by the Parties by like notice):

If to the Company Parties, to:

>Serta Simmons Bedding, LLC
>2451 Industry Avenue
>Doraville, GA 30360
>Attention: Sally A. Erickson
>Email: SErickson1@SertaSimmons.com

with copies to:

>Advent International Corporation
>75 State Street, 2nd floor
>Boston, 02109 MA
>Attention: Jefferson Case
>Email: jcase@adventinternational.com

and

>Weil, Gotshal & Manges LLP
>767 Fifth Avenue
>New York, New York 10153
>Attention: Allison R. Liff
>Email: allison.liff@weil.com

If to any Specified Lender, the address set forth on its signature page, with a copy to:

>Gibson, Dunn & Crutcher LLP
>200 Park Avenue, New York, NY 10166-0193
>Attention: Scott Greenberg
>E-mail address: SGreenberg@gibsondunn.com

**5.2.** **Partial Invalidity**. To the extent permitted by applicable law, any provision of this Exchange Agreement held to be invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without affecting the validity, legality and enforceability of the remaining provisions thereof; and the invalidity of a particular provision in a particular jurisdiction shall not invalidate such provision in any other jurisdiction.

5.3.   **Execution in Counterparts**.  This Exchange Agreement may be executed in one or more counterparts, each of which shall be considered an original instrument, but all of which shall be considered one and the same agreement, and shall become binding when one or more counterparts have been signed by each of the Parties and delivered to the Company Parties; *provided*, *however*, that delivery of a facsimile of a counterpart shall be sufficient to satisfy this Section 5.3.

5.4.   **Governing Law; Waiver of Jury Trial**.

(a)   The Parties waive all rights to trial by jury in any jurisdiction in any action, suit, or proceeding brought to resolve any dispute between the Parties, whether sounding in contract, tort or other theory.

(b)   This Exchange Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction. By its execution and delivery of this Exchange Agreement, each Party hereby irrevocably and unconditionally agrees for itself that, subject to the following sentence, any legal action, suit or proceeding against it with respect to any matter under or arising out of or in connection with this Exchange Agreement or for recognition or enforcement of any judgment rendered in any such action, suit or proceeding, may be brought in any state or federal court of competent jurisdiction in New York County, State of New York, and by execution and delivery of this Exchange Agreement, each of the Parties hereby irrevocably accepts and submits itself to the exclusive jurisdiction of such court, generally and unconditionally, with respect to any such action, suit or proceedings.

5.5.   **Assignment; Successors and Assigns**.  Neither this Exchange Agreement nor any of the rights, interests or obligations hereunder shall be assigned by any of the Parties without the prior written consent of the other Parties; *provided*, *however*, that any Specified Lender may assign its rights and obligations hereunder to one of its affiliates or related funds, except that no such assignment to an affiliate or related fund shall release the party making such assignment from any of its obligations under this Exchange Agreement unless and until any such successor or assignee executes a joinder to this Exchange Agreement and becomes a party to the other transaction documents to which the assignor is a party.  Subject to the foregoing, this Exchange Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors or assigns, heirs, legatees, distributees, executors, administrators and guardians.  Except pursuant to Section 2.3, nothing in this Exchange Agreement, expressed or implied, is intended to confer upon any Person (other than the Parties hereto and the successors and assigns permitted by this Section 5.5) any right, remedy or claim under or by reason of this Exchange Agreement; *provided*, *however*, that the Bank Agents shall be considered third-party beneficiaries under Section 2.1 and Section 2.3.

5.6.   **Titles and Headings**.  Titles and headings to sections herein are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Exchange Agreement.

5.7.   **Entire Agreement; Amendments**.

(a)   This Exchange Agreement, including the exhibits and schedules, contain the entire understanding of the Parties hereto with regard to the subject matter contained herein.  This Exchange Agreement may be amended, modified or supplemented by mutual agreement of the Company Parties and the Required Specified Lenders.  Any such agreement shall be effective and binding for purposes of this

Exchange Agreement if it is signed by each of the Company Parties and the Required Specified Lenders. Any purported amendment that does not comply with the foregoing shall be null and void.

(b)     In the event that the Company Parties and the Priority Lien Agent mutually agree that an allocation of Initial Exchanged Term Loans to a given Specified Lender was incorrectly determined as a result of an administrative error in the receipt and processing of a signature page to this Exchange Agreement, as submitted by such Specified Lender in accordance, then the Priority Lien Agent, the Company Parties and such affected Specified Lender may (and hereby are authorized to), in their sole discretion and without the consent of any other Specified Lender, notwithstanding anything to the contrary set forth in Section 5.7(a), enter into an amendment to this Exchange Agreement (each, a "Corrective Amendment") within 15 days following the effective date of this Exchange Agreement, which Corrective Amendment shall provide for the issuance of Priority Lien Obligations in such amount as is required to cause such Specified Lender to hold Initial Exchanged Term Loans in the amount such Specified Lender would have held had such administrative error not occurred.

5.8.   **Waivers**.  Any term or provision of this Exchange Agreement may be waived, or the time for its performance may be extended, by the Party or Parties entitled to the benefit thereof.  The failure of any Party hereto to enforce at any time any provision of this Exchange Agreement shall not be construed to be a waiver of such provision, nor in any way to affect the validity of this Exchange Agreement or any part hereof or the right of any Party thereafter to enforce each and every such provision.  No waiver of any breach of this Exchange Agreement shall be held to constitute a waiver of any other or subsequent breach.

5.9.   **Termination**.

(a) *Grounds for Termination*.  This Exchange Agreement shall terminate upon mutual written agreement of the Required Specified Lenders and the Company Parties.

(b) *Effect of Termination*.  If this Exchange Agreement is terminated as permitted under Section 5.9(a), then (i) such termination shall not terminate the rights or remedies of any Party with respect to any breach of any provision of this Exchange Agreement prior to termination, including any breach of the obligation to consummate the transactions contemplated herein, and (ii) this Section 5.9 (b), Section 2.3 and Section 5.4 shall survive such termination.

5.10.   **Representation by Counsel**.  Each of the Parties acknowledges that it has had the opportunity to be represented by counsel in connection with this Exchange Agreement and the transactions contemplated by this Exchange Agreement.  Accordingly, any rule of law or any legal decision that would provide any Party with a defense to the enforcement of the terms of this Exchange Agreement against such Party based upon lack of legal counsel, shall have no application and is expressly waived.  The provisions of this Exchange Agreement shall be interpreted in a reasonable manner to effect the intent of the Parties.  None of the Parties shall have any term or provision construed against such Party solely by reason of such Party having drafted the same.

5.11. **Further Assurances**.  Each of the Parties agrees to use its commercially reasonable efforts to take any and all actions required in order to consummate the transactions contemplated by this Exchange Agreement.

5.12. **Confidentiality**.  The Specified Borrowers agree that this Exchange Agreement and the terms or substance hereof shall not be disclosed to any third party without the prior written consent of the Specified Lenders, except (a) as required by applicable Requirements of Law or as requested by a

Governmental Authority (in which case you agree, (i) to the extent practicable and to the extent permitted by applicable Law, to inform the Specified Lenders promptly in advance thereof and (ii) to use commercially reasonable efforts to ensure that any such information so disclosed is accorded confidential treatment), (b) to subsidiaries, investors and your and their former or current directors (or equivalent managers), officers, employees, Affiliates, attorneys, accountants, independent auditors, agents and other advisors on a confidential basis, (c) to the extent reasonably necessary or advisable in connection with the exercise of any remedy or enforcement of any right under this Exchange Agreement and/or (d) the aggregate amount of the Premiums as part of projections, pro forma information and a generic disclosure of aggregate sources and uses to a rating agency or in connection with any marketing materials in connection with the PTL Credit Agreement.

[Signatures on next pages]

IN WITNESS WHEREOF, the Parties hereto have caused this Exchange Agreement to be executed as of the day and year first above written.

**DAWN INTERMEDIATE, LLC**

By: _Kristen McGuffey_

Name: Kristen McGuffey

Title: Executive Vice President, General Counsel and Secretary

**NATIONAL BEDDING COMPANY L.L.C.**

By: _Kristen McGuffey_

Name: Kristen McGuffey

Title: Executive Vice President, General Counsel and Secretary

**SERTA SIMMONS BEDDING, LLC**

By: _Kristen McGuffey_

Name: Kristen McGuffey

Title: Executive Vice President, General Counsel and Secretary

**SSB MANUFACTURING COMPANY**

By: _Kristen McGuffey_

Name: Kristen McGuffey

Title: Executive Vice President, General Counsel and Secretary

*[Signature Page to Serta Exchange Agreement]*

**AGF Floating Rate Income Fund**
By: Eaton Vance Management
**as Portfolio Manager**


**as a Specified First Lien Lender**


_____
By:
Name:
Title:

Principal amount of Purchased First Lien Loans:   $_____ ████████_____
Principal amount of Initial Exchanged Term Loans: $_____ ██████__

| Notice Address: | 2 International Place 9th Floor |
| --- | --- |
| | Boston MA 02110 |
| Attn: | |
| Email: | rpeepgass@eatonvance.com |

*[Signature Page to Serta Exchange Agreement]*

Brighthouse Funds Trust I - Brighthouse/Eaton Vance Floating Rate Portfolio
By: Eaton Vance Management
**as Investment Sub-Advisor**

**as a Specified First Lien Lender**


_____

By:
Name:
Title:

Principal amount of Purchased First Lien Loans:     $_____ ██████_____
Principal amount of Initial Exchanged Term Loans:  $_____ ██████__

Notice Address:     2 International Place 9th Floor

                    Boston MA 02110
Attn:               _____
Email:              rpeepgass@eatonvance.com

*[Signature Page to Serta Exchange Agreement]*

Calvert Management Series - Calvert Floating-Rate Advantage Fund
By: Calvert Research and Management
**as a Specified First Lien Lender**

_____

By:
Name:
Title:

Principal amount of Purchased First Lien Loans:    $____█████████____
Principal amount of Initial Exchanged Term Loans:   $_____█████___

| Notice Address: | 2 International Place 9th Floor |
| | Boston MA 02110 |
| Attn: | |
| Email: | rpeepgass@eatonvance.com |

*[Signature Page to Serta Exchange Agreement]*

Eaton Vance CLO 2013-1 LTD.
By: Eaton Vance Management
**Portfolio Manager**


**as a Specified First Lien Lender**


_____

By:
Name:
Title:

Principal amount of Purchased First Lien Loans:   $____ ████████ ____
Principal amount of Initial Exchanged Term Loans:  $_____ ██████ ___

Notice Address:    2 International Place 9th Floor
                  Boston MA 02110
Attn:
Email:          rpeepgass@eatonvance.com

Eaton Vance  CLO 2014-1R, Ltd.
By: Eaton Vance Management
**As Investment Advisor**

**as a Specified First Lien Lender**

_____

By:
Name:
Title:

Principal amount of Purchased First Lien Loans:     $_____ ██████████ _____
Principal amount of Initial Exchanged Term Loans:  $_____ ████████ ___

Notice Address:     2 International Place 9th Floor
_____
                    Boston MA 02110
_____
Attn:               _____
Email:              rpeepgass@eatonvance.com
_____

Eaton Vance CLO 2015-1 Ltd.
By: Eaton Vance Management
**Portfolio Manager**

**as a Specified First Lien Lender**

_____
By:
Name:
Title:

Principal amount of Purchased First Lien Loans:   $____██████████____
Principal amount of Initial Exchanged Term Loans: $____████████████_

Notice Address:     2 International Place 9th Floor
                    Boston MA 02110
Attn:               _____
Email:              rpeepgass@eatonvance.com

Eaton Vance CLO 2018-1, Ltd.
By: Eaton Vance Management
**Portfolio Manager**

**as a Specified First Lien Lender**

_____
By:
Name:
Title:

Principal amount of Purchased First Lien Loans:    $_____ ███████ __
Principal amount of Initial Exchanged Term Loans:  $_____ ███████

Notice Address:    2 International Place 9th Floor

Boston MA 02110

Attn:       _____

Email:      rpeepgass@eatonvance.com

Eaton Vance CLO 2019-1, Ltd.
By: Eaton Vance Management
**As Investment Advisor**

**as a Specified First Lien Lender**

_____
By:
Name:
Title:

Principal amount of Purchased First Lien Loans:     $_____ ██████████
Principal amount of Initial Exchanged Term Loans:  $_____ ██████████ _

Notice Address:     2 International Place 9th Floor

Boston MA 02110

Attn:           _____

Email:          rpeepgass@eatonvance.com

**Eaton Vance Loan Holding Limited**
By: Eaton Vance Management
**as Investment Manager**


**as a Specified First Lien Lender**


_____

By:
Name:
Title:

Principal amount of Purchased First Lien Loans:    $____ ████████

Principal amount of Initial Exchanged Term Loans:  $___ ████████_

Notice Address:     2 International Place 9th Floor

                    Boston MA 02110

Attn:               _____

Email:              rpeepgass@eatonvance.com

**Eaton Vance Floating-Rate**
**Income Plus Fund**
By: Eaton Vance Management
**as Investment Advisor**

**as a Specified First Lien Lender**

_____

By:
Name:
Title:

Principal amount of Purchased First Lien Loans:    $____ ███████████

Principal amount of Initial Exchanged Term Loans:  $____ ██████████ _

Notice Address:      2 International Place 9th Floor

                     Boston MA 02110

Attn:                _____

Email:               rpeepgass@eatonvance.com

**Eaton Vance Floating-Rate 2022 Target Term Trust**
By: Eaton Vance Management
**as Investment Advisor**

**as a Specified First Lien Lender**

_____

By:
Name:
Title:

Principal amount of Purchased First Lien Loans: $_____ ███████
Principal amount of Initial Exchanged Term Loans: $_____ ███████

| | |
|---|---|
| Notice Address: | 2 International Place 9th Floor |
| | Boston MA 02110 |
| Attn: | |
| Email: | rpeepgass@eatonvance.com |

**Eaton Vance Senior
Floating-Rate Trust**
By: Eaton Vance Management
**as Investment Advisor**

**as a Specified First Lien Lender**

_____

By:
Name:
Title:

Principal amount of Purchased First Lien Loans:  $____ ████████
Principal amount of Initial Exchanged Term Loans: $___ ███████ _

| Notice Address: | 2 International Place 9th Floor |
| | Boston MA 02110 |
| Attn: | |
| Email: | rpeepgass@eatonvance.com |

**Eaton Vance Floating-Rate
Income Trust**
By: Eaton Vance Management
**as Investment Advisor**

**as a Specified First Lien Lender**

_____
By:
Name:
Title:

Principal amount of Purchased First Lien Loans:    $_____██████____
Principal amount of Initial Exchanged Term Loans:  $_____████____

| | |
|---|---|
| Notice Address: | 2 International Place 9th Floor |
| | Boston MA 02110 |
| Attn: | |
| Email: | rpeepgass@eatonvance.com |

*[Signature Page to Serta Exchange Agreement]*

**Eaton Vance International (Cayman Islands) Floating-Rate Income Portfolio**
By: Eaton Vance Management as Investment Advisor
**as a Specified First Lien Lender**


_____

By:
Name:
Title:

Principal amount of Purchased First Lien Loans:    $_____██████████_____
Principal amount of Initial Exchanged Term Loans:  $_____██████████__

Notice Address:      2 International Place 9th Floor
                     Boston MA 02110
Attn:
Email:               rpeepgass@eatonvance.com

**Eaton Vance Senior**
**Income Trust**
By: Eaton Vance Management
**as Investment Advisor**


**as a Specified First Lien Lender**


_____
By:
Name:
Title:

Principal amount of Purchased First Lien Loans:     $\_\_\_\_ █████████ \_\_\_\_
Principal amount of Initial Exchanged Term Loans:  $\_\_\_\_ ██████████ \_\_

| Notice Address: | 2 International Place 9th Floor |
| | Boston MA 02110 |
| Attn: | |
| Email: | rpeepgass@eatonvance.com |

**Eaton Vance Short Duration Diversified Income Fund**
By: Eaton Vance Management as Investment Advisor
**as a Specified First Lien Lender**


_____

By:
Name:
Title:

Principal amount of Purchased First Lien Loans:    $____███████
Principal amount of Initial Exchanged Term Loans:  $_____█████____

Notice Address:      2 International Place 9th Floor
                     Boston MA 02110
Attn:                _____
Email:               rpeepgass@eatonvance.com

**Eaton Vance Institutional Senior Loan Fund**
By: Eaton Vance Management as Investment Advisor
**as a Specified First Lien Lender**

_____

By:
Name:
Title:

Principal amount of Purchased First Lien Loans:  $\_\_\_\_\_ ██████ \_\_\_
Principal amount of Initial Exchanged Term Loans: $_____ ██████ \_

Notice Address:      2 International Place 9th Floor
                     Boston MA 02110
Attn:                _____
Email:               rpeepgass@eatonvance.com

*[Signature Page to Serta Exchange Agreement]*

**Eaton Vance Institutional Senior Loan Plus Fund**
By: Eaton Vance Management as Investment Advisor
**as a Specified First Lien Lender**

By: _____
Name:
Title:

Principal amount of Purchased First Lien Loans:  $_____ ███████ ____
Principal amount of Initial Exchanged Term Loans:  $_____ ███████ ____

Notice Address:    2 International Place 9th Floor
                      Boston MA 02110
Attn:                  
Email:              rpeepgass@eatonvance.com

**Eaton Vance Limited Duration Income Fund**
By: Eaton Vance Management
**as Investment Advisor**

**as a Specified First Lien Lender**

_____

By:
Name:
Title:

Principal amount of Purchased First Lien Loans:  $_____██████████_____
Principal amount of Initial Exchanged Term Loans:  $_____████████████

Notice Address:    2 International Place 9th Floor

                   Boston MA 02110

Attn:

Email:    rpeepgass@eatonvance.com

**Eaton Vance Floating Rate Portfolio**
By: Boston Management and Research
**as Investment Advisor**

**as a Specified First Lien Lender**

_____
By:
Name:
Title:

Principal amount of Purchased First Lien Loans:   $____██████████____
Principal amount of Initial Exchanged Term Loans: $____██████████_

Notice Address:     2 International Place 9th Floor
                    Boston MA 02110
Attn:          _____
Email:        rpeepgass@eatonvance.com

**Senior Debt Portfolio**
By: Boston Management and Research
**as Investment Advisor**

**as a Specified First Lien Lender**

_____

By:
Name:
Title:

Principal amount of Purchased First Lien Loans:   $____ ████████ ____
Principal amount of Initial Exchanged Term Loans:  $____ ████████

Notice Address:     2 International Place 9th Floor

                         Boston MA 02110

Attn:               _____
Email:           rpeepgass@eatonvance.com

*[Signature Page to Serta Exchange Agreement]*

**Eaton Vance VT**
**Floating-Rate Income Fund**
By: Eaton Vance Management
**as Investment Advisor**

**as a Specified First Lien Lender**

_____
By:
Name:
Title:

Principal amount of Purchased First Lien Loans:     $\_\_\_\_ ██████ \_\_
Principal amount of Initial Exchanged Term Loans: $\_\_\_\_\_ ██████ \_\_

Notice Address:      2 International Place 9th Floor
                            Boston MA 02110
Attn:
Email:      rpeepgass@eatonvance.com

**BENTHAM SYNDICATED LOAN FUND**
By: Credit Suisse Asset Management, LLC, as agent (sub-advisor) for Challenger Investment Services Limited, the Responsible Entity for Bentham Syndicated Loan Fund

**DaVinci Reinsurance Ltd.**
By: Credit Suisse Asset Management, LLC, as investment manager for DaVinci Reinsurance Holdings, Ltd , the owner of DaVinci Reinsurance Ltd

**Renaissance Investment Holdings Ltd.**
**CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM**
**DOLLAR SENIOR LOAN FUND, LTD.**
**DOLLAR SENIOR LOAN MASTER FUND II, LTD.**
**BA/CSCREDIT 1 LLC**
**CREDIT SUISSE FLOATING RATE TRUST**
**PK-SSL INVESTMENT FUND LIMITED PARTNERSHIP**
**COPPERHILL LOAN FUND I, LLC**
**THE EATON CORPORATION MASTER RETIREMENT TRUST**
**ERIE INDEMNITY COMPANY**
**MADISON FLINTHOLM SENIOR LOAN FUND I DAC**
**PHILLIPS 66 RETIREMENT PLAN TRUST**
**WIND RIVER FUND LLC**
**BLUE SHIELD OF CALIFORNIA**
By: Credit Suisse Asset Management, LLC, as investment manager

**ERIE INSURANCE EXCHANGE**
By: Credit Suisse Asset Management, LLC, as investment manager for Erie Indemnity Company, as Attorney-In-Fact for Erie Insurance Exchange

**THE CITY OF NEW YORK GROUP TRUST**
By: Credit Suisse Asset Management, LLC, as its manager

**Maryland State Retirement and Pension System**
By: Credit Suisse Asset Management, LLC as manager

**CREDIT SUISSE FLOATING RATE HIGH INCOME FUND**
**CREDIT SUISSE STRATEGIC INCOME FUND**
**COMMONWEALTH OF PENNSYLVANIA TREASURY DEPARTMENT**
By: Credit Suisse Asset Management, LLC, as investment advisor

**STATE OF NEW MEXICO STATE INVESTMENT COUNCIL**
By authority delegated to the New Mexico State Investment Office
By: Credit Suisse Asset Management, LLC, as its manager

**CREDIT SUISSE NOVA (LUX)**
By: Credit Suisse Asset Management, LLC or Credit Suisse Asset Management Limited, each as Co-Investment Adviser to Credit Suisse Fund Management S A , management company for Credit Suisse Nova (Lux)

**BENTHAM STRATEGIC LOAN FUND**
By: Credit Suisse Asset Management, LLC, as Sub Advisor for Bentham Asset Management Pty Ltd , the agent and investment manager to Fidante Partners Limited, the trustee for Bentham Strategic Loan Fund

**KP FIXED INCOME FUND**
By: Credit Suisse Asset Management, LLC, as Sub-Adviser for Callan Associates Inc , the Adviser for The KP Funds, the Trust for KP Fixed Income Fund

**TELSTRA SUPERANNUATION SCHEME**
By: Credit Suisse Asset Management, LLC, as sub advisor to Bentham Asset Management Pty Ltd in its capacity as agent of and investment manager for Telstra Super Pty Ltd in its capacity as trustee of Telstra Superannuation Scheme

**WESPATH FUNDS TRUST**
By: Credit Suisse Asset Management, LLC, the investment adviser for UMC Benefit Board Inc , the trustee for Wespath Funds Trust

**INFLATION PROTECTION FUND - I SERIES, a series of Wespath Funds Trust**
By Credit Suisse Asset Management, LLC as Adviser for Wespath Institutional Investments LLC, as trustee of the I Series funds of Wespath Funds Trust

**MADISON PARK FUNDING X, LTD.**
**MADISON PARK FUNDING XI, LTD.**
**MADISON PARK FUNDING XII, LTD.**
**MADISON PARK FUNDING XIII, LTD.**
**MADISON PARK FUNDING XIV, LTD.**
**MADISON PARK FUNDING XV, LTD.**
**MADISON PARK FUNDING XVI, LTD.**
**MADISON PARK FUNDING XVII, LTD.**
**MADISON PARK FUNDING XX, LTD.**
**MADISON PARK FUNDING XXI, LTD.**
**MADISON PARK FUNDING XXII, LTD.**
**MADISON PARK FUNDING XL, LTD.**
**MADISON PARK FUNDING XLI, LTD.**
**MADISON PARK FUNDING XLII, LTD.**
**MADISON PARK FUNDING XLIII, LTD.**
**MADISON PARK FUNDING XLIV, LTD.**
**ONE ELEVEN FUNDING I, LTD.**
**ONE ELEVEN FUNDING II, LTD.**
**MADISON PARK FUNDING XXVIII, LTD.**
**MADISON PARK FUNDING XXX, LTD.**
**MADISON PARK FUNDING XXXI, LTD.**
**MADISON PARK FUNDING XXXII, LTD.**
**MADISON PARK FUNDING XXXVII, LTD.**
**MADISON PARK FUNDING XXXIV, LTD.**
By: Credit Suisse Asset Management, LLC, as portfolio manager

**MADISON PARK FUNDING XVIII, LTD.**
**MADISON PARK FUNDING XIX, LTD.**
**MADISON PARK FUNDING XXIII, LTD.**
**MADISON PARK FUNDING XXIV, LTD.**
**MADISON PARK FUNDING XXV, LTD.**
**MADISON PARK FUNDING XXVI, LTD.**
**MADISON PARK FUNDING XXIX, LTD.**
By: Credit Suisse Asset Management, LLC, as collateral manager

**MADISON PARK FUNDING XXVII, LTD.**
**MADISON PARK FUNDING XXXV, LTD.**
By: Credit Suisse Asset Management, LLC, as asset manager

## as a Specified First Lien Lender

By: _____

Name: David Mechlin
Title: Authorized Signatory

Principal amount of Purchased First Lien Loans:
Principal amount of Initial Exchanged Term Loans:

| | |
|---|---|
| Notice Address: | Eleven Madison Avenue |
| | New York, NY 10010 |
| Attn: | Davis Meiering |
| Email: | Davis.meiering@credit-suisse.com |

*[Signature Page to Serta Exchange Agreement]*

**BARINGS GLOBAL LOAN LIMITED,**
**as a Specified First Lien Lender**
**By: Barings LLC as Sub-Investment Manager**

By: 
_____
Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans: ▮▮▮▮▮▮
Principal amount of Initial Exchanged Term Loans: ▮▮▮▮▮▮

| Notice Address: | 300 S. Tryon Street, Suite 2500 |
|---|---|
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

**BARINGS GLOBAL SPECIAL SITUATIONS CREDIT 3 S.À R.L., as a Specified First Lien Lender acting by its attorney BARINGS LLC**

By: 
_____
Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans:  ▮▮▮▮▮
Principal amount of Initial Exchanged Term Loans:  ▮▮▮▮▮

| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| --- | --- |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

*[Signature Page to Serta Exchange Agreement]*

**BARINGS GLOBAL HIGH YIELD CREDIT STRATEGIES LIMITED, as a Specified First Lien Lender**
**By: Barings LLC as Investment Manager**

By: 
_____
Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans: ███████
Principal amount of Initial Exchanged Term Loans: ███████

| Notice Address: | 300 S. Tryon Street, Suite 2500 |
|---|---|
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

*[Signature Page to Serta Exchange Agreement]*

**BARINGS U.S. LOAN LIMITED, as a Specified First Lien Lender**
**By: Barings LLC as Investment Manager**

By: _____

Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans: ▮▮▮▮▮▮
Principal amount of Initial Exchanged Term Loans ▮▮▮▮▮▮▮

| | |
|---|---|
| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

**CITY OF NEW YORK GROUP TRUST,**
**as a Specified First Lien Lender**
**By: Barings LLC as Investment Manager**

By:
_____

Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans:
Principal amount of Initial Exchanged Term Loans:

| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

*[Signature Page to Serta Exchange Agreement]*

**BARINGS CLO LTD. 2018-III,**
**as a Specified First Lien Lender**
**By: Barings LLC as Collateral Manager**

By: _____

Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans: ▮▮▮▮
Principal amount of Initial Exchanged Term Loans: ▮▮▮▮

| | |
|---|---|
| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

**BARINGS CLO LTD. 2017-I,**
**as a Specified First Lien Lender**
**By: Barings LLC as Collateral Manager**

By:

_____

Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans:
Principal amount of Initial Exchanged Term Loans:

| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| --- | --- |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

*[Signature Page to Serta Exchange Agreement]*

**BARINGS CLO LTD. 2019-II,**
**as a Specified First Lien Lender**
**By: Barings LLC as Collateral Manager**

By:

_____

Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans:
Principal amount of Initial Exchanged Term Loans:

| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

**BALOISE SENIOR SECURED LOAN FUND,**
**as a Specified First Lien Lender**
**By: Barings LLC as Sub-Investment Manager**

By:



Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans:
Principal amount of Initial Exchanged Term Loans:

| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

**BARINGS CLO LTD. 2016-I,**
**as a Specified First Lien Lender**
**By: Barings LLC as Collateral Manager**

By:



Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans:
Principal amount of Initial Exchanged Term Loans:

| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

**BARINGS CLO LTD. 2015-I,**
**as a Specified First Lien Lender**
**By: Barings LLC as Collateral Manager**

By:

Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans:
Principal amount of Initial Exchanged Term Loans:

| | |
|---|---|
| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

**UNIVERSAL-INVESTMENT-GESELLSCHAFT
MBH on behalf and on account of
BAYVK R2-FONDS Segment BAYVK R2 BARINGS,
as a Specified First Lien Lender
acting by its attorney BARINGS LLC**

By:

_____
Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans: ███████
Principal amount of Initial Exchanged Term Loans: ███████

| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

**BARINGS CLO LTD. 2016-II,**
**as a Specified First Lien Lender**
**By: Barings LLC as Collateral Manager**

By:



Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans:
Principal amount of Initial Exchanged Term Loans:

| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

*[Signature Page to Serta Exchange Agreement]*

**CROWN MANAGED ACCOUNTS SPC ACTING**
**FOR AND ON BEHALF OF CROWN/BA 2 SP,**
**as a Specified First Lien Lender**
**acting by its attorney, Barings (U.K.) Limited**
**acting by its attorney, Barings LLC**

By:

_____

Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans:
Principal amount of Initial Exchanged Term Loans: 

| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| --- | --- |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

*[Signature Page to Serta Exchange Agreement]*

**BARINGS CLO LTD. 2018-I,**
**as a Specified First Lien Lender**
**By: Barings LLC as Collateral Manager**

By:



Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans: 
Principal amount of Initial Exchanged Term Loans: 

| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

*[Signature Page to Serta Exchange Agreement]*

**BABSON CLO LTD. 2014-I,**
**as a Specified First Lien Lender**
**By: Barings LLC as Collateral Manager**

By:

_____

Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans:
Principal amount of Initial Exchanged Term Loans: 

| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| --- | --- |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

*[Signature Page to Serta Exchange Agreement]*

**BARINGS CLO LTD. 2015-II,**
**as a Specified First Lien Lender**
**By: Barings LLC as Collateral Manager**

By:

_____
Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans: 
Principal amount of Initial Exchanged Term Loans:

| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

**G.A.S. (Cayman) Limited acting solely in its
capacity as Trustee of Serengeti (Loan Fund),
a series trust of the Multi Strategy Umbrella Fund Cayman,
as a Specified First Lien Lender
By: Barings LLC as Investment Manager and
Attorney-in-fact**

By:

Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans: 
Principal amount of Initial Exchanged Term Loans:

| Notice Address: | 300 S. Tryon Street, Suite 2500 |
|---|---|
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

The foregoing is executed on behalf of the Serengeti (Loan Fund), organized under a Supplemental Trust
Deed, dated as of September 21, 2017, as amended from time to time. The obligations of such Trust are
not personally binding upon, nor shall resort be had to the property of the Trustee. The total liability of
the Trustee shall be limited to the amount of the trust property.

*[Signature Page to Serta Exchange Agreement]*

**BARINGS GLOBAL MULTI-CREDIT
STRATEGY 4 LIMITED,
as a Specified First Lien Lender
By: Barings LLC as Investment Manager**

By:

_____

Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans:
Principal amount of Initial Exchanged Term Loans:

| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

*[Signature Page to Serta Exchange Agreement]*

**BARINGS CLO LTD. 2018-IV,**
**as a Specified First Lien Lender**
**By: Barings LLC as Collateral Manager**

By:

_____

Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans: 
Principal amount of Initial Exchanged Term Loans:

| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| --- | --- |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

**BARINGS BDC SENIOR FUNDING I, LLC,**
**as a Specified First Lien Lender**
**By: Barings LLC as Investment Adviser**

By:

_____

Name: Jonathan Bock
Title: Managing Director

Principal amount of Purchased First Lien Loans:
Principal amount of Initial Exchanged Term Loans:

| | |
|---|---|
| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

*[Signature Page to Serta Exchange Agreement]*

**BARINGS CLO LTD. 2013-I,**
**as a Specified First Lien Lender**
**By: Barings LLC as Collateral Manager**

By:



_____

Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans:
Principal amount of Initial Exchanged Term Loans:

| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

**BARINGS GLOBAL MULTI-CREDIT STRATEGY**
**3 LIMITED,**
**as a Specified First Lien Lender**
**By: Barings LLC as Investment Manager**

By:

Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans:
Principal amount of Initial Exchanged Term Loans:

| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

**BARINGS GLOBAL MULTI-CREDIT STRATEGY
2 LIMITED,
as a Specified First Lien Lender
By: Barings LLC as Sub-Investment Manager**

By:

Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans:
Principal amount of Initial Exchanged Term Loans:

| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

*[Signature Page to Serta Exchange Agreement]*

**BARINGS GLOBAL FLOATING RATE FUND,**
**a series of Barings Funds Trust,**
**as a Specified First Lien Lender**
**By: Barings LLC as Investment Manager**

By:

_____

Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans: ████████
Principal amount of Initial Exchanged Term Loans: ████████

| | |
|---|---|
| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

The foregoing is executed on behalf of Barings Global Floating Rate Fund, a series of Barings Funds Trust, organized under an Agreement and Declaration of Trust dated May 3, 2013, as amended from time to time. The obligations of such series Trust are not personally binding upon, nor shall resort be had to the property of, any of the Trustees, shareholders, officers, employees or agents of such Trust, or any other series of the Trust but only the property and assets of the relevant series Trust shall be bound.

**BARINGS SEGREGATED LOANS 3 S.À R.L ,**
**as a Specified First Lien Lender**
**ACTING BY ITS ATTORNEY BARINGS LLC**

By:

_____

Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans:
Principal amount of Initial Exchanged Term Loans:

| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

**BARINGS BDC, INC.,**
**as a Specified First Lien Lender**
**By: Barings LLC as Investment Manager**

By:

Name: Jonathan Bock
Title: Managing Director

Principal amount of Purchased First Lien Loans:
Principal amount of Initial Exchanged Term Loans:

| | |
|---|---|
| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

*[Signature Page to Serta Exchange Agreement]*

**BARINGS GLOBAL LOAN AND HIGH
YIELD BOND LIMITED.
as a Specified First Lien Lender
By: Barings LLC as Sub-Investment Manager**

By:

_____

Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans:
Principal amount of Initial Exchanged Term Loans:

| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

*[Signature Page to Serta Exchange Agreement]*

**BARINGS GLOBAL CREDIT INCOME
OPPORTUNITIES FUND, a series of
Barings Funds Trust,
as a Specified First Lien Lender
By: Barings LLC as Investment Manager**

By:

_____

Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans: 
Principal amount of Initial Exchanged Term Loans:

| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| --- | --- |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

The foregoing is executed on behalf of Barings Global Credit Income Opportunities Fund, a series of Barings Funds Trust, organized under an Agreement and Declaration of Trust dated May 3, 2013, as amended from time to time. The obligations of such series Trust are not personally binding upon, nor shall resort be had to the property of, any of the Trustees, shareholders, officers, employees or agents of such Trust, or any other series of the Trust but only the property and assets of the relevant series Trust shall be bound.

*[Signature Page to Serta Exchange Agreement]*

**ARROWOOD INDEMNITY COMPANY,**
**as a Specified First Lien Lender**
**By: Barings LLC as Investment Adviser**

By:



_____

Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans: ███
Principal amount of Initial Exchanged Term Loans: ███

| | |
|---|---|
| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

**BARINGS GLOBAL MULTI-CREDIT
STRATEGY 1 LIMITED,
as a Specified First Lien Lender
By: Barings LLC as Sub-Investment Manager**

By:

_____

Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans:
Principal amount of Initial Exchanged Term Loans:

| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

**Jocassee Partners LLC,**
**as a Specified First Lien Lender**

By: _____

Name: Jonathan Bock
Title: Managing Director

Principal amount of Purchased First Lien Loans: █████████
Principal amount of Initial Exchanged Term Loans: █████████

| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

*[Signature Page to Serta Exchange Agreement]*

**ARROWOOD INDEMNITY COMPANY AS**
**ADMINISTRATOR OF THE PENSION PLAN**
**OF ARROWOOD INDEMNITY COMPANY,**
**as a Specified First Lien Lender**
**By: Barings LLC as Investment Manager**

By:

_____

Name: Michael Searles
Title: Director

Principal amount of Purchased First Lien Loans:
Principal amount of Initial Exchanged Term Loans:

| Notice Address: | 300 S. Tryon Street, Suite 2500 |
| | Charlotte, NC, 28202 |
| Attn: | Michael Searles |
| Email: | Michael.Searles@barings.com |

*[Signature Page to Serta Exchange Agreement]*

Principal amount of Purchased First Lien Loans: **See Schedule A on Page 6**

Notice Address: 227 West Monroe Street
                Suite 3200
                Chicago, IL 60606
ATTN:           Simon Tung
Email:          slstradeclosing@feim.com

First Eagle Bank Loan Select Master Fund,
a Class of The First Eagle Bank Loan Select Series Trust I, as a Specified First Lien Lender
By First Eagle Alternative Credit SLS, LLC, as Investment Manager

By_____
    Name: James R. Fellows
    Title:   CIO/Managing Director/Co-Head

BSG Fund Management B.V. on behalf of the
Stichting Blue Sky Active Fixed Income US Leveraged Loan Fund, as a Specified First Lien Lender
By First Eagle Alternative Credit SLS, LLC, as Manager

By_____
    Name: James R. Fellows
    Title:   CIO/Managing Director/Co-Head

KVK CLO 2013-1 Ltd., as a Specified First Lien Lender
By First Eagle Alternative Credit, LLC, as Successor Collateral Manager

By_____
    Name: James R. Fellows
    Title:   CIO/Managing Director/Co-Head

KVK CLO 2016-1 Ltd., as a Specified First Lien Lender
By First Eagle Alternative Credit, LLC, as Successor Collateral Manager

By_____
    Name: James R. Fellows
    Title:   CIO/Managing Director/Co-Head

KVK CLO 2018-1 Ltd., as a Specified First Lien Lender
By First Eagle Alternative Credit, LLC, as Successor Collateral Manager

By_____
    Name: James R. Fellows
    Title:   CIO/Managing Director/Co-Head

Russell Investments Institutional Funds, LLC
Absolute Return Fixed Income Fund, as a Specified First Lien Lender
By First Eagle Alternative Credit, LLC, as Investment Manager

By_____
    Name: James R. Fellows
    Title:  CIO/Managing Director/Co-Head

Russell Investments Ireland Limited on behalf of the Russell Floating
Rate Fund, a subfund of Russell Investments Qualifying Investor Alternative Funds plc, as a Specified
First Lien Lender
By First Eagle Alternative Credit, LLC, as Investment Manager

By_____
    Name: James R. Fellows
    Title:  CIO/Managing Director/Co-Head

Russell Investments Global Unconstrained Bond Pool, as a Specified First Lien Lender
By First Eagle Alternative Credit, LLC, as Investment Manager

By_____
    Name: James R. Fellows
    Title:  CIO/Managing Director/Co-Head

Russell Investments Institutional Funds LLC Multi-Asset Core Plus Fund, as a Specified First Lien Lender
By First Eagle Alternative Credit, LLC, as Investment Manager

By_____
    Name: James R. Fellows
    Title:  CIO/Managing Director/Co-Head

Russell Investment Company Unconstrained Total Return Fund, as a Specified First Lien Lender
By First Eagle Alternative Credit, LLC, as Investment Manager

By_____
    Name: James R. Fellows
    Title:  CIO/Managing Director/Co-Head

Stichting Pensioenfonds Hoogovens, as a Specified First Lien Lender
by First Eagle Alternative Credit, LLC, its Asset Manager

By_____
    Name: James R. Fellows
    Title:  CIO/Managing Director/Co-Head

Wind River 2014-3K CLO Ltd., as a Specified First Lien Lender
By First Eagle Alternative Credit, LLC, as Investment Manager

By_____
    Name: James R. Fellows
    Title:   CIO/Managing Director/Co-Head

Wind River 2012-1 CLO Ltd., as a Specified First Lien Lender
By First Eagle Alternative Credit SLS, LLC, as Investment Manager

By_____
    Name: James R. Fellows
    Title:   CIO/Managing Director/Co-Head

Wind River 2013-1 CLO Ltd., as a Specified First Lien Lender
By First Eagle Alternative Credit SLS, LLC, as Collateral Manager

By_____
    Name: James R. Fellows
    Title:   CIO/Managing Director/Co-Head

Wind River 2013-2 CLO Ltd., as a Specified First Lien Lender
By First Eagle Alternative Credit, LLC, as Investment Manager

By_____
    Name: James R. Fellows
    Title:   CIO/Managing Director/Co-Head

Wind River 2014-1 CLO Ltd., as a Specified First Lien Lender
By First Eagle Alternative Credit SLS, LLC, as Investment Manager

By_____
    Name: James R. Fellows
    Title:   CIO/Managing Director/Co-Head

Wind River 2014-2 CLO Ltd., as a Specified First Lien Lender
By First Eagle Alternative Credit, LLC, as Investment Manager

By_____
    Name: James R. Fellows
    Title:   CIO/Managing Director/Co-Head

Wind River 2014-3 CLO Ltd., as a Specified First Lien Lender
By First Eagle Alternative Credit SLS, LLC, as Manager

By_____
     Name: James R. Fellows
     Title:   CIO/Managing Director/Co-Head

Wind River 2015-1 CLO Ltd., as a Specified First Lien Lender
By First Eagle Alternative Credit, LLC, as Investment Manager

By_____
     Name: James R. Fellows
     Title:   CIO/Managing Director/Co-Head

Wind River 2015-2 CLO Ltd., as a Specified First Lien Lender
By First Eagle Alternative Credit SLS, LLC, its Manager

By_____
     Name: James R. Fellows
     Title:   CIO/Managing Director/Co-Head

Wind River 2016-1 CLO Ltd., as a Specified First Lien Lender
By First Eagle Alternative Credit SLS, LLC, its Investment Manager

By_____
     Name: James R. Fellows
     Title:   CIO/Managing Director/Co-Head

Wind River 2016-2 CLO Ltd., as a Specified First Lien Lender
By First Eagle Alternative Credit, LLC, its Investment Manager

By_____
     Name: James R. Fellows
     Title:   CIO/Managing Director/Co-Head

Wind River 2017-1 CLO Ltd., as a Specified First Lien Lender
By First Eagle Alternative Credit, LLC, its Investment Manager

By_____
     Name: James R. Fellows
     Title:   CIO/Managing Director/Co-Head

Wind River 2017-4 CLO Ltd., as a Specified First Lien Lender
By First Eagle Alternative Credit, LLC, as Investment Manager

By_____
    Name: James R. Fellows
    Title:  CIO/Managing Director/Co-Head


Wind River 2018-3 CLO Ltd., as a Specified First Lien Lender
By First Eagle Alternative Credit, LLC, as Collateral Manager

By_____
    Name: James R. Fellows
    Title:  CIO/Managing Director/Co-Head

Wind River 2019-3 CLO Ltd., as a Specified First Lien Lender
By First Eagle Alternative Credit, LLC, as Investment Manager

By_____
    Name: James R. Fellows
    Title:  CIO/Managing Director/Co-Head

First Eagle Senior Loan Fund, as a Specified First Lien Lender
By First Eagle Alternative Credit, LLC, as Adviser

By_____
    Name: James R. Fellows
    Title:  CIO/Managing Director/Co-Head

Staniford Street CLO, LTD., as a Specified First Lien Lender

By_____
    Name: Seth Frink
    Title:   Director

## Schedule A

| Issuer | Asset | SecurityID | Portfolio | Principal Amount of Purchased First Lien Loans | Principal Amount of Initial Exchanged Term Loans |
|--------|-------|-----------|-----------|---------------|---------------|
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | BSG Fund Management B.V. on behalf of the Stichting Blue Sky Active Fixed Income US Leveraged Loan Fund | ███ | ███ |
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | First Eagle Bank Loan Select Master Fund | ███ | |
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | First Eagle Senior Loan Fund (FSLF) | ███ | |
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | KVK CLO 2013-1 Ltd. | ███ | |
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | KVK CLO 2016-1 Ltd. | ███ | |
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | KVK CLO 2018-1 Ltd. | ███ | |
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | Russell Absolute Return Fixed Income Fund | ███ | |
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | Russell Floating Rate Fund | ███ | |
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | Russell Global Unconstrained Bond Pool | ███ | |
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | Russell Multi-Asset Core Plus Fund | ███ | |
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | Russell Unconstrained Total Return Fund | ███ | |
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | Staniford Street CLO Ltd | ███ | |
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | Stichting Pensioenfonds Hoogovens | ███ | |
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | Wind River 2012-1 CLO Ltd. | ███ | |
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | Wind River 2013-1 CLO Ltd. | ███ | |
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | Wind River 2013-2 CLO Ltd. | ███ | |
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | Wind River 2014-1 CLO Ltd. | ███ | |
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | Wind River 2014-2 CLO Ltd. | ███ | |
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | Wind River 2014-3 CLO Ltd. | ███ | |
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | Wind River 2014-3K CLO Ltd. | ███ | |
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | Wind River 2015-1 CLO Ltd. | ███ | |
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | Wind River 2015-2 CLO Ltd. | ███ | |
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | Wind River 2016-1 CLO Ltd. | ███ | |
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | Wind River 2016-2 CLO Ltd. | ███ | |
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | Wind River 2017-1 CLO Ltd. | ███ | |
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | Wind River 2017-4 CLO Ltd. | ███ | |
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | Wind River 2018-3 CLO Ltd. | ███ | |
| Serta Simmons Bedding, LLC | 1st Lien TL | LX155523 | Wind River 2019-3 CLO Ltd. | ███ | |

**Annisa CLO, Ltd.**
**as a Specified First Lien Lender**
By: Invesco RR Fund L.P. as Collateral Manager
By: Invesco RR Associates LLC, as general partner
By: Invesco Senior Secured Management, Inc. as sole
member

By:

    Name: Kevin Egan
    Title: Authorized Individual


Principal amount of Purchased First Lien Loans: ███████
Principal amount of Initial Exchanged Term Loans: ████████

| Notice Address: | Invesco Senior Secured Management, Inc 1166 Avenue of the Americas, 26th Floor New York, NY 10036 |
|---|---|
| Attn: | Bank Loan Services |
| Email: | BLS-AssetServices@invesco.com |

**Betony CLO 2, Ltd.**
**as a Specified First Lien Lender**
By: Invesco RR Fund L.P. as Collateral Manager
By: Invesco RR Associates LLC, as general partner
By: Invesco Senior Secured Management, Inc. as sole
member


By:

    Name: Kevin Egan
    Title: Authorized Individual



Principal amount of Purchased First Lien Loans: 
Principal amount of Initial Exchanged Term Loans:


| Notice Address: | Invesco Senior Secured Management, Inc 1166 Avenue of the Americas, |
| --- | --- |
| | 26th Floor New York, NY 10036 |
| Attn: | Bank Loan Services |
| Email: | BLS-AssetServices@invesco.com |

**BOC Pension Investment Fund**
**as a Specified First Lien Lender**
BY: Invesco Senior Secured Management, Inc. as
Attorney in Fact

By:

    Name: Kevin Egan
    Title: Authorized Individual

Principal amount of Purchased First Lien Loans:
Principal amount of Initial Exchanged Term Loans: 

| Notice Address: | Invesco Senior Secured Management, Inc 1166 Avenue of the Americas |
| --- | --- |
|  | 26th Floor New York, NY 10036 |
| Attn: | Bank Loan Services |
| Email: | BLS-AssetServices@invesco.com |

**Carbone CLO, Ltd.**
**as a Specified First Lien Lender**
By: Invesco Senior Secured Management, Inc. as
Investment Manager

By: 

    Name: Kevin Egan
    Title: Authorized Individual

Principal amount of Purchased First Lien Loans: ███████
Principal amount of Initial Exchanged Term Loans: ███████

| Notice Address: | Invesco Senior Secured Management, Inc 1166 Avenue of the Americas, |
| --- | --- |
| | 26th Floor New York, NY 10036 |
| Attn: | Bank Loan Services |
| Email: | BLS-AssetServices@invesco.com |

**Diversified Credit Portfolio Ltd.**
**as a Specified First Lien Lender**
BY: Invesco Senior Secured Management, Inc. as
Investment Adviser

By: 

    Name: Kevin Egan
    Title: Authorized Individual

Principal amount of Purchased First Lien Loans: ██████
Principal amount of Initial Exchanged Term Loans: ██████

| | |
|---|---|
| Notice Address: | Invesco Senior Secured Management, Inc 1166 Avenue of the Americas, 26th Floor New York, NY 10036 |
| Attn: | Bank Loan Services |
| Email: | BLS-AssetServices@invesco.com |

*[Signature Page to Serta Exchange Agreement]*

**Invesco BL Fund, Ltd.**
**as a Specified First Lien Lender**
By: Invesco Management S.A. As Investment Manager


By:

    Name: Kevin Egan
    Title: Authorized Individual




Principal amount of Purchased First Lien Loans: 
Principal amount of Initial Exchanged Term Loans:

| Notice Address: | Invesco Senior Secured Management, Inc 1166 Avenue of the Americas, |
| --- | --- |
| | 26th Floor New York, NY 10036 |
| Attn: | Bank Loan Services |
| Email: | BLS-AssetServices@invesco.com |

*[Signature Page to Serta Exchange Agreement]*

**Invesco Dynamic Credit Opportunities Fund
as a Specified First Lien Lender**
BY: Invesco Senior Secured Management, Inc. as Sub-
advisor



By:

    Name: Kevin Egan
    Title: Authorized Individual

Principal amount of Purchased First Lien Loans:
Principal amount of Initial Exchanged Term Loans:

| Notice Address: | Invesco Senior Secured Management, Inc 1166 Avenue of the Americas, |
| --- | --- |
| | 26th Floor New York, NY 10036 |
| Attn: | Bank Loan Services |
| Email: | BLS-AssetServices@invesco.com |

*[Signature Page to Serta Exchange Agreement]*

**Invesco Floating Rate Fund**
**as a Specified First Lien Lender**
BY: Invesco Senior Secured Management, Inc. as Sub-Adviser

By: 

    Name: Kevin Egan
    Title: Authorized Individual

Principal amount of Purchased First Lien Loans: ▉▉▉▉▉▉
Principal amount of Initial Exchanged Term Loans: ▉▉▉▉▉▉

| Notice Address: | Invesco Senior Secured Management, Inc 1166 Avenue of the Americas, 26th Floor New York, NY 10036 |
| --- | --- |
| Attn: | Bank Loan Services |
| Email: | BLS-AssetServices@invesco.com |

*[Signature Page to Serta Exchange Agreement]*

**Invesco Floating Rate Income Fund**
**as a Specified First Lien Lender**
By: Invesco Senior Secured Management, Inc. as Sub-
Adviser

By: 

    Name: Kevin Egan
    Title: Authorized Individual

Principal amount of Purchased First Lien Loans:
Principal amount of Initial Exchanged Term Loans: ███████

| Notice Address: | Invesco Senior Secured Management, Inc 1166 Avenue of the Americas, |
|---|---|
| | 26th Floor New York, NY 10036 |
| Attn: | Bank Loan Services |
| Email: | BLS-AssetServices@invesco.com |

**Invesco Gemini US Loan Fund LLC**
**as a Specified First Lien Lender**
By: Invesco Senior Secured Management, Inc as
Investment Advisor

By:

    Name: Kevin Egan
    Title: Authorized Individual

Principal amount of Purchased First Lien Loans: 
Principal amount of Initial Exchanged Term Loans:

| Notice Address: | Invesco Senior Secured Management, Inc 1166 Avenue of the Americas, 26th Floor New York, NY 10036 |
|---|---|
| Attn: | Bank Loan Services |
| Email: | BLS-AssetServices@invesco.com |

*[Signature Page to Serta Exchange Agreement]*

**Invesco Oppenheimer Master Loan Fund**
**as a Specified First Lien Lender**
By: Invesco Senior Secured Management, Inc., as sub-
adviser

By: 

    Name: Kevin Egan
    Title: Authorized Individual

Principal amount of Purchased First Lien Loans: ██████
Principal amount of Initial Exchanged Term Loans: ██████

| Notice Address: | Invesco Senior Secured Management, Inc 1166 Avenue of the Americas, 26th Floor New York, NY 10036 |
| --- | --- |
| Attn: | Bank Loan Services |
| Email: | BLS-AssetServices@invesco.com |

**Invesco Oppenheimer Senior Floating Rate Fund
as a Specified First Lien Lender**
By: Invesco Senior Secured Management, Inc., as sub-adviser

By: 

    Name: Kevin Egan
    Title: Authorized Individual

Principal amount of Purchased First Lien Loans: ███████
Principal amount of Initial Exchanged Term Loans: ███████

| Notice Address: | Invesco Senior Secured Management, Inc 1166 Avenue of the Americas, 26th Floor New York, NY 10036 |
|---|---|
| Attn: | Bank Loan Services |
| Email: | BLS-AssetServices@invesco.com |

*[Signature Page to Serta Exchange Agreement]*

**Invesco Oppenheimer Senior Floating Rate Plus
Fund**
**as a Specified First Lien Lender**
By: Invesco Senior Secured Management, Inc., as sub-
adviser


By:

    Name: Kevin Egan
    Title: Authorized Individual




Principal amount of Purchased First Lien Loans: 
Principal amount of Initial Exchanged Term Loans:

| Notice Address: | Invesco Senior Secured Management, Inc 1166 Avenue of the Americas, 26th Floor New York, NY 10036 |
| --- | --- |
| Attn: | Bank Loan Services |
| Email: | BLS-AssetServices@invesco.com |

**Invesco Senior Income Trust**
**as a Specified First Lien Lender**
BY: Invesco Senior Secured Management, Inc. as Sub-
advisor

By:

    Name: Kevin Egan
    Title: Authorized Individual

Principal amount of Purchased First Lien Loans:  
Principal amount of Initial Exchanged Term Loans:

| Notice Address: | Invesco Senior Secured Management, Inc 1166 Avenue of the Americas, |
| --- | --- |
| | 26th Floor New York, NY 10036 |
| Attn: | Bank Loan Services |
| Email: | BLS-AssetServices@invesco.com |

**Invesco Senior Loan Fund**
**as a Specified First Lien Lender**
BY: Invesco Senior Secured Management, Inc. as Sub-advisor

By: 

    Name: Kevin Egan
    Title: Authorized Individual

Principal amount of Purchased First Lien Loans: ███████
Principal amount of Initial Exchanged Term Loans: ███████

| Notice Address: | Invesco Senior Secured Management, Inc 1166 Avenue of the Americas, 26th Floor New York, NY 10036 |
|---|---|
| Attn: | Bank Loan Services |
| Email: | BLS-AssetServices@invesco.com |

**INVESCO SSL FUND LLC**
**as a Specified First Lien Lender**
By: Invesco Senior Secured Management, Inc. as
Collateral Manager

By:

    Name: Kevin Egan
    Title: Authorized Individual

Principal amount of Purchased First Lien Loans: 
Principal amount of Initial Exchanged Term Loans:

| Notice Address: | Invesco Senior Secured Management, Inc 1166 Avenue of the Americas, 26th Floor New York, NY 10036 |
| --- | --- |
| Attn: | Bank Loan Services |
| Email: | BLS-AssetServices@invesco.com |

**Invesco Zodiac Funds** - **Invesco US Senior Loan**
**ESG Fund**
**as a Specified First Lien Lender**
By: Invesco Senior Secured Management, Inc. as
Investment Manager

By: 

    Name: Kevin Egan
    Title: Authorized Individual

Principal amount of Purchased First Lien Loans: █████████
Principal amount of Initial Exchanged Term Loans: █████████

| | |
|---|---|
| Notice Address: | Invesco Senior Secured Management, Inc 1166 Avenue of the Americas, 26th Floor New York, NY 10036 |
| Attn: | Bank Loan Services |
| Email: | BLS-AssetServices@invesco.com |

*[Signature Page to Serta Exchange Agreement]*

**Invesco Zodiac Funds - Invesco US Senior Loan
Fund
as a Specified First Lien Lender**
By: Invesco Senior Secured Management, Inc. as
Investment Manager

By:

    Name: Kevin Egan
    Title: Authorized Individual

Principal amount of Purchased First Lien Loans:
Principal amount of Initial Exchanged Term Loans:

| Notice Address: | Invesco Senior Secured Management, Inc 1166 Avenue of the Americas, |
| --- | --- |
| | 26th Floor New York, NY 10036 |
| Attn: | Bank Loan Services |
| Email: | BLS-AssetServices@invesco.com |

*[Signature Page to Serta Exchange Agreement]*

**Kaiser Permanente Group Trust**
**as a Specified First Lien Lender**
By: Invesco Senior Secured Management, Inc. as
Investment Manager

By: 

    Name: Kevin Egan
    Title: Authorized Individual

Principal amount of Purchased First Lien Loans:           █████
Principal amount of Initial Exchanged Term Loans:    █████

| Notice Address: | Invesco Senior Secured Management, Inc 1166 Avenue of the Americas, |
| --- | --- |
| | 26th Floor New York, NY 10036 |
| Attn: | Bank Loan Services |
| Email: | BLS-AssetServices@invesco.com |

*[Signature Page to Serta Exchange Agreement]*

**Kapitalforeningen Investin Pro, US Leveraged Loans I**
**as a Specified First Lien Lender**
By: Invesco Senior Secured Management, Inc. as
Investment Manager

By: 

    Name: Kevin Egan
    Title: Authorized Individual

Principal amount of Purchased First Lien Loans: ▮▮▮▮▮
Principal amount of Initial Exchanged Term Loans: ▮▮▮▮▮

| | |
|---|---|
| Notice Address: | Invesco Senior Secured Management, Inc 1166 Avenue of the Americas, 26th Floor New York, NY 10036 |
| Attn: | Bank Loan Services |
| Email: | |

*[Signature Page to Serta Exchange Agreement]*

**MILOS CLO, LTD.**
**as a Specified First Lien Lender**
By: Invesco RR Fund L.P. as Collateral Manager
By: Invesco RR Associates LLC, as general partner
By: Invesco Senior Secured Management, Inc. as sole
member


By: _____

    Name: Kevin Egan
    Title: Authorized Individual




Principal amount of Purchased First

Lien Loans: ███████████

Principal amount of Initial Exchanged Term Loans: ███████████

Notice Address:    Invesco Senior Secured Management, Inc 1166 Avenue of the Americas, 26th Floor New York, NY 10036

Attn:    Bank Loan Services
Email:    BLS-AssetServices@invesco.com

**Recette CLO, Ltd.**
**as a Specified First Lien Lender**
By: Invesco Senior Secured Management, Inc. as
Collateral Manager


By:

    Name: Kevin Egan
    Title: Authorized Individual


Principal amount of Purchased First Lien Loans: 
Principal amount of Initial Exchanged Term Loans:

| Notice Address: | Invesco Senior Secured Management, Inc 1166 Avenue of the Americas, 26th Floor New York, NY 10036 |
| --- | --- |
| Attn: | Bank Loan Services |
| Email: | BLS-AssetServices@invesco.com |

*[Signature Page to Serta Exchange Agreement]*

**Riserva CLO, Ltd**
**as a Specified First Lien Lender**
By: Invesco RR Fund L.P. as Collateral Manager
By: Invesco RR Associates LLC, as general partner
By: Invesco Senior Secured Management, Inc. as sole
member

By:

    Name: Kevin Egan
    Title: Authorized Individual

Principal amount of Purchased First
Lien Loans: ▮▮▮▮▮▮
Principal amount of Initial Exchanged Term Loans: ▮▮▮▮▮

| Notice Address: | Invesco Senior Secured Management, Inc 1166 Avenue of the Americas, |
|---|---|
| | 26th Floor New York, NY 10036 |
| Attn: | Bank Loan Services |
| Email: | BLS-AssetServices@invesco.com |

*[Signature Page to Serta Exchange Agreement]*

**Sentry Insurance a Mutual Company**
**as a Specified First Lien Lender**
BY: Invesco Senior Secured Management, Inc. as Sub-
Advisor

By:

    Name: Kevin Egan
    Title: Authorized Individual

Principal amount of Purchased First Lien Loans:
Principal amount of Initial Exchanged Term Loans: 

| Notice Address: | Invesco Senior Secured Management, Inc 1166 Avenue of the Americas, 26th Floor New York, NY 10036 |
|---|---|
| Attn: | Bank Loan Services |
| Email: | BLS-AssetServices@invesco.com |

*[Signature Page to Serta Exchange Agreement]*

**The City of New York Group Trust**
**as a Specified First Lien Lender**
BY: Invesco Senior Secured Management, Inc. as
Investment Manager

By: 

    Name: Kevin Egan
    Title: Authorized Individual

Principal amount of Purchased First Lien Loans: ███████
Principal amount of Initial Exchanged Term Loans: ███████

| Notice Address: | Invesco Senior Secured Management, Inc 1166 Avenue of the Americas, 26th Floor New York, NY 10036 |
| --- | --- |
| Attn: | Bank Loan Services |
| Email: | BLS-AssetServices@invesco.com |

*[Signature Page to Serta Exchange Agreement]*

**Upland CLO, Ltd.**
**as a Specified First Lien Lender**
By: Invesco Senior Secured Management, Inc. as
Collateral Manager

By: 

    Name: Kevin Egan
    Title: Authorized Individual

Principal amount of Purchased First Lien Loans: ▮▮▮▮▮▮
Principal amount of Initial Exchanged Term Loans: ▮▮▮▮▮▮

| Notice Address: | Invesco Senior Secured Management, Inc 1166 Avenue of the Americas, 26th Floor New York, NY 10036 |
| --- | --- |
| Attn: | Bank Loan Services |
| Email: | BLS-AssetServices@invesco.com |

**HarbourView CLO VII-R, Ltd.**
**as a Specified First Lien Lender**
By: HarbourView Asset Management Corporation, as
Collateral Manager

By: _____

    Name: David Lukkes
    Title: Authorized Signatory

Principal amount of Purchased First Lien Loans: ██████████

Principal amount of Initial Exchanged Term Loans: ██████████

Notice Address:     Invesco Senior Secured Management, Inc 1166 Avenue of the Americas,

                       26th Floor New York, NY 10036

Attn:            Bank Loan Services
Email:          BLS-AssetServices@invesco.com

*[Signature Page to Serta Exchange Agreement]*

**Invesco Oppenheimer Fundamental Alternatives Fund,**
**as a Specified First Lien Lender**
**By: Invesco Senior Secured Management, Inc. as Sub-Advisor**

By: _____

Name: Philip Yarrow
Authorized Signatory

Title:

Principal amount of Purchased First Lien Loans: ▮▮▮▮▮▮
Principal amount of Initial Exchanged Term Loans: ▮▮▮▮▮▮

Notice Address: Invesco Senior Secured Management, Inc 1166 Avenue of the Americas,
26th Floor New York, NY 10036

Attn: Bank Loan Services

Email: BLS-AssetServices@invesco.com

*[Signature Page to Serta Exchange Agreement]*

**Oaktree Opportunities Fund Xb Holdings (Delaware), L.P.,**
**as a Specified First Lien Lender**

By: Oaktree Fund GP, LLC
Its: General Partner

By: Oaktree Fund GP I, L.P.
Its: Managing Member


By: _____
Name: Allen Li
Title: Authorized Signatory


By: _____
Name: Kaj Vazales
Title: Authorized Signatory


Principal amount of Purchased First Lien Loans: ███████████
Principal amount of Initial Exchanged Term Loans: ███████████

| Notice Address: | 333 S. Grand Avenue, 28th Floor |
| | Los Angeles, CA 90071 |
| Attn: | Corporate Actions Team |
| Email: | ali@oaktreecapital.com; |
| | kvazales@oaktreecapital.com |