# EXHIBIT F

# (Part 1 of 9)

*EXECUTION VERSION*

### AMENDMENT NO. 1 TO FIRST LIEN TERM LOAN AGREEMENT

This AMENDMENT NO. 1 to the First Lien Term Loan Agreement and First Lien Term Loan Pledge and Security Agreement referred to below, dated as of June 22, 2020 (this "First Amendment"), by and among Dawn Intermediate, LLC, a Delaware limited liability company ("Dawn Intermediate" or "Holdings"), Serta Simmons Bedding, LLC, a Delaware limited liability company ("SSB" or the "Top Borrower"), National Bedding Company L.L.C., an Illinois limited liability company ("National Bedding"), and SSB Manufacturing Company, a Delaware corporation ("SSB Manufacturing"), as borrowers, certain subsidiaries of the Top Borrower, as Subsidiary Guarantors, the Lenders under the Term Loan Agreement immediately prior to the First Amendment Effective Date (as defined below) party hereto, and the Lenders party hereto constituting the Required First Lien Lenders (as defined below). Capitalized terms not otherwise defined in this First Amendment have the same meanings as specified in the Amended Term Loan Agreement (as defined below).

### RECITALS

WHEREAS, the Borrowers, Holdings, the several lenders from time to time party thereto and UBS AG, Stamford Branch ("UBS"), in its capacity as administrative agent for the Lenders (in such capacity the "Administrative Agent"), have entered into that certain First Lien Term Loan Agreement, dated as of November 8, 2016 (together with all exhibits and schedules attached thereto, as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the First Amendment Effective Date (as defined below), the "Existing Term Loan Agreement" and, as amended by this First Amendment, the "Amended Term Loan Agreement");

WHEREAS, the Borrowers, Holdings and the Administrative Agent, have entered into that certain First Lien Term Loan Pledge and Security Agreement, dated as of November 8, 2016 (together with all exhibits and schedules attached thereto, as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the First Amendment Effective Date (as defined below), the "Existing Security Agreement" and, as amended by this First Amendment, the "Amended Security Agreement"); and

WHEREAS, in accordance with Section 9.02(b) of the Existing Term Loan Agreement, the Top Borrower has requested that the Lenders (as defined in the Existing Term Loan Agreement) party hereto (which collectively constitute the Required Lenders under and as defined in the Existing Term Loan Agreement, the "Required First Lien Lenders") agree to make certain amendments to the Existing Term Loan Agreement as set forth herein.

NOW, THEREFORE, in consideration of the covenants and agreements contained herein, as well as other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

SECTION 1.  **Amendments to Existing Term Loan Agreement**. The Existing Term Loan Agreement, effective as of, and subject to the occurrence of, the First Amendment Effective Date, is hereby amended to delete the stricken text (indicated textually in the same manner as the following example: ~~stricken text~~) and to add the double-underlined text (indicated textually in the same manner as the following example: <u>double-underlined text</u>) as set forth in the Amended Term Loan Agreement attached as Annex I hereto.

SECTION 2.  **Exhibits**. Exhibit G-4 attached hereto is hereby added to the Existing Term Loan Agreement as Exhibit G-4.

Confidential
Confidential

SSB_LCM_00000876
SSB_ADVERSARY00000876

SECTION 3. Amendments to Existing Security Agreement.

(a) Section 4.02(d) of the Existing Security Agreement is hereby amended by amending and restating clause (ii) as follows:

"(ii) each Grantor will permit the Administrative Agent or its nominee at any time when an Event of Default has occurred and is continuing to exercise the rights and remedies provided under Section 5.01(a)(iv) (subject to the notice requirements and proviso set forth therein); and"

(b) Section 5.01(a) of the Existing Security Agreement is hereby amended by amending and restating clause (iv) as follows:

"(iv) upon at least three Business Days' written notice to the Top Borrower, (A) transfer and register in its name or in the name of its nominee the whole or any part of the Pledged Collateral, and (B) exercise the voting and all other rights as a holder with respect thereto (whereupon the voting and other rights of such Grantor described in Section 4.02(d)(i) above shall immediately cease such that the Administrative Agent shall have the sole right to exercise such voting and other rights while the relevant Event of Default is continuing), to collect and receive all cash dividends, interest, principal and other distributions made thereon (it being understood that all Stock Rights received by any Grantor while the relevant Event of Default is continuing shall be received in trust for the benefit of the Administrative Agent and forthwith paid over to the Administrative Agent in the same form as so received (with any necessary endorsements)) and to otherwise act with respect to the Pledged Collateral as though the Administrative Agent was the outright owner thereof, provided, that prior to any transfer of the Capital Stock of Serta Inc. and/or exercise of voting and other rights as a holder of the Capital Stock of Serta Inc., Serta Inc.'s interest in AI Dream shall be transferred to a subsidiary of Dawn Holdings, Inc. that is not a Grantor hereunder."

SECTION 4. Consents. Each Lender party hereto, on behalf of itself and each of its Related Parties, hereby acknowledges and agrees that the borrowing and/or incurrence of the Priority Term Loans under the PTL Credit Agreement and the other transactions contemplated by or occurring pursuant to the PTL Credit Agreement (including PTL Exchange Transactions) and the Loan Documents under and as defined in the PTL Credit Agreement (and any action or intermediate step necessary to effectuate the PTL Credit Agreement and such other transactions), whether consummated prior to, on or after the First Amendment Effective Date, shall be and are permitted under the provisions of the Amended Term Loan Agreement and each other Loan Document.

SECTION 5. Conditions of Effectiveness. The effectiveness of this First Amendment (including the amendments contained in Section 1, Section 2 and Section 3) is subject to the satisfaction (or waiver) of the following conditions (the date of satisfaction of such conditions being referred to herein as the "First Amendment Effective Date"):

(a) This First Amendment shall have been duly executed by the Borrowers, Holdings, the Subsidiary Guarantors, the Administrative Agent and the Required First Lien Lenders (which may include a copy transmitted by facsimile or other electronic method), and delivered to the Administrative Agent and the Required First Lien Lenders.

(b) All fees and expenses required to be paid in connection with this First Amendment shall have been paid in full in cash or will be paid in full in cash on the First Amendment Effective Date, including all reasonable and documented out-of-pocket expenses incurred by the Administrative Agent

Confidential
Confidential

SSB_LCM_00000877
SSB_ADVERSARY00000877

(including reasonable fees and expenses of legal counsel required to be paid), in connection with the execution and delivery of this First Amendment.

SECTION 6. <u>Conditions Subsequent</u>. Immediately following the transactions contemplated under this First Amendment (including the consent set forth in Section 3 hereof), (i) the PTL Credit Agreement shall become effective and (ii) the PTL New Money Term Loans shall be funded and the Initial PTL Exchange Transactions shall be consummated.

SECTION 7. <u>Representations and Warranties</u>. To induce the other parties hereto to enter into this First Amendment, each Loan Party represents and warrants to each of the Required First Lien Lenders and the Administrative Agent that (i) as of the First Amendment Effective Date, the representations and warranties of Holdings, the Borrowers and the Subsidiary Guarantors set forth in Article 3 of the Amended Term Loan Agreement (other than with respect to Section 3.12) are true and correct in all material respects on and as of the First Amendment Effective Date (immediately after giving effect to this First Amendment), provided that to the extent that any representation and warranty specifically refers to a given date or period, such representation and warranty shall be true and correct in all material respects as of such date or for such period and (ii) on the First Amendment Effective Date immediately after giving effect to this First Amendment and the other transactions contemplated hereby, no Event of Default exists.

SECTION 8. <u>Effects on Loan Documents</u>.

(a) Except as specifically amended herein or contemplated hereby, all Loan Documents shall continue to be in full force and effect and are hereby in all respects ratified and confirmed.

(b) The execution, delivery and effectiveness of this First Amendment shall not operate as a waiver of any right, power or remedy of any Lender or the Administrative Agent under any of the Loan Documents or be construed as a substitution or novation of the Secured Obligations, which shall remain in full force and effect, except to any extent modified hereby, nor in any way limit, impair or otherwise affect the rights and remedies of the Lenders or the Administrative Agent under the Loan Documents.

(c) (i) Each Loan Party acknowledges and agrees that, on and after the First Amendment Effective Date, this First Amendment shall constitute a Loan Document for all purposes of the Amended Term Loan Agreement and (ii) each of the Loan Parties hereby (A) agrees that all Secured Obligations shall be guaranteed pursuant to each Loan Guaranty in accordance with the terms and provisions thereof and shall be secured pursuant to the Collateral Documents in accordance with the terms and provisions thereof, and that, notwithstanding the effectiveness of this First Amendment, on and after the First Amendment Effective Date, each Loan Guaranty and the Liens created pursuant to the Collateral Documents for the benefit of the Secured Parties continue to be in full force and effect on a continuous basis and (B) affirms, acknowledges and confirms all of its obligations and liabilities under the Existing Term Loan Agreement and each other Loan Document to which it is a party, in each case, after giving effect to this First Amendment, all as provided in such Loan Documents, and acknowledges and agrees that such obligations and liabilities continue in full force and effect on a continuous basis in respect of, and to secure, the Secured Obligations, in each case, after giving effect to this First Amendment.

(d) On and after the First Amendment Effective Date, each reference in the Amended Term Loan Agreement to "this Agreement", "hereunder", "hereof", "herein" or words of like import referring to the Term Loan Agreement, and each reference in the other Loan Documents to "Term Loan Agreement", "thereunder", "thereof" or words of like import referring to the Term Loan Agreement shall mean and be a reference to the Term Loan Agreement as amended by this First Amendment, and this First

3

Confidential
Confidential

SSB_LCM_00000878
SSB_ADVERSARY00000878

Amendment and the Term Loan Agreement as amended by this First Amendment shall be read together and construed as a single instrument.

(e)     Nothing herein shall be deemed to entitle any Loan Party to a further consent to, or a further waiver, amendment, modification or other change of, any of the terms, conditions, obligations, covenants or agreements contained in the Amended Term Loan Agreement or any other Loan Document in similar or different circumstances.

SECTION 9.     <u>Expense Reimbursement and Indemnification</u>.

(a)     The Borrowers hereby confirm that the expense reimbursement and indemnification provisions set forth in Section 9.03 of the Amended Term Loan Agreement shall apply to this First Amendment and the transactions contemplated hereby irrespective of whether the First Amendment Effective Date occurs.

(b)     The Lenders party hereto hereby confirm that the indemnification provisions set forth in Section 8.11 of the Amended Term Loan Agreement shall apply to this First Amendment and the transactions contemplated hereby irrespective of whether the First Amendment Effective Date occurs.

SECTION 10.     <u>Amendments; Severability</u>.

(a)     This First Amendment may not be amended nor may any provision hereof be waived or otherwise modified except in accordance with the provisions of Section 9.02 of the Amended Term Loan Agreement.

(b)     To the extent permitted by applicable Requirements of Law, any provision of this First Amendment held to be invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without affecting the validity, legality and enforceability of the remaining provisions thereof; and the invalidity of a particular provision in a particular jurisdiction shall not invalidate such provision in any other jurisdiction.

SECTION 11.     <u>Governing Law; Waiver of Jury Trial; Jurisdiction</u>.     THIS FIRST AMENDMENT AND ANY CLAIM, CONTROVERSY OR DISPUTE ARISING UNDER OR RELATED TO THIS FIRST AMENDMENT, SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK. The provisions of <u>Sections 9.10(b)</u>, <u>9.10(c)</u>, <u>9.10(d)</u> and <u>9.11</u> of the Amended Term Loan Agreement are incorporated herein by reference, *mutatis mutandis*.

SECTION 12.     <u>Headings</u>.     Section headings in this First Amendment are for convenience of reference only, are not part of this First Amendment and shall not affect the construction of, or be taken into consideration in interpreting, this First Amendment.

SECTION 13.     <u>Reaffirmation</u>.     Each Loan Party, as debtor, grantor, pledgor, guarantor, assignor, or in other similar capacities in which such Loan Party has granted liens or security interests in its properties and/or acts as a guarantor, surety or an accommodation party, as the case may be, under any of the Loan Documents to which it is a party hereby (a) ratifies and reaffirms all of its payment and performance obligations, contingent or otherwise, and undertakings arising under or pursuant to each of such Loan Documents and (b) acknowledges and agrees that, subsequent to the execution and delivery of, and after taking into account and giving effect to, the Amended Term Loan Agreement, each of such Loan Documents remains in full force and effect as hereby ratified, amended and confirmed. To the

Confidential

Confidential

SSB_LCM_00000879

SSB_ADVERSARY00000879

extent such Loan Party granted liens on, or security interests in, any of its properties pursuant to any such Loan Documents as security for the Secured Obligations arising under, pursuant to or as defined in the Existing Term Loan Agreement, each such Loan Party hereby ratifies and reaffirms such grant of security and confirms and agrees that, subsequent to the execution and delivery of, and after taking into account and giving effect to, the Amended Term Loan Agreement, such liens and security interests hereafter secure all of the Secured Obligations arising under, pursuant to or as defined in the Amended Term Loan Agreement.  The execution of this Agreement shall not operate as a waiver of any right, power or remedy of the Administrative Agent or any other Secured Party, nor constitute a waiver of any provision of any of the Loan Documents.

SECTION 14.    Instruction to the Administrative Agent.

(a)    Each of the Lenders party hereto hereby consent, request and instruct the Administrative Agent to (a) execute and deliver this First Amendment, the PTL Intercreditor Agreement and any other First Amendment Loan Documents, (b) accept and approve all First Amendment Loan Documents and to not require any other documents, opinions or other items in connection therewith and/or (c) take (and/or decline to take) any and all actions as the Administrative Agent, in its sole discretion, may determine to be necessary, advisable or desirable in carrying out, effectuating or otherwise in furtherance of the transactions related to or in connection with this First Amendment and the Required First Lien Lenders.

(b)    The Lenders party hereto hereby ratify all of the First Amendment Documents and confirm the First Amendment Documents and each other documentary condition precedent is as satisfactory to them in all respects.

SECTION 15.    Counterparts; Electronic Execution.  This First Amendment and each other Loan Document executed on the First Amendment Effective Date (the "First Amendment Loan Documents") may be executed in counterparts (and by different parties hereto on different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract.  Delivery of an executed counterpart of a signature page to this First Amendment by facsimile or by email as a ".pdf" or ".tif" attachment shall be effective as delivery of a manually executed counterpart of this First Amendment.  The words "execution," "signed," "signature," and words of like import in this First Amendment shall be deemed to include electronic signatures or electronic records, each of which shall be of the same legal effect, validity or enforceability as a manually executed signature or the use of a paper-based recordkeeping system, as the case may be, to the extent and as provided for in any applicable law, including the Federal Electronic Signatures in Global and National Commerce Act, the New York State Electronic Signatures and Records Act, or any other similar state laws based on the Uniform Electronic Transactions Act.

[Remainder of page intentionally left blank.]

Confidential
Confidential

SSB_LCM_00000880
SSB_ADVERSARY00000880

IN WITNESS WHEREOF, the parties hereto have caused this First Amendment to be duly executed and delivered by their respective proper and duly authorized officers as of the day and year first above written.

        SERTA SIMMONS BEDDING, LLC, as the Top Borrower

By: *Kristen McGuffey* (DocuSigned, BBF738471F234D4...)
Name: Kristen McGuffey
Title: Executive Vice President, General Counsel and Secretary

        NATIONAL BEDDING COMPANY L.L.C., as a Borrower

By: *Kristen McGuffey* (DocuSigned, BBF738471F234D4...)
Name: Kristen McGuffey
Title: Executive Vice President, General Counsel and Secretary

        SSB MANUFACTURING COMPANY, as a Borrower

By: *Kristen McGuffey* (DocuSigned, BBF738471F234D4...)
Name: Kristen McGuffey
Title: Executive Vice President, General Counsel and Secretary

        DAWN INTERMEDIATE, LLC, as Holdings

By: *Kristen McGuffey* (DocuSigned, BBF738471F234D4...)
Name: Kristen McGuffey
Title: Executive Vice President, General Counsel and Secretary

[SIGNATURE PAGE TO AMENDMENT NO. 1 TO FIRST LIEN TERM LOAN AGREEMENT]

**Subsidiary Guarantors**:

SIMMONS BEDDING COMPANY, LLC
SSB HOSPITALITY, LLC
SSB LOGISTICS, LLC
SSB RETAIL, LLC
THE SIMMONS MANUFACTURING CO., LLC
TOMORROW SLEEP LLC
TUFT & NEEDLE, LLC
WORLD OF SLEEP OUTLETS, LLC,
each as a Loan Party

By: */s/ Kristen McGuffey*
Name: Kristen McGuffey
Title: Executive Vice President, General Counsel and Secretary


DREAMWELL, LTD.

By: */s/ Kristen McGuffey*
Name: Kristen McGuffey
Title: Executive Vice President and Secretary


SERTA INTERNATIONAL HOLDCO, LLC

By: */s/ Kristen McGuffey*
Name: Kristen McGuffey
Title: Authorized Person

[SIGNATURE PAGE TO AMENDMENT NO. 1 TO FIRST LIEN TERM LOAN AGREEMENT]

Brighthouse Funds Trust I - Brighthouse/Eaton Vance Floating Rate Portfolio

By: Eaton Vance Management as Investment Advisor

By: _____
Name: Michael B. Botthof
Title:   Vice President

[SIGNATURE PAGE TO THE FIRST AMENDMENT]

Confidential

Confidential

SSB_LCM_00000883

SSB_ADVERSARY00000883

Calvert Management Series - Calvert Floating-Rate Advantage Fund

By: Calvert Research Management as Investment Advisor

By: _____
Name: Michael B. Botthof
Title:  Vice President

[SIGNATURE PAGE TO THE FIRST AMENDMENT]

Confidential
Confidential

SSB_LCM_00000884
SSB_ADVERSARY00000884

Eaton Vance CLO 2013-1 Ltd

By: Eaton Vance Management as
Investment Advisor

By: _____/s/ Michael B. Botthof_____
Name: Michael B. Botthof
Title:  Vice President

[SIGNATURE PAGE TO THE FIRST AMENDMENT]

Confidential
Confidential

SSB_LCM_00000885
SSB_ADVERSARY00000885

Eaton Vance CLO 2014-1R, Ltd.

By: Eaton Vance Management as
Investment Advisor

By: _____/s/ Michael B. Botthof_____
Name: Michael B. Botthof
Title: Vice President

[SIGNATURE PAGE TO THE FIRST AMENDMENT]

Confidential

Confidential

SSB_LCM_00000886

SSB_ADVERSARY00000886

Eaton Vance CLO 2015-1, LTD

By: Eaton Vance Management as
Investment Advisor

By: _____
Name: Michael B. Botthof
Title: Vice President

[SIGNATURE PAGE TO THE FIRST AMENDMENT]

Confidential

Confidential

SSB_LCM_00000887

SSB_ADVERSARY00000887

Eaton Vance CLO 2018-1 Ltd

By: Eaton Vance Management as
Investment Advisor

By: _____/s/ Michael B. Botthof_____
Name: Michael B. Botthof
Title: Vice President

[SIGNATURE PAGE TO THE FIRST AMENDMENT]

Confidential

Confidential

SSB_LCM_00000888

SSB_ADVERSARY00000888