# EXHIBIT M

Case 23-09001 Document 91-27 Filed in TXSB on 03/17/23 Page 2 of 36

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF NEW YORK - CIVIL TERM:  PART 48
 2   ---------------------------------------------X
     NORTH STAR DEBT HOLDINGS, LP, SILVER OAK
 3   CAPITAL, LLC, AG CREDIT SOLUTIONS NON-ECI
     MASTER FUND, AG CENTRE STREET PARTNERSHIP, LP,
 4   AG SUPER FUND MASTER, LP, and GAMUT CAPITAL
     SSB, LLC,
 5                           Plaintiffs,
                                          INDEX NO.
 6            - against -

 7   SERTA SIMMONS BEDDING, LLC, ADVENT
     INTERNATIONAL CORPORATION, EATON VANCE
 8   MANAGEMENT, INVESCO SENIOR SECURED MANAGEMENT,
     INC., CREDIT SUISSE ASSET MANAGEMENT, LLC,
 9   BOSTON MANAGEMENT and RESEARCH, BARINGS LLC,
     and Does 1-50,
10                           Defendants.
     ---------------------------------------------X
11                           Skype Proceedings
                             November 30, 2020
12

13   B E F O R E:

14            THE HONORABLE ANDREA MASLEY, Justice

15
     A P P E A R A N C E S:
16
              PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
17            Attorneys for the Plaintiffs
                  1285 Avenue of the Americas
18                New York, New York  10019
              BY:  LEWIS CLAYTON, ESQ.
19            BY:  ANDREW EHRLICH, ESQ.
              BY:  RYAN RIZZUTO, ESQ.
20

21
              FRIEDMAN KAPLAN SEILER & ADELMAN, LLP
22                7 Times Square - Floor
                  New York, New York  10036
23            BY:  ANNE BEAUMONT, ESQ.

24

25
     A P P E A R A N C E S:
```

William Cardenuto, CSR, Official Court Reporter

Case 23-09001   Document 91-27   Filed in TXSB on 03/17/23   Page 3 of 36

2

                    WEIL GOTSHAL & MANGES, LLP
                    Attorneys for Defendant Sert Simmons
                          767 Fifth Avenue
                          New York, New York 10153
                    BY:  DAVID LERNER, ESQ.


                    GIBSON, DUNN & CRUTCHER, LLP
                    Attorneys for the Lender Defendants
                          200 Park Avenue
                          New York, New York  10166
                    BY:  RANDY MASTRO, ESQ.


                    ROPES & GRAY
                    Attorneys for Defendant Advent International
                    Corporation
                          1211 Avenue of the Americas
                          New York, New York  10036
                    BY:  DAN McCAUGHEY, ESQ.
                    BY:  LOGAN PETTIGREW, ESQ.


                    FRESHFIELDS BRUCKHAUS DERINGER US LLP
                    Attorneys for Barings LLC
                          520 Madison Avenue - 24th Floor
                          New York, New York  10022
                    BY:  MADLYN PRIMOFF, ESQ.




                         William Cardenuto
                         Senior Court Reporter

3

- Proceedings -

1    2:31 p.m.

2              THE COURT:  Hi.  Good afternoon.  In the matter

3    of North Star Debt Holdings LP against Serta Simmons

4    Bedding.  I see the court reporter is here as well as one

5    or two other people including some students from CUNY Law

6    School's New York practice class.  So I'll ask you to keep

7    that in mind when you're speaking, and if you can take a

8    moment to help out our students, I would appreciate it.

9    It's 2:31.  I'm going to ask each party to have one

10   speaker and have that one speaker put everyone's

11   appearance on the record, and I would ask that everyone

12   turn off their microphones unless they are speaking.

13   Okay.  So who do we have representing North Star Debt

14   Holdings LP and the plaintiffs?

15             MR. CLAYTON:  Your Honor, Lewis Clayton from

16   Paul Weiss.  I think I will be our one speaker, and my

17   colleagues Andrew Ehrlich and Ryan Rizzuto of Paul Weiss

18   are also with me.  I think we also have a representative

19   from the Friedman Kaplan firm.

20             THE COURT:  Okay.  Can I have that attorney make

21   an appearance, please, from Friedman Kaplan.

22             MS. BEAUMONT:  Hello, your Honor.  This is Anne

23   Beaumont from Friedman Kaplan.

24             THE COURT:  And for defendants who is going to

25   be speaking?

FILED: NEW YORK COUNTY CLERK 12/02/2020 07:50 PM
NYSCEF DOC. NO. 214
INDEX NO. 652243/2020
RECEIVED NYSCEF: 12/02/2020

- Proceedings -

1              MR. LENDER:  Your Honor, this is David Lender

2        from Weil Gotshal on behalf of the company Serta Simmons

3        Bedding LLC, and I'll be speaking on behalf of the

4        company, and I believe I have on as well my colleague,

5        Luna Barrington, also Weil Gotshal.

6              THE COURT:  Okay.  And then we have the lender

7        defendants.

8              MR. MASTRO:  Randy Mastro, Gibson, Dunn and

9        Crutcher on behalf of the lender defendants.  While I have

10       colleagues with me as well, I will be doing the

11       speaking.

12             THE COURT:  Okay.  Thank you.

13             MR. MCCAUGHEY:  Your Honor, if I may, this is

14       Dan McCaughey from Ropes and Gray on behalf of Advent.

15             THE COURT:  Let's finish with Advent, and who is

16       with you?

17             MR. MCCAUGHEY:  Logan Pettigrew also from Ropes

18       and Gray.

19             THE COURT:  Thanks.  And I heard someone else

20       wanted to make an appearance.

21             MS. PRIMOFF:  Yes, your Honor.  Madlyn Primoff

22       from Freshfields, Bruckhaus and Deringer US LLP on behalf

23       of Defendant Barings.

24             THE COURT:  Thank you.  Anyone else before we

25       all turn our microphones off and we hear from the

Case 23-09001   Document 91-27   Filed in TXSB on 03/17/23   Page 6 of 36

5

- Proceedings -

1    plaintiffs on their motion to discontinue the action?  No?

2    Thank you.

3              Mr. Clayton.

4              MR. CLAYTON:  Thank you very much, your Honor.

5    We appreciate the Court's time today in particular under

6    these circumstances.  Under CPLR 3217 a motion for

7    discontinuance without prejudice, which is this motion, is

8    to be granted absent a showing of prejudice by the

9    defendants.  We quoted a number of authorities in our

10   papers.  The First Department said it in Bank of America.

11   "Absent special circumstances such as prejudice to adverse

12   parties a discontinuance should be granted."  There is no

13   cognizable prejudice here.  The case is still at its very

14   earlier stage.  Our motion to discontinue without

15   prejudice was made, by my count, 29 days after the

16   complaint was filed.  I think the complaint was filed on

17   June 11th.  The motion was made on July 10.  There's been

18   no discovery.  We've gotten one or two pieces of paper,

19   and I'm speaking literally there, from the defendants.

20   There's been no document production.

21              THE COURT:  Right.  But we had quite a bit of

22   paper on the motion for the injunction; right?

23              MR. CLAYTON:  That's what we had, your Honor.

24   What we had was those -- that preliminary ruling by the

25   Court on our request for injunctive relief, and there's

- Proceedings -

```
1    cases, and we've cited them, where discontinuance occurs
2    even after those kinds of preliminary rulings.  The really
3    question is whether there is prejudice here to the
4    defendants based upon what has happened so far, and I
5    would submit that at the earliest stages of the case, and
6    this is an early stage of the case, because as I'll say --
7              THE COURT:  I'm going to interrupt, Mr. Clayton.
8    This is Motion 11.  You know, it's kind of hard to --
9              MR. CLAYTON:  Well, I'll tell you why.  Your
10   Honor, look, I accept that and I invite the Court's
11   questions, and I want to explain why I say it's at the
12   early stage.
13             THE COURT:  I'm sorry.  Somebody has got to turn
14   off their microphone, because I'm hearing typing, very
15   fast.
16             MR. CLAYTON:  We don't know how accurate.
17             THE COURT:  Go ahead, Mr. Clayton.
18             MR. CLAYTON:  Your Honor, here's why I say it's
19   at the early stages, because if the motion to discontinue
20   without prejudice is denied, we're going to be filing an
21   amended and supplemental complaint.  There's a stipulation
22   we've entered into with the defendants.  That complaint is
23   due 14 days after the Court's ruling on this motion.  This
24   case is going to be much broader and deeper and longer if
25   it proceeds here than what has happened so far, and none
```

Case 23-09001   Document 91-27   Filed in TXSB on 03/17/23   Page 8 of 36

- Proceedings -

1       of the arguments -- the plaintiffs have to establish some

2       prejudice from the fact that the case will continue, and

3       let me tick off the arguments that I understand that they

4       are making as to prejudice, because we believe none of

5       those arguments amount to prejudice under the case law or

6       under 3217.  The first argument is, well, if there's a

7       discontinuance without prejudice here, there may well be

8       later litigation.  That's true, but that is not prejudice

9       under the CPLR.  If that was prejudice, then very few, if

10      any, motions to discontinue without prejudice would be

11      granted, because the discontinuance without prejudice --

12      the without prejudice part of that ruling is exactly to

13      allow the plaintiff to reinstitute litigation.  So that is

14      not prejudice that is counted -- that makes a difference

15      under 3217, and as I said, we will be filing, if the

16      motion is denied, an amended and supplemental complaint.

17      We submitted to your Honor some of the papers in the

18      federal court action.  We really submitted them, because

19      they indicate some of the issues that will arise in this

20      case and are now being litigated in the federal court.

21      The motion to dismiss in the federal court is fully

22      briefed, and it will be argued, I think, on January 14, if

23      I have the date correct.  I think that is correct, and

24      unless that case is dismissed, that litigation will

25      continue.  It is obviously proceeding right now.  So the

INDEX NO. 652243/2020

Case 23-09001   Document 91-27   Filed in TXSB on 03/17/23   Page 9 of 36

RECEIVED NYSCEF: 12/02/2020

- Proceedings -

1    defendants are in litigation right now in the federal

2    court on this transaction.  We didn't file the litigation

3    in federal court, and we're not prosecuting the litigation

4    in federal court.  If the motion is denied, we will file

5    our amended and supplemental complaint.  They will not be

6    free of litigation.  They will have a second litigation.

7    So, yes, they argue that, well, we prepared our papers in

8    opposition to the preliminary injunction motion.  Again,

9    that is not prejudice to them.  We sought injunctive

10   relief.  We had to seek it on an emergency basis.  We did

11   not know that there are some significant details of the

12   transaction.  We did not know when that motion was

13   briefed.  Some of them have come out now.  Some of them

14   create additional claims and additional reasons why we

15   think that transaction was improper.  So to say, for

16   example, well, we spent a lot of time on the preliminary

17   injunction motions, that is an investment that's been

18   made.  Frankly, it's an investment that paid off for the

19   defendants, because they successfully defeated our request

20   for injunctive relief, but having spent that money is not

21   prejudice.  Quoting the First Department, the Eugenia

22   case, in our reply papers at Page 7, "Delay, frustration

23   and expense in preparation of a contemplated defense do

24   not constitute prejudice warranting denial of a motion for

25   voluntary discontinuance."  Now, the next argument they

Case 23-09001  Document 91-27  Filed in TXSB on 03/17/23  Page 10 of 36

- Proceedings -

1    make, I suppose the argument they make with the greatest

2    vigor if you look at adjectives or repetition, you know,

3    the usual measures of lawyerly vigor on paper, is the

4    argument that we're avoiding a motion to dismiss that has

5    been filed on the current complaint.  We're not avoiding a

6    ruling on that motion, because I respectfully submit there

7    will be no ruling on that motion, because if the case

8    continues, what will happen is we're going to file an

9    amended and supplemental complaint.  If they choose to

10   move to dismiss that amended and supplemental complaint,

11   that will be the pleading that the Court considers, not

12   the current pleading, and that case, that amended and

13   supplemental complaint which creates that case will be

14   materially different from the case here, and one reason

15   that we submitted the federal papers to your Honor was to

16   tick off some of the points that are already being raised.

17   Let me give you one example, and I'm simply here giving

18   examples of what is being alleged in the federal case, and

19   I think it shows that the case, as it appeared on that

20   motion for a preliminary injunction, is actually far less

21   complex than the case will be going forward.  I'm in no

22   way criticizing the Court's ruling.  A motion, as your

23   Honor knows, a TRO and a preliminary injunction done on a

24   very quick basis, we didn't have full information.  That

25   is the nature of the beast.  So let me give you one

- Proceedings -

1    example.  As the defendants have made clear, their

2    argument is that this transaction was appropriate, because

3    it was based on an exchange of debt which they say

4    qualified as an open market purchase under the credit

5    agreement, and your Honor mentioned that argument and

6    found no likelihood of success, as I read your Honor's

7    opinion, in significant measure on that basis.  There was

8    no briefing of any significance.  There was no evidence

9    taken on the question of what is an open market purchase.

10   Well, if you look at the federal papers in this case, if

11   you look at the opposition to the motion to dismiss filed

12   by the plaintiffs in federal court, they have a section,

13   Pages 10 to 13, talking about open market purchase, and

14   they argue, and one could argue that they argue with great

15   force and great persuasion, that this was not an open

16   market transaction, a phrase not denied in the complaint,

17   and there's one piece of evidence that they put in which

18   is very interesting here.  It's on Pages 19 and 20 of

19   their opposition brief.  It is a quote from the Weil

20   Gotshal law firm who is representing some of the

21   defendants here, and there's a client alert issued in

22   March of 2009 which is on the Weil Gotshal website as we

23   speak, still there, and it talks about exactly this kind

24   of transaction and exactly what an open market purchase is

25   in connection with the transaction.  We didn't submit --

FILED: NEW YORK COUNTY CLERK 12/02/2020 07:50 PM                INDEX NO. 652243/2020
NYSCEF DOC. NO. 214     Case 23-09001  Document 91-27  Filed in TXSB on 03/17/23  Page 12 of 36          RECEIVED NYSCEF: 12/02/2020

11

- Proceedings -

1          we submitted the brief to your Honor.  We certainly can

2          submit the Weil Gotshal private equity alert.  It's also

3          available right on the web, and what's it about?  It's

4          entitled "Deleveraging Portfolio Companies Through Debt By

5          Facts," exactly what happened here.  Then Weil Gotshal has

6          a description of what an open market purchase is.  It's on

7          Page 20.

8                   THE COURT:  Yeah.  I'm going to interrupt you on

9          what Weil Gotshal thinks about open market purchases.  I

10         get your point that the complaint in the federal court has

11         a bit more detail.  Are there any other arguments or

12         prejudices that the defendants raise that you want to

13         address?

14                  MR. CLAYTON:  Yes, I do, but I just, if I may,

15         would like to come back to just one second to this

16         question of open market purchases, because the idea that

17         this case goes on a motion to dismiss just on the basis of

18         what is in the last complaint, if that is the idea that

19         defendants have in mind when they say we're just trying to

20         avoid a ruling on a motion to dismiss that original

21         complaint, I think that is fundamentally misguided,

22         because if you look at the factors here, if you look at

23         that definition of open market purchases, it does -- if

24         that definition is right, it doesn't fit.  So let me go

25         onto the other arguments.  The other arguments are --

FILED: NEW YORK COUNTY CLERK 12/02/2020 07:50 PM      INDEX NO. 652243/2020
NYSCEF DOC. NO. 214      Case 23-09001   Document 91-27   Filed in TXSB on 03/17/23   Page 13 of 36      RECEIVED NYSCEF: 12/02/2020

12

- Proceedings -

1          THE COURT:  You're trying to avoid me.  That is

2     really the big one.

3          MR. CLAYTON:  Well, yes, but that's the one I'm

4     kind of addressing, your Honor.  Here's what is happening.

5     There is going to be a ruling in the federal court on the

6     motion to dismiss.  If we want to press our claim, they

7     are saying -- first of all, your Honor, we're not -- we're

8     not -- I would tell you we're not trying to avoid you.

9          THE COURT:  I won't take it personally.  With

10     440 cases, I don't have a problem.

11          MR. CLAYTON:  I did not think so.  They say

12     we're doing the avoid Justice Masley argument is, you

13     know, comes in two flavors; one is called forum shopping,

14     and the other is judge shopping.  We're not shopping at

15     all.  We're not forum shopping because --

16          THE COURT:  So then why discontinue the action

17     and not just ask for a stay pending the federal action?

18          MR. CLAYTON:  Let me tell you why.  First of

19     all, I just want to go into our reasons, but I simply

20     hasten to add that under the rules, we don't have to state

21     a reason, but we have very significant reasons.  Here are

22     the reasons.  There's three basic reasons.  One is we want

23     to see what develops with the company's own finances.

24     This case is about our position in the capital structure.

25     We want to see what happens with Serta.  That's point one.

Case 23-09001   Document 91-27   Filed in TXSB on 03/17/23   Page 14 of 36

- Proceedings -

```
 1        Point two, one of the arguments that they raise -- the

 2        defendants have raised in their motion, and they have

 3        raised in the federal case, we think it's a misplaced

 4        argument.  We think it's wrong, but one of their arguments

 5        is the administrative agent and not us has the right to

 6        bring this case.  Indeed, in the motion to dismiss our

 7        original complaint, the lender defendants, I think, on

 8        Page 21 chide us for not interacting with the agent.

 9        Well, we are interacting with the agent.  We may have to

10        have the agent replaced.  We have dialogue with the agent

11        that is moving.  Now, I want to make clear what we're

12        trying to do is clear away the underbrush.  We do not

13        believe -- and I'm happy to get into the merits of that

14        issue, but I don't think now is the time.  We don't

15        believe that the agent has the right to bring the claims

16        that were alleged here, but we want to clear away that

17        issue.  That's the second ground, and the third ground is

18        we do want to see what happens with the federal case,

19        because the federal case is moving.  There will be a

20        ruling in the federal case that will affect what is going

21        on here, but, again, the question is not why do we want to

22        do this.  The question is what is the prejudice, and let

23        me come back to the forum shopping and the judge shopping.

24        Forum shopping is when you go into another store.  We're

25        only in one store, your Honor.  It is your store.  We're
```

14

- Proceedings -

1    not in the federal court store.  We didn't open the door
2    and walk in.  Someone else did.  So we're not forum
3    shopping, and we're not judge shopping, because if we are
4    allowed to discontinue without prejudice, and we file
5    again, the case will be marked as related, and we have
6    said in our papers, and I say it again, that we will -- we
7    understand that that case, if you'll have us, your Honor,
8    is coming back to you.  So we're not forum shopping, and
9    we're not judge shopping, and also, the implication is we
10   are fearful -- we're terribly fearful that you will
11   immediately act on our original complaint and dismiss our
12   case.  I suppose that's why they say we're frantically
13   shopping in another courthouse or for another judge.  We
14   are not, and we don't think -- because this case is going
15   to change when any amended and supplemental complaint is
16   filed, we don't fear that, and interestingly, if the
17   defendants think that their arguments, and they have a lot
18   of rhetoric in their pleadings about how dare we move to
19   discontinue, if they are so sure of their position, then
20   I'm certain that Judge Daniels will recognize the virtue
21   of their arguments.  He will dismiss their case, and they
22   will have even a stronger position, and they will make it
23   even less likely that we refile our complaint.  So the
24   argument that they are somehow prejudiced by forum
25   shopping or judge shopping is incorrect.

Case 23-09001   Document 91-27   Filed in TXSB on 03/17/23   Page 16 of 36

15

- Proceedings -

1           THE COURT:  Okay.

2           MR. CLAYTON:  Now, I think, your Honor, those

3      are, as I see it, the significant arguments that they

4      make.  They wasted money on the preliminary injunction.

5      It doesn't work.

6           THE COURT:  I'm just going to interrupt you,

7      because I am a little pressed for time.  I have another

8      case at 3:30, and I want to make sure everyone has an

9      opportunity.  So who is going to speak first for the

10     defendants?  Mr. Mastro?

11          MR. MASTRO:  Yes.

12          THE COURT:  And I'm going to ask everyone else

13     to turn offer their microphones.

14          MR. MASTRO:  Technical assistance, your Honor.

15     I'm going to cut right to the heart of the matter, because

16     I heard some extraordinary things there.  We have an

17     expression here in New York for Mr. Clayton's argument.

18     It's called "chutzpa."  This is incredible, your Honor.

19     He just acknowledged --

20          THE COURT:  I think that goes a little bit too

21     far.  I have seen chutzpa.  I'm sorry, Mr. Mastro.  I

22     don't agree with you.

23          MR. MASTRO:  Let me explain why I say that, your

24     Honor, because this is, your Honor, to paraphrase some

25     words I heard earlier, this is about trying to avoid you.

16

- Proceedings -

1      This is about blatant --

2              THE COURT:  The problem I have with that

3      argument, Mr. Mastro, I appreciate it, but that's

4      prejudice to me.  That's not prejudice to you.  What's

5      your prejudice?

6              MR. MASTRO:  It's absolutely both a prejudice to

7      the Court and to us, because you've already invested

8      substantial time and resources in this case as have --

9              THE COURT:  But you see -- I'm sorry to

10     interrupt.  The argument was procedurally incorrect,

11     because as Mr. Clayton pointed out, he's right, if this

12     case is refiled in New York County, then it's coming back

13     to me.  Whether I want it or not, it's coming back.

14             MR. MASTRO:  Your Honor, with all due respect.

15             THE COURT:  Of course I want it back.  I just

16     love having you all before me.

17             MR. MASTRO:  I would love for that to be the

18     case, but, your Honor, it's actually not the case when one

19     reads the related case law, and I have had experience

20     litigating it.  If there's no case pending before you, the

21     case doesn't actually get assigned to you, whether he

22     wants to check the box or no, because the rule relates to

23     there has to be a pending case.  So this will not go to

24     you.  It will necessarily go to someone else even if Mr.

25     Clayton, I would take his word that he would check the

- Proceedings -

1    box, even if he checked the box, it wouldn't go to you

2    directly.  It would go to another judge, and then we

3    have --

4            THE COURT:  Mr. Mastro, I would, if I were to

5    grant this motion, grant it on condition, which I am

6    allowed to do, which is, given your objection, that it

7    would be refiled and assigned to me again.

8            MR. MASTRO:  Well, your Honor, I appreciate

9    that, but the literal words of the rule, and as it has

10   been applied, including, unfortunately, in another case in

11   which I was involved, the case was on appeal at the time,

12   and the administrative justice, you know, ruled that the

13   case should not -- the related case should not have gone

14   to the other judge.

15           THE COURT:  Uh-huh.

16           MR. MASTRO:  Your Honor, it doesn't actually go

17   back to you.

18           THE COURT:  You're saying that it would be

19   randomly assigned.

20           MR. MASTRO:  That's correct, your Honor.  I

21   think if your Honor reviews the rule, and I'll be happy to

22   submit the administrative order in the case in which I was

23   involved --

24           THE COURT:  I read that case actually.

25           MR. MASTRO:  A black car assistance corporation

Case 23-09001   Document 91-27   Filed in TXSB on 03/17/23   Page 19 of 36

18

- Proceedings -

1    case.  Judge Engoron took the case, and you know, the

2    administrative judge, Justice Heitler, said it never

3    should have gone to you in the first place; it should have

4    never gone to the judge.  It never got back to Justice

5    Engoron.  I don't want to get --

6              THE COURT:  Again, you know, that's still not

7    prejudice to you.  That's my work, you know, in getting up

8    to speed on the case, not yours, and also, the preliminary

9    injunction, if I were to deny the motion to discontinue

10   the case today, you would be going forward with this case,

11   and you have spent the time and the money on the

12   preliminary injunction either way.  If you win today, you

13   spent the money and the time on the preliminary

14   injunction.  It's not a cost that you would have avoided

15   if they hadn't filed this motion.

16             MR. MASTRO:  Your Honor, games are not only

17   played with you.  They are being played with us.  We have

18   now five months of delay that Mr. Clayton has effected.

19             THE COURT:  So he didn't file this 30 days after

20   filing the motion -- filing the action?

21             MR. MASTRO:  He did file it within the number of

22   days of filing the action after we had the most incredible

23   litigation activity, after we had, you know, fire drill

24   after fire drill.  All of us had that fire drill, your

25   Honor, and I don't think -- your Honor, we would not be

Case 23-09001  Document 91-27  Filed in TXSB on 03/17/23  Page 20 of 36

19

- Proceedings -

1    here right now if your Honor had granted them preliminary

2    injunction, if your Honor had found they were likely to

3    succeed, if your Honor found certain of their claims

4    instead of the other way around, were likely to survive

5    dismissal than likely to be dismissed like the implied

6    covenant claim.

7         THE COURT:  The standard was likelihood of

8    success.  I wasn't deciding a motion to dismiss at that

9    point.

10        MR. MASTRO:  I understand, your Honor, but Mr.

11   Clayton, acting in concert with other similarly situated

12   lenders like LCM which was before your Honor or trying to

13   get before your Honor and trying to intervene, and then

14   just before your Honor ruled and then drops out and goes

15   into federal court.  Mr. Clayton admitted --

16        THE COURT:  I'm sorry.  Hold on, please.

17             (Pause.)

18        THE COURT:  I'm sorry, Mr. Mastro.  Go ahead.

19        MR. MASTRO:  Mr. Clayton admitted it to you.

20   This has all been about, you know, in coordination

21   with LCM in the federal case wanting to see what happened

22   in the federal case, delaying this case.

23        THE COURT:  How does that prejudice you?

24        MR. MASTRO:  It completely prejudices us, your

25   Honor, because I find it incredible that he's in here

Case 23-09001  Document 91-27  Filed in TXSB on 03/17/23  Page 21 of 36

20

- Proceedings -

1   arguing to you, don't worry about it, there's going to be

2   a federal decision now sometime after mid-January, when we

3   could have been fully briefed and have had a motion to

4   dismiss decided in this case well before then.  He's

5   hoping -- this is blatant forum shopping and judge

6   shopping.  He's hoping in the other forum he might get

7   some better relief through his surrogate litigant, LCM,

8   and your Honor that's prejudice to you and to us that we

9   are going through this.

10          THE COURT:  The standard is prejudice to you.

11   It's not prejudice to me.

12          MR. MASTRO:  I understand, your Honor, but we

13   have been prejudiced by the gamesmanship.  We've been

14   prejudiced by the fact that they did this to avoid an

15   adverse -- a timely adverse ruling by you on motion

16   practice so they could string things out to get into the

17   federal court, and now we're having to brief the federal

18   court and then eventually come back to rebrief everything

19   with you.  That's the definition of prejudice.

20          THE COURT:  Actually, no, not under the cases.

21   That's not prejudice.

22          MR. MASTRO:  Your Honor, I think that's

23   absolutely prejudice.  Let me be clear.  There are

24   multiple cases that have held -- First Department cases

25   that have held not only should you dismiss the case, but

Case 23-09001  Document 91-27  Filed in TXSB on 03/17/23  Page 22 of 36

21

- Proceedings -

1    you should grant discontinuance with prejudice.  I'm

2    talking, your Honor, about the NBN case.  I'm talking

3    about the McNamara case.  Under very much these

4    circumstances where these folks have a motion to dismiss,

5    they want to choose a new forum, because they don't like

6    how things have been going, they have parallel or related

7    cases pending elsewhere, and then they come before you and

8    say, let me have a voluntary dismissal without prejudice,

9    and the First Department has ruled in the NBN case and in

10   the McNamara case as well as the Jericho case, your Honor,

11   the First Department ruled that, in fact, the case should

12   be dismissed with prejudice either as a voluntary

13   dismissal with prejudice or otherwise, and your Honor, the

14   language has been crystal clear, because I know Mr.

15   Clayton has tried to pigeon hole it into the language of

16   Eugenia.  This is only about, you know, about an issue of

17   prejudice in a case factually so dissimilar from ours,

18   because so little had happened in that case compared to

19   the burdens that all parties, including the Court, have

20   had to assume in this case, and your Honor, I simply point

21   out the exact language, the exact language that the First

22   Department has used in both of those cases that I just

23   cited to you.  The exact language used was, quote, "Courts

24   properly discontinue" -- this is NBN Broad -- "where a

25   motion for summary judgment was pending, but not yet even

Case 23-09001   Document 91-27   Filed in TXSB on 03/17/23   Page 23 of 36

22

- Proceedings -

1   fully submitted."

2            THE COURT:  I'm sorry.  Motion for summary

3   judgment.  That is such a big difference between a motion

4   to dismiss and a motion for summary judgment.  They were

5   much further along.  I'll tell you something else, Mr.

6   Mastro, there's a case up in I think it was the Fourth

7   Department, Harris, that says that they don't even need

8   the Court's permission, because filing a motion to dismiss

9   is not a pleading.

10           MR. MASTRO:  Actually, your Honor, I'm talking

11  First Department which is where we are.

12           THE COURT:  You know what.  There was a case in

13  the First Department, Judge Singh's case, where he got

14  reversed in 2014, but, you know, there's a more recent

15  case in 2019, and Judge Singh is actually on the panel.

16           MR. MASTRO:  Well, your Honor, I refer you to

17  McNamara versus McNamara.  That was a motion to dismiss,

18  not yet fully submitted and decided, 62 AD3d 619, 620.

19  That's a First Department 2009 case.

20           THE COURT:  The case I'm referring to is a 2019

21  case.

22           MR. MASTRO:  I understand.  I'm sure they are

23  both good law.  It may depend on their facts.  McNamara is

24  surprising, strikingly similar to this case.  A motion to

25  dismiss pending, McNamara brings parallel cases elsewhere,

Case 23-09001  Document 91-27  Filed in TXSB on 03/17/23  Page 24 of 36

23

- Proceedings -

1    is trying to get away from that court before that motion

2    is decided, and the First Department, you know, altered

3    the discontinuance without prejudice.

4         THE COURT:  The other problem with your

5    argument, Mr. Mastro, is that I could grant your motion to

6    dismiss, and then they would still have an opportunity to

7    replead.

8         MR. MASTRO:  Your Honor, the fascinating thing

9    about this is that they have taken all this time, and I

10   heard all these arguments before that were made that the

11   Paul Weiss firm needed more time to study the final deal

12   documents.  By the way, the key document they received,

13   they say they received two documents, they received in

14   June --

15        THE COURT:  The term sheet.

16        MR. MASTRO:  Not the term sheet.  After the deal

17   closed, they received the final deal documents.  They have

18   had those for months.  That's one of the two documents

19   they received since the preliminary injunction.  All

20   right.  And, your Honor, they have had those documents for

21   months.  They told you before they needed more time to

22   study them.  Now they tell you that, you know, having

23   received that document, okay, they have all these -- they

24   have all of these new facts that they are ready to go with

25   when they say they only received two documents.  Your

- Proceedings -

1          Honor, they've had the final deal documents.  They tell
2          you, we're going to make some wonderful new arguments.
3          All right.  Yet, they waited and sat on their hands in the
4          hope of getting a federal ruling before you have a chance
5          to decide a motion to dismiss on whatever amendment they
6          did, and I suggest to your Honor that in that sense this
7          is very similar to cases like McNamara and Lui and Baltia
8          (phonetic) where there were attempts to get away from a
9          judge thinking that a judge was not inclined in their
10         direction.  He sat there for five months not having
11         amended, all right, and now he comes to you and tells you
12         he has all of these great arguments.  There are no great
13         arguments, your Honor.  The deal documents speak for
14         themselves as they spoke for themselves at the preliminary
15         injunction motion phase, and they are not going to be able
16         to establish any claims, but they are the ones who really
17         sat on their rights, stringing out this Court and their
18         adversaries to force us to litigate in federal court first
19         before they are heard by this Court.  It's wrong for you
20         and us.  It is prejudice, and in the McNamara court, the
21         First Department said that the discontinuance was, quote,
22         "to avoid an adverse decision on a pending motion to
23         dismiss the complaint with prejudice and to enable the
24         plaintiff to raise the claim she makes herein in another
25         pending motion" that that is prejudice.  That is wrong and

Case 23-09001  Document 91-27  Filed in TXSB on 03/17/23  Page 26 of 36

25

- Proceedings -

1    your Honor shouldn't tolerate that, and in McNamara versus

2    McNamara, they changed the discontinuance to one with

3    prejudice on appeal.

4              So, your Honor, I respectfully suggest that we

5    have a situation where gamesmanship has been used seeking

6    a discontinuance without prejudice that has damaged us,

7    that has caused us and this Court to have to litigate an

8    issue that now Mr. Clayton is here arguing, basically, oh,

9    let me amend now, let me amend, and you know, then we'll

10   do motion practice, and by then he will have achieved his

11   sharp practice strategic objective of getting this strung

12   out until after the federal decision and the hearing in

13   January of 2021.

14             THE COURT:  You know, the other problem, Mr.

15   Mastro, is you give me too much credit for being able to

16   get a decision out more quickly than a federal judge when

17   my staff is cut.  I have 440 cases.  Meanwhile, I did get

18   the injunction decision out as quickly as humanly

19   possible, because it was an injunction.  You know,

20   unfortunately, things are slowing down here in the court;

21   so as a matter of reality is that it's unlikely you would

22   have gotten a decision before the federal action

23   progressed anyway.  So there, too, I'm not seeing

24   prejudice.

25             MR. MASTRO:  Your Honor, I would say this.  I

- Proceedings -

1    give your Honor all the credit your Honor is due.  You

2    have been exemplary on this case in terms of work ethic,

3    diligence.  Paul Weiss created this problem for you.  We

4    had to go through fire drill after fire drill over those

5    initial weeks, and then Paul Weiss said, oh, we don't like

6    the preliminary injunction; let's slow everything down,

7    and we'll try to do a discontinuance after he had moved to

8    dismiss.  Your Honor, we moved to dismiss in July, early

9    July, and your Honor, yes, had we just proceeded at pace,

10   I don't have any doubt given how familiar your Honor had

11   become with that record, and how well you had reviewed

12   those deal documents, which were plain on their face that

13   Paul Weiss' clients have no claim, you would have decided

14   this motion by now.

15             THE COURT:  Well, I haven't seen the deal

16   documents yet.  I've only seen the term sheet.  Thank you

17   very much.  I'm going to see if anyone else wants to speak

18   in addition to Mr. Mastro.

19             MR. LENDER:  Your Honor, this is David Lender

20   from Weil Gotshal.  I won't repeat the arguments that Mr.

21   Mastro made.  I will say that I think he miscited the

22   case.  The case is called McMahan, McMahan versus McMahan,

23   but as Mr. Mastro said, both Lui, McMahan, both First

24   Department cases where the issue was a motion to dismiss,

25   and the First Department denied a motion to discontinue,

William Cardenuto, CSR, Official Court Reporter

Case 23-09001  Document 91-27  Filed in TXSB on 03/17/23  Page 28 of 36

- Proceedings -

1    because it concluded that, essentially, the plaintiff was

2    trying to avoid a potential adverse ruling on a pending

3    motion to dismiss analogous to here.  The only other point

4    I would like to add, your Honor, is if you're inclined to

5    grant the motion, we would respectfully request that you

6    award attorneys' fees and costs.  It's interesting because

7    the leading cases that Paul Weiss cited in their brief,

8    both American Transit and Shamansky (phonetic), in both of

9    those cases -- there was no issue about trying to avoid an

10   adverse decision on the merits.  That wasn't part of the

11   decisions, but in both of those cases, American Transit,

12   here's a quote from that, where they said "Any prejudice

13   to the defendants was properly obviated by awarding costs

14   and attorney fees to the defendants to compensate for the

15   time expended in the defense of the action to date."

16   That's one of Paul Weiss' cases.  Same thing Shamansky

17   (phonetic).  We also cited -- both of those are not in the

18   First Department.  We also cited the Beagle (phonetic)

19   case from the First Department, Carter from the First

20   Department, and the reason I say that, your Honor, is if

21   you're not going to grant the motion because of the

22   prejudice, which is basically avoiding a potential adverse

23   ruling, the timing here is important.  Right.  They waited

24   until after we filed our motion to dismiss, after LCM

25   walked away from you and filed in federal court.  Those

- Proceedings -

1   are costs that we would not have incurred, and under

2   3217(b) your Honor is permitted to grant a motion to

3   discontinue upon any terms and conditions you deem proper.

4   Again, literally, the cases that Paul Weiss cites in their

5   brief to support their motion they granted fees to the

6   defendants in both of those cases.  We wanted your

7   Honor --

8            THE COURT:  You know, the problem with that

9   argument, Mr. Lender, is that we would have had and you

10  would have had to oppose a preliminary injunction motion

11  no matter what; so --

12           MR. LENDER:  But not the motion to dismiss costs

13  here.  If they would have filed their motion to

14  discontinue timely --

15           THE COURT:  In most of my 440 cases, we get

16  motions to dismiss and plaintiffs filing amended

17  complaints all the time.  This is no different than anyone

18  of the other cases.

19           MR. LENDER:  It's only different here, because

20  of the issue of the timing, right, in the sense of the

21  arguments that we've made about trying to forum shop,

22  judge shop, avoid --

23           THE COURT:  I don't buy those, though.  That's

24  the problem.  So, Mr. Clayton, do you have anything else

25  you want to say?

Case 23-09001   Document 91-27   Filed in TXSB on 03/17/23   Page 30 of 36

29

- Proceedings -

1           MR. CLAYTON:  Very, very briefly, your Honor.

2       No. 1, as we said in our papers, as I said in my argument,

3       if this case is refiled, we will do what we can to get it

4       back to you.  I have not looked at what Mr. Mastro cited.

5       It's not cited --

6           THE COURT:  He's right.  He's right.  It's only

7       related if there's a pending action, which is true, but --

8           MR. CLAYTON:  I think there will be a way, your

9       Honor; so --

10          THE COURT:  That would be up to the

11      administrative judge.

12          MR. CLAYTON:  All I can say is that we will

13      cooperate in that way.  No. 2, Mr. Mastro during his

14      presentation seems to spin off alternative facts.  So, for

15      example, he said again and again, we delayed, we sat on

16      our hands.  I say it again, and he agreed with it.  First

17      he agrees with it, and then he contradicts it.  We filed

18      the motion 29 days after we filed the complaint.  I can't

19      sit on my hands that quickly, I have to say, and in

20      addition, he said, to kind of imply, I suppose, that we

21      set up the federal case.  He used words like, if my notes

22      are correct, he called the federal court clients a

23      surrogate litigant for us.  There's no basis for any of

24      that, nothing anywhere that he cites, not so, and what

25      he's trying to do is he's trying to make this a different

FILED: NEW YORK COUNTY CLERK 12/02/2020 07:50 PM    INDEX NO. 652243/2020
NYSCEF DOC. NO. 214    Case 23-09001  Document 91-27  Filed in TXSB on 03/17/23  Page 31 of 36    RECEIVED NYSCEF: 12/02/2020

30

- Proceedings -

1      kind of case.  It would be a case in which they could

2      argue forum shopping had we filed the case in federal

3      court.  We did not.  Finally, your Honor, and then I will

4      stop, on the attorney fees, attorney fees are quite

5      extraordinary in cases of this kind, and as your Honor

6      said, they would have had to defend the preliminary

7      injunction.  They made a motion to dismiss our current

8      pleading.  That motion will be -- if this case continues,

9      that motion will be superseded.  It's no different, as

10     your Honor said, from lots and lots of cases in this

11     court.  Thank you for your time.

12              THE COURT:  I see you, Mr. Mastro.  What would

13     you like to say?

14              MR. MASTRO:  I'll be brief.

15              THE COURT:  Mr. Lender and Mr. Clayton, turn off

16     your microphone.

17              MR. MASTRO:  Thank you, your Honor.  What I

18     meant by delay, your Honor, is the motion may have been

19     timely brought, but we have had extensions, extensions

20     granted to Paul Weiss, because of Mr. Clayton's or other

21     schedules.  Your Honor, I want to be very clear.  I think

22     the correct disposition of this is that if they want a

23     voluntary dismissal it should be with prejudice, but your

24     Honor, he's saying that he's going to bring it back before

25     you.  The only way to guarantee that is to keep the case

- Proceedings -

1    on. I will tell you this. We moved to deny the voluntary

2    discontinuance without prejudice or alternatively to have

3    it, you know, granted with prejudice. You should deny

4    this motion. We should be going forward before your

5    Honor. This should not be about gamesmanship of who is

6    working with who on the federal side. This is a real live

7    case where we have a motion pending. If he's got an

8    amendment, show your cards, Mr. Clayton. Don't tell us

9    five months later that you finally analyzed the deal

10    documents and you think you have some new argument. It's

11    not going to be there. There's no there there. Show your

12    cards, make your amendment, and we'll bring on our motion

13    here before your Honor and get this case resolved. That's

14    the correct disposition here. He has not made the case

15    for a voluntarily dismissal, and whether your Honor buys

16    forum shopping or not, there are a lot of things that

17    smell about this whole situation. They have not made the

18    case for a voluntary dismissal without prejudice. They

19    have clearly had, as Mr. Clayton admitted, a design on

20    having the federal case decided before your case, and

21    therefore, you should deny this, and let us get on with

22    our motion which is we made our motion. Let it go. Let

23    him amend if he wants to amend. Let us go. The only way

24    your Honor can keep the case for sure is to do that, and

25    we want the cases to be decided here and now. Thank

FILED: NEW YORK COUNTY CLERK 12/02/2020 07:50 PM    INDEX NO. 652243/2020
NYSCEF DOC. NO. 214    Case 23-09001  Document 91-27  Filed in TXSB on 03/17/23  Page 33 of 36    RECEIVED NYSCEF: 12/02/2020

32

- Proceedings -

1    you.

2              THE COURT:  All right.

3              MR. CLAYTON:  Your Honor, just one moment, if I

4    may.  That's a misstatment of the governing law, but,

5    again, Mr. Mastro says we had extension after extension at

6    Mr. Clayton's request.  There was one extension that I

7    requested, because the date that was set which was in

8    mid-November I was supposed to be in an expedited trial in

9    Detroit, and I asked for professional courtesy to do that.

10   It was granted and that was the one extension.  Again,

11   alternative facts are not allowed in court, maybe in

12   political discourse in the United States, but not here.

13             THE COURT:  All right.  Thank you very much.

14   It's 3:17 and I have another case on at 3:30, and so I'm

15   going to make a decision on the record and direct that you

16   get the transcript.  The motion is granted.  I am going to

17   provide that if the action is refiled in this court that

18   it be re-assigned to me which I think addresses the

19   defendants' concern about forum shopping which I don't

20   actually agree with, but I think it addresses that

21   concern.  The standard under 3217(b) is prejudice to

22   defendants, and I just have not heard such prejudice, and

23   instead, the defendants have been asking the Court to

24   scrutinize the plaintiffs' motives, and in fact, that was

25   Mr. Mastro's last closing argument, that they haven't made

1       the case, the plaintiffs haven't made the case.  Well,

2       scrutinizing the plaintiffs' motive is actually not the

3       appropriate analysis at that point.  Later on in the case

4       the scrutiny of the plaintiffs' motive increases as the

5       case progresses, but here I have a motion that was filed

6       30 days after the case was initiated.  The case was

7       initiated to stop a transaction.  So the timing was not

8       actually within the plaintiffs' hands in this case.  In

9       other cases where I've had requests to stay or requests

10      to -- mostly requests to stay it's been because the

11      consideration for the Court was that the timing had been

12      selected by the plaintiff, and that's just not the case

13      here.  The plaintiff was in a position to have to move

14      very quickly, because of the timing of the deal, and so

15      that's one of the reasons I think that they get to make

16      this motion, and one of the reasons I'm granting it.  You

17      know, as I said before, there's a conflict in the First

18      Department between 315 West Enterprises, a 2019 case, 171

19      AD3d 466, and EDO USA LLP, a 2014 case, 113 AD3d 507,

20      2014, also First Department, about whether they even have

21      to get the permission of the court when a motion to

22      dismiss has been filed.  I will put in the order that it

23      should be, you know, re-assigned to the Court.  I am not

24      granting the request for attorneys' fees and costs,

25      because as I said, it's not like you would have avoided --

34

- Proceedings -

1    you would have had this cost no matter what, whether the

2    Court grants this motion or not.  In fact, it's

3    inconsistent to be asking for the attorneys' fees when

4    you're simultaneously arguing for the Court to continue

5    the case in which case you certainly wouldn't be entitled

6    to the attorneys' fees.  Finally, one of the arguments

7    about prejudice, the Court granting the motion but with

8    prejudice, and I'm denying that request as well, because

9    New York favors decisions on the merits, and as I said,

10   during the arguments, and I will sign the transcript, but

11   even if the motion to dismiss had gone forward, and if the

12   motion to dismiss or motions to dismiss had been granted,

13   the plaintiff could still amend after that, so, again, not

14   prejudice.  So for all of those reasons, and based on your

15   excellent argument -- let me just add, in terms of the

16   reliance on Jericho, okay, Jericho not persuasive as in

17   that case it was the third action.  It's just the timing

18   here, 30 days after filing the complaint, versus there

19   being the third action that had been filed by the

20   plaintiff.  McMahan, M-c-m-a-h-a-n, I don't know how you

21   pronounce that correctly, to be honest with you, but same

22   thing, untimely.  It was seven months after commencing the

23   action, and Lui, L-u-i, against CPC, the plaintiff had

24   already amended the complaint once.  So for all of those

25   reasons, the motion is granted, and I thank you all.  So

Case 23-09001   Document 91-27   Filed in TXSB on 03/17/23   Page 36 of 36

35

- Proceedings -

1       nice to see you, and Mr. Court Reporter, we have seven

2       minutes till the next case.  So have a nice evening,

3       everyone.  Take good care, and I'm sure I'll see you in

4       one way or the other soon.

5                 MR. CLAYTON:  Thank you, your Honor.

6                 THE COURT:  Please, Mr. Clayton, you're going to

7       get the transcript.  Okay?

8                 MR. CLAYTON:  Yes, we will.

9                 THE COURT:  Thank you.

10      3:24 p.m.

11                (End of proceedings.)

12

13

14      It is hereby certified that the foregoing is a true and

15      accurate transcript of the proceedings.

16

17

18                        William Cardenuto

19                        Senior Court Reporter

20

21

22

23

24

25