**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| SERTA SIMMONS BEDDING, LLC, et al., | Case No. 23-90020 (DRJ) |
| Debtors, | (Jointly Administered) |
| SERTA SIMMONS BEDDING, LLC, et al., | |
| Plaintiffs and Counterclaim Defendants, | Adversary Proc. No. 23-09001 (DRJ) |
| v. | |
| AG CENTRE STREET PARTNERSHIP L.P., et al., | |
| Defendants, Counterclaim Plaintiffs and Third-Party Plaintiffs, | |
| v. | |
| AGF FLOATING RATE INCOME FUND, et al., | |
| Third-Party Defendants. | |

## <u>DECLARATION OF ANNE E. BEAUMONT</u>

Pursuant to 28 U.S.C. § 1746, ANNE E. BEAUMONT declares as follows:

1.      I am a partner in Friedman Kaplan Seiler Adelman & Robbins LLP, which

represents defendants and counterclaim/third-party plaintiffs AG Centre Street Partnership L.P.,

AG Credit Solutions Non-ECI Master Fund, L.P., AG Super Fund Master, L.P., AG SF Master

(L), L.P., Silver Oak Capital, L.L.C., Ascribe III Investments, LLC, Cent CLO 21 Limited,

Columbia Cent CLO 27 Limited, Columbia Floating Rate Fund, a series of Columbia Funds

Series Trust II, Columbia Strategic Income Fund, a series of Columbia Funds Series Trust I,

Contrarian Capital Fund I, L.P., Contrarian Distressed Debt Fund, L.P., Contrarian Centre Street

Partnership, L.P., Gamut Capital SSB, LLC, North Star Debt Holdings, L.P., Shackleton 2013-III

CLO, Ltd., Shackleton 2013-IV-R CLO, Ltd., Shackleton 2014-V-R CLO, Ltd., Shackleton

2015-VII-R CLO, Ltd., Shackleton 2017-XI CLO, Ltd., Z Capital Credit Partners CLO 2018-1

Ltd., and Z Capital Credit Partners CLO 2019-1 Ltd. (collectively, the "Excluded Lenders") in

this action.  I have been admitted to the bar of this Court *pro hac vice.*

   2. This declaration is based upon my personal knowledge and my review of

the filings and discovery in the case.  I submit this declaration in opposition to plaintiffs' motions

for partial summary judgment (the "Motions"), pursuant to Federal Rule of Civil Procedure

56(d), to set forth the specific reasons why the Excluded Lenders cannot present facts essential to

justify their opposition to the Motions.

**The Current Status of the Pleadings and Discovery**

   3. The Excluded Lenders have not had a reasonable opportunity to conduct

meaningful, comprehensive discovery in this case, as is their right under the Bankruptcy Rules

and the Federal Rules of Civil Procedure.  They have been prevented from gathering and, in

opposing the Motions, marshaling relevant facts concerning three central issues in this case:

(a) plaintiffs' understanding and application of the term "open market purchases," including as

may have been expressed during the formulation of and negotiation of the Unlawful Exchange

Transaction; (b) whether plaintiffs Serta Simmons Bedding, LLC ("Serta") and Invesco Senior

Secured Management, Inc., Credit Suisse Asset Management, LLC, Boston Management and

Research, Eaton Vance Management (collectively, the "Favored Lenders") acted in good faith

when they formulated and executed the Unlawful Exchange Transaction; and (c) Serta's

interference with the purchase of its First Lien Loans by defendant (and Excluded Lender) North

Star Debt Holdings, L.P. ("North Star").

4.      Plaintiffs here have blocked and frustrated the Excluded Lenders' efforts to take meaningful discovery at every turn.

5.      Even before Serta's bankruptcy filing, at the very outset of the action before Justice Masley in the Supreme Court of the State of New York, the Excluded Lenders served requests for production of documents upon Serta and the Favored Lenders, which were the defendants in that case, and are the plaintiffs here.  Among other things, the Excluded Lenders asked that Serta and the Favored Lenders simply re-produce the existing document production that already had been amassed in the ongoing case brought by LCM (the "LCM Case"), which presumably could be re-produced without extensive cost or incremental work. Both Serta and the Favored Lenders refused to produce *any* documents whatsoever, including documents produced in the LCM Case, based upon an automatic stay that was not yet applicable, but would come into effect weeks later when they filed motions to dismiss.

6.      On January 24, 2023, Serta and the Favored Lenders filed this adversary proceeding.  At the first-day hearing before this Court, Serta's counsel stated about this case:

> So I do think that there's -- *it's primarily a contract interpretation issue.* There's some challenges that we didn't act in good faith, so *there's limited factual matters*. But I think there could be, depending on whether or not the Court thinks it would be useful, you know, people could have, you know, an expert.

(ECF No. 193, Transcript of First-Day Motions Hearing, Jan. 24, 2023, at 28:3-8.)

7.      On February 1, 2023, the Excluded Lenders served requests for production of documents, as well as interrogatories, upon Serta and the Favored Lenders in this action. Under the Federal Rules, the written objections and responses to these discovery requests were due 30 days later, on March 3, 2023.

8.      That same day, February 1, there was a scheduling hearing before this Court, at which the parties to this action agreed to a briefing and hearing schedule for the

Motions.  At that hearing, counsel for Serta stated, "Your Honor, we don't think that discovery is

necessary."  (ECF No. 25, Transcript of Motions Hearing, Feb. 1, 2023, at 26:22-23.)  Serta's

counsel also told this Court, "We would ask that we not be conducting discovery, you know,

during this time."  (*Id.* at 27:5-6.)

   9. Ten days later, after the close of business on February 10, 2023, Serta and

the Favored Lenders changed course:  they served document requests, interrogatories and

requests for admissions on all of the Excluded Lenders, which contained 33 separate document

requests (many with subparts), nine interrogatories and six requests for admission.  Other than

the requests for admission, the discovery requests were directed to all of the Excluded Lenders.

   10. After the close of business on February 21 – three days before the Motions

were due to be filed – Serta's counsel emailed counsel for the defendants (including LCM's

counsel).  Despite having served voluminous requests for full-blown discovery only ten days

earlier, Serta's counsel wrote that "it remains the Company's position that any discovery in this

matter is premature."  Nonetheless, the email stated "the Company is prepared to begin the

production of documents it produced in the LCM Action in the above-captioned action subject to

a court ordered protective order."  The email enclosed a proposed form of protective order, and

demanded that the defendants "advise whether you can agree to the attached no later than 12pm

ET on Thursday, February 23" – less than 48 hours later.  Despite the needlessly short timeframe

Serta's counsel imposed, the parties ultimately agreed to a form of stipulated protective order,

which was filed with the Court on February 24, 2023.  (ECF Nos. 67, 74.)

   11. On the morning of February 24, defendants filed their answer,

counterclaims and third-party claims in this action.  (ECF No. 68.)

12.     Later that same day, February 24, Serta and the Favored Lenders filed the Motions, which included two dozen exhibits.  They also sent defendants an electronic production of documents consisting of more than 36,000 documents, comprising over 450,000 pages.

13.     On March 3, Serta and the Favored Lenders served their written responses and objections to the Excluded Lenders' February 1 document requests and interrogatories. Serta and the Favored Lenders both responded that, until there is a decision on the Motions, they would produce only documents produced in the LCM Case.  That is, only "[a]fter the First Lien Lender Defendants' review of the productions, and after the Court has issued a decision on the parties' Summary Judgment Motions," are Serta and the Favored Lenders "willing to meet and confer to the extent that the First Lien Lender Defendants believe additional documents are needed."  Neither Serta nor any of the Favored Lenders has sought a protective order under Rule 37 or otherwise.

14.     The Excluded Lenders' written objections and responses to the February 10 discovery requests from Serta and the Favored Lenders were served on March 13, 2023.  In light of the highly expedited schedule for the Motions, it was not feasible for the Excluded Lenders to do full-blown collection, review and production of responsive documents. Nonetheless, the Excluded Lenders endeavored to produce documents.  Documents produced by some of the Excluded Lenders in response to nonparty subpoenas in the LCM Action were re-produced, and a few easily accessible highly relevant documents were produced.  In sum, these productions consisted of 339 documents from Angelo Gordon comprising 2,826 pages, and 151 documents from North Star comprising 732 pages.  The Excluded Lenders' document collection, review and production remain ongoing.

15.     Two days ago, on March 14, 2023, Serta delivered another small document production.  That production appears to have been made in response to an email from the Excluded Lenders' counsel dated March 6, 2023 which identified gaps in the documents that had been produced by Serta on February 24, 2023, and consists of documents related to the purchase of Serta's First Lien Loans by North Star.

16.     Then, today, at 5 p.m. EDT, Serta delivered yet another document production.  And then at 9 p.m. EDT, the Favored Lenders delivered their first production.  As of this writing, the content and volume of those productions are unknown.

17.     The answers of Serta and the Favored Lenders to the Excluded Lenders' counterclaims are due today, March 16, 2023.  The answers of the third parties against whom the Excluded Lenders have asserted third-party claims are not yet due; the Excluded Lenders' efforts to effectuate service upon those third parties are ongoing.

18.     No initial disclosures pursuant to Rule 26(a)(1)(A) have been exchanged in this case.  There also has been no conference among the parties pursuant to Rule 26(f) and no scheduling conference with the Court, and there is no discovery plan pursuant to Rule 26(f).  No depositions have been taken in this case, nor have they been taken in the LCM Case.

**Additional Time and Discovery Are Necessary for the Excluded Lenders
to Present Facts Essential to Justify Their Opposition to the Motions**

The Practical Impossibility of Making Use
of Serta's Last-Minute Document Dumps

19.     No doubt realizing that obtaining summary judgment with literally no discovery whatsoever was likely to be a non-starter (or at potentially reversible on appeal), at the same time that Serta and the Favored Lenders filed their Motions, Serta also produced *some* of the documents that had been produced in the LCM Action – after having resisted doing so for months.  Then, as noted in paragraphs 15 and 16 above, two days before, and then again on, the

due date for the Excluded Lenders' papers in opposition to the Motions, Serta produced still more documents.

20.     To expect the Excluded Lenders and their counsel to complete a meaningful review, analysis and use of these thousands of documents (comprised of hundreds of thousands of pages) – some of them produced at the close of business today – while at the same time reviewing and analyzing the Motions and preparing papers opposing them, without the benefit of depositions to help make sense of the documents, all within the twenty days allotted by the schedule would be unfair in the extreme.  For this reason alone, further time is needed.

21.     Moreover, notwithstanding the Excluded Lenders' requests, Serta has not produced any information about the parameters and scope of any production – including its own – in the LCM Action.  The defendants thus have been given a document dump of entirely uncertain dimensions:  it is opaque as to the time frame(s), custodians and search terms used to collect and cull documents, among other things.  Not to mention that Serta has not disclosed to the Excluded Lenders, again, despite their requests, a comprehensive list of the nonparty discovery provided in the LCM Action, and the parameters for *that* discovery.

22.     There also are three specific topics on which there has been no meaningful discovery, and such discovery would make a significant difference to the Excluded Lenders' ability to respond to the Motions.

Discovery Is Needed Concerning the Meaning of "Open Market Purchases"

23.     As detailed in the Excluded Lenders' accompanying memorandum of law in opposition to the Motions (the "Excluded Lenders' Brief"), a central issue in this case, which Serta and the Favored Lenders argue in their Motions is dispositive of their claims, is the meaning of the term "open market purchases" in the applicable Credit Agreement.  Simply put, Serta and the Favored Lenders argue that the Unlawful Exchange Transaction (as defined in the

Excluded Lenders' Brief) was permissible under the Credit Agreement, because it constituted an "open market purchase," and the Excluded Lenders argue that it was not.

24.     As detailed in the Excluded Lenders' Brief, the term "open market purchases" is not defined in the Credit Agreement, and under well-settled New York law, market custom and practice can and should be consulted to interpret it.  To be clear, the Excluded Lenders are not arguing the term is ambiguous, but rather that there is a clear and uniform market understanding of its meaning, which should be consulted here, and which makes clear that the Unlawful Exchange Transaction was not an "open market purchase."

25.     The Excluded Lenders have endeavored to marshal substantial evidence on this point, including from industry experts, the Excluded Lenders' own files, and public sources (including publications by counsel for Serta and the Favored Lenders).  Nonetheless, the Excluded Lenders have been denied the opportunity to explore fully in discovery how both Serta and the Favored Lenders understood and applied the term "open market purchases" in connection with the First Lien Credit Agreement.  For instance, based upon the evidence already unearthed from the Excluded Lenders' own files, it can be expected that Serta's files, too, as well as those of at least some of the Favored Lenders, contain ample evidence that the company has conducted *bona fide* "open market purchases" – both before and after the Unlawful Exchange Transaction – which bear no resemblance to the Unlawful Exchange Transaction.  That evidence is directly relevant to whether the interpretation now urged by Serta and the Favored Lenders of the term "open market purchases," as used in the First Lien Credit Agreement, is sustainable.

26.     Just as important, none of the *hundreds* of newly joined third parties has yet even been served with the Excluded Lenders' pleading,[1] much less participated in any discovery concerning this topic.

<u>Discovery Is Needed Concerning the Plaintiffs' Good Faith</u>

27.     The Excluded Lenders have asserted counterclaims and third-party claims in this action for breach of the duty of good faith and fair dealing which is implied in the Credit Agreement under New York law, which governs that agreement.  Accordingly, even if the Court were to conclude that the Unlawful Exchange Transaction constitutes an "open market purchase" (which it should not), the question remains whether that transaction nonetheless breached the duty of good faith and fair dealing.

28.     The Excluded Lenders require evidence to explore why the Favored Lenders chose to pursue an exclusionary alternative transaction where only select lenders were invited to participate and where the Excluded Lenders were intentionally impeded from entering negotiations with Serta; how the members of the Favored Lenders group were selected, and by whom; why the Excluded Lenders were excluded from that group; and whether the Favored Lenders believed the Unlawful Exchange Transaction was reasonably justifiable, and if so, on what basis.  Both document and deposition discovery from Serta, the Favored Lenders, Advent and their respective advisors will be critical to understanding these issues.

---

[1] Gibson Dunn & Crutcher LLP, which represents the Favored Lenders, is in the process of ascertaining which of the newly joined third parties that firm represents and whether it may accept service on their behalf.

<u>Discovery Is Needed Concerning Apollo's Purchases of Serta's First Lien Loans</u>

29.     One of the Excluded Lenders, North Star Debt Holdings, L.P. ("North Star"), is an affiliate of Apollo Global Management, Inc.

30.     In this case, Serta asserts seeks a declaratory judgment "concerning whether Serta Simmons Bedding breached the Non-PTL Term Loan Agreement by failing to perfect the assignment of Apollo's first lien loans."  (ECF No. 38, ¶¶ 81, VI.c.)  North Star, in turn, asserts a counterclaim against Serta seeking a declaratory judgment that it has a valid assignment of $192 million in face amount First Lien Term Loans that it has purchased.  (ECF No. 68, ¶¶ 106, 280-298, 321-325.)

31.     The principal issue on these claims is whether North Star, as an affiliate of Apollo, was on Serta's Disqualified Lender List (the "DQ List"), which would make it a "Disqualified Institution" under § 9.05(a) of the Credit Agreement, thus rendering it ineligible to hold First Lien Term Loans.

32.     While the Excluded Lenders' review of Serta's and the Favored Lenders' documents is ongoing, the documents that have been identified already flatly refute Serta's contentions in the Motions.  For example, documents produced by Serta show that, in 2016, Kenneth Prince, an investment professional at Serta's private equity sponsor Advent, unambiguously directed UBS, the Administrative Agent for the First Lien Term Loans, *to take Apollo off the DQ List*.

33.     The evidence of that direction warrants summary judgment in North Star's favor.  But if not, then at a bare minimum, Serta's March 14 production of documents demonstrates there is additional relevant, and highly significant discovery to be taken regarding Advent and Serta's machinations with the DQ List.

34.     Serta's production two days ago appears to have been made in response to a March 6 email from counsel for the Excluded Lenders that demanded production of all versions of an email chain that had been produced in the LCM Case and was, in turn, produced by Serta to the Excluded Lenders on March 14.  At least one of the documents produced on March 14 had not previously been produced in the LCM Case, and the scope and volume of other documents concerning Apollo's removal from the DQ List as well as other relevant topics that were not produced in discovery in the LCM Case is unknown.

35.     In any event, it now is clear that additional discovery can be expected to confirm that Apollo was not in fact on Serta's DQ List.  For example, Apollo purchased and sold First Lien Term Loans on multiple occasions between the years 2016 and 2018.  Furthermore, the Agent, UBS, confirmed multiple times to Apollo in the spring of 2020 that Apollo was not on the DQ List, and later executed the assignment agreements for the loans Apollo purchased, after having corresponded with Serta on the issue.

36.     To be clear, North Star contends that these uncontestable facts by themselves defeat Serta's claim, and favor granting judgment for North Star on its counterclaim. But at the very least, North Star should be permitted to explore this issue in discovery.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 16, 2023.

_____
ANNE E. BEAUMONT