## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SERTA SIMMONS BEDDING, LLC, *et al.* | § | Case No. 23-90020 (DRJ) |
| | § | |
| | § | (Jointly Administered) |
| SERTA SIMMONS BEDDING, LLC, INVESCO SENIOR SECURED MANAGEMENT, INC., CREDIT SUISSE ASSET MANAGEMENT, LLC, BOSTON MANAGEMENT AND RESEARCH, EATON VANCE MANAGEMENT, and BARINGS LLC, | § § § § § § § | Adversary Proc. No. 23-09001 (DRJ) |
| *Plaintiffs,* | § | |
| | § | |
| - against – | § | |
| | § | |
| AG CENTRE STREET PARTNERSHIP L.P., AG CREDIT SOLUTIONS NON-ECI MASTER FUND, L.P., AG SF MASTER (L), L.P., AG SUPER FUND MASTER, L.P., SILVER OAK CAPITAL, L.L.C., ASCRIBE III INVESTMENTS, LLC, COLUMBIA CENT CLO 21 LIMITED, COLUMBIA CENT CLO 27 LIMITED, COLUMBIA FLOATING RATE INCOME FUND, A SERIES OF COLUMBIA FUNDS SERIES TRUST II, COLUMBIA STRATEGIC INCOME FUND, A SERIES OF COLUMBIA FUNDS SERIES TRUST I, CONTRARIAN CAPITAL FUND I, L.P., CONTRARIAN CENTRE STREET PARTNERSHIP, L.P., CONTRARIAN DISTRESSED DEBT FUND, L.P., GAMUT CAPITAL SSB, LLC, LCM XXII LTD., LCM XXIII LTD., LCM XXIV LTD., LCM XXV LTD., LCM 26 LTD., LCM 27 LTD., LCM 28 LTD., NORTH STAR DEBT HOLDINGS, L.P., SHACKLETON 2013- III CLO, LTD., SHACKLETON 2013-IV-R CLO, LTD., SHACKLETON 2014-V-R CLO, LTD., SHACKLETON 2015-VII-R CLO, LTD., SHACKLETON 2017-XI CLO, LTD., Z CAPITAL CREDIT PARTNERS CLO 2018-1 LTD., AND Z CAPITAL CREDIT PARTNERS CLO 2019-1 LTD., | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | |
| *Defendants.* | § § | |

4884-5179-6825

**EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 10:00 A.M. (PREVAILING CENTRAL TIME) ON MARCH 28, 2023.**

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

## EMERGENCY MOTION CHALLENGING ASSERTION OF PRIVILEGE

Defendants LCM XXII LTD., LCM XXIII LTD., LCM XXIV LTD., LCM XXV LTD., LCM 26 LTD., LCM 27 LTD., and LCM 28 LTD. (the "**LCM Defendants**"), respectfully represent as follows in support of this motion ("**Motion Challenging Assertion of Privilege**"):

1. The LCM Defendants bring this Motion pursuant to Section 9 of the Stipulated Protective Order (Dkt. 74) (the "**PO**"), to challenge Plaintiff Serta Simmons Bedding's ("**Serta**") unfounded assertion of privilege over the document submitted as Exhibit 1 (Dkt. 82-1) (the "**Challenged Document**") in connection with the LCM Defendants' Memorandum of Law In Opposition to Plaintiffs' Motions For Summary Judgment (Dkt. 79).[1]

2. This dispute concerns whether the June 21, 2020 email sent at 11:16 p.m. from Luna Barrington of Weil to (among others) Scott Greenberg of Gibson Dunn (the "**Barrington Email**"), which was forwarded by Greenberg to the Handpicked Lenders' transaction advisor, Centerview, and which can be found at Bates number -118550 of the Challenged Document, is protected by the common-interest privilege. Serta asserts that it is. Serta and the LCM Defendants met-and-conferred on March 24, and remain at impasse, necessitating this Court's intervention.

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the LCM Defendants' Memorandum of Law In Opposition to Plaintiffs' Motions For Summary Judgment.

2

3. After the LCM Defendants submitted the Challenged Document on March 16, Serta notified the LCM Defendants on March 20 that it was purporting to claw back the Challenged Document pursuant to Section 9 of the PO. That Section says that "[i]f a Producing Party believes that any Discovery Material subject to any privilege, protection or other immunity . . . has been inadvertently produced, the Producing Party shall promptly notify all parties in writing and state the basis for the claim of privilege, work product protection, or other immunity from production" after which "a party must promptly return or destroy the inadvertently produced [document] . . . provided, however, that . . . [t]he Receiving Party may provide the inadvertently-disclosed document to the Court in a sealed filing for the sole purpose of challenging any assertion of privilege."

4. "A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability." *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001). "Because the privilege is an obstacle to truthseeking, it must be construed narrowly." *Id.*; *see BCR Safeguard Holding, L.L.C. v. Morgan Stanley Real Est. Advisor, Inc.*, 614 F. App'x 690, 703 (5th Cir. 2015) ("This court has defined the [common-interest] privilege narrowly."). Serta, the party asserting privilege here, has failed to show that this narrowly-construed exception should apply.[2]

5. <u>First</u>, the common-interest exception does not apply to the Barrington Email. The email is discussing a deal term between parties—Serta and the Handpicked Lenders—who were purportedly engaged in closing an "arms-length" transaction (the Exchange Transaction at issue in this adversary proceeding), as those parties assert. *See, e.g.*, Dkt. 112 (Serta's Reply Memorandum of Law) at 5 ("[T]he Company entered into an arms-length negotiated transaction."). Indeed, Serta and the Handpicked Lenders' summary-judgment arguments do not

---

[2] The LCM Defendants bring this motion to adhere to the procedure laid out in Section 9 of the PO, but the burden to substantiate the claim of privilege falls on Serta.

3

hold up unless the Court agrees with them that the exchange transaction was done at arms-length. *See* Dkt. 114 (Handpicked Lenders' Reply Memorandum of Law) at 16 (arguing "open market purchases" encompass any "arms-length transaction between a willing buyer and a willing seller"). The Barrington Email took place before the Exchange Transaction closed. And the actions of Gibson Dunn, which forwarded Barrington's proposed deal term to the Handpicked Lenders' *transaction* advisor, Centerview, and Centerview, which reviewed the Challenged Document for privilege and redacted later communications in the email chain as privileged, reflect an understanding that the Barrington Email was part of ongoing transaction negotiations.

6. Accordingly, if the parties were negotiating at arms-length, this pre-closure communication could not be protected by the common-interest exception, because they were necessarily "adverse to each other at the time they engaged in the negotiation." *Mack Energy Co. v. Red Stick Energy, L.L.C.*, 2019 WL 4752110, at *6 (W.D. La. Sept. 27, 2019) (common interest privilege did not apply to communication during negotiations). Thus, "[w]hen parties engage in arms-length bargaining, they do not have a common interest." *Lawson v. Spirit AeroSystems, Inc.*, 410 F. Supp. 3d 1195, 1210 (D. Kan. 2019); *see Katz v. AT & T Corp.*, 191 F.R.D. 433, 438 (E.D. Pa. 2000) (finding no common interest between parties because such negotiations do show an identity of legal interests). The fact that deal counsel from Gibson Dunn (counsel to the Handpicked Lenders), rather than litigation counsel, is copied on the Barrington Email further shows that, at the most, the parties had a common commercial interest, which is insufficient under blackletter law. *See Ferko v. Nat'l Ass'n For Stock Car Auto Racing, Inc.*, 219 F.R.D. 403, 406 (E.D. Tex. 2003) ("A commercial interest, however, does not trigger the common interest doctrine."). A shared interest in closing the Exchange Transaction—which the Challenged Document concerns—is the paradigmatic shared "financial interest" that does not come within the

4

common-interest exception. *Network-1 Techs., Inc. v. Google LLC*, 2019 WL 6701909, at *2 (S.D.N.Y. Dec. 9, 2019). And even aligned business interests that include a "concern about litigation" do not come within the common-interest exception. *See Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995) (common interest privilege does not encompass a joint business strategy even if it "include[s] . . . a concern about litigation.").

7. Finally, "[t]he great weight of authority holds that the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit" because "to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party." *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989). Serta cannot both assert the purported nature of these "arms-length" negotiations while also withholding as privileged pre-closing documents, such as the Barrington Email, that bear on the question of whether the negotiations were, in fact, negotiated at arms-length.

8. <u>Second</u>, even if the common-interest privilege attached at one point, that protection has long been waived; first by the Handpicked Lenders and then by Serta.

9. The Barrington Email, and the Challenged Document in full, was produced by nonparty Centerview Partners (the investment banking advisor for the Handpicked Lenders) to Serta and the LCM Defendants on November 30, 2022, in connection with the LCM Defendants' action in the Southern District of New York. That is because the Barrington Email was forwarded by Gibson Dunn to the Handpicked Lenders' third party transaction advisor, Centerview, waiving any privilege that would attach between the two law firms.

10. It is blackletter law that "[a]ttorney-client privilege is waived when privileged information is disclosed to a third party." *In re Sanchez Energy Corp.*, 2022 WL 17586713, at *3 (Bankr. S.D. Tex. Dec. 12, 2022) (citing *United States v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir.

1982). A narrow exception to this rule exists for those third parties that serve to "translat[e] complex . . . terms into a form intelligible to a lawyer." *El Paso Co.*, 682 F.2d at 541 (citing *United States v. Kovel,* 296 F.2d 918, 922 (2d Cir. 1961). In other words, the third party must serve "a role analogous to an interpreter in helping the attorney understand financial information." *U.S. v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999).

11. Centerview was a third-party financial institution engaged by the Handpicked Lenders to advise and help structure substantial parts of this billion-dollar exchange. It was not acting as a mere "interpreter" for Gibson Dunn. See *Export-Import Bank of the U.S. v. Asia Pulp & Paper Co., Ltd.*, 232 F.R.D. 103, 114 (S.D.N.Y. 2005) (communication to third-party restructuring advisor broke privilege because advisor "was a major participant in [the company's] financial affairs, not a mere interpreter."). As the court in *Export-Import Bank* explained, if the privilege "were extended to every situation where a financial consultant worked exhaustively to guide a company through a restructuring deal, the exception would swallow the basic rule." *Id; see also Walsh v. CSG Partners, LLC*, 544 F. Supp. 3d 389, 394 (S.D.N.Y. 2021) (noting *Export-Import Bank*'s "persuasive" reasoning and "detailed analysis," and applying same holding). Any privilege over the Barrington Email was thus waived when the email chain was shared with Centerview. *In re Sanchez Energy Corp.*, 2022 WL 17586713, at *3 (privilege waived where email from successor to Debtor shared materials with private equity sponsor).

12. Moreover, Centerview reviewed the Challenged Document for privilege, identifying and redacting later communications with Gibson Dunn as subject to common interest privilege, reflecting a reasoned determination by counsel regarding the non-privileged status of the Barrington email.

13. Then, Serta itself had over **four months** to claim privilege over the documents in issue here. That nonaction is inconsistent with Serta's position that the Barrington Email is plainly privileged: "A party asserting privilege has the burden to show that he acted reasonably to prevent inadvertent disclosure." *United States v. Lax*, 2022 WL 17987043, at *6 (E.D.N.Y. Dec. 29, 2022). "Here, [Serta's] actions evince a degree of indifference and carelessness that weighs in favor of finding that the privilege was waived." *Id*.

14. Consider also that, in the S.D.N.Y. action, Serta reviewed for privilege the production of another nonparty, Evercore Group LLC, that was similarly-situated to Centerview Partners, insofar as it had been retained by Weil to act as an investment banking advisor to Serta. As to Evercore's documents, Weil asserted extensive claims of privilege based on its retention of Evercore. It could have, but apparently did not, review for privilege the documents produced by Centerview, even though it could have—nor did Gibson Dunn seek the opportunity to review these documents prior to their production, even though it could have. *See Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 520 (2009) (waiver where party took months to claw-back documents, explaining this constituted "inadequate efforts to rectify its disclosures upon discovery").

15. Lastly, not only did Serta fail to assert any privilege over the Barrington Email for four months, it took it upon itself to *reproduce* this document in this adversary proceeding—once again, opting not to conduct a basic review for privilege. That is why the Challenged Document bears two Bates stamps—one provided by Centerview in the S.D.N.Y action, and one provided by Serta in this proceeding. Even if the production of the Barrington Email was inadvertent in November 2022, and also inadvertent in March 2023, the privilege has been waived because the

Serta "did not take reasonable steps to prevent disclosure." *Conceptus, Inc. v. Hologic, Inc.*, 2010 WL 3911943, at *2 (N.D. Cal. Oct. 5, 2010).

16. The *Conceptus* decision is on all fours. There, a party provided a purportedly privileged document in two litigations. The producing party claimed the production was "inadvertent." That did not matter. In that case, as appears to be the case here, "counsel did not review the documents before producing them" in the second litigation. *Id*. Thus, where "a party carelessly produced a privileged document, the privilege associated with that document is waived." *Id*.; *see also Eden Isle Marina*, 89 Fed. Cl. at 520 (finding waiver; "the multiple disclosures of some of the documents suggest that defendant's screening procedures were inadequate").

17. A proposed form of order granting the relief requested herein is attached hereto (the "**Proposed Order**").

## CONCLUSION

WHEREFORE, the LCM Defendants respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: March 27, 2023
       Houston, Texas

Respectfully submitted,

*/s/ John J. Sparacino*
**MCKOOL SMITH, PC**
John J. Sparacino (SBN 18873700)
S. Margie Venus (SBN 20545900)
Regan S. Jones (SBN 24110060)
**MCKOOL SMITH, PC**
600 Travis Street, Suite 7000
Houston, Texas 77002
Telephone: (713) 485-7300
Facsimile (713) 485-7344
jsparacino@mckoolsmith.com
mvenus@mckoolsmith.com
rjones@mckoolsmith.com

-and -

Michael Shuster (admitted *pro hac vice*)
Vincent Levy (admitted *pro hac vice*)
Neil R. Lieberman (admitted *pro hac vice*)
Alison B. Miller (admitted *pro hac vice*)
Brian T. Goldman (admitted *pro hac vice*)
Patrick J. Woods (admitted *pro hac vice*)
**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue
New York, New York 10017
mshuster@hsgllp.com
vlevy@hsgllp.com
nlieberman@hsgllp.com
amiller@hsgllp.com
bgoldman@hsgllp.com
pwoods@hsgllp.com

***Counsel for the LCM Defendants***

**CERTIFICATE OF SERVICE**

 This is to certify that a true and correct copy of the foregoing Motion Challenging Assertion of Privilege was served by electronic delivery on all persons and entities receiving ECF notice in this adversary proceeding on March 27, 2023.

               */s/ John J. Sparacino*
               John J. Sparacino