**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>SERTA SIMMONS BEDDING, LLC, et al.,<br><br>Debtors[1], | Chapter 11<br><br>Case No. 23-90020 (DRJ)<br><br>(Jointly Administered) |
| SERTA SIMMONS BEDDING, LLC, et al.,<br><br>Plaintiffs and Counterclaim Defendants,<br><br>v.<br><br>AG CENTRE STREET PARTNERSHIP L.P., et al.,<br><br>Defendants, Counterclaim Plaintiffs and Third-Party Plaintiffs,<br><br>v.<br><br>AGF FLOATING RATE INCOME FUND, et al.,<br><br>Third-Party Defendants. | Adversary Proc. No. 23-09001 (DRJ) |

**FIRST LIEN LENDER DEFENDANTS' RESPONSE TO PLAINTIFFS' "EMERGENCY" MOTION (I) APPROVING PLAINTIFFS' PROPOSED DISCOVERY SCHEDULE, AND (II) LIMITING DEPOSITIONS, OR IN THE ALTERNATIVE, TO SCHEDULE A STATUS CONFERENCE**

Defendants, counterclaim plaintiffs and third-party plaintiffs AG Centre Street Partnership L.P., AG Credit Solutions Non-ECI Master Fund, L.P., AG Super Fund Master, L.P., AG SF Master (L), L.P., Silver Oak Capital, L.L.C., Contrarian Capital Fund I, L.P., Contrarian Distressed

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Dawn Intermediate, LLC (6123); Serta Simmons Bedding, LLC (1874); Serta International Holdco, LLC (6101); National Bedding Company L.L.C. (0695); SSB Manufacturing Company (5743); The Simmons Manufacturing Co., LLC (0960); Dreamwell, Ltd. (2419); SSB Hospitality, LLC (2016); SSB Logistics, LLC (6691); Simmons Bedding Company, LLC (2552); Tuft & Needle, LLC (6215); Tomorrow Sleep LLC (0678); SSB Retail, LLC (9245); and World of Sleep Outlets, LLC (0957). The Debtors' corporate headquarters and service address for these chapter 11 cases is 2451 Industry Avenue, Doraville, Georgia 30360.

Debt Fund, L.P., Contrarian Centre Street Partnership, L.P., Gamut Capital SSB, LLC, Z Capital Credit Partners CLO 2018-1 Ltd., Z Capital Credit Partners CLO 2019-1 Ltd., Shackleton 2013-III CLO, Ltd., Shackleton 2013-IV-R CLO, Ltd., Shackleton 2014-V-R CLO, Ltd., Shackleton 2015-VII-R CLO, Ltd., Shackleton 2017-XI CLO, Ltd., North Star Debt Holdings, L.P., Ascribe III Investments, LLC, Columbia Cent CLO 21 Limited, Columbia Cent CLO 27 Limited, Columbia Floating Rate Fund, a series of Columbia Funds Series Trust II, and Columbia Strategic Income Fund, a series of Columbia Funds Series Trust I (collectively, the "First Lien Lender Defendants") hereby respectfully submit this response to Plaintiffs' Emergency Motion (I) Approving Plaintiffs' Proposed Discovery Schedule, and (II) Limiting Depositions, Or In the Alternative, To Schedule a Status Conference, dated April 17, 2023 (D.I. 164) (the "Motion"):

1. On March 28, 2023, the Court granted in part and denied in part Plaintiffs' motions for partial summary judgment. (*See* D.I. 141.) Since that day, the First Lien Lender Defendants have been proceeding simultaneously on two tracks: seeking an expedited appeal of the claim that the Court dismissed, while preparing the remaining claims for trial.

2. The First Lien Lender Defendants agree that the remainder of this case needs to move quickly, and accordingly have taken steps to streamline and push the case forward. Indeed, in anticipation of the current circumstances, the First Lien Lender Defendants served written discovery requests at the very *outset* of the adversary proceeding, on February 1, 2023, recognizing that under the Debtors' desired schedule, there were just six weeks between the summary judgment argument date and the Debtors' proposed trial date, and it would be near-impossible to prepare the claims for trial appropriately in that time period.

3. But rather than engage at that time, the Plaintiffs' response was to defer engaging in discovery until *after* the Court ruled on summary judgment—yet they now argue for an

untenable trial date of May 15. This would inappropriately curtail the First Lien Lender Defendants' ability to gather and present the evidence concerning the negotiation and consummation of the complex transaction at issue—never mind respond to the sweeping discovery the Plaintiffs have propounded on the First Lien Lender Defendants only after the summary judgment ruling was issued.

4. To be clear, the First Lien Lender Defendants recognize that it is in *all* stakeholders' interest for these Chapter 11 cases to proceed expeditiously, and to that end, have proposed a schedule providing for a trial on the remaining claims on July 15, 2023—just three-and-a-half months after the summary judgment ruling. Even this is a highly expedited, aggressive schedule given the limited discovery that took place in advance of the summary judgment ruling.

5. While the First Lien Lender Defendants offered to negotiate the schedule and seek a middle ground, Plaintiffs have obstinately refused to consider *any* schedule that would have trial start later than May 15, 2023, regardless of the near impossibility of preparing for trial in this complex commercial dispute in such a short period of time—and the absence of any business or financing necessity for this timeline. The parties, seemingly at an impasse, resolved to contact the Court to schedule a conference to resolve the issue.

6. Instead of following through on this commitment, Plaintiffs—without warning or notice—filed the instant Motion.[2] The First Lien Lender Defendants received Plaintiffs' Motion at 8:28 PM CT on April 17, 2023. As set forth in the First Lien Lender Defendants' Interim Response to the Motion (D.I. 165), and consistent with the parties' prior discussions, the First Lien

[2] The First Lien Lender Defendants were surprised to learn that, subsequent to the parties' April 14, 2023 meet-and-confer, that Plaintiffs had sought to confirm their own preferred case schedule with the Court instead of seeking a status conference concerning these issues, as was agreed.

Lender Defendants agree that a status conference on the scheduling and discovery issues outlined in the Motion and this Response would be helpful.

7. The First Lien Lender Defendants' substantive response to the Motion is as follows.

**A. Case Scheduling Concerns and Impasse**

8. While the First Lien Lender Defendants disagree with the majority of Plaintiffs' characterizations in the Motion regarding the parties' communications since the Court's summary judgment decision on March 28, 2023, the First Lien Lender Defendants do agree that significant discovery has taken place and, more importantly, is still actively in progress and remains to be taken.

9. *First*, written discovery and document discovery is underway. The First Lien Lender Defendants are and have been diligently preparing responses to Plaintiffs' voluminous requests for production of documents, interrogatories, and requests for admission to each of the First Lien Lender Defendants, served on April 10, 2023, and are preparing to begin rolling productions of documents on behalf of each of the eight groups of First Lien Lender Defendants. The Debtors and Favored Lender have hardly been restrained in the discovery they have sought. They have propounded, on each of the eight First Lien Lender Defendant groups:

- Twenty-Two Requests for Production. Some requests ask for *all* documents and communications from October 1, 2019 through January 23, 2023 relating to broad topics like "Your investment strategy or strategies with respect to the Serta Simmons Bedding First Lien Debt and any PTL Debt" (RFP No. 6), and some requests are even broader, for example, "***Without regard to time period***, documents sufficient to show the identity and terms of ***any offers*** You have made or received to participate as a lender in a transaction that would allow a borrower to repurchase debt You held." (RFP No. 15) (emphasis added).

- Six Interrogatories. Some interrogatories ask for eight years of information (January 1, 2015 to the present), such as "Identify each and any Lender, and each and any affiliate or subsidiary of any Lender, with whom You discussed the Transaction prior to the commencement of this Action and when you had those discussions." (Interrogatory No. 3). And others are even broader, requesting that Defendants "Identify all transactions within the last ten years in which You have participated where certain lenders in a class of debt received differential treatment, consideration, benefits, or terms than other lenders in that same class of debt . . . ." (Interrogatory No. 5).
- Seven Requests for Admission. The requests for admission, depending on the request, ask for a response from January 1, 2020 to the present or a response covering ten years of transactions.

10. At the same time, the First Lien Lender Defendants are reviewing the documents that Plaintiffs have produced (ostensibly numbering more than 57,000 documents from Plaintiffs and other non-parties (*see* Motion ¶ 14)) and will be required to review and understand the documents that remain to be produced. The First Lien Lender Defendants have also served discovery requests on the over three hundred Third-Party Defendants and will need to review those responses.[3]

11. *Second*, the parties have notified each other of their deposition requests, and are working to schedule those depositions, subject to resolving the disagreement addressed below regarding the number of depositions per side. The parties also have each served Rule 30(b)(6)

[3] The First Lien Lender Defendants' discovery requests to the Third-Party Defendants, while necessarily broad given the complexities of this case, are narrower in terms of scope and time period than the Plaintiffs' most recent discovery requests to the First Lien Lender Defendants.

deposition notices, which will be subject to negotiation as to scope, and which will require preparing corporate representatives to testify.

12. *Third*, the First Lien Lender Defendants (and presumably Plaintiffs) are preparing expert disclosures and will need to schedule expert depositions.

13. In all of this, the First Lien Lender Defendants have been transparent with Plaintiffs about the breadth of discovery that is needed and the impossibility of completing these tasks by a May 15 trial date, let alone the pre-trial work following discovery, such as identifying deposition designations and trial exhibits and addressing the myriad pre-trial issues that arise in every case.

14. There is simply no basis for Plaintiffs' assertion that the First Lien Lender Defendants have been "play[ing] games," *see* Motion ¶ 16, with respect to this case's progress. Plaintiffs may disagree with the First Lien Lender Defendants' view of what schedule is reasonable, but Plaintiffs' *ad hominem* attacks and accusations of foot-dragging by the First Lien Lender Defendants are groundless. The fact that the First Lien Lender Defendants are prepared to litigate this case in three-and-a-half months, start to finish, is the best evidence of that.

15. By contrast, Plaintiffs have not explained how their proposed schedule is feasible. As one notable example, none of the Plaintiffs or Third-Party Defendants (which are represented by Plaintiffs' counsel) have answered or moved against the Counterclaims and Third-Party Claims pending against them. (*See* Amended Answering Defendants' Answer to the Amended Adversary Complaint, Counterclaims and Third-Party Claims dated April 7, 2023 (D.I. 148)). Plaintiffs have not provided any insight into their plans for responding or moving to dismiss, let alone explained how a trial can proceed on May 15, 2023, in light of these amendments and the need to answer.

16. The First Lien Lender Defendants continue to believe (as was conveyed during the parties' April 14, 2023 meet-and-confer session) that a proposed trial date commencing in mid-

July 2023—three-and-a-half months after the Court's March 28 summary judgment ruling, and accounting for four national holidays in the interim—is eminently reasonable for an action of this magnitude, given its evident importance, and the involvement of 340 named parties, the vast majority of which have yet to answer or move against pending counterclaims and third-party claims.

17. Plaintiffs argue that the Court's March 28 summary judgment ruling narrowing the issues for confirmation to the First Lien Lender Defendants' (1) good faith and fair dealing counterclaim and (2) declaratory judgment counterclaim concerning Apollo's presence (or lack thereof) on the Disqualified Institutions List (*see* D.I. 148, ¶¶ 310-41, 347-51) warrants their unilateral push for a mid-May trial date. (Motion ¶ 18.) However, Plaintiffs' most recent discovery requests to the First Lien Lender Defendants belie their assertions that litigating even just these counterclaims does not require extensive discovery. (*See supra* ¶ 9.)

18. Moreover, the First Lien Lender Defendants are baffled by the Plaintiffs' dogged insistence on a mid-May trial date while they have assiduously opposed expedition of the First Lien Lender Defendants' appeal from the March 28 summary judgment ruling (something which this Court has also agreed is of paramount importance, *see* Mar. 28, 2023 Hr'g 125:7-9 ("The goal is just to get it right"); Pet. for Direct Review, (5th Cir 23-90012), ECF No. 3 at 53 (Plaintiffs "oppose the request to expedite the appeal")). It strains logic for the Plaintiffs to so rigidly insist on a May trial date while simultaneously doing everything in their power to delay final resolution of the core issues in this case.

19. In sum, while the First Lien Lender Defendants fully agree that these cases should proceed quickly, a trial date three-and-a-half months from the Court's summary judgment ruling will achieve that goal while also permitting a full and fair opportunity for their pending claims to

be adjudicated. The First Lien Lender Defendants also are aware that the Court's calendar likely is filling up for the coming weeks and months and the Court's resources are in constant demand; whether the Court can accommodate a July 15 start date for the trial remains to be seen, but at the very least, the First Lien Lender Defendants respectfully request more time to engage in the extensive discovery necessarily attendant to litigating this case—much of it propounded by Plaintiffs—than that allowed by Plaintiffs' current proposed start date of May 15.

**B. <u>Number of Depositions Sought By the First Lien Lender Defendants</u>**

20. Plaintiffs have also requested that the Court enter an order prohibiting the First Lien Lender Defendants from taking more than ten depositions in this case. The First Lien Lender Defendants respectfully submit that not only should the Court reject this request, it should exercise its discretion to modestly increase the limit on depositions, as set forth below.

21. The First Lien Lender Defendants have served a total of 20 deposition notices on individual and Rule 30(b)(6) witnesses, not because they are attempting to slow this case down, but because the number of parties and issues involved are unavoidably complex. Full and fair discovery entails the depositions of:

- The six Plaintiffs—the Debtors and the five Favored Lenders;
- The Debtors' sponsor (which was centrally involved in the negotiation of the Unlawful Exchange Transaction, and the purported inclusion of Apollo on the Disqualified Institutions List);
- The Debtors' and Favored Lenders' respective financial advisors; and
- The administrative agent for the First Lien Credit Agreement, which was in the middle of the Apollo/Disqualified Institutions List issue.

22. This alone accounts for ten highly relevant parties. And for certain of those parties, more than one deposition is appropriate—*i.e.*, for the Debtors, the First Lien Lender Defendants should be entitled to depose the independent director who approved the transaction, as well as certain key executives involved in its negotiation. Similarly, the documents produced to date clearly indicate the personal involvement of multiple decision-makers associated with certain Plaintiffs and their advisors which go directly to the First Lien Lender Defendants' good faith and fair dealing and declaratory injunction counterclaims. Moreover, the heart of a good faith and fair dealing counterclaim revolves around market participants' reasonable expectations of the fruits of the contract in dispute, and the First Lien Lender Defendants should be permitted to explore those issues with the individuals who were personally involved in the challenged transaction.

23. In the parties' negotiations and meet-and-confer sessions, Plaintiffs were unwilling even to consider agreeing to more than ten depositions, despite the obvious appropriateness of depositions beyond that number. The First Lien Lender Defendants, in an attempt to find some common ground, suggested that instead of limiting the number of depositions, the parties could agree to a limit as to the number of hours of deposition time—*i.e.*, each side would be able to take more than ten depositions, as long as the total number of hours for those depositions did not exceed a reasonable and mutually agreeable limit in the aggregate. The First Lien Lender Defendants have no intention of wasting anyone's time or resources, least of all their own. Many (if not most) of the First Lien Lender Defendants' noticed depositions are likely to be completed in well under the seven hours normally allotted to a deponent, and many of the noticed individuals are likely to serve as corporate 30(b)(6) designees, providing additional efficiencies.[4]

[4] Of course, the First Lien Lender Defendants cannot control other parties' choice of corporate designees, which is why they also noticed specific individuals.

24. The First Lien Lender Defendants also explicitly invited Plaintiffs to communicate who among the noticed individuals is unlikely to have unique information, because the First Lien Lender Defendants do not want to spend their own limited time deposing people who may only have cumulative information. Plaintiffs refused to entertain any of these efforts to come to a mutually-agreeable resolution or to provide reasons why an overall maximum hour limit would not suffice, instead filing the Motion without any mention of the First Lien Lender Defendants' alternative proposals with respect to deposition scheduling.

25. In any event, the First Lien Lender Defendants believe they can complete the depositions they need to present their claims with a total of 95 maximum deposition hours (just 25 more than the 70 total hours the Federal Rules of Civil Procedure would already allow) and a deponent limit of 20 (with the hope of deposing fewer witnesses, depending on what the written discovery shows). The First Lien Lender Defendants submit that this modest extension of the total number of hours available, and modification to allow more than ten total depositions, is reasonable given the complexities of the case, the number of parties and people involved, and the need to develop the evidence needed to allow for an efficient presentation at trial. A modest extension of the limit is particularly appropriate given the Plaintiffs' insistence on expedition, and because the First Lien Lender Defendants have not yet even received, much less reviewed, all the relevant documents. As noted, the First Lien Lender Defendants are highly motivated to use their deposition time wisely, and will gladly remove a deponent from their list if further review from the documents suggests they are unnecessary.

**C. <u>Conclusion and Prayer</u>**

26. For the reasons explained herein, the First Lien Lender Defendants respectfully request that the Court enter an order (i) setting the trial date on or about July 15, 2023 (or another

date in the summer when the Court is available); and (ii) permitting the First Lien Lender Defendants up to 95 hours of deposition time with a maximum of 20 depositions.

Dated: April 19, 2023

Respectfully submitted,

**PORTER HEDGES LLP**

*<u>/s/ John F. Higgins</u>*
John F. Higgins (TX 09597500)
M. Shane Johnson (TX 24083263)
Megan N. Young-John (TX 24088700)
1000 Main Street, 36th Floor
Houston, TX 77002
(713) 226-6000
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com

**FRIEDMAN KAPLAN SEILER ADELMAN & ROBBINS LLP**

Lawrence S. Robbins*
Eric Seiler*
Anne E. Beaumont*
Jamuna D. Kelley*
Elizabeth Bierut*
Blair R. Albom*
7 Times Square
New York, NY 11036-6516
(212) 833-1100
lrobbins@fklaw.com
eseiler@fklaw.com
abeaumont@fklaw.com
jkelley@fklaw.com
ebierut@fklaw.com
balbom@fklaw.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

Kenneth S. Ziman*
Brian S. Hermann*
Lewis R. Clayton*
Andrew J. Ehrlich*
Michael J. Colarossi*
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
kziman@paulweiss.com
bhermann@paulweiss.com
lclayton@paulweiss.com
aehrlich@paulweiss.com
mcolarossi@paulweiss.com
**admitted pro hac vice*

*Attorneys for the First Lien Lender Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2023, I caused to be served the foregoing First Lien Lender Defendants' Response to Plaintiffs' "Emergency" Motion (I) Approving Plaintiffs' Proposed Discovery Schedule, and (II) Limiting Depositions, Or In the Alternative, To Schedule a Status Conference, via ECF on all parties.

/s/ *John F. Higgins*
John F. Higgins