```
                    UNITED STATES BANKRUPTCY COURT
                  SOUTHERN DISTRICT OF TEXAS (HOUSTON)

                                          .
 IN RE:                                   .  Case No. 23-90020
                                          .  Chapter 11
 SERTA SIMMONS BEDDING, LLC,              .
                                          .
              Debtor.                     .
 . . . . . . . . . . . . . . . . . . . .  .
 SERTA SIMMONS BEDDING LLC,               .  Adv. No. 23-09001
 et al.,                                  .
                                          .
              Plaintiffs,                 .
                                          .
 v.                                       .
                                          .  515 Rusk Street
 AG CENTRE STREET PARTNERSHIP             .  Houston, TX 77002
 et al.,                                  .
                                          .  Monday, April 24, 2023
              Defendants.                 .  2:01 p.m.
 . . . . . . . . . . . . . . . . . . . .  .


    TRANSCRIPT OF EMERGENCY MOTION FOR ENTRY OF AN ORDER (I)
   APPROVING PLAINTIFFS' PROPOSED DISCOVERY SCHEDULE, AND (II)
   LIMITING DEPOSITIONS, OR IN THE ALTERNATIVE, TO SCHEDULE A
                     STATUS CONFERENCE [164]
             BEFORE THE HONORABLE DAVID R. JONES
              UNITED STATES BANKRUPTCY COURT JUDGE
```

APPEARANCES CONTINUED.

Audio Operator:           Vriana Portillo, ECR

Transcription Company:    Access Transcripts, LLC
                          10110 Youngwood Lane
                          Fishers, IN 46048
                          (855) 873-2223
                          www.accesstranscripts.com

     Proceedings recorded by electronic sound recording, transcript produced by transcription service.

1

```
APPEARANCES:
 For the Debtor:              Weil, Gotshal & Manges, LLP
                              By:  RAY SCHROCK, ESQ.
                                   LUNA N. BARRINGTON, ESQ.
                                   ALEXANDER WELCH, ESQ.
                              767 Fifth Avenue
                              New York, NY 10153-0119
                              (212) 310-8210

 For the Ad Hoc               Gibson Dunn & Crutcher LLP
 Priority Lender Group:       BY: GREGG COSTA, ESQ.
                              200 Park Avenue
                              New York, NY 10166-0193

 For the Official             Kelley Drye & Warren LLP
 Committee of Unsecured       By:  ERIC WILSON, ESQ.
 Creditors:                   3 World Trade Center
                              175 Greenwich Street
                              New York, NY 10007
                              (212) 808-7897

 For the Ad Hoc Group         Friedman Kaplan Seiler & Adelman LLP
 of First Lien Lenders:       By:  ERIC J. SEILER, ESQ.
                              7 Times Square
                              New York, NY 10036
                              (212) 833-1100
```

1         (Proceedings commence at 2:01 p.m.)

2             THE COURT:  This is Judge Jones.  The time is
3  2:01 Central.  Today is April the 24th, 2023.  This is the
4  docket for Houston, Texas.  On the two o'clock docket, we have
5  Adversary Number 23-9001, Serta Simmons Bedding, LLC, et al. v.
6  AG Centre Street Partnership, et al.
7             Folks, please don't forget to record your electronic
8  appearance.  I haven't set that up for the adversary, but if
9  you would just make the appearance in the main case, we will
10 move it over.  First time that you speak, if you would please
11 state your name and who you represent, that really does help
12 the court reporter do what is a very difficult job.
13            We are recording this afternoon using CourtSpeak.
14 We'll have the audio up on the docket shortly after the
15 conclusion of this afternoon's hearing.
16            And since we have some folks both in the courtroom as
17 well as some folks on -- excuse me -- on video, if you would --
18 folks in the courtroom, if you'd make sure you talk only from
19 the lectern so you can both be seen and be heard.
20            There was a fair amount of background noise with
21 people moving around and setting up conference calls, so I did
22 activate the hand-raising feature.  If you know you're going to
23 be speaking, if you'd go ahead and give me a "five star,"
24 please, I'll get you unmuted.
25            Only two takers.  That's an ominous sign.

1            All right.  Who is taking the lead this afternoon for
2   the debtors?
3            MR. WELCH:  Good afternoon, Your Honor.
4            THE COURT:  Mr. Welch, good afternoon.
5            MR. WELCH:  Good afternoon, Your Honor.  For the
6   record, Alexander Welch of Weil, Gotshal & Manges for the
7   debtors.  Appearing (audio interference) with me today, Ray
8   Schrock is on (audio interference) Barrington as well.  Forgive
9   me if I don't see anyone else, but I think Gabe Morgan and
10  Stephanie Morrison may be on, as well.
11           THE COURT:  All right.  Mr. Welch, I have read
12  everything that's been filed.  Are we ready to proceed?  Is
13  there anything that I should be aware of that has come about
14  and for which nothing's been filed?
15           MR. WELCH:  No, Your Honor.  What's on the docket is
16  what the -- I think, as far as -- first, thank you for seeing
17  us on an emergency basis.  As far as (indiscernible) propose to
18  do was to just do a few opening comments on the impact of what
19  we're requesting, or rather what we're asking you to consider
20  or perhaps not consider.  Then I would pass it to my partner,
21  Luna Barrington, who would take Your Honor, give you an update
22  on the status of (indiscernible) schedule, as well as
23  addressing the position on the depositions -- the motion to
24  quash, the number of depositions.
25           And then, unless Your Honor had any questions, we

1  would let the other parties say their piece on (indiscernible).
2          THE COURT: Let me ask everyone. I have my own view
3  about this, having read everything. Would it be helpful if I
4  gave you my view? And then, perhaps, if folks thought it
5  constructive, that we could adjourn for just a bit and let
6  people talk? Would -- I'm also happy to hear the arguments,
7  and then I'll react once I hear what's said.
8          Mr. Welch, you have thoughts about that?
9          MR. WELCH: I'm totally happy to proceed that way,
10 Your Honor. And if there's anything we need to supplement, we
11 can come over after that.
12         THE COURT: Certainly.
13         Anyone have an opposition to proceeding in that
14 manner?
15         UNIDENTIFIED: No, Your Honor.
16         THE COURT: All right. So, folks, let me say this.
17 Number one, I am not moving the trial date. You -- I've moved
18 at once. We have a huge block of time reserved. I'm not
19 moving the trial date. So let's start with that as already
20 given, number one.
21         Working backward from that, my thought is, and I do
22 recognize that everybody's pushed for time, but that's what you
23 all do so well. So my thought about this was to, working
24 backwards, understanding that the 15th isn't going to change,
25 is that we have witness and exhibit lists filed by noon on the

1  12th; discovery concluded by end of the day on the 10th; and
2  with respect to all of the fighting over what's being produced,
3  number of witnesses, depositions, I'm inclined to simply let
4  you all do what you do so well and not put any limitations on
5  anything, because time will handle that.
6              I'm going to add to that, that even if there's
7  agreement, no deposition testimony unless there is proof that
8  the witness is unavailable.  And so I do want the question
9  asked at every deposition.  If folks don't want to come, can't
10 come outside the subpoena range, I want the question asked,
11 would you agree to appear by video?  And if not, why not?
12             So those are my thoughts.  Again, not trying to not
13 trying to wade into, again, what you all do so well, but that
14 was -- after having read everything, that was my initial
15 reaction.  I don't know why so many depos were needed, or are
16 needed.  But again, I'm not going to pass on that.  And if
17 folks really think we need to go out and depose 52 people,
18 you've got a limited amount of time to do that and, you know,
19 better use it efficiently.
20             Let me ask this.  Having -- with those comments, do
21 people want to step off and talk?  Do people want to say, okay,
22 let's just go ahead?  What would everyone like to do?
23             Mr. Welch, let me start with you.
24             MR. WELCH:  If we may just take a minute, Your Honor?
25 I would take you up on that.

```
 1              THE COURT:  So all fine by me.  And let me just --
 2   Mr. Costa is here in the courtroom.  Mr. Costa, if you need
 3   some privacy, I'm happy to get a conference room unlocked
 4   across the way, if that would be helpful.
 5              MR. COSTA:  Sure, but we could just -- yeah, we could
 6   probably just talk to our people out, you know, outside in the
 7   hallway.
 8              THE COURT:  Okay.  Again, I'm just -- if you need it,
 9   if you'd just buzz on chambers, Mr. Alonzo is -- he's
10   listening.  He'll come out.
11              MR. COSTA:  Appreciate it.
12              THE COURT:  In fact, Mr. Alonzo, if you're listening,
13   why don't you just come out and unlock the door anyway?
14              And then, if you choose not to use it, then you don't
15   need it.
16              MR. COSTA:  Great.  Thank you.
17              THE COURT:  All right?  Folks have any thoughts about
18   time?  It's -- let's call it 2:10.  Fifteen minutes enough?
19              MR. WELCH:  I think so.
20              THE COURT:  All right.  So let's -- well, why don't
21   we just do this.  We'll come back at at 2:30, for those folks
22   who are listening.  We will not start before 2:30 Central.
23              And let me just take a quick -- anyone want to make a
24   comment or you want to see -- you want to talk with your
25   clients and figure out where this goes before we proceed?
```

1         MR. SEILER:  I think if we (audio interference) -- do
2  I need to do something?  Can you hear me?
3         THE COURT:  Yes, sir.  Yes, sir.
4         MR. SEILER:  Eric Seiler for first liens.  I think we
5  can come back and say -- there are a couple of things I need to
6  put on the record on the trial date point, but literally just a
7  couple of minutes.  So I think it can wait until after we've
8  all talked on it amongst ourselves.  I'll do it then.
9         THE COURT:  All fine by me.  And I got it.  And I'll
10 make this easier for you.  Nobody's agreeing to it.  But my
11 calendar date is my calendar date.  All right?
12        MR. SEILER:  I (indiscernible) Your Honor.  I just
13 thought, for completeness, I should make a few points on the
14 record.  I'm sure you'll allow me to do that.
15        THE COURT:  Of course I will.  Of course I will.  I
16 was just trying to make it easy for you.
17        All right.  Then I'll see everybody back at --
18        MR. WILSON:  Just briefly, Your Honor?
19        THE COURT:  Oh, Mr. Wilson.  Yes, sir.
20        MR. WILSON:  Yeah, apologies, Your Honor.  Eric
21 Wilson, Kelley Drye, for the Creditors' Committee, Your Honor.
22 To date, we have not been party to the discussions about
23 scheduling.  As we've said from the outset, we remain standing
24 by and willing and able to comply with the deadlines that the
25 Court has established.  I would only ask that, to the extent

1  now that there's a sidebar, that we'd be included in that
2  discussion so that we might get what limited discovery that we
3  need baked into the schedule.
4         THE COURT:  I made the assumption, which I should
5  never do, that you were parties to all of these discussions.
6  So absolutely.  To the extent that there's going to be a Zoom
7  call or a conference call or however it is you folks are going
8  to talk, you should absolutely be included.
9         MR. WILSON:  Appreciate that, Your Honor.  Thank you.
10         THE COURT:  All right.  Anyone else?
11         All right.  I'll see everybody back at 2:30 Central.
12 We'll be adjourned.
13     (Recess taken at 2:10 p.m.)
14     (Proceedings resumed at 2:30 p.m.)
15         THE COURT:  All right then.  The time is 2:30.  Today
16 is April the 24th, 2023.  We are back on the record in
17 Adversary Number 23-9001.
18         Let me ask -- Mr. Welch, I think I'm going to still
19 need a "five star" from you, if you haven't already done so.
20         MR. WELCH:  Can you hear me now, Judge?
21         THE COURT:  Yes, sir.  Thank you.
22         MR. WELCH:  For the record, Alexander Welch, Weil
23 Gotshal, for the debtors.  So, a couple phone calls were going.
24 I'm not sure we've closed out every particular issue.  We had a
25 sidebar amongst restructuring attorneys, like a sidebar amongst

1  litigation attorneys simultaneously.

2           I think where we stand is the debtor is very much
3  willing to accept what Your Honor has outlined.  I think we're
4  just trying to iron out a few of the details in the middle.
5  For example, we had proposed a May 4th objection deadline.  Of
6  course, that's the objection deadline slightly tweaked for the
7  new hearing.  We had previously sought the May 1 deadline in
8  the disclosure statement.

9           We would like to keep that deadline.  Of course,
10 being able to keep that deadline assumes we are in order on
11 discovery and things of that nature.  But we weren't sure
12 whether or not Your Honor already had something in mind, given
13 what he had laid out earlier.

14          THE COURT:  I did, just -- again, the debtor's
15 pressing, so the debtor's having -- can't really complain about
16 a compressed schedule.  But what I intended to do and I --
17 there are some other things we obviously need to talk about --
18 is I was going to move the objection deadline to 5/11 at noon
19 as well. And that's -- in my mind, gives everybody maximum
20 opportunity to work their way through things, to figure out
21 what strategic plays they want to make.  Got to do it in a
22 hurry, and I got that. But debtor knows what's coming.  And
23 you've got, you know, you've got three days to react.

24          MR. WELCH:  So -- thank you, Your Honor.  So you have
25 us -- we would have our reply on the night of the 14th.  Am I

1  reading that right?
2           THE COURT: You know, my -- you can file it whenever
3  you want. If you want me to read it, I would try and get it on
4  file, you know, sometime in the afternoon of the 14th. I will
5  be working on the 14th, just like everyone else. But, you
6  know, if you file it at 11:59, I'm old, I go to bed early, you
7  know, these days. So I won't read it if it's filed at 11:59.
8           MR. WELCH: Understood, Your Honor. So we will make
9  it work. We appreciate Your Honor's keeping the main show
10 where we need it. So we will move like water into the spaces
11 that are left.
12          THE COURT: All right. What else do -- and I want to
13 make it very clear. To the extent that someone's got a
14 specific discovery dispute, I was in no way saying that you
15 couldn't file your own motion to quash based upon a specific
16 issue. Not the cumulative total. But if there's some issue
17 that, you know, if someone gave you a discovery request, for
18 instance, like all communications from the beginning of time
19 until today, you know, that's something I absolutely would hope
20 you would complain about, something that I'm absolutely -- that
21 I'm absolutely willing to hear.
22          So -- and those will be done on an emergency basis.
23 And again, I know Rule 37 just like the rest of you, and we
24 will just take those one at a time as they pop up. If you have
25 issues during any of the depos, again, I'm one of those people

1  that believe you should just get on the phone and call.

2          MR. WELCH:  Understood, Your Honor.  Thank you.

3          THE COURT:  Before we get to Mr. Seiler, anyone else

4  have any issues they need to raise?

5          All right.  Mr. Seiler, you had said that you needed

6  to put some things on the record.  Obviously, I want you to

7  have the opportunity to do that.

8          MR. SEILER:  Sure, Your Honor.  And it's Eric Seiler.

9  My mom would --

10         THE COURT:  Seiler.

11         MR. SEILER:  -- like it better.

12         THE COURT:  My apologies.  My apologies.

13         MR. SEILER:  No need to apologize.  It's -- anyhow.

14 So I'll make this very simple because you made it simple by the

15 trial deadline.  I would note that when the original trial

16 deadline was set for May, it was a confirmation hearing that

17 was contemplated because we didn't know what would happen on

18 the motion for summary judgment, including on good faith and

19 fair dealing, or on the DQ issue for Apollo.  We learned that

20 from you.  And then we have an amended complaint on April 7th.

21 So we'll be having our trial on a case from the amended

22 complaint, which is the operative complaint, to the trial in

23 just over a month.

24         And the reason we asked for July 11th as a date, only

25 three months, is we've looked at that as sufficient time for

1   the parties to do all the things that usually happen in case.
2   We have -- for example, we have an anomaly here where the
3   third-party defendants haven't answered yet.  And they actually
4   haven't committed to answer yet.  We're talking about that in
5   good faith.  I don't want to fight about that now.  But -- and
6   they have an argument about why they shouldn't even need to
7   answer, but I have an argument that they need to be bound in
8   case we win the case.  We need to work that out.  But I think
9   it's fair to say that proposing a (audio interference)
10  three-month schedule where there could be a trial isn't an
11  unusually long time.
12          I understand Your Honor wants to have the trial on
13  May 15th, and I'm not quarreling with -- I understand your
14  decision, but I think that doesn't give us enough time to
15  fairly prepare the case.  And we're going to do our best, the
16  best what we try to do, but -- and, you know, for reasons that
17  Mr. Hermann argued in the beginning, we don't think you need to
18  decide the good faith and fair dealing in order to have the
19  confirmation hearing.
20          I made the same point during the long oral argument
21  we had.  I won't repeat them here.  But it does pressure us and
22  it pressures all of the witnesses.  Mr. -- as an example,
23  Mr. Prince from Advent.  I think his lawyers learned, and we
24  did at the same time, he's going away from May 1st to May 11th
25  on an international trip, but we're not really ready to take

1  his deposition much before that, because we need the documents
2  and we're just getting the documents for confirmation starting
3  on April 28th.  Yes, we got documents in the LCM case.  But
4  there are more documents coming that are particularly germane
5  and they haven't been produced yet.
6         And so, to get the documents, review the documents,
7  take competent depositions, and then do experts, which the
8  defendants -- I'm sorry, the plaintiffs wants to have expert
9  discovery.  I was thinking, well, maybe we just won't have
10 expert depositions, we'll have reports, you can hear the
11 testimony, and that will be that.  But I think they're entitled
12 to ask for it, and I'm willing to discuss it in good faith.
13 But all of that, even working very hard -- and I'm old too, so
14 I can't work past 12 o'clock either -- probably older than
15 Your Honor.
16        But I just think it's unfairly compressed, so I
17 wanted to put that on the record so there would be no -- so my
18 clients, at least, would know that we objected and we asked for
19 more time.  And I hope that I've done that in an effective way
20 without belaboring it, and I've tried to be respectful about
21 Your Honor's ruling.
22        THE COURT:  No, I -- very much so.  I appreciate you
23 walking the right balance.  I don't, sitting here today, based
24 on what I've read, I don't understand why there'd be a need for
25 any expert.  But I'm assuming that someone will prove that up

1   when the time comes.

2   I also want to be very clear.  To the extent that you

3   believe or anyone else believes that there's any sort of

4   obstruction going on, I am pressing you on and I'm pressing you

5   hard.  Doing it for a number of reasons.  I mean, one, I got it

6   that you are the defendant, but you're really the plaintiff.

7   You know what your claim is, and you know -- you would have

8   investigated it before you raised it, as 9011 requires you to

9   do.  I don't see how there's that much that needs to be done.

10   That all being said, I'm also sitting here and you

11   folks are out there.  And so I'm trying to give you maximum

12   flexibility to go do everything that you possibly feel like you

13   need to do to advocate for your client's interest.  And we'll

14   see how this all -- we'll see how this all comes out.  It

15   doesn't mean that, under certain circumstances, I won't revisit

16   this again.  But as we sit here today, based on what I know,

17   we're going to start on the 15th.  And I'm giving you maximum

18   flexibility to figure out how to use your time between now and

19   then.

20   MR. SEILER:  Your Honor, I appreciate that.  Just on

21   the expert front, we do think we have a liability expert that

22   we're thinking about.  But where we definitely have to have an

23   expert is on damage because it's a damage claim.  And if I

24   don't put on proof of how much I was damaged with some

25   competent proof, I won't have met my burden of winning a

```
 1  contract claim.  It's one of the elements.  So I need to
 2  prove --
 3              THE COURT:  So let --
 4              MR. SEILER:  -- how it hurt us.
 5              MR. WELCH:  So let me ask you, so I do think that --
 6  and I had -- and I'm going to go way back in history when I was
 7  a practicing lawyer.  I do think that you could delay the
 8  damage calculation issue by agreement.  And I don't think it's
 9  really needed for confirmation, but I could be wrong.  But I do
10  think it's worth having that discussion.
11              And I got where you are.  You're trying to cross all
12  your T's, dot all your I's.  I totally got that.  But you guys
13  can continue to talk and work through all those issues.
14              MR. SEILER:  So, as an example, on the two issues
15  that I've identified, having the third-party defendants be
16  bound, we are going to talk with Gibson Dunn about that.  And
17  I'm happy to talk with Mr. Schrock and Gibson Dunn about
18  whether damages can be bifurcated.  But I don't want to have a
19  situation where I don't prove them, and then I lose because I
20  didn't prove damages.  That doesn't seem to work for me.
21              And same thing on the defendants.  If they're not
22  bound by the outcome, and I win, that would be a pretty serious
23  failure on my part, too.  So I don't want to have either of
24  those things happen.
25              THE COURT:  So let me sort of divvy this up.
```

1   Because, again, this is a really good example.  I agree with
2   you on the damage issue.  If you can't get an agreement or a
3   stipulation -- and no one has to do anything -- then I agree,
4   you've got to put that on.
5            With respect to binding the third-party defendants, I
6   mean, they are part of the motivating fact here that we're
7   going to go at this rate, and we're going to start trial on the
8   15th.  If you can't get comfortable on that, then I need to
9   know about that, because that may factor into a motion to
10  reconsider.
11           So, again, you -- you go do what I know you know how
12  to do so well.  And if you -- I'll say it again.  If you feel
13  like that there is obstruction that is coming into play, I want
14  to know about it.  Again, I --
15           MR. SEILER:  And I should make clear, Your Honor --
16  I'm sorry.  I didn't mean to interrupt you.  I think that, with
17  the guidance you gave us today, although I don't like the trial
18  date, I think -- I would expect that Gibson Dunn, and Weil,
19  Gotshal, and all the other firms, and our firm, should be able
20  to have constructive discussion with -- to get the other things
21  solved, without taking any more of your time.
22           I learned last week that you were doing a mediation
23  in New York, and I learned two weeks ago that you have three
24  courtrooms in different cities that are far apart from each
25  other.  So I know that this was not the highest and best use of

1  your time to sort through the number of depositions and the
2  like.  So I -- we should go back and do our work to try and
3  live with -- best we can, with what you've ruled.  And if
4  there's a problem, (indiscernible) your bench.
5         THE COURT:  I will make time every day if I need to.
6  Your Honor, the fact that I have three courtrooms and I was in
7  New York for two mediations last week, just means that no one
8  can stand me for more than a certain period of time.  That's
9  all that means.
10        MR. SEILER:  I have nothing further.  Thank you.
11        THE COURT: All right.  Anyone else have anything
12 that they need to raise?  And I meant what I said.  To the
13 extent that we need to have a hearing every day, just
14 coordinate with Mr. Alonzo, and that's what we'll do.
15        And I think I interrupted somebody.  Was there a
16 gentleman that was speaking that I --
17     (No audible response)
18        THE COURT:  All right.  Then, with that, I'll do it
19 again.  Anyone have anything else they need to raise today?
20        MR. WELCH:  Not from the debtors, Your Honor.
21        THE COURT:  All right.  Thank you, everyone.  We'll
22 be adjourned until 3:30.  Everyone have a good day.
23     (Proceedings concluded at 2:44 p.m.)
24                      * * * * *
25

# C E R T I F I C A T I O N

I, Alicia Jarrett, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____
ALICIA JARRETT, AAERT NO. 428     DATE: April 26, 2023
ACCESS TRANSCRIPTS, LLC