# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **SERTA SIMMONS BEDDING, LLC,** | § | **Case No. 23-90020** |
| *et al.*, | § | |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |
| | § | |
| ------------------------------------------------------- | § | |
| | § | |
| **SERTA SIMMONS BEDDING, LLC,** | § | **Adversary Proc. No. 23-09001** |
| *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| **AG CENTRE STREET PARTNERSHIP L.P.,** *et al.*, | § | |
| | § | |
| Defendants. | § | |
| ------------------------------------------------------- | § | |

## PLAINTIFFS' EMERGENCY MOTION TO COMPEL PRODUCTION FROM DEFENDANTS

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Dawn Intermediate, LLC (6123); Serta Simmons Bedding, LLC (1874); Serta International Holdco, LLC (6101); National Bedding Company L.L.C. (0695); SSB Manufacturing Company (5743); The Simmons Manufacturing Co., LLC (0960); Dreamwell, Ltd. (2419); SSB Hospitality, LLC (2016); SSB Logistics, LLC (6691); Simmons Bedding Company, LLC (2552); Tuft & Needle, LLC (6215); Tomorrow Sleep LLC (0678); SSB Retail, LLC (9245); and World of Sleep Outlets, LLC (0957). The Debtors' corporate headquarters and service address for these chapter 11 cases is 2451 Industry Avenue, Doraville, Georgia 30360.

> **Emergency relief has been requested. Relief is requested not later than 5:00 p.m. on May 3, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Plaintiffs Serta Simmons Bedding, LLC, Barings LLC, Boston Management and Research, Credit Suisse Asset Management, LLC, Eaton Vance Management and Invesco Senior Secured Management, Inc. (collectively, "Plaintiffs") by and through their undersigned counsel, move this Court for entry of an order compelling the production of responsive documents from Defendants AG Centre Street Partnership L.P., AG Credit Solutions Non-ECI Master Fund, L.P., AG SF Master (L), L.P., AG Super Fund Master, L.P., Silver Oak Capital, L.L.C., Gamut Capital Serta Simmons Bedding, and North Star Debt Holdings, L.P. (collectively, "Defendants"). In support of this motion, Plaintiffs respectfully state as follows.

## INTRODUCTION

1. This case is set for trial on May 15, 2023. One of only two issues to be tried is whether Serta's June 2020 new financing and debt purchase transaction (the "Transaction") violated the implied covenant of good faith and fair dealing in the Non-PTL Term Loan Credit Agreement (the "Credit Agreement") under New York law. On March 28, 2023, this Court held that the Transaction "constituted an 'open market purchase' under Section 9.05(g) of the Non-PTL Term Loan Agreement," resulting in a partial final judgment in Plaintiffs' favor that "the Transaction was permitted under the Non-PTL Term Loan Agreement." ECF No. 141, ¶¶ 3–4.

2. In their Amended Counterclaims, Defendants' fundamental argument is that the Transaction—despite being expressly permitted under the terms of the Credit Agreement—

2

nonetheless breached the implied covenant because it "improperly extracted value from the Company that otherwise should have been shared with the Excluded Lenders and the rest of the minority lenders." ECF No. 148, ¶ 317. According to Defendants, Plaintiffs' contractually-compliant conduct somehow "upend[ed] the lending markets," ECF 148, ¶ 105; ran afoul of how open market purchases are "traditionally understood in the industry," ECF 146, ¶ 154; and amounted to "bad faith" in violation of the implied covenant. In support of their supposed industry understanding, Defendants have informed Plaintiffs that they intend to submit expert testimony from Sarah Ward. Ms. Ward is a former partner at the law firm of Skadden, Arps, Slate, Meagher & Flom LLP. She previously submitted a declaration in support of Defendants' summary judgment opposition. *See* ECF No. 89.

3. Plaintiffs' pre-trial briefing will explain why the Defendants' arguments about industry custom are contrary to New York law as a legal matter. (And Plaintiffs reserve the right to seek to exclude Defendants' proposed "expert"—a former lawyer—for providing irrelevant and improper testimony once Plaintiffs receive her expert report on May 3, 2023.[2]) But Defendants' argument about industry practice is also contradicted by the facts. Defendants know this well because they themselves have participated in publicly reported transactions that also involved participating lenders "extract[ing] value from [a] Company" that was then not "shared with the Excluded Lenders." ECF No. 148, ¶ 317. Indeed, certain Defendants—Angelo Gordon, North Star, and Gamut—proposed an alternative transaction to Serta that would have both excluded a majority of lenders and "extracted value from the Company" not to be "shared with the Excluded Lenders."

---

[2] Plaintiffs may also choose to submit rebuttal expert or opinion testimony once Defendants provide Ms. Ward's expert report, out of an abundance of caution.

4.      Plaintiffs believe Defendants have participated in many more such transactions than are publicly available. Accordingly, on or about February 10, 2023 and again on April 10, 2023, Plaintiffs requested documents from Defendants "sufficient to show" other transactions where Defendants have participated (or offered to participate) and where participating lenders extracted value (or would have extracted value) from a borrower that was not (or would not have been) shared with non-participating lenders—or had other structural features that Defendants are alleging amount to a breach of the implied covenant here. *See* Exhibit 1, Plaintiffs' April 10, 2023 Second Set of Requests for Production ("Requests" or "RFPs"), Requests 12–15, 18–19. The requested documents would underscore that Plaintiffs' actions were consistent with industry practice, as evidenced by Defendants' own conduct. The documents would also underscore that "a reasonable person in the position of the [Defendants]" would not have been "justified" in understanding the restructuring transaction to have been prohibited. *Cordero v. Transamerica Annuity Serv. Corp.*, 2023 WL 3061503, at *5 (N.Y. Apr. 25, 2023). And the documents would rebut the anticipated testimony of Defendants' proposed expert. To be clear, Plaintiffs believe evidence of industry practice is irrelevant in this case, where a detailed, unambiguous contract governs (and, as has already been decided, expressly permits) the conduct of sophisticated commercial parties. But should the Court choose to consider such evidence, the requested documents are relevant to rebutting Defendants' case.

5.      Unfortunately, Defendants have flatly refused to produce any of the disputed documents. At multiple meet-and-confers, Plaintiffs offered to negotiate the scope of the requests, which were already narrow given that they only seek "documents sufficient to show" the pertinent information. But Defendants, after initially saying they would consider negotiating, ultimately refused to engage. During an April 25, 2023 meet-and-confer, Defendants told Plaintiffs they

4

would not produce the documents and Plaintiffs would need to file a motion to compel if they wanted to obtain the documents. Defendants claim the requested information is of "de minimis relevance," so they ought not face "the burden" of searching for and identifying "any potentially relevant transactions." *See*, *e.g.*, Exhibit 2, Responses and Objections of Gamut to Plaintiffs' Second Set of Requests for Production (including this language in Responses 12–15 and 18–19).[3] Defendants' premise is mistaken.

6. The requests for production are reasonably calculated to lead to the discovery of admissible evidence, for the reasons discussed above and below. *See* Fed. R. Civ. Proc. 26(b)(1). Moreover, relevance "is broadly construed," so "a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.*, 2014 WL 585750, at *3 (S.D. Tex. Feb. 14, 2014) (quotation marks omitted). Plaintiffs' requests readily clear that hurdle. Moreover, Plaintiffs proactively limited their requests to "documents sufficient to show," so as to limit any burden. And Plaintiffs offered to meet and confer as to further narrowing, if even that proved too difficult. Defendants refused, saying there were potentially "hundreds" of responsive transactions. But that ostensible burden in fact underscores the appropriateness of the Requests. If the Defendants repeatedly engaged in similar transactions,

---

[3] The Defendants represented by the law firms Paul, Weiss, Rifkind, Wharton & Garrison LLP, Friedman Kaplan Seiler & Adelman LLP, and Porter Hedges LLP served virtually identical Responses and Objections to the Requests at issue. *See* Exhibit 4, Responses and Objections of Alcentra to Plaintiffs' Second Set of RFPs; Exhibit 5, Responses and Objections of Ascribe to Plaintiffs' Second Set of RFPs; Exhibit 6, Responses and Objections of Columbia to Plaintiffs' Second Set of RFPs; Exhibit 7, Responses and Objections of Contrarian to Plaintiffs' Second Set of RFPs; Exhibit 8, Responses and Objections of Angelo Gordon to Plaintiffs' Second Set of RFPs; Exhibit 9, Responses and Objections of North Star to Plaintiffs' Second Set of RFPs; Exhibit 10, Responses and Objections of Z Capital to Plaintiffs' Second Set of RFPs.

their assertions about industry practice, and their claim that they reasonably understood the Credit Agreement to bar implicitly all transactions favoring participating lenders over non-participating lenders, are untenable.

7.  Plaintiffs respectfully request that the Court issue an Order compelling Defendants to respond in full to Requests 12, 13, 14, 15, 18, and 19, contained in Plaintiffs' April 10, 2023 Second Set of Requests for Production.  Exhibit 1.  Plaintiffs further request that the Court issue this relief on an emergency basis by 5:00 p.m. May 3 and order compliance by May 6, given that depositions of Defendants begin May 8 and trial begins on May 15.

## JURISDICTION AND VENUE

8.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue—of both the Debtor's chapter 11 case and this Motion—is proper in this judicial district pursuant to 28 U.S.C. §§ 1408 and 1409. The relief requested here is sought pursuant to 11 U.S.C. § 105(a); 28 U.S.C. §§ 7026, 7034; and Federal Rules of Civil Procedure 26, 34, and 37.

## RELIEF REQUESTED

9.  Plaintiffs seek entry of an order compelling Defendants to produce documents responsive to the RFPs 12–15 and 18–19.  Plaintiffs respectfully request that the Court issue an order by 5:00 p.m. May 3 that requires production on or before May 6, 2023, given that depositions of certain Defendants are scheduled for May 8, May 9 and May 10, with discovery scheduled to conclude on May 10.

10.  The requests in question are as follows:

Request 12: Without regard to time period, documents sufficient to show the identity and terms of any transaction in which You participated, including without limitation, the April 2022 Envision Transaction and October 2022 Mitel Transaction, that resulted in existing debt being (a) exchanged for new debt and/or (b) repurchased by the borrower of such debt

6

with the consideration being new debt, in each case, with such new debt being contractually or structurally senior to such borrower's existing debt.

Request 13: Without regard to time period, documents sufficient to show the identity and terms of any offers You have made or received to participate as a lender in a transaction, including without limitation, the April 2022 Envision Transaction and October 2022 Mitel Transaction, that would result in existing debt being (a) exchanged for new debt and/or (b) repurchased by the borrower of such debt with the consideration being new debt, in each case, with such new debt being contractually or structurally senior to such borrower's existing debt.

Request 14: Without regard to time period, documents sufficient to show the identity and terms of any transaction, including without limitation, the April 2022 Envision Transaction and October 2022 Mitel Transaction, in which You allowed a borrower to repurchase debt You held, as a result of direct negotiations with the relevant borrower.

Request 15: Without regard to time period, documents sufficient to show the identity and terms of any offers You have made or received to participate as a lender in a transaction that would allow a borrower to repurchase debt You held.

Request 18: Without regard to the time period, Documents sufficient to show the identity, structure and terms of any transactions in which You have participated that resulted in certain lenders in a class of debt receiving differential treatment, consideration, benefits, or terms than other lenders in that same class of debt, including without limitation, the April 2022 Envision Transaction and October 2022 Mitel Transaction.

Request 19: Without regard to the time period, for the transactions identified in the Documents produced in response to request number 18 above, Documents sufficient to identify the participating and non-participating lenders in those transaction.

## BASIS FOR RELIEF

11. Defendants have refused to produce documents responsive to Requests 12–15 and 18–19, insisting that "the burden of conducting a search and identifying any potentially relevant transactions outweighs any potential de minimis relevance of such transactions." *See*, *e.g.*, Exhibit 2, Responses and Objections of Gamut to Plaintiffs' Second Set of Requests for Production (including this language in Responses 12–15 and 18–19). It does not.

12. Requiring Defendants to disclose the existence and terms of transactions with similar features is proper for at least four reasons.

7

13. *First*, the requested information goes directly to the merits of this dispute. Under the implied covenant, courts enforce only those promises "that a reasonable person in the position of the promisee would be justified in understanding were included" in a contract. *Cordero*, 2023 WL 3061503, at *5 (quotation marks omitted). A close look at the detailed Credit Agreement shows that if the sophisticated commercial parties had wanted to include particular limitations, they knew exactly how to do so. That the parties chose not to do so should be the end of this case. Nonetheless, if Defendants regularly participated in transactions with similar features, they would certainly not be justified in thinking the Credit Agreement contained the "particular unexpressed promise[s]" they now claim it impliedly contains. *Rowe v. Great Atl. & Pac. Tea Co., Inc.*, 46 N.Y.2d 62, 69 (N.Y. 1978).

14. This point applies to virtually all features of the Transaction that Defendants now challenge. For example, Defendants fault Serta for not "disclos[ing]" that it was "contemplating" the Transaction—in other words, for negotiating confidentially. ECF No. 148, ¶ 319. Yet if the requested documents show Defendants regularly engaged in similar conduct—as a number of them did with Serta itself—they could not possibly be justified in thinking the Agreement impliedly prohibited such conduct. Likewise, Defendants claim the Transaction violated their pro rata rights by "extract[ing] value from the Company" that was not "shared with the Excluded Lenders"— even if the Transaction did not formally alter those rights. *Id.* ¶¶ 314–17. But if Defendants themselves regularly execute similar transactions, it again would be unreasonable to read such implied terms into the Agreement.

15. *Second*, the requested information will likely rebut testimony from at least one of Defendants' proffered experts. On April 24, 2023, Defendants orally disclosed that they intend to offer expert testimony pertaining to "market understanding and reasonable expectations" vis-à-vis

8

the Agreement. On April 26, 2023, Defendants further disclosed that their expert witness on this subject would be Sarah M. Ward. Ms. Ward, as noted above, previously submitted a declaration in this case. In that declaration, she offered "opinions regarding the origin, purpose, and market understanding of certain provisions of the First Lien Term Loan Agreement." ECF No. 89, ¶ 1. Plaintiffs believe this testimony is likely improper and reserve the right to object to its admissibility after Plaintiffs receive her expert report on May 3, 2023. *See Morris v. Equifax Info. Servs., LLC*, 2005 WL 5976334, at *2 (S.D. Tex. Jan. 19, 2005) ("legal opinions and conclusions are not a proper subject of expert testimony"); *Jofen v. Epoch Biosciences, Inc.*, 2002 WL 1461351, at *9 (S.D.N.Y. 2002) (finding extrinsic evidence of industry custom irrelevant because the contract was unambiguous and dismissing the implied covenant of good faith and fair dealing claim because it was inconsistent with the express terms of the contract). But to the extent Defendants intend to offer purported expert testimony on "market understanding," Plaintiffs certainly must be allowed to inquire into Defendants' actual market practices.

16.     *Third*, the Defendants have propounded discovery requests seeking similar transaction information. For example, they have included among their designated 30(b)(6) deposition topics the Lender Plaintiffs' "participation or experience with any transaction or offer . . . that involved modification, waiver, or removal of pro rata sacred rights in a credit agreement or indenture." *E.g.*, Exhibit 3, Notice of Deposition to Plaintiff Barings LLC, Schedule B, ¶ 8. It is precisely because Defendants have tried to make such information germane to the dispute that it is important for Plaintiffs to have access to related information from Defendants. Defendants should live by their own rules and be ordered to produce the documents requested.

17.     *Fourth*, Plaintiffs' Requests are narrowly-tailored and reasonable. The contested RFPs seek only documents "sufficient to show" the pertinent information. They do not require an

9

exhaustive search or Herculean review process. And in an effort at compromise, Plaintiffs have offered to negotiate accommodations to address any breadth or confidentiality concerns. That offer remains open. But Defendants lack any plausible basis for their across-the-board refusal to produce the requested documents and information. For example, if confidentiality is a concern, documents could be produced on an attorneys'-eyes-only basis. Or if the production of certain deal documents is too cumbersome, Plaintiffs might agree to receive the basic facts of the responsive transactions in the form of a written response. Plaintiffs are prepared to work collaboratively. Defendants' flat-out refusal to search for the documents—despite demanding similar information from others—is improper.

18. *Finally*, the Defendants' Responses and Objection are stuffed with boilerplate objections. Parties cannot rely on "boilerplate objections that are not accompanied by an adequate explanation to resist discovery." *Archer v. Kennedy*, 2022 WL 17069122, at *2 (N.D. Tex. Nov. 16, 2022). Instead, "a party resisting discovery must *show* how the requested discovery is overbroad, burdensome, or oppressive"—for example, "by submitting affidavits or offering evidence revealing the nature of the burden." *Finalrod IP, LLC v. John Crane, Inc.*, 2018 WL 11361726, at *3 (W.D. Tex. May 22, 2018) (emphasis added). Defendants have not done so. Accordingly, the Court should decline to give weight to any of the boilerplate objections in Defendants' Responses and Objections.

19. Plaintiffs respectfully ask that the Court compel full and complete responses to RFPs 12–15 and 18–19, pursuant to Federal Rules of Civil Procedure 26, 34, and 37 (as made applicable by Rules 7026, 7034, and 7037 of the Federal Rules of Bankruptcy Procedure).

20. Plaintiffs further ask that the Court issue emergency relief not later than 5:00 p.m. on May 3, and order production by May 6. Depositions of certain Defendants are scheduled for

10

May 8–10, and trial is scheduled to begin on May 15—just two-and-a-half weeks from today. Plaintiffs' counsel will need time to review the documents before depositions and trial.

* * *

21. For the foregoing reasons, Plaintiffs request that the Court (i) enter the Proposed Order compelling production to conclude no later than May 6, 2023, and (ii) grant such further relief as the Court deems just and proper under the circumstances.

Dated: May 1, 2023  
New York, New York

Respectfully submitted,

 /s/ *Gabriel A. Morgan*  
WEIL, GOTSHAL & MANGES LLP  
Gabriel A. Morgan (24125891)  
Stephanie N. Morrison (24126930)  
700 Louisiana Street, Suite 1700  
Houston, Texas 77002  
Telephone: (713) 546-5000  
Facsimile: (713) 224-9511  
Email: Gabriel.Morgan@weil.com  
        Stephanie.Morrison@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP  
Ray C. Schrock (admitted *pro hac vice*)  
David J. Lender (admitted *pro hac vice*)  
Luna Barrington (admitted *pro hac vice*)  
Alexander W. Welch (admitted *pro hac vice*)  
Richard D. Gage (admitted *pro hac vice*)  
Taylor B. Dougherty (admitted *pro hac vice*)  
Joseph R. Rausch (admitted *pro hac vice*)  
Michael P. Goodyear (admitted *pro hac vice*)  
Nicholas J. Reade (admitted *pro hac vice*)  
767 Fifth Avenue  
New York, NY 10153  
Tel: (212) 310-8000  
Fax: (212) 310-8007  
Email: Ray.Schrock@weil.com  
      David.Lender@weil.com  
      Alexander.Welch@weil.com  
      Luna.Barrington@weil.com  
      Richard.Gage@weil.com  
      Taylor.Dougherty@weil.com  
      Joseph.Rausch@weil.com  
      Michael.Goodyear@weil.com  
      Nick.Reade@weil.com

*Attorneys for Serta Simmons Bedding, LLC, as Debtor and Debtor in Possession*

**JACKSON WALKER LLP**  
Bruce J. Ruzinsky (TX Bar No. 17469425)  
Victoria N. Argeroplos (TX Bar No. 24105799)  
Gabriela M. Barake (TX Bar No. 24099794)  
1401 McKinney Street, Suite 1900  
Houston, Texas 77010

Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: bruzinsky@jw.com
vargeroplos@jw.com
gbarake@jw.com

*Counsel for Invesco Senior Secured Management, Inc., Credit Suisse Asset Management, LLC, Eaton Vance Management, Boston Research and Management, and Barings LLC*

**Certificate of Service**

I hereby certify that on May 1, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and will be served as set forth in the Affidavit of Service to be filed by the Debtors' claims, noticing, and solicitation agent.

/s/ Gabriel A. Morgan
GABRIEL A. MORGAN

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i)

/s/ Gabriel A. Morgan
GABRIEL A. MORGAN