# Exhibit 1

<u>IN THE UNITED STATES BANKRUPTCY</u>
<u>COURT FOR THE SOUTHERN DISTRICT OF</u>
<u>TEXAS HOUSTON DIVISION</u>

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SERTA SIMMONS BEDDING LLC, *et al.*, | § | Case No. 23-90020 (DRJ) |
| | § | |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |
| | § | |

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dawn Intermediate, LLC (6123); Serta Simmons Bedding, LLC (1874); Serta International Holdco, LLC (6101); National Bedding Company L.L.C. (0695); SSB Manufacturing Company (5743); The Simmons Manufacturing Co., LLC (0960); Dreamwell, Ltd. (2419); SSB Hospitality, LLC (2016); SSB Logistics, LLC (6691); Simmons Bedding Company, LLC (2552); Tuft & Needle, LLC (6215); Tomorrow Sleep LLC (0678); SSB Retail, LLC (9245); and World of Sleep Outlets, LLC (0957). The Debtors' corporate headquarters and service address for these chapter 11 cases is 2451 Industry Avenue, Doraville, Georgia 30360.

| | | |
|---|---|---|
| SERTA SIMMONS BEDDING, LLC, INVESCO SENIOR SECURED MANAGEMENT, INC., CREDIT SUISSE ASSET MANAGEMENT, LLC, BOSTON MANAGEMENT AND RESEARCH, EATON VANCE MANAGEMENT, AND BARINGS LLC, | § § § § § § § § | Adversary No.: 23-09001 (DRJ) |
| | § | |
| Plaintiffs, | § § | **PLAINTIFFS SERTA SIMMONS BEDDING, LLC, INVESCO SENIOR SECURED MANAGEMENT, INC.,** |
| v. | § § § | **CREDIT SUISSE ASSET MANAGEMENT, LLC BOSTON MANAGEMENT AND RESEARCH,** |
| AG CENTRE STREET PARTNERSHIP L.P., AG CREDIT SOLUTIONS NON-ECI MASTER FUND, L.P., AG SF MASTER (L), L.P., AG SUPER FUND MASTER, L.P., SILVER OAK CAPITAL, L.L.C., ASCRIBE III INVESTMENTS, LLC, COLUMBIA CENT CLO 21 LIMITED, COLUMBIA CENT CLO 27 LIMITED, COLUMBIA FLOATING RATE INCOME FUND, A SERIES OF COLUMBIA FUNDS SERIES TRUST II, COLUMBIA STRATEGIC INCOME FUND, A SERIES OF COLUMBIA FUNDS SERIES TRUST I, CONTRARIAN CAPITAL FUND I, L.P., CONTRARIAN CENTRE STREET PARTNERSHIP, L.P., CONTRARIAN DISTRESSED DEBT FUND, L.P., GAMUT CAPITAL SSB, LLC, LCM XXII LTD., LCM XXIII LTD., LCM XXIV LTD., LCM XXV LTD., LCM 26 LTD., LCM 27 LTD., LCM 28 LTD., NORTH STAR DEBT HOLDINGS, L.P., SHACKLETON 2013-III CLO, LTD., SHACKLETON 2013-IV-R CLO, LTD., SHACKLETON 2014-V-R CLO, LTD., SHACKLETON 2015-VII-R CLO, LTD., SHACKLETON 2017-XI CLO, LTD., Z CAPITAL CREDIT PARTNERS CLO 2018-1 LTD., AND Z CAPITAL CREDIT PARTNERS CLO 2019-1 LTD. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | **EATON VANCE MANAGEMENT, AND BARINGS LLC'S SECOND SET OF REQUESTS FOR PRODUCTION TO DEFENDANTS** |
| Defendants. | § § § | |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure ("FRCP"), as incorporated into the Federal Rules of Bankruptcy Procedure 7026 and 7034, and the corresponding Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules"), Plaintiffs Serta Simmons Bedding, LLC, Invesco Senior Secured Management, Inc., Credit Suisse Asset Management, LLC, Boston Research and Management, Eaton Vance Management, and Barings LLC (together, "Plaintiffs"), by and through their undersigned counsel, hereby request that Defendants AG Centre Street Partnership L.P., AG Credit Solutions Non-ECI Master Fund, L.P., AG SF Master (L), L.P., AG Super Fund Master, L.P., Silver Oak Capital, L.L.C., Ascribe III Investments, LLC, Columbia Cent CLO 21 Limited, Columbia Cent CLO 27 Limited, Columbia Floating Rate Income Fund, a series of Columbia Funds Series Trust II, Columbia Strategic Income Fund, a series of Columbia Funds Series Trust I, Contrarian Capital Fund I, L.P., Contrarian Centre Street Partnership, L.P., Contrarian Distressed Debt Fund, L.P., Gamut Capital Serta Simmons Bedding, LLC, LCM XXII Ltd., LCM XXIII Ltd., LCM XXIV Ltd.., LCM XXV Ltd., LCM 26 Ltd., LCM 27 Ltd., LCM 28 Ltd., North Star Debt Holdings, L.P., Shackleton 2013-III CLO, Ltd., Shackleton 2013-IV-R CLO, Ltd., Shackleton 2014-V-R CLO, Ltd., Shackleton 2015-VII-R CLO, Ltd., Shackleton 2017-XI CLO, Ltd., Z Capital Credit Partners CLO 2018-1 Ltd., and Z Capital Credit Partners CLO 2019- 1 Ltd. (collectively "Defendants") produce the following documents and tangible things at the offices of Weil Gotshal & Manges LLP, 700 Louisiana Street, Suite 1700, Houston, Texas 77002, counsel for Plaintiff Serta Simmons Bedding LLC, by April 17, 2023, unless otherwise agreed by the parties or required by any scheduling order entered by the Court.  The Definitions and Instructions that appear below form an integral part of the Requests that follow and must be read in conjunction with them and followed when responding to the Requests.

3

## GENERAL DEFINITIONS

Plaintiffs incorporate by reference all of the instructions, definitions, and rules contained in the FRCP and the Federal Rules of Bankruptcy Procedure, and for purposes of the Requests, the following definitions shall apply:

1.      Unless words or terms have been given a specific definition herein, each word or term used herein shall be given its usual and customary dictionary definition.

2.      The terms defined herein should be construed broadly to the fullest extent of their meaning in a good faith effort to comply with the FRCP and Federal Rules of Bankruptcy Procedure.

3.      "**Any**" means "each and every" as well as "any one."

4.      "**Communication**" refers to, in addition to its customary and usual meaning, every contact of any nature, whether documentary, electronic, written or oral, formal or informal, at any time or place and under any circumstances whatsoever whereby information of any nature is transmitted or transferred by any means, including, but not limited to, letters, memoranda, reports, emails, text messages, instant messages, telegrams, invoices, telephone conversations, voicemail messages, audio recordings, face-to-face meetings and conversations, or any other form of communication, and any Document relating to such contact, including but not limited to correspondence, memoranda, notes or logs of telephone conversations, e-mail, electronic chats, text messages, instant messages, direct or private messages, correspondence in "meet ups" or chat rooms, and all means of other correspondence.

5.      "**Document**" or "**Documents**" refers to documents broadly defined in FRCP 34 and includes (i) papers of all kinds, including but not limited to, originals and copies, however made, of letters, memoranda, hand-written notes, notebooks, work-pads, messages, agreements, rough drafts, drawings, sketches, pictures, posters, pamphlets, publications, news articles,

4

advertisements, sales literature, brochures, announcements, bills, receipts, credit card statements, and (ii) non-paper information of all kinds, including but not limited to, any computer generated or electronic data such as digital videos, digital photographs, audio recordings, podcasts, Internet files, online articles and publications, website content, electronic mail (e-mail), electronic chats, instant messages, text messages, or any other use of ephemeral communications services, and (iii) any other writings, records, or tangible objects produced or reproduced mechanically, electrically, electronically, photographically, or chemically.  Without limiting the foregoing in any way, every Communication is also a Document.

6.    "**Electronically Stored Information**" has the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure, and refers to all computer or electronically stored or generated data and information, and includes all attachments to and enclosures with any requested item, and all drafts thereof.   "Electronically Stored Information" includes information stored in any format and on any storage media, including: hard disks; floppy disks; optical disks; flash memory devices; and magnetic tape, whether fixed, portable, or removable.   "Electronically Stored Information" also includes all associated metadata that is maintained or saved, which includes: a document's title or name; file name; date and time of creation; date and time of last edit; identity of author; identity of owner; identities of editors; identities of recipients; changes; history of changes; email header information; history of who viewed an email and when; and email routing information.

7.    "**Including**" means including but not limited to.

8.    "**Person**" includes both the singular and the plural, and refers to any natural person, business entity, corporation, cooperative, public corporation, partnership, joint venture, organization, ad hoc group, informal groups of creditors, equity holders, or other stakeholders,

and official or unofficial committees, including the Defendants, and such Person's representatives.

9.      "**Relating to**" means concerning, evidencing, supporting, regarding, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing, identifying, referring to, referencing, discussing, indicating, pertaining to, setting forth, showing, disclosing, explaining, enumerating, listing, summarizing, reflecting, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

## SPECIFIC DEFINITIONS

1.      "**Action**" refers to the above-captioned action, namely, *Serta Simmons Bedding, LLC v. AG Centre Street Partnership L.P.,* No. 9:23-ap-09001 (DRJ), pending in federal bankruptcy court in the Southern District of Texas.

2.      "**Amended Non-PTL Term Loan Agreement**" refers to the Amendment No. 1 to the First Lien Term Loan Agreement, dated June 22, 2020, by and among Dawn Intermediate, Inc., Serta National Bedding Company L.L.C., and SSB Manufacturing Company, as borrowers, and the lenders.

3.      "**Angelo Gordon**" refers to AG Centre Street Partnership L.P., AG Credit Solutions Non-ECI Master Fund, L.P., AG SF Master (L), L.P., AG Super Fund Master, L.P., and/or Silver Oak Capital, L.L.C., and any of their affiliates and any of their and their affiliates' officers, employees, representatives, agents, or others that act for or on their behalf.

4.      "**Ascribe**" refers to Ascribe III Investments, LLC. and any of its affiliates and any of its and its affiliates' officers, employees, representatives, agents, or others that act for or on its behalf.

5.      **"Columbia"** refers to Columbia Cent CLO 21 Limited, Columbia Cent CLO 27 Limited, Columbia Floating Rate Income Fund, a series of Columbia Funds Series Trust II, and/or Columbia Strategic Income Fund, a series of Columbia Funds Series Trust I, and any of their affiliates and any of their and their affiliates' officers, employees, representatives, agents, or others that act for or on their behalf.

6.      **"Contrarian"** refers to Contrarian Capital Fund I, L.P., Contrarian Centre Street Partnership, L.P., and/or Contrarian Distressed Debt Fund, L.P., and any of their affiliates and any of their and their affiliates' officers, employees, representatives, agents, or others that act for or on their behalf.

7.      "**Defendants**," "**You**," and "**Your**" refer, individually and collectively, to Angelo Gordon, Ascribe, Columbia, Contrarian, Gamut, LCM, North Star, Shackleton, and/or Z Capital, as defined herein.

8.      "**First Lien Debt**" refers to debt issued under and held by the parties to the Non-PTL Term Loan Agreement and Amended Non-PTL Term Loan Agreement.

9.      **"Gamut"** refers to Gamut Capital SSB, LLC, and any of its affiliates and any of its and its affiliates' officers, employees, representatives, agents, or others that act for or on its behalf.

10.     **"LCM"** refers to LCM XXII Ltd., LCM XXIII Ltd., LCM XXIV Ltd., LCM XXV Ltd., LCM 26 Ltd., LCM 27 Ltd., and/or LCM 28 Ltd., and any of their affiliates and any of their and their affiliates' officers, employees, representatives, agents, or others that act for or on their behalf.

11.     "**Non-PTL Term Loan Agreement**" refers to the First Lien Term Loan Agreement dated as of November 8, 2016, by and among Dawn Intermediate, Inc., Serta Simmons Bedding, National Bedding Company L.L.C., and SSB Manufacturing Company, as borrowers, the financial

institutions party thereto, as Lenders, UBS AG, as the Administrative Agent, and UBS Securities LLC, Goldman Sachs Bank USA, Barclays Bank PLC, Deutsche Bank Securities, Inc, Jefferies Finance LLC, JP Morgan Chase Bank N.A., Morgan Stanley Senior Funding, Inc., RBC Capital Markets and Wells Fargo Securities, LLC, as Joint Lead Arrangers and Joint Bookrunners.

12.      **"North Star"** refers to North Star Debt Holdings, L.P. and any of its affiliates and any of its and its affiliates' officers, employees, representatives, agents, or others that act for or on its behalf, including without limitation, Apollo Global Management, Inc.

13.      **"North Star Lenders' Offer"** refers to any offer to refinance the Company's First Lien Debt in or about March 2020 by North Star, Angelo Gordon, Gamut, and their affiliates, subsidiaries, and sponsors.

14.      **"PTL Credit Agreement"** refers to the Super-Priority Term Loan Agreement, dated June 22, 2020, by and among Dawn Intermediate, LLC., Serta Simmons Bedding, National Bedding Company L.L.C., and SSB Manufacturing Company, as borrowers, the financial institutions party thereto, as Lenders, and UBS AG, as the Administrative Agent.

15.      **"PTL Debt"** refers to the debt issued under and held by the parties to the PTL Credit Agreement.

16.      **"PTL Lenders"** refers to any lender under the PTL Credit Agreement.

17.      **"Prior Actions"** refers collectively to the actions captioned *North Star Debt Holdings L.P., et al. v. Serta Simmons Bedding, LLC, et al.*, No. 652243/2020 (Sup. Ct. N.Y. Cnty.), *LCM Asset Management, LLC v. Serta Simmons* Bedding*, LLC, et al.*, No. 652555/2020

(Sup. Ct. N.Y. Cnty.), *LCM XXII Ltd., et al. v. Serta Simmons Bedding, LLC, et al.*, 20-cv-05090 (S.D.N.Y), *AG Centre Street Partnership L.P. et al. v. Serta Simmons, LLC et al.*, No. 654181/2022 (Sup. Ct. N.Y. Cnty.), and *AG Centre Street Partnership L.P. et al. v. Serta Simmons Bedding, LLC et al.*, 23-cv-00587 (S.D.N.Y.).

18.   "**Serta Simmons Bedding**" and the "**Company**" refer to Serta Simmons Bedding, LLC, as debtor and debtor in possession in the above-captioned Chapter 11 cases (the "**Debtor**"), and its affiliates and its and its affiliates' officers, directors, or employees.

19.   "**Shackleton**" refers to Shackleton 2013-III CLO, Ltd., Shackleton 2013-IV-R CLO, Ltd., Shackleton 2014-V-R CLO, Ltd., Shackleton 2015-VII-R CLO, Ltd., and/or Shackleton 2017-XI CLO, Ltd. and any of their affiliates and any of their or their affiliates' officers, employees, representatives, agents, or others that act for or on their behalf.

20.   "**Transaction**" refers to the financing and debt exchange transaction, by and between Serta Simmons Bedding and the PTL Lenders, that  closed on June 22, 2020.

21.   "**Z Capital**" refers to Z Capital Credit Partners CLO 2018-1 Ltd., and/or Z Capital Credit Partners CLO 2019-1 Ltd. and any of their affiliates and any of their and their affiliates' officers, employees, representatives, agents, or others that act for or on their behalf.

<u>**INSTRUCTIONS**</u>

Plaintiffs incorporate by reference all the instructions, definitions, and rules contained in the FRCP and the Federal Rules of Bankruptcy Procedure and, for purposes of these Requests, the following instructions shall apply:

1.   You must produce all responsive documents in Your possession, custody, or control including but not limited to databases, documents, Electronically Stored Information, and tangible things, regardless of whether such documents are possessed directly by You or persons under Your

control, including Your agents, employees, representatives, or attorneys, or their agents, employees, or representatives.

2.      You must fully respond, search for, and produce all Documents and Communications responsive to these Requests.

3.      Each Request shall be responded to completely, separately, and fully.

4.      Your responses to the following Requests shall be based on all knowledge and information (whether or not hearsay or admissible) in Your possession, custody, or control.

5.      The fact that a Document has been or may be produced by any other Person does not relieve You from Your obligation to produce the Document even if the two Documents are identical in all respects.

6.      The use of the term "the" shall not be construed as limiting the scope of any request for production.

7.      In the event any Document or Communication is withheld on the basis of the attorney-client privilege, work product doctrine, or any other right to non-disclosure on any other basis, You shall produce a privilege log in accordance with the FRCP.

8.      If You object to production in response to a specific request, You shall state with particularity the basis for all objections with respect to such request.  You shall respond to any and all portions of any request that do not fall within the scope of Your objection.  Any ground not stated within the time prescribed by the FRCP or any extensions agreed to between the parties, shall be waived.

9.      If any responsive Document once was, but is no longer, in Your possession, custody, or control, state the whereabouts of such Document when last in your possession, custody or control, state the date and manner of its disposition, and identify its last known custodian.  To

the extent that any responsive Document was lost or destroyed, produce any Document that supports Your assertion that the Document was lost or destroyed, provide the date when each such document was lost or destroyed, and the role or title of the individual who authorized or requested the destruction of the Document.

10.     These Requests are continuing in nature.  If, after making initial responses, You obtain or become aware of any further Documents responsive to the Requests, You are required to supplement their responses and provide such Documents pursuant to FRCP Rule 26(e).

11.     If, in responding to any of the following Requests, You encounter any ambiguity or confusion in construing either a Request or a Definition or Instruction relevant to a Request, set forth the matter deemed ambiguous, select a reasonable interpretation that You believe resolves the ambiguity, respond to the Request using that interpretation, and explain with particularity the construction or interpretation selected by You in responding to the Request.

12.     Whether or not You object, You must preserve all Documents and Communications relevant to the above-captioned matter, including all Documents and Communications responsive to these Requests.  Produce each responsive Document in its entirety including with all attachments or other matters affixed thereto.  Documents attached to each other should not be separated.

13.     Any alteration of a responsive Document, including any marginal notes, handwritten notes, underlining, date stamps, received stamps, endorsed or filed stamps, drafts, revisions, modifications, and other versions of a document, is a responsive Document in its own right and must be produced.

14.     In instances where two or more exact duplicates of any Document exist, the most legible copy shall be produced.

15.     The scope of Your search for Electronically Stored Information that is responsive

to any Document request shall include all forms of electronic data collection, preservation, transmission, communication and storage, including but not limited to all data generated and maintained in the ordinary course of business stored by You or any third parties on or in local and network computers and storage devices; hard disks; floppy disks; optical disks; flash memory devices; and magnetic tape, whether fixed, portable, or removable; and all associated metadata that is maintained or saved.

16.   You shall produce all Electronically Stored Information in accordance with the following specifications:

> (a)   Produce Documents as they are kept in the ordinary course of business. Documents shall be produced in such fashion as to identify the location of the Document and, where applicable, the natural person or custodian in whose possession it was found.

(b)     Document families should not be separated and shall be produced consecutively, noting family relationships in the appropriate metadata fields.

(c)     Reasonable efforts should be made to process all Documents and Communications using Universal Time Coordinate ("UTC").  To the extent UTC cannot be used for processing, the utilized time zone shall be disclosed prior to production.

(d)     To the extent You produce one form of a Communication or Document, it need not be produced in another form; however, all rights are reserved to request native files for any document that is unreadable or has limited accessibility in the Group IV TIF format (e.g., color documents or databases).

(e)     Redactions should not be applied except for privilege or where required for personal identifying information.

(f)     In the event of deduplication, information identifying all custodians who had copies of that Document should appear in an "All Custodians" field, or similar field.

(g)     Microsoft Excel files or other spreadsheet file types, Microsoft PowerPoint presentations, and audio and video media files shall be produced in their native formats with links referenced in the "NativePath" field as described below.  Natively produced documents will be accompanied by a TIFF image slip sheet indicating that the document was produced natively.

(h)     Native files shall be named per the ProdBeg value for each document and delivered in a folder named Natives.

13

(i)     To the extent that a Document contains hidden content, such as comments, tracked changes, or speaker notes, the Document shall be imaged showing that hidden content or the Document shall be produced in Native Format, independent of how that Document was last saved.

(j)     To the extent any specialized software is required to allow a Communication or Document to be read, interpreted, or translated into usable form, such software shall also be produced or such Documents shall be converted into reasonably usable forms for production.

(k)     Non-electronic Documents shall be scanned into a static-image format with searchable text as specified herein.

(l)     Each image should have a unique filename, which corresponds to the Bates number of that page.  The filename should not contain any blank spaces and should be zero-padded (e.g., ABC-00000001).

(m)     Documents should be produced as single-page, black and white, TIFFs imaged at 300 dpi quality or better.  The Document's original orientation should be maintained (e.g., portrait-to-portrait and landscape-to-landscape). Bates numbers, confidentiality designations, and redactions, as applicable, should be burned into the image.  TIFF image files should be provided in an "Images" folder.

(n)     Documents should be provided with an Opticon Cross-Reference File and Concordance data load file using standard Concordance delimiters, e.g., ASCII 020 (for comma), 254 (þ for quote), and 174 (® for newline).  A

standard Concordance .DAT load file shall be provided containing the following metadata fields (as applicable):

| Field | Description |
|---|---|
| Bates Number Begin | Beginning page Bates number |
| Bates Number End | Ending page Bates number |
| Attachment Begin | Beginning page of attachment range.  Documents that are part of Document families, *i.e.*, containing parents and attachments should receive a value. |
| Attachment End | Ending page of attachment range.  Documents that are part of Document families, *i.e.*, containing parents or attachments, should receive a value. |
| All Custodians | All Custodians, including for versions of the Document that were de-duplicated |
| Custodian | Individual Custodian isolated from within the potential multiple Custodians captured in the AllCustodian field. |
| All Paths | All paths/locations that show where a file and its duplicates existed. |
| Document Type | The type of Document (hardcopy) or electronic file (e.g., Word, PDF, etc.) typically indicated by the file's extension. |
| Record Type | The field identifying if a Document is an email, attachment, or Edoc. |
| File Name | File name of the original source ESI as stored by the Custodian. |
| File Extension | Characters of the file name indicating the relevant portion used to open the file (file extension). |
| Page Count | For Documents produced in TIFF form, number of pages in the Document.  For Documents produced in native, page count will be 1 (for placeholder). |
| Email Subject | Subject of email |
| Author | Author field extracted from the metadata of a non-Email Document. |
| From | Email author |
| To | Email recipients |
| CC | Email copyees |
| BCC | Email blind copyees |
| Title | Title field extracted from the metadata of a non-Email Document. |
| Date Sent | Date sent (mm/dd/yyyy format). |
| Time Sent | Time sent (hh:mm:ss format). |
| Date Created | The Date Created reflects the date when the file was created in that particular location on the computer or on the other storage device location (mm/dd/yyyy format). |
| Time Created | Time Document was created (hh:mm:ss format). |

15

| Field | Description |
|-------|-------------|
| DateLastModified | Last modification date (mm/dd/yyyy hh:mm:ss format). |
| TimeLastModified | Last modification time (hh:mm:ss format). |
| Date Received | Received Date: The date and time, if any, the Document was received, to the extent such metadata exists and can be extracted without creation of new metadata (mm/dd/yyyy format). |
| Time Received | The date and time, if any, the Document was received, to the extent such metadata exists and can be extracted without creation of new metadata (hh:mm:ss format). |
| Last Edited By | The name of the last person to edit the Document from extracted metadata |
| Meeting Start | Start date and time, if any, of a calendar entry, to the extent such metadata exists and can be extracted without creation of new metadata. |
| Meeting End | End date and time, if any, of calendar entry, to the extent such metadata exists and can be extracted without creation of new metadata. |
| Hash Value (MD5 or SHA-1) (once a Party decides to use either Md5 or SHA-1 for this field, they should continuously use that form of hash for the duration of the matter) | Unique electronic signature of email or electronic file |
| Email Thread Family ID (if email threading is used by Producing Party) | Unique identifier from email threading algorithm to denote emails from a single thread and all attachments |
| Internet Message ID | Unique identifier for a digital email message |
| Source | The source from which the Document was collected (e.g., computer, email, mobile phone, database name), to the extent such metadata exists and can be extracted without creation of new metadata. |
| Production Volume | Production volume name |
| Confidentiality | Confidentiality designation pursuant to the Confidentiality Stipulation. "Confidential" or "Highly Confidential – Attorneys' Eyes Only," if a Document has been so designated under the Confidentiality Stipulation; otherwise, blank. |
| Redacted | Descriptor for Documents that have been redacted ("Yes" or "No" format). |
| Text Path | Path of text file |
| Native Path | Path of native file |

(o)     Document text shall be provided in a multipage .TXT file for each document,

using extracted text for electronic data and OCR for scanned, non-electronic

16

Documents. Each .TXT file shall be named per the ProdBeg value for each Document and delivered in a folder named Text.

(p)     In the event a Communication or Document is encrypted, password-protected, or otherwise protected from third-party access, You shall, to the fullest extent reasonably possible, decrypt or unlock such Communication or Document.

17.     Unless otherwise stated, the Documents requested are those referring to, in effect during, or created from October 1, 2019 and continuing through January 23, 2023.

18.     Plaintiffs reserve the right to serve supplemental or additional requests for the production of documents.

### REQUESTS FOR PRODUCTION OF DOCUMENTS

1.     Documents sufficient to show any Serta Simmons Bedding debt You currently hold or have previously held, other than Serta Simmons Bedding's First Lien Debt, including any PTL Debt.

2.     Documents sufficient to show Your purchases of Serta Simmons Bedding's First Lien Debt, including but not limited to the date(s) of Your purchases, the purchase price, and from whom You purchased the First Lien Debt.

3.     Documents sufficient to show Your sales of Serta Simmons Bedding's First Lien Debt, including but not limited to the date(s) of Your sales, the sale price, and to whom You sold the First Lien Debt.

4.     Documents sufficient to show any transactions You participated in that increased, decreased, or otherwise impacted Your economic exposure to Serta Simmons Bedding's First Lien Debt as well as Your rationale for each such transaction, including but

not limited to Documents and Communications that reveal the date(s) of those transactions, the price at which the transactions were consummated, the counter-party to the transactions, and your analysis or basis for engaging in each such transaction.

5.     All Documents and Communications relating to Your purchase or sale of Serta Simmons Bedding's First Lien Debt, including but not limited to any efforts by You to purchase or sell Serta Simmons Bedding's First Lien Debt, any offers to or by You to purchase or sell Serta Simmons Bedding's First Lien Debt, and any negotiations surrounding Your purchases or sales of Serta Simmons Bedding's First Lien Debt.

6.     All Documents and Communications relating to Your investment strategy or strategies with respect to the Serta Simmons Bedding First Lien Debt and any PTL Debt.

7.     All Documents and Communications relating to any proposal or transaction to restructure, sell or repurchase, or refinance any of Serta Simmons Bedding's debt or extend any new financing to Serta Simmons Bedding, including but not limited to the Transaction, the North Star Lenders' Offer or any other proposals from Apollo, Angelo Gordon, Gamut, and/or North Star, and any decision by You to participate or not participate in any proposal or transaction to restructure, sell or repurchase, or refinance any of Serta Simmons Bedding's debt or extend any new financing to Serta Simmons Bedding.

8.     All Documents and Communications relating to Your analysis or interpretation of the Non- PTL Term Loan Agreement, including but not limited to how the terms of the North Star Lenders' Offer or the Transaction would or could be effectuated under the Non-PTL Term Loan Agreement.

9.     All Documents and Communications concerning any efforts by You to participate in the Transaction.

10.     All Documents and Communications concerning any efforts by You to purchase PTL Debt after the Transaction closed.

11.     All Documents and Communications concerning Your analysis of the Transaction.

12.     Without regard to time period, documents sufficient to show the identity and terms of any transaction in which You participated, including without limitation, the April 2022 Envision Transaction and October 2022 Mitel Transaction, that resulted in existing debt being (a) exchanged for new debt and/or (b) repurchased by the borrower of such debt with the consideration being new debt, in each case, with such new debt being contractually or structurally senior to such borrower's existing debt.

13.     Without regard to time period, documents sufficient to show the identity and terms of any offers You have made or received to participate as a lender in a transaction, including without limitation, the April 2022 Envision Transaction and October 2022 Mitel Transaction,  that would result in existing debt being (a) exchanged for new debt and/or (b) repurchased by the borrower of such debt with the consideration being new debt, in each case, with such new debt being contractually or structurally senior to such borrower's existing debt.

14.     Without regard to time period, documents sufficient to show the identity and terms of any transaction, including without limitation, the April 2022 Envision Transaction and October 2022 Mitel Transaction, in which You allowed a borrower to repurchase debt You held, as a result of direct negotiations with the relevant borrower.

15.     Without regard to time period, documents sufficient to show the identity and terms of any offers You have made or received to participate as a lender in a transaction that would allow a borrower to repurchase debt You held.

16.     All Documents and Communications between You and any holders of Serta Simmons' First Lien Debt, including Defendants, concerning the terms of the Non-PTL Term Loan Agreement referenced in your counterclaims, the Amended Non-PTL Term Loan Agreement, or the Transaction.

17.     All Documents and Communications between You and any holders of Serta Simmons' First Lien Debt, including Defendants, concerning the First Lien Debt, the PTL Debt, and/or any exchanges or repurchases of Serta Simmons Bedding debt.

18.     Without regard to the time period, Documents sufficient to show the identity, structure and terms of any transactions in which You have participated that resulted in certain lenders in a class of debt receiving differential treatment, consideration, benefits, or terms than other lenders in that same class of debt, including without limitation, the April 2022 Envision Transaction and October 2022 Mitel Transaction.

19.     Without regard to the time period, for the transactions identified in the Documents produced in response to request number 18 above, Documents sufficient to identify the participating and non-participating lenders in those transactions.

20.     All Communications with the trade or any press Concerning the Action, the Prior Actions, or the Transaction.

21.     Without regard to the time period, all Documents and Communications supporting, undermining, or concerning Your claim for damages in the Action or the Prior Actions.

22.     Without regard to the time period, and to the extent not covered by the other document requests, all Documents and Communications that support or are inconsistent with the allegations set forth in your implied covenant of good faith

and fair dealing counterclaims.

Dated: April 10, 2023

*/s/ Luna N. Barrington*

WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan (24125891)
Stephanie N. Morrison (24126930)
700 Louisiana Street, Suite 1700
Houston, TX 77002
Tel:  (713) 546-5040
Fax: (713) 224-9511
Email:  Gabriel.Morgan@weil.com
             Stephanie.Morrison@weil.com

WEIL, GOTSHAL & MANGES LLP
David J. Lender (admitted *pro hac vice*)
Ray C. Schrock (admitted *pro hac vice*)
Luna Barrington (admitted *pro hac vice*)
Alexander W. Welch (admitted *pro hac vice*)
Richard Gage (admitted *pro hac vice*)
Taylor B. Dougherty (admitted *pro hac vice*)
Joseph R. Rausch (admitted *pro hac vice*)
Michael P. Goodyear (admitted *pro hac vice*)
Nicholas J. Reade (admitted *pro hac vice*)
767 Fifth Avenue
New York, NY 10153
Tel:     (212) 310-8000
Fax:    (212) 310-8007
Email: david.lender@weil.com
             ray.schrock@weil.com
             luna.barrington@weil.com
             alexander.welch@weil.com
             richard.gage@weil.com
             taylor.dougherty@weil.com
             joseph.rausch@weil.com
             michael.goodyear@weil.com
             nick.reade@weil.com

*Counsel for Defendant Serta Simmons Bedding,
LLC*

Bruce J. Ruzinsky (TX Bar No. 17469425)
Victoria N. Argeroplos (TX Bar No. 24105799)
Gabriela M. Barake (TX Bar No. 24099794)
JACKSON WALKER LLP
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:     (713) 752-4200
Facsimile:      (713) 752-4221
Email: bruzinsky@jw.com
            vargeroplos@jw.com
            gbarake@jw.com

GIBSON, DUNN & CRUTCHER LLP
Gregg Costa (24028160)
811 Main Street, Suite 3000
Houston, TX 77002
Telephone: (346) 718-6600
Facsimile: (346) 718-6620
gcosta@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (admitted *pro hac vice*)
Amanda M. Aycock (admitted *pro hac vice*)
C. Lee Wilson (admitted *pro hac vice*)
200 Park Avenue
New York, NY 10166
Tel:     (212) 351-4000
Fax:    (212) 351-4035
Email:           osnyder@gibsondunn.com
             aaycock@gibsondunn.com
             clwilson@gibsondunn.com

*Counsel for Invesco Senior Secured Management,
Inc., Credit Suisse Asset Management, LLC, Eaton
Vance Management, Boston Research and
Management, and Barings LLC*

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing Plaintiffs' Second Set of Requests for Production was served upon the following counsel for Defendants in this matter by email this April 10, 2023.

Lawrence S. Robbins
Eric Seiler
Anne E. Beaumont
Jamuna D. Kelley
Blair R. Albom
Friedman Kaplan Seiler
& Adelman LLP
7 Times Square
New York, NY 10036-6516
212-833-1100 (Phone)
lrobbins@fklaw.com
eseiler@fklaw.com
abeaumont@fklaw.com
jkelley@fklaw.com
balbom@fklaw.com

Kenneth S. Ziman
Brian S. Hermann
Lewis R. Clayton
Andrew J. Ehrlich
Michael J. Colarossi
Paul, Weiss, Rifkind,
Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
kziman@paulweiss.com
bhermann@paulweiss.com
lclayton@paulweiss.com
aehrlich@paulweiss.com
mcolarossi@paulweiss.com

and

Michael S. Shuster, Esq.
Vincent Levy, Esq.
Neil R. Lieberman, Esq.
Brian T. Goldman, Esq.
Holwell Shuster & Goldberg LLP
425 Lexington Ave
New York, NY 10017
Telephone: (646) 837-5151
mshuster@hsgllp.com
vlevy@hsgllp.com
nlieberman@hsgllp.com
bgoldman@hsgllp.com

John J. Sparacino
S. Margie Venus
McKool Smith P.C.
600 Travis Street
Suite 7000
Houston, TX 77002
Tel: (713) 485-7306
jsparacino@mckoolsmith.com
mvenus@mckoolsmith.com

*Attorneys for LCM XXII LTD.,*
*LCM XXIII LTD., LCM XXIV LTD.,*
*LCM XXV LTD., LCM 26 LTD., LCM 27 LTD.,*
*and LCM 28 LTD*

23

John F. Higgins
M. Shane Johnson
Megan N. Young-John
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, TX 77002
(713) 226-6000
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com

*Attorneys for First Lien Lender*
*Defendants*

                                                    */s/ Richard D. Gage*
                                                    Richard D. Gage