# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>SERTA SIMMONS BEDDING, LLC, et al.,<br><br>Debtors, | Chapter 11<br><br>Case No. 23-90020 (DRJ)<br>(Jointly Administered) |
| SERTA SIMMONS BEDDING, LLC, et al.,<br><br>Plaintiffs and Counterclaim Defendants,<br><br>v.<br><br>AG CENTRE STREET PARTNERSHIP L.P., et al.,<br><br>Defendants, Counterclaim Plaintiffs and Third-Party Plaintiffs,<br><br>v.<br><br>AGF FLOATING RATE INCOME FUND, et al.,<br><br>Third-Party Defendants. | Adversary Proc. No. 23-09001 (DRJ) |

**EXCLUDED LENDERS' OPPOSITION TO PLAINTIFFS'
EMERGENCY MOTION TO COMPEL PRODUCTION FROM
DEFENDANTS**

Defendants and counterclaim/third-party plaintiffs AG Centre Street Partnership L.P., AG Credit Solutions Non-ECI Master Fund, L.P., AG Super Fund Master, L.P., AG SF Master (L), L.P., Silver Oak Capital, L.L.C., Ascribe III Investments, LLC, Cent CLO 21 Limited, Columbia Cent CLO 27 Limited, Columbia Floating Rate Fund, a series of Columbia Funds Series Trust II, Columbia Strategic Income Fund, a series of Columbia Funds Series Trust I, Contrarian Capital Fund I, L.P., Contrarian Distressed Debt Fund, L.P., Contrarian Centre Street Partnership, L.P., Gamut Capital SSB, LLC, North Star Debt Holdings, L.P., Shackleton 2013-III CLO, Ltd., Shackleton 2013-IV-R CLO, Ltd., Shackleton 2014-V-R CLO, Ltd., Shackleton 2015-VII-R CLO, Ltd., Shackleton 2017-XI CLO, Ltd., Z Capital Credit Partners CLO 2018-1 Ltd., and Z Capital Credit Partners CLO 2019-1 Ltd. (collectively, the "Excluded Lenders") respectfully submit this memorandum of law in opposition to the emergency motion of plaintiffs Serta Simmons Bedding ("Serta"), and Invesco Senior Secured Management, Inc., Credit Suisse Asset Management, LLC, Boston Management and Research, and Eaton Vance Management (collectively, the "Favored Lenders," and together with Serta, "Plaintiffs") seeking an order compelling the Excluded Lenders to produce certain documents. (ECF No. 197.)

## INTRODUCTION

Trial in this matter, which is scheduled to start a mere eleven days from now, will cover two claims, one of which is whether Serta and the Favored Lenders violated the implied covenant of good faith and fair dealing when they engaged in a 2020 restructuring transaction (the "Unlawful Exchange Transaction") that eviscerated the Excluded Lenders' sacred right to *pro rata* distribution of payments and collateral under the plain language of Section 2.18(b) of the 2016 Credit Agreement. By elevating the Favored Lenders' First Lien Loans and subordinating the Excluded Lenders through an exclusionary process, the Unlawful Exchange Transaction denied the Excluded Lenders the fundamental benefit of their bargain.

Plaintiffs' motion to compel makes clear that their defense strategy will be to deflect the Court's attention from their own behavior. The question to be tried here is whether the Excluded Lenders were deprived of the benefit of their bargain when one subset of Serta's First Lien Lenders, the Plaintiffs here, granted themselves greater priority on the same collateral that secures the Excluded Lenders' loans, leaving the Excluded Lenders as First Lien Lenders in name, but not in substance. Instead, the Plaintiffs would have this Court engage in a series of disputes about whether one unrelated historical transaction or another is the same or different than the transaction at issue here. In service of this effort, notwithstanding their desire for a trial with extreme expedition, Plaintiffs have pressed a series of breathtakingly overbroad and imprecise discovery requests, asking for records of *every single* transaction or potential transaction where any Excluded Lender has "participated (or offered to participate) and where participating lenders extracted value (or would have extracted value) from a borrower that was not (or would not have been) shared with non-participating lenders—or had other structural features that Defendants are alleging amount to a breach of the implied covenant here." (ECF No. 197 at 4.) Plaintiffs cannot have it both ways—both an expedited trial following an abbreviated discovery process just a few weeks long, as well as broad discovery of the kind they seek to compel here.

The discovery requests are extremely overbroad and of dubious relevance even for a case proceeding at a normal pace, let alone one proceeding from discovery to trial in less than a month. For the Excluded Lenders, all of whom are sophisticated and repeat players in the credit markets that enter into countless complex transactions each year, merely *identifying* the transactions that they have so much as considered over many years, and then laboriously reviewing each of them to make judgments as to which might satisfy meet Plaintiffs' vague

criteria, is a nearly impossible task that would require months under the best of circumstances, not the mere three days that Plaintiffs have requested the Court order.

The burden of the task has been made even more difficult by the Plaintiffs' tactics in filing this motion. On April 20, 2023, before even serving responses and objections, in the interest of transparency and cooperation, counsel for the Excluded Lenders held a telephonic meet-and-confer with counsel for Plaintiffs to preview their positions on Plaintiffs' discovery requests. During this call, counsel for the Excluded Lenders explained that they viewed Plaintiffs' requests for documents and information about these unrelated transactions as overbroad, irrelevant, and unduly burdensome. The instant motion was not filed, however, until May 1—a lifetime, in this case—and just a week before the first deposition of a representative of the Excluded Lenders. The Plaintiffs' delay in bringing this matter to the Court's attention further militates in favor of denying the requested relief.

The Excluded Lenders reject the appropriateness of this discovery at all, as Plaintiffs' proposed path will result in this case departing into a series of detours of "mini-trials" as to whether another particular contract or particular transaction is an appropriate comparator for the 2016 Credit Agreement and the Unlawful Exchange Transaction. Nevertheless, to resolve this discovery dispute, the Excluded Lenders offered a reasonable compromise, which is to provide deposition testimony to the Plaintiffs concerning a reasonable number of transactions *specifically identified* by the Plaintiffs. The Favored Lenders consist of a long list of large financial institutions that participate regularly in the credit markets, and they and Serta are represented by some of the most sophisticated financial and legal advisors in the world. As a group, they are familiar with recent liability management transactions that have been entered into in the market and can easily identify specific transactions they believe are similar to the

Unlawful Exchange Transaction. This proposal allows Plaintiffs to develop evidence about particular transactions that they view as being especially relevant,[1] while avoiding the impossible task being asked of the Excluded Lenders. Instead, the Plaintiffs have refused the Excluded Lender's proposal and refused to engage in any discussion about which transactions they believe might be relevant.

For all of these reasons, and those set forth below, the Court should deny Plaintiffs' motion.

## ARGUMENT

**The documents sought are not relevant.** Plaintiffs are wrong when they say that these documents "go[] directly to the merits of this dispute." (ECF No. 197 at 8.) Under New York law, which applies here, "all contracts imply a covenant of good faith and fair dealing in the course of performance," *511 W. 232nd Owners Corp.* v. *Jennifer Realty Co.*, 98 N.Y. 2d 144, 153 (2002), which constitutes a "pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruit of the contract, even if the terms of the contract do not explicitly prohibit such conduct." *E. Ramapo Cent. Sch. Dist.* v. *N.Y. Sch. Ins. Reciprocal*, 199 A.D.3d 881, 884 (N.Y. App. Div. (2d Dep't) 2021). "Encompassed within the implied obligation of each promisor to exercise good faith are 'any promises which a *reasonable person in the position of the promisee* would be justified in understanding were included.'" *Dalton* v. *Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995) (quoting *Rowe* v. *Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 69 (1978)) (emphasis added). In

---

[1] The Favored Lenders' summary judgment briefing suggests that they view the Mitel and Envision transactions as being relevant to the issues in this case, which proposition Defendants dispute. (*See* Favored Lenders' Mot. for Summ. J., ECF No. 73 at 21–22; Favored Lenders' Reply in Support of Mot. for Summ. J., ECF No. 114, at 18–19.)

4

other words, the test is objective: what would a "reasonable person" have understood the expected "fruits" of the specific contract at issue to have been at the time the agreement was made.

In the 2016 Credit Agreement, the Excluded Lenders expressly bargained for "First Lien" loans with rights to collateral that were contractually superior to all others in the event of a default, and the right to share ratably in all payments of principal or interest on those loans. (Answer, ECF No. 68 ¶ 96.) At issue in this case, then, is what a reasonable person entering into a contract with *those particular terms in 2016* would have reasonably expected the contract to have allowed, and whether the Unlawful Exchange Transaction violated those reasonable expectations. Plaintiffs' requested discovery into *other* credit transactions regardless of date, and regardless of whether the underlying loan documents at issue contain similar provisions, would not shed any light on these relevant questions.

For the same reason, Plaintiffs' argument that these documents are needed to rebut the expert opinion of the Excluded Lenders' expert, Sarah Ward, are misguided. (*See* ECF No. 197 at 9.) Ms. Ward will testify about the history and evolution of the particular provisions in the 2016 Credit Agreement at issue here, and how that background would have informed a reasonable person's view of and expectations regarding those provisions. It will not delve into untold numbers of other transactions involving different contracts with different terms, as Plaintiffs seek to do here.

**Plaintiffs' requests are unduly burdensome and cannot be addressed within the current case schedule.** Plaintiffs' requests are far from "narrowly-tailored and reasonable." (ECF No. 197 at 9.) In fact, they are extremely broad, contain subparts, and are completely unbounded by time period. Plaintiffs purport to "limit any burden" by framing their requests in

5

terms of "documents sufficient to show," omitting the remaining language and obscuring the true burden of the requests as well as their scope.  (*Id.* at 5.)   Moreover, the requests are imprecise and would require significant analysis and judgment to even begin to determine which transactions could fall within the scope of the requests.

Plaintiffs insist that the limiter "documents sufficient to show" somehow renders their requests reasonable, but the words in each request immediately following that phrase show that Plaintiffs' demands are actually open-ended and impossible to respond to within the requested timeframe.  Each request demands "documents sufficient to show the identity and terms of *any* transactions" or "*any* offers," "*without regard to time period*."[2]  (ECF No. 197 at 6–7.)  Plaintiffs' motion should be denied on that basis alone.  *See, e.g.*, *Camara* v. *Clayton Transp., Inc.*, 2019 WL 13190650, at *5 (S.D. Tex. Dec. 2, 2019) (denying motion to compel where request seeking irrelevant company policies, procedures, and programs was "not limited to a particular time period" and was therefore "overly broad").

Certain of Plaintiffs' requests are also highly complex in addition to being drafted far too broadly.  They would require review of materials well beyond loan transaction documents (which themselves could number in the thousands), such as any number of contemporaneous communications around the time of a given "offer" that might bear on its economics or terms.[3]  Simply put, "documents sufficient to show" is a meaningless constraint where what is being

---

[2] Request 19 simply refers back to Request 18, again "without regard to the time period," requesting "documents sufficient to identify the participating and non-participating members in those transactions" in "any transactions" identified in response to Request 19.  (ECF No. 197 at 7.)

[3] For example, Request 13 seeks "any offers You have made or received to participate as a lender in a transaction . . . without limitation," which could entail copious review of electronic and other communications in addition to loan documents, whether or not purportedly "limited" in terms of "documents sufficient to show."  (ECF No. 197 at 7.)

6

requested in the first place requires sweeping transaction-by-transaction and offer-by-offer review to identify whether any transactions are potentially responsive.

And while Plaintiffs' requests would be extremely burdensome for any answering party, the Excluded Lenders face particularly steep burdens in even attempting to identify all transactions that have been entered into, let alone in conducting the detailed analysis to determine if they meet the imprecise criteria. The Excluded Lenders include some of the largest alternative asset management firms in the world, who have participated in countless debt transactions over decades and who manage billions of dollars in assets.[4] Even locating a universe of documents that might be responsive to each request would require speaking to numerous employee representatives across numerous offices and jurisdictions of each of the Excluded Lenders, and documents would need to be collected from a number of different sources and systems, not all of which are readily available (and particularly not on an expedited basis). For example, as explicitly stated in Alcentra's Responses and Objections to Plaintiffs' Second Requests for Production, Alcentra and its U.S. affiliate Benefit Street Partners' document storage systems are in the process of being merged and cannot be readily accessed. (Responses and Objections of Alcentra to Plaintiffs' Second Set of RFPs, ECF No. 197-4.) Specific individuals from Alcentra and Z Capital with knowledge regarding the requested topics are also former

---

[4] Apollo Global Management, for example, had $547.6 billion in assets under management ("AUM") as of year-end 2022, with a combined $155.2 billion across Corporate and Structured Credit. (10-K: Annual report pursuant to Section 13 and 15(d), APOLLO GLOBAL MANAGEMENT, INC., https://ir.apollo.com/sec-filings/content/0001858681-23-000007/apo-20221231.htm (last visited May 4, 2023.)) Angelo Gordon currently manages approximately $53 billion in assets (About, ANGELO GORDON (2023), https://www.angelogordon.com/about/ (last visited May 4, 2023)), and as of last month managed over $37 billion in credit assets alone. (Angelo Gordon expands credit solutions platform, raises $1.3 billion for its second public market dislocation fund, BUSINESS WIRE (2023), https://www.businesswire.com/news/home/20230306005265/en/Angelo-Gordon-Expands-Credit-Solutions-Platform-Raises-1.3-Billion-for-Its-Second-Public-Market-Dislocation-Fund (last visited May 4, 2023.))

employees of those firms—which is the case for many of the Excluded Lenders—further exacerbating the Lenders' burden. (*Id.*; Responses and Objections of Z Capital to Plaintiffs' Second Set of RFPs, ECF No. 197-10.) In any event, before any of these confidential and competitively sensitive materials could even be produced in response to Plaintiffs' requests, thousands of loan documents, communications, and other materials would need to be reviewed in order to determine the potential responsiveness of "any transaction" or "any offer," from the time of each of the Excluded Lenders' inception to the present.

Further, many of the documents sought by the Plaintiffs relating to other transactions are likely to be subject to non-disclosure agreements. The Excluded Lenders would have to review all such agreements and potentially provide notice to counterparties to those transactions who might seek to object to such disclosures.

Plaintiffs' requests present a massive undertaking under any timeline, but they are outright impossible to accomplish at any point under the current case schedule with trial scheduled for May 15, 2023, and much less by May 6, 2023, as Plaintiffs request. Over the Excluded Lenders' strenuous objection, Plaintiffs moved to impose the current schedule on April 17, 2023 (ECF No. 164), which the Court granted at a hearing held on April 24, 2023. (ECF No. 182.) Recognizing the burden associated with discovery in this case, the Excluded Lenders sought a trial date of July 15, 2023, emphasizing that Plaintiffs' Second Set of Requests for Production and other discovery requests were unreasonable and particularly unrealistic to meet on any rushed basis. (*See* ECF No. 171.) Plaintiffs now seek to hold the Excluded Lenders to a demanding trial schedule while insisting that productions they know could never be made nevertheless be accomplished in just a few short days.

**The Excluded Lenders have made a reasonable counterproposal.** Contrary to Plaintiffs' narrative, the Excluded Lenders have consistently made clear that while they do not regard other transactions as relevant, they would be willing to designate Rule 30(b)(6) witnesses to testify as to a reasonably small number of specific transactions that Plaintiffs wish to explore, whether "the April 2022 Envision Transaction and October 2022 Mitel Transaction" that Plaintiffs repeatedly cite or otherwise. The Excluded Lenders have not "flatly refused" Plaintiffs' requests; in fact, they have consistently conveyed their position on multiple meet-and-confers. That is a proportionate approach given the timing of the trial and other demands of the case.

**Plaintiffs do not need the requested documents to depose Defendants and have yet to complete their own document productions.** Plaintiffs argue that their requests are particularly urgent because Rule 30(b)(6) depositions of the Excluded Lenders are scheduled to begin on May 8, 2023. (ECF No. 197 at 6.) Infeasibility of the requested collection, review, and production aside, the Excluded Lenders are already in the process of carefully reviewing and producing documents in response to other RFPs, and Plaintiffs have not even completed their own productions. Meanwhile, the Excluded Lenders have labored diligently to produce documents under Plaintiffs' extremely condensed schedule and expect to finish producing documents for all clients (with the exception of Alcentra whose documents are exceptionally difficult to access but will nevertheless still be produced as soon as possible), by this Friday, May 5, 2023. Simply put, Plaintiffs cannot have it both ways: if they are arguing that this extraordinarily burdensome discovery is critical to trial, then the trial schedule should be extended and all scheduled depositions should be delayed until after document productions have been completed. Plaintiffs suggest that they are "prepared to work collaboratively," (ECF NO.

197 at 10), but offer no workable solution to the parties' impasse, whereas the Excluded Lenders have repeatedly offered to make a witness available to testify as to any agreed set of specific transactions.

**<u>The Excluded Lenders' Rule 30(b)(6) deposition notices do not weigh in favor of granting this motion.</u>** As a final note, the Excluded Lenders' Rule 30(b)(6) deposition notices issued to the Favored Lenders, which seek information on certain other transactions engaged in by the Favored Lenders, do not mean that the Excluded Lenders "have tried to make such information germane to the dispute." (ECF Dkt. No. 197 at 9.) These Rule 30(b)(6) notices were issued *after* the Excluded Lenders received Plaintiffs' discovery requests.[5] And as the Excluded Lenders made clear to Plaintiffs in subsequent meet-and-confer sessions, this topic in each notice was included solely to prevent the Excluded Lenders from being at an information disadvantage in the event that the parties could not reach agreement on the issue. The Excluded Lenders would happily drop these topics from their Rule 30(b)(6) deposition notices if Plaintiffs would drop their discovery requests, and have told Plaintiffs as much. But if the Court rules this type of information discoverable and relevant, the Excluded Lenders do not waive their rights to pursue it.

Furthermore, Plaintiffs' attempted comparison is inapt, as the Excluded Lenders merely asked for deposition testimony on this issue (and again, have only sought such testimony because Plaintiffs raised the issue). The Excluded Lenders have not requested that the Favored

---

[5] Plaintiffs served their requests for production, interrogatories, and requests for admission on the Excluded Lenders on April 10, 2023. The Excluded Lenders served their own requests for production on Plaintiffs the same day, and did *not* request documents regarding other transactions. Plaintiffs then served Rule 30(b)(6) deposition notices on the Excluded Lenders on April 11, 2023, again seeking testimony regarding other unrelated transactions. Only after receiving these wildly overbroad requests did the Excluded Lenders include testimony about certain other transactions as a topic in the Rule 30(b)(6) deposition notices they served on the Favored Lenders on April 14, 2023.

Lenders produce documents, nor respond to interrogatories or requests for admission on this topic. These notices thus align the burdens on the parties with the Excluded Lenders' proposal to Plaintiffs to provide Rule 30(b)(6) witnesses to testify about particular other transactions identified by Plaintiffs.

## CONCLUSION

For the foregoing reasons, the Excluded Lenders respectfully request that the Court deny Plaintiffs' motion. If, however, the Court is inclined to allow some discovery into these issues, the Court should endorse the Excluded Lenders' compromise proposal by limiting the scope of that discovery to Rule 30(b)(6) depositions on transactions specifically identified by Plaintiffs in advance of the depositions.

Dated: New York, New York
May 4, 2023

Respectfully Submitted,

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

*s/ Andrew Ehrlich*
Andrew J. Ehrlich*
Kenneth S. Ziman*
Brian S. Hermann*
Lewis R. Clayton*
Michael J. Colarossi*
Robert J. O'Loughlin*
Sarah J. Prostko*
Jackson Yates*
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
kziman@paulweiss.com
bhermann@paulweiss.com
lclayton@paulweiss.com
aehrlich@paulweiss.com
mcolarossi@paulweiss.com
roloughlin@paulweiss.com

11

sprostko@paulweiss.com
jyates@paulweiss.com

**FRIEDMAN KAPLAN SEILER ADELMAN & ROBBINS LLP**
Lawrence S. Robbins*
Eric Seiler*
Anne E. Beaumont*
Jamuna D. Kelley*
Blair R. Albom*
7 Times Square
New York, NY 11036-6516
(212) 833-1100
lrobbins@fklaw.com
eseiler@fklaw.com
abeaumont@fklaw.com
jkelley@fklaw.com
balbom@fklaw.com

**PORTER HEDGES LLP**
John F. Higgins (TX 09597500)
M. Shane Johnson (TX 24083263)
Megan N. Young-John (TX 24088700)
1000 Main Street, 36th Floor
Houston, TX  77002
(713) 226-6000
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com

*admitted pro hac vice*

*Attorneys for the Excluded Lender Defendants*