IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | CHAPTER 11 |
| SERTA SIMMONS BEDDING, LLC, et al., | Case No. 23-90020 (DRJ) |
| Debtors. | (Jointly Administered) |
| SERTA SIMMONS BEDDING, LLC, INVESCO SENIOR SECURED MANAGEMENT, INC., CREDIT SUISSE ASSET MANAGEMENT, LLC, BOSTON MANAGEMENT AND RESEARCH, EATON VANCE MANAGEMENT, AND BARINGS LLC, | |
| Plaintiffs and Counterclaim Defendant, | Adversary Proc. No. 23-09001 (DRJ) |
| v. | |
| AG CENTRE STREET PARTNERSHIP L.P., AG CREDIT SOLUTIONS NON-ECI MASTER FUND, L.P., AG SF MASTER (L), L.P., AG SUPER FUND MASTER, L.P., SILVER OAK CAPITAL, L.L.C., ASCRIBE III INVESTMENTS, LLC, COLUMBIA CENT CLO 21 LIMITED, COLUMBIA CENT CLO 27 LIMITED, COLUMBIA FLOATING RATE INCOME FUND, A SERIES OF COLUMBIA FUNDS SERIES TRUST II, COLUMBIA STRATEGIC INCOME FUND, A SERIES OF COLUMBIA FUNDS SERIES TRUST I, CONTRARIAN CAPITAL FUND I, L.P., CONTRARIAN CENTRE STREET PARTNERSHIP, L.P., CONTRARIAN DISTRESSED DEBT FUND, L.P., GAMUT CAPITAL SSB, LLC, LCM XXII LTD., LCM XXIII LTD., LCM XXIV LTD., LCM XXV LTD., LCM 26 LTD., LCM 27 LTD., LCM 28 LTD., NORTH STAR DEBT HOLDINGS, L.P., SHACKLETON 2013- III CLO, LTD., SHACKLETON 2013-IV-R CLO, LTD., SHACKLETON 2014-V-R CLO, LTD., SHACKLETON 2015-VII-R CLO, LTD., SHACKLETON 2017-XI CLO, LTD., Z CAPITAL CREDIT PARTNERS CLO 2018-1 LTD., AND Z CAPITAL CREDIT PARTNERS CLO 2019-1 LTD., | |

Defendants, Counterclaim Plaintiffs and
Third-Party Plaintiffs,

v.

AGF FLOATING RATE INCOME FUND,
BRIGHTHOUSE FUNDS TRUST I -
BRIGHTHOUSE/EATON VANCE FLOATING
RATE PORTFOLIO, CALVERT MANAGEMENT
SERIES - CALVERT FLOATING-RATE
ADVANTAGE FUND, EATON VANCE CLO 2013-
1 LTD., EATON VANCE CLO 2014-1R LTD.,
EATON VANCE CLO 2015-1 LTD., EATON
VANCE CLO 2018-1 LTD., EATON VANCE CLO
2019-1 LTD., EATON VANCE LOAN HOLDING
LIMITED, EATON VANCE FLOATING-RATE
INCOME PLUS FUND, EATON VANCE
FLOATING-RATE 2022 TARGET TERM TRUST,
EATON VANCE SENIOR FLOATING-RATE
TRUST, EATON VANCE FLOATING-RATE
INCOME TRUST, EATON VANCE
INTERNATIONAL (CAYMAN ISLANDS)
FLOATING-RATE INCOME PORTFOLIO, EATON
VANCE SENIOR INCOME TRUST, EATON
VANCE SHORT DURATION DIVERSIFIED
INCOME FUND, EATON VANCE
INSTITUTIONAL SENIOR LOAN FUND, EATON
VANCE INSTITUTIONAL SENIOR LOAN PLUS
FUND, EATON VANCE LIMITED DURATION
INCOME FUND, EATON VANCE FLOATING
RATE PORTFOLIO, SENIOR DEBT PORTFOLIO,
EATON VANCE VT FLOATING RATE INCOME
FUND, BENTHAM SYNDICATED LOAN FUND,
DAVINCI REINSURANCE LTD., RENAISSANCE
INVESTMENT HOLDINGS LTD., CALIFORNIA
STATE TEACHERS' RETIREMENT SYSTEM,
DOLLAR SENIOR LOAN FUND, LTD., DOLLAR
SENIOR LOAN MASTER FUND II, LTD.,
BA/CSCREDIT 1 LLC, PK-SSL INVESTMENT
FUND LIMITED PARTNERSHIP, COPPERHILL
LOAN FUND I, LLC, THE EATON
CORPORATION MASTER RETIREMENT TRUST,
ERIE INDEMNITY COMPANY, MADISON
FLINTHOLM SENIOR LOAN FUND I DAC,
PHILLIPS 66 RETIREMENT PLAN TRUST, WIND
RIVER FUND LLC, BLUE SHIELD OF
CALIFORNIA, ERIE INSURANCE EXCHANGE,

THE CITY OF NEW YORK GROUP TRUST,
MARYLAND STATE RETIREMENT AND
PENSION SYSTEM, CREDIT SUISSE FLOATING
RATE TRUST, CREDIT SUISSE FLOATING RATE
HIGH INCOME FUND, CREDIT SUISSE
STRATEGIC INCOME FUND, COMMONWEALTH
OF PENNSYLVANIA TREASURY DEPARTMENT,
STATE OF NEW MEXICO STATE INVESTMENT
COUNCIL, CREDIT SUISSE NOVA (LUX), KP
FIXED INCOME FUND, BENTHAM STRATEGIC
LOAN FUND, TELSTRA SUPERANNUATION
SCHEME, WESPATH FUNDS TRUST, INFLATION
PROTECTION FUND-I SERIES, MADISON PARK
FUNDING X, LTD., MADISON PARK FUNDING
XI, LTD., MADISON PARK FUNDING XII, LTD.,
MADISON PARK FUNDING XIII, LTD.,
MADISON PARK FUNDING XIV, LTD.,
MADISON PARK FUNDING XV, LTD., MADISON
PARK FUNDING XVI, LTD., MADISON PARK
FUNDING XVII, LTD., MADISON PARK
FUNDING XVIII, LTD., MADISON PARK
FUNDING XIX, LTD., MADISON PARK FUNDING
XX, LTD., MADISON PARK FUNDING XXI, LTD.,
MADISON PARK FUNDING XXII, LTD.,
MADISON PARK FUNDING XXIII, LTD.,
MADISON PARK FUNDING XXIV, LTD.,
MADISON PARK FUNDING XXV, LTD.,
MADISON PARK FUNDING XXVI, LTD.,
MADISON PARK FUNDING XXVII, LTD.,
MADISON PARK FUNDING XXVIII, LTD.,
MADISON PARK FUNDING XXIX, LTD.,
MADISON PARK FUNDING XXX, LTD.,
MADISON PARK FUNDING XXXI, LTD.,
MADISON PARK FUNDING XXXII, LTD.,
MADISON PARK FUNDING XXXIV, LTD.,
MADISON PARK FUNDING XXXV, LTD.,
MADISON PARK FUNDING XXXVII, LTD.,
MADISON PARK FUNDING XL, LTD., MADISON
PARK FUNDING XLI, LTD., MADISON PARK
FUNDING XLII, LTD., MADISON PARK
FUNDING XLIII, LTD., MADISON PARK
FUNDING XLIV, LTD., ONE ELEVEN FUNDING I,
LTD., ONE ELEVEN FUNDING II, LTD.,
BARINGS GLOBAL LOAN LIMITED, BARINGS
GLOBAL SPECIAL SITUATIONS CREDIT 3
S.A.R.L., BARINGS GLOBAL HIGH YIELD

CREDIT STRATEGIES LIMITED, BARINGS U.S.
LOAN LIMITED, BARINGS CLO LTD. 2018-III,
BARINGS CLO LTD. 2017-I, BARINGS CLO LTD.
2019-II, BARINGS CLO LTD. 2016-I, BARINGS
CLO LTD. 2015-I, BARINGS CLO LTD. 2016-II,
BARINGS CLO LTD. 2018-I, BARINGS CLO LTD.
2015-II, BARINGS CLO LTD. 2013-I, BARINGS
CLO LTD. 2018-IV, BALOISE SENIOR SECURED
LOAN FUND, BAYVK R2-FONDS SEGMENT
BAYVK R2 BARINGS, CROWN MANAGED
ACCOUNTS SPC - CROWN/BA 2 SP, BABSON
CLO LTD. 2014-I, G.A.S. (CAYMAN) LIMITED,
SERENGETI (LOAN FUND), A SERIES TRUST OF
THE MULTI STRATEGY UMBRELLA FUND
CAYMAN, BARINGS GLOBAL MULTI-CREDIT
STRATEGY 1 LIMITED, BARINGS GLOBAL
MULTI-CREDIT STRATEGY 2 LIMITED,
BARINGS GLOBAL MULTI-CREDIT STRATEGY
3 LIMITED, BARINGS GLOBAL MULTI-CREDIT
STRATEGY 4 LIMITED, BARINGS BDC SENIOR
FUNDING I, LLC, BARINGS GLOBAL FLOATING
RATE FUND, A SERIES OF BARINGS FUND
TRUST, BARINGS SEGREGATED LOANS 3 S.A
R.L, BARINGS BDC, INC., BARINGS GLOBAL
LOAN AND HIGH YIELD BOND LIMITED,
BARINGS GLOBAL CREDIT INCOME
OPPORTUNITIES FUND, ARROWOOD
INDEMNITY COMPANY, ARROWOOD
INDEMNITY AS ADMINISTRATOR OF THE
PENSION PLAN OF ARROWOOD INDEMNITY,
JOCASSEE PARTNERS LLC, FIRST EAGLE
BANK LOAN SELECT MASTER FUND, FIRST
EAGLE SENIOR LOAN FUND (FSLF), KVK CLO
2013-1 LTD., KVK CLO 2016-1 LTD., KVK CLO
2018-1 LTD., RUSSELL ABSOLUTE RETURN
FIXED INCOME FUND, RUSSELL FLOATING
RATE FUND, RUSSELL GLOBAL
UNCONSTRAINED BOND POOL, RUSSELL
MULTI-ASSET CORE PLUS FUND, RUSSELL
UNCONSTRAINED TOTAL RETURN FUND,
STANIFORD STREET CLO LTD., STICHTING
PENSIOENFONDS HOOGOVENS, WIND RIVER
2012-1 CLO LTD., WIND RIVER 2013-1 CLO LTD.,
WIND RIVER 2013-2 CLO LTD., WIND RIVER
2014-1 CLO LTD., WIND RIVER 2014-2 CLO LTD.,
WIND RIVER 2014-3 CLO LTD., WIND RIVER

2014-3K CLO LTD., WIND RIVER 2015-1 CLO
LTD., WIND RIVER 2015-2 CLO LTD., WIND
RIVER 2016-1 CLO LTD., WIND RIVER 2016-2
CLO LTD., WIND RIVER 2017-1 CLO LTD., WIND
RIVER 2017-4 CLO LTD., WIND RIVER 2018-3
CLO LTD., WIND RIVER 2019-3 CLO LTD.,
ANNISA CLO, LTD., BETONY CLO 2, LTD., BOC
PENSION INVESTMENT FUND, CARBONE CLO,
LTD., DIVERSIFIED CREDIT PORTFOLIO LTD.,
INVESCO BL FUND, LTD., INVESCO DYNAMIC
CREDIT OPPORTUNITIES FUND, INVESCO
FLOATING RATE FUND, INVESCO FLOATING
RATE INCOME FUND, INVESCO GEMINI US
LOAN FUND LLC, INVESCO OPPENHEIMER
MASTER LOAN FUND, INVESCO
OPPENHEIMER SENIOR FLOATING RATE
FUND, INVESCO OPPENHEIMER SENIOR
FLOATING RATE PLUS FUND, INVESCO
SENIOR INCOME TRUST, INVESCO SENIOR
LOAN FUND, INVESCO SSL FUND LLC,
INVESCO ZODIAC FUNDS - INVESCO US
SENIOR LOAN ESG FUND, INVESCO ZODIAC
FUNDS - INVESCO US SENIOR LOAN FUND,
KAISER PERMANENTE GROUP TRUST,
KAPITALFORENINGEN INVESTIN PRO, US
LEVERAGED LOANS I, MILOS CLO, LTD.,
RECETTE CLO, LTD., RISERVA CLO, LTD.,
SENTRY INSURANCE COMPANY, UPLAND
CLO, LTD., HARBOURVIEW CLO VII-R, LTD.,
INVESCO OPPENHEIMER FUNDAMENTAL
ALTERNATIVES FUND, OAKTREE
OPPORTUNITIES FUND XB HOLDINGS
(DELAWARE), LP, OAKTREE OPPS X HOLDCO
LTD., OAKTREE OPPORTUNITIES FUND X
HOLDINGS (DELAWARE) LP, DRYDEN XXV
SENIOR LOAN FUND, DRYDEN XXVI SENIOR
LOAN FUND, DRYDEN XXVIII SENIOR LOAN
FUND, DRYDEN 30 SENIOR LOAN FUND,
DRYDEN 33 SENIOR LOAN FUND, DRYDEN 36
SENIOR LOAN FUND, DRYDEN 37 SENIOR
LOAN FUND, DRYDEN 38 SENIOR LOAN FUND,
DRYDEN 40 SENIOR LOAN FUND, DRYDEN 41
SENIOR LOAN FUND, DRYDEN 42 SENIOR
LOAN FUND, DRYDEN 43 SENIOR LOAN FUND,
DRYDEN 45 SENIOR LOAN FUND, DRYDEN 47
SENIOR LOAN FUND, DRYDEN 49 SENIOR

LOAN FUND, DRYDEN 50 SENIOR LOAN FUND,
DRYDEN 54 SENIOR LOAN FUND, DRYDEN 53
CLO, LTD., DRYDEN 55 CLO, LTD., DRYDEN 57
CLO, LTD., DRYDEN 58 CLO, LTD., DRYDEN 60
CLO, LTD., DRYDEN 61 CLO, LTD., DRYDEN 64
CLO, LTD., DRYDEN 65 CLO, LTD., DRYDEN 70
CLO, LTD., DRYDEN 75 CLO, LTD., NEWARK
BSL CLO 1, LTD., NEWARK BSL CLO 2, LTD.,
VENTURE XXV CLO, LIMITED, VENTURE 31
CLO, LIMITED, VENTURE 32 CLO, LIMITED,
VENTURE 33 CLO, LIMITED, VENTURE 35 CLO,
LIMITED, VENTURE XVII CLO LIMITED,
VENTURE XXII CLO, LIMITED, VENTURE XXIX
CLO, LIMITED, VENTURE XXVII CLO, LIMITED,
VENTURE 28A CLO, LIMITED, VENTURE XII
CLO, LIMITED, VENTURE XIII CLO, LIMITED,
VENTURE XIV CLO, LIMITED, VENTURE XIX
CLO, LIMITED, VENTURE XV CLO, LIMITED,
VENTURE XVI CLO, LIMITED, VENTURE XVIII
CLO, LIMITED, VENTURE XX CLO, LIMITED,
VENTURE XXI CLO, LIMITED, VENTURE XXIII
CLO, LIMITED, VENTURE XXIV CLO, LIMITED,
VENTURE XXVIII CLO, LIMITED, VENTURE
XXX CLO, LIMITED, BSG FUND MANAGEMENT
B.V., FIXED INCOME OPPORTUNITIES NERO,
LLC, BLACKROCK LIMITED DURATION
INCOME TRUST, BLACKROCK GLOBAL
INVESTMENT SERIES: INCOME STRATEGIES
PORTFOLIO, BLACKROCK CREDIT
STRATEGIES INCOME FUND OF BLACKROCK
FUNDS V, BLACKROCK SENIOR FLOATING
RATE PORTFOLIO, BLACKROCK FLOATING
RATE INCOME STRATEGIES FUND, INC.,
BLACKROCK MULTI-ASSET INCOME
PORTFOLIO OF BLACKROCK FUNDS II,
BLACKROCK DEBT STRATEGIES FUND, INC.,
BLACKROCK FLOATING RATE INCOME
TRUST, JPMBI RE BLACKROCK BANKLOAN
FUND, BLACKROCK FLOATING RATE INCOME
PORTFOLIO OF BLACKROCK FUNDS V, ABR
REINSURANCE LTD., NC GARNET FUND, LP,
MAGNETITE XC, LIMITED, MAGNETITE XV,
LIMITED, MAGNETITE XIV-R, LIMITED,
MAGNETITE XVI, LIMITED, MAGNETITE VIII,
LIMITED, MAGNETITE XVIII, LIMITED,
MAGNETITE XIX, LIMITED, MAGNETITE XX,

LIMITED, MAGNETITE XVII, LIMITED,
MAGNETITE VII, LIMITED, MAGNETITE XII,
LIMITED, NUVEEN DIVERSIFIED DIVIDEND
AND INCOME FUND, NUVEEN FLOATING RATE
INCOME FUND, NUVEEN FLOATING RATE
INCOME OPPORTUNITY FUND, NUVEEN
SENIOR INCOME FUND, NUVEEN SHORT
DURATION CREDIT OPPORTUNITIES FUND,
NUVEEN SYMPHONY FLOATING RATE
INCOME FUND, PRINCIPAL FUNDS, INC -
DIVERSIFIED REAL ASSET FUND, SYMPHONY
CLO XX LTD., SYMPHONY CLO XVII, LTD.,
SYMPHONY CLO XIX LTD., SYMPHONY CLO
XVII, LTD., SYMPHONY CLO XV, LTD.,
SYMPHONY CLO XIV, LTD., SYMPHONY CLO
XVI, LTD., TCI-SYMPHONY 2017-1 LTD., TCI-
SYMPHONY 2016-1 LTD., SYMPHONY
FLOATING RATE SENIOR LOAN FUND, SCOF-2
LTD., BAYCITY ALTERNATIVE INVESTMENT
FUNDS SICAV-SIF - BAYCITY US SENIOR LOAN
FUND, BAYCITY SENIOR LOAN MASTER FUND
LTD., PENSIONDANMARK
PENSIONFORSIKRINGSAKTIESELSKAB,
MENARD, INC., MUNICIPAL EMPLOYEES
ANNUITY & BENEFIT FUND OF CHICAGO,
PRINCIPAL DIVERSIFIED REAL ASSET CIT,
CALIFORNIA STREET CLO IX LIMITED
PARTNERSHIP, CALIFORNIA STREET CLO XII,
LTD., TAO FUND, LLC, MP CLO III LTD., MP
CLO IV LTD., MP CLO VII LTD., MP CLO VIII
LTD., MARBLE POINT CLO X LTD., MARBLE
POINT CLO XI LTD., MARBLE POINT CLO XII
LTD., MPLF FUNDING LTD., MPSFR FINANCING
1 LTD., MARATHON CLO V LTD., MARATHON
CLO VII LTD., MARATHON CLO VIII LTD.,
MARATHON CLO IX LTD., MARATHON CLO X
LTD., MARATHON CLO XI LTD., BOWERY
FUNDING ULC, WOODBINE FUNDING ULC,
ELEVATION CLO 2013-1, LTD., ELEVATION CLO
2014-2, LTD., ELEVATION CLO 2015-4, LTD.,
ELEVATION CLO 2016-5, LTD., ELEVATION CLO
2017-6, LTD., ELEVATION CLO 2017-7, LTD.,
ELEVATION CLO 2017-8 LTD., ELEVATION CLO
2018-9, LTD., ELEVATION CLO 2018-10, LTD.,
and PEAKS CLO 3, LTD.,

Third-Party Defendants.

## REPRESENTED THIRD-PARTY DEFENDANTS' ANSWER TO THE THIRD-PARTY PLAINTIFFS' CLAIMS[1]

AGF Floating Rate Income Fund, Brighthouse Funds Trust I - Brighthouse/Eaton Vance Floating Rate Portfolio, Calvert Management Series - Calvert Floating-Rate Advantage Fund, Eaton Vance CLO 2013-1 Ltd., Eaton Vance CLO 2014-1R, Ltd., Eaton Vance CLO 2015-1, Ltd., Eaton Vance CLO 2018-1, Ltd., Eaton Vance CLO 2019-1, Ltd., Eaton Vance Senior Floating-Rate Trust, Eaton Vance Floating-Rate Income Trust, Eaton Vance International (Cayman Islands) Floating-Rate Income Portfolio, Eaton Vance Senior Income Trust, Eaton Vance Short Duration Diversified Income Fund, Eaton Vance Institutional Senior Loan Fund, Eaton Vance Institutional Senior Loan Plus Fund, Eaton Vance Limited Duration Income Fund, Eaton Vance Floating Rate Portfolio, Senior Debt Portfolio, Eaton Vance VT Floating Rate Income Fund, Bentham Syndicated Loan Fund, DaVinci Reinsurance Ltd., Renaissance Investment Holdings Ltd., California State Teachers' Retirement System, Dollar Senior Loan Fund, Ltd., Dollar Senior Loan Master Fund I, Ltd., PK-SSL Investment Fund Limited Partnership, Copperhill Loan Fund I, LLC, Erie Indemnity Company, Madison Flintholm Senior Loan Fund I DAC, Phillips 66 Retirement Plan Trust, Wind River Fund LLC, Erie Insurance Exchange, Maryland State Retirement and Pension System, Credit Suisse Floating Rate Trust, Credit Suisse Floating Rate High Income Fund, Credit Suisse Strategic Income Fund, Credit Suisse Nova (Lux), Bentham Strategic Loan Fund, Telstra Superannuation Scheme, Wespath Funds Trust, Inflation Protection Fund-I Series, Madison Park Funding X, Ltd., Madison Park

---

[1] On May 5, 2023, Third-Party Plaintiffs filed an unopposed motion to amend the caption and re-designate the Third-Party Defendants as "additional Counterclaim Defendants." This answer is being filed on behalf of the Represented Third-Party Defendants in that capacity, although it maintains the "third-party" terminology originally used in Third-Party Plaintiffs' pleading for consistency and ease of reference.

Funding XI, Ltd., Madison Park Funding XII, Ltd., Madison Park Funding XIII, Ltd., Madison

Park Funding XIV, Ltd., Madison Park Funding XV, Ltd., Madison Park Funding XVI, Ltd.,

Madison Park Funding XVII, Ltd., Madison Park Funding XVIII, Ltd., Madison Park Funding

XIX, Ltd., Madison Park Funding XX, Ltd., Madison Park Funding XXI, Ltd., Madison Park

Funding XXII, Ltd., Madison Park Funding XXIII, Ltd., Madison Park Funding XXIV, Ltd.,

Madison Park Funding XXV, Ltd., Madison Park Funding XXVI, Ltd., Madison Park Funding

XXVII, Ltd., Madison Park Funding XXVIII, Ltd., Madison Park Funding XXIX, Ltd., Madison

Park Funding XXX, Ltd., Madison Park Funding XXXI, Ltd., Madison Park Funding XXXII,

Ltd., Madison Park Funding XXXIV, Ltd., Madison Park Funding XXXV, Ltd., Madison Park

Funding XXXVII, Ltd., Madison Park Funding XL, Ltd., Madison Park Funding XLI, Ltd.,

Madison Park Funding XLII, Ltd., Madison Park Funding XLIII, Ltd., Madison Park Funding

XLIV, Ltd., Barings Global Loan Limited, Barings Global Special Situations Credit 3 S.A.R.L.,

Barings Global High Yield Credit Strategies Limited, Barings U.S. Loan Limited, Barings CLO

Ltd. 2018-III, Barings CLO Ltd. 2017-I, Barings CLO Ltd. 2019-II, Barings CLO Ltd. 2016-I,

Barings CLO Ltd. 2015-I, Barings CLO Ltd. 2016-II, Barings CLO Ltd. 2018-I, Barings CLO

Ltd. 2015-II, Barings CLO Ltd. 2013-I, Barings CLO Ltd. 2018-IV, Baloise Senior Secured

Loan Fund, Crown Managed Accounts SPC - Crown/Ba 2 SP, Babson CLO Ltd. 2014-I,

Serengeti (Loan Fund), a Series Trust of the Multi Strategy Umbrella Fund Cayman, Barings

Global Multi-Credit Strategy 3 Limited, Barings Global Multi-Credit Strategy 4 Limited,

Barings BDC Senior Funding I, LLC, Barings Global Floating Rate Fund, Barings Global Credit

Income Opportunities Fund, Barings Segregated Loans 3 S.A R.L, Barings BDC, Inc., Barings

Global Loan and High Yield Bond Limited, Arrowood Indemnity Company, Arrowood

Indemnity as Administrator of the Pension Plan of Arrowood Indemnity, Jocassee Partners LLC,

First Eagle Bank Loan Select Master Fund, KVK CLO 2013-1 Ltd., KVK CLO 2016-1 Ltd.,

Russell Floating Rate Fund, Staniford Street CLO, Ltd., Stichting Pensioenfonds Hoogovens,

Wind River 2012-1 CLO Ltd., Wind River 2013-1 CLO Ltd., Wind River 2013-2 CLO Ltd.,

Wind River 2014-1 CLO Ltd., Wind River 2014-2 CLO Ltd., Wind River 2014-3 CLO Ltd.,

Wind River 2014-3K CLO Ltd., Wind River 2015-1 CLO Ltd., Wind River 2015-2 CLO Ltd.,

Wind River 2016-1 CLO Ltd., Wind River 2016-2 CLO Ltd., Wind River 2017-1 CLO Ltd.,

Wind River 2017-4 CLO Ltd., Wind River 2018-3 CLO Ltd., Wind River 2019-3 CLO Ltd.,

Annisa CLO, Ltd., Betony CLO 2, Ltd., Carbone CLO, Ltd., Diversified Credit Portfolio Ltd.,

Invesco BL Fund, Ltd., Invesco Dynamic Credit Opportunities Fund, Invesco Floating Rate

Fund, Invesco Floating Rate Income Fund, Invesco Gemini US Loan Fund LLC, Invesco

Oppenheimer Master Loan Fund, Invesco Oppenheimer Senior Floating Rate Fund, Invesco

Senior Income Trust, Invesco Senior Loan Fund, Invesco SSL Fund LLC, Invesco Zodiac Funds

- Invesco US Senior Loan ESG Fund, Invesco Zodiac Funds - Invesco US Senior Loan Fund,

Milos CLO, Ltd., Recette CLO, Ltd., Riserva CLO, Ltd., Sentry Insurance Company, Upland

CLO, Ltd., Harbourview CLO VII-R, Ltd., Invesco Oppenheimer Fundamental Alternatives

Fund, Oaktree Opportunities Fund Xb Holdings (Delaware), LP, Oaktree Opps X Holdco Ltd.,

Oaktree Opportunities Fund X Holdings (Delaware) LP, Dryden XXV Senior Loan Fund,

Dryden XXVI Senior Loan Fund, Dryden XXVIII Senior Loan Fund, Dryden 30 Senior Loan

Fund, Dryden 33 Senior Loan Fund, Dryden 36 Senior Loan Fund, Dryden 37 Senior Loan Fund,

Dryden 38 Senior Loan Fund, Dryden 40 Senior Loan Fund, Dryden 41 Senior Loan Fund,

Dryden 42 Senior Loan Fund, Dryden 43 Senior Loan Fund, Dryden 45 Senior Loan Fund,

Dryden 47 Senior Loan Fund, Dryden 49 Senior Loan Fund, Dryden 50 Senior Loan Fund,

Dryden 54 Senior Loan Fund, Dryden 53 CLO, Ltd., Dryden 55 CLO, Ltd., Dryden 57 CLO,

Ltd., Dryden 58 CLO, Ltd., Dryden 60 CLO, Ltd., Dryden 61 CLO, Ltd., Dryden 64 CLO, Ltd.,

Dryden 65 CLO, Ltd., Dryden 70 CLO, Ltd., Dryden 75 CLO, Ltd., Newark BSL CLO 1, Ltd.,

Newark BSL CLO 2, Ltd., Venture XXV CLO, Limited, Venture 31 CLO, Limited, Venture 32

CLO, Limited, Venture 33 CLO, Limited, Venture 35 CLO, Limited, Venture XVII CLO

Limited, Venture XXII CLO, Limited, Venture XXIX CLO, Limited, Venture XXVII CLO,

Limited, Venture 28a CLO, Limited, Venture XIII CLO, Limited, Venture XIV CLO, Limited,

Venture XIX CLO, Limited, Venture XV CLO, Limited, Venture XVIII CLO, Limited, Venture

XXI CLO, Limited, Venture XXIII CLO, Limited, Venture XXIV CLO, Limited, Venture

XXVIII CLO, Limited, Venture XXX CLO, Limited, Fixed Income Opportunities Nero, LLC,

Blackrock Limited Duration Income Trust, Blackrock Global Investment Series: Income

Strategies Portfolio, Blackrock Credit Strategies Income Fund of Blackrock Funds V, Blackrock

Senior Floating Rate Portfolio, Blackrock Floating Rate Income Strategies Fund, Inc., Blackrock

Multi-Asset Income Portfolio of Blackrock Funds II, Blackrock Debt Strategies Fund, Inc.,

Blackrock Floating Rate Income Trust, JPMBI Re Blackrock Bankloan Fund, Blackrock

Floating Rate Income Portfolio of Blackrock Funds V, ABR Reinsurance Ltd., NC Garnet Fund,

LP, Magnetite XV, Limited, Magnetite XIV-R, Limited, Magnetite XVI, Limited, Magnetite

VIII, Limited, Magnetite XVIII, Limited, Magnetite XIX, Limited, Magnetite XX, Limited,

Magnetite XVII, Limited, Magnetite VII, Limited, Magnetite XII, Limited, Nuveen Diversified

Dividend and Income Fund, Nuveen Floating Rate Income Fund, Nuveen Floating Rate Income

Opportunity Fund, Nuveen Senior Income Fund, Nuveen Short Duration Credit Opportunities

Fund, Nuveen Symphony Floating Rate Income Fund, Principal Funds, Inc - Diversified Real

Asset Fund, Symphony CLO XX Ltd., Symphony CLO XVII, Ltd., Symphony CLO XIX Ltd.,

Symphony CLO XV, Ltd., Symphony CLO XIV, Ltd., Symphony CLO XVI, Ltd., TCI-

Symphony CLO 2017-1 Ltd., TCI-Symphony CLO 2016-1 Ltd., Symphony Floating Rate Senior

Loan Fund, SCOF-2 Ltd., BayCity Alternative Investment Funds SICAV-SIF - BayCity US

Senior Loan Fund, BayCity Senior Loan Master Fund Ltd., Pensiondanmark

Pensionforsikringsaktieselskab, Menard, Inc., Municipal Employees Annuity & Benefit Fund of

Chicago, Principal Diversified Real Asset CIT, California Street CLO IX Limited Partnership,

California Street CLO XII, Ltd., TAO Fund, LLC, MP CLO III Ltd., MP CLO IV Ltd., MP CLO

VII Ltd., MP CLO VIII Ltd., Marble Point CLO X Ltd., Marble Point CLO XI Ltd., Marble

Point CLO XII Ltd., Marathon CLO V Ltd., Marathon CLO VII Ltd., Marathon CLO VIII Ltd.,

Marathon CLO IX Ltd., Marathon CLO X Ltd., Marathon CLO XI Ltd., Elevation CLO 2013-1,

Ltd., Elevation CLO 2014-2, Ltd., Elevation CLO 2016-5, Ltd., Elevation CLO 2017-6, Ltd.,

Elevation CLO 2017-7, Ltd., Elevation CLO 2017-8 Ltd., Elevation CLO 2018-9, Ltd., Elevation

CLO 2018-10, Ltd., and Peaks CLO 3, Ltd. (collectively, the "Represented Third-Party

Defendants"[2]), by and through their undersigned counsel, hereby respond to the Third-Party

Claims filed against them on April 7, 2023 by Defendants AG Centre Street Partnership L.P.,

AG Credit Solutions Non-ECI Master Fund, L.P., AG Super Fund Master, L.P., AG SF Master

(L), L.P., Silver Oak Capital, L.L.C., Ascribe III Investments, LLC, Columbia Cent CLO 21

Limited, Columbia Cent CLO 27 Limited, Columbia Floating Rate Income Fund, a series of

Columbia Funds Series Trust II, Columbia Strategic Income Fund, a series of Columbia Funds

Series Trust I, Contrarian Capital Fund I, L.P., Contrarian Distressed Debt Fund, L.P., Contrarian

Centre Street Partnership, L.P., Gamut Capital SSB, LLC, Z Capital Credit Partners CLO 2018-1

Ltd., Z Capital Credit Partners CLO 2019-1 Ltd., Shackleton 2013-III CLO, Ltd., Shackleton

---

[2] To be clear, this answer is being filed on behalf of only those Represented Third-Party Defendants specifically listed in this paragraph.  Any named third-party defendants not listed are not represented by undersigned counsel, who is neither answering nor appearing on their behalf.

2013-IV-R CLO, Ltd., Shackleton 2014-V-R CLO, Ltd., Shackleton 2015-VII-R CLO, Ltd., Shackleton 2017-XI CLO, Ltd., and North Star Debt Holdings, L.P. (collectively, the "Third-Party Plaintiffs") as follows (the "Answer").[3]

## **GENERAL DENIAL**

The Represented Third-Party Defendants deny any and all liability to the Third-Party Plaintiffs or any other party arising out of the circumstances described in the Third-Party Claims and, except as specifically admitted, deny the allegations therein.  A number of allegations in the Third-Party Claims merely state legal conclusions that do not require a response; to the extent a response is required, the Represented Third-Party Defendants deny such allegations.  In responding to the allegations in the Third-Party Claims, the Represented Third-Party Defendants assert that the headings, sub-headings, and defined terms in the Third-Party Claims are argumentative and require no response.  To the extent any response is required, the Represented Third-Party Defendants deny each and every allegation deemed to be contained in each such heading, sub-heading, and defined term.

In submitting this Answer, the Represented Third-Party Defendants expressly preserve and do not waive any and all applicable rights, defenses, and objections.  The Represented Third-Party Defendants also expressly reserve the right to amend this Answer and its affirmative defenses based on, *inter alia*, discovery, factual developments, and the Represented Third-Party Defendants' ongoing investigation of the Third-Party Plaintiffs' claims.  No incidental or implied admissions are intended by this Answer.  Unless expressly stated herein, nothing in this Answer should be construed as an admission regarding the existence of any facts set forth in the Third-

---

[3] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Amended Adversary Complaint filed in *Serta Simmons Bedding, LLC, et al. v. AG Centre Street Partnership, L.P. et al.*, Adversary No. 23-09001, Dkt. 38 (Feb. 14, 2023).

Party Claims.  The Represented Third-Party Defendants make no representations, concessions, or admissions regarding the relevance or appropriateness of any facts set forth in the Third-Party Claims.

The Represented Third-Party Defendants further respond to the specific allegations contained in the Third-Party Claims as follows:

**94. The Excluded Lenders' Counterclaims and Third-Party Claims challenge the unlawful scheme entered into by Serta and the Favored Lenders to rob certain of Serta's lenders, including the Excluded Lenders, of their bargained-for rights under a credit agreement while providing special benefits to a group of favored lenders who agreed to participate and assist in the scheme. The consequence has been to transform the Excluded Lenders from secured first lien lenders to effectively unsecured creditors in a highly distressed company.**

Response to Paragraph No. 94:  The Represented Third-Party Defendants deny the allegations in Paragraph 94.  To the extent the allegations in Paragraph 94 purport to characterize the Third-Party Claims, no response is required.

**95. Serta, a manufacturer of bedding products, was in financial distress even before the COVID-19 pandemic. The pandemic simply exacerbated the Company's problems, which now have culminated in a declaration of bankruptcy, for which Serta filed on January 11, 2023. In June 2020, with the possibility of bankruptcy then looming, Serta undertook a so-called liability management transaction that indisputably and blatantly violated the rights of a significant minority of its existing first lien lenders (the "First Lien Lenders"), including the Excluded Lenders.**

Response to Paragraph No. 95:  The Represented Third-Party Defendants deny the allegations in Paragraph 95, except admit that the Company was facing economic headwinds in late 2019 and that its financial position was further impacted by the COVID-19 pandemic, and aver that the Company filed for protection pursuant to chapter 11 of the Bankruptcy Code on January 23, 2023, not January 11, 2023.

**96. The Excluded Lenders are First Lien Lenders who collectively own over $690 million of the $1.9 billion in loans (the "First Lien Term Loans") that were outstanding in June 2020 under Serta's First Lien Term Loan Agreement (the "Credit Agreement"). Under the Credit Agreement, "First Lien" meant what it said: if there is an event of default, the lenders under that agreement, including the Excluded Lenders, had rights to collateral that were contractually superior to all others. In addition, a bedrock principle of the Credit Agreement is that the First Lien Lenders share ratably in all payments of principal or interest on their First Lien Term Loans. Indeed, the proceeds waterfall and pro rata sharing are "sacred rights" that are so fundamental that, under the Credit Agreement, the provisions governing these issues cannot be amended without the consent of 100% of the adversely affected lenders, while a simple majority is all that is necessary to amend most other provisions of the agreement.**

Response to Paragraph No. 96:  The Represented Third-Party Defendants admit that certain of the Third-Party Plaintiffs owned First Lien Term Loans that were outstanding in June 2020 pursuant to the Non-PTL Term Loan Agreement referenced in Paragraph 96.  The Represented Third-Party Defendants deny the remaining allegations in Paragraph 96, and respectfully refer the Court to the Non-PTL Term Loan Agreement for a complete and accurate statement of its contents.

**97. On June 8, 2020, Serta announced a recapitalization transaction (the "Unlawful Exchange Transaction") that brazenly upended the priorities under the proceeds waterfall and violated the requirement of *pro rata* sharing. In the transaction, the Favored Lenders, who comprised bare majorities of Serta's first and second lien lenders, exchanged their loans for special benefits. The Favored Lenders received more than $850 million in new "super- priority" term loans (the "Priority Term Loans") in exchange for their existing First Lien Term Loans, without Serta paying (or even offering) the same consideration to the other lenders (including the Excluded Lenders). Nor did the Favored Lenders offer to share these benefits ratably with the Excluded Lenders, despite their obligation to do so under the Credit Agreement. Due to their new "super-priority" position, the Favored Lenders now claim the right to be paid in full before the Excluded Lenders and the other First Lien Lenders can receive a penny. The mechanics of the Unlawful Exchange Transaction were complex, and involved not only numerous amendments to the Credit Agreement, but the execution of a new intercreditor agreement which allegedly binds the Excluded Lenders without their consent.**

Response to Paragraph No. 97:  The allegations in Paragraph 97 characterize the Third-Party Claims, to which no response is required.  To the extent a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 97, except admit that the Company announced the Transaction on June 8, 2020 and respectfully refer the Court to the Non-PTL Term Loan Agreement, the Amended Non-PTL Term Loan Agreement, the PTL Credit Agreement, the Exchange Agreement, and the PTL Intercreditor Agreement for a complete and accurate statement of their contents.

16

**98. The following diagram illustrates the sweeping changes to Serta's capital structure produced by the Unlawful Exchange Transaction:**



Response to Paragraph No. 98:  The Represented Third-Party Defendants deny the allegations in Paragraph 98 and the included diagram, except admit that the Transaction provided for a new super-priority term loan facility with two tranches:  (i) a $200 million new money tranche and (ii) a debt-for-debt purchase tranche, pursuant to which the Company purchased approximately $1.2 billion par value of existing First and Second Lien Term Loans (collectively, the "PTL Loans") on the open market in exchange for approximately $875 million par value of priority term loans.

**99. The consequence of the Unlawful Exchange Transaction is nothing less than the stripping of the Excluded Lenders' collateral and right to ratable repayment, for the sole benefit of the Favored Lenders. Soon after the transaction, and as a result of it,**

Moody's Investors Service downgraded the credit rating of the First Lien Term Loans from Caa3 to Ca, Moody's second lowest rating, indicating that Moody's believed the First Lien Term Loans to be "highly speculative and with likelihood of being near or in default." Moody's also noted that the Excluded Lenders "will potentially be left with little or no remaining collateral coverage in Serta Simmons, as well as in a position that is subordinated to new, higher priority debt." Moody's also said that Serta's *pro forma* capital structure "is not sustainable, and as a result, there is a continued high risk of additional distressed debt exchanges and/or a more comprehensive debt restructuring." That prophecy now has become reality, and the Excluded Lenders, having been reduced to unsecured lenders to a bankrupt company, are "First Lien Lenders" in name only.

Response to Paragraph No. 99:  The Represented Third-Party Defendants deny the allegations in Paragraph 99 and respectfully refer the Court to the referenced documents for a complete and accurate statement of their contents.

100.    To justify their blatant violations of the Credit Agreement, Serta and the Favored Lenders claim to rely on a limited exception to the provisions protecting the Excluded Lenders' "sacred rights" that permits Serta to make "open market purchases" of First Lien Term Loans on a non-*pro rata* basis. But the Unlawful Exchange Transaction was not an "open market purchase." It was a wholly private, exclusionary transaction—an exchange, at a substantial premium to market prices, in which Serta handpicked a group of its lenders (excluding the remainder), paid for their counsel and negotiated a complex, bespoke transaction memorialized in multiple agreements running many hundreds of pages.

Response to Paragraph No. 100:  The Represented Third-Party Defendants deny the allegations in Paragraph 100.

**101.   Indeed, in a case in federal court in which another excluded lender (which is not one of the Excluded Lenders here) is challenging the Unlawful Exchange Transaction, the District Court denied Serta's motion to dismiss the claims, and noted that, "[o]n a plain reading of the term, the Transaction . . . did not take place in what is conventionally understood as an 'open market.'" *LCM XII Ltd.* v. *Serta Simmons Bedding, LLC*, 2022 WL 953109, at \*8 (S.D.N.Y. Mar. 29, 2022).**

Response to Paragraph No. 101:  The Represented Third-Party Defendants respectfully refer the Court to the decision in *LCM XXI Ltd. v. Serta Simmons Bedding, LLC*, No. 21 Civ. 3987 (KPF) (S.D.N.Y), Dkt. 1 (the "LCM Action") for a complete and accurate statement of its contents, and otherwise deny the allegations in Paragraph 101.

**102.   As suggested by the District Court's decision in the *LCM* action against Serta, the Unlawful Exchange Transaction was not an "open market" transaction under any plain-English interpretation of that term. One need look no further than a client memorandum published by counsel for Serta, the Weil Gotshal firm, which has opined that an "open market" transaction "requir[es] the purchaser to pay a set market price," and "normally, the parties involved . . . are not aware of one another's identity." Similarly, the Gibson Dunn firm (which was counsel to nearly all of the Favored Lenders in related litigation) notes that an issuer must make a "cash outlay . . . to effect [an open market] purchase," and cautions that "issuers without sufficient cash on hand may not be able to" do so. In planning and implementing their transactions, Serta and the Favored Lenders ignored the published views of their own counsel.**

Response to Paragraph No. 102:  The Represented Third-Party Defendants deny the allegations in Paragraph 102, and respectfully refer the Court to the cited client memoranda for a complete and accurate statement of their contents.  *See* Private Equity Group of Weil, Gotshal & Manges LLP, De-Levering Portfolio Companies Through Debt Buybacks (March 2009), https://www.weil.com/~/media/files/pdfs/private_equity_alert_march_2009.pdf; James Moloney, Glenn Pollner and Matthew Shaw, Convertible Debt Exchange Offers: Considerations for Distressed Issuers, 3 DEAL LAWYERS 1 (Sept.-Oct. 2009), https://www.gibsondunn.com/convertible-debt-exchange-offers-considerations-for-distressed-issuers/.

103.   **To characterize the Unlawful Exchange Transaction as an "open market purchase" would make a mockery of the term, and render meaningless the requirement that all affected lenders approve changes to the *pro rata* treatment provisions of the Credit Agreement. Indeed, if *this* is an open market purchase, then nearly *any* transaction would be, and the *pro rata* protections of the Credit Agreement are effectively meaningless. But that is neither a logical reading of the term "open market" nor a permissible interpretation of the contract.**

Response to Paragraph No. 103:  The Represented Third-Party Defendants deny the allegations in Paragraph 103.

104.   **Moreover, under the terms of the Credit Agreement, even a true open market purchase—which is not present here—cannot be used to reorder Serta's entire capital structure and strip contractual protections from the Excluded Lenders and the other First Lien Lenders that did not participate in the Unlawful Exchange Transaction. As set forth below, the Credit Agreement contains numerous protections against the**

**subordination of the loans held by the First Lien Lenders in the way Serta and the Favored Lenders did it here. Among them, an agreement to release all or substantially all of the Collateral (except under limited circumstances that do not apply in this context) requires the prior written consent of each Lender, as does an agreement to release all or substantially all of the value of the guarantees of the borrower's obligations under the Credit Agreement. Although the Unlawful Exchange Transaction *did* reorder the capital structure and strip existing lenders of their protections, Serta did not seek the requisite consent of each affected lender. Instead, Serta obtained only the consent of the Favored Lenders—by offering them consideration the Excluded Lenders did not receive.**

Response to Paragraph No. 104:  The Represented Third-Party Defendants deny the allegations in Paragraph 104, and refer the Court to the  Non-PTL Term Loan Agreement for a complete and accurate statement of its contents

105.    **Majority lenders cannot be permitted to conspire with borrowers to bypass critical minority-lender protections which are expressly insulated from majority rule by requiring consent of *all* affected lenders; otherwise, those protections, which appear in innumerable agreements, are worthless. Permitting such a transaction would upend the lending markets and make it impossible for lenders to price the risk of first lien debt which could at any time be "primed" by previously *pari passu* debt owned by a mere majority of lenders under the guise of an "open market purchase." The Excluded Lenders therefore bring this action to require the Favored Lenders to share all the benefits of the Unlawful Exchange Transaction ratably with them, as required by the Credit Agreement; to obtain a declaration that the Unlawful Exchange Transaction and**

the agreements purporting to implement it are invalid; and to recover damages for the huge injury they have suffered as a result of Serta and the Favored Lenders' Unlawful Exchange Transaction.

Response to Paragraph No. 105:  The Represented Third-Party Defendants deny the allegations in Paragraph 105.

106.    In addition to robbing the Excluded Lenders of value through the Unlawful Exchange Transaction, Serta deprived Apollo of its rights as the purchaser of $192 million of First Lien Term Loans from a third-party lender. In March 2020, when Apollo purchased these loans under the Credit Agreement, it obtained confirmation from UBS AG, Stamford Branch ("UBS"), administrative agent for the Credit Agreement, that Apollo was not on the applicable list of Disqualified Institutions (the "DQ List" or the "List"), meaning that it could be assigned loans. Serta nonetheless has delayed and interfered with Apollo's efforts to close these loan purchases. As a result of Serta's misconduct, Apollo is now in limbo, saddled with $192 million in First Lien Term Loans that it can neither close on nor dispose of. Accordingly, Apollo seeks a declaration that it is entitled to assignment of its properly and validly purchased loans.

Response to Paragraph No. 106:  The Represented Third-Party Defendants deny the allegations in Paragraph 106.  To the extent the allegations in Paragraph 106 purport to characterize the Third-Party Claims, no response is required.

## PARTIES

*The Counterclaim/Third-Party Plaintiffs*

107.    Counterclaim/third-party plaintiffs Silver Oak Capital, L.L.C., AG Credit Solutions Non-ECI Master Fund, L.P., and AG Centre Street Partnership, L.P., affiliates of Angelo, Gordon & Co., L.P., are Delaware limited liability companies and/or limited

**partnerships with their principal place of business at 245 Park Avenue, New York, NY 10167.**

Response to Paragraph No. 107:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 107.

108.   **Counterclaim/third-party plaintiffs AG Super Fund Master, L.P. and AG SF Master (L), L.P., affiliates of Angelo, Gordon & Co., L.P., are Cayman Islands limited partnerships with their principal place of business at 245 Park Avenue, New York, NY 10167.**

Response to Paragraph No. 108:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 108.

109.   **Counterclaim/third-party plaintiffs Contrarian Capital Fund I, L.P., Contrarian Distressed Debt Fund, L.P., and Contrarian Centre Street Partnership, L.P., affiliates of Contrarian Capital Management L.L.C., are Delaware limited partnerships with their principal place of business at 411 West Putnam Avenue, Greenwich, CT 06830.**

Response to Paragraph No. 109:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 109.

110.   **Counterclaim/third-party plaintiff North Star Debt Holdings, L.P., an affiliate of funds managed by Apollo Global Management, Inc., is a Delaware limited partnership with its principal place of business at 9 West 57th Street, New York, NY 10019.**

Response to Paragraph No. 110:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 110.

111.   **Counterclaim/third-party plaintiff Gamut Capital SSB, LLC, an affiliate of funds managed by Gamut Capital Management, LP, is a Delaware limited liability company with its principal place of business at 250 West 55th Street, New York, NY 10019.**

Response to Paragraph No. 111:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 111.

112.   **Counterclaim/third-party plaintiffs Z Capital Credit Partners CLO 2018-1 Ltd. and Z Capital Credit Partners CLO 2019-1 Ltd., affiliates of Z Capital Group L.L.C., are exempted companies incorporated with limited liability under the laws of the Cayman Islands with their principal place of business at 1330 Avenue of the Americas, 16th Floor, New York, NY 10019.**

Response to Paragraph No. 112:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 112.

113.   **Counterclaim/third-party plaintiffs Shackleton 2013-III CLO, Ltd., Shackleton 2013-IV-R CLO, Ltd., Shackleton 2014-V-R CLO, Ltd., Shackleton 2015-VII-R CLO, Ltd., and Shackleton 2017-XI CLO, Ltd., affiliates of Alcentra NY, LLC, are Cayman Islands limited liability companies with their principal place of business at 9 West 57th Street, Suite 4920, New York, NY 10019.**

Response to Paragraph No. 113:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 113.

114.   **Counterclaim/third-party plaintiff Ascribe III Investments, LLC, an affiliate of AS Birch Grove LP, is a limited liability company with its principal place of business at 590 Madison Avenue, 38ᵗʰ Floor, New York, NY 10022.**

Response to Paragraph No. 114:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 114.

115.   **Counterclaim/third-party plaintiffs Columbia Cent CLO 21 Limited and Columbia Cent CLO 27 Limited are Cayman Islands exempted companies with their principal place of business at 1099 Ameriprise Financial Center, Minneapolis, MN 55474.**

Response to Paragraph No. 115:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 115.

116.   **Counterclaim/third-party plaintiff Columbia Floating Rate Income Fund is a series of Columbia Funds Series Trust II, a Massachusetts business trust with its principal place of business at 290 Congress St., Boston, MA 02210.**

Response to Paragraph No. 116:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 116.

117.    **Counterclaim/third-party plaintiff Columbia Strategic Income Fund is a series of Columbia Funds Series Trust I, a Massachusetts business trust with its principal place of business at 290 Congress St., Boston, MA 02210.**

Response to Paragraph No. 117:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 117.

*The Counterclaim Defendant*

118.    **Defendant Serta Simmons Bedding, LLC is a Delaware limited liability company with its principal place of business at 2451 Industry Avenue, Doraville, GA 30360.**

Response to Paragraph No. 118:  The Represented Third-Party Defendants admit the allegations in Paragraph 118.

*The Represented Third-Party Defendants*

119.    **Third-party defendant AGF Floating Rate Income Fund participated in the Unlawful Exchange Transaction. AGF Floating Rate Income Fund is a Canadian fund with its principal place of business in Toronto, Canada.**

Response to Paragraph No. 119:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 119 and on that basis deny the allegations in Paragraph 119, except that the Represented Third-Party Defendant AGF Floating Rate Income Fund admits that it is a Canadian fund with its principal place of business in Toronto, Canada and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

**120.    Third-party defendant Brighthouse Funds Trust I - Brighthouse/Eaton Vance Floating Rate Portfolio participated in the Unlawful Exchange Transaction. Brighthouse Funds Trust I - Brighthouse/Eaton Vance Floating Rate Portfolio is a Delaware statutory trust with its principal place of business in Boston, MA.**

Response to Paragraph No. 120:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 120 and on that basis deny the allegations in Paragraph 120, except that the Represented Third-Party Defendant Brighthouse Funds Trust I - Brighthouse/Eaton Vance Floating Rate Portfolio admits that it is a Delaware statutory trust with its principal place of business in Boston, MA and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

**121.    Third-party defendant Calvert Management Series - Calvert Floating-Rate Advantage Fund participated in the Unlawful Exchange Transaction. Calvert Management Series - Calvert Floating-Rate Advantage Fund is a Massachusetts fund with its principal place of business in Washington, D.C.**

Response to Paragraph No. 121:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 121 and on that basis deny the allegations in Paragraph 121, except that the Represented Third-Party Defendant Calvert Management Series - Calvert Floating-Rate Advantage Fund states that it is a Massachusetts business trust and admits that it has a principal place of business in Washington, D.C. and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

122.   **Represented Third-Party Defendants Eaton Vance CLO 2013-1 Ltd, Eaton Vance CLO 2014-1R Ltd, Eaton Vance CLO 2015-1 Ltd, Eaton Vance CLO 2018-1 Ltd, and Eaton Vance CLO 2019-1 Ltd (the "Eaton Vance CLOs") participated in the Unlawful Exchange Transaction. The Eaton Vance CLOs are Cayman Islands exempted companies with their principal place of business in Boston, MA.**

Response to Paragraph No. 122:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 122 and on that basis deny the allegations in Paragraph 122, except that the Represented Third-Party Defendants Eaton Vance CLO 2013-1 Ltd., Eaton Vance CLO 2014-1R, Ltd., Eaton Vance CLO 2015-1, Ltd., Eaton Vance CLO 2018-1, Ltd., and Eaton Vance CLO 2019-1, Ltd. admit that they are Cayman Islands exempted companies with their principal place of business in Boston, MA and that they were Exchanging Existing Lenders as that term is used in the PTL Credit Agreement, dated June 22, 2020.

123.   **Third-party defendant Eaton Vance Loan Holding Limited participated in the Unlawful Exchange Transaction. Eaton Vance Loan Holding Limited is a private company limited by shares with its principal place of business in Dublin, Ireland.**

Response to Paragraph No. 123: The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 123 and on that basis deny the allegations in Paragraph 123.

124.    **Third-party defendant Eaton Vance Floating-Rate Income Plus Fund participated in the Unlawful Exchange Transaction. Eaton Vance Floating-Rate Income Plus Fund is a Massachusetts fund with its principal place of business in Boston, MA.**

Response to Paragraph No. 124: The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 124 and on that basis deny the allegations in Paragraph 124.

125.    **Third-party defendant Eaton Vance Floating-Rate 2022 Target Term Trust participated in the Unlawful Exchange Transaction. Eaton Vance Floating-Rate 2022 Target Term Trust is a Massachusetts business trust with its principal place of business in Boston, MA.**

Response to Paragraph No. 125: The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 125 and on that basis deny the allegations in Paragraph 125.

126.    **Third-party defendant Eaton Vance Senior Floating-Rate Trust participated in the Unlawful Exchange Transaction. Eaton Vance Senior Floating-Rate Trust is a Massachusetts business trust with its principal place of business in Boston, MA.**

Response to Paragraph No. 126:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 126 and on that basis deny the allegations in Paragraph 126, except that the Represented Third-Party Defendant Eaton Vance Senior Floating-Rate Trust admits that it is a Massachusetts business trust with its principal place of business in Boston, MA and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

127.   **Third-party defendant Eaton Vance Floating-Rate Income Trust participated in the Unlawful Exchange Transaction. Eaton Vance Floating-Rate Income Trust is a Massachusetts business trust with its principal place of business in Boston, MA.**

Response to Paragraph No. 127:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 127 and on that basis deny the allegations in Paragraph 127, except that the Represented Third-Party Defendant Eaton Vance Floating Rate Income Trust admits that it is a Massachusetts business trust with its principal place of business in Boston, MA and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

128.   **Third-party defendant Eaton Vance International (Cayman Islands) Floating-Rate Income Portfolio participated in the Unlawful Exchange Transaction. Eaton Vance International (Cayman Islands) Floating-Rate Income Portfolio is a Cayman Islands exempted company with its principal place of business in Boston, MA.**

Response to Paragraph No. 128:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 128 and on that basis deny the allegations in Paragraph 128, except that the Represented Third-Party Defendant Eaton Vance International (Cayman Islands) Floating-Rate Income Portfolio admits that it is an Exempted Company incorporated in the Cayman Islands with limited liability with its principal place of business in Boston, MA and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

**129.**   **Third-party defendant Eaton Vance Senior Income Trust participated in the Unlawful Exchange Transaction. Eaton Vance Senior Income Trust is a Massachusetts business trust with its principal place of business in Boston, MA.**

Response to Paragraph No. 129:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 129 and on that basis deny the allegations in Paragraph 129, except that the Represented Third-Party Defendant Eaton Vance Senior Income Trust admits that it is a Massachusetts business trust with its principal place of business in Boston, MA and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

**130.**   **Third-party defendant Eaton Vance Short Duration Diversified Income Fund participated in the Unlawful Exchange Transaction. Eaton Vance Short Duration Diversified Income Fund is a Massachusetts business trust with its principal place of business in Boston, MA.**

Response to Paragraph No. 130:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 130 and on that basis deny the allegations in Paragraph 130, except that the Represented Third-Party Defendant Eaton Vance Short Duration Diversified Income Fund admits that it is a Massachusetts business trust with its principal place of business in Boston, MA and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

**131.    Third-party defendant Eaton Vance Institutional Senior Loan Fund participated in the Unlawful Exchange Transaction. Eaton Vance Institutional Senior Loan Fund is a Cayman Islands exempted company with its principal place of business in Boston, MA.**

Response to Paragraph No. 131:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 131 and on that basis deny the allegations in Paragraph 131, except that the Represented Third-Party Defendant Eaton Vance Institutional Senior Loan Fund states that its name is Eaton Vance Institutional Funds - Eaton Vance Institutional Senior Loan Fund, and admits that is an exempted company incorporated in the Cayman Islands with its principal place of business in Boston, MA and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

**132.    Third-party defendant Eaton Vance Institutional Senior Loan Plus Fund participated in the Unlawful Exchange Transaction. Eaton Vance Institutional Senior Loan Plus Fund is a Cayman Islands exempted company with its principal place of business in Boston, MA.**

Response to Paragraph No. 132:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 132 and on that basis deny the allegations in Paragraph 132, except that the Represented Third-Party Defendant Eaton Vance Institutional Senior Loan Plus Fund admits that it is a Cayman Islands exempted company with its principal place of business in Boston, MA and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

133.   **Third-party defendant Eaton Vance Limited Duration Income Fund participated in the Unlawful Exchange Transaction. Eaton Vance Limited Duration Income Fund is a Massachusetts business trust with its principal place of business in Boston, MA.**

Response to Paragraph No. 133:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 133 and on that basis deny the allegations in Paragraph 133, except that the Represented Third-Party Defendant Eaton Vance Limited Duration Income Fund admits that it is a Massachusetts business trust with its principal place of business in Boston, MA and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

134.   **Third-party defendant Eaton Vance Floating Rate Portfolio participated in the Unlawful Exchange Transaction. Eaton Vance Floating Rate Portfolio is a Massachusetts business trust with its principal place of business in Boston, MA.**

Response to Paragraph No. 134:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 134 and on that basis deny the allegations in Paragraph 134, except that the Represented Third-Party Defendant Eaton Vance Floating Rate Portfolio admits that it is a Massachusetts business trust with its principal place of business in Boston, MA and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

135.    **Third-party defendant Senior Debt Portfolio participated in the Unlawful Exchange Transaction. Senior Debt Portfolio is a Massachusetts business trust with its principal place of business in Boston, MA.**

Response to Paragraph No. 135:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 135 and on that basis deny the allegations in Paragraph 135, except that the Represented Third-Party Defendant Senior Debt Portfolio admits that it is a Massachusetts business trust with its principal place of business in Boston, MA and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

136.    **Third-party defendant Eaton Vance VT Floating Rate Income Fund participated in the Unlawful Exchange Transaction. Eaton Vance VT Floating Rate Income Fund is a Massachusetts business trust with its principal place of business in Boston, MA.**

Response to Paragraph No. 136:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 136 and on that basis deny the allegations in Paragraph 136, except that the Represented Third-Party Defendant Eaton Vance VT Floating Rate Income Fund states that it is a series of Eaton Vance Variable Trust, and admits that it is a Massachusetts business trust with its principal place of business in Boston, MA and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

137.    **Third-party defendant Bentham Syndicated Loan Fund participated in the Unlawful Exchange Transaction. Bentham Syndicated Loan Fund is an Australian fund with its principal place of business in Sydney, Australia.**

Response to Paragraph No. 137:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 137 and on that basis deny the allegations in Paragraph 137, except that the Represented Third-Party Defendant Bentham Syndicated Loan Fund admits that it is an Australian fund with its principal place of business in Sydney, Australia and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

138.    **Third-party defendant DaVinci Reinsurance Ltd. participated in the Unlawful Exchange Transaction. DaVinci Reinsurance Ltd. is a Bermuda exempted company with its principal place of business in Bermuda.**

Response to Paragraph No. 138:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 138 and on that basis deny the allegations in Paragraph 138, except that the Represented Third-Party Defendant DaVinci Reinsurance Ltd. admits that it is a Bermuda exempted company with its principal place of business in Bermuda and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

**139.**    **Third-party defendant Renaissance Investment Holdings Ltd. participated in the Unlawful Exchange Transaction. Renaissance Investment Holdings Ltd. is a Bermuda exempted company with its principal place of business in Bermuda.**

Response to Paragraph No. 139:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 139 and on that basis deny the allegations in Paragraph 139, except that the Represented Third-Party Defendant Renaissance Investment Holdings Ltd. admits that it is a Bermuda exempted company with its principal place of business in Bermuda and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

**140.**    **Third-party defendant California State Teachers' Retirement System participated in the Unlawful Exchange Transaction. California State Teachers' Retirement System is a component unit of the State of California with its principal place of business in West Sacramento, CA.**

Response to Paragraph No. 140:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 140 and on that basis deny the allegations in Paragraph 140, except that the Represented Third-Party Defendant California State Teachers' Retirement System admits that it is a component unit of the State of California with its principal place of business in West Sacramento, CA and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

141.    **Represented Third-Party Defendants Dollar Senior Loan Fund, Ltd. and Dollar Senior Loan Master Fund II, Ltd. participated in the Unlawful Exchange Transaction. Dollar Senior Loan Fund, Ltd. and Dollar Senior Loan Master Fund II, Ltd. are Cayman Islands exempted companies with their principal place of business in New York, NY.**

Response to Paragraph No. 141:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 141 and on that basis deny the allegations in Paragraph 141, except that the Represented Third-Party Defendants Dollar Senior Loan Fund, Ltd. and Dollar Senior Loan Master Fund II, Ltd. admit that they are Cayman Islands exempted companies with their principal place of business in New York, NY and that they were Exchanging Existing Lenders as that term is used in the PTL Credit Agreement, dated June 22, 2020.

142.    **Third-party defendant BA/Cscredit 1 LLC participated in the Unlawful Exchange Transaction. BA/Cscredit 1 LLC is a Delaware limited liability company with its principal place of business in New York, NY.**

Response to Paragraph No. 142:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 142 and on that basis deny the allegations in Paragraph 142.

143.    **Third-party defendant PK-SSL Investment Fund Limited Partnership participated in the Unlawful Exchange Transaction. PK-SSL Investment Fund Limited Partnership is a Guernsey limited partnership with its principal place of business in New York, NY.**

Response to Paragraph No. 143:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 143 and on that basis deny the allegations in Paragraph 143, except that the Represented Third-Party Defendant PK-SSL Investment Fund Limited Partnership admits that it is a Guernsey limited partnership and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020, but denies that its principal place of business is New York, NY.

144.    **Third-party defendant Copperhill Loan Fund I, LLC participated in the Unlawful Exchange Transaction. Copperhill Loan Fund I, LLC is a Delaware limited liability company with its principal place of business in New York, NY.**

Response to Paragraph No. 144:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 144 and on that basis deny the allegations in Paragraph 144, except that the Represented Third-Party Defendant Copperhill Loan Fund I, LLC admits that it is a Guernsey limited partnership with a principal place of business in New York, NY and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

145. **Third-party defendant The Eaton Corporation Master Retirement Trust participated in the Unlawful Exchange Transaction. The Eaton Corporation Master Retirement Trust is an Ohio corporate pension with its principal place of business in Cleveland, OH.**

Response to Paragraph No. 145:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 145 and on that basis deny the allegations in Paragraph 145.

146. **Third-party defendant Erie Indemnity Company participated in the Unlawful Exchange Transaction. Erie Indemnity Company is a Pennsylvania corporation with its principal place of business in Erie, PA.**

Response to Paragraph No. 146:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 146 and on that basis deny the allegations in Paragraph 146, except that the Represented Third-Party Defendant Erie Indemnity Company admits that it is a Pennsylvania corporation with its principal place of business in Erie, PA and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

147.    **Third-party defendant Madison Flintholm Senior Loan Fund I DAC participated in the Unlawful Exchange Transaction. Madison Flintholm Senior Loan Fund I DAC is an Ireland designated activity company with its principal place of business in Dublin, Ireland.**

Response to Paragraph No. 147:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 147 and on that basis deny the allegations in Paragraph 147, except that the Represented Third-Party Defendant Madison Flintholm Senior Loan Fund I DAC admits that it is an Ireland designated activity company with its principal place of business in Dublin, Ireland and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

148.    **Third-party defendant Phillips 66 Retirement Plan Trust participated in the Unlawful Exchange Transaction. Phillips 66 Retirement Plan Trust is a Texas fund with its principal place of business in Houston, TX.**

Response to Paragraph No. 148:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 148 and on that basis deny the allegations in Paragraph 148, except that the Represented Third-Party Defendant Phillips 66 Retirement Plan Trust admits that it is a Texas fund with its principal place of business in Houston, TX and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

149.    **Third-party defendant Wind River Fund LLC participated in the Unlawful Exchange Transaction. Wind River Fund LLC is a Wyoming limited liability company with its principal place of business in New York, NY.**

Response to Paragraph No. 149:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 149 and on that basis deny the allegations in Paragraph 149, except that the Third-Party Defendant formerly known as Wind River Fund LLC avers that it is now an instrumentality of the State of Wyoming with its principal place of business in Wyoming.  The Third-Party Defendant formerly known as Wind River Fund LLC denies the remaining allegations in Paragraph 150.

150.    **Third-party defendant Blue Shield of California participated in the Unlawful Exchange Transaction. Blue Shield of California is a California corporation with its principal place of business in Oakland, CA.**

Response to Paragraph No. 150:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 150 and on that basis deny the allegations in Paragraph 150.

151.   **Third-party defendant Erie Insurance Exchange participated in the Unlawful Exchange Transaction. Erie Insurance Exchange is a Pennsylvania reciprocal insurer with its principal place of business in Erie, PA.**

Response to Paragraph No. 151:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 151 and on that basis deny the allegations in Paragraph 151, except that the Represented Third-Party Defendant Erie Insurance Exchange admits that it is a Pennsylvania reciprocal insurer with its principal place of business in Erie, PA and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

152.   **Third-party defendant The City of New York Group Trust participated in the Unlawful Exchange Transaction. The City of New York Group Trust is a New York fund with its principal place of business in New York, NY.**

Response to Paragraph No. 152:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 152 and on that basis deny the allegations in Paragraph 152.

153.   **Third-party defendant Maryland State Retirement and Pension System participated in the Unlawful Exchange Transaction. Maryland State Retirement and Pension System is a pension trust fund of the State of Maryland with its principal place of business in Baltimore, MD.**

Response to Paragraph No. 153:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 153 and on that basis deny the allegations in Paragraph 153, except that the Represented Third-Party Defendant Maryland State Retirement and Pension System admits that it is a pension trust fund of the State of Maryland with its principal place of business in Baltimore, MD and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

154.    **Represented Third-Party Defendants Credit Suisse Floating Rate Trust, Credit Suisse Floating Rate High Income Fund, and Credit Suisse Strategic Income Fund participated in the Unlawful Exchange Transaction. Credit Suisse Floating Rate Trust, Credit Suisse Floating Rate High Income Fund, and Credit Suisse Strategic Income Fund are Delaware funds with their principal place of business in New York, NY.**

Response to Paragraph No. 154:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 154 and on that basis deny the allegations in Paragraph 154, except that (i) the Represented Third-Party Defendants Credit Suisse Floating Rate High Income Fund and Credit Suisse Strategic Income Fund admit that they are Delaware funds with a principal place of business in New York, NY and that they were Exchanging Existing Lenders as that term is used in the PTL Credit Agreement, dated June 22, 2020, and (ii) the Represented Third-Party Defendant Credit Suisse Floating Rate Trust admits that it is a Delaware fund and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020, but denies that its principal place of business is New York, NY.

155.   **Third-party defendant Commonwealth of Pennsylvania Treasury Department participated in the Unlawful Exchange Transaction.  Commonwealth of Pennsylvania Treasury Department is a component unit of the State of Pennsylvania with its principal place of business in Harrisburg, PA.**

Response to Paragraph No. 155:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 155 and on that basis deny the allegations in Paragraph 155.

156.   **Third-party defendant State of New Mexico State Investment Council participated in the Unlawful Exchange Transaction. State of New Mexico State Investment Council is a New Mexico sovereign wealth fund with its principal place of business in Santa Fe, NM.**

Response to Paragraph No. 156:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 156 and on that basis deny the allegations in Paragraph 156.

157.    **Third-party defendant Credit Suisse Nova (Lux) participated in the Unlawful Exchange Transaction. Credit Suisse Nova (Lux) is a Luxembourg investment company with variable capital with its principal place of business in Luxembourg.**

Response to Paragraph No. 157:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 157 and on that basis deny the allegations in Paragraph 157, except that the Represented Third-Party Defendant Credit Suisse Nova (Lux) admits that it is a Luxembourg investment company with variable capital with its principal place of business in Luxembourg and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

158.    **Third-party defendant KP Fixed Income Fund participated in the Unlawful Exchange Transaction. KP Fixed Income Fund is a Massachusetts statutory trust with its principal place of business in Oaks, PA.**

Response to Paragraph No. 158:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 158 and on that basis deny the allegations in Paragraph 158.

159.    **Third-party defendant Bentham Strategic Loan Fund participated in the Unlawful Exchange Transaction. Bentham Strategic Loan Fund is an Australian fund with its principal place of business in Sydney, Australia.**

Response to Paragraph No. 159:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 159 and on that basis deny the allegations in Paragraph 159, except that the Represented Third-Party Defendant Bentham Strategic Loan Fund admits that it is an Australian fund with its principal place of business in Sydney, Australia and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

160.    **Third-party defendant Telstra Superannuation Scheme participated in the Unlawful Exchange Transaction. Telstra Superannuation Scheme is an Australian superannuation fund with its principal place of business in Melbourne, Australia.**

Response to Paragraph No. 160:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 160 and on that basis deny the allegations in Paragraph 160, except that the Represented Third-Party Defendant Telstra Superannuation Scheme admits that it is an Australian fund with its principal place of business in Melbourne, Australia and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

161.    **Third-party defendant Wespath Funds Trust participated in the Unlawful Exchange Transaction. Wespath Funds Trust is a Delaware statutory trust with its principal place of business in Glenview, IL.**

Response to Paragraph No. 161:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 161 and on that basis deny the allegations in Paragraph 161, except that the Represented Third-Party Defendant Wespath Funds Trust admits that it is a Delaware statutory trust with a principal place of business is Glenview, IL and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

162.     **Third-party defendant Inflation Protection Fund-I Series participated in the Unlawful Exchange Transaction. Inflation Protection Fund-I Series is a Maryland fund with its principal place of business in Glenville, IL.**

Response to Paragraph No. 162:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 162 and on that basis deny the allegations in Paragraph 162, except that the Represented Third-Party Defendant Inflation Protection Fund-I Series states that it is known as INFLATION PROTECTION FUND-I SERIES, a series of the Wespath Funds Trust, a Maryland fund with its principal place of business in Glenview, IL, and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

163.     **Third-party defendants Madison Park Funding X, Ltd., Madison Park Funding XI, Ltd., Madison Park Funding XII, Ltd., Madison Park Funding XIII, Ltd., Madison Park Funding XIV, Ltd., Madison Park Funding XV, Ltd., Madison Park Funding XVI, Ltd., Madison Park Funding XVII, Ltd., Madison Park Funding XVIII, Ltd., Madison Park Funding XIX, Ltd., Madison Park Funding XX, Ltd., Madison Park Funding XXI, Ltd., Madison Park Funding XXII, Ltd., Madison Park Funding XXIII, Ltd., Madison Park Funding XXIV, Ltd., Madison Park Funding XXV, Ltd., Madison**

Park Funding XXVI, Ltd., Madison Park Funding XXVII, Ltd., Madison Park Funding XXVIII, Ltd., Madison Park Funding XXIX, Ltd., Madison Park Funding XXX, Ltd., Madison Park Funding XXXI, Ltd., Madison Park Funding XXXII, Ltd., Madison Park Funding XXXIV, Ltd., Madison Park Funding XXXV, Ltd., Madison Park Funding XXXVII, Ltd., Madison Park Funding XL, Ltd., Madison Park Funding XLI, Ltd., Madison Park Funding XLII, Ltd., Madison Park Funding XLIII, Ltd., Madison Park Funding XLIV, Ltd., One Eleven Funding I, Ltd., and One Eleven Funding II, Ltd. (collectively, the "Madison Park Funds") participated in the Unlawful Exchange Transaction. The Madison Park Funds are Cayman Islands limited companies with their principal place of business in New York, NY.

Response to Paragraph No. 163:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 163 and on that basis deny the allegations in Paragraph 163, except that the Represented Third-Party Defendants Madison Park Funding X, Ltd., Madison Park Funding XI, Ltd., Madison Park Funding XII, Ltd., Madison Park Funding XIII, Ltd., Madison Park Funding XIV, Ltd., Madison Park Funding XV, Ltd., Madison Park Funding XVI, Ltd., Madison Park Funding XVII, Ltd., Madison Park Funding XVIII, Ltd., Madison Park Funding XIX, Ltd., Madison Park Funding XX, Ltd., Madison Park Funding XXI, Ltd., Madison Park Funding XXII, Ltd., Madison Park Funding XXIII, Ltd., Madison Park Funding XXIV, Ltd., Madison Park Funding XXV, Ltd., Madison Park Funding XXVI, Ltd., Madison Park Funding XXVII, Ltd., Madison Park Funding XXVIII, Ltd., Madison Park Funding XXIX, Ltd., Madison Park Funding XXX, Ltd., Madison Park Funding XXXI, Ltd., Madison Park Funding XXXII, Ltd., Madison Park Funding XXXIV, Ltd., Madison Park Funding XXXV, Ltd., Madison Park Funding XXXVII, Ltd., Madison Park Funding XL, Ltd., Madison Park Funding XLI, Ltd., Madison Park Funding XLII, Ltd., Madison Park Funding XLIII, Ltd., and Madison Park Funding XLIV, Ltd. admit that they are Cayman Islands limited companies with their principal place of business in New York, NY and were Exchanging Existing Lenders as that term is used in the PTL Credit Agreement, dated June 22, 2020.

164.    **Third-party defendant Barings Global Loan Limited participated in the Unlawful Exchange Transaction. Barings Global Loan Limited is a private limited liability company formed in Ireland with its principal place of business in Charlotte, NC.**

Response to Paragraph No. 164:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 164 and on that basis deny the allegations in Paragraph 164, except that the Represented Third-Party Defendant Barings Global Loan Limited admits that it is a private limited liability company formed in Ireland with its principal place of business in Charlotte, NC and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

165.    **Third-party defendant Barings Global Special Situations Credit 3 S.A.R.L. participated in the Unlawful Exchange Transaction. Barings Global Special Situations Credit 3 S.A.R.L. is a Luxembourg limited company with its principal place of business in Boston, MA.**

Response to Paragraph No. 165:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 165 and on that basis deny the allegations in Paragraph 165, except that the Represented Third-Party Defendant Barings Global Special Situations Credit 3 S.A.R.L. admits that it is a Luxembourg limited company and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.  Represented Third-Party Defendant Barings Global Special Situations Credit 3 S.A.R.L. denies that its principal place of business is Boston, MA.

166.    **Third-party defendant Barings Global High Yield Credit Strategies Limited participated in the Unlawful Exchange Transaction. Barings Global High Yield Credit Strategies Limited is a private limited liability company formed in Ireland with its principal place of business in Charlotte, NC.**

Response to Paragraph No. 166:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 166 and on that basis deny the allegations in Paragraph 166, except that the Represented Third-Party Defendant Barings Global High Yield Credit Strategies Limited admits that it is a private limited liability company formed in Ireland with its principal place of business in Charlotte, NC and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

167.  **Third-party defendant Barings U.S Loan Limited participated in the Unlawful Exchange Transaction. Barings U.S Loan Limited is a private limited liability company formed in Ireland with its principal place of business in Charlotte, NC.**

Response to Paragraph No. 167:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 167 and on that basis deny the allegations in Paragraph 167, except that the Represented Third-Party Defendant Barings U.S Loan Limited admits that it is a private limited liability company formed in Ireland with its principal place of business in Charlotte, NC and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

168.  **Third-party defendants Barings CLO Ltd. 2018-III, Barings CLO Ltd. 2017-I, Barings CLO Ltd. 2019-II, Barings CLO Ltd. 2016-I, Barings CLO Ltd. 2015-I, Barings CLO Ltd. 2016-II, Barings CLO Ltd. 2018-I, Barings CLO Ltd. 2015-II, Barings CLO Ltd. 2013-I, and Barings CLO Ltd. 2018-IV (collectively, the "Barings CLOs") participated in the Unlawful Exchange Transaction. The Barings CLOs are**

**Cayman Islands exempted companies with their principal place of business in Charlotte, NC.**

Response to Paragraph No. 168:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 168 and on that basis deny the allegations in Paragraph 168, except that the Represented Third-Party Defendants Barings CLO Ltd. 2018-III, Barings CLO Ltd. 2017-I, Barings CLO Ltd. 2019-II, Barings CLO Ltd. 2016-I, Barings CLO Ltd. 2015-I, Barings CLO Ltd. 2016-II, Barings CLO Ltd. 2018-I, Barings CLO Ltd. 2015-II, Barings CLO Ltd. 2013-I, and Barings CLO Ltd. 2018-IV admit that they are Cayman Islands exempted companies with their principal place of business in Charlotte, NC and were Exchanging Existing Lenders as that term is used in the PTL Credit Agreement, dated June 22, 2020.

169.    **Third-party defendant Baloise Senior Secured Loan Fund participated in the Unlawful Exchange Transaction. Baloise Senior Secured Loan Fund is a Luxembourg fund with its principal place of business in Luxembourg City, Luxembourg.**

Response to Paragraph No. 169:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 169 and on that basis deny the allegations in Paragraph 169, except that the Represented Third-Party Defendant Baloise Senior Secured Loan Fund admits that it is a Luxembourg fund with a principal place of business in Luxembourg and was an Exchanging Existing Lenders as that term is used in the PTL Credit Agreement, dated June 22, 2020.

170.    **Third-party defendant Bayvk R2-Fonds Segment Bayvk R2 Barings participated in the Unlawful Exchange Transaction. Bayvk R2-Fonds Segment Bayvk R2 Barings is a Germany fund with its principal place of business in Frankfurt, Germany.**

Response to Paragraph No. 170:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 170 and on that basis deny the allegations in Paragraph 170.

171.    **Third-party defendant Crown Managed Accounts SPC - Crown/BA 2 SP participated in the Unlawful Exchange Transaction. Crown Managed Accounts SPC – Crown/BA 2 SP is a Cayman Islands segregated portfolio company with its principal place of business in Vaduz, Liechtenstein.**

Response to Paragraph No. 171:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 171 and on that basis deny the allegations in Paragraph 171, except that the Represented Third-Party Defendant Crown Managed Accounts SPC - Crown/BA 2 SP admits that it is a Cayman Island segregated portfolio company fund with its principal place of business in Vaduz, Liechtenstein and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

172.    **Third-party defendant Babson CLO Ltd. 2014-1 participated in the Unlawful Exchange Transaction. Babson CLO Ltd. 2014-1 is a Cayman Islands limited company with its principal place of business in Charlotte, NC.**

Response to Paragraph No. 172:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 172 and on that basis deny the allegations in Paragraph 172, except that the Represented Third-Party Defendant Babson CLO Ltd. 2014-1 admits that it is a Cayman Island limited company fund with its principal place of business in Charlotte, NC and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

173.   **Third-party defendant G.A.S. (Cayman) Limited participated in the Unlawful Exchange Transaction. G.A.S. (Cayman) Limited is a Cayman Islands limited company with its principal place of business in Dublin, Ireland.**

Response to Paragraph No. 173:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 173 and on that basis deny the allegations in Paragraph 173, except that the Represented Third-Party Defendant Serengeti (Loan Fund), a series trust of the Multi Strategy Umbrella Fund Cayman, states that G.A.S. (Cayman) Limited executed the PTL Credit Agreement, dated June 22, 2020, on behalf of Represented Third-Party Defendant Serengeti (Loan Fund), a series trust of the Multi Strategy Umbrella Fund Cayman, and solely in its capacity as Trustee of Serengeti (Loan Fund), a series trust of the Multi Strategy Umbrella Fund Cayman.

174.   **Third-party defendant Serengeti (Loan Fund), a series trust of the Multi Strategy Umbrella Fund Cayman participated in the Unlawful Exchange Transaction. Serengeti (Loan Fund), a series trust of the Multi Strategy Umbrella Fund Cayman is a Cayman Islands fund with its principal place of business in Dublin, Ireland.**

Response to Paragraph No. 174:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 174 and on that basis deny the allegations in Paragraph 174, except that the Represented Third-Party Defendant Serengeti (Loan Fund), a series trust of the Multi Strategy Umbrella Fund Cayman, admits that it is a Cayman Islands fund and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020. Represented Third-Party Defendant Serengeti (Loan Fund), a series trust of the Multi Strategy Umbrella Fund Cayman, denies that its principal place of business is Dublin, Ireland.

175.   **Third-party defendants Barings Global Multi-Credit Strategy 1 Limited, Barings Global Multi-Credit Strategy 2 Limited, Barings Global Multi-Credit Strategy 3 Limited, and Barings Global Multi-Credit Strategy 4 Limited (collectively, the "Barings Global Multi-Credit Strategy Funds") participated in the Unlawful Exchange Transaction. The Barings Global Multi-Credit Strategy Funds are private limited companies formed in Ireland with their principal place of business in Dublin, Ireland.**

Response to Paragraph No. 175:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 175 and on that basis deny the allegations in Paragraph 175, except that the Represented Third-Party Defendants Barings Global Multi-Credit Strategy 3 Limited and Barings Global Multi-Credit Strategy 4 Limited admit that they are private limited companies formed in Ireland with their principal place of business in the United Kingdom and were Exchanging Existing Lenders as that term is used in the PTL Credit Agreement, dated June 22, 2020.

**176.    Third-party defendant Barings BDC Senior Funding I, LLC participated in the Unlawful Exchange Transaction. Barings BDC Senior Funding I, LLC is a Delaware limited liability company with its principal place of business in Charlotte, NC.**

Response to Paragraph No. 176:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 176 and on that basis deny the allegations in Paragraph 176, except that the Represented Third-Party Defendant Barings BDC Senior Funding I, LLC admits that it is a Delaware limited liability company with its principal place of business in Charlotte, NC and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

**177.    Third-party Defendant Barings Global Floating Rate Fund, a series of Barings Funds Trust participated in the Unlawful Exchange Transaction. Barings Global Floating Rate Fund, a series of Barings Funds Trust is a Massachusetts business trust with its principal place of business in Charlotte, NC.**

Response to Paragraph No. 177:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 177 and on that basis deny the allegations in Paragraph 177, except that the Represented Third-Party Defendant Barings Global Floating Rate Fund states that its current name is MassMutual Global Floating Rate Fund, and admits that it is a Massachusetts business trust with its principal place of business in Springfield, Massachusetts and that it was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

178.   **Third-party defendant Barings Segregated Loans 3 S.A R.L. participated in the Unlawful Exchange Transaction. Barings Segregated Loans 3 S.A R.L. is a Luxembourg limited liability company with its principal place of business in London, United Kingdom.**

Response to Paragraph No. 178:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 178 and on that basis deny the allegations in Paragraph 178, except that the Represented Third-Party Defendant Barings Segregated Loans 3 S.A R.L. admits that it is a Luxembourg limited liability company and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020, and states that it has principal places of business in London, United Kingdom and Charlotte, NC.

179.   **Third-party defendant Barings BDC, Inc. participated in the Unlawful Exchange Transaction. Barings BDC, Inc. is a Maryland stock corporation with its principal place of business in Charlotte, NC.**

Response to Paragraph No. 179:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 179 and on that basis deny the allegations in Paragraph 179, except that the Represented Third-Party Defendant Barings BDC, Inc. admits that it is a Luxembourg limited liability company with its principal place of business in London, United Kingdom and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

**180.    Third-party defendant Barings Global Loan and High Yield Bond Limited participated in the Unlawful Exchange Transaction. Barings Global Loan and High Yield Bond Limited is a private limited liability company formed in Ireland with its principal place of business in Charlotte, NC.**

Response to Paragraph No. 180:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 180 and on that basis deny the allegations in Paragraph 180, except that the Represented Third-Party Defendant Barings Global Loan and High Yield Bond Limited admits that it is a private limited liability company formed in Ireland with its principal place of business in Charlotte, NC and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

**181.    Third-party defendant Barings Global Credit Income Opportunities Fund participated in the Unlawful Exchange Transaction. Barings Global Credit Income Opportunities Fund is a Massachusetts business trust with its principal place of business in Charlotte, NC.**

Response to Paragraph No. 181:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 181 and on that basis deny the allegations in Paragraph 181, except that the Represented Third-Party Defendant Barings Global Credit Income Opportunities Fund states that its current name is MassMutual Global Credit Income Opportunities Fund, and admits that it is a Massachusetts business trust with its principal place of business in Springfield, Massachusetts and that it was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

182.   **Third-party defendants Arrowood Indemnity and Arrowood Indemnity as Administrator of the Pension Plan of Arrowood Indemnity participated in the Unlawful Exchange Transaction. Arrowood Indemnity is a Delaware corporation with its principal place of business in Charlotte, NC.**

Response to Paragraph No. 182:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 182 and on that basis deny the allegations in Paragraph 182, except that the Represented Third-Party Defendant Arrowood Indemnity Company states that its name is Arrowood Indemnity Company Pension Trust (dba The Pension Plan of Arrowood Indemnity Company), and admits that it has its principal place of business in Charlotte, NC and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.  Represented Third-Party Defendant Arrowood Indemnity Company Pension Trust (dba The Pension Plan of Arrowood Indemnity Company) denies that it is a Delaware corporation.

**183.    Third-party defendant Jocassee Partners LLC participated in the Unlawful Exchange Transaction. Jocassee Partners LLC is a Delaware limited liability company with its principal place of business in Charlotte, NC.**

Response to Paragraph No. 183:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 183 and on that basis deny the allegations in Paragraph 183, except that the Represented Third-Party Defendant Jocassee Partners LLC admits is a Delaware limited liability company with its principal place of business in Charlotte, NC and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

**184.    Third-party defendant First Eagle Bank Loan Select Master Fund participated in the Unlawful Exchange Transaction. First Eagle Bank Loan Select Master Fund is a Cayman Islands business trust with its principal place of business in Chicago, IL.**

Response to Paragraph No. 184:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 184 and on that basis deny the allegations in Paragraph 184, except that the Represented Third-Party Defendant First Eagle Bank Loan Select Master Fund states that it is a Cayman Islands business trust with a principal place of business in Chicago, IL, and admits that it was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

**185.    Third-party defendant First Eagle Senior Loan Fund (FSLF) participated in the Unlawful Exchange Transaction. First Eagle Senior Loan Fund (FSLF) is a Delaware statutory trust with its principal place of business in Chicago, IL.**

Response to Paragraph No. 185: The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 185 and on that basis deny the allegations in Paragraph 185.

**186.    Third-party defendants KVK CLO 2013-1 Ltd., KVK CLO 2016-1 Ltd., and KVK CLO 2018-1 Ltd. (collectively, the "KVK CLOs") participated in the Unlawful Exchange Transaction. The KVK CLOs are Cayman Islands exempted companies with their principal place of business in Chicago, IL.**

Response to Paragraph No. 186:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 186 and on that basis deny the allegations in Paragraph 186, except that the Represented Third-Party Defendant KVK CLO 2013-1 Ltd admits that it is a Cayman Islands exempted company with its principal place of business in Chicago, IL, and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020; and the Represented Third-Party Defendant formerly known as KVK CLO 2016-1 Ltd. states that it is now known as Wind River 2016-1K CLO Ltd., but admits that it is a Cayman Islands exempted company with its principal place of business in Chicago, IL and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020 .

187.    **Third-party defendants Russell Absolute Return Fixed Income Fund, Russell Floating Rate Fund, Russell Global Unconstrained Bond Pool, Russell Multi-Asset Core Plus Fund, and Russell Unconstrained Total Return Fund participated in the Unlawful Exchange Transaction. Russell Absolute Return Fixed Income Fund is a Delaware fund with its principal place of business in Seattle, WA. Russell Floating Rate Fund is an Ireland fund with its principal place of business in Dublin, Ireland. Russell Global Unconstrained Bond Pool is a Canadian fund with its principal place of business in Toronto, Canada. Russell Multi-Asset Core Plus Fund is a Delaware fund with its principal place of business in Seattle, WA. Russell Unconstrained Total Return Fund is a Massachusetts fund with its principal place of business in Seattle, WA.**

Response to Paragraph No. 187:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 187 and on that basis deny the allegations in Paragraph 187, except Represented Third-Party Defendant Russell Floating Rate Fund admits that it is an Ireland fund with its principal place of business in Dublin, Ireland and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

**188.    Third-party defendant Staniford Street CLO Ltd. participated in the Unlawful Exchange Transaction. Staniford Street CLO Ltd. is a Cayman Islands limited company with its principal place of business in Boston, MA.**

Response to Paragraph No. 188:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 188 and on that basis deny the allegations in Paragraph 188, except that the Represented Third-Party Defendant First Staniford Street CLO, Ltd. admits that it is a Cayman Islands limited company and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020, but denies that its principal place of business is Boston, MA.

**189.    Third-party defendant Stichting Pensioenfonds Hoogovens participated in the Unlawful Exchange Transaction. Stichting Pensioenfonds Hoogovens is a Netherlands stichting with its principal place of business in the Netherlands.**

Response to Paragraph No. 189:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 189 and on that basis deny the allegations in Paragraph 189, except that the Represented Third-Party Defendant Stichting Pensioenfonds Hoogovens admits that it is a Netherlands stichting with its principal place of business in the Netherlands and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

190.    **Third-party defendants Wind River 2012-1 CLO Ltd., Wind River 2013-1 CLO Ltd., Wind River 2013-2 CLO Ltd., Wind River 2014-1 CLO Ltd., Wind River 2014-2 CLO Ltd., Wind River 2014-3 CLO Ltd., Wind River 2014-3K CLO Ltd., Wind River 2015-1 CLO Ltd., Wind River 2015-2 CLO Ltd., Wind River 2016-1 CLO Ltd., Wind River 2016-2 CLO Ltd., Wind River 2017-1 CLO Ltd., Wind River 2017-4 CLO Ltd., Wind River 2018-3 CLO Ltd., and Wind River 2019-3 CLO Ltd. (collectively, the "Wind River CLOs") participated in the Unlawful Exchange Transaction. The Wind River CLOs are Cayman Islands exempted companies with their principal place of business in Boston, MA.**

Response to Paragraph No. 190:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 190 and on that basis deny the allegations in Paragraph 190, except that the Represented Third-Party Defendants Wind River 2012-1 CLO Ltd., Wind River 2013-1 CLO Ltd., Wind River 2013-2 CLO Ltd., Wind River 2014-1 CLO Ltd., Wind River 2014-2 CLO Ltd., Wind River 2014-3 CLO Ltd., Wind River 2014-3K CLO Ltd., Wind River 2015-1 CLO Ltd., Wind River 2015-2 CLO Ltd., Wind River 2016-1 CLO Ltd., Wind River 2016-2 CLO Ltd., Wind River 2017-1 CLO Ltd., Wind River 2017-4 CLO Ltd., Wind River 2018-3 CLO Ltd., and Wind River 2019-3 CLO Ltd. admit that they are Cayman Islands exempted companies and were Exchanging Existing Lenders as that term is used in the PTL Credit Agreement, dated June 22, 2020, but deny that their principal place of business is Boston, MA.

191.   **Third-party defendant Annisa CLO, Ltd. participated in the Unlawful Exchange Transaction. Annisa CLO, Ltd. is a Cayman Islands limited company with its principal place of business in New York, NY.**

Response to Paragraph No. 191:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 191 and on that basis deny the allegations in Paragraph 191, except that the Represented Third-Party Defendant Annisa CLO, Ltd. admits that its principal place of business is in New York, NY and that it was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020, but denies that it is a Cayman Islands limited company.

192.    **Third-party defendant Betony CLO 2, Ltd. participated in the Unlawful Exchange Transaction. Betony CLO 2, Ltd. is a Cayman Islands exempted company with its principal place of business in New York, NY.**

Response to Paragraph No. 192:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 192 and on that basis deny the allegations in Paragraph 192, except that the Represented Third-Party Defendant Betony CLO 2, Ltd. admits that it is a Cayman Islands exempted company with its principal place of business in New York, NY and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

193.    **Third-party defendant BOC Pension Investment Fund participated in the Unlawful Exchange Transaction. BOC Pension Investment Fund is a United Kingdom fund with its principal place of business in Guildford, United Kingdom.**

Response to Paragraph No. 193:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 193 and on that basis deny the allegations in Paragraph 193.

194.　**Third-party defendant Carbone CLO, Ltd. participated in the Unlawful Exchange Transaction. Carbone CLO, Ltd. is a Cayman Islands exempted company with its principal place of business in New York, NY.**

Response to Paragraph No. 194:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 194 and on that basis deny the allegations in Paragraph 194, except that the Represented Third-Party Defendant Carbone CLO, Ltd. admits that it is a Cayman Islands exempted company with its principal place of business in New York, NY and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

195.　**Third-party defendant Diversified Credit Portfolio Ltd. participated in the Unlawful Exchange Transaction. Diversified Credit Portfolio Ltd. is a Cayman Islands exempted company with its principal place of business in New York, NY.**

Response to Paragraph No. 195:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 195 and on that basis deny the allegations in Paragraph 195, except that the Represented Third-Party Defendant Diversified Credit Portfolio Ltd. admits that it is a Cayman Islands exempted company with its principal place of business in New York, NY and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

196.    **Third-party defendants Invesco BL Fund, Ltd., Invesco Dynamic Credit Opportunities Fund, Invesco Floating Rate Fund, Invesco Floating Rate Income Fund, Invesco Gemini US Loan Fund LLC, Invesco Oppenheimer Master Loan Fund, Invesco Oppenheimer Senior Floating Rate Fund, Invesco Oppenheimer Senior Floating Rate Plus Fund, Invesco Senior Income Trust, Invesco Senior Loan Fund, Invesco SSL Fund LLC, Invesco Zodiac Funds - Invesco US Senior Loan ESG Fund, and Invesco Zodiac Funds - Invesco US Senior Loan Fund (collectively, the "Invesco Funds") participated in the Unlawful Exchange Transaction.  Invesco BL Fund, Ltd. is a Cayman Islands exempted company with its principal place of business in Luxembourg City, Luxembourg. Invesco Dynamic Credit Opportunities Fund is a Delaware fund with its principal place of business in Atlanta, GA. Invesco Floating Rate Income Fund is a Canadian fund with its principal place of business in Toronto, Canada. Invesco Oppenheimer Master Loan Fund, Invesco Floating Rate Fund, Invesco Oppenheimer Senior Floating Rate Fund, Invesco Oppenheimer Senior Floating Rate Plus Fund, and Invesco Senior Income Trust are Delaware funds with their principal place of business in Atlanta, GA. Invesco Senior Loan Fund is a Delaware statutory trust with its**

principal place of business in Atlanta, GA. Invesco Gemini US Loan Fund LLC and Invesco SSL Fund LLC are Delaware limited liability companies with their principal place of business in Atlanta, GA. Invesco Zodiac Funds - Invesco US Senior Loan ESG Fund and Invesco Zodiac Funds - Invesco US Senior Loan Fund are Luxembourg funds with their principal place of business in Luxembourg City, Luxembourg.

Response to Paragraph No. 196: The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 195 and on that basis deny the allegations in Paragraph 195, except that (i) the Represented Third-Party Defendant Invesco BL Fund, Ltd. admits that it is a Cayman Islands exempted company and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020, but denies that its principal place of business is Luxembourg City, Luxembourg; (ii) the Represented Third-Party Defendant formerly known as Invesco Dynamic Credit Opportunities Fund states that it was reorganized into what is now known as Invesco Dynamic Credit Opportunity Fund and admits that it is a Delaware statutory trust with its principal place of business in Atlanta, GA and that it was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020; (iii) the Represented Third-Party Defendant formerly known as Invesco Floating Rate Fund states that it is now known as Invesco Floating Rate ESG Fund, and admits that it is a Delaware statutory trust with its principal place of business in Atlanta, GA and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020; (iv) the Represented Third-Party Defendant Invesco Floating Rate Income Fund admits that it is a Canadian fund with its principal place of business in Toronto, Canada and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020; (v) the Represented Third-Party Defendant formerly known as Invesco Oppenheimer Master Loan Fund states that it is now known as Invesco Master Loan Fund and admits that it is a Delaware statutory trust with a principal place of business in Atlanta, GA and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020; (vi) the Represented Third-Party Defendant formerly known as Invesco Oppenheimer Senior Floating Rate Fund states that it is

now known as Invesco Senior Floating Rate Fund and admits that it is a Delaware statutory trust with its principal place of business in Atlanta, GA and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020; (vii) the Represented Third-Party Defendant now known as Invesco Senior Floating Rate Fund states that Invesco Oppenheimer Senior Floating Rate Plus Fund was merged into Invesco Senior Floating Rate Fund and no longer exists; (viii) the Represented Third-Party Defendant Invesco Senior Income Trust admits that it is a Delaware statutory trust with its principal place of business in Atlanta, GA and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020; (ix) the Represented Third-Party Defendant Invesco Senior Loan Fund admits that it is a Delaware statutory trust with its principal place of business in Atlanta, GA and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020; (x) the Represented Third-Party Defendant Invesco Gemini US Loan Fund LLC admits that it is a Delaware limited liability company and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020, but denies that its principal place of business is Atlanta, GA; (xi) the Represented Third-Party Defendants Invesco Zodiac Funds - Invesco US Senior Loan ESG Fund and Invesco Zodiac Funds - Invesco US Senior Loan Fund admit that they are Luxembourg funds with their principal place of business in Luxembourg City, Luxembourg and were Exchanging Existing Lenders as that term is used in the PTL Credit Agreement, dated June 22, 2020; and (xii) the Represented Third-Party Defendant Invesco SSL Fund LLC admits that it is a Delaware limited liability company and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020, but denies that its principal place of business is Atlanta, GA.

**197.    Third-party defendant Kaiser Permanente Group Trust participated in the Unlawful Exchange Transaction. Kaiser Permanente Group Trust is a California corporate pension with its principal place of business in Oakland, CA.**

Response to Paragraph No. 197:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 197 and on that basis deny the allegations in Paragraph 197.

**198.    Third-party defendant Kapitalforeningen Investin Pro, US Leveraged Loans I participated in the Unlawful Exchange Transaction. Kapitalforeningen Investin Pro, US Leveraged Loans I is a Denmark fund with its principal place of business in Copenhagen, Denmark.**

Response to Paragraph No. 198:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 198 and on that basis deny the allegations in Paragraph 198.

**199.    Third-party defendant Milos CLO, Ltd. participated in the Unlawful Exchange Transaction. Milos CLO, Ltd. is a Cayman Islands limited company with its principal place of business in New York, NY.**

Response to Paragraph No. 199:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 199 and on that basis deny the allegations in Paragraph 199, except that the Represented Third-Party Defendant Milos CLO, Ltd. admits that its principal place of business is New York, NY and that it was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.  The Represented Third-Party Defendant Milos CLO, Ltd denies that it is a Cayman Islands limited company.

**200.   Third-party defendant Recette CLO, Ltd. participated in the Unlawful Exchange Transaction. Recette CLO, Ltd. is a Cayman Islands limited company with its principal place of business in Atlanta, GA.**

Response to Paragraph No. 200:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 200 and on that basis deny the allegations in Paragraph 200, except that the Represented Third-Party Defendant Recette CLO, Ltd. admits that it was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020, but denies that it is a Cayman Islands limited company with its principal place of business in Atlanta, GA.

**201.   Third-party defendant Riserva CLO, Ltd. participated in the Unlawful Exchange Transaction. Riserva CLO, Ltd. is a Cayman Islands exempted company with its principal place of business in New York, NY.**

Response to Paragraph No. 201:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 201 and on that basis deny the allegations in Paragraph 201, except that the Represented Third-Party Defendant Riserva CLO, Ltd. admits that it is a Cayman Islands limited company with its principal place of business in New York, NY and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

**202.     Third-party defendant Sentry Insurance Company participated in the Unlawful Exchange Transaction. Sentry Insurance Company is a Wisconsin mutual holding company with its principal place of business in Stevens Point, WI.**

Response to Paragraph No. 202:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 202 and on that basis deny the allegations in Paragraph 202, except that the Represented Third-Party Defendant Sentry Insurance Company admits that its principal place of business is Stevens Point, WI and that it was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020, but denies that it is a Washington mutual holding company.

**203.     Third-party defendant Upland CLO, Ltd. participated in the Unlawful Exchange Transaction. Upland CLO, Ltd. is a Cayman Islands limited company with its principal place of business in Atlanta, GA.**

Response to Paragraph No. 203:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 203 and on that basis deny the allegations in Paragraph 203, except that the Represented Third-Party Defendant Upland CLO, Ltd. admits it was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020, but denies that it is a Cayman Islands limited company with its principal place of business in Atlanta, GA.

**204.    Third-party defendant HarbourView CLO VII-R, Ltd. participated in the Unlawful Exchange Transaction. HarbourView CLO VII-R, Ltd. is Delaware limited liability company with its principal place of business in New York, NY.**

Response to Paragraph No. 204:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 204 and on that basis deny the allegations in Paragraph 204, except that the Represented Third-Party Defendant Harbourview CLO VII-R, Ltd. admits that its principal place of business is New York, NY and that it was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020, but denies that it is a Delaware limited liability company.

**205.    Third-party defendant Invesco Oppenheimer Fundamental Alternatives Fund participated in the Unlawful Exchange Transaction. Invesco Oppenheimer Fundamental Alternatives Fund is a Delaware statutory trust with its principal place of business in Atlanta, GA.**

Response to Paragraph No. 205:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 205 and on that basis deny the allegations in Paragraph 205, except that the Represented Third-Party Defendant formerly known as Invesco Oppenheimer Fundamental Alternatives Fund states that it is now known as Invesco Fundamental Alternatives Fund, and admits that it is a series portfolio of a Delaware statutory trust that has a principal place of business in Atlanta, GA and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

**206.    Third-party defendant Oaktree Opportunities Fund Xb Holdings (Delaware), LP participated in the Unlawful Exchange Transaction. Oaktree Opportunities Fund Xb Holdings (Delaware), LP is a Delaware limited partnership with its principal place of business in Los Angeles, CA.**

Response to Paragraph No. 206:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 206 and on that basis deny the allegations in Paragraph 206, except that the Represented Third-Party Defendant Oaktree Opportunities Fund Xb Holdings (Delaware), LP admits that it is a Delaware limited partnership with a principal place of business in Los Angeles, CA and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

**207.    Third-party defendant Oaktree Opps X Holdco Ltd. participated in the Unlawful Exchange Transaction. Oaktree Opps X Holdco Ltd. is a Cayman Islands exempted company with its principal place of business in Los Angeles, CA.**

Response to Paragraph No. 207:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 206 and on that basis deny the allegations in Paragraph 206, except that the Represented Third-Party Defendant Oaktree Opportunities Fund Xb Holdings (Delaware), L.P. admits that it is a Delaware limited partnership with a principal place of business in Los Angeles, CA and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

**208.    Third-party defendant Oaktree Opportunities Fund X Holdings (Delaware) LP participated in the Unlawful Exchange Transaction. Oaktree Opportunities Fund X Holdings (Delaware) LP is a Delaware limited partnership with its principal place of business in Los Angeles, CA.**

Response to Paragraph No. 208:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 208 and on that basis deny the allegations in Paragraph 208, except that the Represented Third-Party Defendant Oaktree Opportunities Fund X Holdings (Delaware) L.P. admits that it is a Delaware limited partnership with a principal place of business in Los Angeles, CA and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

**209.    Third-party defendants Dryden XXV Senior Loan Fund, Dryden XXVI Senior Loan Fund, Dryden XXVIII Senior Loan Fund, Dryden 30 Senior Loan Fund, Dryden 33 Senior Loan Fund, Dryden 36 Senior Loan Fund, Dryden 37 Senior Loan Fund, Dryden 38 Senior Loan Fund, Dryden 40 Senior Loan Fund, Dryden 41 Senior Loan Fund, Dryden 42 Senior Loan Fund, Dryden 43 Senior Loan Fund, Dryden 45 Senior**

**Loan Fund, Dryden 47 Senior Loan Fund, Dryden 49 Senior Loan Fund, Dryden 50 Senior Loan Fund, Dryden 54 Senior Loan Fund, Dryden 53 CLO, Ltd., Dryden 55 CLO, Ltd., Dryden 57 CLO, Ltd., Dryden 58 CLO, Ltd., Dryden 60 CLO, Ltd., Dryden 61 CLO, Ltd., Dryden 64 CLO, Ltd., Dryden 65 CLO, Ltd., Dryden 70 CLO, Ltd., Dryden 75 CLO, Ltd., Newark BSL CLO 1, Ltd., and Newark BSL CLO 2, Ltd. (collectively, the "PGIM Funds") participated in the Unlawful Exchange Transaction. The PGIM Funds are Cayman Islands exempted companies with their principal place of business in Newark, NJ.**

Response to Paragraph No. 209:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 209 and on that basis deny the allegations in Paragraph 209, except that the Represented Third-Party Defendants Dryden XXV Senior Loan Fund, Dryden XXVI Senior Loan Fund, Dryden XXVIII Senior Loan Fund, Dryden 30 Senior Loan Fund, Dryden 33 Senior Loan Fund, Dryden 36 Senior Loan Fund, Dryden 37 Senior Loan Fund, Dryden 38 Senior Loan Fund, Dryden 40 Senior Loan Fund, Dryden 41 Senior Loan Fund, Dryden 42 Senior Loan Fund, Dryden 43 Senior Loan Fund, Dryden 45 Senior Loan Fund, Dryden 47 Senior Loan Fund, Dryden 49 Senior Loan Fund, Dryden 50 Senior Loan Fund, Dryden 54 Senior Loan Fund, Dryden 53 CLO, Ltd., Dryden 55 CLO, Ltd., Dryden 57 CLO, Ltd., Dryden 58 CLO, Ltd., Dryden 60 CLO, Ltd., Dryden 61 CLO, Ltd., Dryden 64 CLO, Ltd., Dryden 65 CLO, Ltd., Dryden 70 CLO, Ltd., Dryden 75 CLO, Ltd., Newark BSL CLO 1, Ltd., and Newark BSL CLO 2, Ltd. admit that they are Cayman Islands exempted companies with their principal place of business in Newark, NJ and were Exchanging Existing Lenders as that term is used in the PTL Credit Agreement, dated June 22, 2020.

210. **Third-party defendants Venture XXV CLO, Limited, Venture 31 CLO, Limited, Venture 32 CLO, Limited, Venture 33 CLO, Limited, Venture 35 CLO, Limited, Venture XVII CLO Limited, Venture XXII CLO, Limited, Venture XXIX CLO, Limited, Venture XXVII CLO, Limited, Venture 28A CLO, Limited, Venture XII CLO, Limited, Venture XIII CLO, Limited, Venture XIV CLO, Limited, Venture XIX CLO, Limited, Venture XV CLO, Limited, Venture XVI CLO, Limited, Venture XVIII CLO, Limited, Venture XX CLO, Limited, Venture XXI CLO, Limited, Venture XXIII CLO, Limited, Venture XXIV CLO, Limited, Venture XXVIII CLO, Limited, and**

**Venture XXX CLO, Limited (collectively, the "Venture CLOs") participated in the Unlawful Exchange Transaction. The Venture CLOs are Cayman Islands exempted companies with their principal place of business in New York, NY.**

Response to Paragraph No. 210:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 210 and on that basis deny the allegations in Paragraph 210, except that the Represented Third-Party Defendants Venture XXV CLO, Limited, Venture 31 CLO, Limited, Venture 32 CLO, Limited, Venture 33 CLO, Limited, Venture 35 CLO, Limited, Venture XVII CLO Limited, Venture XXII CLO, Limited, Venture XXIX CLO, Limited, Venture XXVII CLO, Limited, Venture 28A CLO, Limited, Venture XIII CLO, Limited, Venture XIV CLO, Limited, Venture XIX CLO, Limited, Venture XV CLO, Limited, Venture XVIII CLO, Limited, Venture XXI CLO, Limited, Venture XXIII CLO, Limited, Venture XXIV CLO, Limited, Venture XXVIII CLO, Limited, and Venture XXX CLO, Limited admit that they are Cayman Islands exempted companies and were Exchanging Existing Lenders as that term is used in the PTL Credit Agreement, dated June 22, 2020, but deny that their principal place of business is New York, NY.

**211.    Third-party defendant BSG Fund Management B.V. participated in the Unlawful Exchange Transaction. BSG Fund Management B.V. is a Netherlands limited liability company with its principal place of business in the Netherlands.**

Response to Paragraph No. 211:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 211 and on that basis deny the allegations in Paragraph 211.

211. **Third-party defendant Fixed Income Opportunities Nero, LLC participated in the Unlawful Exchange Transaction. Fixed Income Opportunities Nero, LLC is a New York limited liability company with its principal place of business in New York, NY.**

Response to Paragraph No. 212:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 212 and on that basis deny the allegations in Paragraph 212, except that the Represented Third-Party Defendant Fixed Income Opportunities Nero, LLC admits that it is a Delaware limited partnership with its principal place of business in Los Angeles, CA and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.  Third-Party Defendant Fixed Income Opportunities Nero, LLC denies the remaining allegations in Paragraph 212.

213. **Represented Third-Party Defendants BlackRock Limited Duration Income Trust, BlackRock Global Investment Series: Income Strategies Portfolio, BlackRock Credit Strategies Income Fund of BlackRock Funds V, BlackRock Senior Floating Rate Portfolio, BlackRock Floating Rate Income Strategies Fund, Inc., BlackRock Multi-Asset Income Portfolio of BlackRock Funds II, BlackRock Debt Strategies Fund, Inc., BlackRock Floating Rate Income Trust, JPMBI re BlackRock BankLoan Fund, and BlackRock Floating Rate Income Portfolio of BlackRock Funds V participated in the Unlawful Exchange Transaction. BlackRock Limited Duration Income Trust, BlackRock Credit Strategies Income Fund of BlackRock Funds V, and BlackRock**

Floating Rate Income Trust are Delaware statutory trusts with their principal place of business in Wilmington, DE. BlackRock Floating Rate Income Strategies Fund, Inc. is a Maryland corporation with its principal place of business in Lutherville-Timonium, MD. BlackRock Global Investment Series: Income Strategies Portfolio is a Luxembourg investment company with variable capital with its principal place of business in Luxembourg City, Luxembourg. BlackRock BankLoan Fund is an Ireland fund with its principal place of business in Dublin, Ireland. BlackRock Senior Floating Rate Portfolio is a Cayman Islands limited company with its principal place of business in New York, NY. BlackRock Debt Strategies Fund, Inc. is a Maryland corporation with its principal place of business in New York, NY. BlackRock Floating Rate Income Portfolio of BlackRock Funds V and BlackRock Multi-Asset Income Portfolio of BlackRock Funds II are Massachusetts business trusts with their principal place of business in Wilmington, DE.

Response to Paragraph No. 213:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 213 and on that basis deny the allegations in Paragraph 213, except that (i) the Represented Third-Party Defendants BlackRock Limited Duration Income Trust, BlackRock Global Investment Series: Income Strategies Portfolio, and BlackRock Floating Rate Income Trust admit that they are Delaware limited partnerships with their principal place of business in New York, NY and were Exchanging Existing Lenders as that term is used in the PTL Credit Agreement, dated June 22, 2020; (ii) the Represented Third-Party Defendant BlackRock Floating Rate Income Strategies Fund, Inc. admits that it is a Maryland corporation and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020, but denies that its principal place of business is Lutherville-Timonium, MD; (iii) the Represented Third-Party Defendants BlackRock Multi-Asset Income Portfolio of BlackRock Funds II and BlackRock Floating Rate Income Portfolio of BlackRock Funds V admit that they are Delaware limited partnerships with their principal place of business in Wilmington, DE and were Exchanging Existing Lenders as that term is used in the PTL Credit Agreement, dated June 22, 2020; (iii) the Represented Third-Party Defendant BlackRock Debt Strategies Fund, Inc. admits that it was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020, but denies that it is a Maryland corporation with its principal place of business in New York, NY; (iv) the Represented Third-Party Defendant BlackRock Credit Strategies Income Fund of BlackRock Funds V states that it is now known as BlackRock Income Fund of BlackRock Funds V and admits that it has a principal place of business in Wilmington, Delaware and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020, but denies that it is a Delaware statutory trust; (v) the

Represented Third-Party Defendant BlackRock Senior Floating Rate Portfolio is a Cayman Islands limited company with its principal place of business in New York, NY and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020; and (vi) the Represented Third-Party Defendant JPMBI Re Blackrock Bankloan Fund states that its correct name is BlackRock Bank Loan Fund and admits that it is an Irish trust with a principal place of business in Dublin, Ireland and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

**214.    Third-party defendant ABR Reinsurance Ltd. participated in the Unlawful Exchange Transaction. ABR Reinsurance Ltd. is a Bermuda exempted company with its principal place of business in Hamilton, Bermuda.**

Response to Paragraph No. 214:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 214 and on that basis deny the allegations in Paragraph 214, except that the Represented Third-Party Defendant Fixed ABR Reinsurance Ltd. admits that it is a Bermuda exempted company with its principal place of business in Hamilton, Bermuda and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

**215.    Third-party defendant NC Garnet Fund, LP participated in the Unlawful Exchange Transaction. NC Garnet Fund, LP is a Delaware limited partnership with its principal place of business in New York, NY.**

Response to Paragraph No. 215:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 215 and on that basis deny the allegations in Paragraph 215, except that the Represented Third-Party Defendant Fixed NC Garnet Fund, LP admits that it is a Delaware limited partnership with its principal place of business in New York, NY and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

216.    **Third-party defendants Magnetite XC, Limited, Magnetite XV, Limited, Magnetite XIV-R, Limited, Magnetite XVI, Limited, Magnetite VIII, Limited, Magnetite XVIII, Limited, Magnetite XIX, Limited, Magnetite XX, Limited, Magnetite XVII, Limited, Magnetite VII, Limited, and Magnetite XII, Limited (the "Magnetite Entities") participated in the Unlawful Exchange Transaction. The Magnetite Entities are Cayman Islands limited companies with their principal place of business in New York, NY.**

Response to Paragraph No. 216:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 216 and on that basis deny the allegations in Paragraph 216, except that the Represented Third-Party Defendants MAGNETITE XV, LIMITED, MAGNETITE XIV-R, LIMITED, MAGNETITE XVI, LIMITED, Magnetite VIII, Limited, MAGNETITE XVIII, LIMITED, MAGNETITE XIX, LIMITED, MAGNETITE XX, LIMITED, MAGNETITE XVII, LIMITED, Magnetite VII, Limited, and Magnetite XII, Ltd. admit that their principal place of business is New York, NY and that they were Exchanging Existing Lenders as that term is used in the PTL Credit Agreement, dated June 22, 2020.  The Represented Third-Party Defendants MAGNETITE XV, LIMITED, MAGNETITE XIV-R, LIMITED, MAGNETITE XVI, LIMITED, Magnetite VIII, Limited, MAGNETITE XVIII, LIMITED, MAGNETITE XIX, LIMITED, MAGNETITE XX, LIMITED, MAGNETITE XVII, LIMITED, Magnetite VII, Limited, and Magnetite XII, Ltd. deny that they are Cayman Islands limited companies.  The Represented Third-Party Defendants deny that the entity referred to as Magnetite XC, Limited exists.

217.   **Third-party defendants Nuveen Diversified Dividend and Income Fund, Nuveen Floating Rate Income Fund, Nuveen Floating Rate Income Opportunity Fund, Nuveen Senior Income Fund, Nuveen Short Duration Credit Opportunities Fund, and Nuveen Symphony Floating Rate Income Fund (collectively, the "Nuveen Funds") participated in the Unlawful Exchange Transaction. The Nuveen Funds are Massachusetts business trusts with their principal place of business in Chicago, IL.**

Response to Paragraph No. 217:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 217 and on that basis deny the allegations in Paragraph 217, except that (i) Represented Third-Party Defendant Nuveen Diversified Dividend and Income Fund states that it is now known as Nuveen Multi-Asset Income Fund and admits that it is a Massachusetts business trusts with a principal place of business in Chicago, IL and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020; (ii) Represented Third-Party Defendants Nuveen Floating Rate Income Fund, Nuveen Floating Rate Income Opportunity Fund, Nuveen Senior Income Fund, and Nuveen Short Duration Credit Opportunities Fund admit that they are Massachusetts business trusts with a principal place of business in Chicago, IL and were Exchanging Existing Lenders as that term is used in the PTL Credit Agreement, dated June 22, 2020; and (iii) Third-Party Defendant Nuveen Symphony Floating Rate Income Fund states that it is now known as Nuveen Floating Rate Income Fund, a series of Nuveen Investment Trust III, and admits that it is a Massachusetts business trusts with a principal place of business in Chicago, IL and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

218.    **Third-party defendant Principal Funds, Inc - Diversified Real Asset Fund participated in the Unlawful Exchange Transaction. Principal Funds, Inc - Diversified Real Asset Fund is a Maryland corporation with its principal place of business in Des Moines, IA.**

Response to Paragraph No. 218:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 218 and on that basis deny the allegations in Paragraph 218, except that the Third-Party Defendant Principal Funds, Inc - Diversified Real Asset Fund admits that it is a Maryland corporation with a principal place of business in Des Moines, IA and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

219. **Third-party defendants Symphony CLO XX Ltd., Symphony CLO XVII, Ltd., Symphony CLO XIX Ltd., Symphony CLO XVII, Ltd., Symphony CLO XV, Ltd., Symphony CLO XIV, Ltd., Symphony CLO XVI, Ltd., TCI-Symphony 2017-1 Ltd., TCI-Symphony 2016-1 Ltd. (collectively, the "Symphony CLOs"), Symphony Floating Rate Senior Loan Fund, and SCOF-2 Ltd. participated in the Unlawful Exchange Transaction. The Symphony CLOs and SCOF-2 Ltd. are Cayman Islands exempted companies with their principal place of business in San Francisco, CA. Symphony Floating Rate Senior Loan Fund is a Canadian closed-end investment fund with its principal place of business in Toronto, Canada.**

Response to Paragraph No. 219:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 219 and on that basis deny the allegations in Paragraph 219, except that (i) the Represented Third-Party Defendants Symphony CLO XX, Ltd., Symphony CLO XVII, Ltd., Symphony CLO XIX, Ltd., Symphony CLO XV, Ltd., Symphony CLO XIV, Ltd., Symphony CLO XVI, Ltd., TCI-Symphony CLO 2017-1 Ltd., TCI-Symphony CLO 2016-1 Ltd., and SCOF-2 Ltd. admit that they are Cayman Islands exempted companies funds and were Exchanging Existing Lenders as that term is used in the PTL Credit Agreement, dated June 22, 2020, but denies that their principal place of business is San Francisco, CA and (ii) the Represented Third-Party Defendant Symphony Floating Rate Senior Loan Fund admits that it is a Canadian closed investment fund with a principal place of business in Toronto, Canada and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

220.    **Represented Third-Party Defendants BayCity Alternative Investment Funds SICAV-SIF - BayCity US Senior Loan Fund and BayCity Senior Loan Master Fund Ltd. participated in the Unlawful Exchange Transaction. BayCity Alternative Investment Funds SICAV-SIF - BayCity US Senior Loan Fund is a Luxembourg investment company with variable capital and BayCity Senior Loan Master Fund Ltd. is a Cayman Islands exempted company with their principal place of business in San Francisco, CA.**

Response to Paragraph No. 220:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 220 and on that basis deny the allegations in Paragraph 220, except that (i) the Represented Third-Party Defendant BayCity Alternative Investment Funds SICAV-SIF - BayCity US Senior Loan Fund states that it is now known as Nuveen Alternative Investment Funds SICAV-SIF - Nuveen US Senior Loan Fund and admits that it is a Luxembourg investment company with variable capital and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020, but denies that its principal place of business is San Francisco, CA and (ii) the Represented Third-Party Defendant BayCity Senior Loan Master Fund Ltd. states that it is now known as Nuveen Senior Loan Fund LP and admits that it was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020, but denies that it is a Cayman Islands exempted company with its principal place of business in San Francisco, CA.

221.    **Third-party defendant Pensiondanmark Pensionforsikringsaktieselskab participated in the Unlawful Exchange Transaction. Pensiondanmark Pensionforsikringsaktieselskab is a Denmark limited company with its principal place of business in Copenhagen, Denmark.**

Response to Paragraph No. 221:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 221 and on that basis deny the allegations in Paragraph 221, except that the Represented Third-Party Defendant Pensiondanmark Pensionforsikringsaktieselskab admits that it is a Denmark limited company with its principal place of business in Copenhagen, Denmark and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

**222.     Third-party defendant Menard, Inc. participated in the Unlawful Exchange Transaction. Menard, Inc. is a Wisconsin business corporation with its principal place of business in Eau Claire, WI.**

Response to Paragraph No. 222:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 222 and on that basis deny the allegations in Paragraph 222, except that the Represented Third-Party Defendant Menard, Inc. admits that it is a Wisconsin business corporation with its principal place of business in Eau Claire, WI and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

**223.     Third-party defendant Municipal Employees Annuity & Benefit Fund of Chicago participated in the Unlawful Exchange Transaction. Municipal Employees Annuity & Benefit Fund of Chicago is an Illinois fund with its principal place of business in Chicago, IL.**

Response to Paragraph No. 223:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 223 and on that basis deny the allegations in Paragraph 223, except that the Represented Third-Party Defendant Municipal Employees Annuity & Benefit Fund of Chicago admits that it is an Illinois fund with its principal place of business in Chicago, IL and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

224.   **Third-party defendant Principal Diversified Real Asset CIT participated in the Unlawful Exchange Transaction. Principal Diversified Real Asset CIT is an Oregon trust with its principal place of business in Des Moines, IA.**

Response to Paragraph No. 224:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 224 and on that basis deny the allegations in Paragraph 224, except that the Represented Third-Party Defendant Principal Diversified Real Asset CIT admits that it is an Oregon trust and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020, but denies that its principal place of business is Des Moines, IA.

225.   **Third-Party Defendants California Street CLO IX Limited Partnership and California Street CLO XII, Ltd. participated in the Unlawful Exchange Transaction. California Street CLO IX Limited Partnership is a Cayman Islands limited partnership and California Street CLO XII, Ltd is a Cayman Islands exempted company with their principal place of business in San Francisco, CA.**

Response to Paragraph No. 225:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 225 and on that basis deny the allegations in Paragraph 225, except that (i) the Represented Third-Party Defendant California Street CLO IX Limited Partnership admits that it is a Cayman Islands limited partnership and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020, but denies that its principal place of business is San Francisco, CA; and (ii) the Represented Third-Party Defendant California Street CLO XII, Ltd. admits that it is a Cayman Islands exempted company and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020, but denies that its principal place of business is San Francisco, CA.

226.    **Third-party defendant TAO Fund, LLC participated in the Unlawful Exchange Transaction. TAO Fund, LLC is a Delaware limited liability company with its principal place of business in Fort Worth, TX.**

Response to Paragraph No. 226:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 226 and on that basis deny the allegations in Paragraph 226, except that the Represented Third-Party Defendant TAO Fund, LLC admits that it is a Delaware limited liability company and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020, but denies that its principal place of business in Fort Worth, TX.

227.    **Third-party defendants MP CLO III Ltd., MP CLO IV Ltd., MP CLO VII Ltd., MP CLO VIII Ltd., Marble Point CLO X Ltd., Marble Point CLO XI Ltd., Marble Point CLO XII Ltd., (collectively, the "Marble Point CLOs"), MPLF Funding Ltd., and**

**MPSFR Financing 1 Ltd. participated in the Unlawful Exchange Transaction. The Marble Point CLOs are Cayman Islands exempted companies with their principal place of business in Greenwich, CT. MPLF Funding Ltd., and MPSFR Financing 1 Ltd. are Guernsey companies with their principal place of business in Greenwich, CT.**

Response to Paragraph No. 227:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 227 and on that basis deny the allegations in Paragraph 227, except that the Represented Third-Party Defendants MP CLO, III Ltd., MP CLO, IV Ltd., MP CLO, VII Ltd., MP CLO, VIII Ltd., Marble Point CLO X Ltd., Marble Point CLO XI Ltd., Marble Point CLO XII Ltd. admit that they are Cayman Islands exempted companies and were Exchanging Existing Lenders as that term is used in the PTL Credit Agreement, dated June 22, 2020, but deny that their principal place of business is Greenwich, CT.

228. **Third-party defendants Marathon CLO V Ltd., Marathon CLO VII Ltd., Marathon CLO VIII Ltd., Marathon CLO IX Ltd., Marathon CLO X Ltd., and Marathon CLO XI Ltd. (collectively, the "Marathon CLOs") participated in the Unlawful Exchange Transaction. The Marathon CLOs are Cayman Islands exempted companies with their principal place of business in New York, NY.**

Response to Paragraph No. 228: The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 228 and on that basis deny the allegations in Paragraph 228, except that the Represented Third-Party Defendants Marathon CLO V Ltd., Marathon CLO VII Ltd., Marathon CLO VIII Ltd., Marathon CLO IX Ltd., Marathon CLO X Ltd., and Marathon CLO XI Ltd. admit that they are Cayman Islands exempted companies with their principal place of business in New York, NY and were Exchanging Existing Lenders as that term is used in the PTL Credit Agreement, dated June 22, 2020.

229. **Third-party defendant Bowery Funding ULC participated in the Unlawful Exchange Transaction. Bowery Funding ULC is a Canadian company with its principal place of business in Toronto, Canada.**

Response to Paragraph No. 229: The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 229 and on that basis deny the allegations in Paragraph 229.

230. **Third-party defendant Woodbine Funding ULC participated in the Unlawful Exchange Transaction. Woodbine Funding ULC is a Canadian company with its principal place of business in Toronto, Canada.**

Response to Paragraph No. 230: The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 230 and on that basis deny the allegations in Paragraph 230.

231. **Third-party defendants Elevation CLO 2013-1, Ltd., Elevation CLO 2014- 2, Ltd., Elevation CLO 2015-4, Ltd., Elevation CLO 2016-5, Ltd., Elevation CLO 2017-6, Ltd., Elevation CLO 2017-7, Ltd., Elevation CLO 2017-8 Ltd., Elevation CLO 2018-9, Ltd.,**

**Elevation CLO 2018-10, Ltd., and Peaks CLO 3, Ltd. (collectively, the "ArrowMark CLOs") participated in the Unlawful Exchange Transaction. The ArrowMark CLOs are Cayman Islands exempted companies with their principal place of business in Denver, CO.**

Response to Paragraph No. 231:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 231 and on that basis deny the allegations in Paragraph 231, except that (i) the Represented Third-Party Defendants Elevation CLO 2013-1, Ltd., Elevation CLO 2014- 2, Ltd., Elevation CLO 2016-5, Ltd., Elevation CLO 2017-6, Ltd., Elevation CLO 2017-7, Ltd., Elevation CLO 2017-8 Ltd., Elevation CLO 2018-9, Ltd., and Elevation CLO 2018-10, Ltd. admit that they are Cayman Islands exempted companies with a principal place of business in Denver, CO and were Exchanging Existing Lenders as that term is used in the PTL Credit Agreement, dated June 22, 2020; and (ii) the Represented Third-Party-Defendant Peaks CLO 3, Ltd states that it is now known as Elevation CLO 2021-15, Ltd., and admits that it is a Cayman Islands exempted company with its principal place of business in Denver, CO and was an Exchanging Existing Lender as that term is used in the PTL Credit Agreement, dated June 22, 2020.

## JURISDICTION AND VENUE

**232.   This Court has jurisdiction to consider the Counterclaims and Third-Party Claims under 28 U.S.C. § 1334.**

Response to Paragraph No. 232:  The allegations contained in Paragraph 232 constitute legal contentions and/or conclusions to which no response is required.

233.    **The Excluded Lenders submit that venue is <u>not</u> proper in this District, and that this action should be transferred to the United States District Court for the Southern District of New York, where a prior action concerning the same transaction and the same issues already is pending, because the parties agreed to exclusive jurisdiction in the federal or state courts in the Borough of Manhattan in New York City. Without waiver of or prejudice to that position, if the Court denies the Excluded Lenders' motion to transfer the proceeding, then venue would be proper under 28 U.S.C. § 1409 because these counterclaims and third-party claims relate to the Debtor's chapter 11 case captioned *In re Serta Simmons Bedding, LLC, et al.*, Case No. 23- 90020 (DRJ) (Bankr. S.D. Tex., Houston Div.).**

Response to Paragraph No. 233:  The Represented Third-Party Defendants admit that an action concerning the Transaction is currently pending and stayed in the Southern District of New York, but aver that on March 13, 2023 the Bankruptcy Court for the Southern District of Texas issued an order extending the Automatic Stay and further enjoining the parties to the action, captioned *AG Centre Street Partnership, L.P. et al. v. Eaton Vance Management et al*., 23-cv-0587 (S.D.N.Y.), from litigating it further.  The Represented Third-Party Defendants deny the allegation that the Third-Party Plaintiffs have moved to transfer.  The remainder of the allegations contained in Paragraph 233 constitute legal contentions and/or conclusions to which no response is required.

234.    **This is a non-core proceeding under 28 U.S.C. § 157.**

Response to Paragraph No. 234: The allegations contained in Paragraph 234 constitute legal contentions and/or conclusions to which no response is required. To the extent a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 234.

235. **Pursuant to Bankruptcy Rule 7008, the Excluded Lenders do not consent to the entry of final orders or judgment by this Court in connection with this adversary proceeding if it is determined that, absent consent of the parties, the Court cannot enter final orders or judgments consistent with Article III of the United States Constitution.**

Response to Paragraph No. 235: The allegations contained in Paragraph 235 constitute legal contentions and/or conclusions to which no response is required. To the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 235.

## FACTUAL ALLEGATIONS

236. **Serta is North America's largest bedding manufacturer. Based in Atlanta, Serta owns and manages the Serta® and Beautyrest® mattress brands. Serta today is the successor to two well-known American brands, Serta and Simmons, which were combined in 2010 when an investor group that already owned the parent of Serta purchased Simmons, as Simmons emerged from a Chapter 11 reorganization. The company's various brands, which also include the online retailer Tuft & Needle®, are distributed through national, hospitality, and regional and independent retail channels throughout North America, as well as directly to consumers.**

Response to Paragraph No. 236:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 236 and on that basis deny the allegations in Paragraph 236, except admit that Serta Simmons Bedding, LLC has its principal place of business near Atlanta in Doraville, GA.

237.    **Serta entered into three credit facilities dated as of November 8, 2016, each of which was executed by Serta and various affiliates and counterparties. The executed agreements include: (1) the Credit Agreement, which provided for $1.95 billion in First Lien Term Loans; (2) the Second Lien Credit Agreement, which provided for $450 million in Second Lien Term Loans; and (3) a $225 million asset-based revolving credit facility.  The proceeds of these facilities were used, in part, to pay a dividend to Serta's private equity sponsor.**

Response to Paragraph No. 237: The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 237 and on that basis deny the allegations in Paragraph 237, except admit the existence of the three referenced agreements and respectfully refer the Court to those agreements for a complete and accurate description of their contents.

238.    **The Credit Agreement includes a waterfall providing for the allocation of collateral proceeds upon an event of default, which includes a bankruptcy, or if the loans are accelerated. From a lender's perspective, this is among the most critical sections of the Credit Agreement. Section 2.18(b) of the Credit Agreement, which contains the payment waterfall, provides that after certain expenses are paid, the proceeds of collateral are to be divided *pro rata* among the First Lien Lenders, based on the face**

**amount of their ownership of loans. This means that all First Lien Lenders share ratably in the available value based on the percentage of the loans that they own.**

Response to Paragraph No. 238: The Represented Third-Party Defendants admit that the referenced agreement contains a Section 2.18(b) and respectfully refer the Court to that provision for a complete and accurate statement of its contents.  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning any particular unspecified lender's perspectives in Paragraph 238 and on that basis deny them.  The remaining allegations contained in Paragraph 238 constitute legal contentions and/or conclusions to which no response is required and, to the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 238.

239.   **In addition, all payments of principal and interest must be allocated to First Lien Lenders on a *pro rata* basis, and any First Lien Lender that receives more than its *pro rata* share must pay the excess ratably to the other First Lien Lenders, which is known as "*pro rata* sharing." Specifically, Section 2.18(c) provides (with emphasis added):**

> If any Lender obtains payment . . . in respect of any principal of or interest on any of its Loans of any Class held by it resulting in such Lender receiving payment of a greater proportion of the aggregate amount of its
>
> Loans of such Class and accrued interest thereon than the proportion received by any other Lender with Loans of such Class, **then the Lender receiving such greater proportion shall purchase (for Cash at face value) participations in the Loans of other Lenders of such Class at such time outstanding to the extent necessary so that the benefit of all such payments shall be shared by the Lenders of such Class ratably** in accordance with the aggregate amount of principal of and accrued interest on their respective Loans of such Class . . . .

Response to Paragraph No. 239: The Represented Third-Party Defendants admit that the referenced agreement contains a Section 2.18(c) and respectfully refer the Court to that provision for a complete and accurate statement of its contents.  The remaining allegations contained in Paragraph 239 constitute legal contentions and/or conclusions to which no response is required and, to the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 239.

240.  **The Credit Agreement's amendment provisions, to which all lenders agreed when they acquired the loans, underscore the centrality of the proceeds waterfall in Section 2.18(b) and the _pro rata_ sharing provision in Section 2.18(c). Most provisions in the Credit Agreement may be amended by "Required Lenders," defined as lenders representing more than 50% of the outstanding face amount of the loans. However, a handful of provisions in the Credit Agreement, often called "sacred rights," may be amended only by securing "the consent of each Lender directly and adversely affected thereby." Section 9.02(b)(A). This unanimity requirement is reserved for the waiver or amendment of the most important provisions of the agreement, including changes to the interest rate, the maturity date, and other provisions that are core to protecting a lender's right to be repaid on the terms upon which it made the original loans. The proceeds waterfall and _pro rata_ distribution and sharing set forth in Sections 2.18(b) and (c) are among the Credit Agreement's sacred rights, whose amendment requires consent of "each Lender directly and adversely affected thereby"—that is, all of the First Lien Lenders.**

Response to Paragraph No. 240: The Represented Third-Party Defendants admit that many provisions in the Non-PTL Term Loan Agreement may be amended by approval of the "Required Lenders" as defined in that Agreement.  The Represented Third-Party Defendants otherwise deny that the allegations in Paragraph 240 otherwise present a fair, accurate, or complete description of the Non-PTL Term Loan Agreement and respectfully refer the Court to that Agreement for a complete and accurate statement of its contents.  The remaining allegations contained in Paragraph 240 constitute legal contentions and/or conclusions to which no response is required and, to the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 240.

241. **Specifically, Section 9.02(b)(A)(6) provides that each affected lender must approve any agreement that "waives, amends or modifies Sections 2.18(b) or (c) of this Agreement in a manner that would by its terms alter the *pro rata* sharing of payments required thereby (except in connection with any transaction permitted under Sections 2.22, 2.23, 9.02(c), and/or 9.05(g) or as otherwise provided in this section 9.02)." As such, absent these four enumerated exceptions (which as demonstrated below, do not permit this type of transaction), the proceeds waterfall and *pro rata* sharing of proceeds may not be modified absent consent of *all* adversely affected Lenders.**

Response to Paragraph No. 241: The Represented Third-Party Defendants admit that the referenced agreement contains a Section 9.02(b)(A)(6), but deny that the allegations in Paragraph 241 present a fair, accurate, or complete description of 9.02(b)(A)(6) and respectfully refer the Court to that provision for a complete and accurate statement of its contents.  The Represented Third-Party Defendants also state that the allegation in the second sentence of Paragraph 241 contradicts the summary judgment decision issued by this Court on March 28, 2023.  The remaining allegations contained in Paragraph 241 constitute legal contentions and/or conclusions to which no response is required and, to the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 241.

242. **The Credit Agreement buttresses the inviolability of the sacred rights provisions, including the proceeds waterfall and *pro rata* sharing requirement, by also protecting the amendment provisions themselves. Thus, the Credit Agreement states that no agreement by the Required Lenders (meaning a mere majority of the First Lien Lenders) may "change any of the provisions of Section 9.02(a) or Section 9.02(b) or the definition of 'Required Lenders' to reduce any voting percentage required to waive, amend or modify any right thereunder or make any determination or grant any consent thereunder, *without the prior written consent of each Lender*." Section 9.02(b)(B)(1) (emphasis added). In other words, to prevent an end-run around the sacred rights provisions, any amendment of the provisions for amending the sacred rights— including the proceeds waterfall and *pro rata* sharing provisions—also requires the consent of *all* First Lien Lenders.**

103

Response to Paragraph No. 242: The Represented Third-Party Defendants admit that the referenced agreement contains a Section 9.02(b)(B)(1) and respectfully refer the Court to that provision for a complete and accurate statement of its contents.  The remaining allegations contained in Paragraph 242 constitute legal contentions and/or conclusions to which no response is required and, to the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 242.

243.    **Section 9.02 also protects the First Lien Lenders by providing that, without the prior written consent of each of them, no agreement shall "release all or substantially all of the Collateral from the Lien granted pursuant to the Loan Documents (except as otherwise permitted herein or in the other Loan Documents, including pursuant to Article 8 or Section 9.22 hereof)" or "release all or substantially all of the value of the Guarantees under the Loan Guaranty (except as otherwise permitted herein or in the other Loan Documents, including pursuant to Section 9.22 hereof)." Section 9.02(b)(B)(3). These provisions protect the First Lien Lenders' collateral from being stripped of its value, which backstops both the loans and the First Lien Term Loan Guaranty Agreement.**

Response to Paragraph No. 243: The Represented Third-Party Defendants admit that the referenced agreement contains a Section 9.02(b)(B)(3) and respectfully refer the Court to that provision for a complete and accurate statement of its contents.  The remaining allegations contained in Paragraph 243 constitute legal contentions and/or conclusions to which no response is required and, to the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 243.

***Serta Negotiates the Unlawful Exchange Transaction with the Favored Lenders***

244. **Even before the COVID-19 pandemic, Serta had been struggling financially for some time. Indeed, in early March 2020, before the most serious effects of the pandemic began to impact the economy, Serta's First Lien Term Loans were trading at less than fifty cents on the dollar, and its Second Lien Term Loans were trading at less than twenty cents. Its issuer credit rating by S&P was CC, deep into the territory of "junk." Serta was regularly featured on its own page of the industry publication *Reorg Research*, which focuses on companies in distress. Then came COVID-19, which exacerbated the Company's already difficult circumstances.**

> Response to Paragraph No. 244: The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 244, and on that basis deny them.

245. **In early 2020, Serta and certain of the Excluded Lenders began discussing providing additional loans and restructuring their First Lien Term Loans to reduce Serta's indebtedness and interest expense. On or about April 30, 2020, those parties entered into non-disclosure agreements ("NDAs") with Serta in order to allow them to receive non-public information about the Company so that they could evaluate and negotiate a potential transaction. The NDAs, which expired on May 29, 2020, also restricted certain of the Excluded Lenders from open-market trading in Serta loans.**

> Response to Paragraph No. 245:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 245 and on that basis deny them.

246. **Serta and certain of the Excluded Lenders discussed a transaction whereby those Excluded Lenders would lend against certain of Serta's non-collateral assets, which**

**transaction would clearly be permitted by the terms of the Credit Agreement without requiring any amendment. Neither Serta nor any of the Excluded Lenders proposed or discussed a transaction involving an amendment to the Credit Agreement that would have violated the sacred *pro rata* payment rights of the First Lien Term Loans or any other provision of the Credit Agreement. On June 5, 2020, Serta abruptly ended the parties' negotiations.**

Response to Paragraph No. 246:  The allegations contained in Paragraph 246 concerning the Credit Agreement constitute legal contentions and/or conclusions to which no response is required and, to the extent that a response is required, the Represented Third-Party Defendants deny those allegations in Paragraph 246.  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 246 and on that basis deny them.

247.   **On the evening of June 8, 2020, Serta announced in a press release that it had entered into a transaction support agreement with a group of Favored Lenders— holders of a majority of its First Lien and Second Lien Term Loans. The press release said that the transaction was designed to "*recapitalize* the company" (emphasis added), and made no reference to "open market purchases." The press release disclosed that Serta and the Favored Lenders were preparing documentation for a transaction that would create:**

(a)   **$200 million of new money super-priority "first out" debt, funded by the Favored Lenders, which would rank ahead of the existing First Lien Term Loans;**

(b)     Up to $875 million of super-priority "second out" debt, issued in exchange for First Lien Term Loans and Second Lien Term Loans (defined below) held by the Favored Lenders, which also would rank ahead of the existing First Lien Term Loans; and

(c)     An unspecified amount of capacity to incur still more super-priority debt, which would be "third out" and also would rank ahead of the existing First Lien Term Loans.

Response to Paragraph No. 247: The Represented Third-Party Defendants admit that Serta issued a press release on June 8, 2020 and respectfully refer the Court to that press release for a complete and accurate statement of its contents.  The Represented Third-Party Defendants deny any remaining allegations in Paragraph 247.

248.    The press release did not explain how Serta and the Favored Lenders planned to implement the Unlawful Exchange Transaction. As the Excluded Lenders later learned, the Favored Lenders approved amendments to the Credit Agreement and Serta's Second Lien Term Loan Agreement (the "Second Lien Credit Agreement") that (i) authorized the Priority Term Loan Agreement, (ii) ratified the Unlawful Exchange Transaction, and (iii) instructed the administrative agent for the Credit Agreement to enter into a new intercreditor agreement providing for payment subordination of the First Lien Term Loans to the new Priority Term Loans.

Response to Paragraph No. 248: The Represented Third-Party Defendants admit that Serta issued a press release on June 8, 2020 and respectfully refer the Court to that press release for a complete and accurate statement of its contents.  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 246 concerning what the "Excluded Lenders later learned," and on that basis deny them, and otherwise deny the remaining allegations in Paragraph 248.

249.   **Among other things, the amendments approved by the Favored Lenders (but not by other First Lien Lenders, including the Excluded Lenders) modified the definition of "Incremental Equivalent Debt" permissible under the Agreement to include "Indebtedness issued under the PTL [Priority Term Loan] Credit Agreement . . . which may be senior, *pari passu* or junior in right of payment and/or with respect to security with the Obligations hereunder[.]" Agreement § 1.01; *see also id*., § 6.01(z) (allowing Serta to incur Incremental Equivalent Debt). Notably, such amendments effectively allow *unlimited* additional debt to come in on a "super senior" basis to the First Lien Term Loans. The amendments also altered Section 8.08 of the Agreement to authorize the Administrative Agent to enter into a separate intercreditor agreement establishing senior payment priority for the PTL Loans. Agreement § 8.08(d). Furthermore, the amendments added a new subpart to Section 2.11(b), which outlines the circumstances triggering mandatory prepayment of the First Lien Term Loans, and which affirmed that the PTL Loans had rights of payment senior to that of the First Lien Lenders. Agreement § 2.11(b)(vii). In addition, the amendments excised Credit Agreement Section 7.01(l), which designates any subordination of the First Lien Term Loans as an event of default. Agreement § 7.01(l).**

Response to Paragraph No. 249: The Represented Third-Party Defendants deny the allegations in Paragraph 249, except admit that the Non-PTL Term Loan Agreement was amended in connection with the Transaction and respectfully refer the Court to the Transaction agreements for a complete and accurate statement of their contents.

250.    **Serta and the Favored Lenders also excluded the proceeds of the sale of "AI Dream," a joint venture between Serta and King Koil that is one of the "largest players in China's premium mattress market," from the definition of "Prepayment Asset Sale" (which feeds into the mandatory prepayment requirements of the Credit Agreement). Agreement § 1.01. Accordingly, though Serta disposed of its stake in AI Dream in August 2021, it purportedly is no longer required to apply the substantial net cash proceeds received from that sale to satisfy the Excluded Lenders' First Lien Term Loans, a direct consequence of the Unlawful Exchange Transaction.**

Response to Paragraph No. 250: The Represented Third-Party Defendants admit that the referenced agreement contains a Section 1.01 and respectfully refer the Court to that agreement for a complete and accurate statement of its contents.  The allegations contained in Paragraph 250 concerning what Serta "is no longer required" to do constitute legal contentions and/or conclusions to which no response is required and, to the extent that a response is required, the Represented Third-Party Defendants deny those allegations in Paragraph 250.  The Represented Third-Party Defendants deny the remaining allegations in Paragraph 250.

251.    **In total, Serta and the Favored Lenders amended no fewer than two dozen provisions of the Credit Agreement to effect their unlawful scheme.**

Response to Paragraph No. 251:  The Represented Third-Party Defendants deny the allegations in Paragraph 251, except admit that the Non-PTL Term Loan Agreement was amended in connection with the Transaction and respectfully refer the Court to the Transaction agreements for a complete and accurate statement of their contents.

252.    **As Serta and the Favored Lenders knew and intended, given the condition of Serta's business, this was tantamount to transforming the Excluded Lenders from First Lien Lenders into subordinated unsecured lenders, while allowing other lenders—including Second Lien Lenders—improperly to leapfrog into a new, purportedly "super-priority" position. Under the new intercreditor agreement, the Priority Term Loan Lenders took over priority rights to repayment from Serta, including with respect to the collateral. Adding insult to injury, in addition to their "super-senior" priority, the Priority Term Loans issued in exchange for the First Lien Term Loans of the Favored Lenders bear interest at a rate 4.00% per annum higher, or a margin that is more than 100% greater, than the First Lien Term Loans.**

Response to Paragraph No. 252: The allegations contained in Paragraph 252 constitute legal contentions and/or conclusions to which no response is required and, to the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 252.

*Certain of the Excluded Lenders Initiate Litigation, and Serta Refuses to Provide Information About the Unlawful Exchange Transaction Prior to Closing*

253.    **Certain of the Excluded Lenders filed a Complaint in New York state court on June 11, 2020, seeking to enjoin the proposed transaction, under the caption *North Star Debt Holdings, L.P.* v. *Serta Simmons Bedding, LLC*, Index No. 652243/2020. The court**

entered an Order to Show Cause providing for a temporary restraining order on June 12, 2020, and held a preliminary injunction hearing on June 16, 2020.

Response to Paragraph No. 253: The Represented Third-Party Defendants admit the allegations in Paragraph 253.

254.    On June 19, 2020, the New York state court denied the motion for a preliminary injunction. The court ruled that those Excluded Lenders had not shown a likelihood of success on their claims at that juncture based on the available information, and had not established irreparable harm because money damages were available. Following the court's denial of the motion, the Excluded Lenders filed a motion to voluntarily dismiss the action without prejudice, which was granted in December 2020.

Response to Paragraph No. 254: The Represented Third-Party Defendants admit the allegations in Paragraph 254, except respectfully refer the Court to the June 19, 2020 ruling and the voluntary motion to dismiss in the referenced litigation for a complete and accurate statement of their contents.

255.    The Unlawful Exchange Transaction closed on June 22, 2020. Only after it closed did Serta provide the Excluded Lenders that had sued with certain of the transaction documents, which demonstrated the mechanics of the transaction, including the new Priority Term Loan Agreement, as well as the amendments to the existing Credit Agreement and the new intercreditor agreement.

Response to Paragraph No. 255: The Represented Third-Party Defendants admit the Transaction closed on June 22, 2020.  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 255, and on that basis deny them.

256.    **Pursuant to these agreements, the Favored Lenders exchanged $992 million of First Lien Term Loans for $734 million of new Priority Term Loans (reflecting an exchange rate of 74%) and $299 million of loans under the Second Lien Credit Agreement (the "Second Lien Term Loans") for $116 million of new Priority Term Loans (reflecting an exchange rate of 39%). Upon an event of default, there now are at least $850 million in new Priority Term Loans in line ahead of the First Lien Lenders asserting rights to collateral that is supposed to be distributed *pro rata*.**

Response to Paragraph No. 256: The Represented Third-Party Defendants respectfully refer the Court to the agreements documenting the June 22, 2020 transaction for a complete and accurate statement of their contents, and otherwise deny any remaining allegations in Paragraph 256.

257.    **This does not even take into account the fact that Serta and the Favored Lenders amended the Credit Agreement, to which the Favored Lenders no longer are parties, to permit an unlimited amount of additional loans to jump ahead of the Excluded Lenders' loans. Consequently, the Excluded Lenders, which had been first-lien and first-priority lenders, are now unsecured lenders in Serta's bankruptcy, while other lenders—including current Second Lien Lenders—have leapfrogged into a new super-priority position.**

Response to Paragraph No. 257: The Represented Third-Party Defendants deny the allegations in Paragraph 257, except admit that the Non-PTL Term Loan Agreement was amended in connection with the Transaction and respectfully refer the Court to the Transaction agreements for a complete and accurate statement of their contents.

258.    **Moreover, in a transparently punitive measure, as part of the Unlawful Exchange Transaction, Serta added counterclaim/third-party plaintiffs Apollo, Angelo Gordon, and Gamut to the DQ List not only for the amended Credit Agreement but also for the PTL Credit Facility, barring them from acquiring any interests in those loans.**

Response to Paragraph No. 258:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 258 and on that basis deny the allegations in Paragraph 258.

259.    **Shortly after the New York state court's denial of the motion for a preliminary injunction, investment funds managed by affiliates of LCM Asset Management LLC ("LCM") initiated an action challenging the Unlawful Exchange Transaction in the United States District Court for the Southern District of New York. After their initial complaint, which named as defendants both Serta and the Favored Lenders, was dismissed for lack of federal subject matter jurisdiction (due to an absence of complete diversity), LCM re-filed its case against Serta alone (the "LCM Action"). On March 29, 2022, United States District Judge Katherine Polk Failla, who was assigned to the LCM Action, denied Serta's motion to dismiss LCM's claims for breach of contract and breach of the implied covenant of good faith and fair dealing. *See LCM XII Ltd. v. Serta Simmons Bedding, LLC*, 2022 WL 953109 (S.D.N.Y. Mar. 29, 2022).**

Response to Paragraph No. 259:  The Represented Third-Party Defendants admit that LCM brought an action challenging the 2020 Transaction in the United States District Court for the Southern District of New York against the Company and certain of the lenders that had participated in the Transaction, and that the action was dismissed for lack of federal subject matter jurisdiction.  The Represented Third-Party Defendants further admit that LCM then filed a separate action against just the Company in the Southern District of New York and that the Company moved to dismiss that action.  The Represented Third-Party Defendants respectfully refer the Court to Judge Failla's decision on that motion for a complete and accurate statement of its contents.  The Represented Third-Party Defendants deny the remaining allegations in Paragraph 259.

260.    **On October 17, 2022, the New York state court that previously had denied the Excluded Lenders' motion for a preliminary injunction issued a decision in another case involving a similar credit agreement and transaction structure. In that case, the court ruled that the term "open market purchase" was ambiguous and therefore denied the defendants' motions to dismiss claims alleging that a privately negotiated uptier exchange with a group of favored lenders did not qualify as an "open market purchase." *See ICG Global Loan Fund I DAC v. Boardriders Inc.*, Index No. 655175/2020, 2022 WL 10085886, at \*9 (Sup. Ct. N.Y. Cnty. Oct. 17, 2022).**

Response to Paragraph No. 260: The Represented Third-Party Defendants admit that a New York state court issued a decision in the unrelated case captioned *ICG Global Loan Fund I DAC v. Boardriders Inc*., Index No. 655175/2020 (Sup. Ct. N.Y. Cnty. Oct. 17, 2022), and respectfully refer the Court to the decision for a complete and accurate statement of its contents. The Represented Third-Party Defendants deny the remaining allegations in Paragraph 260.

**261.    The court's decision prompted the Excluded Lenders to initiate a new action against Serta and the Favored Lenders, on November 3, 2022. The Excluded Lenders asserted, *inter alia*, claims against Serta and the Favored Lenders seeking money damages for breach of contract with respect to the waterfall and *pro rata* sharing provisions of Section 2.18 of the Credit Agreement, breach of the implied covenant of good faith and fair dealing for depriving the Excluded Lenders of their right to receive the fruits of the Credit Agreement, and breach of contract with respect to the amendment procedures set forth in Sections 9.02(b)(B)(2) and (3) of the Credit Agreement.**

Response to Paragraph No. 261: The Represented Third-Party Defendants admit that certain of the lenders that had not participated in the Transaction filed a complaint in New York state court on November 3, 2022 and respectfully refer the Court to their complaint in that action for a complete and accurate statement of its contents. The Represented Third-Party Defendants deny any remaining allegations in Paragraph 261.

**262.    Serta and the Favored Lenders moved to dismiss the New York state complaint on January 9, 2023. Three weeks later, on January 23, 2023, Serta filed for protection under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas. As a result of Serta's chapter 11 filing, the Excluded**

Lenders' claims against Serta were stayed pursuant to the automatic stay provisions of Section 362(a) of the Bankruptcy Code. For the same reason, the LCM Action against Serta also was stayed. *See LCM XII Ltd. v. Serta Simmons Bedding*, 21-cv-3987, Dkt 61.

Response to Paragraph No. 262:  The Represented Third-Party Defendants admit the allegations in Paragraph 262.

263.   **Following Serta's chapter 11 filing, the Excluded Lenders removed their claims for money damages against the Favored Lenders only to the Southern District of New York. The case was assigned to Judge Failla as related to the LCM Action. *See AG Centre Street Partnership, L.P. et al. v. Eaton Vance Management et al.*, 23-cv-0587 (S.D.N.Y.). That case has been stayed temporarily by this Court until March 13, 2023.**

Response to Paragraph No. 263:  The Represented Third-Party Defendants aver that on March 13, 2023, the Bankruptcy Court issued an order extending the Automatic Stay and further enjoining the parties to the action captioned *AG Centre Street Partnership, L.P. et al. v. Eaton Vance Management et al.*, 23-cv-0587 (S.D.N.Y.) from litigating it further.  The Represented Third-Party Defendants admit the remaining allegations in Paragraph 263.

*The Unlawful Exchange Transaction Does Not Satisfy the "Open Market Purchases" Exception to the Pro Rata Sharing Requirement of the Credit Agreement*

264.   **Serta and the Favored Lenders have argued that the Unlawful Exchange Transaction complied with the Credit Agreement because it was accomplished through "open market purchases," as purportedly permitted under Section 9.05(g). This assertion makes a mockery of the notion of "open market purchases."**

Response to Paragraph No. 264:  The Represented Third-Party Defendants deny the allegations in Paragraph 264, except admit that the Transaction was effectuated through open market purchases pursuant to Section 9.05(g) of the referenced agreement.  The Represented Third-Party Defendants also state that the allegation in the second sentence of Paragraph 264 contradicts the summary judgment decision issued by this Court on March 28, 2023.  The Represented Third-Party Defendants deny the remaining allegations in Paragraph 264.

265.    **The Credit Agreement, prior to the Unlawful Exchange Transaction, recognized that four types of amendments are permissible without unanimous consent, and expressly carved such amendments out of the limitations on amendments to the "sacred rights" provisions:**

   (a)    **Section 2.22 provides for the issuance of incremental additional loans and Section 2.23 provides for the extension of the maturity of existing loans. Both sections, however, provide that the incremental or extended loans (as the case may be) must be either *pari passu* with—*i.e.*, have no greater right to receive the collateral proceeds—or junior to the existing loans. Section 2.23 also requires that any extended loan be offered to each of the First Lien Lenders on the same terms, and be made available on a *pro rata* basis.**

   (b)    **Section 9.02(c) permits refinancing or replacement of existing loans. Like Sections 2.22 and 2.23, this provision, too, requires that any replacement loans be *pari passu* with or junior to existing loans.**

   (c)    **Finally, Section 9.05(g) allows a First Lien Lender to assign its loans on a non-*pro rata* basis in certain limited circumstances through either a Dutch Auction or an open market purchase.**

Response to Paragraph No. 265:  The Represented Third-Party Defendants admit that the referenced agreement contains Sections 2.22, 2.23, 9.02(c), and 9.05(g) and respectfully refers the Court to those provisions for a complete and accurate statement of their contents.  The Represented Third-Party Defendants deny any remaining allegations in Paragraph 265.

266.    **In the litigation that has occurred to date, Serta and the Favored Lenders have not purported to justify the Unlawful Exchange Transaction under any of the first three provisions, and have asserted only that the transaction constitutes "open market purchases" which would be permitted under Section 9.05(g).**

Response to Paragraph No. 266: The Represented Third-Party Defendants deny the allegations in Paragraph 266, except admit that the Transaction was effectuated through open market purchases pursuant to Section 9.05(g) of the referenced agreement.  The Represented Third-Party Defendants respectfully refer the Court to the summary judgment motions filed by Plaintiffs in this action for a complete and accurate statement of their arguments on this issue, and to this Court's March 28, 2023 ruling from the bench resolving those arguments.

267.    **The Unlawful Exchange Transaction, however, does not remotely resemble an open market purchase. Rather, Serta dealt directly and in private with a bare majority of its existing first and second lien lenders (excluding the remainder) who participated in an exchange that required the execution of voluminous documentation—including (1) a new Priority Term Loan Agreement, which is over 400 pages long; (2) amendments to the Credit Agreement and Second Lien Term Loan Agreement, each of which is over 200 pages long; and (3) a new intercreditor agreement with the agent for the Priority Term Loan Agreement that subordinated other lenders holding *pari passu* loans.**

Response to Paragraph No. 267: The Represented Third-Party Defendants deny the allegations in Paragraph 267, except admit that the referenced Non-PTL Term Loan Agreement and Second Lien Term Loan Agreement were amended and that the Company entered into the referenced Priority Term Loan Agreement and intercreditor agreement, and respectfully refer the Court to those amendments and agreements for complete and accurate statements of their contents. The Represented Third-Party Defendants also state that the allegations in Paragraph 267 contradicts the summary judgment decision issued by this Court on March 28, 2023.

268. **To interpret the Unlawful Exchange Transaction as an open market purchase would allow nearly *any* transaction to be considered an open market purchase, capable of circumventing the stringent *pro rata* payment requirements and the associated "sacred rights" protections. Indeed, in Serta's own words, the Unlawful Exchange Transaction constituted a "*recapitaliz[ation]* of the company." Permitting a wholesale recapitalization of the company (with participation only open to a majority of the Lenders, and excluding the remainder) to qualify as a purported open market purchase would allow the limited exception to swallow the rule entirely.**

Response to Paragraph No. 268:  The Represented Third-Party Defendants deny the allegations in Paragraph 268, and respectfully refer the Court to the summary judgment motions filed by Plaintiffs in this action for a complete and accurate statement of their arguments on this issue.  The Represented Third-Party Defendants also state that the allegations in the first and third sentences of Paragraph 268 contradict the summary judgment decision issued by this Court on March 28, 2023.

269.   **Serta and the Favored Lenders cannot point to a *single* comparable precedent transaction that has qualified as an "open market purchase." In the litigation that has occurred to date, Serta and the Favored Lenders have cited a handful of transactions as purportedly adopting their contorted view of "open market purchases," but such transactions involved *solely new money* loans. The Excluded Lenders do not dispute that the new money aspect of the Unlawful Exchange Transaction was permitted, since new money loans could be given priority without a unanimous vote. The non-*pro rata* payment of the Favored Lenders' First Lien Term Loans using new Priority Term Loans violated the Credit Agreement's requirement that all First Lien Term Loans share ratably in payments. None of the so-called precedent transactions cited by Serta and the Favored Lenders included an exchange of existing loans on a non-*pro rata* basis.**

Response to Paragraph No. 269:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in third sentence of Paragraph 258, and on that basis deny those allegations, and otherwise deny the remaining allegations in Paragraph 269.  The Represented Third-Party Defendants also state that the allegations in the fourth sentence of Paragraph 269 contradict the summary judgment decision issued by this Court on March 28, 2023.

270.    **Notably, in denying Serta's motion to dismiss the LCM Action, Judge Failla rejected the company's view that, on its face, the Unlawful Exchange Transaction involved an "open market purchase" that would be an exception to the *pro rata* sharing requirement. She held that "at a minimum," the term "open market purchase" is "ambiguous in this context." *LCM*, 2022 WL 953109, at \*7. Judge Failla went on to conclude that "[o]n a plain reading of the term, the [Unlawful Exchange] Transaction depicted in the Complaint did not take place in what is conventionally understood as an 'open market.'" *Id.* at \*8. For this reason, among others, she denied Serta's motion to dismiss LCM's claims challenging the non-*pro rata* treatment of First Lien Lenders other than the Favored Lenders. *Id.***

Response to Paragraph No. 270:  The Represented Third-Party Defendants admit that Judge Failla denied in part the Company's motion to dismiss in the LCM Action and respectfully refer the Court to her opinion and order for a complete and accurate statement of its contents. The Represented Third-Party Defendants deny any remaining allegations in Paragraph 270.

*The Unlawful Exchange Transaction Violates the Payment Waterfall and Pro Rata Sharing Provision*

**271.    Beyond the fact that the Unlawful Exchange Transaction was not a permitted open market purchase, the Credit Agreement does not permit an amendment that would prioritize repayment of the First Lien Term Loans held by some lenders over those of others. However, by authorizing a new Priority Intercreditor Agreement that granted the Favored Lenders "super-priority" status with respect to loans issued in exchange for their First Lien Term Loans, the Favored Lenders used their position as majority lenders to illegally usurp the sacred rights held by *each* lender.**

Response to Paragraph No. 271:  The allegations contained in Paragraph 271 constitute legal contentions and/or conclusions to which no response is required.  To the extent a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 271, and also state that the allegations in the first sentence of Paragraph 271 contradict the summary judgment decision issued by this Court on March 28, 2023.

**272.    It is fundamental that a party may not lawfully do indirectly that which is unlawful to be done directly under a contract. Section 2.18(b) of the Credit Agreement, which contains the payment waterfall, provides that after certain expenses are paid, the proceeds of collateral are to be divided *pro rata* among the First Lien Lenders, based on the face amount of their loans and other obligations. This means that all First Lien Lenders share ratably in the available value based on the percentage of the loans that they own, and no First Lien Lender (or group of such lenders) has a superior right to the collateral over any other(s). Thus, Section 2.18(b) provides:**

> Subject in all respects to the provisions of each applicable Intercreditor Agreement, all proceeds of Collateral received by the Administrative Agent while an Event of Default exists and all or any portion of the Loans have been accelerated hereunder pursuant to Section 7.01, shall be applied, first, to the

payment of all costs and expenses then due incurred by the Administrative Agent in connection with any collection, sale or realization on Collateral or otherwise in connection with this Agreement, any other Loan Document or any of the Secured Obligations, including all court costs and the fees and expenses of agents and legal counsel, the repayment of all advances made by the Administrative Agent hereunder or under any other Loan Document on behalf of any Loan Party and any other costs or expenses incurred in connection with the exercise of any right or remedy hereunder or under any other Loan Document, second, on a pro rata basis, to pay any fees, indemnities or expense reimbursements then due to the Administrative Agent (other than those covered in clause first above) from the Top Borrower constituting Secured Obligations, ***third, on a pro rata basis in accordance with the amounts of the Secured Obligations (other than contingent indemnification obligations for which no claim has yet been made) owed to the Secured Parties on the date of any such distribution, to the payment in full of the Secured Obligations***, fourth, as provided in each applicable Intercreditor Agreement, and fifth, to, or at the direction of, the Top Borrower or as a court of competent jurisdiction may otherwise direct. (emphasis added)

Response to Paragraph No. 272: The Represented Third-Party Defendants admit that the referenced agreement contains a Section 2.18(b) and respectfully refer the Court to that provision for a complete and accurate statement of its contents. The remaining allegations in Paragraph 272 are legal contentions and/or conclusions to which no response is required. To the extent a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 272.

**273.    As with the *pro rata* sharing provision, Section 2.18(b) of the Credit Agreement is treated as a "sacred" right, and may not be amended absent the consent of all adversely affected First Lien Lenders.**

Response to Paragraph No. 273: The Represented Third-Party Defendants admit that the referenced agreement contains a Section 2.18(b) and respectfully refer the Court to that agreement for a complete and accurate statement of its contents. The Represented Third-Party Defendants deny any remaining allegations in Paragraph 273.

**274.    To carry out the Unlawful Exchange Transaction, however, the Favored Lenders, by a mere majority vote, amended the Credit Agreement to permit Priority Term**

**Loans pursuant to a new Priority Intercreditor Agreement that was never before contemplated. This agreement threw out the Credit Agreement's *pro rata* distribution requirement and replaced it with a new, multi-tier "waterfall" in which, in the event of a default, more than $850 million would be paid to holders of the Priority Term Loans issued in exchange for First Lien Term Loans before a single penny is paid to the Excluded Lenders and the other First Lien Lenders on account of the same First Lien Term Loans.**

Response to Paragraph No. 274:  The Represented Third-Party Defendants deny the allegations in Paragraph 274, except admit that the referenced Non-PTL Term Loan Agreement was amended and that the Company entered into the referenced intercreditor agreement, and respectfully refer the Court to those amendments and agreements for complete and accurate statements of their contents.

**275.   While Serta has protested that the payment waterfall found in Section 2.18 was not formally amended by elevating the First Lien Term Loans of the Favored Lenders ahead of all others through a new "super-priority" term loan, as a practical matter, the Unlawful Exchange Transaction has effected just such an amendment and, in so doing, radically reordered the waterfall. It is axiomatic that contracts entered into at the same time, in the context of the same transaction, should be read together as one instrument, and here, these contract amendments, read together, entirely vitiate the Excluded Lenders' sacred rights to *pro rata* treatment.**

Response to Paragraph No. 275:  The claims in Paragraph 275 are legal contentions and/or conclusions to which no response is required. To the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 275.

276.    **Serta neither obtained nor even sought the requisite consent of any First Lien Lenders other than the Favored Lenders, who all are beneficiaries of the new super-priority status in the new waterfall. Serta and the Favored Lenders thus clearly have done indirectly what they were not permitted to do directly under the Credit Agreement—namely, provide for the payment of the First Lien Term Loans previously held by the Favored Lenders ahead of all other First Lien Lenders.**

Response to Paragraph No. 276:  The second sentence of Paragraph 276 contains legal contentions and/or conclusions to which no response is required.  To the extent a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 276, and also state that the allegations in the second sentence of Paragraph 276 contradict the summary judgment decision issued by this Court on March 28, 2023.

277.    **The Favored Lenders also violated the *pro rata* sharing provision by failing to share *pro rata* with the Excluded Lenders the benefits they received through the Unlawful Exchange Transaction, as required by Section 2.18(c) of the Credit Agreement.**

Response to Paragraph No. 277:  The second sentence of Paragraph 277 contains legal contentions and/or conclusions to which no response is required.  To the extent a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 277, and also state that the allegations in the second sentence of Paragraph 277 contradict the summary judgment decision issued by this Court on March 28, 2023.

***The Unlawful Exchange Transaction Violates the Credit Agreement by Stripping the Excluded Lenders' Loans of Their Collateral and Value***

278.    **The Unlawful Exchange Transaction also violates the Credit Agreement because it improperly strips the Excluded Lenders' loans of their collateral and value. Sections 9.02(b)(B)(2) and (3) of the Credit Agreement provide that no amendment to the Credit Agreement shall "release all or substantially all of the Collateral from the Lien granted pursuant to the Loan Documents," or "release all or substantially all of *the value of* the Guarantees, without the prior written consent of each" First Lien Lender.**

Response to Paragraph No. 278:  The allegations in Paragraph 278 constitute legal contentions and/or conclusions to which no response is required.  To the extent a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 278, except admit that the referenced agreement includes Sections 9.02(b)(B)(2) and 9.02(b)(B)(3) and respectfully refer the Court to those provisions for a complete and accurate statement of their contents.

279.    **By placing over $1 billion in Priority Term Loans ahead of the guarantees of the First Lien Term Loans, the Unlawful Exchange Transaction released all or substantially all of the collateral and of *the value of* the guarantees that protected the First Lien Lenders. The notion that Serta – a bankrupt company – can make good on the $1 billion in Priority Term Loans and also settle its debts to the Excluded Lenders is**

**fanciful. Thus, the collateral and guarantees of the First Lien Term Loans no longer have any value. Because Serta and the Favored Lenders did not obtain—or even request—the Excluded Lenders' consent before releasing the value of such guarantees, they violated Sections 9.02(b)(B)(2) and (3) of the Credit Agreement.**

Response to Paragraph No. 279:  The allegations in Paragraph 279 constitute legal contentions and/or conclusions to which no response is required.  To the extent a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 279.

***Serta Improperly Interfered with Apollo's Purchase of First Lien Term Loans***

280. **The Unlawful Exchange Transaction also came on the heels of Serta's improper interference with Apollo's legitimate purchases of First Lien Term Loans beginning in March 2020. As set forth in more detail below, Serta improperly and unjustifiably blocked the assignment of loans to Apollo in further support of its strategy to deprive the Excluded Lenders of their lawful entitlements under the Credit Agreement.**

Response to Paragraph No. 280:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning the Company's conduct in Paragraph 280, and on that basis deny those allegations, and otherwise deny the allegations in Paragraph 280.

281. **Section 9.05 of the Credit Agreement grants each of the First Lien Lenders the right to transfer its rights and obligations under the Credit Agreement to "Eligible Assignees," broadly defined to include any fund that invests in loans, such as Apollo.**

Response to Paragraph No. 281:  The Represented Third-Party Defendants admit that the referenced agreement includes a Section 9.05 and respectfully refer the Court to that provision for a complete and accurate statement of its contents. The Represented Third-Party Defendants deny the remaining allegations in Paragraph 281.

282.    **Such a transfer could occur either as an assignment, whereby a purchaser becomes a First Lien Lender of record and is entitled to full rights under the Credit Agreement (including voting and economic rights), or as a participation, whereby a purchaser does not become a First Lien Lender of record but acquires economic rights and limited voting rights indirectly through an existing First Lien Lender, which remains the First Lien Lender of record.**

Response to Paragraph No. 282:  The allegations in Paragraph 282 constitute legal contentions and/or conclusions to which no response is required.  To the extent that a response is required, the Represented Third-Party Defendants respectfully refer the Court to the referenced agreement for a complete and accurate statement of its contents and deny any remaining allegations in Paragraph 282.

283.    **The Credit Agreement restricted a First Lien Lender's ability to transfer its rights and obligations to a specified list of Disqualified Institutions. Disqualified Institutions included entities named as such in writing by Serta prior to closing and placed on a so-called "DQ List."**

Response to Paragraph No. 283:  The allegations in Paragraph 283 constitute legal contentions and/or conclusions to which no response is required.  To the extent that a response is required, the Represented Third-Party Defendants respectfully refer the Court to the referenced agreement for a complete and accurate statement of its contents and deny any remaining allegations in Paragraph 283.

284.   **The DQ List is largely fixed as of the closing date. An entity may be added to the DQ List only in limited instances, including where it is an affiliate of an entity already on the DQ List, a competitor of Serta, or an affiliate of a competitor of Serta. Upon request, Serta must provide the DQ List to a Lender, who may share it with a proposed assignee.**

Response to Paragraph No. 284:  The allegations in Paragraph 284 constitute legal contentions and/or conclusions to which no response is required.  To the extent that a response is required, the Represented Third-Party Defendants respectfully refer the Court to the governing credit agreement for a complete and accurate statement of its contents and deny any remaining allegations in Paragraph 284.

285.   **When an interest in loans under the Credit Agreement is assigned, the process begins with the execution of a trade confirmation between the assignor and the assignee. The parties then execute an assignment agreement and deliver a copy to UBS, as administrative agent. UBS then seeks Serta's consent to the assignment, which, as is common, may not be unreasonably withheld, conditioned, or delayed. Serta is deemed to have consented to an assignment if it does not object in writing within 15 business days. The only valid ground for refusing to consent to an assignment is that it violates the Credit Agreement—for example, because the proposed assignee is on the DQ List.**

Response to Paragraph No. 285:  The allegations in Paragraph 285 constitute legal contentions and/or conclusions to which no response is required.  To the extent that a response is required, the Represented Third-Party Defendants respectfully refer the Court to the referenced agreement for a complete and accurate statement of its contents and deny any remaining allegations in Paragraph 285.

286.   **Once in receipt of an executed assignment agreement and Serta's consent, among other things, UBS then must promptly accept the assignment agreement and record the assignment in its register of Lenders and their assignees. The assignment then becomes effective.**

Response to Paragraph No. 286:  The allegations in Paragraph 286 constitute legal contentions and/or conclusions to which no response is required.  To the extent that a response is required, the Represented Third-Party Defendants respectfully refer the Court to the governing credit agreement for a complete and accurate statement of its contents and deny any remaining allegations in Paragraph 286.

287.   **Apollo originally purchased First Lien Term Loans under the Credit Agreement at the time the Credit Agreement closed in 2016. Apollo continued to hold those loans until May 23, 2018.**

Response to Paragraph No. 287:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 287 and on that basis deny the allegations in Paragraph 287.

288.   **On October 18, 2016, Apollo was removed from the DQ List. Between 2016 and 2018, Apollo bought and sold millions of dollars of Serta First Lien Term Loans.**

Response to Paragraph No. 288:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 288 and on that basis deny the allegations in Paragraph 288.

**289.     On March 12, 2020, Apollo executed trade confirmations with Barclays Bank PLC ("Barclays") to purchase additional First Lien Term Loans. Although Apollo had previously owned First Lien Term Loans under the Credit Agreement, it nevertheless sought the necessary confirmation from UBS that Apollo was not on the DQ List. UBS twice confirmed that it was not—once orally on March 13, 2020, and again in writing on March 17, 2020. Notably, Apollo is not an affiliate of any entity already on the DQ List, nor is it a competitor or an affiliate of a competitor of Serta.**

Response to Paragraph No. 289:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 288 and on that basis deny the allegations in Paragraph 289.

**290.     On March 20, 2020, Apollo submitted executed assignment agreements with Barclays to UBS, which promptly requested Serta's consent. Serta did not object by April 14, and pursuant to the Credit Agreement consent was deemed effective as of that date.**

Response to Paragraph No. 290:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 290 and on that basis deny the allegations in Paragraph 290.

**291.     Yet the trade did not settle. Apollo and its counterparties repeatedly contacted UBS to inquire why the trades were not settling, despite the satisfaction of all requirements for an assignment under the Credit Agreement. UBS told Apollo that it had followed up**

**with Serta on several occasions, but received no response as to when Serta would indicate its position on the assignments. UBS also confirmed to Apollo several times in mid-April that it was not on the DQ List.**

Response to Paragraph No. 291: The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 291 and on that basis deny the allegations in Paragraph 291.

292. **On April 24, 2020, Serta represented to UBS that the reason for its delay in providing borrower's consent was difficulty in obtaining the necessary signatures due to the effects of the COVID-19 pandemic. Serta further represented to UBS that it would approve the transactions, and UBS relayed that representation to Apollo.**

Response to Paragraph No. 292: The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 292 and on that basis deny the allegations in Paragraph 292.

293. **A few days later, UBS executed the assignment agreements. The same day, however, UBS retracted its executions as having occurred "in error." UBS provided no further explanation.**

Response to Paragraph No. 293: The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 293 and on that basis deny the allegations in Paragraph 293.

294. **On April 30, 2020, as set forth above, Apollo agreed to an NDA and one-month restriction period to explore providing new money and liability management solutions to Serta. Serta acknowledged Apollo's loan holdings by countersigning the NDA, which**

referenced Apollo's $192 million position, which included the assignments submitted to UBS on March 20, 2020.

Response to Paragraph No. 294:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 294 and on that basis deny the allegations in Paragraph 294.

295.   **On May 1, 2020, Serta dropped the pretext that its delays were due to COVID-19 and purported to *reject* Apollo's assignments, saying Serta would consent to the assignments *only if* Apollo made a new money investment in Serta.**

Response to Paragraph No. 295:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 295 and on that basis deny the allegations in Paragraph 295.

296.   **Serta lacks any lawful reason to withhold its consent to the Apollo assignment or otherwise refuse to recognize it as valid. Moreover, consent was effectively given as of April 14, 2020; UBS had confirmed that Apollo was not on the DQ List; and Serta had confirmed just days before that it would approve the trades, without timely raising any basis for objecting to the trades (and there is none).**

Response to Paragraph No. 296:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 296 and on that basis deny the allegations in Paragraph 296.

297.   **Later in May 2020, Barclays, as an existing Lender seeking to assign its interests to Apollo, asked for a copy of the DQ List. UBS declined to provide the list to either Apollo or Barclays—an existing lender with a contractual right to review its contents.**

Response to Paragraph No. 297:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 297 and on that basis deny the allegations in Paragraph 297.

298.    **Indeed, UBS acknowledged that it was obligated to provide Barclays with the DQ List, but that Serta did not agree with its contents and UBS was "working on it" with them. Serta plainly was attempting to manufacture a reason to withhold consent to the Apollo assignments when none existed.**

Response to Paragraph No. 298:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 298 and on that basis deny the allegations in Paragraph 298.

299.    **As a result of Serta's interference with its assignments, Apollo has been unable to settle approximately $192 million in face amount of purchases of Serta loans. Given the Unlawful Exchange Transaction, Apollo will be unable to exit its positions without significant losses, caused by Serta's willful misconduct.**

Response to Paragraph No. 299:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 299 and on that basis deny the allegations in Paragraph 299.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION[4]
**(Declaratory Judgment That the Unlawful Exchange Transaction and All Agreements Purporting to Implement It Are Invalid – By the Excluded Lenders Against Serta)**

---

[4] Third-Party Plaintiffs' footnotes to the First, Second, Fourth, Sixth, Seventh and Ninth Causes of Action are legal contentions and conclusions to which no response is required.  To the extent a response is required, the Represented Third-Party Defendants state that Third-Party Plaintiffs' First and Second Causes of Action are barred by the Final Partial Summary Judgment that the Court entered on April 6, 2023.

Response to Paragraphs 300–304:  The allegations in Paragraphs 300–304 are not directed at the Represented Third-Party Defendants, and thus no response from the Represented Third-Party Defendants is required.

### SECOND CAUSE OF ACTION[5]
### (Breach of Contract, Section 2.18 – By the Excluded Lenders Against Serta)

Response to Paragraphs 305–309:  The allegations in Paragraphs 305–309 are not directed at the Represented Third-Party Defendants, and thus no response from the Represented Third-Party Defendants is required.

### THIRD CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing – By the Excluded Lenders Against Serta)

Response to Paragraphs 310–341:  The allegations in Paragraphs 310–341 are not directed at the Represented Third-Party Defendants, and thus no response from the Represented Third-Party Defendants is required.

### FOURTH CAUSE OF ACTION[6]
### (Breach of Contract, Section 9.02 – By the Excluded Lenders Against Serta)

Response to Paragraphs 342–346:  The allegations in Paragraphs 342–346 are not directed at the Represented Third-Party Defendants, and thus no response from the Represented Third-Party Defendants is required.

### FIFTH CAUSE OF ACTION
### (Declaratory Judgment of Valid Assignment – By Apollo Against Serta)

---

[5] Third-Party Plaintiffs' footnotes to the First, Second, Fourth, Sixth, Seventh and Ninth Causes of Action are legal contentions and conclusions to which no response is required.  To the extent a response is required, the Represented Third-Party Defendants state that Third-Party Plaintiffs' First and Second Causes of Action are barred by the Final Partial Summary Judgment that the Court entered on April 6, 2023.

[6] Third-Party Plaintiffs' footnotes to the First, Second, Fourth, Sixth, Seventh and Ninth Causes of Action are legal contentions and conclusions to which no response is required.  To the extent a response is required, the Represented Third-Party Defendants state that Third-Party Plaintiffs' First and Second Causes of Action are barred by the Final Partial Summary Judgment that the Court entered on April 6, 2023.

Response to Paragraphs 347–351:  The allegations in Paragraphs 347–351 are not directed at the Represented Third-Party Defendants, and thus no response from the Represented Third-Party Defendants is required.

### SIXTH CAUSE OF ACTION[7]
**(Declaratory Judgment That the Unlawful Exchange Transaction and All Agreements Purporting to Implement It Are Invalid – By the Excluded Lenders Against the Favored Lenders)**

352.    **The Excluded Lenders reassert and reallege the allegations contained in the foregoing paragraphs above as if fully set forth herein.**

Response to Paragraph No. 352:  The Represented Third-Party Defendants repeat and incorporate by reference their responses to the allegations contained in Paragraphs 94 through 351 as if fully set forth herein.

353.    **The Excluded Lenders and the Favored Lenders are or were parties to the Credit Agreement entered into on November 8, 2016, which constitutes a valid and enforceable contract.**

Response to Paragraph No. 353:  The Represented Third-Party Defendants admit that Serta, the Represented Third-Party Defendants, the Third-Party Plaintiffs, and others, were parties to the Non-PTL Term Loan Agreement entered into on November 8, 2016, which constitutes a valid and enforceable contract.

354.    **This Court is authorized to issue a declaratory judgment as to the rights and other legal relations of the Excluded Lenders and the Favored Lenders pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.**

---

[7] Third-Party Plaintiffs' footnotes to the First, Second, Fourth, Sixth, Seventh and Ninth Causes of Action are legal contentions and conclusions to which no response is required.  To the extent a response is required, the Represented Third-Party Defendants state that Third-Party Plaintiffs' First and Second Causes of Action are barred by the Final Partial Summary Judgment that the Court entered on April 6, 2023.

Response to Paragraph No. 354:  The allegations in Paragraph 354 constitute legal contentions and/or conclusions to which no response is required. To the extent that a response is required, the Represented Third-Party Defendants admit the allegations in Paragraph 354.

355.   **The proper interpretation and application of the Credit Agreement, including whether the Unlawful Exchange Transaction and the agreements purporting to implement it are permissible and valid, is a justiciable, present, and actual controversy between the Excluded Lenders and the Favored Lenders.**

Response to Paragraph No. 355:  The allegations in Paragraph 355 constitute legal contentions and/or conclusions to which no response is required. To the extent that a response is required, the Represented Third-Party Defendants admit the allegations in Paragraph 355.

356.   **The Unlawful Exchange Transaction and the agreements purporting to implement it violate the express terms of the Credit Agreement as well as the implied covenant of good faith and fair dealing and are therefore invalid and *void ab initio*, or in the alternative are voidable and should be rescinded (or the Excluded Lenders should be awarded rescissionary damages). The Excluded Lenders retain the rights they had prior to the Unlawful Exchange Transaction, and they are entitled to a declaratory judgment to that effect.**

Response to Paragraph No. 356:  The allegations in Paragraph 356 constitute legal contentions and/or conclusions to which no response is required.  To the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 356, and also state that the allegations in the first sentence of Paragraph 356 contradict the summary judgment decision issued by this Court on March 28, 2023.

### SEVENTH CAUSE OF ACTION[8]
**(Breach of Contract, Section 2.18 –By the Excluded Lenders against the Favored Lenders)**

**357.   The Excluded Lenders reassert and reallege the allegations contained in the foregoing paragraphs above as if fully set forth herein.**

Response to Paragraph No. 357:  The Represented Third-Party Defendants repeat and incorporate by reference their responses to the allegations contained in Paragraphs 94 through 356 as if fully set forth herein.

**358.   The Excluded Lenders and the Favored Lenders are or were parties to the Credit Agreement entered into on November 8, 2016, which constitutes a valid and enforceable contract.**

---

[8] Third-Party Plaintiffs' footnotes to the First, Second, Fourth, Sixth, Seventh and Ninth Causes of Action are legal contentions and conclusions to which no response is required.  To the extent a response is required, the Represented Third-Party Defendants state that Third-Party Plaintiffs' First and Second Causes of Action are barred by the Final Partial Summary Judgment that the Court entered on April 6, 2023.

Response to Paragraph No. 358:  The Represented Third-Party Defendants admit that Serta, the Represented Third-Party Defendants, the Third-Party Plaintiffs, and others, were parties to the Non-PTL Term Loan Agreement entered into on November 8, 2016, which constitutes a valid and enforceable contract.

359.    **The Excluded Lenders performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the Credit Agreement.**

Response to Paragraph No. 359:  The allegations in Paragraph 359 constitute legal contentions and/or conclusions to which no response is required.  To the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 359.

360.    **The Favored Lenders, by contrast, have breached the express terms of the Credit Agreement by entering into the Unlawful Exchange Transaction, which breaches the proceeds waterfall and *pro rata* sharing provisions of Section 2.18.**

Response to Paragraph No. 360:  The allegations in Paragraph 360 constitute legal contentions and/or conclusions to which no response is required.  To the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 360, and also state that the allegations in Paragraph 360 contradict the summary judgment decision issued by this Court on March 28, 2023.

361.    **As a consequence of the Favored Lenders' material breaches, the Excluded Lenders have been deprived of their bargain as First Lien Lenders—namely, the right to parity of treatment with loans of the same class. Moreover, the Unlawful Exchange Transaction will result in the Favored Lenders receiving payment of a greater proportion of the aggregate amount of their loans and accrued interest than the**

**proportion received by the Excluded Lenders and other First Lien Lenders. As a result, the loans held by the Excluded Lenders have lost significant value and the Excluded Lenders therefore have been damaged.**

Response to Paragraph No. 361:  The allegations in Paragraph 361 constitute legal contentions and/or conclusions to which no response is required.  To the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 361.

362.    **In addition to other relief, the Excluded Lenders are entitled to the consideration provided by Section 2.18(c) of the Credit Agreement—that is, the Favored Lenders must be required to purchase (for cash at face value) participations in the First Lien Term Loans held by the Excluded Lenders and the other holders of First Lien Term Loans so that the benefit of the Unlawful Exchange Transaction are shared by the lenders ratably in accordance with the aggregate amount of principal of and accrued interest on their respective loans. The Excluded Lenders also should be awarded damages in an amount to be proven at trial.**

Response to Paragraph No. 362:  The allegations in Paragraph 362 constitute legal contentions and/or conclusions to which no response is required.  To the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 362.

## EIGHTH CAUSE OF ACTION
**(Breach of the Implied Covenant of Good Faith and Fair Dealing – By the Excluded Lenders Against the Favored Lenders)**

363.    **The Excluded Lenders reassert and reallege the allegations contained in the foregoing paragraphs above as if fully set forth herein.**

Response to Paragraph No. 363:  The Represented Third-Party Defendants repeat and incorporate by reference their responses to the allegations contained in Paragraphs 94 through 362 as if fully set forth herein.

364.    **The Excluded Lenders and the Favored Lenders are or were parties to the Credit Agreement entered into on November 8, 2016, which constitutes a valid and enforceable contract.**

Response to Paragraph No. 364:  The Represented Third-Party Defendants admit that Serta, the Represented Third-Party Defendants, the Third-Party Plaintiffs, and others, were parties to the Non-PTL Term Loan Agreement entered into on November 8, 2016, which constitutes a valid and enforceable contract.

365.    **The Excluded Lenders performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the Credit Agreement.**

Response to Paragraph No. 365:  The allegations in Paragraph 365 constitute legal contentions and/or conclusions to which no response is required.  To the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 365.

366.    **A bedrock principle of the Credit Agreement is that all First Lien Lenders are entitled to share ratably in all payments of principal or interest on their First Lien Term Loans. The proceeds waterfall and *pro rata* sharing provisions are "sacred rights" that are so fundamental that, under the Credit Agreement, they cannot be amended without the consent of 100% of the adversely affected lenders, subject to limited exceptions.**

Response to Paragraph No. 366:  The allegations in Paragraph 366 constitute legal contentions and/or conclusions to which no response is required.  To the extent that a response is required, the Represented Third-Party Defendants respectfully refer the Court to the referenced agreement for a complete and accurate statement of its contents and deny the remaining allegations in Paragraph 366.

367.   **The Excluded Lenders specifically bargained for the proceeds waterfall and *pro rata* sharing provisions, which are not included as of right in all credit agreements, as well as the prohibition preventing amendment of those provisions without unanimous consent.**

Response to Paragraph No. 367:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 367 and on that basis deny the allegations in Paragraph 367.

368.   **The Excluded Lenders reasonably expected that their sacred rights, including the proceeds waterfall and *pro rata* sharing provisions, would be protected, and that their right to parity of treatment with loans of the same class would be honored.**

Response to Paragraph No. 368:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 368 concerning the Third-Party Plaintiffs' purported expectations and on that basis deny them.  To the extent the allegations in Paragraph 368 are intended to suggest that the Transaction violated Third-Party Plaintiffs' "sacred rights," or any other rights in the referenced agreement, the Represented Third-Party Defendants deny the allegations in Paragraph 368.

369.   **The Unlawful Exchange Transaction destroyed the Excluded Lenders' rights to receive the fruits of the Credit Agreement, including by stripping them of the value of their guarantees and altering the proceeds waterfall and *pro rata* treatment provisions**

of the Credit Agreement without their consent, in violation of the implied covenant of good faith and fair dealing.

> Response to Paragraph No. 369: The allegations in Paragraph 369 constitute legal contentions and/or conclusions to which no response is required. To the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 369.

370. **Serta and the Favored Lenders abused the Credit Agreement's voting rights provisions by purportedly making amendments intended to gain financial benefits on non-market terms; deprived the Excluded Lenders of critical, bargained-for rights and protections; and improperly extracted value from the Company that otherwise should have been shared with the Excluded Lenders and the rest of the minority lenders.**

> Response to Paragraph No. 370: The allegations in Paragraph 370 constitute legal contentions and/or conclusions to which no response is required. To the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 370.

371. **The Unlawful Exchange Transaction was designed and implemented in bad faith to deprive the Excluded Lenders of the expected fruits of the Credit Agreement. Serta and the Favored Lenders secretly designed the Transaction so as to defeat the Excluded Lenders' contractual expectations of *pro rata* treatment, concealed the Transaction from the Excluded Lenders, deliberately denying them the opportunity to participate until it could be revealed as a *fait accompli*, and withheld information from the Excluded Lenders that would have been necessary for them to participate in the Transaction.**

Response to Paragraph No. 371:  The allegations in Paragraph 371 constitute legal contentions and/or conclusions to which no response is required.  To the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 371.

372.    **To make matters worse, as a transparently punitive measure, and as part of the Unlawful Exchange Transaction, Serta took the unusual step of adding these three Excluded Lenders to its list of "disqualified" lenders, not only for purposes of the amended Credit Agreement but also for purposes of the Priority Term Loan credit facility. Serta thereby barred these Excluded Lenders from acquiring any interests in the new loans in the open market.**

Response to Paragraph No. 372:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 372 and deny the allegations in Paragraph 372 on that basis.  The Represented Third-Party Defendants deny the remaining allegations in Paragraph 372.

373.    **Other Excluded Lenders, upon hearing of the June 8, 2020 public announcement of the Unlawful Exchange Transaction, contacted Advent seeking to participate, and more than a dozen entities were rebuffed.**

Response to Paragraph No. 373:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 373 and on that basis deny the allegations in Paragraph 373.

374.    **The Unlawful Exchange Transaction was the consummate "club deal," in which the Favored Lenders were selected to participate based on their relationships with Advent. For example, when one Favored Lender asked to join the deal – noting its status as a "good partner to Advent" – Advent agreed to let them participate "purely based on the**

long term relationship," and instructed the lender to "keep this tight lipped." Advent similarly admitted another Favored Lender into the group "solely because of the relationship Advent and [the Favored Lender] have built," and asked the lender to "keep this highly confidential." As to yet another Favored Lender who sought to be included, Advent instructed Serta's advisor, Evercore, to tell the lender that it could participate "for the relationship with them."

Response to Paragraph No. 374:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 374 regarding communications between Advent and unspecified lenders, and on that basis deny the allegations in Paragraph 374.  The Represented Third-Party Defendants deny the remaining allegations in Paragraph 374.

375.    On February 24, 2023, Serta and the Favored Lenders moved for summary judgment on their claim for declaratory relief in this action, which seeks declarations that, *inter alia*, the Unlawful Exchange Transaction (i) was not a breach of the Credit Agreement, and (ii) was not a breach of the implied covenant of good faith and fair dealing. In a bench ruling issued on March 28, 2023 and subsequent Order entered on April 6, 2023, this Court partially granted the motions as to breach of contract, determining that the Unlawful Exchange Transaction constituted an "open market purchase" within the meaning of the Credit Agreement. The parties proposed an order that allows for the immediate appeal of that portion of the ruling. The Court denied the motions as to breach of the implied covenant, finding that "the argument is fairly persuasive that there could be something else."

Response to Paragraph No. 375:  The Represented Third-Party Defendants admit that Plaintiffs filed summary judgment motions in this action, and that the Court issued a ruling on March 28, 2023 and subsequent Order on April 6, 2023, and respectfully refer the Court to those documents for a complete and accurate statement of their contents.  The Represented Third-Party Defendants deny any remaining the allegations in Paragraph 375.

376.    **The Excluded Lenders disagree that the Unlawful Exchange Transaction was an "open market purchase" within the meaning of the Credit Agreement, but even assuming that the Unlawful Exchange Transaction was permitted under the express terms of the contract, it nonetheless violated the implied covenant of good faith and fair dealing, because it wholly deprived the Excluded Lenders of the benefit of their bargain under the Credit Agreement.**

Response to Paragraph No. 376:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 376 concerning other parties' beliefs as to the meaning of the referenced credit agreement.  The allegations in Paragraph 376 concerning the implied covenant of good faith and fair dealing constitute legal contentions and/or conclusions to which no response is required.  To the extent that a further response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 376.

377.    **The purpose of the "open market purchase" provision in the 2016 Credit Agreement was solely to allow the repurchase of loans in one-off transactions typically at or close to the prevailing market prices to capture discount and de-lever the borrower's businesses. The use of an "open market purchase" provision to effectuate an uptier transaction like the Unlawful Exchange Transaction was not contemplated. Indeed, the**

**concept of an uptier transaction had not yet even come into being as a liability management strategy in the loan market; an article cited by the Favored Lenders in support of their motion for summary judgment cites a 2017 transaction as "one of the earliest examples of an uptier transaction."**

Response to Paragraph No. 377:  The Represented Third-Party Defendants deny the allegations in Paragraph 377, except lack knowledge or information sufficient to identify the purported citation referenced in the final clause of Paragraph 377, and on that basis deny the allegations in that clause.

378. **Serta and the Favored Lenders were among the first to manipulate the "open market purchase" provision of the Credit Agreement in such a manner, destroying in the process the Excluded Lenders' right to *pro rata* treatment.**

Response to Paragraph No. 378:  The allegations in Paragraph 378 constitute legal contentions and/or conclusions to which no response is required.  To the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 378.

379. **That Serta and the Favored Lenders knowingly attempted an end-run around the purpose and intention of the Credit Agreement, if not its express terms, is evidenced by the fact that they took the steps of purportedly ratifying their own transaction in written amendments to the Credit Agreement, and purportedly indemnifying the Favored Lenders from claims regarding the Unlawful Exchange Transaction.**

Response to Paragraph No. 379:  The allegations in Paragraph 379 constitute legal contentions and/or conclusions to which no response is required.  To the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 379.

380.    **Moreover, Serta was acutely aware of the damage the deal would inflict upon the Excluded Lenders, expressly recognizing in a June 5, 2020 presentation to its Board of Directors that engaging in the Unlawful Exchange Transaction would harm its relationship with the lenders who were not allowed to participate.**

Response to Paragraph No. 380:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 380 and on that basis deny the allegations in Paragraph 380.

381.    **In the LCM Action, Judge Failla denied a motion to dismiss LCM's claim for a violation of the covenant of good faith and fair dealing, holding that even if the Unlawful Exchange Transaction was permitted by the Credit Agreement, the effect of the Transaction is such a departure from the intended purpose of the Credit Agreement as to be a potential violation of the covenant.**

Response to Paragraph No. 381:  The Represented Third-Party Defendants respectfully refer the Court to Judge Failla's decision for a complete and accurate statement of its contents.  The Represented Third-Party Defendants deny any remaining allegations in Paragraph 381.

382.    **Judge Failla concluded that even if the "letter of the Agreement permitted" certain actions by the majority lenders, those actions plausibly were alleged to have breached the implied covenant where Serta "colluded with a bare majority of lenders to abuse its power to amend the Agreement to create a new class of debt," and "systematically**

combed through the Agreement tweaking every provision that seemingly prevented it from issuing a senior tranche of debt, thereby transforming a previously impermissible transaction into a permissible one."

Response to Paragraph No. 382:  The Represented Third-Party Defendants respectfully refer the Court to Judge Failla's decision for a complete and accurate statement of its contents.  The Represented Third-Party Defendants deny any remaining allegations in Paragraph 382.

383.   Serta and the Favored Lenders have attempted to justify the Unlawful Exchange Transaction by arguing that Serta had two business justifications for entering into the Transaction: to obtain a cash infusion, and to de-lever the Company. Neither is a defense to a claim for breach of the implied covenant, which does not ask whether a party had a good commercial reason to act as it did, but rather, whether its actions had the effect of destroying or injuring the right of the other party to receive the fruits of the contract, as happened here.

Response to Paragraph No. 383:  The allegations in Paragraph 383 constitute legal contentions and/or conclusions to which no response is required.  To the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 383, except admit that Serta had valid business justifications for the Transaction.

384.   Moreover, the value of the deal's structure inured not so much to Serta as it did to the Favored Lenders. Serta's purported commercial goals of raising cash and de-levering its balance sheet did not need to be achieved in a manner that destroyed the Excluded Lenders' fruits of the bargain. Yet, the Favored Lenders insisted upon the deep subordination of the Excluded Lenders' First Lien Loans as a non-negotiable

**condition of the Unlawful Exchange Transaction to increase the benefits of the deal to themselves.**

Response to Paragraph No. 384:  The Represented Third-Party Defendants deny the allegations in Paragraph 384.

385.    **To this day, Serta and the Favored Lenders have continued to act in bad faith to protect their club deal. On January 23, 2023, Serta and the Favored Lenders entered into a Restructuring Support Agreement, in which they reaffirmed their commitment to the Unlawful Exchange Transaction and sought to enforce it as part of Serta's Chapter 11 Plan. Under the Plan, the Favored Lenders' super-priority "second out" debt (exchanged for their First Lien Term Loans) are considered Class 4, entitled to receive 100% of the equity in the reorganized Company. By contrast, the Excluded Lenders' First Lien Term Loans are considered Class 5—entitled to 4 cents on the dollar if they approve the plan, and 1 cent on the dollar if they do not.**

Response to Paragraph No. 385:  The allegations in Paragraph 385 constitute legal contentions and/or conclusions to which no response is required.  To the extent that a response is required, the Represented Third-Party Defendants admit the existence of a Restructuring Support Agreement in connection with Serta's chapter 11 filing and Serta's Chapter 11 Plan, respectfully refer the Court to those documents for a complete and accurate statement of their contents, and otherwise deny the allegations in Paragraph 385.

386.    **Moreover, the Favored Lenders put their own interests ahead of the Company's by requiring Serta, as part of the Plan, to indemnify the Favored Lenders from claims regarding the Unlawful Exchange Transaction. Serta's purported indemnification**

**obligation may not be discharged or impaired, is given priority above the proceeds waterfall, and survives the Company's emergence from bankruptcy.**

Response to Paragraph No. 386:  The allegations in Paragraph 386 constitute legal contentions and/or conclusions to which no response is required.  To the extent that a response is required, the Represented Third-Party Defendants admit the existence of Serta's Chapter 11 Plan, respectfully refer Court to the Plan for a complete and accurate statement of its contents, and otherwise deny the allegations in Paragraph 386.

387.  **Further indicating their bad faith – and belying their feigned concern for Serta's successful emergence from bankruptcy – the Favored Lenders discouraged Serta from resolving this action and other ongoing litigations with the Excluded Lenders or the LCM Defendants by making it a condition of the Restructuring Support Agreement that Serta not enter into any settlements of those litigations without the Favored Lenders' consent.**

Response to Paragraph No. 387:  The allegations in Paragraph 387 constitute legal contentions and/or conclusions to which no response is required.  To the extent that a response is required, the Represented Third-Party Defendants admit the existence of the referenced agreement, respectfully refer Court to that contract for a complete and accurate statement of its contents, and otherwise deny the allegations in Paragraph 386.

388.  **The loans that the Excluded Lenders hold have lost significant value as a result of the Favored Lenders' bad faith actions.**

Response to Paragraph No. 388:  The allegations in Paragraph 388 constitute legal contentions and/or conclusions to which no response is required.  To the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 388.

389.   **After Serta announced the Unlawful Exchange Transaction, the market reacted swiftly. Prior to the June 8, 2020 announcement of the Unlawful Exchange Transaction, Serta's First Lien Term Loans were trading at or around 43 cents on the dollar. Within a week after the Unlawful Exchange Transaction was consummated, the trading value of the First Lien Term Loans held by lenders who did not participate in the transaction plunged to approximately 31 cents on the dollar. The Excluded Lenders are entitled to damages, including the lost market value of their First Lien Term Loans caused by the Unlawful Exchange Transaction.**

Response to Paragraph No. 389:  The Represented Third-Party Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning the prices at which Serta's debt was trading on unspecified dates, and on that basis deny those allegations.  The allegations in the final sentence of Paragraph 389 constitute legal contentions and/or conclusions to which no response is required.  To the extent that a further response is required, the Represented Third-Party Defendants deny the remaining allegations in Paragraph 389.

390.   **In the alternative, the Excluded Lenders are entitled to disgorgement by the Favored Lenders of their excess share of the super-priority "second out" debt issued in exchange for their First Lien Term Loans and Second Lien Term Loans.**

Response to Paragraph No. 390:  The allegations in Paragraph 390 constitute legal contentions and/or conclusions to which no response is required.  To the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 390.

391.    **In the alternative, the Excluded Lenders are entitled to recessionary damages, to restore them to the position they would be in had the Unlawful Exchange Transaction not occurred. Here, equity mandates that all First Lien Lenders – Favored Lenders and Excluded Lenders alike – receive the same treatment.**

Response to Paragraph No. 391:  The allegations in Paragraph 391 constitute legal contentions and/or conclusions to which no response is required.  To the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 391.

392.    **Excluded Lenders therefore should be awarded damages in an amount to be proven at trial.**

Response to Paragraph No. 392:  The allegations in Paragraph 392 constitute legal contentions and/or conclusions to which no response is required.  To the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 392.

## NINTH CAUSE OF ACTION[9]
**(Breach of Contract, Section 9.02 – By the Excluded Lenders Against the Favored Lenders)**

393.    **The Excluded Lenders reassert and reallege the allegations contained in the foregoing paragraphs above as if fully set forth herein.**

---

[9] Third-Party Plaintiffs' footnotes to the First, Second, Fourth, Sixth, Seventh and Ninth Causes of Action are legal contentions and conclusions to which no response is required.  To the extent a response is required, the Represented Third-Party Defendants state that Third-Party Plaintiffs' First and Second Causes of Action are barred by the Final Partial Summary Judgment that the Court entered on April 6, 2023.

Response to Paragraph No. 393: The Represented Third-Party Defendants repeat and incorporate by reference their responses to the allegations contained in Paragraphs 94 through 392 as if fully set forth herein.

**394.     The Excluded Lenders and the Favored Lenders are or were parties to the Credit Agreement entered into on November 8, 2016, which constitutes a valid and enforceable contract.**

Response to Paragraph No. 394: The Represented Third-Party Defendants admit that Serta, the Represented Third-Party Defendants, the Third-Party Plaintiffs, and others, were parties to the Non-PTL Term Loan Agreement entered into on November 8, 2016, which constitutes a valid and enforceable contract.

**395.     The Excluded Lenders performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the Credit Agreement.**

Response to Paragraph No. 395: The allegations in Paragraph 395 constitute legal contentions and/or conclusions to which no response is required. To the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 395.

**396.     The Favored Lenders breached the express terms of the Credit Agreement by entering into the Unlawful Exchange Transaction, in violation of Sections 9.02(b)(B)(2) and (3), which, without the First Lien Lenders' consent, releases all or substantially all of the collateral from the lien granted to the First Lien Lenders and of the value of their guarantees, including under the First Lien Term Loan Guaranty Agreement.**

Response to Paragraph No. 396: The allegations in Paragraph 396 constitute legal contentions and/or conclusions to which no response is required. To the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 396, and also state that the allegations in Paragraph 396 contradict the summary judgment decision issued by this Court on March 28, 2023.

**397.  The Excluded Lenders therefore should be awarded damages in an amount to be proven at trial.**

Response to Paragraph No. 397: The allegations in Paragraph 397 constitute legal contentions and/or conclusions to which no response is required. To the extent that a response is required, the Represented Third-Party Defendants deny the allegations in Paragraph 397.

## PRAYER FOR RELIEF

The Represented Third-Party Defendants deny that the Third-Party Plaintiffs are entitled to any of the relief requested in subparagraphs a-g on pages 112-113 of the Counterclaims and Third-Party Claims or as otherwise requested in the Counterclaims and Third-Party Claims.

## GENERAL DENIAL

The Represented Third-Party Defendants deny each and every allegation, statement, and matter not expressly admitted or qualified herein. Any allegations made in the headings contained in the Counterclaims and Third-Party Claims are denied. The prayer for relief in the Counterclaims and Third-Party Claims is denied.

## AFFIRMATIVE DEFENSES

The Represented Third-Party Defendants assert the following affirmative defenses and hereby reserve their rights to assert other and additional defenses, claims, counterclaims, and third-party claims not asserted herein of which they become aware through discovery or other

investigation as may be appropriate at a later time.  In asserting these affirmative defenses, the Represented Third-Party Defendants do not assume any burden of proof, persuasion, or production with respect to any issue where the applicable law places the burden upon another party.

## FIRST AFFIRMATIVE DEFENSE

The Third-Party Plaintiffs fail to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

The Third-Party Plaintiffs' claims are barred, in whole or in part, by equitable estoppel, waiver, unclean hands, laches, and/or other equitable doctrines.

## THIRD AFFIRMATIVE DEFENSE

The Third-Party Plaintiffs' claims are barred because they do not have standing to bring claims against the Company or the Represented Third-Party Defendants, to the extent those claims belong to the estate and the challenge period for the Third-Party Plaintiffs to seek standing has expired.  *See generally, In re Revlon, Inc*., 2023 WL 2229352 (Bankr. S.D.N.Y. Feb. 24, 2023).

## FOURTH AFFIRMATIVE DEFENSE

The Third-Party Plaintiffs' claims are barred, in whole or in part, because they suffered no damages for the conduct alleged in the Third-Party Claims.

## FIFTH AFFIRMATIVE DEFENSE

The Third-Party Plaintiffs' damages, if any, are speculative and uncertain, and are impossible to ascertain.

## SIXTH AFFIRMATIVE DEFENSE

The Third-Party Plaintiffs' claims are barred, in whole or in part, on the ground that Plaintiffs failed to mitigate any damages they may have suffered.

## SEVENTH AFFIRMATIVE DEFENSE

The Third-Party Plaintiffs' claims are barred because the Represented Third-Party Defendants complied with the terms of, and discharged their duties, if any, with respect to, the parties' agreements.

## EIGHTH AFFIRMATIVE DEFENSE

The Third-Party Plaintiffs' claims are barred because the Represented Third-Party Defendants acted in good faith and without wrongful intent, malice or any other applicable degree of fault.

## NINTH AFFIRMATIVE DEFENSE

The Third-Party Plaintiffs' implied covenant claims are barred because they seek to impose obligations on the Company that go beyond the obligations set forth in the contract.

## TENTH AFFIRMATIVE DEFENSE

The implied covenant claims are barred because they are duplicative of counterclaimant and Third-Party Plaintiffs' claims for breach of contract, including those that have now been obviated by the Court's decisions.

## ELEVENTH AFFIRMATIVE DEFENSE

The Third-Party Plaintiffs' claims for damages are barred under the First Lien Term Loan Agreement to the extent that they seek special, indirect, consequential, or punitive damages.

## <u>TWELFTH AFFIRMATIVE DEFENSE</u>

The Third-Party Plaintiffs' claims are barred by the law of the case, res judicata and collateral estoppel in light of the Court's ruling on Plaintiffs' motions for summary judgment and the partial final judgment consented to by Third-Party Plaintiffs.

Dated:  May 8, 2023

Respectfully submitted,

<u>/s/ C. Lee Wilson</u>

GIBSON, DUNN & CRUTCHER LLP

Gregg Costa (24028160)
811 Main Street, Suite 3000
Houston, TX 77002
Tel: (346) 718-6600
Fax: (346) 718-6620
Email: gcosta@gibsondunn.com

Scott J. Greenberg (admitted *pro hac vice*)
Jason Goldstein (admitted *pro hac vice*)
C. Lee Wilson (admitted *pro hac vice*)
Akiva Shapiro (admitted *pro hac vice*)
Amanda M. Aycock (admitted *pro hac vice*)
200 Park Avenue
New York, NY 10166
Tel:  (212) 351-4000
Fax: (212) 351-4035
Email: sgreenberg@gibsondunn.com
        jgoldstein@gibsondunn.com
        clwilson@gibsondunn.com
        ashapiro@gibsondunn.com
        aaycock@gibsondunn.com

*Counsel for the Represented Third-Party Defendants*