# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **SERTA SIMMONS BEDDING, LLC,** *et al.*, | § § § | **Case No. 23-90020 (DRJ)** |
| | § | |
| Debtors.[1] | § § | **(Jointly Administered)** |
| ──────────────────────────── | § § § | |
| **SERTA SIMMONS BEDDING, LLC,** *et al.*, | § § § | **Adversary Proc. No. 23-09001** |
| | § § | |
| Plaintiffs, | § § § | |
| v. | § § | |
| **AG CENTRE STREET PARTNERSHIP L.P.,** *et al.*, | § § § § | |
| Defendants. | § § | |
| ──────────────────────────── | § | |

### PLAINTIFFS' EMERGENCY MOTION TO EXCLUDE
### THE TESTIMONY OF SARAH M. WARD

> **EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED AS SOON AS THE COURT IS AVAILABLE. IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Dawn Intermediate, LLC (6123); Serta Simmons Bedding, LLC (1874); Serta International Holdco, LLC (6101); National Bedding Company L.L.C. (0695); Serta Simmons Bedding Manufacturing Company (5743); The Simmons Manufacturing Co., LLC (0960); Dreamwell, Ltd. (2419); Serta Simmons Bedding Hospitality, LLC (2016); Serta Simmons Bedding Logistics, LLC (6691); Simmons Bedding Company, LLC (2552); Tuft & Needle, LLC (6215); Tomorrow Sleep LLC (0678); Serta Simmons Bedding Retail, LLC (9245); and World of Sleep Outlets, LLC (0957). The Debtors' corporate headquarters and service address for these chapter 11 cases is 2451 Industry Avenue, Doraville, Georgia 30360.

Plaintiffs Serta Simmons Bedding, LLC, Barings LLC, Boston Management and Research, Credit Suisse Asset Management, LLC, Eaton Vance Management and Invesco Senior Secured Management, Inc., by and through their undersigned counsel, move this Court for entry of an order excluding the testimony of Sarah M. Ward, whom Defendants seek to introduce as an expert at trial.

## INTRODUCTION

1. As the party offering expert testimony, Defendants bear the burden of showing that the testimony of their proposed expert Sarah Ward is admissible in view of the reliability criteria outlined in Federal Rule of Evidence 702. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 n.10 (1993). Defendants cannot meet that burden here for at least three reasons.

2. *First,* Ms. Ward's proposed testimony relies on her opinion that the Court's summary judgment decision on the scope of the Credit Agreement's "open market purchase" provision was wrongly decided. While Ms. Ward is entitled to her personal opinion as to what the term "open market purchase" means, the Court has already rejected that opinion here as a matter of law, which renders her testimony inadmissible. *Second*, unsurprisingly in light of the above, Ms. Ward's opinions amount to improper legal conclusions that would usurp the Court's role to decide the law (and indeed, directly contradict this Court's prior legal determinations). *Third*, Ms. Ward's speculative opinions as to the parties' state of mind concerning their understanding of the 2016 Credit Agreement also usurps the role of the Court in its capacity as finder-of-fact and is equally improper.

3. For all of these reasons, and in the interest of streamlining trial to not waste the Court and the parties' limited time, Ms. Ward's testimony should be excluded in its entirety under Federal Rules of Evidence 403, 702, and 704.

4. A proposed form of order granting the relief requested herein is attached hereto as **Exhibit A**.

## BACKGROUND

5. Defendants seek to rely on the testimony of Sarah M. Ward, an attorney who previously practiced at Skadden, Arps, Slate, Meagher & Flom LLP. Ms. Ward intends to offer "opinions regarding the origin, purpose, and market understanding of certain provisions of the First Lien Term Loan Agreement" (the "**Credit Agreement**"), and, in particular, her opinion "as to the First Lien Lender Defendants' reasonable expectations regarding the kinds of transactions that would be permissible under the pro rata treatment provisions in the [Credit Agreement] and the limited exceptions thereto." *See* Exhibit B (May 3, 2023 Expert Declaration of Sarah M. Ward) at 2.

6. Ms. Ward previously submitted a purported "expert declaration" in this case in support of Defendants' opposition to Plaintiffs' motion for summary judgment. In that declaration, as here, she offered "opinions regarding the origin, purpose, and market understanding of certain provisions of the First Lien Term Loan Agreement." ECF No. 89 ¶ 1. Defendants argued that Ms. Ward's opinions were relevant to the correct interpretation of the First Lien Term Loan Agreement. *See* ECF No. 87 at 31–36. This Court, however, granted summary judgment to Plaintiffs on their request for a declaration that the 2020 Transaction did not breach the Credit Agreement, finding "as a matter of law that the term 'open market purchase' in Section 9.05(g) of the [Credit Agreement] is clear and unambiguous." ECF No. 142 ¶ 3.

7. As to the remaining implied covenant claim, the Court explained that "the alleged inappropriateness of the transaction as being violative of 9.05(g) . . . doesn't factor in any more," but gave Defendants a chance to replead their good faith and fair dealing claims to take his ruling

3

into account.  Mar. 28, 2023 Hearing Tr. at 135:21–136:4.  In response, Defendants informed the Court that they were "going to come forward and show [the Court] facts that show that [Plaintiffs] have not acted in good faith," and that they "actually have specific facts that . . . relate to good faith and fair dealing separate from just" that Section 9.05(g) "wasn't satisfied." *Id*. at 40:8–10, 120:12–15.

8. Apparently unable to come through on their promise, Defendants have instead repackaged Mr. Ward's expert declaration, to reiterate the same opinions that she had previously offered in support Defendants' now-rejected interpretation of the Credit Agreement.  At the April 24 scheduling conference, the Court observed, "I don't understand why there'd be a need for any expert."  Apr. 24, 2023 Hearing Tr. at 14.  For the reasons below, we agree.

9. Plaintiffs informed Defendants that they intended to move to exclude Ms. Ward's testimony, and the parties met and conferred, but were unable to reach a resolution.[2]

**ARGUMENT**

10. Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony and imposes a gatekeeping responsibility upon the Court to ensure that an expert's testimony is both relevant and reliable.  *Daubert*, 509 U.S. at 589; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147–49 (1999).  It states:

> [A] witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.

---

[2] Plaintiffs intend to serve an expert rebuttal report and reserve the right to call a rebuttal expert at trial in the event that Ms. Ward's testimony is not excluded.

11. In applying Rule 702 to decide whether an expert's testimony should be admitted, "the trial judge ought to insist that a proffered expert bring . . . more than the lawyers can offer in argument." *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (quoting *In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986)). Because Ms. Ward's proffered report fails this simple test—for multiple reasons—it should be excluded.

### I. The Ward Report Advances an Opinion That the Court Has Already Rejected

12. In its Order on Summary Judgment, this Court held that the 2020 Transaction "constituted an open market purchase under Section 9.05(g)" of the Credit Agreement. ECF No. 142 at 3. In its bench decision, the Court found that "it is very clear to me that [the 2020 Transaction] is what is intended by the agreements. It's what intended by the concept of an open market purchase. . . . [F]or the nature of what was being transacted, it fits within the definition of an open market purchase." Mar. 28, 2023 Hearing Tr. at 134:19–25.

13. Ms. Ward's report is premised on, and littered with, statements about her disagreement with the Court's decision. At her most plain, she directly contradicts this Court's rulings by opining that the 2020 Transaction "*does not qualify as an open market purchase.*" Ex. B at 16 (emphasis added). She also opines that (1) the 2020 Transaction "was not consistent with the prevailing market view of an open market transaction," Ex. B ¶ 28; (2) the open market purchase provision permitted only "one-off repurchases of term loans," not larger purchases like in the 2020 Transaction, *id.* ¶ 38; and (3) "the characterization of the Transaction as an open market purchase contravenes market price and understanding at the time the Term Loan Agreement was executed," *id.* ¶ 43. And, at her deposition, Ms. Ward admitted that this Court's ruling that the June 2020 Transaction involved an open-market purchase pursuant to the Credit Agreement is

5

"contrary to her opinion."[3] Market participants, in Ms. Ward's opinion, would have understood an open market purchase to encompass only a one-off purchase of loans on the secondary market, constrained by typical trading volumes, at or near prevailing market prices, and typically through a broker-dealer. All of these assumptions contradict what this Court has already held to be "clear and unambiguous" "as a matter of law"—that the 2020 Transaction's debt repurchases were open market purchases within the meaning of the 2016 Credit Agreement, ECF No. 142 at 3, and that it was "very clear . . . that this is what was intended by the agreements [and] what's intended by a concept of an open market purchase," Mar. 28, 2023 Hearing Tr. 134:19–21.

14. The Court should not allow Defendants to use Ms. Ward to circumvent by sleight of hand the Court's prior ruling, which is law of the case. *See Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 2017 WL 1355388, at *6 (E.D. Tex. Apr. 13, 2017) ("[O]f course, Lilly will not be permitted to introduce evidence that is contrary to the Court's claim construction."); *cf. Gamboa v. Centrifugal Casting Mach. Co.*, 2015 WL 6835359, at *5 (S.D. Tex. Nov. 6, 2015) ("Courts have . . . refused to consider expert affidavits where those affidavits offer opinions that contradict prior testimony."). Ms. Ward proffered largely the same opinion as to the meaning of "open market purchase" at summary judgment in support of Defendants' proposed interpretation of the Credit Agreement; the Court implicitly rejected it. Because her report is "contrary" to this Court's prior ruling by her own admission, it is inadmissible.

## II. The Ward Report Consists of Inadmissible Legal Conclusions

15. Even if Ms. Ward's opinions about the proper interpretation of the 2016 Credit Agreement were not contrary to this Court's prior ruling, they would nonetheless be improper. It

---

[3] Because the deposition of Ms. Ward only took place yesterday, only a rough transcript is available. That transcript is highly confidential pursuant to the parties' agreement in this case. Should the Court wish to review the transcript, we are happy to submit the transcript under seal as soon as the final becomes available.

6

is well established that "[e]xperts cannot render conclusions of law or provide opinions on legal issues." *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020) (internal quotation and citation omitted); *see also, e.g.*, *Valencia v. Davis*, 836 F. App'x 292, 299–300 (5th Cir. 2020) (affirming the exclusion of an expert report filed in support of a summary judgment opposition because it rendered a conclusion of law); *Estate of Sowell v. United States*, 198 F.3d 169, 172 (5th Cir. 1999) (excluding testimony from a lawyer regarding what a "reasonable" fiduciary would do as "inadmissible legal opinion"); *Morris v. Equifax Info. Servs., LLC*, 2005 WL 5976334, at *2 (S.D. Tex. Jan. 19, 2005) ("legal opinions and conclusions are not a proper subject of expert testimony"). "[O]ur legal system reserves to the trial judge the role of deciding the law." *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997). Legal disputes "require[] only one spokesman of the law, who is of course the judge." *Id.*

16. Ms. Ward's report is replete with textbook examples of legal conclusions. For example, an entire section of her report, entitled "The Term Loan Agreement Included Traditional Pro Rata Sharing Provisions," opines on what terms the Credit Agreement purportedly contains, *see, e.g.*, Ex. B at 8–10. In other sections of her report, she similarly opines on pure questions of contract interpretation, such as what "the open market purchase exception to the pro rata sharing provision permitted," *id.* ¶ 38, what the "Dutch Auction provision . . . required," *id.* ¶ 39, and whether the Credit Agreement "requires unanimous or affected lender consent for any amendment to the pro rata sharing or payment waterfall provisions," *id.* ¶ 16. Indeed, it is difficult to imagine opinions that are more clearly conclusions of law than her assertion that "[i]nterpreting the term 'open market purchase' to mean any arm's length transaction at 'market prices' . . . would render the pro rata sharing provision meaningless," *id.* ¶ 30, or that "the Dutch Auction exception was the only exception that would have allowed Serta to repurchase substantial amounts of loans on a non-

pro rata basis," *id.* ¶ 41. Such expert testimony on the legal interpretation of particular contractual terms (implicitly referencing New York's canons of construction no less) is inadmissible. *See Vanderbilt Mortg. & Fin., Inc. v. Flores*, 2010 WL 4595592, at *4 (S.D. Tex. Nov. 1, 2010).

17. Ms. Ward's report speaks in large part to contract interpretation—a question of law. To avoid this facial infirmity, she often seeks to couch her opinions as instead somehow addressing what would have been "reasonable" for Defendants or market participants to have understood when interpreting the Credit Agreement. *See, e.g., id.* ¶¶ 1, 8, 19, 21, 36. But at her deposition, Ms. Ward acknowledged that her opinions as to what market participants would have understood is in fact identical to what she understood. As such, it is just a sham reframing of her own legal opinions, and Ward's opinion on what Defendants "reasonably" understood again usurps the decision-making role of the Court.

18. Courts in the Fifth Circuit and elsewhere routinely exclude expert testimony as inadmissible in claims for breach of the implied covenant. *See, e.g., U.S. Alliance Grp., Inc. v. Cardtronics USA, Inc.*, 2022 WL 17622362, at *4–5 (E.D. La. Dec. 13, 2022) (excluding expert testimony relating to implied covenant and other claims because it offered "legal conclusions" that "invade the court's province" and was "no more than [a party's] testimony dressed up and sanctified as the opinion of an expert") (citation omitted); *Primavera Familienstiftung v. Askin*, 130 F. Supp. 2d 450 (S.D.N.Y. 2001) (granting motion to strike expert opinion relating to implied covenant and other claims because it was "permeated with inadmissible legal opinions and conclusions," such as "the scope of [a party's] legal obligations under the terms of [an agreement]" and "statements concerning the parties' intent with respect to [that agreement]"), *abrogated on other grounds by Casey v. Merck & Co., Inc.*, 653 F.3d 95 (2d Cir. 2011). The Court should not hesitate to do so here.

### III. Ward's Testimony As To Defendants' State of Mind Is Impermissible

19. An expert witness's opinions concerning a party's state of mind "are not helpful or admissible" because expert witnesses cannot bring any particular expertise to bear on that question. *Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534, 541 (5th Cir. 2007) (citing *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992)). That is so because "[a]n expert's credentials do not place him in a better position than the [trier of fact] to draw conclusions about a defendant's state of mind." *Marlin*, 248 F. App'x at 541; *see also Fisher v. Halliburton*, 2009 WL 5216949, at *2 (S.D. Tex. Dec. 21, 2009) ("drawing conclusions about a defendant's state of mind," like offering legal conclusions, "usurps the role of the judge or jury"); *CMI-Trading, Inc. v. Quantum Air, Inc.*, 98 F.3d 887, 890 (6th Cir. 1996) ("The intent of the parties is an issue within the competence of the jury and expert opinion testimony will not assist the jury, within the meaning of Federal Rule of Evidence 702, in determining the factual issue of intent."); *SEC v. Am. Growth Funding II, LLC*, 2019 WL 1772509, at *1 (S.D.N.Y. Apr. 23, 2019) ("Opinions concerning state of mind are an inappropriate topic for expert opinion.").

20. Ms. Ward repeatedly speculates about what Defendants or other third-parties understood. She assumes, for example, that participants in the loan market "expected an open market purchase to mean a simple trade on the secondary market to [sic] which the seller transfers its interest to the purchaser and the purchaser pays the prevailing market price," *id.* ¶ 26, and opines on why "[s]ponsors requested the inclusion of [certain] exceptions to the pro rata sharing provision," without offering any basis for knowing what loan market participants or sponsors thought or why they did what they did. *Id.* ¶ 24. Such inferences about what others thought or understood amounts to state of mind testimony as to which an expert may not opine.

21. And even if it were appropriate for Ms. Ward to opine as to the intent of other market actors more generally, it is emphatically not appropriate for her to opine as to the state of mind of the parties themselves. *See, e.g.*, *id.* ¶ 19 (Defendants "expect[ed] to receive scheduled amortization, prepayments, proceeds of collateral and other payments that correspond to their percentage share of the first lien loan facility); *id.* ¶ 21 (Defendants and Lender Plaintiffs did not "expect[] the limited exceptions to the pro rata sharing provisions . . . to permit the borrower to engage in loan repurchases that favored the PTL Lenders to the detriment of the . . . Defendants); *id.* (Defendants and Lender Plaintiffs "expected that a debt-for-debt exchange in which a majority of first lien lenders swapped their loans for new super priority loans under a new credit facility and amended the existing credit agreement to accommodate the transaction was not . . . permissible"). Such statements should be "excluded as impermissible speculation regarding [the parties'] intent." *Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*, 2017 WL 4173468, at *7 (E.D. Tex. Sept. 21, 2017). The Court can make its own determinations concerning the parties' states of mind at trial. Ms. Ward lacks any "specialized knowledge that will help the trier of fact" in reaching such conclusions. Fed. R. Evid. 702(a).[4]

22. For the foregoing reasons, Plaintiffs request that the Court (i) enter the Proposed Order excluding the testimony of Ms. Ward, and (ii) grant such further relief as the Court deems just and proper under the circumstances. Plaintiffs further ask that the Court hear this motion on an emergency basis because we are filing within a day of Ms. Ward's deposition, the parties needed

---

[4] Ms. Ward's report is also replete with assertions that lack sufficient factual support or methodology. For example, she asserts that, "based on [her] experience, lenders would not see a need for an express anti-subordination provision to bar a transaction like Serta's." Ex. B ¶ 20. Likewise, she opines on "[t]he purpose of [certain] sacred rights," *id.* ¶ 12, and states that "the prevailing market view of an open market transaction" is a "trade on the secondary market at prevailing market prices," *id.* ¶ 28, all without a single citation. Such *ipse dixit* is precisely the kind of "it is so if an expert says it is so" testimony that the Fifth Circuit has rejected. *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987).

time to meet and confer, the trial is scheduled to begin on May 15, 2023, and Plaintiffs are currently preparing a rebuttal report, which would be due in advance of trial.

Dated: May 9, 2023
       Houston, Texas

Respectfully submitted,

  /s/ Gabriel A. Morgan

WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan (24125891)
Stephanie N. Morrison (24126930)
700 Louisiana Street, Suite 1700
Houston, TX 77002
Tel: (713) 546-5040
Fax: (713) 224-9511
Email: Gabriel.Morgan@weil.com
Stephanie.Morrison@weil.com

WEIL, GOTSHAL & MANGES LLP
David J. Lender (admitted *pro hac vice*)
Ray C. Schrock (admitted *pro hac vice*)
Luna Barrington (admitted *pro hac vice*)
Alexander W. Welch (admitted *pro hac vice*)
Richard Gage (admitted *pro hac vice*)
Taylor B. Dougherty (admitted *pro hac vice*)
Joseph R. Rausch (admitted *pro hac vice*)
Michael P. Goodyear (admitted *pro hac vice*)
Nicholas J. Reade (admitted *pro hac vice*)
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000
Fax: (212) 310-8007
Email: david.lender@weil.com
ray.schrock@weil.com
luna.barrington@weil.com
alexander.welch@weil.com
richard.gage@weil.com
taylor.dougherty@weil.com
joseph.rausch@weil.com
michael.goodyear@weil.com
nick.reade@weil.com

*Attorneys for Debtors
and Debtors in Possession*

GIBSON, DUNN & CRUTCHER LLP
Gregg Costa (24028160)
811 Main Street, Suite 3000
Houston, TX 77002
Telephone: (346) 718-6600
Fax: (346) 718-6620
gcosta@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
C. Lee Wilson (admitted *pro hac vice*)
Alexandra Perloff-Giles (admitted *pro hac vice*)
Telephone: (212) 351-4000
Fax: (212) 351-4035
clwilson@gibsondunn.com
aperloff-giles@gibsondunn.com

*Counsel for Invesco Senior Secured Management, Inc., Credit Suisse Asset Management, LLC, Eaton Vance Management, Boston Research and Management, and Barings LLC*

## NOTICE

Notice of this Motion will be provided to (i) any party entitled to notice pursuant to Bankruptcy Rule 2002, and (ii) any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

## CERTIFICATE OF ACCURACY

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i)

                                                    */s/ Gabriel A. Morgan*
                                                    Gabriel A. Morgan

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and will be served as set forth in the Affidavit of Service to be filed by the Debtors' claims, noticing, and solicitation agent.

                                                    */s/ Gabriel A. Morgan*
                                                    Gabriel A. Morgan