1              IN THE UNITED STATES BANKRUPTCY COURT

2             FOR THE SOUTHERN DISTRICT OF TEXAS

3                     HOUSTON DIVISION

4  SERTA SIMMONS BEDDING, LLC,    §    CASE NO. 23-09001-ADV
   ET AL                          §
5                                 §    HOUSTON, TEXAS
   VERSUS                         §    THURSDAY,
6                                 §    MAY 4, 2023
   AG CENTRE STREET PARTNERSHIP,  §
7  ET AL                          §    1:00 P.M. TO 5:11 P.M.

8
                    **MOTION HEARING (VIA ZOOM)**
9
              BEFORE THE HONORABLE DAVID R. JONES
10               UNITED STATES BANKRUPTCY JUDGE

11

12      APPEARANCES:                SEE NEXT PAGE

13      COURTROOM DEPUTY:           VRIANA PORTILLO

14

15

16                **(Recorded via CourtSpeak)**

17

18

19

20                TRANSCRIPTION SERVICE BY:

21           JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                 935 Eldridge Road, #144
22               Sugar Land, TX 77478
                    281-277-5325
23             www.judicialtranscribers.com

24
      Proceedings recorded by electronic sound recording;
25        transcript produced by transcription service.

1                          <u>APPEARANCES (VIA ZOOM)</u>:

2

3   FOR THE DEBTOR:                WEIL, GOTSHAL & MANGES, LLP
                                   Richard Gage, Esq.
4                                  767 Fifth Avenue
                                   New York, NY  10153
5                                  212-310-8306

6

7
    FOR AD HOC GROUP OF FIRST      PAUL, WEISS, RIFKIND, WHARTON,
8   LIEN LENDERS:                  & GARRISON, LLP
                                   Andrew J. Ehrlich, Esq.
9                                  1285 Avenue of the Americas
                                   New York, NY  10019-6064
10

11
    FOR AD HOC PRIORITY            JACKSON WALKER, LLP
12  LENDER GROUP:                  Bruce Ruzinsky, Esq.
                                   1401 McKinney St., Suite 1900
13                                 Houston, TX  77010
                                   713-752-4200
14

15

16

17  (Please also see Electronic Appearances.)

18

19

20

21

22

23

24

25

1      **HOUSTON, TEXAS; THURSDAY, MAY 4, 2023; 1:00 P.M.**

2           THE COURT:  All right.  Then officially good

3    afternoon, everyone.  This is Judge Jones.  The time is

4    1:00 o'clock.  Today is May the 4th, 2023.  This is the

5    Docket for Houston, Texas.

6           On the 1:00 o'clock Docket we have Adversary

7    No. 23-9001, Serta Simmons Bedding, et al versus AG Centre

8    Street Partnership, et al.

9           Folks, I would ask that you go ahead and make your

10   electronic appearance in the main case and we will move that

11   over to the adversary after the conclusion of the hearing.

12          First time that you speak, if you would, please

13   state your name and who you represent, that really does give

14   a good point of reference in the event that someone makes a

15   transcript request.

16          And, finally, we are recording this afternoon

17   using CourtSpeak.  We'll get the audio up on the Docket

18   shortly after the conclusion of the hearing.

19          So -- and, finally, I forgot this, Mr. Ruzinsky,

20   you are the only person in the courtroom, obviously

21   perfectly fine.  When you do speak, I would ask that you

22   come to the lectern just so you can both be seen and be

23   heard.

24          I only had one taker on the raise your hand to

25   speak, so let me say that again.  I have activated the hand-

1 │ raising feature.  If you know you're going to be speaking,

2 │ can you go ahead and give me a five star?  I'll get you

3 │ unmuted.  Obviously you can change your mind at any time.

4 │     (No audible response.)

5 │          THE COURT:  All right, still no takers.

6 │          Let me ask:  Who's taking the lead for the Debtors

7 │ today?

8 │          MR. EHRLICH:  Your Honor, I believe Mr. Gage has

9 │ raised his hand on the video, but not with the five star.

10 │          THE COURT:  Got it.  I'm sorry.  Mr. Gage, what I

11 │ need for you to do on your telephone, however it is you are

12 │ hooked up, I need for you to hit five star.  There you go.

13 │          All right.  Mr. Gage, how about now?

14 │          MR. GAGE:  Thank you, Your Honor.

15 │          THE COURT:  All right, thank you.

16 │          Mr. Gage, I've read everything that's been filed.

17 │ I have certain -- I certainly have thoughts about one or

18 │ more of the paths that we may take today.  I just want to

19 │ start with you.  Where do you think we are?

20 │          MR. GAGE:  Your Honor, the Debtors believe that

21 │ we've gone back and forth in good faith upon -- with several

22 │ proposals.  We've been at an impasse.  And I think our local

23 │ counsel will be arguing the -- you know, for us that we

24 │ believe we're entitled to this -- to these documents and to

25 │ this discovery information.

1       THE COURT:  All right.  And, Mr. Ehrlich, did you

2  have any observations that differ substantively from what

3  Mr. Gage said?  Other than I know you don't think he's

4  entitled to what he's looking for?

5       MR. EHRLICH:  Not only do we think he's not

6  entitled to it, we think it's a practical impossibility

7  given the timing here that we face a trial, you know, a week

8  from Monday.

9       THE COURT:  Right.  So with that -- and I want to

10  give you sort of some of my thoughts, and then we'll figure

11  out where to go.

12       Number one, I would really encourage the folks who

13  participated in the drafting of the responses, as well as

14  the motion to compel, to go back and perhaps review the

15  rules.

16       I am not particularly happy with either the motion

17  because it's missing a required certification that I have to

18  have in accordance with the rule that gives me some leverage

19  to move this along.  And that's missing.

20       With respect to most of the responses, they are

21  sanctionable.

22       I encouraged folks not to play games when we

23  started down this path.  And given the way that the

24  responses were handled with the objections, my guess is if I

25  had a hearing and I called the lawyer who actually drafted

1  those responses, it would be a relatively unpleasant day.

2          I do know the rules.  I did this for a long time.

3  And I really don't like the game that's being played.

4          Now, let me also say -- because I'm perfectly

5  happy to deal with those two things.  It's not something

6  that I'm unaccustomed to seeing.  And I can work my way

7  through all of this relatively quickly and harshly.

8          Let me also say to the -- let me get to the merits

9  for just a second.  I agree with Mr. Ehrlich's statement

10  that with the way that things are phrased, it's a practical

11  impossibility to meet the obligations that are required

12  under the rules and make the production given the way the

13  questions are asked.

14          That being said, let me also say I absolutely

15  understand the relevance of the discovery requests that were

16  made.  It goes to the very heart of one of the things that

17  we are trying.

18          So let me -- number one, I'm happy to stop there

19  if I've said enough that people want to talk.  I can also

20  make some suggestions.  I can also entertain a, no, we

21  absolutely want to go forward and I've got all of my rules

22  marked and I am absolutely ready to go forward.

23          I want to be helpful to the process.  I -- again,

24  I'm not out to make a point.  I'm -- I've been presented

25  with a problem and I'm trying to evaluate the different ways

1  of dealing with that problem.

2          So let me go in the same order again.  And I --

3  Mr. Ruzinsky, are you taking for Mr. Gage at this point

4  or --

5          MR. RUZINSKY:  I was going to take the lead,

6  Judge.  But --

7          THE COURT:  Okay.

8          MR. RUZINSKY:  -- I -- what I would suggest, I'd

9  really like to take Your Honor up on your offer to get some

10  substantive feedback.  And then maybe the parties can use

11  that information and confer.

12          It's important that there, I think, either be an

13  agreement or, you know, a hearing that goes forward today.

14          THE COURT:  No, I absolutely agree.  So let me --

15  the easiest thing to do is, in terms of trying to be both

16  practical, as Mr. Ehrlich said, but to also recognize that I

17  do see the substance or the merits of the substance behind

18  the requests.

19          I don't know that every single one of those

20  requests was needed.  But I got the point.  It's a tough

21  argument to make that if you were out there doing the same

22  thing that you were somehow surprised, prejudiced by the

23  fact that it was done to you.  I got that argument.

24          It would seem to me for purposes of what we are

25  trying that the identity and the transaction and all of the

1  data that would go with making a document production isn't

2  what's really needed.  It's more or less trying to get a

3  handle around how many times it has happened.  At least

4  that's my view of reading through it.

5          And it would seem to me that a stipulation as you

6  work your way through each of the requests -- and I don't

7  have the language committed to memory, but, you know, you

8  could agree and stipulate for purposes of the trial that,

9  you know, that the Defendants had engaged in -- and you fill

10  in the blank -- multiple transactions in which the following

11  occurred.

12          And it would seem to me that that would prove the

13  point.  It would also deal with the practicality of trying

14  to search countless documents and having to worry about

15  nondisclosure and all of those issues and in what will be a

16  very public airing of this issue.  It would probably best

17  serve everyone to sort of find that type of approach.

18          I can also see -- because, again, that would prove

19  the point to me.  I mean, if you -- and I don't even think I

20  need 25, 50.  I think multiple times is more than sufficient

21  to make the point that the Debtors are -- that the Debtors

22  want to make with respect to this.

23          And the truth is what the truth is.  And if the

24  Debtors have done it, they may have good arguments.  They

25  may have countervailing evidence as to why that's not a

1  valid point.  But you can't run from the point.  That is

2  kind of where I was headed.

3       You know, I can start stepping back in terms of a

4  list and with defined categories on that list.  I'm -- I

5  have trouble seeing what that really adds unless there's a

6  dispute as to whether or not something happened or it

7  didn't.

8       And then, you know, with respect to the documents

9  themselves, I mean, if the Debtors wanted to agree to a

10 continuation of the confirmation hearing and trial, which I

11 know you don't, then I -- you know, I understand the issue

12 about producing a ton of documents.

13      So -- and I don't pretend to have a corner on all

14 possible options.  I -- if parties have something else that

15 would make sense.  But the easiest thing for me and what is

16 going to prove the point to me -- because I don't need

17 someone to get up and walk me through a transaction.

18      The point that you made that really piques my

19 interest is the fact that it occurred.  I don't know what

20 else to say.

21      What would you like to do with that?  Was that

22 enough feedback?

23      MR. RUZINSKY:  I think so, Your Honor.  And we had

24 actually offered a stipulation before the hearing here.  And

25 I think with the benefit of Your Honor's input, I think we

1    can -- I'd like for us to be able to go back offline and

2    visit that concept, maybe some form of the stipulation we

3    had previously prepared, or some different one --

4                THE COURT:  Well --

5                MR. RUZINSKY:  -- that addresses what Your Honor's

6    main point is.

7                THE COURT:  Sure.  Let me ask.  Mr. Ehrlich, are

8    you the point person on this?

9                MR. EHRLICH:  I am, Your Honor.

10               THE COURT:  And so would it be -- would you have

11   any interest in talking to Mr. Ruzinsky about perhaps an

12   alternative, either along the lines of something I suggested

13   or something else that you may have in mind?

14               MR. EHRLICH:  Your Honor, I'd be happy to talk to

15   Mr. Ruzinsky.  And the guidance is helpful.

16               The one -- as with all things like this, the devil

17   is in the details, right?  I mean, there are transactions,

18   couple of which are identified in the request, --

19               THE COURT:  Right.

20               MR. EHRLICH:  -- that are disputed that our

21   clients were participants in that in our view are materially

22   different in very important ways from the transaction issue

23   here.

24               And one of our concerns about going down this road

25   is we then go down a, well, you know, this transaction, you

1   know, has this feature and that other transaction doesn't,

2   it doesn't affect, you know, pro rata sharing.

3         And the crux of the problem here is that you have

4   first lien lenders with differing levels of rights to the

5   collateral which is -- so in theory, a stipulation is great.

6   I just -- you know, we'll need to work through kind of how --

7   because what we had been presented by the folks on -- my

8   friends on the other side was something extremely generic --

9         THE COURT:  Okay.

10        MR. EHRLICH:  -- and at a very high level of

11   abstraction.

12        But if we -- you know, we are happy to negotiate

13   in good faith specific, you know, terms of a stipulation.

14        THE COURT:  So let me react to that just a little

15   bit.  As I read through -- so I haven't seen what got

16   proposed so I'm somewhat talking about something I haven't

17   seen.

18        And -- but it would seem to me that as I read

19   through the differing requests for production, they all end

20   with different language.  And I got the point that you're

21   trying to get to something different and trying to peel off

22   parts of it.

23        And what I had envisioned in my mind was a series

24   of stipulations which -- and I fully get that the answer to

25   some of them could be, yes, we can agree to that; two, we

1   don't think we did "B" and we think that we did "C."  And I

2   totally got that.  I don't know any of those things because

3   I'm not participating in the conversations.

4          But it seemed to me that if you really broke it

5   apart and tracked the request for production in terms of

6   whether or not a stipulation could or could not be entered

7   into, that that might make it easy; because I was worried

8   about if you did it -- if you did something that was very

9   generic, good lawyers will always pick that apart and say

10  nothing falls, you know, or everything falls within that.

11  And I was trying to avoid that.

12          MR. RUZINSKY:  And, Your Honor, I'm --

13          THE COURT:  Yeah.

14          MR. RUZINSKY:  -- happy to -- if it's all right

15  with Your Honor and the parties, we had proposed eight

16  stipulations.  I'm happy to read them into the Record.  And

17  if it's what you had in mind, if it's something good to work

18  off of, happy to run with that.

19          THE COURT:  So let me do this because, number one,

20  you know, I can't make people enter into a stipulation.

21          MR. RUZINSKY:  Understand.

22          THE COURT:  That's the whole point behind it.  And

23  I don't know -- I don't -- I -- if -- I'm going to look at

24  that sort of in the context of a settlement discussion.  So

25  I don't want to see those.

1          What I don't want to do -- and so that everyone

2   knows -- is I have a very brief Chapter 13 Panel at 2:30.

3   The rest of the afternoon has canceled and so I have far

4   more time than I had, you know, than I thought I had

5   yesterday.

6          I am perfectly happy for you all to talk offline

7   and see if you can come up with something.  But I want to

8   make it very clear.  I am -- you know, I'm not -- I'm

9   perfectly happy if you don't agree.  And we're going to

10  resolve this one way or another today.

11         And, you know, I'm not going to be shy, again

12  because I'm not happy with where this sits.  I'm not happy

13  that I had leverage taken away from me by folks not

14  following the rule.  I'm not happy that I have responses

15  that, in my view, are just the worst abuse of Rule 37,

16  period.

17         And the question then becomes, because I don't

18  have the certification that I need, what I can do about it.

19  And when you let my mind get out of the box, and I can start

20  being creative, that tends to be not good for anyone but me

21  because I will smile.

22         So I will -- I -- again, I'm a big believer in

23  letting you control your own destiny.  And I'm trying to

24  give you every opportunity to do that.

25         But want to make, you know, however we get to it,

1  the point that -- the point of those discovery responses is

2  important to me.  I'm just telling everybody that so that

3  it's not a secret.

4        So why don't we do this, Mr. Ruzinsky?  It is --

5  and Mr. Ehrlich.  It is 1:16 Central Time.  Mr. Ruzinsky,

6  what we'll do is I'll have Mr. Alonzo come out and unlock my

7  conference room so --

8        MR. RUZINSKY:  Oh, wonderful.

9        THE COURT:  -- you have a place with a table and

10  privacy.

11        MR. RUZINSKY:  Wonderful.

12        THE COURT:  I assume that you know how to reach

13  out to Mr. Ehrlich.

14        What I would ask is if you get to, let's say

15  30 minutes, so that would be 1:45, if you get to 1:45, I'd

16  either like a we're going to agree to disagree or we've

17  actually found a path that makes some sense and we need some

18  extra time.

19        Or you can obviously always come out, Ms. Portillo

20  will be here in the courtroom, and say we've actually got a

21  solution, can you get Jones back on the bench.

22        Does that make sense?

23        MR. RUZINSKY:  It certainly does, Judge.  If I can

24  just ask perhaps Mr. Gage to join us and maybe he can

25  initiate the call.  If he calls my cell and calls

1   Mr. Ehrlich, we'll have a three-way call.

2           THE COURT:  He's shaking his head yes, so that

3   seems to --

4           MR. RUZINSKY:  Great.

5           THE COURT:  -- work just fine.

6           MR. RUZINSKY:  Excellent.

7           THE COURT:  All right, gentlemen --

8           MR. EHRLICH:  And, Your Honor, --

9           THE COURT:  Yes, sir.

10          MR. EHRLICH:  -- can I just add one thing, please,

11  if I may before we break?  I think, you know, we are very

12  much open to negotiating a stipulation.  And, you know,

13  we'll work in good faith with Mr. Ruzinsky and Mr. Gage.

14          The one thing I would just point out is I think

15  what we could agree to today, and I hope this will be okay

16  with the Court, assuming we can agree, are the items as to

17  which we would stipulate either something did or didn't

18  happen.

19          We have multiple clients.  They are not all

20  situated the same.  And, frankly, we will need to do some

21  inquiries, which we can do, you know, briskly.

22          THE COURT:  Sure.

23          MR. EHRLICH:  But I don't think we could respond

24  on the -- like I don't think we could have a signed

25  stipulation today as to any particular topic.  But what we

1  could say is we will respond and say we stipulate "X" did or

2  did not happen.  We could agree to the converse of that

3  today.

4          And then, you know, promptly within, you know, the

5  coming days respond in substance.  Does that make sense?

6          THE COURT:  So I perfectly understand the

7  approach.  When did depos start?

8          MR. RUZINSKY:  So depos have started, Judge,

9  and --

10          THE COURT:  Oh, they've already started.

11          MR. RUZINSKY:  And there are depositions Monday,

12  Tuesday, and Wednesday of some of the parties that are

13  included in the --

14          THE COURT:  Yeah, so --

15          MR. RUZINSKY:  -- group we're trying to get

16  production from.

17          THE COURT:  So this is going to get -- this is

18  going to need to get done before Monday comes.

19          MR. RUZINSKY:  Yes.

20          THE COURT:  And, Mr. Ehrlich, --

21          MR. EHRLICH:  Yeah.

22          THE COURT:  -- I got what you're telling me.  You

23  -- and absolutely you're going to need to run this down with

24  each and every one.  I -- you're in a tough spot, I got

25  that.

1          But I want the approach -- if we're going to do

2     that, I want the approach agreed on.  If we're not going to

3     do that then obviously, you know, I mean, an order's an

4     order and we can go from there.

5          MR. RUZINSKY:  Right.

6          THE COURT:  That make sense?

7          MR. EHRLICH:  It makes perfect sense.

8          MR. RUZINSKY:  Yes, Judge.

9          THE COURT:  All right.  Then just let me know when

10    you're ready.

11         And for those folks who are listening, and there

12    are a large number of folks listening, given that I will

13    retake the bench the earlier of 1:45 Central, or if there is

14    a quicker resolution I'll come back out and hear that

15    resolution.  So that puts those folks who are listening in a

16    difficult position.  We'll leave the phone lines on.  I

17    don't really know what else to do.  So we'll leave it there.

18         MR. RUZINSKY:  All right.

19         THE COURT:  All right.

20         MR. RUZINSKY:  Thank you, Judge.

21         THE COURT:  Thank you.

22       (Recess taken from 1:19 p.m. to 1:46 p.m.)

23                        AFTER RECESS

24         THE COURT:  All right.  We are back on the Record

25    in Adversary No. 23 -- camera, thank you -- 23-9001, Serta

1    versus AG Centre Street Partnership.

2           Mr. Ruzinsky.

3           MR. RUZINSKY:  Yes, Your Honor.  Mr. Ehrlich and

4    Mr. Gage and I had a short call for a status update for the

5    Court.

6           Mr. Ehrlich is working on a revised version of the

7    previous stipulation that was offered.

8           THE COURT:  Okay.

9           MR. RUZINSKY:  And he's going to get that to us.

10   We don't have it yet.  I expect to get a draft any time now,

11   and we're going to try and work off of that.

12          THE COURT:  Fair enough.  Thank you for that.

13          Let me ask just to try to be practical about using

14   our time.  You know, let's assume -- because nothing ever

15   happens quickly.  Let's assume that you get a stipulation

16   back at 2:00 o'clock.  You've got to then talk to your team

17   about that as well.

18          And as I said, I've got a Laredo Chapter 13 Panel

19   at 2:30.  Just given that one of the lawyers has had a

20   severe case of COVID, so I've continued all of his cases, so

21   that -- I mean, that's roughly a third of it, I can't

22   imagine it takes me more than 30 minutes or so to do that.

23          And where I was going with this so that folks who

24   are watching and listening would know, we came back at

25   3:00 o'clock, seems to me that would give -- if you don't

1  have something resolved, it would seem to me that gives

2  everybody an opportunity to make their arguments.  I can

3  respond to whatever questions I have.  And then I can give

4  everybody a ruling.

5          Does that make sense?

6          MR. RUZINSKY:  Yes, it does, Your Honor.

7          THE COURT:  Mr. Ehrlich, I see you popping in

8  there.  Are you on?

9          MR. EHRLICH:  (No audible response.)

10          THE COURT:  I need for you to hit five star again

11  if you had gotten off the phone.  Should be there now.

12          MR. EHRLICH:  Can you hear me, Your Honor?

13          THE COURT:  Loud and clear, thank you.

14          What I had -- I didn't know how much of that that

15  you heard.  I proposed to -- Mr. Ruzinsky gave me an update.

16  And what I proposed to him was -- just because I know things

17  take time and people have to review and people have to talk

18  to clients, what I had proposed was I don't see how we can

19  make a lot of progress before my Chapter 13 Panel.  But it's

20  a Laredo Panel, and it's relatively short.

21          And so what I had suggested is that we reconvene

22  at 3:00 o'clock Central Time.  That would -- if you've got

23  something done, terrific.  If you don't, it seems to me that

24  would give everyone ample opportunity to make the arguments

25  that they wanted to make.  Does that make sense?

1          MR. EHRLICH:  Your Honor, that's fine.  What I

2    would -- had just suggested to -- we were a little late,

3    Mr. Gage and I, because we were speaking on the phone.

4          THE COURT:  Okay.

5          MR. EHRLICH:  And I think we are working in good

6    faith.  I think we should be -- there were eight items that

7    had been sent in a proposed stipulation over the weekend.

8    Six of them -- two of them seemed to us too subjective in

9    nature to really be the subject of a stipulation.

10          THE COURT:  Okay.

11          MR. EHRLICH:  There were six of them that we

12    thought we could work with, subject to wordsmithing.

13          We proposed -- I proposed Mr. Gage that we respond

14    to these topics for -- there are eight clients that we

15    represent, but three of them are -- have more substantial

16    holdings and are the three that the Debtors intend to depose

17    next week, that we respond with respect to those three out

18    of the eight, and that we use this afternoon and evening to

19    hammer out the language, because I've spoken to -- I was

20    able to speak to only one of them in the 30 minutes since we

21    were -- we broke.  And that client had some, I thought, fair

22    suggestions about the language.

23          And it's just going to be very hard to get sign-

24    off this afternoon.  But we will work very hard.  And, you

25    know, we heard the Court about, you know, working this out.

1          THE COURT:  Okay.  So I -- again, I'm not trying

2    to get in the way of any discussion.  I'm just telling you

3    all that I've got a motion before me.  Unless that --

4          MR. EHRLICH:  Yes.

5          THE COURT:  -- motion is withdrawn or there's an

6    agreement to push it, I'm going to hear the argument and I'm

7    going to rule.  So let me ask:  Do you want to take until --

8    and I -- this is a question for everybody.  Do you want to

9    take until 3:00 o'clock to see your -- sort of gauge your

10   level of comfort and then come back and give me a status

11   report, or proceed ahead with the motion, or anything else

12   that you all work out?

13          Again, I'm not going to get in the way of

14   progress.  I'm just here if --

15          MR. EHRLICH:  Right.

16          THE COURT:  -- progress isn't getting made.

17   That's all I'm trying to tell everybody.

18          MR. RUZINSKY:  Appreciate that, Your Honor.  And --

19          MR. EHRLICH:  I --

20          MR. RUZINSKY:  -- I would like -- oh, I'm sorry.

21   I would like to have that 3:00 o'clock Central Time as a

22   target.  And then if we've got an agreement or enough of one

23   by then, that's one thing.  And if we don't, we can go

24   forward.

25          THE COURT:  So as you're working through --

1   because ordinarily I would have said you have time tomorrow.

2   I have a personal medical issue that I have to take care of

3   tomorrow.  You know, that's all the information I'm going to

4   disclose.

5           MR. RUZINSKY:  I understand.

6           THE COURT:  It's just one of those things you have

7   to do from time to time.  I'm just not going to be available

8   tomorrow.  If I need --

9           MR. EHRLICH:  Understood.

10          THE COURT:  If I need to be, I could be available

11  on Saturday.  But I'm just not available tomorrow.

12          MR. RUZINSKY:  I think today would be best, Your

13  Honor, thank you.

14          THE COURT:  All right, terrific.  Then I will see

15  everybody back at 3:00 o'clock.  You've got full range of

16  options.  And you have as much time as you need today.

17          MR. RUZINSKY:  Thank you, Judge.

18          THE COURT:  All right.

19          MR. RUZINSKY:  Very much appreciate it.

20          THE COURT:  Thank you.  And we'll be adjourned

21  until the 2:30 Laredo Chapter 13 Panel.

22        (Recess taken from 1:52 p.m. to 3:10 p.m.)

23                        AFTER RECESS

24          THE COURT:  The time is 3:10 Central.  We are back

25  on the Record in Adversary No. 23-9001.  Folks, if you have

1 dialed back in, I have reactivated the hand-raising feature.

2 If you're going to be speaking, I need for you to give me a

3 five star on your telephone.

4      And, Mr. Ruzinsky, if I could ask you to go ahead

5 and come to the lectern --

6      MR. RUZINSKY:  Certainly, Judge.

7      THE COURT:   -- please, sir.

8    (Pause in the proceedings.)

9      THE COURT:  All right.  There's one five star.

10 Mr. Ehrlich, I think that's you.

11      MR. EHRLICH:  Can you hear me, Your Honor?

12      THE COURT:  I can hear you loud and clear.  I just

13 only got one five star.

14      Mr. Gage, are you letting Mr. -- are you deferring

15 to Mr. Ruzinsky, or are you having issues?  Just give me a

16 thumbs up if you're -- if you've hit five star.  So you --

17 not a great lip reader.  It's -- I'm taking classes, but not

18 a great lip reader.  Can't hear you.  Ah, there you are.

19 There we go.  How about that?

20      MR. GAGE:  I'm deferring to Mr. Ruzinsky.

21      THE COURT:  Fair enough.  All right.

22    (Laughter.)

23      THE COURT:  Mr. Ruzinsky, where are we?

24      MR. RUZINSKY:  So, Your Honor, the last I heard,

25 which was right before 3:00 o'clock, there had been no

1  agreement reached, and there was still a conversation going

2  on or about to be had and I think it was one of those break

3  through or impasse conversations, and I don't know for sure

4  the outcome.  So I'm going to ask Mr. Ehrlich and Mr. Gage

5  if there's been any development since what Mr. Ehrlich sent

6  over, which was not quite what we were expecting.

7         THE COURT:  Got it.  So let me do it this way,

8  just in case there is anything productive occurring.  I

9  don't want people to -- I don't want people to step on top

10  of anything.  Would it be of benefit to the parties to have

11  some additional time, or should we go forward with the

12  hearing?

13         Let me -- Mr. Ehrlich, let me start with you.

14         MR. EHRLICH:  I think it would be of benefit to

15  allow some additional time, Your Honor.  I just made a

16  proposal to one of Mr. Gage's -- a couple of Mr. Gage's

17  (indiscernible).  We proposed getting access a slightly

18  different way, but I think that's the information that --

19         THE COURT:  Enough --

20         MR. RUZINSKY:   -- the Debtors and the first --

21         THE COURT:  Enough said.  I don't want to --

22  again, I don't want to -- I don't want anyone to feel

23  defensive about anything that might get said.  Let me just

24  do it this way.

25         Mr. Gage, do you believe that some additional time

1  might be helpful?  I can't --

2          MR. GAGE:  Yeah.

3          THE COURT:  Oh, okay.  Got it.  Thank you.

4          Let me ask --

5          MR. GAGE:  Yeah --

6          THE COURT:   -- so --

7          MR. GAGE:   -- it might be helpful.

8          THE COURT:  All right.  How much time?  Because,

9  again, I want to leave time enough to have the hearing if we

10 need it.  So, but I -- yeah.  I'm perfectly prepared to stay

11 late, but I just -- I want everyone -- I don't want anyone

12 to think that they're going to run the day out without

13 having a hearing.  But you all tell me what you think would

14 be helpful.

15         MR. GAGE:  I think I would be helpful to have

16 another 15 minutes for us to confer and then give you

17 another update.

18         THE COURT:  Fair enough.  So then let's do this:

19 Mr. Ruzinsky, it's 3:14, I'll step back out at 3:30 and

20 we'll just find out where we are.

21         Mr. Ehrlich, does that work for you?

22         MR. EHRLICH:  It does.  It does, Your Honor.  If

23 we might, half an hour might be -- allow us to make a little

24 more progress, but if you want 15 minutes, that's fine, too.

25         THE COURT:  So let me do this just because I want

1   to give those folks who are listening, because there are a

2   large number of folks who are paying attention to this, and

3   I want to make sure that they are updated as well.  If you

4   all are talking, continue to talk.

5           And, Mr. Ruzinsky, you can just come in and say,

6   "We'd like another 15 minutes."  And again, I just want to

7   be courteous to everyone, but I don't need everybody to stop

8   talking to come in and tell me that they want to continue

9   talking.  Mr. Ruzinsky, you just come in and do that if that

10  makes sense.

11          MR. RUZINSKY:  Certainly, Judge.

12          THE COURT:  All right.  Then I'll see everybody

13  back 3:30 Central Time.  We'll be adjourned.

14          MR. RUZINSKY:  Thank you, Judge.

15          MR. GAGE:  Thank you, Your Honor

16      (Recess from 3:15 p.m. to 3:45 p.m.)

17                      AFTER RECESS

18          THE COURT:  Well, we are back on the Record in

19  Adversary No. 23-9001.

20          Mr. Ruzinsky?

21          MR. RUZINSKY:  At the risk of repeating myself,

22  Your Honor, we'd like a little bit more time.  I understand

23  there's been some progress made.

24          THE COURT:  Okay.  Why don't we do -- let me ask

25  this, and again, I want to be helpful and I don't mean to be

1    a drag with you having to come back in here and --

2          MR. RUZINSKY:  Not a drag at all.

3          THE COURT:  -- stopping progress.  I want to say

4    4:15 with the understanding that if we're not done by 4:15

5    I'm going to expect you to either step up and argue or do

6    something with the motion.  Is that fair?

7          MR. RUZINSKY:  Yes, it is, Your Honor.

8          THE COURT:  All right.  Thank you.

9          Then we'll be adjourned until 4:15.

10         MR. RUZINSKY:  Thank you, Judge.

11       (Recess from 3:46 p.m. to 4:15 p.m.)

12                       AFTER RECESS

13         THE COURT:  All right.  Good afternoon everyone.

14   This is Judge Jones.  The time is 4:15, we are back on the

15   Record in Adversary No. 23-9001.

16         Mr. Ruzinsky?

17         MR. RUZINSKY:  Your Honor, I've been informed that

18   the parties are mighty close, not quite there yet.  I don't

19   want to sound like a broken record, I may be sounding like

20   that, but if we could ask the Court's indulgence for a

21   little bit more time.

22         THE COURT:  Sure.

23         MR. RUZINSKY:  And I'm going to try and play it

24   safe here and if we can go to 4:45 Central Time, but if Your

25   Honor has another time frame you want to use, that's

1  perfectly fine.

2          THE COURT:  Look, it's -- I want to know, because

3  I've got to make arrangements because Ms. Portillo has

4  little ones and those take priority, so I'm going to go make

5  arrangements to make sure that I have somebody on stand-by

6  in case we need to proceed.  My time's easy, but I worry

7  obviously about those with families.

8          We'll be adjourned until 4:45 Central.

9          MR. RUZINSKY:  Thank you very much.

10         THE COURT:  All right.  Thank you.

11      (Recess from 4:16 p.m. to 4:46 p.m.)

12                         AFTER RECESS

13         THE COURT:  All right.  Good afternoon again,

14  everyone.  This is Judge Jones, the time is 4:46 Central,

15  May 4, 2023.  Back on the Record in Adversary No. 23-9001.

16         Mr. Ruzinsky?

17         MR. RUZINSKY:  Your Honor, I think it might be

18  most helpful to get the most current update from Mr. Ehrlich

19  and Ms. Barrington.

20         THE COURT:  Certainly.

21         Mr. Ehrlich, could you hit five star for me?

22         MR. EHRLICH:  Your Honor?

23         THE COURT:  Yes, sir.

24         MR. EHRLICH:  Can you hear me, Your Honor?  Thank

25  you.

1            THE COURT:  Loud and clear.

2            MR. EHRLICH:  So I think we are very, very close

3    to reaching agreement.  I said we had proposed final

4    language that was just exchanged.  I have not heard back

5    from Ms. Barrington yet, but what we've done just so the

6    Court is aware is rather than attempt to wordsmith a

7    stipulation with a cast of thousands, we agreed to respond

8    to certain interrogatories asking if the clients had

9    undertaken -- to identify any transactions that the clients,

10   the Defendants had undertaken that had certain

11   characteristics, and we have identified four interrogatories

12   to -- of that ilk and we are just negotiating some final

13   language.  But I think we are extremely close to having

14   reached resolution.

15           THE COURT:  All right.  And again, I want to make

16   efficient use of everyone's time.  15 minutes?  30 minutes?

17   And again, just be realistic.

18           MR. EHRLICH:  Well, Your Honor, as -- if we can

19   real time, I just got an email from Ms. Barrington that they

20   are fine with one of them, and on the other two -- I

21   misspoke, there are not four, there are three -- and on the

22   other one I haven't gotten to send here our confirmation.

23   But let's do 15 minutes because I made one small change to

24   the other two.

25           THE COURT:  All right.

1          MR. EHRLICH:  But we're very close.

2          THE COURT:  All right.  Thank you.  Then we'll

3  reconvene at 5:00 o'clock Central.  Thank you.

4          MR. RUZINSKY:  Thank you, Your Honor.

5          MR. EHRLICH:  5:00 o'clock.

6      (Recess from 4:48 p.m. to 5:01 p.m.)

7                        AFTER RECESS

8          THE COURT:  All right.  We are back on the Record.

9  The time is 5:01 Central, and it's Adversary No. 23-9001.

10         All right.  And for Mr. Gage, Mr. Ehrlich, you go

11 ahead and hit five star for me just so I can -- in case you

12 do need to speak.

13         All right.  Mr. Ruzinsky?

14         MR. RUZINSKY:  Your Honor, I believe that there's

15 an agreement.  I see Mr. Ehrlich shaking his head, I see

16 Mr. Gage shaking his head, both shaking in the yes mode.

17         THE COURT:  Then congratulations.  That's what's

18 smart lawyers do is assess risk and figure out where to

19 land.  Let me ask, now do we memorialize this, or have you

20 all talked about that?

21         MR. RUZINSKY:  I believe it will be read into the

22 Record, and I'm very much in favor of that, and also

23 suggested a follow-up stipulation and agreed order, which I

24 think would be good.

25         THE COURT:  All right.  Mr. Ehrlich, that work for

1  you?

2         MR. EHRLICH:  Yeah, I don't know that an agreed

3  order is necessary, but happy to read it, if that's, you

4  know, the Court's preference.

5         THE COURT:  I have --

6         MR. EHRLICH:  We have an agreement.

7         THE COURT:   -- yeah, I don't have one, but I do

8  want there to be some -- I want there to be some

9  memorialization of what you all have worked so hard all

10 afternoon to do.  I don't want there to be making something

11 up, I don't want there to be two versions of an email, I

12 don't want there to be different perceptions inside of two

13 different parties.  So I'm --

14        MR. EHRLICH:  There is a detailed email, Your

15 Honor, a detailed email that Ms. Barrington of Weil Gotshal

16 and I exchanged which we're happy to read into the Record.

17        THE COURT:  All right.  Fair enough.  Then --

18        MR. RUZINSKY:  That'll be fine, Your Honor.

19        THE COURT:   -- read away.

20        MR. EHRLICH:  Would you like me to read it,

21 Mr. Ruzinsky?  I'm happy to.

22        MR. RUZINSKY:  Yes, please.  Thank you.

23        MR. EHRLICH:  Okay.  Sure.  The agreement, Your

24 Honor, is that the Defendant shall answer in substance each

25 of Plaintiff's joint second set of interrogatories to

1  Defendant dated April 10.  Defendants will defer response to

2  Interrogatory Number 2 at the time and which Plaintiffs

3  reserved their right to seek a response.

4        Interrogatories 1, 5 and 6 shall be amended as

5  follows:  Interrogatory 1: Please identify and describe with

6  particularity all transactions in which you have

7  participated, including without limitation the April '22

8  Envision transaction and October 2022 (indiscernible)

9  transaction that resulted in existing loans contractually --

10  excuse me, existing loans governed by US law being

11  (a) exchanged for new loans and/or (b) repurchased by the

12  borrower of such loans, in either case with the

13  consideration being new loans in whole or in part and with

14  such new loans being contractually and/or structurally

15  senior to such borrower's existing debt and which were no

16  offered to all lenders and particular class of loans.

17        Interrogatory 5 as amended shall state: Identify

18  all transactions since January 1, 2014 in which you have

19  participated with certain lender and class of debt governed

20  by US law received differential -- I believe actually -- and

21  I'll ask Mr. Gage to correct that -- I believe that's

22  actually a loan governed by US law receives differential

23  treatment, consideration, benefits, or terms than other

24  lenders in that same class, and any portion of the

25  differential treatment, consideration, benefit or terms were

1  not offered to all lenders in that class including without

2  limitation the April 2022 Envision transaction and October

3  2022 (glitch in the audio) transaction.

4          And, Mr. Gage, is that correct that that is just a

5  loan (indiscernible)?  Okay.  We'll come back to that.

6          THE COURT:  I'm guessing he's right there and he's

7  still on the phone, even when he turns his camera off.

8          MR. GAGE:  I'm here.  Just a second to confer on

9  that.

10          THE COURT:  Understood.

11          MR. EHRLICH:  Well, let's keep going and then

12  we'll come back to that point.

13          Interrogatory 6 now reads: Identify all

14  transactions since January 1, 2014 in which you held loans

15  governed by US law in a certain class, include all

16  transactions where other lenders in that class received

17  differential treatment (glitch in the audio).

18          Defendant shall answer in substance each of

19  Plaintiff's joint second set of requests for admission dated

20  April 10, 2023.  I referenced Interrogatories 1, 5 and 6

21  (indiscernible) shall be understood to refer to the

22  interrogatories as amended by this stipulation.

23          After Plaintiffs receive Defendant's responses to

24  the interrogatories and are (glitch in the audio),

25  Plaintiffs reserve the right to seek additional details of

1   any transactions identified in Defendant's responses.  If

2   Plaintiffs seek such additional detail about any transaction

3   and Defendant's refuse to provide it, Plaintiffs reserve the

4   right to seek additional relief from the Court, and

5   Defendants waive the right to argue delay.

6          Defendants would preserve all of their other

7   rights vis-à-vis any follow-up requests including the

8   special request may be unduly burdensome or that there's

9   insufficient time to address such a request with the time

10  remaining before trial, and the Debtors reserve the right,

11  you know, to oppose the market.

12         Next, Defendant shall provide responses to the

13  interrogatories and RFAs only for Angelo Gordon, Gamut and

14  Apollo (phonetics), Angelo Gordon shall provide their

15  responses by the end of the day on May 6, 2023 and Gamut and

16  Apollo by the end of the day on May 7, 2023.  In exchange to

17  responding to the interrogatories and RFAs, Defendants will

18  not need to respond to Requests 12 to 15, 18 or 19 in the

19  Plaintiff's joint requests for production of documents dated

20  April 10, 2023.

21         I believe with the one open question as to whether

22  the -- Interrogatory 5 is intended to say debt or a loan.  I

23  think that is the entirety of the agreement.

24         THE COURT:  Mr. Gage?

25         MR. GAGE:  Your Honor, I'm very happy to report

1  that we are in agreement on the term loan.

2          MR. RUZINSKY:  Your Honor, may I make a

3  suggestion?

4          THE COURT:  Of course.

5          MR. RUZINSKY:  This is Bruce Ruzinsky.

6          Just because there was a little bit of static

7  or --

8          THE COURT:  Yeah, there was some background noise.

9          MR. RUZINSKY:  -- yeah, some background noise, and

10 in case the -- whenever it's transcribed if there's anything

11 missing there, my suggestion would be that the parties

12 memorialize this in at least a notice that gets filed, and

13 all the language is very clear.

14         THE COURT:  Either do that or agree that -- an

15 email and submit the email as a -- I'll take it as the

16 equivalent of a Rule 11 agreement, that's --

17         MR. RUZINSKY:  Perfect.

18         THE COURT:   -- fine with me, too.

19         MR. RUZINSKY:  Perfect.

20         THE COURT:  I'll leave -- you all are certainly

21 more than skilled enough to figure out how to do that.  I

22 just don't want there to be any questions.

23         MR. RUZINSKY:  Neither do I.

24         THE COURT:  And with that -- and let me just

25 confirm.  Mr. Gage, you've seen the email that Mr. Ehrlich

1  read from and you agree that that resolves the issues for

2  today and represents the outcome of the discussions we've

3  had over the past several hours?

4        MR. GAGE:  Yes, Your Honor.

5        THE COURT:  All right.  Then with that, I

6  appreciate you folks working hard to get through that.  I'll

7  -- I will leave you all to do what you do so well.  Is there

8  anything else since I have you that we need to talk about,

9  any changes that we see coming, and again, I'm just trying

10 to manage the calendar.

11       MR. RUZINSKY:  I've got one question, and --

12       THE COURT:  Perfect.

13       MR. RUZINSKY:  -- maybe -- Mr. Ehrlich, you know,

14 with the depositions coming up, and the resolution of these

15 issues here, I think I had seen a letter about not, you

16 know, not -- I can't remember if it was PJT Partners or

17 somebody else not discussing, or not going to be discussing

18 certain things at a deposition.

19       Do I understand correctly that what's been agreed

20 to here and the topics that are agreed to in the

21 interrogatory that that will inbounds and can be the subject

22 of questioning at these depositions?

23       MR. EHRLICH:  For our client certainly.  For PJT

24 we do not represent PJT, they're represented by the Simpson

25 Thatcher firm.  I'm not sure I've seen the letter that

1  you're referring to, Mr. Ruzinsky, so I suggest that you

2  work those issues out with counsel for PJT.  But --

3         MR. RUZINSKY:  I will.

4         MR. EHRLICH:   -- I really don't think we take the

5  position they've taken.

6         MR. RUZINSKY:  As long as we're fine on the three

7  that are covered here, we can take that up separately with

8  PJT's counsel.  Thank you.

9         THE COURT:  All right.  Anything else?

10     (No audible response.)

11         THE COURT:  We still on track?

12         MR. RUZINSKY:  I think so.

13         UNIDENTIFIED SPEAKER:  We've been working hard.

14         MR. RUZINSKY:  Sprinting hard.

15         THE COURT:  No, I know that you do and I -- that

16  wasn't a suggestion of anything to the contrary.  I just

17  want to make sure that you, and I know I'm pushing everybody

18  to start on a certain date.  I do want -- you know, look at

19  that week and try to figure out -- I want to be efficient

20  about it, and just make sure that the time block works, and

21  if folks are going to be here.  And I just want you to think

22  about it, I don't have a position one way or another with

23  what you do.

24         If we're going to have a lot of our New York

25  colleagues here all week and they want to make sure that

1  they catch Friday afternoon flights, all fine by me.  I want

2  people to be home, I want people to enjoy life.  But I can

3  use the time, I just need people to tell me, that's all I'm

4  after.  All right?

5          MR. RUZINSKY:  Pretty good.  We'll do so --

6          THE COURT:  All right.

7          MR. RUZINSKY:   -- Judge.

8          THE COURT:  Terrific.  Then everyone have a great

9  day and I'll see everybody soon.  We'll be adjourned.

10          MR. EHRLICH:  Your Honor, thank you.

11       (Hearing adjourned 5:11 p.m.)

12                          *  *  *  *  *

13          *I certify that the foregoing is a correct*

14  *transcript to the best of my ability due to the condition of*

15  *the electronic sound recording of the ZOOM/video/telephonic*

16  *proceedings in the above-entitled matter.*

17  */S/ MARY D. HENRY*

18  *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

19  *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

20  *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

21  *JTT TRANSCRIPT #67194*

22  *DATE FILED:  MAY 11, 2023*

23

24

25