# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>SERTA SIMMONS BEDDING, LLC, et al.,<br><br>　　　　　　　　　　　Debtors, | Chapter 11<br><br>Case No. 23-90020 (DRJ)<br>(Jointly Administered) |
| SERTA SIMMONS BEDDING, LLC, et al.,<br><br>　　Plaintiffs and Counterclaim Defendants,<br><br>　　　　　　v.<br><br>AG CENTRE STREET PARTNERSHIP L.P., et al.,<br><br>　　Defendants, Counterclaim Plaintiffs and Third-Party Plaintiffs,<br><br>　　　　　　v.<br><br>AGF FLOATING RATE INCOME FUND, et al.,<br><br>　　　　Third-Party Defendants. | Adv. Proc. No. 23-09001 (DRJ) |

**EXCLUDED LENDERS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO
EXCLUDE THE EXPERT TESTIMONY OF SARAH M. WARD**

Defendants and counterclaim/third-party plaintiffs AG Centre Street Partnership L.P., AG Credit Solutions Non-ECI Master Fund, L.P., AG Super Fund Master, L.P., AG SF Master (L), L.P., Silver Oak Capital, L.L.C., Ascribe III Investments, LLC, Columbia Cent CLO 21 Limited, Columbia Cent CLO 27 Limited, Columbia Floating Rate Fund, a series of Columbia Funds Series Trust II, Columbia Strategic Income Fund, a series of Columbia Funds Series Trust I, Contrarian Capital Fund I, L.P., Contrarian Distressed Debt Fund, L.P., Contrarian Centre Street Partnership, L.P., Gamut Capital SSB, LLC, North Star Debt Holdings, L.P., Shackleton 2013-III CLO, Ltd., Shackleton 2013-IV-R CLO, Ltd., Shackleton 2014-V-R CLO, Ltd., Shackleton 2015-VII-R CLO, Ltd., Shackleton 2017-XI CLO, Ltd., Z Capital Credit Partners CLO 2018-1 Ltd., and Z Capital Credit Partners CLO 2019-1 Ltd. (collectively, the "Excluded Lenders") respectfully submit this memorandum of law in opposition to the emergency motion (the "Emergency Motion") of plaintiffs Serta Simmons Bedding ("Serta"), and Invesco Senior Secured Management, Inc., Credit Suisse Asset Management, LLC, Boston Management and Research, and Eaton Vance Management (collectively, the "Favored Lenders," and together with Serta, "Plaintiffs") seeking to exclude the expert testimony of Sarah M. Ward. (ECF No. 221.)

The Excluded Lenders are aware of the Court's Order this evening (May 11) on the Emergency Motion. (ECF No. 224.) The Order came as a surprise to the Excluded Lenders given that at the status conference yesterday (May 10), Serta recognized that the Emergency Motion had been filed only a night earlier (May 9), and agreed that the Excluded Lenders should receive a reasonable opportunity to respond. The Court then asked Serta to set a hearing date for the motion. Our understanding is that Serta asked the Court to hear the motion on Friday (May 12) so that the Excluded Lenders could submit a response today (May 11). While the Excluded

Lenders recognize that the Court has entered its Order, they want the Court to have the benefit of their response, set forth below.

## INTRODUCTION

Trial in this matter will cover two claims, one of which is whether Serta and the Favored Lenders violated the implied covenant of good faith and fair dealing when they engaged in a 2020 restructuring transaction (the "Unlawful Exchange Transaction") which eviscerated the Excluded Lenders' sacred rights to *pro rata* treatment under Section 2.18 of the 2016 Credit Agreement.[1] By elevating the first lien loans of the Favored Lenders and subordinating those of the Excluded Lenders through an exclusionary process, the Unlawful Exchange Transaction violated the reasonable expectations of the Excluded Lenders and denied them the fruits of their bargain under the 2016 Credit Agreement.

The parties are in agreement about at least one thing – evidence of industry practice is relevant to this case. As the Court is aware, Plaintiffs have sought discovery regarding certain of the Excluded Lenders' other transactions or potential transactions which Plaintiffs allege will "underscore that Plaintiffs' actions were consistent with industry practice[.]" (ECF No. 197 at 4.) Plaintiffs have argued that such discovery "also underscore[s] that 'a reasonable person in the position of the [Defendants]' would not have been 'justified' in understanding the restructuring transaction to have been prohibited." (*Id.* (citations omitted)). Plaintiffs have further argued that this discovery was needed to "rebut" the testimony of the

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Excluded Lenders' Amended Answer to the Amended Adversary Complaint, Counterclaims, and Third-Party Claims. (ECF No. 148.)

2

Excluded Lenders' expert, Sarah M. Ward. (*Id.* at 8.)[2]

Plaintiffs now seek to have it both ways – arguing that evidence of "industry practice" is relevant but should be restricted to certain other transactions in which the Excluded Lenders participated. But the test for a good faith and fair dealing claim is objective: what would a "reasonable person" have understood the expected "fruits" of the specific contract to have been at the time of the contract? If evidence of the Excluded Lenders' subjective intent in entering into unrelated transactions involving entirely separate (and in most respects, substantially different) credit agreements should be allowed, so too should Ms. Ward's expert testimony on the market understanding of the particular provisions in the 2016 Credit Agreement and how that understanding would have informed a reasonable person's expectations regarding the benefit of those provisions.

Plaintiffs, nevertheless, have moved to exclude Ms. Ward's testimony in its entirety, accusing her (wrongfully) of offering impermissible legal conclusions, "disagreeing" with the Court's summary judgment decision, and opining on the Excluded Lenders "state of mind." (ECF No. 221 at 5-10.) Plaintiffs' motion should be denied, and Ms. Ward's relevant testimony should be permitted. Indeed, even if this were a jury trial, in which the Court would have an obligation to safeguard unsophisticated jurors from evidence that is unreliable or irrelevant, Ms. Ward's testimony would be admissible.

Despite Plaintiffs' attempts to cast Ms. Ward's opinions as legal conclusions – and their efforts at her deposition to bait her (without success) into providing legal conclusions –

---

[2] On May 4, 2023, the Court determined that such discovery was relevant, and the parties agreed that certain of the Excluded Lenders would answer interrogatories and requests for admission regarding the other transactions as evidence of industry practice.

she has not expressed, and is not being offered to express, a legal conclusion about the Excluded Lenders' claim or opined on what result the Court should reach. Rather, Ms. Ward's expert testimony relates to industry practice in the leveraged loan market prior to and at the time the 2016 Credit Agreement was entered into. (*See* Exhibit A (Declaration of Sarah M. Ward ("Ward Decl.") dated May 3, 2023) ¶ 8.)[3] This is exactly the type of expert testimony that courts have found relevant in assessing good faith and fair dealing claims because it bears on the parties' reasonable contractual expectations. *See infra* at 7-8. And to the extent Plaintiffs accuse Ms. Ward of opining on the Excluded Lenders' "state of mind," Plaintiffs not only misstate her proposed testimony but also the standard for the Excluded Lenders' good faith and fair dealing claim. (ECF No. 221 at 9-11.) The operative question on that claim is an <u>objective</u> one: as Ms. Ward frames it, how a "reasonable" market participant would have understood the provisions of the 2016 Credit Agreement. (*See infra* at 8-9.)

If, during this non-jury trial, the Court finds infirmities with Ms. Ward's testimony (which we do not anticipate), it is more than capable of separating the "wheat" from the "chaff" and affording no weight to "legal conclusions." *See Stringer, et al. v. Pablos*, 2017 WL 11638257, at *1 (W.D. Tex. Nov. 14, 2017). Plaintiffs' able counsel will be given the opportunity to object to questions they believe may elicit legal conclusions and to test any vulnerabilities through cross-examination. Moreover, Plaintiffs, who have known since April 26 that Ms. Ward would be proffering expert testimony at trial, have disclosed a rebuttal expert of their own. (ECF No. 221 at n.2, 11.) Plaintiffs' eleventh-hour motion to exclude this relevant and admissible evidence should be denied.

---

[3] Ms. Ward's Declaration, in which she discloses her proposed trial testimony, is attached for the Court's reference as Exhibit A hereto.

**LEGAL STANDARD**

Under Federal Rule of Evidence 702, a witness who is qualified as an expert may testify in the form of an opinion or otherwise if (1) the expert's specialized knowledge will help the trier of fact understand the evidence or determine a fact in issue, (2) the testimony is based on sufficient facts or data, (3) the testimony is the product of reliable principles and methods, and (4) the expert has reliably applied the principles and methods to the facts of the case.  Fed. R. Evid. 702.  The "inquiry envisioned by Rule 702 is . . . a flexible one." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594 (1993).  In general, "the rejection of expert testimony is the exception rather than the rule." *Beneplace, Inc. v. Pitney Bowes, Inc.*, 2016 WL 11582931, at *4 (W.D. Tex. Sept. 20, 2016) (citing Fed. R. Evid. 702, Adv. Comm. Note (2000)).  While the court's "gatekeeping obligation applies to both scientific and non-scientific expert testimony, the factors listed in *Daubert* are more difficult to apply to non-scientific experts." *AmGuard Ins. Co. v. Lone Star Legal Aid*, 2020 WL 60247, at *7 (S.D. Tex. Jan. 6, 2020) (citing *First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 334 (6th Cir. 2001) (noting that *Daubert* factors have limited application to non-scientific testimony)).

Under *Daubert*, a trial court serves a "gatekeeping" function to ensure that expert testimony is relevant and reliable.  *See Daubert*, 509 U.S. at 592-93; *Harding v. Cnty. of Dallas*, 2018 WL 1156561, at *1 (N.D. Tex. Mar. 5, 2018) ("The purpose of *Daubert* is 'to ensure that only reliable and relevant expert testimony is presented <u>to the jury</u>.'") (emphasis added).  In the context of a bench trial, however, the Court's gatekeeping function is limited because the Court is both the gatekeeper and the trier of fact. *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in [a bench trial]."); *see also Harding*, 2018 WL 1156561, at *2 ("Given that this case will be tried to the court rather

than to a jury, the objectives of *Daubert* are no longer implicated."). Therefore, while the Court should not abdicate its gatekeeping obligation, it can choose to hear the challenged testimony at trial, "where a full foundation, vigorous cross-examination, and the presentation of contrary evidence can more fully enlighten the Court with regard to the value of an expert's opinion." *In re Sunpoint Securities, Inc.*, 2006 WL 6650385, at *1 (Bankr. E.D. Tex. Sept. 26, 2006).

## ARGUMENT

### I.
### I.MS. WARD IS QUALIFIED AS AN EXPERT AND HER TESTIMONY IS BASED UPON SUFFICIENT FACTS AND RELIABLE PRINCIPLES

*Qualifications.* Plaintiffs do not challenge Ms. Ward's qualifications as an expert under Rule 702 – nor could they. In determining whether an expert is qualified to give testimony, the Fifth Circuit's standard is liberal. *See Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) ("Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue"). A witness can qualify as an expert under Rule 702 even if she "lacks practical experience" so long as she has "suitable training or education or has otherwise gained the requisite knowledge or skill." *B.J. Tidwell Indus., Inc. v. Diversified Home Prod., Inc.*, 2007 WL 3118300, at *1 (W.D. Tex. Oct. 19, 2007) (citations omitted).

As a former leveraged financing transactional attorney with over three decades of experience structuring and negotiating credit agreements, including syndicated credit agreements on behalf of borrowers and lenders, Ms. Ward is amply qualified to opine on market participants' reasonable expectations regarding the *pro rata* sharing provisions of the 2016 Credit Agreement and the exceptions thereto. (*See* Ward Decl. ¶ 2.) Ms. Ward practiced law for 35 years at Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), where she was a partner in the Banking Group, served as the group's Global Co-Head, and acted as co-chair of the firm's Legal

6

Opinion Oversight Committee.  (*Id.* ¶ 3.)  For decades, Ms. Ward counseled borrowers, arrangers, and institutional investors on credit agreements containing *pro rata* sharing provisions and their exceptions, advised on hundreds of financing transactions involving leveraged loans, and reviewed and authored publications on the evolution of the private credit market and introduction of open market purchase provisions.  (*Id.* ¶¶ 2, 3, 35.)  There can be no serious question that Ms. Ward is qualified.

   ***Reliability.***  The reliability prong focuses on whether a proposed expert, even if qualified, "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  Indeed, courts in the Fifth Circuit do not find the *Daubert* factors "particularly helpful" in measuring the reliability of a non-scientific expert testifying based on years of professional experience.  *See Cox Operating, LLC v. St. Paul Surplus Lines Ins. Co.*, 2013 WL 1752405, at *3 (S.D. Tex. Apr. 23, 2013).  Rather, "a witness' experience, studies, and education, combined with a review of the relevant materials can provide a reliable basis for expert testimony."  *J.A. Lanier & Assocs., Inc. v. Robbins Electra Mgmt., LLC*, No. 4:21-CV-390, 2022 WL 1226966, at *4 (E.D. Tex. Apr. 26, 2022).  In *In re I.G. Servs., Ltd.*, for example, a bankruptcy court allowed a banking expert to testify on the "Bank Secrecy Act and its related regulatory standards, banking customs and practices, [internal company] policies, and how they all interact on a daily basis to inform an experienced banker as to what constitutes typical and atypical banking transactions."  2004 WL 5866105, at *3 (Bankr. W.D. Tex. Dec. 22, 2004).  The court determined that "an expert like [the banking expert] is expected to rely on his banking experience to know what is and is not typical in banking transactions."  *Id.*

In preparing her expert declaration, Ms. Ward reviewed transaction documents, pleadings, industry publications, and other publicly available information, all of which would be reasonably relied upon by a leveraged financing expert. (Ward Decl. ¶ 7.) She drew on her years of experience as a leveraged finance and corporate restructuring lawyer to form her opinions. (*Id.*) Ms. Ward's extensive background and knowledge demonstrate that she is not only qualified to provide testimony in this case, but that her testimony is also reliable. *See, e.g.*, *Boral v. Odyssey Pictures Corp.*, No. 4:14-CV-00044, 2015 WL 993241, at *2 (E.D. Tex. Mar. 4, 2015) (finding expert testimony on the financial aspect of the film industry reliable based on the expert's decades of professional experience).

***Relevance.*** Finally, the Court must determine whether Ms. Ward's testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

The Excluded Lenders' good faith and fair dealing claim requires this Court to assess the objective, reasonable expectations of the parties at the time the 2016 Credit Agreement was entered into, and determine whether those expectations have been defeated by the Unlawful Exchange Transaction. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 605 (S.D.N.Y. 2018) ("The relevant inquiry called for by the implied covenant is objective, not subjective: we consider 'any promises which a <u>reasonable person in the position of the promisee</u> would be justified in understanding were included.'") (quoting *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 387 (1995) (emphasis in original). Plaintiffs contend that courts "routinely exclude expert testimony . . . in claims for breach of the implied covenant." (ECF No. 221 at 8.) But the cases they cite are inapposite because they involve experts in jury trials who submitted legal opinions at the direction of counsel. *See U.S. All. Grp., Inc. v. Cardtronics USA, Inc.*, No.

8

CV 21-1074, 2022 WL 17622362, at *1 (E.D. La. Dec. 13, 2022) (excluding an expert report admittedly drafted by counsel which contained "substantively identical, if not word-for word duplications, of paragraphs . . . of the complaint"); *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 528 (S.D.N.Y.), *abrogated by Casey v. Merck & Co.,* 653 F.3d 95 (2d Cir. 2011) (excluding testimony of expert who was asked in his assignment from counsel to provide legal conclusions).

In fact, on a good faith and fair dealing claim under New York law (which applies here), New York state and federal courts routinely admit expert testimony on industry practice, because it directly informs the parties' reasonable expectations. *See, e.g.*, *U.S. Bank Nat.'l Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 151 (S.D.N.Y. 2015) (admitting expert testimony on "industry practices" because it has "particular relevance to U.S. Bank's breach of the covenant of good faith and fair dealing claim" and "can shed light on the expectations of policyholders"); *see also Am. Can! v. Arch Ins. Co.*, 597 F. Supp. 3d 1038, 1049 (N.D. Tex. 2022) (allowing expert opinions on "industry custom and ordinary practice" concerning the issue in dispute to "enable the jury to evaluate how Defendants' conduct measured up against such standards"). Ms. Ward will testify that:

- One of the most fundamental provisions in credit agreements in the leveraged loan market is that lenders within the same tranche be treated ratably. (Ward Decl. ¶¶ 8, 10.)

- Historically, these credit agreements prohibited lenders from assigning loans to borrowers or affiliates. (*Id.* ¶¶ 8, 11.)

- During the credit boom of 2005-2007, leveraged loan financings became less relationship-oriented and credit agreement covenants on borrowers grew looser. (*Id.* ¶ 13.)

- After the 2008 financial crises, the market reopened, and borrowers and their affiliates negotiated for provisions in credit agreements that would

- allow them to repurchase term loans at a discount on a non-*pro rata* basis. (*Id.* ¶¶ 15, 22-23.)

- This resulted in the evolution of exceptions to the *pro rata* treatment provisions, including the Dutch Auction and the open market purchase exceptions. (*Id.* ¶¶ 15, 23, 25.)

- Since their inception, market participants understood these exceptions to be narrow and non-detrimental to non-participating lenders. (*Id.* ¶¶ 15, 25.)

- At the time the 2016 Credit Agreement was entered, it was objectively reasonable for the Excluded Lenders to expect that they would receive equal *pro rata* treatment with other lenders of their tranche in accordance with their sacred rights. (*Id.* ¶ 8.)

- The Unlawful Exchange Transaction could not have been reasonably anticipated by the Excluded Lenders because prior to 2020, no borrower to a credit agreement that included *pro rata* treatment provisions as sacred rights had engaged in an uptier transaction that subordinated minority lenders of a tranche to majority lenders of the same tranche. (*Id.* ¶ 8.)

As an industry expert, Ms. Ward – perhaps even moreso than any fact witness – can "shed light" on what the Excluded Lenders could reasonably have expected under the 2016 Credit Agreement. *See U.S. Bank Nat'l Ass'n*, 112 F. Supp. 3d at 151. Such evidence will be relevant, if not critical, to the Court's adjudication of the Excluded Lenders' good faith and fair dealing claim. *Id.*

## II.
## MS. WARD IS NOT OFFERING LEGAL CONCLUSIONS

Plaintiffs' primary attack on Ms. Ward's expert testimony is that it contains inadmissible "legal conclusions." (ECF No. 221 at 6-8.) No so.

It is well-established that qualified experts can opine on "industry standards or norms and whether or not they were followed in a particular case, as long as such opinions involve questions of fact rather than purely legal matters." *Flanagan v. City of Dallas*, 2017 WL 2817424, at *1 (N.D. Tex. May 25, 2017) (citing *Waco Int'l, Inc. v. KHK Scaffolding Houston*,

10

*Inc.*, 278 F.3d 523, 533 (5th Cir. 2002)); *see also* Fed. R. Evid. 704 ("[a]n opinion is not objectionable just because it embraces an ultimate issue."). Rather, an expert opinion is an impermissible legal conclusion where it "suppl[ies] the jury with no information other than the expert's view of how its verdict should read." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).

These prohibitions do not bar Ms. Ward's proposed expert testimony. While Plaintiffs pluck isolated phrases from Ms. Ward's declaration with no context (*see* ECF No. 221 at 6-8), they fail to identify a single legal conclusion. A legal conclusion in this case would be that Plaintiffs violated the covenant of good faith and fair dealing. *See U.S. Bank*, 112 F. Supp. 3d at 151 (allowing expert to opine on "relevant standards for industry fairness . . . and offer an opinion whether [defendant's] actions were consistent with those standards" but not on whether defendant "breach[ed] the covenant of good faith and fair dealing"); *Owen*, 698 F.2d at 240 (holding that an expert provides a legal conclusion if she tells the factfinder "how [the] verdict should read"). At Ms. Ward's recent deposition, Plaintiffs tried repeatedly and transparently to obtain her testimony on legal issues, likely as fodder for this motion, (*see* Exhibit B (Transcript of the Deposition of Sarah M. Ward ("Tr.")) at 53:9-16; Tr. at 129:4-130:7; Tr. at 321:3-322:8),[4] but Ms. Ward never once took Plaintiffs' bait.

Contrary to Plaintiffs' assertions, the section of the declaration titled, "The Term Loan Agreement Included Tradition Pro Rata Sharing Provisions," (*see* Ward Decl. at 8-10), pertains to "customs, standards, and practices" in the leveraged loan industry – "topics which are appropriate for expert testimony." *Beneplace, Inc.*, at *4. And Plaintiffs fail to explain how Ms.

---

[4] Relevant excerpts from the transcript are attached for the Court's reference as Exhibit B hereto.

11

Ward's testimony regarding certain terms of 2016 Credit Agreement and industry participants' "reasonable expectations" about those terms would render her testimony "necessarily legal." *Id.* Ms. Ward stated in her deposition that her "entire report . . . goes to market practice and understanding." (Tr. at 26:15-22.)

Plaintiffs respond by mischaracterizing Ms. Ward's deposition testimony, conflating her clear answers with the questions they lobbed in their (unsuccessful) effort to elicit legal opinions. For example, Plaintiffs assert – without citation – that Ms. Ward "acknowledged" at her deposition that "what market participants would have understood is in fact identical to what she understood." (ECF No. 221 at 8.) She did no such thing. Plaintiffs certainly <u>tried</u> to get such an acknowledgement but Ms. Ward testified, "It's irrelevant . . . [b]ecause it doesn't matter what my opinion is with respect to the open market purchase transaction. I'm here to give my opinion with respect to market participants' expectations and market practice." (Tr. at 22:6-25; *see also* Tr. at 276:22-277:3 ("[W]hether my opinion differs from [the opinion of market participants] it's not really relevant, because I'm here to really say what market participants' expectations were based on [my more than thirty years of experience and industry publications I considered]").)

Similarly, Plaintiffs accuse Ms. Ward of "admit[ting]" at deposition that her opinion is "contrary" to the Court's summary judgment opinion. (ECF No. 221 at 5-6.) Again, Plaintiffs have failed to cite the transcript, which says no such thing:

> Q. Is your opinion that market participants reasonably expected that the June[] 2020 Serta transaction was impermissible contrary to Judge Jones' ruling that "it is very clear to me that the process was engaged in fit within 9.05(G)"?
>
> [Objection to form]

12

> A: I'm not here to opine on the court's decision. That would be a legal decision and I'm not here to give any legal decisions, as I've mentioned numerous times today. In terms of market participants' expectations, . . . my view is market participants would not have expected that a credit agreement with *pro rata* sharing provisions and sacred rights protection for those provisions, they would not have expected a debt-for-debt exchange that subordinates their debt to the debt of other lenders within the same tranche would be permitted.
>
> Q: So to the extent that Judge Jones found that that was permitted under the credit agreement, that's contrary to your opinion of what market participants would have expected?
>
> [Objection to form]
>
> A: I've stated what market participants would have expected. I don't think I need to go through it again.

(Tr. at 303:14-305:1.)

As illustrated, Ms. Ward is not opining on her personal understanding of any of the terms in the 2016 Credit Agreement or on any legal issue but on market participants' reasonable expectations with respect to such terms. (*See* Ward Decl. ¶¶ 8, 19, 21, 26, 29.)

### III.
### MS. WARD DOES NOT PROPOSE TO OPINE ON ANY OF THE EXCLUDED LENDERS' "STATE OF MIND"

Plaintiffs' final critique not only mischaracterizes Ms. Ward's testimony but misstates the applicable standard for the Excluded Lenders' claim for breach of the covenant of good faith and fair dealing. Plaintiffs argue that "[t]he Court can make its own determinations concerning the parties' states of mind at trial. Ms. Ward lacks any 'specialized knowledge that will help the trier of fact' in reaching such conclusions." (ECF No. 221 at 10 (citing Fed. R. Evid. 702(a)). But the parties "subjective" state of mind does not matter. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d at 605. The applicable test is objective:

13

what would a "reasonable" market participant have expected from the 2016 Credit Agreement when the agreement was entered into? *See id.* Ms. Ward's testimony about industry practice is exactly the type of evidence courts rely on to answer this question. *See supra* at 8 (citing *U.S. Bank*, 112 F. Supp. 3d at 151; *Am. Can!*, 597 F. Supp. 3d at 1045).

## IV.
## ALLOWING MS. WARD TO TESTIFY WILL NOT PREJUDICE PLAINTIFFS

Even if the Court were to find select parts of Ms. Ward's testimony to be improper (which the Court should not), Plaintiffs' request pre-emptively to exclude such testimony in its entirety is the wrong solution here. To the extent the testimony includes legal conclusions, the proper remedy is a contemporaneous trial objection, not a *Daubert* motion. *See Tolan v. City of Bellaire*, 2015 WL 12765413, at *3 (S.D. Tex. Aug. 28, 2015 ("experts are precluded from offering legal conclusion opinions, but it is for each side to contemporaneously object at trial to any questions that may elicit a legal conclusion opinion."). To the extent Plaintiffs disagree with Ms. Ward's opinions, they are free to challenge them with cross-examination as well as testimony from their own retained expert. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Finally, any dangers that Ms. Ward's testimony would theoretically pose to a jury are absent here. This is a bench trial where the Court has "far greater flexibility" to hear the testimony at trial and to "give the evidence whatever weight it deserves." *Stringer*, 2017 WL 11638257, at *1. There is no potential risk or prejudice here "where a full foundation, vigorous cross-examination, and the presentation of contrary evidence can more fully enlighten the Court

14

with regard to the value of an expert's opinion." *Id.* (quoting *In re Sunpoint Securities, Inc.*, 2006 WL 6650385, at *1 (Bankr. E.D. Tex. Sept. 26, 2006)).

## CONCLUSION

For the foregoing reasons, the Excluded Lenders respectfully request that the Court deny Plaintiffs' motion to exclude Ms. Ward's testimony at trial.

Dated: New York, New York
May 11, 2023

Respectfully Submitted,

**FRIEDMAN KAPLAN SEILER ADELMAN & ROBBINS LLP**

*s/ Eric Seiler*
Lawrence S. Robbins*
Eric Seiler*
Anne E. Beaumont*
Jamuna D. Kelley*
Elizabeth Bierut*
Blair R. Albom*
7 Times Square
New York, NY 11036-6516
(212) 833-1100
lrobbins@fklaw.com
eseiler@fklaw.com
abeaumont@fklaw.com
jkelley@fklaw.com
ebierut@fklaw.com
balbom@fklaw.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Kenneth S. Ziman*
Brian S. Hermann*
Lewis R. Clayton*
Andrew J. Ehrlich*
Michael J. Colarossi*
Robert J. O'Loughlin*
Sarah J. Prostko*
Jackson Yates*
1285 Avenue of the Americas
New York, NY 10019

(212) 373-3000
kziman@paulweiss.com
bhermann@paulweiss.com
lclayton@paulweiss.com
aehrlich@paulweiss.com
mcolarossi@paulweiss.com
roloughlin@paulweiss.com
sprostko@paulweiss.com
jyates@paulweiss.com

*Attorneys for the Excluded Lenders with respect to Plaintiffs' Claims and Counterclaims Only*

**PORTER HEDGES LLP**
John F. Higgins (TX 09597500)
M. Shane Johnson (TX 24083263)
Megan N. Young-John (TX 24088700)
1000 Main Street, 36th Floor
Houston, TX  77002
(713) 226-6000
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com

*Attorneys for the Excluded Lenders with respect to Plaintiffs' Claims and Counterclaims Only*

*\*admitted pro hac vice*