# DEFENDANTS' EXHIBIT 333
# Part 1 of 27

Case 23-90020 Document 1374-128 Filed in TXSB on 06/05/23 Page 2 of 12
Case 23-90020 Document 1234 Filed in TXSB on 03/23/23 Page 1 of 351

SOLICITATION VERSION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| SERTA SIMMONS BEDDING, LLC, *et al.,* | § § | Case No. 23-90020 (DRJ) |
| | § § | (Jointly Administered) |
| Debtors.[1] | § | |

**DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN
OF SERTA SIMMONS BEDDING, LLC AND ITS AFFILIATED DEBTORS**

Gabriel A. Morgan (24125891)
Stephanie N. Morrison (24126930)
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: gabriel.morgan@weil.com
Email: stephanie.morrison@weil.com

Ray C. Schrock (admitted *pro hac vice*)
Alexander W. Welch (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: ray.schrock@weil.com
Email: alexander.welch@weil.com

*Attorneys for the Debtors
and Debtors in Possession*

Dated: March 23, 2023
Houston, Texas

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Dawn Intermediate, LLC (6123); Serta Simmons Bedding, LLC (1874); Serta International Holdco, LLC (6101); National Bedding Company L.L.C. (0695); SSB Manufacturing Company (5743); The Simmons Manufacturing Co., LLC (0960); Dreamwell, Ltd. (2419); SSB Hospitality, LLC (2016); SSB Logistics, LLC (6691); Simmons Bedding Company, LLC (2552); Tuft & Needle, LLC (6215); Tomorrow Sleep LLC (0678); SSB Retail, LLC (9245); and World of Sleep Outlets, LLC (0957). The Debtors' corporate headquarters and service address for these chapter 11 cases is 2451 Industry Avenue, Doraville, Georgia 30360.

Exhibit
LINKER 0006

**DISCLOSURE STATEMENT, DATED MARCH 23, 2023**
Solicitation of Votes on the
Plan of Reorganization of

**SERTA SIMMONS BEDDING, LLC, *ET AL.***

from the holders of outstanding

**FLFO CLAIMS, FLSO CLAIMS, NON-PTL TERM LOAN CLAIMS, ONGOING GENERAL UNSECURED CLAIMS, AND OTHER GENERAL UNSECURED CLAIMS**

> **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS MAY 1, 2023 AT 4:00 P.M. (CENTRAL TIME), UNLESS EXTENDED BY THE DEBTORS IN WRITING. THE RECORD DATE FOR DETERMINING WHICH HOLDERS OF CLAIMS MAY VOTE ON THE PLAN IS: (I) FOR HOLDERS OF CLAIMS (OTHER THAN NON-PTL TERM LOAN CLAIMS), MARCH 20, 2023 (THE "GENERAL VOTING RECORD DATE"); AND (II) FOR HOLDERS OF NON-PTL TERM LOAN CLAIMS, THE EARLIER OF (A) THE GENERAL VOTING RECORD DATE OR (B) THE DATE ON WHICH UBS AG, STAMFORD BRANCH RESIGNS AS THE NON-PTL AGENT (THE "NON-PTL VOTING RECORD DATE").**

> **RECOMMENDATION BY THE DEBTORS**
>
> The board of managers of Dawn Intermediate, LLC, as sole member of Serta Simmons Bedding, LLC, and the board of directors, managers, members, or partners, as applicable, of each of its affiliated Debtors (as of the date hereof) have unanimously approved the transactions contemplated by the Solicitation and the Plan and recommend that all creditors whose votes are being solicited submit ballots to accept the Plan.
>
> Subject to the Restructuring Support Agreement (as defined below), holders of approximately 85% of the outstanding principal amount of the FLFO Term Loans (as defined below) and 86% of the outstanding principal amount of FLSO Term Loans (as defined below) (the "**Consenting Creditors**") have agreed to vote in favor of, or otherwise support, the Plan.
>
> In addition, subject to the Restructuring Support Agreement, the Plan is supported by Dawn Holdings, Inc., as the sole member, and holder of interests in Dawn Intermediate, LLC, and funds managed by Advent International Corporation ("**Advent**"), as holder of Interests in Dawn Holdings, Inc. (together, the "**Consenting Equity Holders**").

HOLDERS OF CLAIMS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE AND ARE URGED TO CONSULT WITH THEIR OWN ADVISERS BEFORE CASTING A VOTE WITH RESPECT TO THE PLAN.

NO HOLDERS OF CLAIMS, ANY CONSENTING CREDITOR, OR ANY OF THEIR RESPECTIVE LEGAL OR FINANCIAL ADVISORS MAKES ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE FUTURE PERFORMANCE OF THE DEBTORS (AS DEFINED BELOW) OR THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN OR IN THE PLAN, NOR HAS ANY SUCH PERSON INDEPENDENTLY VERIFIED THE INFORMATION HEREIN.

THE ISSUANCE, AND THE DISTRIBUTION UNDER THE PLAN, OF THE NEW COMMON INTERESTS WILL BE EXEMPT FROM REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT") AND ANY OTHER APPLICABLE SECURITIES LAWS PURSUANT TO SECTION 1145 OF THE BANKRUPTCY CODE REQUIRING REGISTRATION FOR THE OFFER, ISSUANCE OR DISTRIBUTION OF SECURITIES. THESE SECURITIES MAY BE RESOLD WITHOUT REGISTRATION UNDER THE SECURITIES ACT OR OTHER FEDERAL SECURITIES LAWS PURSUANT TO THE EXEMPTION PROVIDED BY SECTION 4(a)(1) OF THE SECURITIES ACT, UNLESS THE HOLDER IS AN "UNDERWRITER" WITH RESPECT TO SUCH SECURITIES, AS THAT TERM IS DEFINED IN SECTION 1145(b) OF THE BANKRUPTCY CODE. IN ADDITION, SUCH SECTION 1145 EXEMPT SECURITIES GENERALLY MAY BE RESOLD WITHOUT REGISTRATION UNDER STATE SECURITIES LAWS PURSUANT TO VARIOUS EXEMPTIONS PROVIDED BY THE RESPECTIVE LAWS OF THE SEVERAL STATES.

THE AVAILABILITY OF THE EXEMPTION UNDER SECTION 1145 OF THE BANKRUPTCY CODE OR ANY OTHER APPLICABLE SECURITIES LAWS WILL NOT BE A CONDITION TO THE OCCURRENCE OF THE EFFECTIVE DATE.

THE NEW COMMON INTERESTS HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC") OR BY ANY STATE SECURITIES COMMISSION OR SIMILAR PUBLIC, GOVERNMENTAL, OR REGULATORY AUTHORITY, AND NEITHER THE SEC NOR ANY SUCH AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

CERTAIN STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, PROJECTED FINANCIAL INFORMATION, AND OTHER FORWARD-LOOKING STATEMENTS, ARE BASED ON ESTIMATES AND ASSUMPTIONS AND ARE NECESSARILY SPECULATIVE. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL BE REFLECTIVE OF ACTUAL OUTCOMES. FORWARD-LOOKING STATEMENTS ARE PROVIDED IN THIS DISCLOSURE STATEMENT SHOULD BE EVALUATED IN THE CONTEXT OF THE ESTIMATES, ASSUMPTIONS, UNCERTAINTIES, AND RISKS DESCRIBED HEREIN.

FURTHER, READERS ARE CAUTIONED THAT ANY FORWARD-LOOKING STATEMENTS HEREIN ARE BASED ON ASSUMPTIONS THAT ARE BELIEVED TO BE REASONABLE, BUT ARE SUBJECT TO A WIDE RANGE OF RISKS IDENTIFIED IN THIS DISCLOSURE STATEMENT. DUE TO THESE UNCERTAINTIES, READERS CANNOT BE

ASSURED THAT ANY FORWARD-LOOKING STATEMENTS WILL PROVE TO BE CORRECT.

NO INDEPENDENT AUDITOR OR ACCOUNTANT HAS REVIEWED OR APPROVED THE FINANCIAL PROJECTIONS OR THE LIQUIDATION ANALYSIS HEREIN.

THE DEBTORS HAVE NOT AUTHORIZED ANY PERSON TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, IN CONNECTION WITH THE PLAN OR THIS DISCLOSURE STATEMENT.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED. THE DEBTORS ARE UNDER NO OBLIGATION TO (AND EXPRESSLY DISCLAIM ANY OBLIGATION TO) UPDATE OR ALTER ANY FORWARD-LOOKING STATEMENTS WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS, OR OTHERWISE, UNLESS INSTRUCTED TO DO SO BY THE BANKRUPTCY COURT. THE TERMS OF THE PLAN GOVERN IN THE EVENT OF ANY INCONSISTENCY WITH THE SUMMARIES IN THIS DISCLOSURE STATEMENT.

THE INFORMATION IN THIS DISCLOSURE STATEMENT IS BEING PROVIDED SOLELY FOR PURPOSES OF VOTING TO ACCEPT OR REJECT THE PLAN OR OBJECTING TO CONFIRMATION. NOTHING IN THIS DISCLOSURE STATEMENT MAY BE USED BY ANY PARTY FOR ANY OTHER PURPOSE.

ALL EXHIBITS TO THIS DISCLOSURE STATEMENT ARE INCORPORATED INTO AND ARE A PART OF THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN.

THE PLAN PROVIDES THAT THE FOLLOWING PARTIES ARE DEEMED TO GRANT THE RELEASES PROVIDED FOR THEREIN: (I) THE HOLDERS OF ALL CLAIMS THAT VOTE TO ACCEPT THE PLAN, (II) THE HOLDERS OF ALL CLAIMS WHOSE VOTE TO ACCEPT OR REJECT THE PLAN IS SOLICITED BUT THAT DO NOT VOTE EITHER TO ACCEPT OR TO REJECT THE PLAN, (III) THE HOLDERS OF ALL CLAIMS OR INTERESTS THAT VOTE, OR ARE DEEMED, TO REJECT THE PLAN OR THAT ARE PRESUMED TO ACCEPT THE PLAN BUT DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH HEREIN, (IV) THE HOLDERS OF ALL CLAIMS AND INTERESTS THAT WERE GIVEN NOTICE OF THE OPPORTUNITY TO OPT OUT OF GRANTING THE RELEASES SET FORTH HEREIN BUT DID NOT OPT OUT, AND (V) THE RELEASED PARTIES EVEN IF SUCH RELEASED PARTY PURPORTS TO OPT OUT OF THE RELEASES SET FORTH HEREIN.

HOLDERS OF CLAIMS IN VOTING CLASSES 3, 4, 5, 6A, AND 6B HAVE RECEIVED A RELEASE OPT-OUT FORM ATTACHED TO THEIR BALLOT. HOLDERS OF CLAIMS IN NON-VOTING CLASSES (1, 2, 7, 8, 9, AND 10) HAVE RECEIVED A RELEASE OPT-OUT FORM ATTACHED TO THEIR NOTICE OF NON-VOTING STATUS AND NOTICE OF RIGHT TO OPT OUT OF CERTAIN RELEASES. SEE **EXHIBIT G** FOR A DESCRIPTION OF THE RELEASES AND RELATED PROVISIONS.

I. INTRODUCTION ........................................................................................................................ 1

II. SUMMARY OF PLAN TREATMENT................................................................................... 4
    A.    Summary of Plan Treatment .................................................................................. 4
    B.    Additional Considerations ..................................................................................... 8
        1.    Treatment of Allowed Class 6A ................................................................ 8
        2.    Claims Subject to Automatic Disallowance ............................................. 8
        3.    Assumption or Rejection of Executory Contracts .................................... 9
        4.    Setoffs and Recoupment of Claims .......................................................... 9
        5.    Collective Bargaining Agreements ........................................................... 9

III. OVERVIEW OF THE DEBTORS' OPERATIONS ............................................................. 9
    A.    Overview of the Debtors' Business ....................................................................... 9
    B.    History and Corporate Structure ......................................................................... 10
        1.    Simmons .................................................................................................. 10
        2.    Serta, Inc. ................................................................................................. 10
        3.    Serta Simmons Bedding, LLC ................................................................ 11
        4.    COVID-19 Pandemic and the 2020 Transaction ................................... 11
        5.    AI Dream Joint Venture .......................................................................... 12
    C.    Recent Operational Initiatives ............................................................................. 12
        1.    Grow with Omni Retailers and Regional & Independents Channel and Drive Premium Assortment ....................................................................... 12
        2.    Accelerate Direct to Consumer Sales ..................................................... 12
        3.    Value Engineering and Product Simplification ..................................... 13
        4.    Quality Improvement .............................................................................. 13
        5.    Facility Network Optimization ............................................................... 13
        6.    Enhanced Management .......................................................................... 13
    D.    Board of Managers and Officers ......................................................................... 13
    E.    Capital Structure .................................................................................................. 14
        1.    Prepetition Indebtedness ......................................................................... 14
        2.    Equity Ownership ................................................................................... 17
        3.    Cash and Cash Equivalents .................................................................... 17
    F.    Litigation ............................................................................................................. 17
        1.    Arbitration with Minority Licensees ...................................................... 17
        2.    2021 LCM Litigation ............................................................................... 17
        3.    2022 Non-PTL Term Loan Lenders Litigation ..................................... 18
        4.    Other Litigation ...................................................................................... 18

IV. KEY EVENTS LEADING TO THE COMMENCEMENT OF CHAPTER 11 CASES ..... 18
    A.    Challenges Facing Debtors' Business ................................................................. 18

| | | | |
|---|---|---|---|
| | B. | Finance Committee Appointed to Oversee Strategic Process | 19 |
| | C. | 2020 Transaction | 19 |
| | D. | Prepetition Strategic Efforts | 19 |
| | | 1. Refinancing Efforts | 19 |
| | | 2. Restructuring Negotiations | 20 |
| | | 3. Debtor-in-Possession Financing Negotiations | 21 |
| | | 4. Prepetition Compensation Program | 21 |
| | E. | Restructuring Support Agreement and Plan | 22 |
| | F. | Implementation and Potential Transaction Structures | 22 |

V. EVENTS DURING THE CHAPTER 11 CASES ........................................................ 22
    A. Commencement of the Chapter 11 Cases and First Day Motions ................ 23
        1. Cash Management System ........................................................................ 23
        2. Debtor-in-Possession Financing ............................................................... 23
        3. Vendors ..................................................................................................... 23
        4. Taxes ......................................................................................................... 24
        5. Utilities ..................................................................................................... 24
        6. Insurance ................................................................................................... 24
        7. Employee Wages and Benefits ................................................................. 24
        8. Customer Programs ................................................................................... 25
        9. Carryforwards of Net Operating Losses .................................................... 25
        10. Other Procedural Motions and Retention of Professionals ..................... 25
    B. Retention of Chapter 11 Professionals ............................................................ 26
    C. Official Committee of Unsecured Creditors ................................................... 26
    D. Confirmation Hearing ..................................................................................... 26
    E. Commencement of Adversary Proceedings .................................................... 26
    F. Timetable for the Chapter 11 Cases ................................................................ 27
    G. Motions to Lift Stay ........................................................................................ 28

VI. TRANSFER RESTRICTIONS AND CONSEQUENCES UNDER FEDERAL SECURITIES LAW .................................................................................................. 28

VII. CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ......... 29
    B. Consequences to U.S. Holders of FLFO Claims, FLSO Claims, Non-PTL Term Loan Claims, and Other General Unsecured Claims ............................ 33
        1. Security Status of FLFO Claims, FLSO Claims, Non-PTL Term Loan Claims and New Term Loans ................................................................. 34
        2. U.S. Holders of FLFO Claims .................................................................. 35

VIII. CERTAIN RISK FACTORS TO BE CONSIDERED ..................................................... 42
    A. Certain Bankruptcy Law Considerations ........................................................ 42

1. General .................................................................................................. 42
2. Risk of Material Adverse Effect on Operations .................................... 42
3. Risk Related to Obtaining First Day Relief ......................................... 43
4. Ongoing Litigation and Other Contingencies Could Affect the Outcome of the Chapter 11 Cases .................................................................. 43
5. Severability of the Plan ........................................................................ 43
6. Non-Consensual Confirmation ............................................................ 43
7. Risk Related to Classification of Claims and Interests ....................... 44
8. Risks Related to Possible Objections to the Plan ............................... 44
9. Releases, Injunctions, and Exculpation Provisions May Not Be Approved ........ 44
10. Risk of Non-Confirmation of the Plan ............................................... 44
11. Risk of Non-Occurrence of the Effective Date .................................. 44
12. Risk of Termination of the Restructuring Support Agreement .......... 45
13. Conversion into Chapter 7 Cases ....................................................... 45

B. Additional Factors Affecting the Value of the Reorganized Debtors ............... 45
1. Claims Could Be More than Projected ............................................... 45
2. Projections and Other Forward-Looking Statements Are Not Assured, and Actual Results May Vary ........................................................ 45
3. Debtors' Business and Industry ........................................................... 45
4. Post-Effective Date Indebtedness ........................................................ 47

C. Factors Relating to Securities to Be Issued Under the Plan, Generally .......... 47
1. No Current Public Market for Securities ............................................ 47
2. Potential Dilution ................................................................................ 47

D. Risks Related to an Investment in the New Common Interests ...................... 48
1. Significant Holders .............................................................................. 48
2. Equity Interests Subordinated to the Reorganized Debtors' Indebtedness ......... 48
3. Implied Valuation of New Common Interests Not Intended to Represent the Trading Value of the New Common Interests ............................. 48
4. No Intention to Pay Dividends ............................................................ 48

E. Additional Factors .............................................................................................. 48
1. Debtors Could Withdraw Plan ............................................................ 48
2. Debtors Have No Duty to Update ....................................................... 49
3. No Representations Outside this Disclosure Statement Authorized ... 49
4. No Legal or Tax Advice Is Provided by this Disclosure Statement .... 49
5. No Admission Made ............................................................................ 49
6. Certain Tax Consequences .................................................................. 49

IX. CONFIRMATION OF THE PLAN ............................................................................. 49
A. Confirmation Hearing ......................................................................................... 49
B. Objections to Confirmation ................................................................................ 50
C. Requirements for Confirmation of the Plan ...................................................... 51

| | | | |
|---|---|---|---|
| | 1. | Requirements of Section 1129(a) of the Bankruptcy Code | 51 |
| | 2. | Additional Requirements for Non-Consensual Confirmation | 54 |

X. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN ...... 55
    A. Alternative Plan of Reorganization ................................................................. 55
    B. Sale Under Section 363 of the Bankruptcy Code ............................................ 55
    C. Liquidation Under Chapter 7 of the Bankruptcy Code .................................... 56

XI. CONCLUSION AND RECOMMENDATION ........................................................... 56
    A. Parties Entitled to Vote ....................................................................................... 1
    B. Voting Deadline .................................................................................................. 2
    C. Voting Procedures .............................................................................................. 3
        1. Miscellaneous ......................................................................................... 4
        2. Agreements Upon Furnishing Ballots .................................................... 4
        3. Change of Vote ....................................................................................... 4
        4. Requirement to File a Proof of Claim .................................................... 4
    D. Waivers of Defects, Irregularities, etc. ............................................................... 5
    E. Notice of Non-Voting Status .............................................................................. 5
    F. Opt-Out Form ..................................................................................................... 5
    G. Further Information, Additional Copies ............................................................ 5

# EXHIBITS

| | |
|---|---|
| **EXHIBIT A** | Plan |
| **EXHIBIT B** | Restructuring Support Agreement (attachments omitted) |
| **EXHIBIT C** | New Term Loan Credit Facility Agreement Term Sheet |
| **EXHIBIT D** | Organizational Chart |
| **EXHIBIT E** | Liquidation Analysis |
| **EXHIBIT F** | Valuation |
| **EXHIBIT G** | Release Provisions |
| **EXHIBIT H** | Financial Projections |
| **EXHIBIT I** | Voting Procedures and Requirements |
| **EXHIBIT J** | Contract Assumption and Rejection Procedures |

Case 23-90020 Document 574-1 Filed in TXSB on 03/05/23 Page 11 of 51

# I.
# INTRODUCTION

Serta Simmons Bedding, LLC ("**SSB**") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, the "**Company**"), submit this disclosure statement (as may be amended, the "**Disclosure Statement**") in connection with the solicitation of votes (the "**Solicitation**") on the *Joint Chapter 11 Plan of Serta Simmons Bedding, LLC and Its Affiliated Debtors*, dated January 23, 2023 as may be supplemented, amended, or modified from time to time (the "**Plan**") attached hereto as **Exhibit A**.[2]

The Debtors under the Plan include Dawn Intermediate, LLC ("**Dawn Intermediate**"), SSB, and certain of its subsidiaries and affiliates that are borrowers and guarantors under (i) the Super-Priority Term Loan Agreement, dated as of June 22, 2020, by and among Dawn Intermediate ("**Dawn Intermediate**"), as holdings, SSB, as top borrower, National Bedding Company L.L.C. ("**NBC**") and SSB Manufacturing Company ("**SSB Manufacturing**") as borrowers, UBS AG, Stamford Branch, as administrative agent (the "**PTL Agent**"), and the lenders from time to time party thereto (the "**PTL Lenders**") (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**PTL Credit Agreement**" and the credit facility issued thereunder, the "**PTL Facility**"); (ii) that certain First Lien Term Loan Agreement, dated as of November 8, 2016, by and among Dawn Intermediate, as holdings, SSB, SSB Manufacturing, and NBC, as borrowers, UBS AG, Stamford Branch, as administrative agent and collateral agent (the "**Non-PTL Term Loan Agent**"), and the lenders from time to time party thereto (the "**Non-PTL Term Loan Lenders**") (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Non-PTL Term Loan Agreement**" and the credit facility issued thereunder, the "**Non-PTL Term Loan Facility**"); and (iii) that certain ABL Credit Agreement, dated as of November 8, 2016, by and among Dawn Intermediate, as holdings; SSB, SSB Manufacturing, and NBC, as borrowers, the lenders from time to time party thereto, and UBS AG, Stamford Branch, as administrative agent (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Prepetition ABL Agreement**" and the credit facility issued thereunder, the "**Prepetition ABL Facility**"; the Prepetition ABL Agreement together with the PTL Credit Agreement and the Non-PTL Term Loan Agreement, the "**Credit Agreements**").

The Debtors commenced voluntary cases (the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") on or about January 23, 2023 (the "**Petition Date**"). During these Chapter 11 Cases, the Debtors continue to operate their businesses in the ordinary course and have obtained authorization from the Bankruptcy Court to make payment in full on a timely basis to certain critical trade creditors, taxing authorities, customers, insurance providers, and employees of amounts due prior to and during the Chapter 11 Cases.

The Debtors are commencing this Solicitation to implement a comprehensive financial restructuring to deleverage the Company's balance sheet to ensure the long-term viability of the Company's enterprise. As a result of extensive negotiations with their secured creditors, the Debtors entered into a restructuring support agreement (including any amendments, modifications and joinders thereto, the "**Restructuring Support Agreement**"), a copy of which is attached hereto as **Exhibit B** (attachments omitted), with the Consenting Creditors party thereto, who hold, in the aggregate, approximately 85% of the outstanding principal amount of the FLFO Term Loans (as defined below) and 86% of the outstanding principal amount

---

[2] Capitalized terms used but not otherwise defined in this Disclosure Statement will have the meaning ascribed to such terms in the Plan. The summary of the Plan provided herein is qualified in its entirety by reference to the Plan. In the case of any inconsistency between this Disclosure Statement and the Plan, the Plan will govern.

1

of FLSO Term Loans the outstanding indebtedness under the PTL Credit Agreement, and the Consenting Equity Holders.

Under the terms of the Restructuring Support Agreement, the parties agreed, subject to the terms and conditions of the Restructuring Support Agreement, to support a deleveraging transaction to restructure the Company's balance sheet, to be effectuated out-of-court or, if necessary, in chapter 11 through the Plan (the "**Restructuring**") pursuant to, among other things, the following agreements:

- the credit agreement (the "**New Term Loan Credit Facility Agreement**"), providing for a new term loan facility (the "**New Term Loan**") in the aggregate principal amount of $315 million (including original issue discount, if any), a copy of the term sheet for the New Term Loan Credit Facility Agreement is attached hereto as **Exhibit C**;

- an asset-backed revolving credit facility (the "**Exit ABL Facility**"), which will roll up or replace the DIP Facility (as defined herein) on the Effective Date.[3]

The Restructuring will leave the Company's businesses intact and substantially deleverage the Debtors' capital structure. The Company's balance sheet liabilities will be reduced from greater than approximately $1.9 billion[4] in total debt to approximately $315 million (including original issue discount, if any) in total debt upon emergence and result in the resolution of certain pending claims against the Debtors brought by certain of Non-PTL Term Loan Lenders (as defined herein). This deleveraging will enhance the Company's long-term growth prospects and competitive position and allow the Debtors to emerge from the Chapter 11 Cases as a stronger, reorganized group of entities better able to invest in the business, drive innovation, deliver value to customers, and withstand a challenging market environment.

The Restructuring will be effectuated pursuant to the Plan, which provides for, in relevant part, the following treatment of Claims and Interests:

- Holders of an Allowed Other Secured Claim and an Allowed Priority Non-Tax Claim will be unimpaired under the Plan.

- Holders of an Allowed FLFO Claim shall receive, in full and final satisfaction of such Claim, such holder's Pro Rata share of New Term Loans equal in amount to the aggregate amount of their Allowed FLFO Claims.

- Holders of an Allowed FLSO Claim shall receive, in full and final satisfaction of such Claim, such holder's Pro Rata share of (i) one hundred percent (100%) of the New Common Interests issued on the Effective Date, *less* any New Common Interests distributed to holders of Class 5 Non-PTL Claims under the Plan and subject to dilution by the New Common Interests distributed pursuant to a post-emergence equity-based management incentive plan as described in Section 5.12 of the Plan (the "**Management Incentive Plan**"), and (ii) the aggregate amount of New Term Loans less amounts distributed on account of Class 3. Receipt of such consideration shall be effected as described in the Restructuring Transactions Exhibit.

---

[3] Letters of credit in the amount of approximately $28,014,282 will be deemed issued under the Exit ABL Facility or cash collateralized on the Effective Date.

[4] Calculation excludes capital lease obligations in the approximate amount of $77,945,909.

2