# DEFENDANTS' EXHIBIT 333
# Part 6 of 27

immediately *after* (rather than before) the ownership change, giving effect to the discharge of creditors' claims, but subject to certain adjustments; in no event, however, can the stock value for this purpose exceed the pre-change gross value of the corporation's assets. In addition, as discussed below, the annual limitation potentially may be increased in the event the corporation has an overall "built-in" gain in its assets at the time of the ownership change. Any portion of the annual limitation that is not used in a given year may be carried forward, thereby adding to the annual limitation for the subsequent taxable year.

If a loss corporation has a net unrealized built-in gain at the time of an ownership change (taking into account most assets and items of "built-in" income, gain, loss and deduction), any built-in gains recognized (or, according to a current IRS notice, treated as recognized) during the following five (5) years (up to the amount of the original net unrealized built-in gain) generally will increase the annual limitation in the year recognized, such that the loss corporation would be permitted to use its Pre-Change Losses against such recognized built-in gain income in addition to its regular annual allowance. Alternatively, if a loss corporation has a net unrealized built-in loss at the time of an ownership change, then any built-in losses recognized during the following five (5) years (up to the amount of the original net unrealized built-in loss) generally will be treated as Pre-Change Losses and similarly will be subject to the annual limitation.

The Debtors estimate that, upon emergence from chapter 11 and at the time of the resultant ownership change, SSB and its subsidiaries would have a significant net unrealized built-in gain, the ultimate amount of which cannot be determined at this time.

If a corporation does not continue its historic business or use a significant portion of its historic assets in a new business for at least two years after the ownership change, the annual limitation resulting from the ownership change is reduced to zero, thereby precluding any utilization of the corporation's Pre-Change Losses (absent any increases due to the recognition of any built-in gains as of the time of the ownership change).

Under section 382(l)(5) of the Tax Code, an exception to the foregoing annual limitation rules generally applies where qualified creditors of a debtor corporation receive, in respect of their claims, at least fifty percent (50%) of the vote and value of the stock of the reorganized debtor (or a controlling corporation if also in bankruptcy) pursuant to a confirmed chapter 11 plan. The Debtors expect that such exception will either not apply to the present case or, if the exception would otherwise apply, that the Debtors will elect not to apply such exception, and the Plan is not premised on the application of such exception.

### B. Consequences to U.S. Holders of FLFO Claims, FLSO Claims, Non-PTL Term Loan Claims, and Other General Unsecured Claims

As used in this section of the Disclosure Statement, the term "**U.S. Holder**" means a beneficial owner of FLFO Claims, FLSO Claims, Non-PTL Term Loan Claims, and Other General Unsecured Claims that is for U.S. federal income tax purposes:

- an individual who is a citizen or resident of the United States;

- a corporation, or other entity taxable as a corporation for U.S. federal income tax purposes, created or organized in or under the laws of the United States, any state thereof or the District of Columbia;

- an estate, the income of which is subject to U.S. federal income taxation regardless of its source; or

- a trust, if a court within the United States is able to exercise primary jurisdiction over its administration and one or more U.S. persons have authority to control all of its substantial

decisions, or if the trust has a valid election in effect under applicable Treasury Regulations to be treated as a U.S. person.

If a partnership or other entity or arrangement taxable as a partnership for U.S. federal income tax purposes holds such Claims, the tax treatment of a partner in such partnership generally will depend upon the status of the partner and the activities of the partnership. Partnerships and U.S. Holders, who are partners in a partnership holding any such Claims, are urged to consult their own tax advisors regarding the U.S. federal income tax consequences of the Plan.

As discussed above in A.1 —"The Restructuring Transactions," this discussion assumes that the Restructuring Transactions Exhibit includes the Redemption. If the Restructuring Transactions Exhibit includes alternative transactions, the U.S. federal income tax consequences to the Debtors and holders of Claims would be materially different from those described herein.

The following discussion is based in part on the preliminary terms of the New Term Loans, which are subject to change in whole or in part.

1. **Security Status of FLFO Claims, FLSO Claims, Non-PTL Term Loan Claims and New Term Loans**

The U.S. federal income tax consequences of the Plan to a U.S. Holder of FLFO Claims, FLSO Claims or Non-PTL Term Loan Claims depends, in part, on whether such Claims and the New Term Loans constitute "securities" of SSB for U.S. federal income tax purposes. The term "security" is not defined in the Tax Code or in the Treasury Regulations and has not been clearly defined by judicial decisions. The determination of whether a particular debt obligation constitutes a "security" depends on an overall evaluation of the nature of the debt, including whether the holder of such debt obligation is subject to a material level of entrepreneurial risk and whether a continuing proprietary interest is intended or not. One of the most significant factors considered in determining whether a particular debt obligation is a security is its original term. In general, debt obligations issued with a weighted-average maturity at issuance of less than five (5) years do not constitute securities, whereas debt obligations with a weighted-average maturity at issuance of ten (10) years or more constitute securities. The FLFO Claims were issued with a weighted-average maturity of approximately three (3) years and the remainder of this discussion assumes that the FLFO Claims do not constitute "securities" for U.S. federal income tax purposes. The Non-PTL Term Loan Claims were issued with a weighted-average maturity of approximately seven (7) years and the New Term Loans will be issued with a weighted-average maturity of approximately five (5) years; it is therefore uncertain whether the Non-PTL Term Loan Claims or the New Term Loans constitute "securities" for U.S. federal income tax purposes.

The IRS has ruled that where the original debt instrument qualified as a security, a new debt instrument received in an exchange for that original debt instrument may, under certain circumstances, be treated as a security based on the status of the original debt instrument even if the remaining term of the new debt instrument is less than five years. As discussed in III.G.2 — "COVID-19 Pandemic and the 2020 Transaction," the Exchanging Existing Lenders sold to SSB and the other borrowers the Relevant Existing Term Loans in exchange for the Initial FLSO Term Loans. The Relevant Existing Term Loans were issued with a weighted-average maturity of approximately seven (7) years and the FLSO Claims received in exchange for such Relevant Existing Term Loans were issued with a weighted-average maturity of approximately three (3) years. Accordingly, the FLSO Claims may be "securities" for U.S. federal income tax purposes although the issue is subject to significant uncertainty.

Although approximately 22% of the funds drawn under the FLSO Term Loans and the Non-PTL Term Loans were drawn by SSB Manufacturing (as reflected in the borrowing requests under the FLSO Term

34

Loans and the Non-PTL Term Loans) and SSB and SSB Manufacturing have been separately accounting for their respective drawn portions of the FLSO Term Loans and the Non-PTL Term Loans on their internal books and records, because SSB and SSB Manufacturing are, and at all relevant times have been, co-obligors under the FLSO Term Loans and the Non-PTL Term Loans, the Allowed FLSO Claims and/or the Non-PTL Term Loans might be treated as being issued by SSB (the issuer of the New Common Interests) for U.S. federal income tax purposes.  SSB and SSB Manufacturing are also expected to be co-obligors under the New Term Loans.

The remainder of this discussion assumes that the FLSO Term Loans, the Non-PTL Term Loans and the New Term Loans are treated as issued by SSB for purposes of the tax-free recapitalization provisions of the Code and Treasury Regulations.  Alternatively, if for such purposes any such Claims are treated as issued by SSB only in part, the U.S. federal income tax consequences of the Plan to the holders of any such Claims are uncertain.  ***U.S. Holders of FLFO Claims, FLSO Claims or Non-PTL Term Loan Claims are urged to consult their own tax advisors regarding the appropriate status of such Claims and of the New Term Loans for U.S. federal income tax purposes***.

2. **U.S. Holders of FLFO Claims**

Pursuant to the Plan, as detailed above, the holders of FLFO Claims will receive New Term Loans in full and final satisfaction of the FLFO Claims.

A U.S. Holder of an Allowed FLFO Claim should generally recognize gain or loss in an amount equal to the difference, if any, between (i) the issue price (as defined below) of the New Term Loans received (other than any consideration received in respect of an Allowed Claim for accrued but unpaid interest and possibly accrued original issue discount, "**OID**"), and (ii) the holder's adjusted tax basis in the Allowed Claim exchanged (other than any tax basis attributable to accrued but unpaid interest and possibly accrued OID).  See B.7 — "Character of Gain or Loss," below.  In addition, a U.S. Holder of an Allowed FLFO Claim will have ordinary interest income to the extent of any exchange consideration allocable to accrued but unpaid interest (or accrued OID) not previously included in income.  See B.6 — "Distributions in Discharge of Accrued Interest or OID," below.

The "issue price" of the New Term Loans for U.S. federal income tax purposes depends on whether, at any time during the 31-day period ending fifteen (15) days after the Effective Date, the New Term Loans, the FLFO Term Loans or the FLSO Term Loans (which are also being exchanged for New Term Loans) are considered traded on an "established market."  Pursuant to applicable Treasury Regulations, an "established market" need not be a formal market.  It is sufficient if there is a readily available sales price for an executed purchase or sale of the New Term Loans, the FLFO Term Loans or the FLSO Term Loans, or if there are one or more "firm quotes" or "indicative quotes" with respect to the New Term Loans, the FLFO Term Loans or the FLSO Term Loans, in each case as such terms are defined in applicable Treasury Regulations.  If the New Term Loans received are considered traded on an established market, the issue price of the New Term Loans for U.S. federal income tax purposes will equal their fair market value as of the Effective Date.  If the New Term Loans received are *not* considered traded on an established market, but either of the FLFO Term Loans or the FLSO Term Loans *are* considered traded on an established market, the issue price of the New Term Loans for U.S. federal income tax purposes will depend on the fair market value of the FLFO Term Loans and/or the FLSO Term Loans as of the Effective Date (with appropriate adjustments for any other consideration received), as determined by the Debtors.  If none of the New Term Loans, the FLFO Term Loans or the FLSO Term Loans are considered traded on an established market, the issue price of the New Term Loans generally will be their stated principal amount.  If the Debtors determine that the New Term Loans, FLFO Term Loans or FLSO Term Loans are traded on an established market, such determination and the determination of issue price will be binding on a U.S. Holder unless such holder discloses, on a timely-filed U.S. federal income tax return for the taxable year that includes the Effective

35

Date, that such holder's determination is different from the Debtors' determination, the reasons for such holder's different determination and, if applicable, how such holder determined the fair market value.

A U.S. Holder of an Allowed FLFO Claim will have a tax basis in the New Term Loans received equal to their issue price. The U.S. Holder's holding period in such New Term Loans received should begin on the day following the Effective Date.

### 3. U.S. Holders of FLSO Claims

Pursuant to the Plan, as detailed above, the holders of FLSO Claims will receive New Term Loans and New Common Interests in full and final satisfaction of the FLSO Claims.

If Allowed FLSO Claims do *not* constitute "securities" for U.S. federal income tax purposes, the receipt of New Common Interests and New Term Loans in satisfaction of such Claims will generally be a fully taxable transaction. If Allowed FLSO Claims and New Term Loans constitute "securities" for U.S. federal income tax purposes, the receipt of New Common Interests and New Term Loans in the transaction would generally qualify for "recapitalization" treatment for U.S. federal income tax purposes. If the Allowed FLSO Claims constitute "securities" for U.S. federal income tax purposes, but the New Term Loans do not, the receipt of New Common Interests and New Term Loans in the transaction would generally qualify for "recapitalization" treatment for U.S. federal income tax purposes, with the New Term Loans generally treated as taxable "boot."

Each of the alternative treatments for holders of Allowed FLSO Loan Claims receiving New Term Loans and New Common Interests—that is, a fully taxable transaction or "recapitalization"—is discussed below.

#### (a) Fully Taxable Transaction

In a fully taxable transaction, a U.S. Holder of an Allowed FLSO Claim should generally recognize gain or loss in an amount equal to the difference, if any, between (i) the sum of the fair market value of any New Common Interests received and the "issue price" (as defined above, *see* B.2 — "U.S. Holders of FLFO Claims") of the New Term Loans received (other than any consideration received in respect of an Allowed Claim for accrued but unpaid interest and possibly accrued OID), and (ii) the holder's adjusted tax basis in the Allowed Claim exchanged (other than any tax basis attributable to accrued but unpaid interest and possibly accrued OID). *See* B.7 — "Character of Gain or Loss," below. In addition, a U.S. Holder of an Allowed FLSO Claim will have ordinary interest income to the extent of any exchange consideration allocable to accrued but unpaid interest (or accrued OID) not previously included in income. *See* B.6 — "Distributions in Discharge of Accrued Interest or OID," below.

In a fully taxable transaction, a U.S. Holder of Allowed FLSO Claims will have a tax basis in any New Term Loans received equal to their issue price and a tax basis in any New Common Interests received equal to its fair market value. The U.S. Holder's holding period in such New Term Loans and/or New Common Interests received should begin on the day following the Effective Date.

#### (b) Recapitalization Treatment

In a "recapitalization," a U.S. Holder of an Allowed FLSO Claim generally will not recognize gain or loss (except for "boot" gain in the circumstances described below). Even within an otherwise tax-free exchange, however, a U.S. Holder will have interest income to the extent of any exchange consideration allocable to accrued but unpaid interest (or OID) not previously included in income. *See* B.6 — "Distributions in Discharge of Accrued Interest or OID," below.

36

If the Allowed FLSO Claims constitute securities for U.S. federal income tax purposes, but the New Term Loans do *not* constitute securities and are treated as "boot," a U.S. Holder of an Allowed FLSO Claim generally will not recognize loss, but will recognize gain (computed as described above in the case of a fully taxable transaction) to the extent of such "boot" received. In the present case, the boot received would equal the "issue price" (as defined above, *see* B.2 — "U.S. Holders of FLFO Claims") of the New Term Loans received.

In a "recapitalization," a U.S. Holder's aggregate tax basis in any New Common Interests or New Term Loans received generally will equal such holder's aggregate adjusted tax basis in its Allowed FLSO Claim exchanged therefor, increased by any gain or interest income recognized in the exchange and decreased by the amount of "boot" received and any deductions claimed in respect of any previously accrued but unpaid interest or OID. The U.S. Holder's holding period in the New Common Interests and New Term Loans (if such New Term Loans are not treated as "boot") will include its holding period in the Allowed FLSO Claim exchanged therefor, except to the extent of any exchange consideration received in respect of accrued but unpaid interest (and possibly OID, depending on whether the increase in a holder's adjusted basis for recently accrued OID retains its short-term character for holding period purposes).

If the New Term Loans are treated as "boot," a U.S. Holder will have a tax basis in the New Term Loans received equal to the amount taken into account as boot with respect to the New Term Loans. The holding period in the New Term Loans received generally will begin on the day following the Effective Date.

### 4. U.S. Holders of Non-PTL Term Loan Claims

Pursuant to the Plan, as detailed above, all Non-PTL Term Loan Claims will be cancelled, released, and extinguished, with each holder of Allowed Non-PTL Term Loan Claims receiving New Common Interests.

If Allowed Non-PTL Term Loan Claims do *not* constitute "securities" for U.S. federal income tax purposes, the receipt of New Common Interests in satisfaction of such Claim will generally be a fully taxable transaction. Alternatively, if the Non-PTL Term Loan Claims constitute "securities," the receipt of New Common Interests in the transaction would generally qualify for "recapitalization" treatment for U.S. federal income tax purposes.

Each of the alternative treatments for holders of Allowed Non-PTL Term Loan Claims receiving New Common Interests—that is, a fully taxable transaction or a "recapitalization"—is discussed below.

#### (a) Fully Taxable Transaction

In a fully taxable transaction, a U.S. Holder of an Allowed Non-PTL Term Loan Claim will recognize gain or loss in an amount equal to the difference, if any, between (i) the fair market value of any New Common Interests received (other than any consideration received in respect of a Claim for accrued but unpaid interest and possibly accrued OID) and (ii) the holder's adjusted tax basis in the Claim exchanged (other than any tax basis attributable to accrued but unpaid interest and possibly accrued OID). *See* B.7 — "Character of Gain or Loss," below. In addition, a U.S. Holder of an Allowed Non-PTL Term Loan Claim will have ordinary interest income to the extent of any exchange consideration allocable to accrued but unpaid interest (or accrued OID) not previously included in income. *See* B.6 — "Distributions in Discharge of Accrued Interest or OID," below.

In a fully taxable transaction, a U.S. Holder of Allowed Non-PTL Term Loan Claims will have a tax basis in the New Common Interests received equal to its fair market value. A U.S. Holder's holding period in any such New Common Interests generally will begin the day following the Effective Date.

37

(b)     **Recapitalization Treatment**

In a "recapitalization," a U.S. Holder of an Allowed Non-PTL Term Loan Claim generally will not recognize gain or loss. Even within an otherwise tax-free exchange, however, a U.S. Holder will have interest income to the extent of any exchange consideration allocable to accrued but unpaid interest (or OID) not previously included in income. *See* B.6 — "Distributions in Discharge of Accrued Interest or OID," below.

In a "recapitalization," a U.S. Holder's aggregate tax basis in the New Common Interests generally will equal such holder's aggregate adjusted tax basis in its Allowed Non-PTL Term Loan Claim exchanged therefor, increased by any gain or interest income recognized in the exchange and decreased by any deductions claimed in respect of any previously accrued but unpaid interest or OID. The U.S. Holder's holding period in the New Common Interests will include its holding period in the Allowed Non-PTL Term Loan Claim exchanged therefor, except to the extent of any exchange consideration received in respect of accrued but unpaid interest (and possibly OID, depending on whether the increase in a holder's adjusted basis for recently accrued OID retains its short-term character for holding period purposes).

5.     **U.S. Holders of Other General Unsecured Claims**

Pursuant to the Plan, as detailed above, each holder of an Allowed Other General Unsecured Claim will receive, in full and final satisfaction of such Claim, its Pro Rata Share of the Other General Unsecured Claims Recovery Pool as set forth in the GUC Recovery Allocation Table.

In general, a U.S. Holder of Allowed Other General Unsecured Claims should recognize gain or loss in an amount equal to the difference, if any, between (i) the aggregate amount of cash received in respect of its Claims (other than any consideration received in respect of a Claim for accrued but unpaid interest and possibly accrued OID), and (ii) the U.S. Holder's adjusted tax basis in its Claims (other than any tax basis attributable to accrued but unpaid interest and possibly accrued OID). *See* B.7 — "Character of Gain or Loss," below. A U.S. Holder will have ordinary interest income to the extent of any consideration allocable to accrued but unpaid interest or accrued OID not previously included in income. *See* B.6 — "Distributions in Discharge of Accrued Interest or OID," below.

In the event of the subsequent disallowance of any Disputed Other General Unsecured Claim, it is possible that a U.S. holder of a previously Allowed Other General Unsecured Claim may receive additional distributions in respect of its Claim; any such additional distributions received by such a holder would be treated as additional amount realized in satisfaction of the Claim, except to the extent of any portion treated as an interest income under the imputed interest provisions of the Tax Code. Accordingly, it is possible that the recognition of any loss realized by a U.S. holder with respect to an Allowed Other General Unsecured Claim may be deferred until all Other General Unsecured Claims are Allowed or Disallowed. Alternatively, it is possible that a U.S. holder will have additional gain in respect of any additional distributions received due to the disallowance of a Disputed Other General Unsecured Claim. *See also* B.10 —"Tax Treatment of Disputed Claims Reserve," below.

6.     **Distributions in Discharge of Accrued Interest or OID**

In general, to the extent that any consideration received pursuant to the Plan by a U.S. Holder of a Claim is received in satisfaction of interest accrued during its holding period, such amount will be taxable to the U.S. Holder as interest income (if not previously included in the U.S. Holder's gross income). Conversely, a U.S. Holder may be entitled to recognize a loss to the extent any accrued interest or amortized OID was previously included in its gross income and is not paid in full. However, the IRS has privately ruled that a holder of a "security" of a corporate issuer, in an otherwise tax-free exchange, could not claim a current

38

deduction with respect to any unpaid OID. Accordingly, it is also unclear whether, by analogy, a U.S. Holder of a Claim that does not constitute a "security" would be required to recognize a capital loss, rather than an ordinary loss, with respect to previously included OID that is not paid in full.

The Plan provides that, except as otherwise required by law (as reasonably determined by the Reorganized Debtors), consideration received in respect of an Allowed Claim is allocable first to the principal portion of the Allowed Claim (as determined for U.S. federal income tax purposes) and then, to the extent of any excess, to the remaining portion of the Allowed Claim. *See* Section 6.18 of the Plan. There is no assurance that the IRS will respect such allocation for U.S. federal income tax purposes. Holders are urged to consult their tax advisors regarding the allocation of consideration received under the Plan, as well as the deductibility of accrued but unpaid interest (including OID) and the character of any loss claimed with respect to accrued but unpaid interest (including OID) previously included in income for U.S. federal income tax purposes.

7. **Character of Gain or Loss**

Where gain or loss is recognized by a U.S. Holder, the character of such gain or loss as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the holder, whether the FLFO Claim, FLSO Claim, Non-PTL Term Loan Claim, or Other General Unsecured Claim constitutes a capital asset in the hands of the U.S. Holder and how long it has been held, whether the FLFO Claim, FLSO Claim, Non-PTL Term Loan Claim or Other General Unsecured Claim was acquired at a market discount, and whether and to what extent the U.S. Holder previously claimed a bad debt deduction.

A U.S. Holder that purchased its FLFO Claim, FLSO Claim, Non-PTL Term Loan Claim or Other General Unsecured Claim from a prior holder at a "market discount" (relative to the principal amount of the FLFO Claim, FLSO Claim, Non-PTL Term Loan Claim or Other General Unsecured Claim at the time of acquisition) may be subject to the market discount rules of the Tax Code. A U.S. Holder that purchased its Claim from a prior holder will be considered to have purchased such Claim with "market discount" if the U.S. Holder's adjusted tax basis in its Claim immediately after its acquisition is less than the adjusted issue price of such Claim by at least a statutorily defined *de minimis* amount. Under these rules, gain recognized on the exchange of Claims (other than in respect of a Claim for accrued but unpaid interest) generally will be treated as ordinary income to the extent of the market discount accrued (on a straight line basis or, at the election of the holder, on a constant yield basis) during the holder's period of ownership, unless the holder elected to include the market discount in income as it accrued. If a U.S. Holder of Claims did not elect to include market discount in income as it accrued and, thus, under the market discount rules, was required to defer all or a portion of any deductions for interest on debt incurred or maintained to purchase or carry its Claims, such deferred amounts would become deductible at the time of the exchange.

In the case of an exchange of any Allowed Non-PTL Term Loan Claims for New Common Interests that qualifies as a "recapitalization," the Tax Code indicates that any accrued market discount in respect of such Claims should only be currently includible in income to the extent of any gain recognized in the recapitalization exchange. However, any accrued market discount that is not included in income should carry over to such New Common Interests, such that any gain recognized by a U.S. Holder upon a subsequent disposition of such New Common Interests would be treated as ordinary income to the extent of any accrued market discount not previously included in income. To date, specific Treasury Regulations implementing this rule have not been issued.