# DEFENDANTS' EXHIBIT 333
# Part 12 of 27

(c)     *Treatment*:  Except to the extent that a holder of an Allowed FLFO Claim agrees to a less favorable treatment of such Claim, each such holder shall receive, in full and final satisfaction of such Claim and in accordance with Section 5.5 of the Plan, on the Effective Date or as soon as reasonably practicable thereafter, such holder's Pro Rata share of New Term Loans equal in amount to the aggregate amount of their Allowed FLFO Claims.

(d)     *Impairment and Voting*:  Class 3 is Impaired, and the holders of FLFO Claims in Class 3 are entitled to vote to accept or reject the Plan.

### 4.4.     *FLSO Claims (Class 4)*.

(a)     *Classification*:  *Class* 4 consists of FLSO Claims.

(b)     *Allowance*:  The FLSO Claims are Allowed pursuant to section 506(a) of the Bankruptcy Code in the aggregate amount of no less than $832,012,999.  Holders of FLSO Claims and the PTL Agent shall not be required to file proofs of Claim on account of their FLSO Claims.

(c)     *Treatment*:  Except to the extent that a holder of an Allowed FLSO Claim agrees to a less favorable treatment of such Claim, each such holder shall receive, in full and final satisfaction of such Claim and in accordance with Section 5.5 of the Plan, on the Effective Date, or as soon as reasonably practicable thereafter, such holder's Pro Rata share of (i) one hundred percent (100%) of the New Common Interests issued on the Effective Date*, less* any New Common Interests distributed to holders of Class 5 Non-PTL Claims under the Plan and subject to dilution by the New Common Interests distributed pursuant to the Management Incentive Plan, and (ii) the aggregate amount of New Term Loans less amounts distributed on account of Class 3.  Receipt of such consideration shall be effected as described in the Restructuring Transactions Exhibit.

(d)     *Impairment and Voting*:  Class 4 is Impaired, and the holders of FLSO Claims in Class 4 are entitled to vote to accept or reject the Plan.

### 4.5.     *Non-PTL Claims (Class 5)*.

(a)     Classification: Class 5 consists of Non-PTL Claims.

(b)     *Treatment*: On the Effective Date, all Non-PTL Claims will be cancelled, released, and extinguished and will be of no further force and effect.  Each Holder of such Allowed Non-PTL Claims will receive, with a carve out from the collateral (or the value of such collateral) securing the FLSO Claims:

(i)     **If Class 5 votes to accept the Plan**: Its Pro Rata share of 4% of New Common Interests issued on the Effective Date, subject to dilution by the New Common Interests distributed pursuant to the Management Incentive Plan.

(ii)     **If Class 5 votes to reject the Plan**: Its Pro Rata share of 1% of New Common Interests issued on the Effective Date, subject to dilution by any New Common Interests distributed pursuant to the Management Incentive Plan.

(c)     *Impairment and Voting*:  Class 5 is Impaired, and the holders of Non-PTL Claims in Class 5 are entitled to vote to accept or reject the Plan.

4.6.     ***Ongoing General Unsecured Claims (Class 6A)***.

(a)     *Classification*:  Class 6A consists of Ongoing General Unsecured Claims.

(b)     *Treatment*:  Except to the extent that a holder of an Allowed Ongoing General Unsecured Claim agrees to less favorable treatment, if a holder of an Allowed Ongoing General Unsecured Claim executes a 6A Trade Agreement, on and after the Effective Date, or as soon as reasonably practical thereafter, each holder of an Allowed Ongoing General Unsecured Claim shall receive, with a carve out from the collateral (or the value of such collateral) securing the FLSO Claims, no more than four (4) Cash installments over a period of no more than 365 days from the Effective Date, which payments shall result in full payment in the Allowed amount of such Ongoing General Unsecured Claim on no better terms than payment in the ordinary course of business.  For the avoidance of doubt, any counterparty to (i) an executory contract or unexpired lease assumed pursuant to Article VIII of the Plan or (ii) an existing CV Trade Agreement (provided that such CV Trade Agreement is in effect as of the Effective Date) shall not be required to execute a 6A Trade Agreement.

(c)     *Impairment and Voting.*  Class 6A is Impaired, and the holders of Ongoing General Unsecured Claims are entitled to vote to accept or reject the Plan.

4.7.     ***Other General Unsecured Claims (Class 6B)***.

(a)     *Classification*:  Class 6B consists of Other General Unsecured Claims.

(b)     *Treatment*:  Except to the extent that a holder of an Allowed Other General Unsecured Claim agrees to less favorable treatment, each holder of an Allowed Other General Unsecured Claim shall receive, in full and final satisfaction of such Claim, with a carve out from the collateral (or the value of such collateral) securing the FLSO Claims, its Pro Rata Share of the Other General Unsecured Claims Recovery Pool as set forth in the GUC Recovery Allocation Table.

(c)     *Impairment and Voting*:  Class 6B is Impaired, and the holders of Other General Unsecured Claims in Class 6A are entitled to vote to accept or reject the Plan.

4.8.     ***Intercompany Claims (Class 7)***.

(a)     *Classification*:  Class 7 consists of Intercompany Claims.

(b)     *Treatment*:  Except as provided for in Section 5.2 of this Plan, on the Effective Date, or as soon as practicable thereafter, all Intercompany Claims shall be adjusted, Reinstated, or discharged (each without any distribution) to the extent reasonably determined to be appropriate by the Debtors or Reorganized Debtors and the Requisite Consenting Creditors, as applicable.

(c)     *Impairment and Voting*:  Holders of Class 7 Claims are either (i) Unimpaired and such holders are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or (ii) Impaired and such holders are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Intercompany Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Intercompany Claims.

4.9.     ***Intercompany Interests (Class 8)***.

(a)     *Classification*:  Class 8 consists of Intercompany Interests.

(b)    *Treatment*:  Except as provided for in Section 5.2 of this Plan, on the Effective Date, and without the need for any further corporate or limited liability company action or approval of any board of directors, management, or shareholders of any Debtor or Reorganized Debtor, as applicable, all Intercompany Interests shall be unaffected by the Plan and continue in place following the Effective Date, solely for the administrative convenience of maintaining the existing corporate structure of the Debtors.

(c)    *Impairment and Voting*:  Class 8 are either (i) Unimpaired and such holders are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or (ii) Impaired, and such holders are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Intercompany Interests are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Intercompany Interests.

### 4.10.    *Other Intercompany Interests (Class 9)*.

(a)    *Classification*:  Class 9 consists of Other Intercompany Interests.

(b)    *Treatment*:  On the Effective Date, Other Intercompany Interests shall receive the treatment afforded in the Restructuring Transactions Exhibit.

(c)    *Impairment and Voting*:  Other Intercompany Interests are Impaired.  In accordance with section 1126(g) of the Bankruptcy Code, holders of Other Intercompany Interests are conclusively deemed to reject this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited with respect to Other Intercompany Interests.

### 4.11.    *Intermediate Equity Interests (Class 10).*

(a)    Classification:  Class 10 consists of Intermediate Equity Interests.

(b)    *Treatment*:  On the Effective Date, Intermediate Equity Interests shall receive the treatment afforded in the Restructuring Transactions Exhibit.

(c)    *Impairment and Voting*:  Intermediate Equity Interests are Impaired, subject solely to the Restructuring Transactions Exhibit.  In accordance with section 1126(g) of the Bankruptcy Code, holders of Intermediate Equity Interests are conclusively deemed to reject this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited with respect to Intermediate Equity Interests.

## ARTICLE V.    MEANS FOR IMPLEMENTATION.

### 5.1.    *Compromise and Settlement of Claims, Interests, and Controversies.*

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distribution, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan, including the settlement of all Claims, Interests, and controversies among the Debtor and the Consenting Parties given in consideration of the value provided to the Estates by the Consenting Parties, the terms of which are set out in the Restructuring Support Agreement and incorporated by reference herein, shall constitute an integrated and global good faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a creditor or an Interest holder may have with respect to any Allowed Claim or Allowed Interest

or any distribution to be made on account of such Allowed Claim or Allowed Interest, including pursuant to the transactions set forth in the Restructuring Transactions Exhibit. Entry of the Confirmation Order shall constitute the Bankruptcy Court's integrated and global approval of the compromise or settlement of all such Allowed Claims, Allowed Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise, settlement, and transactions are in the best interests of the Debtors, their Estates, and holders of Allowed Claims, Allowed Interests, and is fair, equitable, and is within the range of reasonableness. Subject to the provisions of this Plan governing distributions, all distributions made to holders of Allowed Claims and Allowed Interests in any Class are intended to be and shall be final.

        5.2.     ***Intercreditor Agreements***.

        Except as expressly provided in the Plan, all rights, entitlements, and distributions shall be subject to the Intercreditor Agreements, the priorities and payment waterfalls of which shall be incorporated, preserved, and enforced by the Plan, the Debtors, the Consenting Creditors, and, as applicable, the Reorganized Debtors, pursuant to section 510 of the Bankruptcy Code.

        5.3.     ***Continued Corporate Existence; Effectuating Documents; Corporate Action; Restructuring Transactions***.

        (a)     Except as otherwise provided in the Plan, the Debtors shall continue to exist after the Effective Date as Reorganized Debtors in accordance with the applicable laws of the respective jurisdictions in which they are incorporated or organized and pursuant to the New Corporate Governance Documents or other applicable corporate governance documents.

        (b)     Notwithstanding anything herein to the contrary, on or about the Effective Date, or as soon as reasonably practicable thereafter, the Debtors or the Reorganized Debtors, as applicable, shall take all actions set forth in and contemplated by the Restructuring Transactions Exhibit, and enter into any transaction and may take all actions as may be necessary or appropriate to effectuate the transactions described in, approved by, contemplated by, or necessary or appropriate to effectuate the Plan, including the Restructuring Transactions.

        (c)     Upon the Effective Date, subject to the Consenting Creditor Consent Rights, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including (i) the assumption of executory contracts and unexpired leases as provided herein, (ii) the selection of the managers, directors, or officers for the Reorganized Debtors, (iii) the distribution of the New Common Interests, (iv) the entry into or execution of the Exit ABL Facility Credit Agreement and the New Term Loan Credit Facility Agreement, in each case, including definitive documentation related thereto, (v) any necessary action with respect to the Management Incentive Plan in accordance with Section 5.12 hereof, and (vi) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date), in each case in accordance with and subject to the terms hereof.

        (d)     The Confirmation Order shall and shall be deemed to, pursuant to sections 363, 1123, and 1142 of the Bankruptcy Code, authorize and direct parties, as applicable, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions.

        (e)     Each officer, member of the board of directors, or manager of the Debtors is (and each officer, member of the board of directors, or manager of the Reorganized Debtors shall be) authorized and directed to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and

the securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, all of which shall be authorized and approved in all respects, in each case, without the need for any approvals, authorization, consents, or any further action required under applicable law, regulation, order, or rule (including, without limitation, any action by the stockholders or directors or managers of the Debtors or the Reorganized Debtors) except for those expressly required pursuant to the Plan.

(f)      All matters provided for in the Plan involving the corporate or limited liability company structure of the Debtors or the Reorganized Debtors, and any corporate or limited liability company action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors or by any other stakeholder, and with like effect as though such action had been taken unanimously by the stockholders, directors, managers, or officers, as applicable, of the Debtors or Reorganized Debtors.

5.4.     ***Intercompany Interests; Corporate Reorganization.***

To the extent Reinstated under the Plan, on the Effective Date, the Intercompany Interests (a) shall be Reinstated for the ultimate benefit of the holders of Claims that receive New Common Interests under the Plan, and shall receive no recovery or distribution, and (b) without the need for any further corporate action or approval of any board of directors, board of managers, managers, management, or stockholders of any Debtor or Reorganized Debtor, as applicable, the certificates and all other documents representing the Intercompany Interests shall be deemed to be in full force and effect.

5.5.     ***New Term Loan***.

(a)      On the Effective Date, in accordance with, and subject to, the terms and conditions of the New Term Loan Credit Facility Agreement, the Debtors will enter into the New Term Loan Credit Facility Agreement.  All Liens and security interests granted pursuant to the New Term Loan Credit Facility Agreement shall be (i) valid, binding, perfected, and enforceable Liens and security interests in the personal and real property described in and subject to such document, with the priorities established in respect thereof under applicable non-bankruptcy law and as provided for in the New Intercreditor Agreement, and (ii) not subject to avoidance, recharacterization, or subordination under any applicable law, the Plan or the Confirmation Order.

(b)      On or before (as applicable) the Effective Date, the Debtors shall be authorized to execute, deliver, and enter into and perform under the New Term Loan Credit Facility Agreement without further (a) notice to or order or other approval of the Bankruptcy Court, (b) act or omission under applicable law, regulation, order, or rule, (c) vote, consent, authorization, or approval of any Person, or (d) action by the holders of Claims or Interests.  The New Term Loan Credit Facility Agreement shall constitute legal, valid, binding and authorized joint and several obligations of the applicable Reorganized Debtors, enforceable in accordance with its terms and such obligations shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under applicable law, the Plan or the Confirmation Order.  The New Term Loan Facility Agreement (and other definitive documentation related thereto) are reasonable and are being entered into in good faith.

(c)      The Reorganized Debtors and the Persons granted Liens and security interests under the New Term Loan are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order

(it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order without the need for any filings or recordings) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

5.6.     ***Exit ABL Facility***.

(a)     On the Effective Date, the Reorganized Debtors shall be authorized to execute, deliver, and enter into the Exit ABL Facility Agreement without further (a) notice to or order or other approval of the Bankruptcy Court, (b) act or omission under applicable law, regulation, order, or rule, (c) vote, consent, authorization, or approval of any Person, or (d) action by the holders of Claims or Interests. The Exit ABL Facility Agreement shall constitute legal, valid, binding and authorized joint and several obligations of the applicable Reorganized Debtors, enforceable in accordance with its terms and such obligations shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under applicable law, the Plan or the Confirmation Order. The financial accommodations to be extended pursuant to the Exit ABL Facility Agreement (and other definitive documentation related thereto) are reasonable and are being extended, and shall be deemed to have been extended, in good faith and for legitimate business purposes.

(b)     On the Effective Date, subject in all respects to the terms of the Commitment Letter, (a) all letters of credit issued under the DIP Credit Agreement, shall be either (i) cash collateralized, or (ii) with the consent of the DIP Agent and DIP Lenders, deemed issued under the Exit ABL Facility Agreement in accordance with the terms and conditions of the Exit ABL Facility Agreement, and (b) All Liens and security interests granted pursuant to the Exit ABL Facility Agreement shall be (i) valid, binding, perfected, and enforceable Liens and security interests in the personal and real property described in and subject to such document, with the priorities established in respect thereof under applicable non-bankruptcy law and as provided for in the New Intercreditor Agreement and (ii) not subject to avoidance, recharacterization, or subordination under any applicable law, the Plan, or the Confirmation Order.

(c)     The Reorganized Debtors and the Persons granted Liens and security interests under the Exit ABL Facility are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order without the need for any filings or recordings) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

5.7.     ***New Intercreditor Agreement***.

On the Effective Date, the New Term Loan Agent and the Exit ABL Facility Agent shall enter into the New Intercreditor Agreement. Each lender under the New Term Loan Agreement and the Exit ABL Facility Credit Agreement shall be deemed to have directed the New Term Loan Agent or the Exit ABL Facility Agent, as applicable, to execute the New Intercreditor Agreement and shall be bound to the terms of the New Intercreditor Agreement from and after the Effective Date as if it were a signatory thereto.

5.8.    ***Section 1145 Exemption***.

(a)    The offer, issuance, and distribution of the New Common Interests hereunder shall be exempt, pursuant to section 1145 of the Bankruptcy Code, without further act or action by any Entity, from registration under (i) the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and (ii) any state or local law requiring registration for the offer, issuance, or distribution of Securities.

(b)    The New Common Interests may be resold without registration under the Securities Act or other federal securities laws pursuant to the exemption provided by section 4(a)(1) of the Securities Act, subject to: (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act of 1933; (ii) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; and (iii) applicable regulatory approval.

5.9.    ***Cancellation of Existing Securities and Agreements***.

Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, including with respect to executory contracts or unexpired leases that shall be assumed by the Reorganized Debtors, on the Effective Date, all agreements, instruments, notes, certificates, mortgages, security documents, and any other instruments or documents evidencing any Claim or Interest (other than Intercompany Interests that are not modified by the Plan) and any rights of any holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect and the obligations of the Debtors thereunder shall be deemed fully satisfied, released, and discharged.  Notwithstanding such cancellation and discharge, (a) the PTL Credit Agreement and Intercreditor Agreements shall continue in effect solely (i) to the extent necessary to allow the holders of Allowed FLFO Claims and Allowed FLSO Claims to receive distributions under the Plan, (ii) to the extent necessary to allow the Debtors, Reorganized Debtors, and/or PTL Agent to make post-Effective Date distributions or take such other action pursuant to the Plan on account of Allowed FLFO Claims and Allowed FLSO Claims and to otherwise exercise their rights and discharge their obligations relating to the interests of the holders of such Claims, and (iii) to appear in the Chapter 11 Cases; and (b) the Non-PTL Term Loan Agreement shall continue in effect (i) to the extent necessary to allow the holders of Allowed Non-PTL Claims to receive distributions under the Plan, (ii) to the extent necessary to allow the Debtors, Reorganized Debtors, and/or Non-PTL Agent to make post-Effective Date distributions or take such other action pursuant to the Plan on account of Allowed Non-PTL Claims and to otherwise exercise their rights and discharge their obligations relating to the interests of the holders of such Claims, and (iii) to appear in the Chapter 11 Cases, *provided*, *however*, that nothing in the foregoing shall affect the discharge of Claims pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan or result in any liability or expense to the Reorganized Debtors. Notwithstanding the foregoing, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, the Debtors or their interests, as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in this section shall be deemed null and void and shall be of no force and effect, and the Debtors shall be entitled to continue to use (in accordance with the remaining provisions of such document, instrument, lease, or other agreement) any land, facilities, improvements, or equipment financed with the proceeds of the PTL Credit Agreement and/or the Non-PTL Term Loan Agreement, as applicable. Nothing contained herein shall be deemed to cancel, terminate, release, or discharge the obligation of the Debtors or any of their counterparties under any executory contract or lease to the extent such executory contract or lease has been assumed by the Debtors pursuant to a Final Order of the Bankruptcy Court or hereunder.

5.10.    ***Cancellation of Liens***.

(a)    Except as otherwise specifically provided herein, including pursuant to Section 5.5(a) of the Plan, all notes, instruments, certificates evidencing debt of the Debtors and Intermediate Equity Interests will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable agents and trustees to receive distributions from the Debtors under the Plan and to make any further distributions to the applicable holders on account of their Claims and Interests.

(b)    Upon the full payment or other satisfaction of an Allowed Other Secured Claim, or promptly thereafter, the holder of such Allowed Other Secured Claim shall deliver to the Debtors or the Reorganized Debtors, as applicable, any collateral or other property of a Debtor held by such holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Other Secured Claim that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory Liens, or lis pendens, or similar interests or documents.

(c)    After the Effective Date, the distributions to holders on account of Allowed FLFO Claims and Allowed FLSO Claims, and the payment of the Restructuring Fees and Expenses (including, without limitation, attorneys' and financial advisors' reasonable and documented fees and expenses), the Debtors or the Reorganized Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the FLFO Claims and FLSO Claims, including, without limitation, the preparation and filing, in form, substance, and content acceptable to the Requisite Consenting Creditors, as applicable, of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the PTL Agent and/or PTL Lenders, including, without limitation, UCC-3 termination statements.

5.11.    ***Officers and Boards of Directors***.

(a)    On or after the Effective Date, subject to the Consenting Creditor Consent Rights, the members of the New Board shall be appointed to serve pursuant to the terms of the applicable New Corporate Governance Documents. The current chief executive officer of Serta Simmons Bedding shall serve as a member of the New Board. The composition of each board of directors or managers of a Reorganized Debtor, as applicable, and, to the extent applicable, the officers of each Reorganized Debtor, shall be disclosed prior to the Confirmation Hearing in accordance with section 1129(a)(5) of the Bankruptcy Code.

(b)    The selection of the initial members of the board of directors or managers of the Reorganized Debtors, as applicable, shall be provided for and subject to the New Corporate Governance Documents, subject to the express provisions of the Plan and the Consenting Creditor Consent Rights. The initial New Board will be comprised of (i) the current chief executive officer of Serta Simmons Bedding, and (ii) additional members the number and identity of whom will be selected by the Requisite Consenting Creditors in consultation with the Company.

(c)    The officers of the respective Debtors immediately before the Effective Date, as applicable, shall serve as the initial officers of each of the respective Reorganized Debtors on and after the Effective Date and in accordance with any employment agreement with the Reorganized Debtors and applicable non-bankruptcy law. After the Effective Date, the selection of officers of the Reorganized Debtors shall be as provided by their respective organizational documents.