DEFENDANTS'
EXHIBIT 332
Part 5 of 11

108.     Accordingly, on behalf of the Debtors, I respectfully submit that the relief requested in the Utilities Motion is in the best interests of the Debtors' estates, and should be granted.

**J.      Schedules and Statements Extension Motion**

109.     Pursuant to *the Emergency Motion of Debtors for an Order Extending Time to File Schedules of Assets and Liabilities, Schedules of Current Income and Current Expenditures, Schedules of Executory Contracts and Unexpired Leases, Statements of Financial Affairs, and Rule 2015.3 Reports* filed contemporaneously herewith (the "**Schedules and Statements Motion**") the Debtors seek entry of an order extending the deadline by which the Debtors must file their (a) schedules of assets and liabilities, (b) schedules of current income and current expenditures, (c) schedules of executory contracts and unexpired leases, and (d) statements of financial affairs (collectively, the "**Schedules and Statements**") by 45 days, for a total of 59 days from the Petition Date, through and including March 9, 2023 without prejudice to the Debtors' ability to request additional extensions for cause shown.

110.     I am advised that section 521 of the Bankruptcy Code and Bankruptcy Rule 1007(c) generally requires debtors to file Schedules and Statements within 14 days after their petition date. I am also advised that under Bankruptcy Rule 1007(c), the Court has the authority to extend the time required for filing the Schedules and Statements "for cause." I believe cause exists for granting the extensions requested in the Schedules and Statements Motion because of the voluminous information the Debtors must compile to complete the Schedules and Statements. Collecting the necessary information requires a significant expenditure of time and effort on the part of the Debtors, their employees, and their professional advisors in the near term, when these resources would be best used to address the immediate needs of the Debtors' business operations.

111.     Additionally, pursuant to the Schedules and Statements Motion, the Debtors request the Court grant them an extension of the time until the later of (i) 15 days after the initial meeting of creditors to be held pursuant to section 341 of the Bankruptcy Code (the "**341 Meeting**") and (ii) 45 days from the Petition Date, for the Debtors to either file their initial reports of financial information with respect to entities in which their chapter 11 estates hold a controlling or substantial interest, as set forth in Bankruptcy Rule 2015.3 (the "**2015.3 Reports**"), or file a motion with the Court seeking a modification of such reporting requirements for cause.

112.     I have been advised that Bankruptcy Rule 2015.3 requires a debtor, by no later than seven days prior before the date set for the 341 Meeting and no less than every six months thereafter, to file periodic financial reports of the value, operations and profitability of each entity that is not a publicly traded corporation or a debtor in the chapter 11 cases, and in which the estate holds a substantial or controlling interest.  I am also advised that pursuant to Bankruptcy Rule 9006(b)(1), the Court has the authority to enlarge the period of time to file the 2015.3 Reports "for cause" and that under Bankruptcy Rule 2015.3(d), the Court can modify the reporting requirements for cause, including that the debtor is "not able, after a good faith effort, to comply with those reporting requirements, or that the information . . . is publicly available."

113.     The Debtors consist of 14 separate entities, some of which have non-debtor affiliates that are not publicly traded corporations and in which there is a presumption that the Debtors hold a "substantial or controlling" equity interest.  Thus, I believe cause exists to extend the deadline for filing the Rule 2015.3 Reports based on (a) the size and complexity of the Debtors' business and (b) the substantial burdens imposed by compliance with Bankruptcy Rule 2015.3 in the early days of these chapter 11 cases.  Extending the deadline for the initial 2015.3 Reports also will enable the Debtors to work with their financial advisors and the U.S. Trustee to determine the

appropriate nature and scope of the 2015.3 Reports and any proposed modifications to the reporting requirements established by Bankruptcy Rule 2015.3.

**K.      Creditor List Motion**

114.      Pursuant to the *Emergency Motion of Debtors for Order (I) Authorizing Debtors to (A) File a Consolidated Creditor Matrix and a Consolidated List of 30 Largest Unsecured Creditors and (B) Redact Certain Personal Identification Information and (II) Approving Form and Manner of Notifying Creditors of Commencement of Chapter 11 Cases and Other Information* filed contemporaneously herewith (the "**Creditor List Motion**"), the Debtors are seeking entry of an order (i) authorizing the Debtors to (a) file a consolidated creditor matrix (the "**Consolidated Creditor Matrix**") and a consolidated list of the Debtors' thirty (30) largest unsecured creditors (the "**Consolidated Top 30 Creditors List**") and (b) redact certain personal identification information of the Debtors' employees and independent contractors and (ii) approving the form and manner of notifying creditors of the commencement of these chapter 11 cases and other information.

115.      I am advised that Bankruptcy Rule 1007(a) requires each debtor to file a separate mailing matrix, each containing names and addresses of all creditors, including individuals, as well as a separate list of top unsecured creditors for each debtor.  Because the preparation of separate lists of creditors for each Debtor would be expensive, time consuming, and administratively burdensome, the Debtors request authority to file one Consolidated Creditor Matrix for all Debtors.  Further, because a significant number of creditors may be shared among the Debtors, the Debtors request authority to file the Consolidated Top 30 Creditors List for all Debtors, rather than file separate top 20 creditor lists for each Debtor.  I understand that the

Consolidated Top 30 Creditors List will help alleviate administrative burden, costs, and the possibility of duplicative service.

116.   I also believe that cause exists to authorize the Debtors to redact address information of the Debtors' current and former employees and independent contractors from the Consolidated Creditor Matrix because such information could be used to perpetrate identity theft. Further, the Debtors propose to provide, upon request, an unredacted version of the Consolidated Creditor Matrix to the Court, the U.S. Trustee, and counsel to any official committees appointed in these chapter 11 cases.

117.   Finally, I am advised that, in compliance with the requirements of Bankruptcy Rule 2002(a), of which I have been advised, the Debtors, through Epiq Corporate Restructuring, LLC ("**Epiq**"), their proposed claims and noticing agent, propose to serve the Notice of Commencement (as defined in the Creditor List Motion) on all parties entitled to notice of commencement of these chapter 11 cases, to advise them of commencement of these chapter 11 cases and the section 341 meeting of creditors.  I believe service of the Notice of Commencement on the Consolidated Creditor Matrix will not only prevent the Debtors' estates from incurring unnecessary costs associated with serving multiple notices to the parties listed on the Debtors' voluminous Consolidated Creditor Matrix, but will also preserve judicial resources and prevent creditor confusion through the efficient service of critical information.

118.   Based on the foregoing, I believe that the relief requested in the Creditor List Motion is in the best interests of the Debtors, their estates, and all other parties in interest and should be granted in all respects.

**L.    NOL Motion**

119.    Pursuant to the *Emergency Motion of Debtors Pursuant to Sections 362 And 105(A) of the Bankruptcy Code for Interim and Final Orders Establishing Notification Procedures and Approving Restrictions on (A) Certain Transfers of Interests in, and Claims Against, Debtors, and (B) Claiming of Certain Worthless Stock Deductions* filed contemporaneously herewith (the "**NOL Motion**"), the Debtors are seeking to establish procedures to protect (i) the potential value of the Debtors' carryforwards of net operating losses ("**NOLs**"), disallowed and deferred business interest expense, and certain other tax benefits (including certain state tax attributes) (collectively, the "**Tax Attributes**") for use during the chapter 11 cases and in connection with the reorganization of the Debtors.  The Procedures (as defined in the NOL Motion) include separate procedures applicable to (i) the beneficial ownership (including direct and indirect ownership) of membership interests in Dawn Intermediate, LLC ("**Dawn Stock**") and any options or similar rights (within the meaning of applicable U.S. Treasury regulations) to acquire beneficial ownership of such interests, as well as to any claim (for U.S. federal income tax reporting purposes) of a worthless stock deduction under section 165 of title 26 of the United States Code (the "**Tax Code**") by a Majority Holder (as defined in the NOL Motion) with respect to the beneficial ownership of Dawn Stock (a "**Worthless Stock Deduction**").

120.    The Debtors have certain Tax Attributes, which I understand include, as of the Petition Date, estimated available NOL carryforwards of approximately $75 million, estimated business interest expense carryforwards of approximately $290 million and certain other favorable Tax Attributes (including certain state tax attributes).  I believe the Procedures with respect to transfers in the beneficial ownership (including directly or indirectly) of, and claiming a worthless stock deduction with respect to the beneficial ownership of, the Dawn Stock will allow the Debtors

to monitor the transfer of, and the claiming of a Worthless Stock Deduction by any Majority Holder

with respect to, beneficial ownership of the Dawn Stock and thereby preserve their ability to seek

the necessary relief if it appears that any such transfer(s) or claim(s) may jeopardize the Debtors'

ability to utilize their Tax Attributes.

121.    Accordingly, I believe that the relief requested in the NOL Motion is in the

best interests of the Debtors, their estates, and all other parties in interest and should be granted in

all respects.

**M.      Claims Agent Retention Application**

122.    Pursuant to the *Emergency Ex Parte Application for Entry of an Order*

*Authorizing Employment and Retention of Epiq Corporate Restructuring, LLC as Claims,*

*Noticing, and Solicitation Agent* filed concurrently herewith (the "**Claims Agent Retention**

**Application**"), the Debtors request entry of an order appointing Epiq as the claims, noticing, and

solicitation agent (the  "**Claims and Noticing Agent**") for the Debtors in their chapter 11 cases,

effective as of the Petition Date.

123.    As more fully described in the Claims Agent Retention Application, the

Claims and Noticing Agent will, among other tasks, (i) serve as the noticing agent to mail notices

to creditors, equity security holders, and other parties in interest, (ii) provide computerized claims,

objection, solicitation, and balloting database services, and (iii) provide expertise, consultation,

and assistance in claim and ballot processing and other administrative services with respect to

these chapter 11 cases, pursuant to the provisions of the Engagement Agreement (as defined in the

Claims Agent Retention Application).

124.    The Debtors' counsel has informed me that, pursuant to noticing

requirements, the Debtors will be required to provide notice to thousands of persons and entities

during the pendency of these chapter 11 cases. The appointment of Epiq as the Claims and Noticing Agent will provide the most effective and efficient means of providing that notice, as well as soliciting and tabulating votes on the proposed plan of reorganization, thereby relieving the Debtors of the administrative burden associated with all of these necessary tasks. In addition, by appointing Epiq as the Claims and Noticing Agent in these chapter 11 cases, the distribution of notices will be expedited, and the Office of the Clerk of the Bankruptcy Court will be relieved of the administrative burden of noticing. Accordingly, I believe the Claims Agent Retention Application should be granted in all respects.

**N.  Request for Emergency Consideration**

125.    Pursuant to the *Request for Emergency Consideration of Certain "First Day" Matters* filed concurrently herewith, the Debtors request emergency consideration of the Joint Administration Motion; the Scheduling Motion; the DIP Motion; the Cash Management Motion; the Vendor Motion; the Customer-Related Programs Motion; the Insurance and Surety Bond Motion; the Wages Motion; the Taxes Motion; the Utilities Motion; the Schedules and Statements Motion; the Creditor List Motion; the NOL Motion; and the Claims Agent Retention Application. I believe that, based on the complexity of these chapter 11 cases (as explained to me by the Debtors' counsel) and the Debtors' urgent need to continue operations during these cases, emergency consideration of such motions is warranted.

**V.  Conclusion**

126.    The above describes the Debtors' business and capital structure, the factors that precipitated the commencement of these chapter 11 cases, and the critical need for the Debtors to restructure their financial affairs and operations. The provisions of the Bankruptcy Code will assist the Debtors in achieving their financial reorganization and reestablishing themselves as a

healthy economic enterprise able to effectively compete in their industry for the benefit of their economic stakeholders and employees.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct.

Dated: January 23, 2023
Houston, Texas

Name: John Linker
Title:  Chief Financial Officer, Treasurer,
        and Assistant Secretary

**Certificate of Service**

I hereby certify that on January 23, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and will be served as set forth in the Affidavit of Service to be filed by the Debtors' proposed claims, noticing, and solicitation agent.


　　　　　　　　　　　　　　　　　　　　　*/s/ Gabriel A. Morgan*
　　　　　　　　　　　　　　　　　　　　　Gabriel A. Morgan

**Exhibit A**

Restructuring Support Agreement

**THIS RESTRUCTURING SUPPORT AGREEMENT IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE. ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE.**

## RESTRUCTURING SUPPORT AGREEMENT

This RESTRUCTURING SUPPORT AGREEMENT (as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, this "**Agreement**") dated January 23, 2023, is entered into by and among:

(a)     Dawn Intermediate, LLC ("**Dawn**") and the direct and indirect wholly owned subsidiaries listed on **Exhibit A** to this Agreement (collectively, the "**Company**", and each, a "**Company Party**");

(b)     the undersigned PTL Lenders holding PTL Obligations, in the aggregate, of approximately $798,524,957, comprised of holdings of FLFO Claims and FLSO Claims, each in the aggregate of approximately $157,743,576 and $640,781,381, respectively (collectively, the "**Initial Consenting PTL Lenders**," and together with any PTL Lenders that subsequently become party to this Agreement, solely in their capacity as PTL Lenders, the "**Consenting Creditors**"); and

(c)     Dawn Holdings, Inc., as the sole member, and holder of interests in, Dawn; and funds managed by Advent International Corporation, as holders of Interests in Dawn Holdings, Inc. (together, "**Consenting Equity Holders**", each a "**Consenting Equity Holder**").

The Company and each Consenting Creditor, and any subsequent Person that becomes a party hereto in accordance with the terms hereof are collectively referred to herein as the "**Parties**" and each, individually as a "**Party**." Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan (as defined below). The terms of the Plan are hereby incorporated and included in the terms of this Agreement. In the event of any inconsistencies between the terms of this Agreement and the Plan, the terms of the Plan shall govern.

## RECITALS

WHEREAS, the Parties consent to (as applicable) and have agreed to consummate and support the Restructuring Transactions (as defined herein), on the terms set forth in this Agreement and as specified in the chapter 11 plan of reorganization attached as **Exhibit B** hereto (as may be amended, supplemented, or otherwise modified from time to time in accordance with the terms of this Agreement, the "**Plan**") setting forth the terms and conditions of the Restructuring Transactions; and

WHEREAS, the Company will implement the Restructuring Transactions through commencement by the Company Parties of voluntary cases under chapter 11 of the Bankruptcy Code in the Bankruptcy Court (the cases commenced, the "**Chapter 11 Cases**"); and

WHEREAS, this Agreement, including the Plan, is the product of arm's-length, good faith negotiations among the Parties and each of their respective advisors and sets forth the material terms and conditions of the Restructuring (as defined herein); and

WHEREAS, as of the date hereof, the Initial Consenting PTL Lenders, in the aggregate, hold, own, or control approximately: (i) 81% of the aggregate outstanding principal amount of FLFO Claims, and (ii) 77% of the aggregate outstanding principal amount of the FLSO Claims; and

WHEREAS, the Parties desire to express to each other their mutual support and commitment in respect of the matters set forth in this Agreement, including the Plan.

NOW, THEREFORE, in consideration of the foregoing and the covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, on a several but not joint basis, agree as follows:

1. **Certain Definitions.**

As used in this Agreement, the following terms have the following meanings:

(a)  "**2020 Transaction**" has the meaning set forth in the Plan.

(b)  "**Adversary Complaint**" means the complaint filed by the Debtor and certain of the PTL Lenders commencing an adversary proceeding against certain of the Non-PTL Lenders seeking a declaratory judgment to resolve the claims arising from any pending or future litigation related to the 2020 Transaction.

(c)  "**Adversary Proceeding**" means the proceeding commenced by the Adversary Complaint.

(d)  "**Agreement**" has the meaning set forth in the preamble to this Agreement.

(e)  "**Alternative Restructuring**" means any reorganization, merger, consolidation, tender offer, exchange offer, business combination, joint venture, partnership, sale of all or any material portion of assets, financing (debt or equity), plan proposal, recapitalization, restructuring of the Company Parties, or other transaction of similar effect, other than the Restructuring.

(f)  "**Apollo Action**" means that certain action commenced by AG Centre Street Partnership L.P., AG Credit Solutions Non-ECI Master Fund, L.P., AG Super Fund Master, L.P., AG SF Master (L), L.P., et al. in the Supreme Court of the State of New York, County of New York, Index No. 654181/2022.

(g)  "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended.

(h)  "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Texas.

(i) "**Bar Date**" means a general bar date by which all creditors must file proofs of claim in the Chapter 11 Cases and a governmental bar date by which all governmental units must file proofs of claim in the Chapter 11 Cases.

(j) "**Business Day**" means any day, other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

(k) "**Chapter 11 Cases**" has the meaning set forth in the recitals to this Agreement.

(l) "**Company**" has the meaning set forth in the preamble to this Agreement.

(m) "**Company Parties**" has the meaning set forth in the preamble to this Agreement.

(n) "**Company Termination Event**" has the meaning set forth in Section 7.03.

(o) "**Confirmation Order**" has the meaning set forth in the Plan.

(p) "**Consenting Claims**" means all Claims against any Company Party held by Consenting Creditors from time to time.

(q) "**Consenting Creditors**" has the meaning set forth in the preamble to this Agreement.

(r) "**Consenting Creditor Termination Event**" has the meaning set forth in Section 7.02.

(s) "**Consenting Equity Holder**" has the meaning set forth in the preamble to this Agreement.

(t) "**Consenting Equity Holder Fees and Expenses**" means the reasonable and documented fees, costs and expenses of Ropes & Gray LLP, as counsel to certain of the Consenting Equity Holders, in connection with the negotiation, formulation, preparation, execution, delivery, implementation, consummation and/or enforcement of this Agreement, the Plan, and/or any of the other Definitive Documents, and/or the transactions contemplated hereby or thereby, and/or any amendments, waivers, consents, supplements or other modifications to any of the foregoing, in an amount not to exceed $200,000.

(u) "**Consenting Equity Holder Retainer**" has the meaning set forth in Section 5(f).

(v) "**Consenting Equity Holder Support Period**" means the period commencing on the latest of (a) the Support Effective Date, (b) the date on which Ropes & Gray, LLP receives the Consenting Equity Holder Retainer, and (c) the date on which the Debtors and Requisite Consenting Creditors determine to effectuate the Restructuring pursuant to the Redemption Transaction and ending on the Termination Date.