# DEFENDANTS' EXHIBIT 332
# Part 7 of 11

(c) Notwithstanding anything to the contrary in this Agreement, a Consenting Creditor may Transfer Claims to an entity that is acting in its capacity as a Qualified Marketmaker (as defined below) without the requirement that the Qualified Marketmaker be or become an entity identified in Section 4.03(a) or (b) hereof (a "**Permitted Transferee**"); *provided* that (i) any such Qualified Marketmaker may only subsequently Transfer the right, title or interest to such Claims to a transferee that is or becomes a Permitted Transferee at the time of such Transfer, (ii) such transferor shall be solely responsible for the Qualified Marketmaker's failure to comply with the requirements of this Section 4.03, (iii) subject to 4.02(d), such Qualified Marketmaker must subsequently Transfer the right, title or interest to such Claims within five (5) Business Days of its acquisition to a transferee described in the foregoing clause (i) that is not an affiliate, affiliated fund, or affiliated entity with a common investment advisor of such Qualified Marketmaker or sign a Qualified Marketmaker Joinder (as defined below) on or before the Qualified Marketmaker Joinder Date (as defined below), and (iv) the Transfer documentation between such Consenting Creditor and such Qualified Marketmaker shall contain a covenant providing for the requirement in the preceding clause (i); *provided*, *further*, that if a Consenting Creditor is acting in its capacity as a Qualified Marketmaker, it may Transfer any Claims that it acquires that are not Consenting Claims (*i.e.*, received by such Qualified Marketmaker from a holder that is not a Consenting Creditor) without such Transfer being subject to this Section 4.03.

(d) If at the time of a proposed Transfer of any Claims to a Qualified Marketmaker, such Claims: (i) may be voted or consent solicited with respect to the Restructuring, then the proposed transferor must first vote or consent such Claims in accordance with Section 4.01, or (ii) have not yet been and may yet be voted or consent solicited with respect to the Plan and/or the Restructuring and such Qualified Marketmaker does not Transfer such Claims to a Permitted Transferee before the third Business Day before the expiration of an applicable voting or consent deadline (such date, the "**Qualified Marketmaker Joinder Date**"), such Qualified Marketmaker shall be required to (and the Transfer documentation to the Qualified Marketmaker shall have provided it shall), on the first Business Day immediately after the Qualified Marketmaker Joinder Date, become a Consenting Creditor with respect to such Claims in accordance with the terms hereof (such signed Joinder, the "**Qualified Marketmaker Joinder**"); *provided*, *further*, that the Qualified Marketmaker shall automatically, and without further notice or action, no longer be a Consenting Creditor with respect to such Claim or Interest at such time as such Claim or Interest has been Transferred by such Qualified Marketmaker to a transferee that is a Permitted Transferee in accordance with this Agreement.

For these purposes, "**Qualified Marketmaker**" means an entity that (i) holds itself out to the market as standing ready in the ordinary course of business to purchase from and sell to customers Consenting Claims (including debt securities or other debt), or enter with customers into long and/or short positions in Consenting Claims (including debt securities or other debt), in its capacity as a dealer or market maker in such Consenting Claims (including debt securities or other debt) and (ii) is in fact regularly in the business of making a market in claims, interest, or securities of issuers or borrowers.

Section 4.04 Additional Claims. To the extent any Consenting Creditor (i) acquires additional Claims entitled to vote on the Plan or (ii) Transfers any Claims, then, in each case, each such Consenting Creditor shall promptly notify Weil and the PTL Group Counsel and each such Consenting Creditor hereby agrees that such additional Claims shall be subject to

12

this Agreement, and that, for the duration of the Support Period, it shall vote (or cause to be voted) any such additional Claims entitled to vote on the Plan (to the extent still held by it or on its behalf at the time of such vote), in a manner consistent with Section 4.01(a) hereof.

Section 4.05 Forbearance. The Consenting Creditors agree to forbear during the Support Period from the exercise of (and to direct any agent or trustee to forebear from the exercise of) any and all rights and remedies in contravention of this Agreement, including under the PTL Credit Agreement, any agreement contemplated thereby or executed in connection therewith, as applicable, and under applicable U.S. or foreign law or otherwise, in each case, with respect to any breaches, defaults, events of default or potential defaults by the Company or any other Loan Party (as defined in the PTL Credit Agreement), whether at law, in equity, by agreement or otherwise, which are or become available to them in respect of the PTL Obligations, or any other Claims. Additionally, during the Support Period, the Consenting Creditors agree not to support, join, or otherwise assist any person in litigation against the Company Parties in connection with the Chapter 11 Cases, Restructuring, the PTL Obligations, or any other Claims.

Section 4.06 Additional Disclosures. Upon written request (including by electronic mail) by the Company, Weil, each Party shall promptly identify, in writing, to the Company and Weil the nature and amount of the "disclosable economic interest" (as that term is defined by Rule 2019 of the Federal Rules of Bankruptcy Procedure) held in relation to the Company by all entities represented by the Consenting Creditor in connection with the Company as of the date of such request; *provided* that the Company and Weil agree to not make such written request more than two (2) times in any calendar month.

5. **Agreements of the Company Parties.**

The Company Parties agree during the Support Period to use commercially reasonable efforts to do all things in furtherance of the Restructuring, including:

(a) to (i) act in good faith and use commercially reasonable efforts to support and successfully complete solicitation of the Plan and the Restructuring Transactions, (ii) pursue any necessary federal, state, and local regulatory approvals to enable confirmation of the Plan, including, without limitation, approvals from any regulatory body whose approval or consent is determined by the Company Parties to be necessary to consummate the Restructuring Transactions, and (iii) do all things reasonably necessary and appropriate in furtherance of confirming the Plan and consummating the Restructuring in accordance with and within the time frames contemplated by this Agreement and the Plan;

(b) complete, enter into, and effectuate the agreed Definitive Documents (as applicable);

(c) provide draft copies of all material motions or applications, the Plan, the Disclosure Statement, any proposed amended version of the Plan or Disclosure Statement, all first day pleadings, and all other material pleadings that the Company Parties intend to file with the Bankruptcy Court to the PTL Group Counsel and counsel to the Consenting Equity Holders, if practicable, at least five (5) Business Days before the date of filing of any such pleading or other document (and, if not practicable, as soon as practicable before filing);

13

(d) except as otherwise expressly set forth in this Agreement, operate its businesses and operations in the ordinary course in a manner that is consistent with its past practices and this Agreement, use commercially reasonable efforts to preserve intact the Company Parties' business organization and relationships with third parties (including, without limitation, suppliers, distributors, customers, and governmental and regulatory authorities and employees) consistent with this Agreement and the Restructuring Transactions, and to the extent reasonably practicable, timely consult with and provide prior notice and updates to, the PTL Group Advisors with respect to any material development in connection with any Company Party, including, without limitation, businesses, operations (including, without limitation, material changes to the cash management system, employee benefit programs, and insurance programs), material expenditures (including, without limitation, any payments on account of pension withdrawal liabilities or increased funding obligations of non-Debtor affiliates to the extent not provided for in the Approved Budget (as defined in the DIP Orders)), and relationships with material third parties (including, without limitation, co-owners, vendors, and customers);

(e) promptly inform, subject to its confidentiality obligations or applicable law, the PTL Group Advisors in writing (email sent by Weil being sufficient) as soon as reasonably practicable after becoming aware (and in any event within three (3) Business Days after becoming so aware) of the threat or commencement of any material lawsuit, investigation, hearing or enforcement action from or by any person or entity in respect of any Company Party or any subsidiary or affiliate of a Company Party;

(f) from the Support Effective Date through and including the Plan Effective Date, promptly pay (but in any event, within five (5) Business Days) in full and in cash all Restructuring Fees and Expenses when properly incurred and invoiced in accordance with the relevant engagement letters, fee arrangements, and/or DIP Orders, and continue to pay such amounts as they come due, and otherwise in accordance with the applicable engagement letters, and/or fee arrangements of the PTL Group Advisors and/or the DIP Orders (and not terminate such engagement letters and/or fee arrangements or seek to reject them in the Chapter 11 Cases), and unless the Bankruptcy Court orders otherwise, without further order of, or application to, the Bankruptcy Court by such professional or advisor or the Company Parties; *provided* that (x) all accrued and unpaid Restructuring Fees and Expenses as of the Plan Effective Date including any reasonable estimate of such Restructuring Fees and Expenses, shall be paid by the Company on the Plan Effective Date; and (y) in the event a Termination Date (as defined herein) occurs with respect to the Company Parties, the Company Parties shall remain obligated to pay all Restructuring Fees and Expenses accrued and unpaid as of and up to such Termination Date; *provided, further*, that on or before the Petition Date, the Debtors shall pay to Ropes & Gray LLP, as counsel to certain of the Consenting Equity Holders, $200,000 to hold as a retainer against which all Consenting Equity Holder Fees and Expenses shall be applied (the "**Consenting Equity Holder Retainer**"); and

(g) not to directly or indirectly (i) take any action that would be inconsistent with this Agreement, the Plan, or interfere with the Restructuring (including encouraging another person to undertake any action prohibited by this Agreement), (ii) propose, solicit, file, support, seek, pursue, or vote for any Alternative Restructuring; *provided* that the foregoing does not affect the Company Parties' right to exercise the Fiduciary Out, or (iii) otherwise take any action that would interfere with, delay, or postpone the consummation of the Restructuring.

14

6.  **Agreements of the Consenting Equity Holders**

Section 6.01   <u>Support</u>.  Each Consenting Equity Holder covenants and agrees, severally and not jointly, during the Consenting Equity Holder Support Period, that it shall use commercially reasonable efforts to:

(a) (i) act in good faith and use commercially reasonable efforts to support and successfully complete solicitation of the Plan and the Restructuring Transactions, (ii) pursue any necessary federal, state, and local regulatory approvals to enable confirmation of the Plan, including, without limitation, approvals from any regulatory body whose approval or consent is determined by the Company Parties to be necessary to consummate the Restructuring Transactions, and (iii) do all things reasonably necessary and appropriate in furtherance of confirming the Plan and consummating the Restructuring in accordance with and within the time frames contemplated by this Agreement and the Plan;

(b) distribute the Cash payment described in Section 3.01(b) pursuant to the Restructuring Transactions Exhibit in a manner that effectuates the Redemption Transaction;

(c) complete, enter into, and effectuate the agreed Definitive Documents (as applicable) within the timeframes contemplated herein;

(d) grant and, if applicable, not opt-out of the release of third-party claims pursuant to the Plan and Confirmation Order;

(e) refrain from, directly or indirectly, taking any action that would be inconsistent with this Agreement or interfere with the Restructuring (including encouraging another person to undertake any action prohibited by this Agreement);

(f) promptly inform, subject to its confidentiality obligations or applicable law, the PTL Group Advisors in writing (email being sufficient) as soon as reasonably practicable after becoming aware (and in any event within three (3) Business Days after becoming so aware) of the threat or commencement of any material lawsuit, investigation, hearing or enforcement action from or by any person or entity in respect of any Company Party or any subsidiary or affiliate of a Company Party;

(g) not cause any Company Party, directly or indirectly, except as otherwise expressly set forth in this Agreement, to operate its businesses and operations in the ordinary course in a manner that is consistent with its past practices and this Agreement; or

(h) not directly or indirectly (i) object to, delay, impede, or take any other action to interfere with the Chapter 11 Cases, DIP Financing, or acceptance, confirmation, or implementation of the Plan or the Restructuring Transactions, (ii) propose, support, vote for, encourage, seek, solicit, pursue, initiate, assist, join in, participate in the formulation of or enter into negotiations or discussions with any entity regarding, any Alternative Restructuring, including, for the avoidance of doubt, making or supporting any filings with the Bankruptcy Court or any regulatory agency, or making or supporting any press release, press report or comparable public statement, or filing with respect to any Alternative Restructuring, or (iii) otherwise take any action that would interfere with, delay or postpone the consummation of the Restructuring.

15

7.  **Termination of Agreement.**

Section 7.01  <u>Generally</u>.  This Agreement will automatically terminate upon (i) the Plan Effective Date (as to all Parties) or (ii) three (3) Business Days following the receipt of written notice, delivered in accordance with <u>Section 21</u> hereof, from (a) the Requisite Consenting Creditors (which for the avoidance of doubt, may be delivered by e-mail by PTL Group Counsel on behalf of any or all entities constituting the Consenting Creditors) to the other Parties at any time after the occurrence of any Consenting Creditor Termination Event (as defined below) or (b) the Company Parties (which for the avoidance of doubt, may be delivered by e-mail by Weil on behalf of any or all entities constituting the Company Parties) to the other Parties at any time after the occurrence of any Company Termination Event (as defined below).  No Party may terminate this Agreement based on a Consenting Creditor Termination Event or Company Termination Event, as applicable, caused by such Party's failure to perform or comply in all material respects with the terms and conditions of this Agreement (unless such failure to perform or comply arises as a result of another Party's prior failure to perform or comply in all material respects with the terms and conditions of this Agreement).

Each of the dates and time periods in this <u>Section 7</u> may be extended by mutual agreement (which may be evidenced by e-mail confirmation, including from respective counsel) among the Company Parties and the Requisite Consenting Creditors.

Section 7.02  A "**Consenting Creditor Termination Event**" will mean any of the following:

(a)  failure to meet a Milestone;

(b)  the Company withdraws or modifies the Plan or Disclosure Statement or files any motion or pleading with the Bankruptcy Court that is in any material respect inconsistent with this Agreement or the Plan and such withdrawal, modification, motion, or pleading has not been revoked before the earlier of (i) two (2) Business Days after the Company Parties receives written notice from the Requisite Consenting Creditors that such withdrawal, modification, motion, or pleading is materially inconsistent with this Agreement or the Plan and (ii) entry of an order of the Bankruptcy Court approving such withdrawal, modification, motion, or pleading;

(c)  the material breach by the Company of any of the representations, warranties, covenants, or other obligations of the Company set forth in this Agreement, which breach has not been cured (if curable) within three (3) Business Days of written notice from the Requisite Consenting Creditors;

(d)  (i) entry of a DIP Order that is not reasonably acceptable to the Requisite Consenting Creditors (except as a result of any terms or conditions imposed by the Bankruptcy Court), (ii) the filing of a motion or application by any Company Party seeking an order (without the prior written consent of the Requisite Consenting Creditors), vacating or modifying the DIP Orders, or (iii) the termination of the DIP Credit Agreement and/or the DIP Financing;

(e)  a Company Party files or directly or indirectly supports another party in filing any motion, application, or adversary proceeding challenging the validity, enforceability, perfection, or priority of, or seeking avoidance or subordination of, any Consenting Claims, the

16

PTL Credit Agreement or any of the PTL Loan Documents, or the prepetition liens securing the Consenting Claims;

(f) any Company Party loses the exclusive right to file a chapter 11 plan or to solicit acceptances thereof pursuant to section 1121 of the Bankruptcy Code;

(g) a Company Party fails to maintain their good standing under the laws of the state or other jurisdiction in which they are incorporated or organized, except to the extent that any failure to maintain such Company Party's good standing arises solely from the filing of the Chapter 11 Cases;

(h) the Company enters into any settlement in connection with or related to the Adversary Proceeding, the Apollo Action, or the LCM Action without the consent of the Requisite Consenting Creditors;

(i) the Bankruptcy Court enters an order denying confirmation of the Plan or disallowing any material provision thereof (without the consent of the Requisite Consenting Creditors) and such order remains in effect for seven (7) calendar days after entry of such order

(j) the Company proposes or supports an Alternative Restructuring pursuant to a pleading filed in the Bankruptcy Court or publicly announces its intention to pursue an Alternative Restructuring, which proposal, support, or announcement has not been withdrawn after three (3) Business Days' written notice from the Requisite Consenting Creditors;

(k) the issuance by any governmental authority, including any regulatory authority or court of competent jurisdiction, of any final ruling, judgment or non-appealable order enjoining the consummation of or rendering illegal the Restructuring, and such ruling, judgment or order has not been reversed or vacated by the later of (i) the Confirmation Date and (ii) fifteen (15) Business Days after such issuance the Company Parties provides written notice to the other Parties that such final ruling, judgment, or non-appealable order is materially inconsistent with this Agreement;

(l) the Bankruptcy Court or a court of competent jurisdiction enters an order (i) converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, (ii) dismissing one or more of the Chapter 11 Cases, (iii) rejecting this Agreement, or (iv) appointing a trustee for the Chapter 11 Cases, which order in each case has not been reversed, stayed, or vacated by the later of (a) the Confirmation Date and (b) three (3) Business Days after the Requisite Consenting Creditors provide written notice to the other Parties that such order is materially inconsistent with this Agreement; *provided* that the foregoing does not affect the Company Parties' right to exercise the Fiduciary Out;

(m) the Bankruptcy Court or a court of competent jurisdiction enters an order, judgment, ruling, finding or other determination denying, dismissing, or otherwise adverse to the relief sought in the Adversary Proceeding or adverse to the defendants in the Apollo Action or the LCM Action;

17

(n) the Exit ABL Commitment Letter terminates, expires, or is no longer in full force and effect for any reason, in each case, absent the consent or waiver of the Requisite Consenting Creditors; or

(o) failure of the Company Parties to pay the Restructuring Fees and Expenses, as and when required.

Section 7.03 A "**Company Termination Event**" will mean any of the following:

(a) the Consenting Creditors entitled to vote on the Plan will have failed to timely vote their Claims in favor of the Plan or at any time change their votes to constitute rejections to the Plan, in either case in a manner inconsistent with this Agreement; *provided* that this termination event will not apply if sufficient Consenting Creditors have timely voted (and not withdrawn) their Claims to accept the Plan in amounts necessary for each applicable impaired class under the Plan to "accept" the Plan consistent with section 1126 of the Bankruptcy Code;

(b) if, as of the time of entry of the Interim DIP Order, the Support Effective Date has not occurred;

(c) if the Requisite Consenting Creditors give notice of termination of this Agreement pursuant to this Section 7;

(d) one or more of the Consenting Creditors file or support any Alternative Restructuring, modification, motion, or pleading with the Bankruptcy Court that is materially inconsistent with this Agreement or the Plan and such Alternative Restructuring, modification, motion, or pleading has not been revoked before the earlier of (i) three (3) Business Days after the filing or supporting party receives written notice from the Company or Weil that such Alternative Restructuring, modification, motion, or pleading is inconsistent with this Agreement or the Plan, and (ii) entry of an order of the Bankruptcy Court approving such Alternative Restructuring, modification, motion, or pleading;

(e) the material breach by one or more of the Consenting Creditors of any of the representations, warranties, covenants, or other obligations of the Company set forth in this Agreement, which breach would result in non-breaching Consenting Creditors holding less than (x) 66.67% of the aggregate outstanding principal amount, or (y) 50% of holders, of PTL Obligations and has not been cured (if curable) within three (3) Business Days of written notice from the Company Parties;

(f) the board of directors, board of managers, or such similar governing body of any Company Party determines in good faith after consultation with outside counsel that continued performance under this Agreement would be inconsistent with the exercise of its fiduciary duties under any applicable law (the "**Fiduciary Out**"); or

(g) the issuance by any governmental authority, including any regulatory authority or court of competent jurisdiction, of any ruling, judgment or order enjoining the consummation of or rendering illegal the Restructuring, and such ruling, judgment or order has not been reversed or vacated by the later of (i) the Confirmation Date and (ii) fifteen (15) Business

18