# DEFENDANTS' EXHIBIT 332
# Part 8 of 11

Days after the Company provides written notice to the other Parties that such ruling, judgment, or order is materially inconsistent with this Agreement.

Section 7.04 Mutual Termination. This Agreement may be terminated by mutual written agreement of the Company and the Requisite Consenting Creditors. The Company will deliver written notice of any such termination to all Parties in accordance with Section 21 hereof.

Section 7.05 Effect of Termination. Upon the termination of this Agreement in accordance this Section 7, this Agreement will be void and of no further force or effect and each Party will, except as provided in this Section 7.05 and in Section 15, be immediately released from its liabilities, obligations, commitments, undertakings and agreements under or related to this Agreement and will have all the rights and remedies that it would have had and will be entitled to take all actions, whether with respect to the Restructuring or otherwise, that it would have been entitled to take had it not entered into this Agreement, including all rights and remedies available to it under applicable law, the PTL Obligations, and any ancillary documents or agreements thereto; *provided* that in no event will any such termination relieve a Party from liability for its breach or non-performance of its obligations hereunder before the date of such termination.

Section 7.06 No Waiver. If the Restructuring is not consummated, nothing herein shall be construed as a waiver by any Party of any or all of such Party's rights, and the Parties expressly reserve any and all of their respective rights as if the Parties had not entered this Agreement. Pursuant to Federal Rule of Evidence 408 and any other applicable rules of evidence, this Agreement and all negotiations relating hereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce the Agreement's terms.

8. **Additional Documents.**

Each Party hereby covenants and agrees to cooperate with each other in good faith in connection with, and will exercise commercially reasonable efforts with respect to, the negotiation, drafting and execution and delivery of the Definitive Documents. In the case of any conflict or inconsistency between the Plan and any form of or term sheet for a Definitive Document attached as an exhibit hereto, the terms of the Plan shall control.

9. **Representations and Warranties.**

Section 9.01 Each Party, severally (and not jointly), represents and warrants to the other Parties that the following statements are true, correct and complete as of the date hereof (or such later date that such Party first becomes bound by this Agreement) and solely with respect to the Company, subject to any limitations or approvals arising from or required by the commencement of the Chapter 11 Cases:

(a) such Party is validly existing and in good standing under the laws of its jurisdiction of incorporation or organization, and has all requisite corporate, partnership, limited liability company or similar authority to enter into this Agreement and carry out the transactions contemplated hereby and perform its obligations contemplated hereunder; and the execution and delivery of this Agreement and the performance of such Party's obligations hereunder have been duly authorized by all necessary corporate, limited liability company, partnership or other similar action on its part;

19

(b) the execution, delivery and performance by such Party of this Agreement does not and will not (i) violate any provision of law, rule or regulation applicable to it or its charter or bylaws (or other similar governing documents) or (ii) in the case of the Consenting Creditors, conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any material contractual obligation to which it is a party;

(c) the execution, delivery and performance by such Party of this Agreement does not and will not require any registration or filing with, consent or approval of, or notice to, or other action to, with or by, any federal, state or governmental authority or regulatory body, except such filings that may be necessary in connection with the Chapter 11 Cases and such filings as may be necessary or required for disclosure any applicable regulatory body whose approval or consent is determined by the Company Parties to be necessary to consummate the Restructuring Transactions; and

(d) this Agreement is the legally valid and binding obligation of such Party, enforceable in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws relating to or limiting creditors' rights generally or by equitable principles relating to enforceability or a ruling of a court.

Section 9.02 Each Consenting Creditor severally (and not jointly), represents and warrants to the other Parties that as of the date hereof (or such later date that such Party first becomes bound by this Agreement), such Consenting Creditor:

(a) is not a Qualified Marketmaker with respect to the PTL Obligations set forth below its name on the signature page to this Agreement;

(b) does not own or control any other "claims", "equity security" or "security" in respect of the Company Parties (including as such terms are defined in section 101 of the Bankruptcy Code) other than as set forth below its name on the signature page to this Agreement;

(c) is not a party to any other agreement, arrangement, or understanding with respect to the subject matter hereof with another Consenting Creditor; and

(d) (i) is the beneficial owner (including with respect to any PTL Obligations subject to an agreed assignment where such assignment is not reflected in the Register (as defined in the PTL Credit Agreement)) of the PTL Obligations set forth below its name on the applicable signature page of this Agreement or (ii) has, with respect to such beneficial ownership of such PTL Obligations, (A) sole investment or voting discretion with respect to such PTL Obligations, (B) full power and authority to vote on and consent to matters concerning such PTL Obligations, and (C) full power and authority to bind or act on the behalf of, such beneficial owners.

10. **Disclosure; Publicity.**

Section 10.01 The Company shall deliver drafts to the PTL Group Counsel of any press releases that constitute disclosure of the existence of the existence or terms of this Agreement or any amendment to the terms of this Agreement to the general public (each, a "**Public Disclosure**") at least two (2) Business Days before making any such disclosure (if practicable, and if two (2) Business Days before is not practicable, then as soon as practicable), and PTL Group

20

Counsel shall be authorized to share such Public Disclosure with its clients. Any such disclosure shall be reasonably acceptable to the Requisite Consenting Creditors. Except as required by law or otherwise permitted under the terms of any other agreement between the Company and any Consenting Creditor, no Party or its advisors will disclose to any person (including, for the avoidance of doubt, any other Consenting Creditor), other than to Weil and Evercore, the principal amount or percentage of any PTL Obligations, or any other securities of the Company Parties held by any Consenting Creditor without such Consenting Creditor's prior written consent; *provided* that (i) if such disclosure is required by law, subpoena, or other legal process or regulation, to the extent permitted by applicable law, the disclosing Party will afford the relevant Consenting Creditor a reasonable opportunity to review and comment in advance of such disclosure and will take all reasonable measures to limit such disclosure and (ii) the foregoing will not prohibit the disclosure of the aggregate percentage or aggregate principal amount of PTL Obligations held by all the Consenting Creditors collectively. Notwithstanding the provisions in this Section 10, if consented to in writing by a Consenting Creditor, any Party hereto may disclose such Consenting Creditor's individual holdings.

11. **Amendments and Waivers.**

Except as otherwise expressly set forth herein, the provisions of this Agreement, including the exhibits hereto, may not be waived, modified, amended or supplemented except in a writing signed by (a) the Company Parties, (b) the Requisite Consenting Creditors, (c) any individual Consenting Creditor disproportionally and adversely affected by such waiver, modification, amendment, or supplement, and (d) to the extent any such waiver, modification, amendment, or supplement, including to any exhibit hereto, would materially and adversely affect any Consenting Equity Holder, each such Consenting Equity Holder (it being understood that any modification or amendment to (i) the treatment of any such Consenting Equity Holder or (ii) the release in favor of any such Consenting Equity Holder, in each case, under the Plan shall be deemed to materially and adversely affect such Consenting Equity Holder).

The definition of Requisite Consenting Creditors in this Agreement shall not be waived, modified, amended, or supplemented, except in a writing signed by the Company Parties and all non-defaulting Consenting Creditors.

12. **Effectiveness.**

This Agreement will become effective and binding (i) as to the Company and Initial Consenting PTL Lenders, on the Support Effective Date and after all outstanding Restructuring Fees and Expenses properly incurred and invoiced in accordance with the relevant engagement letters and fee arrangements shall be paid in full and in cash by the Company; (ii) as to any Consenting Creditor that enters into a Joinder Agreement on or following the Support Effective Date, upon delivery to the Company of such validly completed Joinder Agreement; and (iii) as to any Permitted Transferee, upon delivery of a validly completed Joinder Agreement; *provided* that signature pages executed by Consenting Creditors will be delivered to (a) the Company, other Consenting Creditors, and the PTL Group Counsel in a redacted form that removes such Consenting Creditor's holdings of the PTL Obligations and (b) Weil and Evercore in an unredacted form (to be held by Weil and Evercore on a professionals' eyes only basis).

21

13. **GOVERNING LAW; JURISDICTION; WAIVER OF JURY TRIAL.**

THIS AGREEMENT WILL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO ANY CONFLICTS OF LAW PROVISIONS WHICH WOULD REQUIRE THE APPLICATION OF THE LAW OF ANY OTHER JURISDICTION. BY ITS EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH OF THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY AGREES THAT ANY LEGAL ACTION, SUIT OR PROCEEDING AGAINST IT WITH RESPECT TO ANY MATTER UNDER OR ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT, OR FOR RECOGNITION OR ENFORCEMENT OF ANY JUDGMENT RENDERED IN ANY SUCH ACTION, SUIT OR PROCEEDING, MAY BE BROUGHT IN ANY FEDERAL OR STATE COURT IN DELAWARE, AND BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH OF THE PARTIES HEREBY IRREVOCABLY ACCEPTS AND SUBMITS ITSELF TO THE NONEXCLUSIVE JURISDICTION OF EACH SUCH COURT, GENERALLY AND UNCONDITIONALLY, WITH RESPECT TO ANY SUCH ACTION, SUIT OR PROCEEDING. EACH PARTY HERETO IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE RESTRUCTURING CONTEMPLATED HEREBY. NOTWITHSTANDING THE FOREGOING, DURING THE PENDENCY OF THE CHAPTER 11 CASES, ALL PROCEEDINGS CONTEMPLATED BY THIS SECTION 13 SHALL BE BROUGHT IN THE BANKRUPTCY COURT.

14. **Remedies/Specific Performance.**

All remedies that are available at law or in equity, including specific performance and injunctive or other equitable relief, to any Party for a breach of this Agreement by another Party shall be available to the non-breaching Party (and for the avoidance of doubt, it is agreed by the other Parties that money damages would not be a sufficient remedy for any breach of this Agreement by any Party and each non-breaching Party will be entitled to seek specific performance and injunctive or other equitable relief as a remedy of any such breach); *provided* that in connection with any remedy for specific performance, injunctive or other equitable relief asserted in connection with this Agreement, each Party agrees to waive the requirement for the securing or posting of a bond in connection with any remedy and to waive the necessity of proving the inadequacy of money damages. All rights, powers, and remedies provided under this Agreement or otherwise available at law or in equity will be cumulative and not alternative, and the exercise of any remedy, power, or remedy by any Party will not preclude the simultaneous or later exercise of any other such right, power, or remedy by such Party or any other Person.

15. **Survival.**

Notwithstanding the termination of this Agreement pursuant to Section 7 hereof, Section 7.06, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24 and 25 (and, to the extent applicable to the interpretation of such surviving sections, Section 1) will survive such termination and will continue in full force and effect for the benefit of the Parties in accordance with the terms hereof.

22

16. **Headings.**

The headings of the sections, paragraphs and subsections of this Agreement are inserted for convenience only and will not affect the interpretation hereof or, for any purpose, be deemed a part of this Agreement.

17. **Successors and Assigns; Severability; Several Obligations.**

This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors and permitted assigns. The rights or obligations of any Party under this Agreement may not be assigned, delegated, or transferred to any other Person except as expressly permitted herein. If any provision of this Agreement, or the application of any such provision to any person or circumstance, will be held invalid or unenforceable in whole or in part, such invalidity or unenforceability will attach only to such provision or part thereof and the remaining part of such provision hereof and this Agreement will continue in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any Party. Upon any such determination of invalidity, the Parties will negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner in order that the transactions contemplated hereby are consummated as originally contemplated to the greatest extent possible. The agreements, representations and obligations of the Parties are, in all respects, ratable and several and neither joint nor joint and several.

18. **No Third-Party Beneficiaries.**

Unless expressly stated herein, this Agreement will be solely for the benefit of the Parties and no other person or entity will be a third-party beneficiary hereof.

19. **Prior Negotiations; Entire Agreement.**

This Agreement, including the exhibits and schedules hereto, constitutes the entire agreement of the Parties, and supersedes all other prior negotiations, with respect to the subject matter hereof, except that the Parties acknowledge that any confidentiality agreements or agreements with respect to shared or common interest heretofore executed between the Company and any Consenting Creditor (or the PTL Group Advisors) will continue in full force and effect in accordance with the terms thereof.

20. **Counterparts.**

This Agreement may be executed in several counterparts, each of which will be deemed to be an original, and all of which together will be deemed to be one and the same agreement. Execution copies of this Agreement may be delivered by electronic mail, which will be deemed to be an original for the purposes of this Section 20.

23

21. **Notices.**

All notices hereunder will be deemed given if in writing and delivered, if contemporaneously sent by electronic mail, courier or by registered or certified mail (return receipt requested) to the following addresses and electronic mail addresses:

(1) If to the Company Parties, to:

Dawn Intermediate, LLC
2451 Industry Avenue
Doraville, GA 30360
Attention: Kristen McGuffey, Chief Legal Officer and Secretary
(SSBLegalDept@sertasimmons.com)

with a copy (which will not constitute notice) to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attention: Ray C. Schrock, P.C. (Ray.Schrock@weil.com)
Alexander Welch, Esq. (Alexander.Welch@weil.com)

and

700 Louisiana Street, Suite 1700
Houston, Texas 77002
Attention: Gabriel A. Morgan, Esq. (Gabriel.Morgan@weil.com)
Stephanie N. Morrison, Esq. (Stephanie.Morrison@weil.com)

(2) If to the Consenting Creditors, to the addresses or electronic mail addresses set forth below the Consenting Creditor's signature, with a copy (which will not constitute notice) to:

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
Attention: Scott J. Greenberg, Esq. (sgreenberg@gibsondunn.com)
Michael J. Cohen, Esq. (mcohen@gibsondunn.com)
Jason Zachary Goldstein, Esq. (jgoldstein@gibsondunn.com)

(3) If to the Consenting Equity Holders, to:

Advent International Corporation
Prudential Tower
800 Boylston Street, Suite 3300
Boston, MA 02199
Attention: Jefferson Case and Amanda McGrady Morrison

24

    Facsimile:  (617) 951-0566]

with a copy (which will not constitute notice) to:

Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036
Attention:  Gregg M. Galardi (Gregg.Galardi@ropesgray.com)
       Jeramy D. Webb (Jeramy.Webb@ropesgray.com)
       Amanda C. Glaubach (Amanda.Glaubach@ropesgray.com)

  Any notice given by delivery, mail, or courier will be effective when received. Any notice given by electronic mail will be effective upon confirmation of transmission.

22. **Reservation of Rights; No Admission.**

  Except as expressly provided in this Agreement, nothing herein is intended to, or does, in any manner waive, limit, impair, or restrict the ability of each of the Parties (i) to protect and preserve its rights, remedies and interests, including its claims against any of the other Parties (or their respective affiliates or subsidiaries), (ii) purchase, sell, or enter into any transactions in connection with the PTL Obligations, (iii) enforce any right under the PTL Obligations, subject to the terms hereof, (iv) consult with other Consenting Creditors, other holders of PTL Obligations, or any other Party regarding the Restructuring (and not any other Alternative Restructuring), or (v) enforce any right, remedy, condition, consent or approval requirement under this Agreement or in any of the Definitive Documents. Without limiting the foregoing, if this Agreement is terminated in accordance with its terms for any reason (other than consummation of the Restructuring), the Parties each fully and expressly reserve any and all of their respective rights, remedies, claims, defenses and interests, subject to Sections 7, 13, and 14 in the case of any claim for breach of this Agreement arising before termination. Each of the Parties denies any and all wrongdoing or liability of any kind and does not concede any infirmity in the claims or defenses which it has asserted or could assert.

23. **Relationship Among Parties.**

  It is understood and agreed that no Consenting Creditor has any duty of trust or confidence in any kind or form with any other Consenting Creditor, and, except as expressly provided in this Agreement, there are no commitments between them as a result of this Agreement. In this regard, it is understood and agreed that any Consenting Creditor may acquire PTL Obligations, or other debt or equity securities of the Company Parties without the consent of the Company Parties or any other Consenting Creditor, subject to applicable securities laws and the terms of this Agreement; *provided* that no Consenting Creditor will have any responsibility for any such acquisition to any other entity by virtue of this Agreement.

24. **No Solicitation; Representation by Counsel; Adequate Information.**

  (a)  This Agreement is not and shall not be deemed to be an offer with respect to any securities or solicitation of votes for the acceptance of a plan of reorganization for purposes of sections 1125 and 1126 of the Bankruptcy Code or otherwise.

25

(b) Each Party acknowledges that it has had an opportunity to receive information from the Company and that it has been represented by counsel in connection with this Agreement and the transactions contemplated hereby. Accordingly, any rule of law or any legal decision that would provide any Party with a defense to the enforcement of the terms of this Agreement against such Party based upon lack of legal counsel will have no application and is expressly waived.

(c) Each Consenting Creditor acknowledges, agrees, and represents to the other Parties that it (i) is an "accredited investor" as such term is defined in Rule 501(a) of the Securities Act, (ii) is a "qualified institutional buyer" as such term is defined in Rule 144A of the Securities Act, (iii) understands that (a) any securities to be acquired by it pursuant to the Restructuring have not been registered under the Securities Act and (b) that such securities are being offered and sold pursuant to an exemption from registration contained in the Securities Act, based in part upon such Consenting Creditor's representations contained in this Agreement and cannot be sold unless subsequently registered under the Securities Act or an exemption from registration is available, and (iv) has such knowledge and experience in financial and business matters that such Consenting Creditor is capable of evaluating the merits and risks of the securities to be acquired by it pursuant to the Restructuring and understands and is able to bear any economic risks with such investment.

25. **Fiduciary Duties.**

Nothing in this Agreement will require the Company Parties or any directors, officers, managers, or members of the Company Parties, each in its capacity as a director, officer, manager, or member of the Company Parties, to take any action, including the Fiduciary Out, or to refrain from taking any action, to the extent inconsistent with its or their fiduciary duties under applicable law (as determined by them in good faith after consultation with outside legal counsel).

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed and delivered by their respective duly authorized officers, solely in their respective capacity as officers of the undersigned and not in any other capacity, as of the date first set forth above.

26

[SIGNATURE PAGES OMITTED]

## Exhibit A

## Company Parties

1. Dawn Intermediate, LLC
2. Serta Simmons Bedding, LLC
3. Serta International Holdco, LLC
4. National Bedding Company L.L.C.
5. SSB Manufacturing Company
6. The Simmons Manufacturing Co., LLC
7. Dreamwell, Ltd.
8. SSB Hospitality, LLC
9. SSB Logistics, LLC
10. Simmons Bedding Company, LLC
11. Tuft & Needle, LLC
12. Tomorrow Sleep LLC
13. SSB Retail, LLC
14. World of Sleep Outlets, LLC

**Exhibit B**

**Plan**

[OMITTED]

# Exhibit C

**Disclosure Statement**

Case 23-90020 Document 236-23 Filed in TXSB on 05/14/23 Page 14 of 16

[OMITTED]

**Exhibit D**

**Joinder**