# DEFENDANTS' EXHIBIT 333
# Part 8 of 27

(iv) it may be cost prohibitive to enforce or defend their trademarks, service marks, patents, and other rights; (v) pending applications regarding trademarks, service marks and patents may not result in marks being registered or patents being issued; and (vi) the Reorganized Debtors may be unable to protect their technological advantages when their patents expire.

### 4. Post-Effective Date Indebtedness

Following the Effective Date, the Reorganized Debtors will have outstanding secured indebtedness of approximately $315 million (including original issue discount, if any) under the New Term Loans. The Reorganized Debtors' ability to service their debt obligations will depend, among other things, on their future operating performance, which depends partly on economic, financial, competitive, and other factors beyond the Reorganized Debtors' control. The Reorganized Debtors may not be able to generate sufficient cash from operations to meet their debt service obligations as well as fund necessary capital expenditures and investments in sales and marketing. In addition, if the Reorganized Debtors need to refinance their debt, obtain additional financing, or sell assets or equity, they may not be able to do so on commercially reasonable terms, if at all.

## C. Factors Relating to Securities to Be Issued Under the Plan, Generally

### 1. No Current Public Market for Securities

There is currently no market for the New Common Interests, and there can be no assurance as to the development or liquidity of any market for any such securities.

The Reorganized Debtors are under no obligation to list any of the above securities on any national securities exchange. Therefore, there can be no assurance that any of the foregoing securities will be tradable or liquid at any time after the Effective Date. If a trading market does not develop or is not maintained, holders of the foregoing securities may experience difficulty in reselling such securities or may be unable to sell them at all. Even if such a market were to exist, such securities could trade at prices higher or lower than the estimated value set forth in this Disclosure Statement depending upon many factors including, without limitation, prevailing interest rates, markets for similar securities, industry conditions, and the performance of, and investor expectations for, the Reorganized Debtors. In addition, holders of New Common Interests may be subject to certain restrictions contained in a limited liability company agreement or other similar equityholder agreement (as applicable) which may include restrictions on the ability to transfer, as well as other limitations associated with, the New Common Interests. Accordingly, holders of these securities may bear certain risks associated with holding securities for an indefinite period of time.

### 2. Potential Dilution

The ownership percentage represented by the New Common Interests distributed on the Effective Date under the Plan will be subject to dilution from the equity issued in connection with the Management Incentive Plan, any other equity interests that may be issued post-emergence, and the conversion of any options, warrants, convertible securities, exercisable securities, or other securities that may be issued post-emergence.

In the future, similar to all companies, additional equity financings or other equity issuances by any of the Reorganized Debtors could adversely affect the value of the New Common Interests issuable upon such conversion. The amount and dilutive effect of any of the foregoing could be material.

D. **Risks Related to an Investment in the New Common Interests**

1. **Significant Holders**

Holders of FLSO Claims are expected to acquire a significant ownership interest in the New Common Interests. If such holders were to act as a group, such holders would be in a position to control the outcome of all actions requiring equityholder approval, including the election of a new board of managers, without the approval of other equityholders. This concentration of ownership could also facilitate or hinder a negotiated change of control of the Reorganized Debtors and, consequently, have an impact upon the value of the New Common Interests.

2. **Equity Interests Subordinated to the Reorganized Debtors' Indebtedness**

In any subsequent liquidation, dissolution, or winding up of the Reorganized Debtors, the New Common Interests would rank below all debt claims against the Reorganized Debtors. As a result, holders of the New Common Interests will not be entitled to receive any payment or other distribution of assets upon the liquidation, dissolution, or winding up of the Reorganized Debtors until after all the Reorganized Debtors' obligations to their debt holders have been satisfied, including obligations under the New Term Loans and the Exit ABL Facility.

3. **Implied Valuation of New Common Interests Not Intended to Represent the Trading Value of the New Common Interests**

The valuation of the Reorganized Debtors is not intended to represent the trading value of New Common Interests in public or private markets and is subject to additional uncertainties and contingencies, all of which are difficult to predict. Actual market prices of such securities at issuance will depend upon, among other things: (i) prevailing interest rates; (ii) conditions in the financial markets; (iii) the anticipated initial securities holdings of prepetition creditors, some of whom may prefer to liquidate their investment rather than hold it on a long-term basis; and (iv) other factors that generally influence the prices of securities. The actual market price of the New Common Interests is likely to be volatile. Many factors, including factors unrelated to the Reorganized Debtors' actual operating performance and other factors not possible to predict, could cause the market price of the New Common Interests to rise and fall. Accordingly, the implied value, stated herein and in the Plan, of the securities to be issued does not necessarily reflect, and should not be construed as reflecting, values that will be attained for the New Common Interests in the public or private markets.

4. **No Intention to Pay Dividends**

The Reorganized Parent does not anticipate paying any dividends on the New Common Interests as it expects to retain any future cash flows for debt reduction and to support its operations. As a result, the success of an investment in the New Common Interests will depend entirely upon any future appreciation in the value of the New Common Interests. There is, however, no guarantee that the New Common Interests will appreciate in value or even maintain their initial value.

E. **Additional Factors**

1. **Debtors Could Withdraw Plan**

Subject to the terms of, and without prejudice to, the rights of any party to the Restructuring Support Agreement, the Plan may be revoked or withdrawn prior to the Confirmation Date by the Debtors.

### 2. Debtors Have No Duty to Update

The statements contained in this Disclosure Statement are made by the Debtors as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since that date. The Debtors have no duty to update this Disclosure Statement unless otherwise ordered to do so by the Bankruptcy Court.

### 3. No Representations Outside this Disclosure Statement Authorized

No representations concerning or related to the Debtors, the Chapter 11 Cases, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement.

Any representations or inducements made to secure your vote for acceptance or rejection of the Plan that are other than those contained in, or included with, this Disclosure Statement should not be relied upon in making the decision to vote to accept or reject the Plan.

### 4. No Legal or Tax Advice Is Provided by this Disclosure Statement

The contents of this Disclosure Statement should not be construed as legal, business, or tax advice. Each creditor or equity interest holder is urged to consult their own legal counsel and accountant as to legal, tax, and other matters concerning their Claim or Equity Interest.

This Disclosure Statement is not legal advice to you. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

### 5. No Admission Made

Nothing contained herein or in the Plan will constitute an admission of, or will be deemed evidence of, the tax or other legal effects of the Plan on the Debtors or holders of Claims or Interests.

### 6. Certain Tax Consequences

For a discussion of certain tax considerations to the Debtors and certain holders of Claims in connection with the implementation of the Plan, see Section VII hereof.

## IX.
## CONFIRMATION OF THE PLAN

### A. Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court to hold a confirmation hearing upon appropriate notice to all required parties. Notice of the Confirmation Hearing will be provided to all known creditors and equity holders or their representatives. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of the continuation date made at the Confirmation Hearing, at any subsequent continued Confirmation Hearing, or pursuant to a notice filed on the docket for the Chapter 11 Cases.

A hearing (the "**Disclosure Statement Hearing**") will be held before the Honorable David R. Jones, United States Bankruptcy Judge, in the Bankruptcy Court, 515 Rusk Avenue, Courtroom 400, 4th Floor, Houston, Texas 77002, on March 23, 2023 at 9:00 a.m. (Central Time). Notice of the Disclosure Statement Hearing was filed with the Bankruptcy Court on February 8, 2023 (Docket No. 268).

B. **Objections to Confirmation**

Section 1128(b) of the Bankruptcy Code provides that any party-in-interest may object to the confirmation of a plan. Any objection to confirmation of the Plan must be in writing, must conform to the Bankruptcy Rules and the Local Rules, must set forth the name of the objector, the nature and amount of the Claims held or asserted by the objector against the Debtors' estates or properties, the basis for the objection and the specific grounds therefore, and must be filed with the Bankruptcy Court, with a copy to the chambers of the United States Bankruptcy Judge appointed to the Chapter 11 Cases, together with proof of service thereof, and served upon the following parties, including such other parties as the Bankruptcy Court may order, so as to be actually received by May 1, 2023.

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by electronic transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice addressed as follows:

a) **The Debtors** at
   Serta Simmons Bedding, LLC
   2451 Industry Avenue
   Doraville, GA 30360
   Attn:  Kristen McGuffey, Chief Legal Officer & Secretary
   Email: SSBLegalDept@sertasimmons.com

b) **Office of the U.S. Trustee** at
   Office of the U.S. Trustee for the Southern District of Texas
   515 Rusk, Suite # 3516
   Houston, TX 77002

c) **Counsel to the Debtors** at
   Weil, Gotshal & Manges LLP
   700 Louisiana Street, Suite 1700
   Houston, TX 77002
   Attn:  Gabriel A. Morgan
          Stephanie N. Morrison
   Telephone: (713) 546-5000
   Facsimile: (713) 224-9511
   Email: gabriel.morgan@weil.com
          stephanie.morrison@weil.com

   -and-

   767 Fifth Avenue
   New York, NY 10153
   Attn:  Ray C. Schrock
          Alexander W. Welch
   Telephone: (212) 310-8000
   Facsimile: (212) 310-8007
   Email: ray.schrock@weil.com
          alexander.welch@weil.com

d) **Counsel to the PTL Advisors** at
   Gibson Dunn & Crutcher LLP

50

200 Park Avenue
New York, NY 10166
Attn:   Scott J. Greenberg, Esq.
        Michael Cohen, Esq.
        Jason Zachary Goldstein, Esq.

Telephone: (212) 403-1000
Email: sgreenberg@gibsondunn.com
       mcohen@gibsondunn.com
       jgoldstein@gibsondunn.com

e)  **Consenting Equity Holders** at
    Advent International Corporation
    Prudential Tower
    800 Boylston Street, Suite 3300
    Boston, MA 02199
        Jefferson Case
        Amanda McGrady Morrison

    Facsimile: (617) 951-0566

    -and-

    Ropes & Gray LLP
    1211 Avenue of the Americas
    New York, NY 10036
    Attn:  Gregg M. Galardi, Esq.
           Jeramy D. Webb, Esq.
           Amanda C. Glaubach, Esq.

    Telephone: (212) 403-1000
    Email: gregg.galardi@ropesgray.com
           jeramy.webb@ropesgray.com
           amanda.glaubach@ropesgray.com

> **UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

C.  **Requirements for Confirmation of the Plan**

   1.  **Requirements of Section 1129(a) of the Bankruptcy Code**

*General Requirements*.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the confirmation requirements specified in section 1129(a) of the Bankruptcy Code have been satisfied including, without limitation, whether:

51

(i) the Plan complies with the applicable provisions of the Bankruptcy Code;

(ii) the Debtors have complied with the applicable provisions of the Bankruptcy Code;

(iii) the Plan has been proposed in good faith and not by any means forbidden by law;

(iv) any payment made or promised by the Debtors or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been disclosed to the Bankruptcy Court, and any such payment made before confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable;

(v) the Debtors have disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director or officer of the Reorganized Debtors, an affiliate of the Debtors participating in a Plan with the Debtors, or a successor to the Debtors under the Plan, and the appointment to, or continuance in, such office of such individual is consistent with the interests of holders of Claims and Interests and with public policy, and the Debtors have disclosed the identity of any insider who will be employed or retained by the Reorganized Debtors, and the nature of any compensation for such insider;

(vi) with respect to each Class of Claims or Interests, each holder of an impaired Claim or impaired Equity Interest has either accepted the Plan or will receive or retain under the Plan, on account of such holder's Claim or Equity Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount such holder would receive or retain if the Debtors were liquidated on the Effective Date of the Plan under chapter 7 of the Bankruptcy Code;

(vii) except to the extent the Plan meets the requirements of section 1129(b) of the Bankruptcy Code (as discussed further below), each Class of Claims either accepted the Plan or is not impaired under the Plan;

(viii) except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that administrative expenses and priority Claims, other than Priority Tax Claims, will be paid in full on the Effective Date, and that Priority Tax Claims will receive either payment in full on the Effective Date or deferred cash payments over a period not exceeding five (5) years after the Petition Date, of a value, as of the Effective Date of the Plan, equal to the allowed amount of such Claims;

> (ix) at least one (1) Class of impaired Claims has accepted the Plan, determined without including any vote for acceptance of the Plan by any insider holding a Claim in such Class;
>
> (x) confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors under the Plan; and
>
> (xi) all fees payable under section 1930 of title 28, as determined by the Bankruptcy Court at the Confirmation Hearing, have been paid or the Plan provides for the payment of all such fees on the Effective Date of the Plan.

*Best Interests Test*

As noted above, with respect to each impaired class of claims and equity interests, confirmation of a plan requires that each such holder either: (i) accept the plan; or (ii) receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the value such holder would receive or retain if the debtors were liquidated under chapter 7 of the Bankruptcy Code. This requirement is referred to as the "best interests test."

This test requires a bankruptcy court to determine what the holders of allowed claims and allowed equity interests in each impaired class would receive from a liquidation of the debtor's assets and properties in the context of a liquidation under chapter 7 of the Bankruptcy Code. To determine if a plan is in the best interests of each impaired class, the value of the distributions from the proceeds of the liquidation of the debtor's assets and properties (after subtracting the amounts attributable to the aforesaid claims) is then compared with the value offered to such classes of claims and equity interests under the plan.

The Debtors believe that under the Plan all holders of impaired Claims and Interests will receive property with a value not less than the value such holder would receive in a liquidation under chapter 7 of the Bankruptcy Code. The Debtors' belief is based primarily on: (i) consideration of the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to holders of impaired Claims and Interests; and (ii) the Liquidation Analysis attached hereto as **Exhibit E**.

The Debtors believe that any liquidation analysis is speculative, as it is necessarily premised on assumptions and estimates which are inherently subject to significant uncertainties and contingencies, many of which would be beyond the control of the Debtors. The Liquidation Analysis provided in **Exhibit E** is solely for the purpose of disclosing to holders of Claims and Interests the effects of a hypothetical chapter 7 liquidation of the Debtors, subject to the assumptions set forth therein. There can be no assurance as to values that would actually be realized in a chapter 7 liquidation nor can there be any assurance that a bankruptcy court will accept the Debtors' conclusions or concur with such assumptions in making its determinations under section 1129(a)(7) of the Bankruptcy Code.

*Feasibility*

Also as noted above, section 1129(a)(11) of the Bankruptcy Code requires that a debtor demonstrate that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization. For purposes of determining whether the Plan meets this requirement, the Debtors have analyzed their ability to meet their obligations under the Plan. As part of this analysis, the Debtors have prepared the Financial Projections attached hereto as **Exhibit H**. Based upon such Financial Projections, the Debtors believe they will have sufficient resources to make all payments required pursuant to the Plan

and that confirmation of the Plan is not likely to be followed by liquidation or the need for further reorganization. Moreover, Section VIII hereof sets forth certain risk factors that could impact the feasibility of the Plan.

*Equitable Distribution of Voting Power*

On or before the Effective Date, pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code, the organizational documents for the Debtors will be amended as necessary to satisfy the provisions of the Bankruptcy Code and will include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code: (i) a provision prohibiting the issuance of non-voting equity securities; and (ii) a provision setting forth an appropriate distribution of voting power among classes of equity securities possessing voting power.

2. **Additional Requirements for Non-Consensual Confirmation**

In the event that any impaired Class of Claims or Interests does not accept or is deemed to reject the Plan, the Court may still confirm the Plan at the request of the Debtors if, as to each impaired Class of Claims or Interests that has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such Classes of Claims or Interests, pursuant to section 1129(b) of the Bankruptcy Code. Both of these requirements are in addition to other requirements established by case law interpreting the statutory requirements.

The Debtors submit that they satisfy the "unfair discrimination" and "fair and equitable" tests, as discussed in further detail below.

*Unfair Discrimination Test*

The "no unfair discrimination" test applies to Classes of Claims or Interests that are of equal priority and are receiving different treatment under the Plan. A chapter 11 plan does not discriminate unfairly, within the meaning of the Bankruptcy Code, if the legal rights of a dissenting Class are treated in a manner consistent with the treatment of other Classes whose legal rights are substantially similar to those of the dissenting Class and if no Class of Claims or Interests receives more than it legally is entitled to receive for its Claims or Interests. This test does not require that the treatment be the same or equivalent, but that such treatment is "fair."

The Debtors believe the Plan satisfies the "unfair discrimination" test. Claims of equal priority are receiving comparable treatment and such treatment is fair under the circumstances.

*Fair and Equitable Test*

The "fair and equitable" test applies to classes of different priority and status (*e.g.*, secured versus unsecured) and includes the general requirement that no class of claims receives more than 100% of the allowed amount of the claims in such class. As to dissenting classes, the test sets different standards depending on the type of claims in such class. The Debtors believe that the Plan satisfies the "fair and equitable" test as further explained below.

(i) Secured Creditors

The Bankruptcy Code provides that each holder of an impaired secured claim either: (i) retains its liens on the property to the extent of the allowed amount of its secured claim and receives deferred cash payments having a value, as of the effective date, of at least the allowed amount of such claim; or (ii) has the right to

54

credit bid the amount of its claim if its property is sold and retains its liens on the proceeds of the sale (or if sold, on the proceeds thereof); or (iii) receives the "indubitable equivalent" of its allowed secured claim.

(ii) Unsecured Creditors

The Bankruptcy Code provides that either: (i) each holder of an impaired unsecured claim receives or retains under the plan of reorganization, property of a value equal to the amount of its allowed claim; or (ii) the holders of claims and equity interests that are junior to the claims of the dissenting class will not receive any property under the plan of reorganization. Accordingly, the Plan meets the "fair and equitable" test with respect to unsecured Claims.

(iii) Equity Interests

The Bankruptcy Code requires either (a) each holder of an impaired interest will receive or retain under the chapter 11 plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled, or the value of the interest or (b) the holders of interests that are junior to the non-accepting class will not receive or retain any property under the chapter 11 plan.

## X.
## ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Debtors have evaluated several alternatives to the Plan. After studying these alternatives, the Debtors have concluded that the Plan is the best alternative and will maximize recoveries to parties-in-interest, assuming confirmation and consummation of the Plan. If the Plan is not confirmed and consummated, the alternatives to the Plan are: (i) the preparation and presentation of an alternative reorganization; (ii) a sale of some or all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code; or (iii) a liquidation under chapter 7 of the Bankruptcy Code.

### A. Alternative Plan of Reorganization

If the Plan is not confirmed, the Debtors (or if the Debtors' exclusive period in which to file a plan of reorganization has expired, any other party-in-interest) could attempt to formulate a different plan. Such a plan might involve either: (i) a reorganization and continuation of the Debtors' businesses; or (ii) an orderly liquidation of their assets. The Debtors, however, submit that the Plan, as described herein, enables their creditors to realize the most value under the circumstances. In addition, if the Plan is not confirmed under the terms of the Restructuring Support Agreement, the Consenting Parties have the right to terminate the Restructuring Support Agreement and all obligations thereunder.

### B. Sale Under Section 363 of the Bankruptcy Code

If the Plan is not confirmed, the Debtors could seek from the Bankruptcy Court, after notice and hearing, authorization to sell their assets under section 363 of the Bankruptcy Code. In addition, the security interests in the Debtors' assets held by holders of Claims in Class 3, Class 4, and Class 5 would attach to the proceeds of any sale of the Debtors' assets. After these Claims are satisfied, the remaining funds, if any, could be used to pay holders of Claims and Interests in Class 6A, Class 6B, Class 7, Class 8, Class 9, and Class 10. Upon analysis and consideration of this alternative, the Debtors do not believe a sale of their assets under section 363 of the Bankruptcy Code would yield a higher recovery for the holders of Claims under the Plan.

### C. Liquidation Under Chapter 7 of the Bankruptcy Code

If no plan can be confirmed, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code in which a trustee would be elected or appointed to liquidate the assets of the Debtors for distribution to their creditors in accordance with the priorities established by the Bankruptcy Code. The effect that a chapter 7 liquidation would have on the recovery of holders of Allowed Claims and Interests is set forth in the Liquidation Analysis attached hereto as **Exhibit E**.

The Debtors believe that liquidation under chapter 7 would result in smaller distributions to creditors than those provided for in the Plan due to, among other reasons, the delay resulting from the conversion of the Chapter 11 Cases and the additional administrative expenses associated with the appointment of a trustee and the trustee's retention of professionals who would be required to become familiar with the many legal and factual issues in the Debtors' Chapter 11 Cases.

## XI.

## CONCLUSION AND RECOMMENDATION

The Debtors believe the Plan is in the best interests of all stakeholders and urge the holders of Claims in Class 3, Class 4, Class 5, Class 6A, and Class 6B to vote in favor thereof.

Dated: March 23, 2023
Houston, Texas

Respectfully submitted,

By:     */s/ John Linker*
Name:    John Linker
Title:     Chief Financial Officer, Treasurer and Assistant Secretary

on behalf of

DAWN INTERMEDIATE, LLC
SERTA SIMMONS BEDDING, LLC
SERTA INTERNATIONAL HOLDCO, LLC
NATIONAL BEDDING COMPANY L.L.C.
SSB MANUFACTURING COMPANY
THE SIMMONS MANUFACTURING CO., LLC
DREAMWELL, LTD.
SSB HOSPITALITY, LLC
SSB LOGISTICS, LLC
SIMMONS BEDDING COMPANY, LLC
TUFT & NEEDLE, LLC
TOMORROW SLEEP LLC
SSB RETAIL, LLC
WORLD OF SLEEP OUTLETS, LLC
.

[*Signature Page to Disclosure Statement*]

**EXHIBIT A**

Plan