# DEFENDANTS' EXHIBIT 333
# Part 9 of 27

Case 23-90020 Document 257-9 Filed in TXSB on 03/24/23 Page 2 of 153
Case 23-90020 Document 545 Filed in TXSB on 05/12/23 Page 682 of 1250
SOLICITATION VERSION

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SERTA SIMMONS BEDDING, LLC, | § | Case No. 23-90020 (DRJ) |
| *et al.*, | § | |
| | § | (Jointly Administered) |
| Debtors.¹ | § | |
| | § | |

## JOINT CHAPTER 11 PLAN OF
## SERTA SIMMONS BEDDING, LLC AND ITS AFFILIATED DEBTORS

**WEIL, GOTSHAL & MANGES LLP**
Gabriel A. Morgan (24125891)
Stephanie N. Morrison (24126930)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

**WEIL, GOTSHAL & MANGES LLP**
Ray C. Schrock (admitted *pro hac vice*)
Alexander W. Welch (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for the Debtors
and Debtors in Possession*

Dated:  March 23, 2023
        Houston, Texas

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Dawn Intermediate, LLC (6123); Serta Simmons Bedding, LLC (1874); Serta International Holdco, LLC (6101); National Bedding Company L.L.C. (0695); SSB Manufacturing Company (5743); The Simmons Manufacturing Co., LLC (0960); Dreamwell, Ltd. (2419); SSB Hospitality, LLC (2016); SSB Logistics, LLC (6691); Simmons Bedding Company, LLC (2552); Tuft & Needle, LLC (6215); Tomorrow Sleep LLC (0678); SSB Retail, LLC (9245); and World of Sleep Outlets, LLC (0957). The Debtors' corporate headquarters and service address for these chapter 11 cases is 2451 Industry Avenue, Doraville, Georgia 30360.

Table of Contents

Page

ARTICLE I. DEFINITIONS AND INTERPRETATION. ................................................................. 1
   A. **Definitions.** ....................................................................................................................... 1
   B. **Interpretation; Application of Definitions and Rules of Construction.** ................... 15
   C. **Computation of Time.** ................................................................................................... 16
   D. **Reference to Monetary Figures.** .................................................................................. 16
   E. **Controlling Document.** ................................................................................................. 16
   F. **Consultation, Information, Notice, and Consent Rights.** .......................................... 16

ARTICLE II. ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL FEE CLAIMS,
              DIP CLAIMS, AND PRIORITY TAX CLAIMS. ....................................................... 16
   2.1. *Administrative Expense Claims.* ................................................................................... 16
   2.2. *Professional Fee Claims.* ............................................................................................... 17
   2.3. *Priority Tax Claims.* ...................................................................................................... 17
   2.4. *DIP Claims.* .................................................................................................................... 17
   2.5. *Restructuring Fees and Expenses.* ............................................................................... 17
   2.6. *Professional Fee Escrow.* .............................................................................................. 18

ARTICLE III. CLASSIFICATION OF CLAIMS AND INTERESTS. ........................................... 18
   3.1. *Classification in General.* .............................................................................................. 18
   3.2. *Formation of Debtor Groups for Convenience Only.* ................................................ 18
   3.3. *Summary of Classification.* ........................................................................................... 19
   3.4. *Special Provision Governing Unimpaired Claims.* .................................................... 19
   3.5. *Elimination of Vacant Classes.* ..................................................................................... 19
   3.6. *No Waiver.* ..................................................................................................................... 19

ARTICLE IV. TREATMENT OF CLAIMS AND INTERESTS. ................................................... 20
   4.1. *Other Secured Claims (Class 1).* .................................................................................. 20
   4.2. *Priority Non-Tax Claims (Class 2).* ............................................................................. 20
   4.3. *FLFO Claims (Class 3).* ................................................................................................ 20
   4.4. *FLSO Claims (Class 4).* ................................................................................................ 21
   4.5. *Non-PTL Claims (Class 5).* ........................................................................................... 21
   4.6. *Ongoing General Unsecured Claims (Class 6A).* ....................................................... 22
   4.7. *Other General Unsecured Claims (Class 6B).* ............................................................ 22
   4.8. *Intercompany Claims (Class 7).* ................................................................................... 22
   4.9. *Intercompany Interests (Class 8).* ................................................................................ 22
   4.10. *Other Intercompany Interests (Class 9).* .................................................................... 23
   4.11. *Intermediate Equity Interests (Class 10).* .................................................................. 23

ARTICLE V. MEANS FOR IMPLEMENTATION. ......................................................................... 23
   5.1. *Compromise and Settlement of Claims, Interests, and Controversies.* ................... 23
   5.2. *Intercreditor Agreements.* ............................................................................................ 24
   5.3. *Continued Corporate Existence; Effectuating Documents; Corporate Action;*
        *Restructuring Transactions.* ........................................................................................ 24
   5.4. *Intercompany Interests; Corporate Reorganization.* ................................................ 25
   5.5. *New Term Loan.* ............................................................................................................ 25
   5.6. *Exit ABL Facility.* ......................................................................................................... 26
   5.7. *New Intercreditor Agreement.* ..................................................................................... 26
   5.8. *Section 1145 Exemption.* .............................................................................................. 27
   5.9. *Cancellation of Existing Securities and Agreements.* ............................................... 27
   5.10. *Cancellation of Liens.* ................................................................................................... 28

Table of Contents
(continued)

| | | Page |
|---|---|---|
| 5.11. | *Officers and Boards of Directors* | 28 |
| 5.12. | *Management Incentive Plan* | 29 |
| 5.13. | *Authorization, Issuance, and Delivery of New Common Interests.* | 29 |
| 5.14. | *Pension Plans.* | 29 |
| 5.15. | *Collective Bargaining Agreements.* | 29 |
| 5.16. | *Nonconsensual Confirmation.* | 30 |
| 5.17. | *Closing of the Chapter 11 Cases.* | 30 |
| 5.18. | *Notice of Effective Date.* | 30 |
| 5.19. | *Separate Plans.* | 30 |
| **ARTICLE VI.** | **DISTRIBUTIONS.** | 30 |
| 6.1. | *Distributions Generally.* | 30 |
| 6.2. | *Distributions Subject to Intercreditor Agreements.* | 30 |
| 6.3. | *Distribution Record Date.* | 31 |
| 6.4. | *Date of Distributions.* | 31 |
| 6.5. | *Disbursing Agent.* | 31 |
| 6.6. | *Rights and Powers of Disbursing Agent.* | 31 |
| 6.7. | *Expenses of Disbursing Agent.* | 32 |
| 6.8. | *No Postpetition Interest on Claims.* | 32 |
| 6.9. | *Delivery of Distributions.* | 32 |
| 6.10. | *Distributions after Effective Date.* | 32 |
| 6.11. | *Unclaimed Property.* | 32 |
| 6.12. | *Time Bar to Cash Payments.* | 32 |
| 6.13. | *Manner of Payment under Plan.* | 33 |
| 6.14. | *Satisfaction of Claims.* | 33 |
| 6.15. | *Fractional Stock.* | 33 |
| 6.16. | *Minimum Cash Distributions.* | 33 |
| 6.17. | *Setoffs.* | 33 |
| 6.18. | *Allocation of Distributions between Principal and Interest.* | 33 |
| 6.19. | *No Distribution in Excess of Amount of Allowed Claim.* | 34 |
| 6.20. | *Withholding and Reporting Requirements.* | 34 |
| **ARTICLE VII.** | **PROCEDURES FOR DISPUTED CLAIMS.** | 34 |
| 7.1. | *Disputed Claims Generally.* | 34 |
| 7.2. | *Objections to Claims.* | 35 |
| 7.3. | *Estimation of Claims.* | 35 |
| 7.4. | *Adjustment to Claims Register Without Objection.* | 35 |
| 7.5. | *Disallowance of Claims.* | 35 |
| 7.6. | *No Distributions Pending Allowance.* | 36 |
| 7.7. | *Distributions after Allowance.* | 36 |
| 7.8. | *Disputed Claims Reserve.* | 36 |
| 7.9. | *Claim Resolution Procedures Cumulative.* | 37 |
| **ARTICLE VIII.** | **EXECUTORY CONTRACTS AND UNEXPIRED LEASES.** | 37 |
| 8.1. | *General Treatment.* | 37 |
| 8.2. | *Determination of Cure Disputes and Deemed Consent.* | 38 |
| 8.3. | *Payments Related to Assumption or Assignment of Contracts and Leases.* | 38 |
| 8.4. | *Rejection Claims.* | 39 |

Table of Contents
(continued)

| | | |
|---|---|---|
| 8.5. | *Survival of the Debtors' Indemnification Obligations.* | 39 |
| 8.6. | *Employee Arrangements.* | 40 |
| 8.7. | *Insurance Policies.* | 40 |
| 8.8. | *Intellectual Property Licenses and Agreements.* | 40 |
| 8.9. | *Assignment.* | 41 |
| 8.10. | *Modifications, Amendments, Supplements, Restatements, or Other Agreements.* | 41 |
| 8.11. | *Reservation of Rights.* | 41 |

**ARTICLE IX.** CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN AND EFFECTIVE DATE. ... 42
| | | |
|---|---|---|
| 9.1. | *Conditions Precedent to the Effective Date.* | 42 |
| 9.2. | *Timing of Conditions Precedent.* | 43 |
| 9.3. | *Waiver of Conditions Precedent.* | 43 |
| 9.4. | *Effect of Failure of a Condition.* | 43 |

**ARTICLE X.** EFFECT OF CONFIRMATION OF PLAN. ... 43
| | | |
|---|---|---|
| 10.1. | *Vesting of Assets in the Reorganized Debtors.* | 43 |
| 10.2. | *Binding Effect.* | 44 |
| 10.3. | *Discharge of Claims and Termination of Interests.* | 44 |
| 10.4. | *Term of Injunctions or Stays.* | 44 |
| 10.5. | *Injunction.* | 45 |
| 10.6. | *Releases.* | 46 |
| 10.7. | *Exculpation.* | 48 |
| 10.8. | *Retention of Causes of Action/Reservation of Rights.* | 48 |
| 10.9. | *Ipso Facto and Similar Provisions Ineffective.* | 49 |
| 10.10. | *Solicitation of Plan.* | 49 |
| 10.11. | *Corporate and Limited Liability Company Action.* | 49 |

**ARTICLE XI.** RETENTION OF JURISDICTION. ... 50
| | | |
|---|---|---|
| 11.1. | *Retention of Jurisdiction.* | 50 |
| 11.2. | *Courts of Competent Jurisdiction.* | 51 |

**ARTICLE XII.** MISCELLANEOUS PROVISIONS. ... 51
| | | |
|---|---|---|
| 12.1. | *Payment of Statutory Fees.* | 51 |
| 12.2. | *Substantial Consummation of the Plan.* | 52 |
| 12.3. | *Request for Expedited Determination of Taxes.* | 52 |
| 12.4. | *Exemption from Certain Transfer Taxes.* | 52 |
| 12.5. | *Amendments.* | 52 |
| 12.6. | *Effectuating Documents and Further Transactions.* | 53 |
| 12.7. | *Revocation or Withdrawal of the Plan.* | 53 |
| 12.8. | *Severability of Plan Provisions.* | 53 |
| 12.9. | *Governing Law.* | 53 |
| 12.10. | *Time.* | 53 |
| 12.11. | *Dates of Actions to Implement the Plan.* | 54 |
| 12.12. | *Immediate Binding Effect.* | 54 |
| 12.13. | *Deemed Acts.* | 54 |
| 12.14. | *Successor and Assigns.* | 54 |

Table of Contents
(continued)

Page

12.15. ***Entire Agreement***. ........................................................................................................... 54
12.16. ***Exhibits to Plan***. ............................................................................................................. 54
12.17. ***Dissolution of Creditors' Committee***. ......................................................................... 54
12.18. ***Notices***. ........................................................................................................................... 55

Each of Serta Simmons Bedding, LLC ("***Serta Simmons Bedding***"); Dawn Intermediate, LLC ("***Dawn Intermediate***"); Serta International Holdco, LLC; National Bedding Company L.L.C.; SSB Manufacturing Company; The Simmons Manufacturing Co., LLC; Dreamwell, Ltd.; SSB Hospitality, LLC; SSB Logistics, LLC; Simmons Bedding Company, LLC; Tuft & Needle, LLC; Tomorrow Sleep LLC; SSB Retail, LLC; and World of Sleep Outlets, LLC (each, a "***Debtor***" and, collectively, the "***Debtors***") propose the following joint chapter 11 plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein shall have the meanings set forth in Article I.A. Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan, the settlements and transactions contemplated thereby, and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.

ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I.    DEFINITIONS AND INTERPRETATION.**

   A.   **Definitions.** The following terms shall have the respective meanings specified below:

   *1.1*   "***2020 Transaction***" means the issuance of the FLFO Term Loans and exchange of outstanding first lien and second lien term loans for FLSO Term Loans that closed on June 22, 2020.

   *1.2*   "***6A Trade Agreement***" means a trade agreement providing for the continuation of goods or services on the same or better terms as existed as most favorable terms provided to the Debtors in the six (6) months prior to the Petition Date (the form of which is attached to the Disclosure Statement Approval Order as Schedule 9).

   *1.3*   "***ABL Intercreditor Agreement***" means that certain *ABL Intercreditor Agreement*, dated November 8, 2016 (as amended, restated, amended and restated, supplemented and otherwise modified from time to time), by and among, *inter alios*, the PTL Agent, Prepetition ABL Agent, the Non-PTL Agent, and acknowledged and agreed to by Dawn Intermediate, Serta Simmons Bedding, a Delaware limited liability company, the other borrowers party thereto and each of the other obligors party thereto.

   *1.4*   "***Administrative Expense Claim***" means any Claim for a cost or expense of administration incurred during the Chapter 11 Cases pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for good and other services and leased premises) and (b) Professional Fee Claims.

   *1.5*   "***Adversary Complaint***" means the complaint filed by the Debtor and certain of the PTL Lenders commencing an adversary proceeding against certain of the Non-PTL Lenders seeking a declaratory judgment to resolve the claims arising from any pending or future litigation related to the 2020 Transaction.

   *1.6*   "***Adversary Proceeding***" means the proceeding commenced by the Adversary Complaint.

   *1.7*   "***Affiliate***" has the meaning set forth in section 101(2) of the Bankruptcy Code.

1.8 "*Allowed*" means, with reference to any Claim or Interest, (a) any Claim or Interest arising on or before the Effective Date (i) as to which no objection to allowance, priority, or secured status, and no request for estimation or other challenge, including, without limitation, pursuant to section 502(d) of the Bankruptcy Code or otherwise, has been interposed prior to the Effective Date, or (ii) as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, (b) any Claim or Interest that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtors or Reorganized Debtors, (c) any Claim or Interest as to which the liability of the Debtors or Reorganized Debtors, as applicable, and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court, or (d) any Claim or Interest expressly allowed hereunder; *provided, however*, that notwithstanding the foregoing, (x) unless expressly waived by the Plan, the Allowed amount of Claims or Interests shall be subject to and shall not exceed the limitations under or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable, and (y) the Reorganized Debtors shall retain all claims and defenses with respect to Allowed Claims that are Reinstated or otherwise Unimpaired pursuant to the Plan.

1.9 "*Apollo Action*" has the meaning set forth in the Restructuring Support Agreement.

1.10 "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, as amended from time to time, as applicable to the Chapter 11 Cases.

1.11 "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas Houston Division having jurisdiction over the Chapter 11 Cases, and to the extent of any reference made under section 157 of title 28 of the United States Code or the Bankruptcy Court is determined not to have authority to enter a Final Order on an issue, the District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

1.12 "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any Local Bankruptcy Rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Cases.

1.13 "*Business Day*" means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.14 "*Cash*" means legal tender of the United States of America.

1.15 "*Causes of Action*" means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including, without limitation, under any state or federal securities laws). Causes of Action also includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

1.16     "**Chapter 11 Cases**" means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court in which this Plan was filed.

1.17     "**Claim**" has the meaning set forth in section 101(5) of the Bankruptcy Code, as against any Debtor.

1.18     "**Class**" means any group of Claims or Interests classified as set forth in Article III of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.19     "**Collective Bargaining Agreements**" means the five (5) collective bargaining agrements between SSB Manufacturing Company and each of (i) Teamsters (IBT) Local 986, (ii) USW Local 675, (iii) USW Local Union 156-U-07 "Driver Unit", (iv) USW Local 156, and (v) Hawaii Teamsters and Allied Workers Local 996.

1.20     "**Commitment Letter**" means that certain Commitment Letter dated as of the Petition Date by the Exit ABL Facility Agent committing to provide the Exit ABL Commitment subject to the conditions contained therein.

1.21     "**Confirmation Date**" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

1.22     "**Confirmation Hearing**" means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.23     "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, in form and substance (i) acceptable to the Requisite Consenting Creditors and the Company and (ii) reasonably acceptable to the DIP Agent and Exit ABL Facility Agent (as to this clause (ii), solely as related to or in connection with the DIP Facility, the Exit Facility, the Exit ABL Facility Agent, the Exit Facility Lenders, the DIP Agent, and the DIP Lenders), and otherwise subject to the applicable consent rights set forth in the Restructuring Support Agreement.

1.24     "**Consenting Creditor Consent Rights**" means any applicable consent, approval, and/or consultation right of the Requisite Consenting Creditors as set forth in the Restructuring Support Agreement.

1.25     "**Consenting Creditors**" means the PTL Lenders that are party to the Restructuring Support Agreement, together with their respective successors and permitted assigns and any subsequent Lender that becomes party to the Restructuring Support Agreement in accordance with the terms of the Restructuring Support Agreement.

1.26     "**Consenting Equity Holders**" means Dawn Holdings, Inc., as the sole member, and holder of interests in, Dawn Intermediate; and funds managed by Advent International Corporation, as holder of interests in Dawn Holdings, Inc.

1.27     "**Consenting Equity Holder Fees and Expenses**" means the reasonable and documented fees, costs and expenses of Ropes & Gray LLP, as counsel to certain of the Consenting Equity Holders, in connection with the negotiation, formulation, preparation, execution, delivery, implementation, consummation and/or enforcement of the Restructuring Support Agreement, this Plan, and/or any of the other Definitive Documents, and/or the transactions contemplated hereby or thereby, and/or any amendments, waivers, consents, supplements or other modifications to any of the foregoing, in an amount not to exceed $200,000.

*1.28* "**Consenting Parties**" means, collectively, the Consenting Creditors and the Consenting Equity Holders.

*1.29* "**Creditors' Committee**" means the official committee of unsecured creditors of the Debtors, appointed by the U.S. Trustee pursuant to section 1102 of the Bankruptcy Code on February 9, 2023 (Docket No. 274) and reconstituted on February 14, 2023 (Docket No. 321), the membership of which may be further reconstituted from time to time.

*1.30* "**Cure**" means the payment of Cash by the Debtors, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to (a) cure a monetary default by the Debtors in accordance with the terms of an executory contract or unexpired lease of the Debtors and (b) permit the Debtors to assume such executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

*1.31* "**Cure Dispute**" means a pending objection relating to assumption or assumption and assignment of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

*1.32* "**Cure Notice**" means a notice to parties to executory contracts or unexpired leases to be assumed or assumed and assigned reflecting the Debtors' intention to potentially assume or assume and assign the contract or lease in connection with the Plan and, where applicable, setting forth the proposed Cure amount (if any).

*1.33* "**CV Trade Agreement**" means a trade agreement executed by the Debtors pursuant to the Vendor Order.

*1.34* "**D&O Policy**" means any insurance policy, including tail insurance policies, for directors', members', trustees', and officers' liability maintained by the Debtors and in effect or purchased as of the Petition Date.

*1.35* "**Debtor** or **Debtors**" has the meaning set forth in the introductory paragraph of the Plan.

*1.36* "**Debtors in Possession**" means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

*1.37* "**Definitive Documents**" has the meaning set forth in the Restructuring Support Agreement. Each Definitive Document shall be consistent with the Restructuring Support Agreement and, in each case, subject to the Consenting Creditor Consent Rights.

*1.38* "**DIP Agent**" means Eclipse Business Capital, LLC, solely in its capacity as administrative agent and collateral trustee under the DIP Credit Agreement, its successors, assigns, or any replacement agent appointed pursuant to the terms of the DIP Credit Agreement.

*1.39* "**DIP Claims**" means all Claims held by the DIP Lenders or the DIP Agent on account of, arising under, or relating to the DIP Credit Agreement, the DIP Facility, or the DIP Order, including Claims for all principal amounts outstanding, and any and all fees, interest, expenses, indemnification obligations, reimbursement obligations, and other amounts due under the DIP Loan Documents, which, for the avoidance of doubt, shall include all "DIP Obligations" as such term is defined in the DIP Order.

*1.40* "**DIP Commitment**" means the commitment to provide the amounts contemplated under the DIP Facility.