# DEFENDANTS' EXHIBIT 333
# Part 10 of 27

# DEFENDANTS' EXHIBIT 333
# Part 10 of 27

1.41 "**DIP Credit Agreement**" means that certain Senior Secured Super-Priority Debtor-in-Possession ABL Credit Agreement, dated as of January, 23, 2023, by and among Serta Simmons Bedding, as top borrower, the other borrowers party thereto, the DIP Agent, and the DIP Lenders, as approved by the DIP Order, as may be further amended, restated, amended and restated, supplemented or otherwise modified from time to time in accordance with its terms which, for the avoidance of doubt, shall be in form and substance reasonably acceptable to the Requisite Consenting Creditors.

1.42 "**DIP Loan Documents**" has the meaning set forth in the DIP Order. Each DIP Loan Document shall be consistent with the Restructuring Support Agreement and, in each case, subject to the Consenting Creditor Consent Rights.

1.43 "**DIP Facility**" means an asset-based revolving credit facility with aggregate commitments of $125,000,000, including a letter of credit sub-facility in an aggregate amount of up to $10,000,000 to issue new letters of credit, as approved by the DIP Order.

1.44 "**DIP Lenders**" means the lenders and, if applicable, the issuing lenders from time to time party to the DIP Credit Agreements.

1.45 "**DIP Order**" means, as applicable, the *Amended Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting (A) Liens and Providing Superpriority Administrative Expense Status and (B) Adequate Protection to Certain Prepetition Lenders, (III) Modifying Automatic Stay, and (IV) Granting Related Relief* (Docket No. 406) or the *Amended Interim Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting (A) Liens and Providing Superpriority Administrative Expense Status and (B) Adequate Protection to Certain Prepetition Lenders, (III) Modifying Automatic Stay, (IV) Scheduling A Final Hearing and (V) Granting Related Relief* (Docket No. 109), authorizing the Debtors to enter into the DIP Credit Agreement and access the DIP Facility, as may be amended, supplemented or modified from time to time.

1.46 "**Disallowed**" means, with respect to any Claim or Interest, that such Claim or Interest has been determined by a Final Order or specified in a provision of the Plan not to be Allowed.

1.47 "**Disbursing Agent**" means any Entity (including any applicable Debtor if it acts in such capacity) in its capacity as a disbursing agent under Article VI of the Plan.

1.48 "**Disclosure Statement**" means the disclosure statement for the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, consistent with the Restructuring Support Agreement and subject to the Consenting Creditor Consent Rights.

1.49 "**Disclosure Statement Approval Order**" means the *Order (I) Approving Disclosure Statement and Form and Manner of Notice of Disclosure Statement Hearing; (II) Establishing Solicitation and Voting Procedures; (III) Establishing Notice and Objection Procedures for Confirmation of Proposed Plan; (IV) Approving Notice Procedures for the Assumption or Rejection of Executory Contracts and Unexpired Leases; and (V) Granting Related Relief* (Docket No. 540).

1.50 "**Disputed**" means with respect to a Claim, (a) any Claim, which Claim is disputed under Section 7.1 of the Plan or as to which the Debtors have interposed and not withdrawn an objection or request for estimation that has not been determined by a Final Order; (b) any Claim, proof of which was required to be filed by order of the Bankruptcy Court but as to which a Proof of Claim was not timely or properly filed; (c) any Claim that is listed in the Schedules, if any are filed, as unliquidated, contingent, or disputed, and as to which no request for payment or Proof of Claim has been filed; or (d) any Claim that is otherwise

disputed by any of the Debtors or the Reorganized Debtors in accordance with applicable law or contract, which dispute has not been withdrawn, resolved or overruled by a Final Order. To the extent the Debtors dispute only the amount of a Claim, such Claim shall be deemed Allowed in the amount the Debtors do not dispute, if any, and Disputed as to the balance of such Claim.

1.51    "*Disputed Claims Reserve*" means the reserve established pursuant to and governed by Section 7.8 of the Plan.

1.52    "*Distribution Record Date*" means the Effective Date of the Plan, or such other time as agreed between the Debtors and the Requisite Consenting Creditors.

1.53    "*Effective Date*" means the date determined by the Debtors, in consultation with the Requisite Consenting Creditors, and on which all conditions to the effectiveness of the Plan set forth in Article IX hereof have been satisfied or waived in accordance with the terms of the Plan.

1.54    "*Employee Arrangements*" means all employment or employee-related arrangements, agreements, programs, and policies, and all compensation and benefits plans, policies, award letters, key employee retention agreements, and programs of the Debtors applicable to their respective employees, retirees, consultants, contractors, and non-employee directors, including all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans (including equity and equity-based plans), welfare benefits plans, and life and accidental death and dismemberment insurance plans.

1.55    "*Entity*" means an individual, corporation, partnership, limited liability partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, government unit (as defined in section 101(27) of the Bankruptcy Code) or any political subdivision thereof, or other person (as defined in section 101(41) of the Bankruptcy Code) or other entity.

1.56    "*Estate or Estates*" means individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

1.57    "*Exchange Agreement*" means that certain Open Market and Cashless Exchange Agreement, dated as of June 22, 2020, by and among Dawn Intermediate, Serta Simmons Bedding LLC, National Bedding Company, L.L.C., SSB Manufacturing Company and each of the institutions party thereto as lenders.

1.58    "*Exculpated Parties*" means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtors and their Estates, and (ii) each director, manager, or officer of any Debtor entity.

1.59    "*Exit ABL Commitment*" means the commitment to provide the amounts contemplated under the Exit ABL Facility, consistent with the Restructuring Support Agreement and subject to the Consenting Creditor Consent Rights.

1.60    "*Exit ABL Facility*" means a $125,000,000 asset-based revolving credit facility, with a letter of credit sub-facility in an aggregate amount of up to $10,000,000.00 to be provided by the Exit ABL Facility Lenders to the Reorganized Debtors upon the Effective Date.

1.61    "*Exit ABL Facility Agent*" means Eclipse Business Capital LLC or another agent reasonably acceptable to the Requisite Consenting Creditors, in its capacity as administrative agent under the Exit ABL Facility Credit Agreement.

1.62 "***Exit ABL Facility Credit Agreement***" means that certain credit or loan agreement, in form and substance acceptable to the Exit ABL Facility Agent and Exit ABL Facility Lenders, pursuant to which the Exit ABL Facility shall be provided, to be dated as of the Effective Date, by and among *inter alios* the Reorganized Debtors, as borrower and/or guarantor (as applicable), certain other subsidiaries as guarantors thereto, the Exit ABL Facility Agent and each Exit ABL Facility Lender, consistent with the Commitment Letter and the Restructuring Support Agreement and subject to the Consenting Creditor Consent Rights.

1.63 "***Exit ABL Facility Lenders***" means the lenders from time to time party to the Exit ABL Facility Credit Agreement or any other lenders reasonably acceptable to the Requisite Consenting Creditors.

1.64 "***Exit ABL Facility Loans***" means the revolving loans to be issued under the Exit ABL Facility.

1.65 "***Final Order***" means as applicable, an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, including any order subject to appeal but for which no stay of such order has been entered, and as to which the time to appeal, seek certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been withdrawn with prejudice, resolved by the highest court to which the order or judgment was appealed or from which certiorari could be sought, or any request for new trial, reargument, or rehearing has been denied, resulted in no stay pending appeal or modification of such order, or has otherwise been dismissed with prejudice; *provided*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

1.66 "***First Lien Intercreditor Agreement***" means that certain *First Lien Intercreditor Agreement*, dated June 22, 2020, by and among, *inter alios*, the PTL Agent, the Non-PTL Agent, and acknowledged and agreed to by Dawn Intermediate, Serta Simmons Bedding, the other borrowers party thereto and each of the other obligors party thereto.

1.67 "***FLFO Claim***" means any Claim arising from, derived from, or in connection to first lien first out term loans held under the PTL Credit Agreement, including any accrued and unpaid interest (whether accruing pre- or postpetition), fees, and other amounts arising and payable with respect thereto, and all Claims or Causes of Action relating thereto.

1.68 "***FLSO Claim***" means any Claim arising from, derived from, or in connection to first lien second out term loans under the PTL Credit Agreement, including any accrued and unpaid interest, fees, and other amounts arising and payable with respect thereto, and all Claims or Causes of Action relating thereto.

1.69 "***Governmental Unit***" has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.70 "***GUC Recovery Allocation Table***" means the table attached hereto as **Exhibit A**.

1.71 "***Impaired***" means, with respect to a Claim, Interest, or Class of Claims or Interests, "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

1.72 "**Indemnification Obligation**" means any existing or future obligation of any Debtor to indemnify (i) current directors, officers, members, managers, agents or employees of any of the Debtors who served in such capacity, with respect to or based upon such service or any act or omission taken or not taken in any of such capacities, or for or on behalf of any Debtor, whether pursuant to agreement, the Debtors' respective memoranda, articles or certificates of incorporation, corporate charters, bylaws, operating agreements, limited liability company agreements, or similar corporate or organizational documents or other applicable contract or law in effect as of the Effective Date or (ii) the PTL Lenders and the PTL Agent under the PTL Credit Agreement.

1.73 "**Intercompany Claim**" means any Claim against a Debtor held by another Debtor.

1.74 "**Intercompany Interest**" means an Interest in a Debtor held by another Debtor, other than an Interest in Dawn Intermediate or Serta Simmons Bedding.

1.75 "**Intercreditor Agreements**" means, collectively, the First Lien Intercreditor Agreement and the ABL Intercreditor Agreement.

1.76 "**Interests**" means any equity in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all ordinary shares, units, common stock, preferred stock, membership interest, partnership interest, or other instruments evidencing an ownership interest, or equity security (as defined in section 101(16) of the Bankruptcy Code) in any of the Debtors, whether or not transferable, and any option, warrant or right, contractual or otherwise, including, without limitation, equity-based employee incentives, grants, stock options, stock appreciation rights, restricted stock, restricted stock units, performance shares/units, incentive awards, or other instruments issued to employees of the Debtors, to acquire any such interests in a Debtor that existed immediately before the Effective Date (in each case whether or not arising under or in connection with any employment agreement; provided, that the foregoing shall not apply to any entitlement to participate in or receive any Interests of the Reorganized Debtors).

1.77 "**Intermediate Equity Interests**" means any outstanding Interests in Dawn Intermediate that existed immediately prior to the Effective Date.

1.78 "**LCM Action**" has the meaning set forth in the Restructuring Support Agreement.

1.79 "**Lien**" has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.80 "**Management Incentive Plan**" means a post-emergence equity-based management incentive plan under which up to eight percent (8%) (or such higher amount as mutually agreed between the Debtors and the Requisite Consenting Creditors on or before the Plan Supplement Date) of the New Common Interests outstanding on a fully diluted basis issued on the Effective Date may be issued to members of the Reorganized Debtors' management on the terms described in Section 5.12 of the Plan.

1.81 "**New Board**" means the board of directors or managers of Reorganized Parent.

1.82 "**New Common Interests**" means the new common equity of Reorganized Parent to be issued (a) on the Effective Date or (b) as otherwise permitted pursuant to the Plan and the New Corporate Governance Documents.

1.83 "**New Corporate Governance Documents**" means the certificate of incorporation, certificate of formation, bylaws, limited liability company agreements, shareholder agreement (if any), operating agreement or other similar organizational or formation documents, as applicable, of the

Reorganized Debtors, in each case, consistent with the Restructuring Support Agreement and subject to the Consenting Creditor Consent Rights.

1.84 "**New Intercreditor Agreement**" means that certain intercreditor agreement, to be entered into on the Effective Date, in form and substance acceptable to the Exit ABL Facility Agent and Exit ABL Facility Lenders, by and between the New Term Loan Agent and the Exit ABL Facility Agent, consistent with the Restructuring Support Agreement and subject to the Consenting Creditor Consent Rights.

1.85 "**New Term Loan**" means new first lien term loans in an aggregate principal amount of $315,000,000.00 (including original issue discount, if any) pursuant to the New Term Loan Credit Facility Agreement.

1.86 "**New Term Loan Agent**" means an Entity in its capacity as administrative agent under the New Term Loan Credit Facility Agreement the identity of which shall be reasonably acceptable to the Requisite Consenting Creditors.

1.87 "**New Term Loan Credit Facility Agreement**" means that certain credit or loan agreement pursuant to which the New Term Loan shall be provided, to be dated as of the Effective Date, by and among *inter alios* the Reorganized Debtors, as borrowers and/or guarantors (as applicable), certain other subsidiaries as guarantors thereto, the New Term Loan Agent and the New Term Loan Lenders, consistent with the Restructuring Support Agreement and subject to the Consenting Creditor Consent Rights.

1.88 "**Non-PTL Agent**" means UBS AG, Stamford Branch, solely in its capacities as administrative agent and collateral agent under the Non-PTL Term Loan Agreement.

1.89 "**Non-PTL Claims**" means any Claim arising from or in connection to principal obligations under the Non-PTL Term Loan Agreement, including all accrued and unpaid interest, fees, and other amounts payable pursuant to, and all claims or Causes of Action arising under or in connection with.

1.90 "**Non-PTL Lenders**" means the lenders from time to time party to the Non-PTL Term Loan Agreement.

1.91 "**Non-PTL Term Loan Agreement**" means that certain *First Lien Term Loan Agreement*, dated as of November 8, 2016 (as amended by that certain Amendment No. 1 to First Lien Term Loan Agreement, dated as of June 22, 2020 and as may be further amended, restated, amended and restated, supplemented or otherwise modified from time to time), by and among Dawn Intermediate, as holdings, Serta Simmons Bedding, National Bedding Company L.L.C., an Illinois limited liability company, and SSB Manufacturing Company, a Delaware corporation, as borrowers; the Non-PTL Lenders and the Non-PTL Agent.

1.92 "**Ongoing General Unsecured Claims**" means certain designated Unsecured Claims that are not Other General Unsecured Claims or Intercompany Claims, which are fixed, liquidated, and undisputed payment obligations to a third-party provider of goods or services to the Company that facilitates the Company's operations in the ordinary course of business and will continue to do so after the Effective Date that are neither secured by collateral or entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court.

1.93 "**Other General Unsecured Claim**" means any Unsecured Claim against the Debtors that is not an Ongoing General Unsecured Claim, Intercompany Claim, or Non-PTL Claim.

*1.94* "***Other General Unsecured Claim Recovery Pool***" means a Cash pool of $1,000,000 apportioned by Debtor in the manner set out in the GUC Recovery Allocation Table.

*1.95* "***Other Intercompany Interests***" means Serta Simmons Bedding Equity Interests and any other Intercompany Interests identified as such in the Restructuring Transactions Exhibit filed with the Plan Supplement.

*1.96* "***Other Secured Claim***" means a Secured Claim, other than an Administrative Expense Claim, a Priority Tax Claim, a FLFO Claim, or a FLSO Claim. For the avoidance of doubt, Non-PTL Claims are not Other Secured Claims.

*1.97* "***Pension Plans***" means, collectively, the Steelworkers Pension Trust, Teamsters National 401(k) Savings Plan, and Western Conference of Teamsters Pension Trust.

*1.98* "***Person***" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code), or other Entity.

*1.99* "***Petition Date***" means, with respect to a Debtor, the date on which such Debtor commenced its Chapter 11 Case.

*1.100* "***Plan***" means this joint chapter 11 plan, including all appendices, exhibits, schedules, and supplements hereto (including, without limitation, any appendices, schedules, and supplements to the Plan contained in the Plan Supplement), as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof, consistent with the Restructuring Support Agreement and subject to the Consenting Creditor Consent Rights and any other applicable consent rights set forth in the Restructuring Support Agreement.

*1.101* "***Plan Distribution***" means the payment or distribution of consideration to holders of Allowed Claims and Allowed Interests under the Plan.

*1.102* "***Plan Supplement***" means a supplemental appendix to the Plan containing certain documents and forms of documents, schedules, and exhibits relevant to the implementation of the Plan, as may be amended, modified, or supplemented from time to time in accordance with the terms hereof and the Bankruptcy Code and Bankruptcy Rules, which shall include, but not be limited to: (a) the New Corporate Governance Documents; (b) the New Term Loan Credit Facility Agreement; (c) the New Intercreditor Agreement; (d) the Exit ABL Facility Agreement; (e) to the extent known, information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code; (f) the Restructuring Transactions Exhibit; (g) the Schedule of Retained Causes of Action, (h) the Schedule of Rejected Contracts, (i) the Schedule of Assumed Contracts, and (j) any Management Incentive Plan allocation and related documents, if applicable, solely to the extent agreed by the Company and the Requisite Consenting Creditors by the Plan Supplement Date; *provided,* that the foregoing shall be consistent with the Restructuring Support Agreement and subject to the Consenting Creditor Consent Rights and any other applicable consent rights set forth in the Restructuring Support Agreement; *provided further,* that through the Effective Date, the Debtors shall have the right to amend the Plan Supplement and any schedules, exhibits, or amendments thereto, in accordance with the terms of the Plan and the Restructuring Support Agreement, in each case, consistent with the Restructuring Support Agreement and subject to the Consenting Creditor Consent Rights.

*1.103* "***Plan Supplement Date***" means the Business Day that is at least 10 days before the Voting Deadline or such other later date determined by the Debtors (in consultation with the Consenting Creditors).

*1.104* "**Prepetition ABL Agent**" means UBS AG, Stamford Branch, in its capacities as administrative agent and collateral agent under the Prepetition ABL Agreement.

*1.105* "**Prepetition ABL Agreement**" means that certain ABL Credit Agreement, dated as of November 8, 2016 (as amended by that certain Amendment No. 1 to ABL Credit Agreement, dated as of June 30, 2020 and as may be further amended, restated, amended and restated, supplemented or otherwise modified from time to time), by and among Dawn Intermediate, as holdings, Serta Simmons Bedding, National Bedding Company L.L.C., an Illinois limited liability company, and SSB Manufacturing Company, a Delaware corporation, as borrowers; the Prepetition ABL Lenders and the Prepetition ABL Agent.

*1.106* "**Prepetition ABL Lenders**" means the several banks and other financial institutions from time to time party to the Prepetition ABL Agreement.

*1.107* "**Prerequisite Condition**" shall have the meaning ascribed to such term in Section 9.2 of the Plan.

*1.108* "**Priority Non-Tax Claim**" means any Claim other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

*1.109* "**Priority Tax Claim**" means any Secured Claim or unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

*1.110* "**Professional**" means an Entity (i) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code; or (ii) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code that are not Restructuring Fees and Expenses.

*1.111* "**Professional Fee Claims**" means all Claims for fees and expenses (including transaction and success fees) incurred by a Professional on or after the Petition Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.

*1.112* "**Professional Fee Escrow**" means an escrow account established and funded pursuant to Section 2.6 of the Plan.

*1.113* "**Pro Rata Share**" means the proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interest in that Class, or the proportion that Allowed Claims or Interests in a particular Class bear to the aggregate amount of Allowed Claims and Disputed Claims or Allowed Interests and Disputed Interests in a particular Class and other Classes entitled to share in the same recovery as such Class under the Plan.

*1.114* "**PTL Agent**" means UBS AG, Stamford Branch, solely in its capacities as administrative agent and collateral agent under the PTL Credit Agreement and Wilmington Savings Society, FSB solely in its capacities as successor administrative agent and collateral agent under the PTL Credit Agreement.

*1.115* "**PTL Credit Agreement**" means that certain *Super-Priority Term Loan Agreement*, dated as of June 22, 2020 (as amended by that certain Amendment No. 1 to Super-Priority Term Loan Agreement, dated as of October 19, 2020 and by that certain Amendment No. 2 to Super-Priority Term Loan Agreement,

11

dated as of November 12, 2020, and as may be further amended, restated, amended and restated, supplemented or otherwise modified from time to time), by and among Dawn Intermediate, as holdings, Serta Simmons Bedding, National Bedding Company L.L.C., an Illinois limited liability company, and SSB Manufacturing Company, a Delaware corporation, as borrowers; the PTL Lenders, and the PTL Agent.

1.116   "*PTL Group*" means that certain ad hoc group of PTL Lenders represented by the PTL Group Advisors.

1.117   "*PTL Group Counsel*" means Gibson, Dunn & Crutcher LLP, as legal advisors to the PTL Group, and one local counsel to the PTL Group in each relevant jurisdiction, solely to the extent each local counsel has been approved in advance by the Company Parties.

1.118   "*PTL Group Advisors*" means, collectively, (i) the PTL Group Counsel, (ii) Centerview Partners LLC, (iii) one local counsel to the PTL Group in each relevant jurisdiction, and (iv) any other professionals, advisors, consultants, testifying witnesses, and/or experts retained by the PTL Group solely to the extent approved in advance by the Company Parties.

1.119   "*PTL Lenders*" means the several banks and other financial institutions from time to time party to the PTL Credit Agreement holding PTL Obligations.

1.120   "*PTL Obligations*" means the Obligations, as defined in the PTL Credit Agreement.

1.121   "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

1.122   "*Reinstate, Reinstated, or Reinstatement*" means leaving a Claim Unimpaired under the Plan.

1.123   "*Related Parties*" means with respect to a Person, that Person's predecessors, successors, assigns, subsidiaries, affiliates, managed accounts or funds, current and former officers, directors, principals, shareholders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, investment advisors, sub-advisors, collateral managers, and such Persons respective heirs, executors, estates, and nominees, in each case in their capacity as such.

1.124   "*Released Parties*" means, collectively: (a) the Debtors; (b) the Reorganized Debtors; (c) the PTL Agent; (d) the Consenting Creditors; (e) the DIP Agent; (f) the DIP Lenders; (g) the Consenting Equity Holders; and (h) with respect to each of the foregoing Persons in clauses (a) through (g), all current and former Related Parties. Notwithstanding the foregoing, any Person that opts out of the releases set forth in Section 10.6(b) of the Plan shall not be deemed a Released Party thereunder.

1.125   "*Releasing Parties*" means collectively, and in each case solely in their capacity as such, (a) the Debtors; (b) the Reorganized Debtors; (c) the PTL Agent; (d) the Consenting Creditors; (e) the DIP Agent; (f) the DIP Lenders; (g) the Consenting Equity Holders; (h) with respect to each of the foregoing Persons in clauses (a) through (g), all Related Parties; (i) the holders of all Claims or Interests that vote to accept the Plan; (j) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein; (k) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan or that are presumed to accept the Plan but do not opt out of granting the releases set forth herein; *provided*, that any holder of an Ongoing General Unsecured Claim that subsequently is deemed to be a holder of an Other General Unsecured Claim, but opts into the releases set forth in the Plan shall be a Releasing Party; (l) the