DEFENDANTS' EXHIBIT 333

Part 16 of 27

## ARTICLE XI.    RETENTION OF JURISDICTION.

### 11.1.    *Retention of Jurisdiction*.

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(a)    to hear and determine motions and/or applications for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases, including Cure Disputes, and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b)    to determine any motion, adversary proceeding (including, without limitation, in connection with or related to the Adversary Proceeding, the Apollo Action, and/or the LCM Action), proceeding, application, contested matter, and/or other litigated matter pending on or commenced after the Confirmation Date, including, without limitation, any proceeding, application, contested matter, and/or other litigated matter related to or in connection with the Adversary Proceeding, the Apollo Proceeding, the LCM Proceeding, the PTL Credit Agreement, the Exchange Agreement, the Intercreditor Agreements, and/or the 2020 Transaction or the res judicata, estoppel, preclusive, or other similar effect on any claims of any nature in connection with or related to the Adversary Proceeding, the Apollo Action, the LCM Action, the PTL Credit Agreement, the Exchange Agreement, the Intercreditor Agreements, and/or the 2020 Transaction, including, without limitation, any action intended to provide declaratory or other relief as to the application (including as an affirmative defense) of res judicata, estoppel, any preclusion doctrine, or any other similar doctrine as to any matters in connection with or related to the Adversary Proceeding, the Apollo Action, the LCM Action, the PTL Credit Agreement, the Exchange Agreement, the Intercreditor Agreements, and/or the 2020 Transaction;

(c)    to ensure that distributions to holders of Allowed Claims are accomplished as provided for in the Plan and Confirmation Order and to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(d)    to consider the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(e)    to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f)    to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g)    to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)    to hear and determine all Professional Fee Claims;

(i) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, or the Confirmation Order or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j) to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan;

(k) to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(l) to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(m) to hear, adjudicate, decide, or resolve any and all matters related to Article X of the Plan, including, without limitation, the releases, discharge, exculpations, and injunctions issued thereunder;

(n) to resolve disputes concerning Disputed Claims or the administration thereof;

(o) to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(p) to enter a final decree closing the Chapter 11 Cases;

(q) to recover all assets of the Debtors and property of the Debtors' Estates, wherever located; and

(r) to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory.

11.2. *Courts of Competent Jurisdiction*.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**ARTICLE XII. MISCELLANEOUS PROVISIONS**.

12.1. *Payment of Statutory Fees*.

All fees due and payable pursuant to 28 U.S.C. § 1930(a) prior to the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date. The Debtors shall file all monthly operating reports through the Effective Date. On and after the Effective Date, the Reorganized Debtors or any Disbursing Agent shall pay any and all such fees in full in Cash when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. Notwithstanding anything to the contrary herein, the U.S. Trustee shall not be required to file a Proof of Claim or any other request for payment of quarterly fees.

12.2.    *Substantial Consummation of the Plan*.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

12.3.    *Request for Expedited Determination of Taxes*.

The Debtors and the Reorganized Debtors shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

12.4.    *Exemption from Certain Transfer Taxes*.

Pursuant to section 1146 of the Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation, filing or recording of any Lien, mortgage, deed of trust, or other security interest, (c) the making, assignment, filing or recording of any lease or sublease or the making or delivery of any deed, bill of sale, assignment or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan or the reinvesting, transfer, or sale of any real or personal property of the Debtors pursuant to, in implementation of or as contemplated in the Plan and Restructuring Transactions Exhibit (whether to one or more of the Reorganized Debtors or otherwise), (d) the grant of collateral under the New Term Loan Credit Facility Agreement, and (e) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall constitute a "transfer under a plan" within the purview of section 1146 of the Bankruptcy Code and shall not be subject to or taxed under any law imposing any document recording tax, stamp tax, conveyance fee, or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax, or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

12.5.    *Amendments*.

(a)    *Plan Modifications*. Subject to the applicable consent rights of the Requisite Consenting Creditors and the Consenting Equity Holders as set forth in the Restructuring Support Agreement, the Plan may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code; provided, that any modifications or amendments to this Plan that materially adversely affect the treatment of the DIP Agent, DIP Lenders, Exit Facility Agent, and/or Exit Facility Lenders shall require the consent of the DIP Agent, DIP Lenders, Exit Facility Agent, and/or Exit Facility Lenders, as applicable.

(b)    *Other Amendments*. Subject to the consent rights of the Requisite Consenting Creditors and the Consenting Equity Holders as set forth in the Restructuring Support Agreement, before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court.

52

12.6. *Effectuating Documents and Further Transactions*.

Each of the officers of the Reorganized Debtors is authorized, in accordance with his or her authority under the resolutions of the applicable board of directors or managers, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

12.7. *Revocation or Withdrawal of the Plan*.

The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date as to any or all of the Debtors with the consent of the Requisite Consenting Creditors; *provided, however*, that the Debtors may revoke or withdraw the Plan without such consent in the exercise of the Debtors' fiduciary duty or as otherwise permitted under the Restructuring Support Agreement. If, with respect to a Debtor, the Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation or the occurrence of the Effective Date as to such Debtor does not occur on the Effective Date, then, with respect to such Debtor: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim by or against, or any Interest in, such Debtor or any other Entity; (ii) prejudice in any manner the rights of such Debtor or any other Entity; or (iii) constitute an admission of any sort by any Debtor, any of the Consenting Creditors, the PTL Agent, or any other Entity.

12.8. *Severability of Plan Provisions*.

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Reorganized Debtors (as the case may be), and (c) nonseverable and mutually dependent.

12.9. *Governing Law*.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement or a Definitive Document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

12.10. *Time*.

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

12.11.  *Dates of Actions to Implement the Plan.*

In the event that any payment or act under the Plan is required to be made or performed on a date that is on a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

12.12.  *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the holders of Claims and Interests, the Released Parties, and each of their respective successors and assigns, including, without limitation, the Reorganized Debtors.

12.13.  *Deemed Acts.*

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

12.14.  *Successor and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or permitted assign, if any, of each Entity.

12.15.  *Entire Agreement.*

On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

12.16.  *Exhibits to Plan.*

All exhibits, schedules, supplements, and appendices to the Plan (including the Plan Supplement) are incorporated into and are a part of the Plan as if set forth in full herein.

12.17.  *Dissolution of Creditors' Committee.*

On the Effective Date, any official committees appointed in the Chapter 11 Cases, including the Creditors' Committee, shall dissolve; provided that following the Effective Date, any such committees, including the Creditors' Committee, shall continue in existence solely for the purposes of (i) filing and prosecuting applications for allowance of Professional Fee Claims and (ii) seeking removal of the committee as a party in interest in any proceeding on appeal. Upon the dissolution of any official committees appointed in the Chapter 11 Cases, including the Creditors' Committee, such committee members and their respective Professionals shall cease to have any duty, obligation, or role arising from or related to the Chapter 11 Cases and shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases; provided, that for the avoidance of doubt, any Claims or Causes of Action

54

asserted by the Creditors' Committee, whether direct or derivative (including any Claims seeking declaratory judgments) shall be withdrawn with prejudice and/or vest in the Debtors' Estates, to be immediately fully and indefensibly released in accordance with Section 10.6 of the Plan.

      12.18.    *Notices*.

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by electronic transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or addressed as follows:

    (a)    if to the Debtors or the Reorganized Debtors:

    Dawn Intermediate, LLC
    2451 Industry Avenue
    Doraville, GA 30360
    Attn:   Kristen McGuffey
    Email: SSBLegalDept@sertasimmons.com

    - and -

    Weil, Gotshal & Manges LLP
    767 Fifth Avenue
    New York, NY 10153
    Attn:   Ray C. Schrock
             Alexander W. Welch
    Telephone:  (212) 310-8000
    Email:  ray.schrock@weil.com
             alexander.welch@weil.com

    - and -

    700 Louisiana Street, Suite 1700
    Houston, Texas 77002
    Attn:   Gabriel A. Morgan
             Stephanie N. Morrison
    Telephone: (713) 546-5000
    Email:  gabriel.morgan@weil.com
             stephanie.morrison@weil.com

    (b)    if to the Consenting Creditors:

    Gibson, Dunn & Crutcher LLP
    200 Park Avenue
    New York, NY 10166
    Attn:   Scott J. Greenberg, Esq.
             Michael Cohen, Esq.
             Jason Zachary Goldstein, Esq.
    Telephone:  (212) 403-1000
    Email:  SGreenberg@gibsondunn.com
             MCohen@gibsondunn.com
             JGoldstein@gibsondunn.com

(c) if to the Consenting Equity Holders:

Advent International Corporation
Prudential Tower
800 Boylston Street, Suite 3300
Boston, MA 02199
Attn: Jefferson Case
      Amanda McGrady Morrison

- and -

Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036
Attn: Gregg M. Galardi
      Jeramy D. Webb
      Amanda C. Glaubach
Email: Gregg.Galardi@ropesgray.com
       Jeramy.Webb@ropesgray.com
       Amanda.Glaubach@ropesgray.com

(d) if to the Creditors' Committee

Kelley Drye & Warren LLP
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Attn: Eric R. Wilson
      Lauren S. Schlussel
      Connie Choe
Email: ewilson@kelleydrye.com
       lschlussel@kelleydrye.com
       cchoe@kelleydrye.com

(e) if to the DIP Agent:

Eclipse Business Capital LLC
333 W. Wacker Drive, Suite 950
Chicago, Illinois 60606
Attn: Jim Gurgone
Email: jgurgone@eclipsebuscap.com

- and -

Choate, Hall & Stewart LLP
Two International Place, 34th Floor
Boston, Massachusetts 02110
Attn: Kevin Simard
      Seth Mennillo
Email: ksimard@choate.com
       smennillo@choate.com

56

After the Effective Date, the Debtors have authority to send a notice to Entities providing that, to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

[*Remainder of page intentionally left blank*]

Dated: March 23, 2023
        Houston, Texas

                                              Respectfully submitted,

                                              By:    /s/    *John Linker*
                                                     Name: John Linker
                                                     Title:  Chief Financial Officer, Treasurer and Assistant Secretary

                                              On behalf of Serta Simmons Bedding, LLC
                                              and each of its Debtor affiliates

[*Signature Page for Joint Chapter 11 Plan of Serta Simmons Bedding, LLC and Its Affiliated Debtors*]

# EXHIBIT A

## GUC Recovery Allocation Table

The following aggregate recoveries are set forth for purposes of disbursements to Holders of Allowed Other General Unsecured Claims against the Debtors in accordance with Section 4.7(b) of the Plan; *provided that*, such recoveries may be reallocated among the Debtors, in their reasonable business judgement, to recalibrate for, among other things, the Claims asserted against the Debtors' Estates after the occurrence of the General Bar Date (as defined in Docket No. 104) and changes to Claim amounts through the Claims reconciliation process pursuant to Section 8.2 of the Plan.

| Debtor | Other General Unsecured Claims Recovery Pool |
| --- | --- |
| Dawn Intermediate, LLC (6123) | $0 |
| Serta Simmons Bedding, LLC (1874) | $231,558 |
| Serta International Holdco, LLC (6101) | $0 |
| National Bedding Company L.L.C. (0695) | $114,435 |
| SSB Manufacturing Company (5743) | $286,409 |
| The Simmons Manufacturing Co., LLC (0960) | $114,435 |
| Dreamwell, Ltd. (2419) | $0 |
| SSB Hospitality, LLC (2016) | $0 |
| SSB Logistics, LLC (6691) | $0 |
| Simmons Bedding Company, LLC (2552) | $114,435 |
| Tuft & Needle, LLC (6215) | $138,727 |
| Tomorrow Sleep LLC (0678) | $0 |
| SSB Retail, LLC (9245) | $0 |
| World of Sleep Outlets, LLC (0957) | $0 |
| **Total** | **$1,000,000** |

# EXHIBIT B

Restructuring Support Agreement

Case 23-90001   Document 347-16 Filed in TXSB on 03/23/23   Page 12 of 14

*EXECUTION VERSION*

**THIS RESTRUCTURING SUPPORT AGREEMENT IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE. ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE.**

## RESTRUCTURING SUPPORT AGREEMENT

This RESTRUCTURING SUPPORT AGREEMENT (as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, this "**Agreement**") dated January 23, 2023, is entered into by and among:

(a) Dawn Intermediate, LLC ("**Dawn**") and the direct and indirect wholly owned subsidiaries listed on **Exhibit A** to this Agreement (collectively, the "**Company**", and each, a "**Company Party**");

(b) the undersigned PTL Lenders holding PTL Obligations, in the aggregate, of approximately $798,524,957, comprised of holdings of FLFO Claims and FLSO Claims, each in the aggregate of approximately $157,743,576 and $640,781,381, respectively (collectively, the "**Initial Consenting PTL Lenders**," and together with any PTL Lenders that subsequently become party to this Agreement, solely in their capacity as PTL Lenders, the "**Consenting Creditors**"); and

(c) Dawn Holdings, Inc., as the sole member, and holder of interests in, Dawn; and funds managed by Advent International Corporation, as holders of Interests in Dawn Holdings, Inc. (together, "**Consenting Equity Holders**", each a "**Consenting Equity Holder**").

The Company and each Consenting Creditor, and any subsequent Person that becomes a party hereto in accordance with the terms hereof are collectively referred to herein as the "**Parties**" and each, individually as a "**Party**." Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan (as defined below). The terms of the Plan are hereby incorporated and included in the terms of this Agreement. In the event of any inconsistencies between the terms of this Agreement and the Plan, the terms of the Plan shall govern.

## RECITALS

WHEREAS, the Parties consent to (as applicable) and have agreed to consummate and support the Restructuring Transactions (as defined herein), on the terms set forth in this Agreement and as specified in the chapter 11 plan of reorganization attached as **Exhibit B** hereto (as may be amended, supplemented, or otherwise modified from time to time in accordance with the terms of this Agreement, the "**Plan**") setting forth the terms and conditions of the Restructuring Transactions; and

WHEREAS, the Company will implement the Restructuring Transactions through commencement by the Company Parties of voluntary cases under chapter 11 of the Bankruptcy Code in the Bankruptcy Court (the cases commenced, the "**Chapter 11 Cases**"); and

WHEREAS, this Agreement, including the Plan, is the product of arm's-length, good faith negotiations among the Parties and each of their respective advisors and sets forth the material terms and conditions of the Restructuring (as defined herein); and

WHEREAS, as of the date hereof, the Initial Consenting PTL Lenders, in the aggregate, hold, own, or control approximately: (i) 81% of the aggregate outstanding principal amount of FLFO Claims, and (ii) 77% of the aggregate outstanding principal amount of the FLSO Claims; and

WHEREAS, the Parties desire to express to each other their mutual support and commitment in respect of the matters set forth in this Agreement, including the Plan.

NOW, THEREFORE, in consideration of the foregoing and the covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, on a several but not joint basis, agree as follows:

1. **Certain Definitions.**

As used in this Agreement, the following terms have the following meanings:

(a) "**2020 Transaction**" has the meaning set forth in the Plan.

(b) "**Adversary Complaint**" means the complaint filed by the Debtor and certain of the PTL Lenders commencing an adversary proceeding against certain of the Non-PTL Lenders seeking a declaratory judgment to resolve the claims arising from any pending or future litigation related to the 2020 Transaction.

(c) "**Adversary Proceeding**" means the proceeding commenced by the Adversary Complaint.

(d) "**Agreement**" has the meaning set forth in the preamble to this Agreement.

(e) "**Alternative Restructuring**" means any reorganization, merger, consolidation, tender offer, exchange offer, business combination, joint venture, partnership, sale of all or any material portion of assets, financing (debt or equity), plan proposal, recapitalization, restructuring of the Company Parties, or other transaction of similar effect, other than the Restructuring.

(f) "**Apollo Action**" means that certain action commenced by AG Centre Street Partnership L.P., AG Credit Solutions Non-ECI Master Fund, L.P., AG Super Fund Master, L.P., AG SF Master (L), L.P., et al. in the Supreme Court of the State of New York, County of New York, Index No. 654181/2022.

(g) "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended.

(h) "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Texas.

2