# DEFENDANTS' EXHIBIT 342

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____ **Southern** _____ District of _____ **Texas** _____

In re _____ **Serta Simmons Bedding, LLC** _____
            Debtor

*(Complete if issued in an adversary proceeding)*

Case No. ___ **23-90020 (DRJ)** ___

_____ **Serta Simmons Bedding, LLC, et al.** _____
            Plaintiff

Chapter _____ **11** _____

v.

_____ **AG Centre Street Partnership, L.P., et al.** _____
            Defendant

Adv. Proc. No. ___ **23-9001** ___

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: _**Evercore Group L.L.C., 55 East 52nd Street, New York, NY 10055**_

*(Name of person to whom the subpoena is directed)*

■ *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| PLACE | DATE AND TIME | |
|---|---|---|
| Friedman Kaplan Seiler Adelman & Robbins LLP, 7 Times Sq., 28th Floor, New York, NY 10036 | 05/14/23 | 10:00 am |

The deposition will be recorded by this method:

**Stenographic means and videotape**

☐ *Production*: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: **April 14, 2023**

CLERK OF COURT

OR

_____                    *Blair R. Albom*
*Signature of Clerk or Deputy Clerk*            *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* **the parties listed on Schedule B, attached**, who issues or requests this subpoena, are:

Blair Albom, Friedman Kaplan Seiler Adelman & Robbins LLP, 7 Times Sq., 28th Floor, New York, NY 10036, balbom

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangi
inspection of premises before trial, a notice and a copy of this subpoena must be served on each part
the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**Exhibit**
**SHAH 0002**
Shah/Evercore/Serta

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on (*date*) _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

 My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


        I declare under penalty of perjury that this information is true and correct.

Date:  _____

                                                                    _____
                                                                                *Server's signature*


                                                                    _____
                                                                                *Printed name and title*


                                                                    _____
                                                                                *Server's address*


Additional information concerning attempted service, etc.:

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
 (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
 *(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 *(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
 *(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
 *(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  (i) disclosing a trade secret or other confidential research, development, or commercial information; or

  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 *(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 *(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 *(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 *(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 *(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
 *(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 *(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
...

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## SCHEDULE A

Pursuant to Rules 30(b)(6) and 45 of the Federal Rules of Civil Procedure, made applicable by Rules 7030 and 9016, respectively, of the Federal Rules of Bankruptcy Procedure, defendants AG Centre Street Partnership L.P., AG Credit Solutions Non-ECI Master Fund, L.P., AG SF Master (L), L.P., AG Super Fund Master, L.P., Silver Oak Capital, L.L.C., Ascribe III Investments, LLC, Columbia Cent CLO 21 Limited, Columbia Cent CLO 27 Limited, Columbia Floating Rate Fund, a series of Columbia Funds Series Trust II, Columbia Strategic Income Fund, a series of Columbia Funds Series Trust I, Contrarian Capital Fund I, L.P., Contrarian Centre Street Partnership, L.P., Contrarian Distressed Debt Fund, L.P., Gamut Capital SSB, LLC, North Star Debt Holdings, L.P., Shackleton 2013-III CLO, Ltd., Shackleton 2013-IV-R CLO, Ltd., Shackleton 2014-V-R CLO, Ltd., Shackleton 2015-VII-R CLO, Ltd., Shackleton 2017-XI CLO, Ltd., Z Capital Credit Partners CLO 2018-1 Ltd. and Z Capital Credit Partners CLO 2019-1 Ltd. (collectively, the "First Lien Lender Defendants"), by their attorneys, will take the deposition upon oral examination of non-party Evercore Group L.L.C. in the action captioned *Serta Simmons Bedding, LLC et al. v. AG Centre Street Partnership et al.*, Case No. 23-9001, pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, at the offices of Friedman Kaplan Seiler Adelman & Robbins LLP, 7 Times Square, 28th Floor, New York, NY 10036, commencing at a date and time to be agreed upon but no later than June 12, 2023, at 10:00 a.m., and continuing from day to day thereafter until completed.

The deposition will be recorded by stenographic means and by videotape before a notary public or other officer authorized to administer oaths in accordance with Rule 30(b)(6). You are invited to attend and cross-examine.

Pursuant to Rule 30(b)(6), the deponent is directed to designate one or more officers, directors, managing agents, or other individuals who are able fully and competently to

testify on its behalf concerning the Topics listed herein.  If the deponent designates more than one corporate representative, the deponent shall indicate seven (7) days prior to the deposition which representative will speak to which subject matters.  The First Lien Lender Defendants reserve the right to amend or supplement the Topics identified herein.

## DEFINITIONS

The following definitions apply solely for purposes of this Subpoena:

1.      "ABL Credit Agreement" means the ABL Credit Agreement (as amended, restated, supplemented, or otherwise modified), dated as of November 8, 2016, among Dawn Intermediate, Inc., as Holdings, Serta Simmons Bedding, LLC, as the Top Borrower, the other borrowers party thereto, the financial institutions party thereto, as Lenders, UBS AG Stamford Branch, as Administrative Agent, and UBS Securities LLC, Goldman Sachs Bank USA, Barclays Bank PLC, Deutsche Bank Securities Inc., Jefferies Finance LLC, JPMorgan Chase Bank N.A., Morgan Stanley Bank, N.A., RBC Capital Markets, and Wells Fargo Securities, LLC, as Joint Lead Arrangers and Joint Bookrunners.

2.      "Advent" means Advent International Corporation and its past or present subsidiaries, affiliates, predecessors, assigns, attorneys, agents, representatives, or other Persons acting on its behalf.

3.      "And" or "or" shall be construed conjunctively or disjunctively, whichever makes the Topic more inclusive.

4.      "Angelo Gordon" means Angelo, Gordon & Co., L.P., funds managed by Angelo, Gordon & Co., L.P., and their past or present subsidiaries, affiliates, predecessors, assigns, attorneys, agents, representatives, or other Persons acting on their behalf, including AG Centre Street Partnership L.P., AG Credit Solutions Non-ECI Master Fund, L.P., AG Super Fund Master, L.P., and AG SF Master (L), L.P.

3719193.2

5.      "Any" shall be construed as each and every.

6.      "Apollo" means Apollo Global Management, Inc., funds managed by Apollo Global Management, Inc., and their past or present subsidiaries, affiliates, predecessors, assigns, attorneys, agents, representatives, or other Persons acting on their behalf, including North Star Debt Holdings, L.P.

7.      "Bankruptcy Proceeding" means the bankruptcy proceeding captioned *In re Serta Simmons Bedding, LLC et al.*, bearing case number 23-90020, which currently is pending in the United States Bankruptcy Court for the Southern District of Texas.

8.      "Barings" means Barings LLC, funds managed by Barings LLC, and their past or present subsidiaries, affiliates, predecessors, assigns, attorneys, agents, representatives, or other Persons acting on their behalf.

9.      "Boston Management and Research" means Boston Management and Research, funds managed by Boston Management and Research, and their past or present subsidiaries, affiliates, predecessors, assigns, attorneys, agents, representatives, or other Persons acting on their behalf.

10.      "Centerview" means Centerview Partners, LLC and its past or present subsidiaries, affiliates, predecessors, assigns, attorneys, agents, representatives, directors, officers, employees, or other Persons acting on its behalf.

11.      "Chapter 11 Plan" means the Joint Chapter 11 Plan of Serta Simmons Bedding, LLC and Its Affiliated Debtors filed in the Bankruptcy Proceeding on January 23, 2023 (Dkt. No. 28), as revised on March 7, 2023 (Dkt. No. 425) and as further revised on March 23, 2023 (Dkt. No. 526).

12.      "Communication" means any transmittal of information (in the form of facts, ideas, inquiries, or otherwise) in any form, written or oral, including notes,

3

correspondence, memos, letters, emails, calendar and meeting invitations, appointment books, audio recordings of telephone calls, voicemails, instant messages, SMS messages, diaries, messages, posts, or other communications via chat platforms and applications of any kind (including but not limited to WhatsApp messages and messages sent via Bloomberg Terminal or other computer system), and posts to or through Twitter, Facebook, Instagram, and any other online forum or platform, or any other similar physical or electronic information.

13.     "Concerning" means relating to, referring to, describing, evidencing, or constituting.

14.     "Consenting Equity Holder" has the meaning assigned to such term, including any variation of such term, in the Chapter 11 Plan.

15.     "Consenting Equity Holder Fees and Expenses" has the meaning assigned to such term, including any variation of such term, in the Chapter 11 Plan.

16.     "Credit Suisse" means Credit Suisse Asset Management, LLC, funds managed by Credit Suisse Asset Management, LLC, and their past or present subsidiaries, affiliates, predecessors, assigns, attorneys, agents, representatives, or other Persons acting on their behalf.

17.     "Disclosure Statement" has the meaning assigned to such term, including any variation of such term, in the Chapter 11 Plan.

18.     "Disqualified Institution" has the meaning assigned to it, including any variation of such term, in the First Lien Term Loan Agreement and the Second Lien Term Loan Agreement.

19.     "Eaton Vance" means Eaton Vance Management, funds managed by Eaton Vance Management, and their past or present subsidiaries, affiliates, predecessors, assigns, attorneys, agents, representatives, or other Persons acting on their behalf.

4

20.     "Effective Date" has the meaning assigned to such term, including any variation of such term, in the Chapter 11 Plan.

21.     "Evercore" means Evercore Group L.L.C. and its past or present subsidiaries, affiliates, predecessors, assigns, attorneys, agents, representatives, directors, officers, employees, or other Persons acting on its behalf.

22.     "Favored Lenders" means Eaton Vance, Boston Management and Research, Invesco, Credit Suisse, and Barings, or any other Term Lender that participated in the Unlawful Exchange Transaction (each, individually, a "Favored Lender").

23.     "First Lien Intercreditor Agreement" means the First Lien Intercreditor Agreement dated as of June 22, 2020, among Dawn Intermediate, Inc., as Holdings, Serta Simmons Bedding, LLC, as the Top Borrower, the other grantors party thereto, UBS AG, Stamford Branch, as Priority First Lien Credit Agreement Collateral Agent for the Priority First Lien Credit Agreement Secured Parties and as the Priority First Lien Credit Agreement Administrative Agent, UBS AG, Stamford Branch, as the Existing First Lien Collateral Agent for the Existing First Lien Secured Parties, and as the Existing Authorized Representative, and each additional Authorized Representative and additional Collateral Agent from time to time party thereto.

24.     "First Lien Debt" means any debt issued under and held by the parties to the First Lien Term Loan Agreement.

25.     "First Lien Term Loan Agreement" means the First Lien Term Loan Agreement (as amended, restated, supplemented, or otherwise modified), dated as of November 8, 2016, among Dawn Intermediate, Inc., as Holdings, Serta Simmons Bedding, LLC, as the Top Borrower, the other borrowers party thereto, the financial institutions party thereto, as Lenders, UBS AG Stamford Branch, as Administrative Agent, and UBS Securities LLC, Goldman Sachs

3719193.2

Bank USA, Barclays Bank PLC, Deutsche Bank Securities, Inc., Jefferies Finance LLC,

JPMorgan Chase Bank N.A., Morgan Stanley Senior Funding, Inc., RBC Capital Markets, and

Wells Fargo Securities, LLC, as Joint Lead Arrangers and Joint Bookrunners.

26.     "First Lien Term Loan Amendment" means Amendment No. 1 to the First

Lien Term Loan Agreement, dated as of June 22, 2022.

27.     "Gamut" means Gamut Capital SSB, LLC funds managed by Gamut

Capital SSB, LLC, and their past or present subsidiaries, affiliates, predecessors, assigns,

attorneys, agents, representatives, or other Persons acting on their behalf.

28.     "Including" shall be construed as "including but not limited to" and shall

not limit the scope of any Topic.

29.     "Indemnification Obligation" has the meaning assigned to such term,

including any variation of such term, in the Chapter 11 Plan.

30.     "Intermediate Equity Interests" has the meaning assigned to such term,

including any variation of such term, in the Chapter 11 Plan.

31.     "Invesco" means Invesco Senior Secured Management, Inc., funds

managed by Invesco Senior Secured Management, Inc., and their past or present subsidiaries,

affiliates, predecessors, assigns, attorneys, agents, representatives, or other Persons acting on

their behalf.

32.     "Loan Document" means any agreement governing Serta's financing

activities that was executed prior to the Unlawful Exchange Transaction, and any document

defined as a Loan Document therein, including the First Lien Term Loan Agreement, the Second

Lien Term Loan Agreement, the ABL Credit Agreement, and any and all intercreditor

agreements.

6

33.   "Open Market Purchase and Cashless Exchange Agreement" means the agreement dated as of June 22, 2020 by and between Dawn Intermediate, Inc., Serta and certain other parties.

34.   "Person" means any natural person or any legal entity, including any business or governmental entity or association.

35.   "Restructuring Transactions Exhibit" has the meaning assigned to such term, including any variation of such term, in the Chapter 11 Plan.

36.   "Redemption Transaction" has the meaning assigned to such term, including any variation of such term, in the Disclosure Statement.

37.   "Reorganized Debtors" has the meaning assigned to such term, including any variation of such term, in the Chapter 11 Plan.

38.   "RSA" means the Restructuring Support Agreement initially filed in the Bankruptcy Proceeding as Exhibit B to the Disclosure Statement for Joint Chapter 11 Plan of Serta Simmons Bedding, LLC and Its Affiliated Debtors (Docket No. 29), as amended and including all exhibits thereto.

39.   "Second Lien Term Loan Agreement" means the Second Lien Term Loan Agreement (as amended, restated, supplemented, or otherwise modified), dated as of November 8, 2016, among Dawn Intermediate, Inc., as Holdings, Serta Simmons Bedding, LLC, as the Top Borrower, the other borrowers party thereto, the financial institutions party thereto, as Lenders, Goldman Sachs Bank USA, as Administrative Agent, Goldman Sachs Bank USA, UBS Securities LLC, Barclays Bank PLC, Deutsche Bank Securities, Inc., Jefferies Finance LLC, JPMorgan Chase Bank N.A., Morgan Stanley Senior Funding, Inc., RBC Capital Markets, and Wells Fargo Securities, LLC, as Joint Lead Arrangers and Joint Bookrunners.

7

40.     "Serta" means plaintiff Serta Simmons Bedding, LLC and its past or present subsidiaries, affiliates, predecessors, assigns, attorneys, agents, representatives, directors, officers, employees, or other Persons acting on its behalf.

41.     "Super-Priority Term Loan Agreement" means the Super-Priority Term Loan Agreement dated as of June 22, 2020, among Dawn Intermediate, Inc., as Holdings, Serta Simmons Bedding, LLC, as the Top Borrower, the other borrowers party thereto, the financial institutions party thereto, and UBS AG, Stamford Branch, as Administrative Agent.

42.     "Term Lender" has the meaning assigned to such term, including any variation of such term, in the First Lien Term Loan Agreement and the Second Lien Term Loan Agreement.

43.     "Transaction Support Agreement" means the Support and Standstill Agreement made as of June 8, 2020 by and between Dawn Intermediate, LLC and certain other parties.

44.     "Unlawful Exchange Transaction" means the recapitalization transaction that closed on or about June 22, 2020, including the Transaction Support Agreement, the Super-Priority Term Loan Agreement, the Open Market Purchase and Cashless Exchange Agreement, the First Lien Intercreditor Agreement, the First Lien Term Loan Amendment, and any other agreement executed to effect the Unlawful Exchange Transaction, including the RSA.

45.     "You" or "Your" refers to Evercore, as defined above.

**TOPICS FOR DEPOSITION**

1.     Your development, negotiation, and analysis of the Unlawful Exchange Transaction, and any Communications related thereto.

8

2.      Your negotiation, evaluation and analysis of any alternative proposals to the Unlawful Exchange Transaction made by any Term Lender, and any Communications related thereto.

3.      Your understanding of how Term Lenders were selected to participate in the Unlawful Exchange Transaction, including any consideration of or decision by You, Serta, Advent, Centerview or any Favored Lender regarding whether to permit Angelo Gordon, Apollo, Gamut, or any Term Lender to participate in the Transaction.

4.      Your knowledge of any effort by You, Serta, Advent, Centerview, or any Favored Lender to solicit, offer, permit, encourage, discourage, restrict, limit, or exclude the participation of any Term Lender in the Unlawful Exchange Transaction, including Your Communications with any Term Lender concerning such Term Lender's potential participation in the Unlawful Exchange Transaction.

5.      Your analysis or assessment of the impact of the Unlawful Exchange Transaction on the value of the First Lien Debt, on Serta's financial condition, valuation, or credit rating, or on the market price of loans owned by Term Lenders who did not participate in the Unlawful Exchange Transaction.

6.      Your analysis of the First Lien Term Loan Agreement, including Your understanding of the Term Lenders' right to share ratably in all payments of principal or interest on First Lien Debt, and any Communications related thereto.

7.      Your knowledge or understanding of Serta's decision to designate Angelo Gordon, Apollo, and Gamut as Disqualified Institutions at the time of the Unlawful Exchange Transaction.

8.      Your analysis of and participation or experience with any transaction or offer, other than the Unlawful Exchange Transaction, that involved modification, waiver, or

9

removal of *pro rata* sacred rights in a credit agreement or indenture, including "uptier" transactions, and Your analysis of the impact of such transactions on minority lenders.

9.      Your analysis of Serta's financial condition, including after the onset of the COVID-19 pandemic.

10.     Your analysis or assessment concerning valuation of the First Lien Debt.

11.     Your knowledge or understanding concerning any Indemnification Obligation of the Serta, and the Reorganized Debtors' ability to satisfy that Indemnification Obligation.

12.     Your knowledge or understanding of Serta's projected post-Effective Date liquidity and ability to obtain additional financing.

13.     Your knowledge or understanding concerning any transactions, payments, or other actions contemplated by the Restructuring Transactions Exhibit, and any negotiations concerning any of them.

14.     Your knowledge or understanding concerning the Chapter 11 Plan's treatment of Intermediate Equity Interests and Consenting Equity Holder Fees and Expenses, including any negotiations related to the same.

## SCHEDULE B

AG Centre Street Partnership L.P.

AG Credit Solutions Non-ECI Master Fund, L.P.

AG SF Master (L), L.P.

AG Super Fund Master, L.P.

Silver Oak Capital, L.L.C.

Ascribe III Investments, LLC

Columbia Cent CLO 21 Limited

Columbia Cent CLO 27 Limited

Columbia Floating Rate Fund, a series of Columbia Funds Series Trust II

Columbia Strategic Income Fund, a series of Columbia Funds Series Trust I

Contrarian Capital Fund I, L.P.

Contrarian Centre Street Partnership, L.P.

Contrarian Distressed Debt Fund, L.P.

Gamut Capital SSB, LLC

North Star Debt Holdings, L.P.

Shackleton 2013-III CLO, Ltd.

Shackleton 2013-IV-R CLO, Ltd.

Shackleton 2014-V-R CLO, Ltd.

Shackleton 2015-VII-R CLO, Ltd.

Shackleton 2017-XI CLO, Ltd.

Z Capital Credit Partners CLO 2018-1 Ltd.

Z Capital Credit Partners CLO 2019-1 Ltd.

3719193.2