# DEFENDANTS' EXHIBIT 430
# Part 2 of 2

that was not known by Recipient or such Representative, as applicable, to be prohibited from disclosing such information to Recipient or such Representative, as applicable, by a contractual, legal or fiduciary obligation owed to the Company; (d) was independently developed by or on behalf of Recipient not in violation of this Agreement, (e) is disclosed with the consent of the Company or (f) is obtained by Recipient or any of its Representatives through subpoena, formal legal proceedings, discovery, or other process required by law to the extent such information is obtained on a non-confidential basis. As used in this Agreement, the term "person" shall be interpreted broadly to include, without limitation, any individual, corporation, trust, group, limited liability company, partnership or other entity.

3. Recipient agrees that the Confidential Information will be used solely in connection with representing Clients in the possible Transaction and evaluation thereof, and that such information will be kept confidential, using means at least as restrictive as those used to protect its own information of similar import but in any event, no less than reasonable means, and will not be disclosed by Recipient or any of its Representatives to any third parties (including Clients), in any manner whatsoever, directly or indirectly, in whole or in part, and shall not be used, directly or indirectly, for any purpose other than in connection with representing Clients in the possible Transaction and evaluation thereof, except to the extent that such disclosure or use: (a) is made to its Representatives who need to know or use such information in connection with the Transaction and evaluation thereof (it being understood that such Representatives shall have been advised of the confidential nature of the Confidential Information); (b) is approved in writing by the Company; (c) is made to a Client that has executed, and remains bound by, a confidentiality agreement with the Company in connection with a possible Transaction (other than Confidential Information marked or identified for professionals' or attorneys' eyes only or analogous demarcation); (d) is made to any other legal or financial advisor of the Clients that has executed a confidentiality agreement with the Company that remains in effect with Company in connection with the possible Transaction; or (e) is required or requested by applicable law, duty, rule, regulation, governmental or regulatory authority or stock exchange requirements, or by legal, judicial, administrative, or regulatory process; *provided* that Recipient will, to the extent permitted by applicable law or regulation, provide the Company with prompt written notice of such request or requirement, as is reasonably practicable in the circumstances, so that the Company may seek, at the Company's sole expense, a protective order or other appropriate remedy and Recipient and its Representatives will reasonably cooperate with the Company's efforts, at the Company's sole expense, to obtain the same. With respect to clause (e), if, absent the entry of such a protective order or other judicial remedy, Recipient or such Representative is, in the advice of its counsel (including in-house counsel), requested or required to disclose Confidential Information, Recipient or such Representative may disclose only that portion of the Confidential Information that Recipient or such Representative is compelled to disclose, and will exercise commercially reasonable efforts to obtain assurance that confidential treatment will be accorded to that portion of the Confidential Information that is being disclosed. Notwithstanding anything in this Agreement to the contrary, Recipient may disclose Confidential Information without notice to the Company in connection with examinations or audits by or request of a similar nature from a governmental or banking or other financial regulatory or self-regulatory authority. Recipient agrees to be liable for any breach of this Agreement by any of its Representatives that are furnished Confidential Information (other than those Representatives that have executed a confidentiality agreement with the Company in connection with a possible Transaction) from prohibited or unauthorized disclosure or use of the Confidential Information.

4. Recipient will not, and will direct its Representatives not to, disclose to any person (other than, with respect to clauses (a), (b) and (c), Clients, and with respect to clause (d), a Client that has executed, and remains bound by, a confidentiality agreement with respect to the Confidential Information that remains in effect with Company in connection with the possible Transaction) (a) the existence of this Agreement, (b) that any Confidential Information has been requested by, or made available to, Recipient, its Representatives or any Client, (c) that discussions or negotiations are taking place concerning a

WEIL_SSBLCM_00011917
SSB_ADVERSARY00268671

possible Transaction or (d) any actual terms or conditions with respect to any possible Transaction, including the status thereof. In addition, prior to the Termination Date (as defined below), except as expressly permitted herein, none of the individuals at the Recipient or at Recipient's Representatives in each case who receive Confidential Information or are involved in discussions regarding a Transaction with the Company will knowingly communicate with any debtholder, stockholder, director, officer, employee, or agent of Company or any customer, supplier, regulator, creditor or other person having a business relationship with Company, regarding Company, Company's assets, business, operations, personnel, prospects or finances, the Confidential Information or any possible Transaction, except with the prior written permission of Company (email shall suffice). Recipient further agrees that all communication or inquiries relating to the Confidential Information or Transaction between the Company and the Recipient shall be directed to Weil, Gotshal & Manges LLP or Evercore Group L.L.C. (the "**Company Advisors**") unless agreed to in writing (email shall suffice) by the Company Advisors in advance of such communications.

    5.  Each of the Parties recognizes its responsibilities under applicable United States securities laws regarding material non-public information and has implemented reasonable policies and procedures to comply with such laws.

    6.  Promptly after being so requested in writing by the Company, Recipient shall, and shall cause its Representatives to, return to the Company or destroy, at Recipient's election, all Confidential Information, without retaining any copies, summaries or extracts thereof (unless such Confidential Information is retained in electronic form, in which case, the Recipient or its Representatives shall use reasonable commercial efforts to destroy such information). In the event of such request to return or destroy Confidential Information, all documents, analyses, compilations, studies or other materials prepared by Recipient or its Representatives that contain or reflect Confidential Information shall be destroyed and no copy thereof shall be retained (unless such Confidential Information is retained in electronic form, in which case, the Recipient or its Representatives shall use reasonable commercial efforts to destroy such information). Any Confidential Information that is not returned or destroyed, including without limitation, any oral Confidential Information, shall remain subject to the confidentiality obligations set forth in this Agreement. Notwithstanding the foregoing, Recipient and its Representatives may retain copies of Confidential Information in accordance with their internal compliance or monitoring procedures, protocols, or regulatory requirements.

    7.  Nothing in this Agreement shall preclude any of the Parties hereto from taking any action against the other Party, including, without limitation, to obtain information relating to that Party, including Confidential Information, through other lawful means, including, without limitation, in, through or in connection with any legal proceeding, by subpoena, discovery request or otherwise (collectively, a "**Legal Action**").

    8.  It is understood and agreed that money damages would not be a sufficient remedy for any breach or threatened breach of this Agreement and that the Company shall be entitled in such circumstances to specific performance and injunctive or other equitable relief as a remedy for any such breach or threatened breach, provided that the foregoing shall not waive or otherwise limit the rights of Recipient to argue that no breach or threatened breach has occurred or will occur. Such remedy or remedies shall not, however, be deemed to be the exclusive remedy or remedies for breach or threatened breach of this Agreement but shall be in addition to all other remedies available at law or equity to the Company. Recipient hereby (a) waives any requirement for the security or posting of any bond in connection with such remedies and (b) agrees to the granting of injunctive relief in the Company's favor without proof of actual damages.

WEIL_SSBLCM_00011918
SSB_ADVERSARY00268672

9. Unless extended in writing (email shall suffice) by mutual agreement of the Parties, each of the obligations of the Parties (which, for the avoidance of doubt, shall not include any Clients) under this Agreement with respect to Confidential Information shall terminate twelve (12) months from the date hereof.

10. The Parties agree that they will not be under any legal obligation of any kind whatsoever with respect to any possible Transaction by virtue of this or any written or oral expression with respect to such a transaction by any of the Parties' respective Representatives or any representatives thereof, unless and until a final and definitive agreement with respect to the Transaction has been executed and delivered. Except as may be otherwise provided in a separate written agreement executed by the Company, Recipient acknowledges, on behalf of itself and its Representatives, that neither the Company nor its Representatives makes any representations or warranties, express or implied, as to the accuracy or completeness of the Confidential Information, that neither the Company nor its Representatives shall have any liability whatsoever to Recipient or its Representatives or any other person as a result of the use of the Confidential Information or any errors therein or omissions therefrom by virtue of this Agreement, provided that such errors or omissions do not constitute intentional fraud, and that Recipient and its Representatives shall assume full responsibility for all conclusions derived from the Confidential Information.

11. This Agreement is for the benefit of each of Recipient and Company and is governed by the laws of the State of New York without regard to any conflict of laws principles thereof. Any action brought in connection with this Agreement shall be brought in the federal or state courts located in the Borough of Manhattan in the State of New York (except that in the event the Company or any of its affiliates becomes the subject of any bankruptcy cases under chapter 11 of Title 11 of the United States Code, then the presiding bankruptcy court), and the Parties hereby irrevocably consent to the jurisdiction of such courts and waive any objections as to venue or inconvenient forum. This Agreement may not be assigned by Recipient without the prior written consent of Company. This Agreement sets forth the entire agreement between the Parties as to the subject matter hereof, and none of the terms of this Agreement may be amended except in a writing signed by each of the Parties. This Agreement shall be binding on the successors and permitted assigns of each Party. No failure or delay by a Party in exercising any right hereunder or any partial exercise thereof shall operate as a waiver thereof or preclude any other or further exercise of any right hereunder. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect. This Agreement may be executed by facsimile or PDF and in counterparts, each of which shall constitute one and the same agreement.

12. Notwithstanding anything to the contrary provided elsewhere herein, the Company expressly acknowledges and agrees that neither Recipient's acceptance of Confidential Information nor the execution of this Confidentiality Agreement shall in any way restrict Recipient from being engaged or mandated by any third party, or otherwise participating or assisting with any transaction involving any other party, provided that the provisions relating to Confidential Information shall continue to apply notwithstanding such engagement.

[Signature Page Follows]

WEIL_SSBLCM_00011919
SSB_ADVERSARY00268673

IN WITNESS WHEREOF, the Company and Recipient have executed this Agreement as of the date first written above.

**Dawn Intermediate LLC**

By: */s/ Kristen McGuffey*
Name: Kristen McGuffey
Title: Executive Vice President, General Counsel and Secretary

Address for Notices:

Dawn Intermediate, LLC
2451 Industry Avenue
Doraville, GA 30360
Email: kmcguffey@sertasimmons.com

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: _____
Name: Jeffrey D. Saferstein
Title: Partner

[Signature Page to Confidentiality Agreement]

WEIL_SSBLCM_00011921
SSB_ADVERSARY00268675

## ANNEX A

Apollo
Angelo Gordon
Gamut

WEIL_SSBLCM_00011922
SSB_ADVERSARY00268676

**EXECUTION VERSION**

**CONFIDENTIALITY AGREEMENT**

This Confidentiality Agreement (this "**Agreement**") is made as of April 15, 2020, by and between Dawn Intermediate LLC, a Delaware limited liability company ("**Dawn**" and, together with its direct and indirect subsidiaries, including the Borrowers (as defined below), the "**Company**") and PJT Partners LP ("**Recipient**"), in its capacity as financial advisor to the Clients (as defined below). For purposes of this Agreement, Company and Recipient are referred to as the "**Parties**."

WHEREAS, for purposes of discussions and/or the exchange of information relating to a possible Transaction (as defined below), Company proposes to disclose to Recipient, in its capacity as financial advisor to the holders of the Company's indebtedness (the "**Lenders**") listed on **Annex A** attached hereto and such other Lenders disclosed to and acceptable to Company that Recipient may in the future represent in connection with a possible Transaction (as defined below) ("**Clients**", and together, such Clients comprise the "**Ad Hoc Group**"), each of whom is not a member of any other group of Lenders, certain information about the Company that is non-public, confidential and/or proprietary in nature (such information, including, without limitation, any reports, notes, drafts, reports, analyses, records, interpretations, summaries, projections, compilations, forecasts, data, studies or other documents prepared by Recipient or its Representatives (as defined below) containing or based on, in whole or in part, such information, "**Confidential Information**"). As used herein, "**Confidential Information**" will also include (a) the existence of this Agreement, (b) that any Confidential Information has been requested by, or made available to, Recipient, its Representatives or any Client, (c) that discussions or negotiations are taking place concerning a possible Transaction and (d) any terms or conditions with respect to any possible Transaction, including the status thereof. As used herein, "**Transaction**" means any transaction, arrangement, or series of transactions or arrangements involving the that certain First Lien Term Loan Agreement, dated as of November 8, 2016 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**"), by and among Dawn, as Holdings, Serta Simmons Bedding, LLC and the other borrowers party thereto (collectively, the "**Borrowers**") UBS AG, Stamford Branch, as administrative agent and the lenders party thereto, including any restructuring of such indebtedness or exchange of all or a portion of Company's indebtedness under the Credit Agreement, the Second Lien Credit Agreement (as defined in the Credit Agreement) and/or the ABL Credit Agreement (as defined in the Credit Agreement) or relating to the provision of additional financing or capital raising.

NOW THEREFORE, for the exclusive purpose of establishing the agreements of the Parties governing such disclosure, receipt, custody and use of Confidential Information, and in consideration of the covenants and conditions set forth herein, it is agreed as follows:

1. As a condition to Recipient receiving any Confidential Information, Recipient agrees to treat as confidential any and all Confidential Information that is furnished by or on behalf of Company to Recipient or any of its affiliates and its and their respective employees, officers, directors, members, partners, and financial advisors, in each case, in their respective capacities as such (each a "**Representative**" and collectively, the "**Representatives**").

2. The term "**Confidential Information**" does not include information that (a) is, was or becomes known by Recipient prior to its disclosure pursuant to this Agreement, <u>provided</u> that such information was not furnished to Recipient by a source known by it at the time of such disclosure to be prohibited from disclosing such information by a contractual, legal or fiduciary obligation to the Company, such as the Advisors; (b) is, was or becomes generally available to the public other than as a result of a breach of the terms of this Agreement by Recipient or any of its Representatives; (c) is, was or becomes available to Recipient or any of its Representatives on a non-confidential basis from a source

that was not known by Recipient or such Representative, as applicable, to be prohibited from disclosing such information to Recipient or such Representative, as applicable, by a contractual, legal or fiduciary obligation owed to the Company; (d) was independently developed by or on behalf of Recipient not in violation of this Agreement, (e) is disclosed with the consent of the Company or (f) is obtained by Recipient or any of its Representatives through subpoena, formal legal proceedings, discovery, or other process required by law to the extent such information is obtained on a non-confidential basis.  As used in this Agreement, the term "person" shall be interpreted broadly to include, without limitation, any individual, corporation, trust, group, limited liability company, partnership or other entity.

       3.      Recipient agrees that the Confidential Information will be used solely in connection with representing Clients in the possible Transaction and evaluation thereof, and that such information will be kept confidential, using means at least as restrictive as those used to protect its own information of similar import but in any event, no less than reasonable means, and will not be disclosed by Recipient or any of its Representatives to any third parties (including Clients), in any manner whatsoever, directly or indirectly, in whole or in part, and shall not be used, directly or indirectly, for any purpose other than in connection with representing Clients in the possible Transaction and evaluation thereof, except to the extent that such disclosure or use: (a) is made to its Representatives who need to know or use such information in connection with the Transaction and evaluation thereof (it being understood that such Representatives shall have been advised of the confidential nature of the Confidential Information); (b) is approved in writing by the Company; (c) is made to a Client that has executed, and remains bound by, a confidentiality agreement with the Company in connection with a possible Transaction (other than Confidential Information marked or identified for professionals' or attorneys' eyes only or analogous demarcation); (d) is made to any other legal or financial advisor of the Clients that has executed a confidentiality agreement with the Company that remains in effect with Company in connection with the possible Transaction; or (e) is required or requested by applicable law, duty, rule, regulation, governmental or regulatory authority or stock exchange requirements, or by legal, judicial, administrative, or regulatory process; <u>provided</u> that Recipient will, to the extent permitted by applicable law or regulation, provide the Company with prompt written notice of such request or requirement, as is reasonably practicable in the circumstances, so that the Company may seek, at the Company's sole expense, a protective order or other appropriate remedy and Recipient and its Representatives will reasonably cooperate with the Company's efforts, at the Company's sole expense, to obtain the same.  With respect to clause (e), if, absent the entry of such a protective order or other judicial remedy, Recipient or such Representative is, in the advice of its counsel (including in-house counsel), requested or required to disclose Confidential Information, Recipient or such Representative may disclose only that portion of the Confidential Information that Recipient or such Representative is compelled to disclose, and will exercise commercially reasonable efforts to obtain assurance that confidential treatment will be accorded to that portion of the Confidential Information that is being disclosed.  Notwithstanding anything in this Agreement to the contrary, Recipient may disclose Confidential Information without notice to the Company in connection with examinations or audits by or request of a similar nature from a governmental or banking or other financial regulatory or self-regulatory authority.  Recipient agrees to be liable for any breach of this Agreement by any of its Representatives that are furnished Confidential Information (other than those Representatives that have executed a confidentiality agreement with the Company in connection with a possible Transaction) from prohibited or unauthorized disclosure or use of the Confidential Information.

       4.      Recipient will not, and will direct its Representatives not to, disclose to any person (other than, with respect to clauses (a), (b) and (c), Clients, and with respect to clause (d), a Client that has executed, and remains bound by, a confidentiality agreement with respect to the Confidential Information that remains in effect with Company in connection with the possible Transaction) (a) the existence of this Agreement, (b) that any Confidential Information has been requested by, or made available to, Recipient, its Representatives or any Client, (c) that discussions or negotiations are taking place concerning a

WEIL_SSBLCM_00011924
SSB_ADVERSARY00268678

possible Transaction or (d) any actual terms or conditions with respect to any possible Transaction, including the status thereof. In addition, prior to the Termination Date (as defined below), except as expressly permitted herein, none of the individuals at the Recipient or at Recipient's Representatives in each case who receive Confidential Information or are involved in discussions regarding a Transaction with the Company will knowingly communicate with any debtholder, stockholder, director, officer, employee, or agent of Company or any customer, supplier, regulator, creditor or other person having a business relationship with Company, regarding Company, Company's assets, business, operations, personnel, prospects or finances, the Confidential Information or any possible Transaction, except with the prior written permission of Company (email shall suffice). Recipient further agrees that all communication or inquiries relating to the Confidential Information or Transaction between the Company and the Recipient shall be directed to Weil, Gotshal & Manges LLP or Evercore Group L.L.C. (the "**Company Advisors**") unless agreed to in writing (email shall suffice) by the Company Advisors in advance of such communications.

     5.    Each of the Parties recognizes its responsibilities under applicable United States securities laws regarding material non-public information and has implemented reasonable policies and procedures to comply with such laws.

     6.    Promptly after being so requested in writing by the Company, Recipient shall, and shall cause its Representatives to, return to the Company or destroy, at Recipient's election, all Confidential Information, without retaining any copies, summaries or extracts thereof (unless such Confidential Information is retained in electronic form, in which case, the Recipient or its Representatives shall use reasonable commercial efforts to destroy such information). In the event of such request to return or destroy Confidential Information, all documents, analyses, compilations, studies or other materials prepared by Recipient or its Representatives that contain or reflect Confidential Information shall be destroyed and no copy thereof shall be retained (unless such Confidential Information is retained in electronic form, in which case, the Recipient or its Representatives shall use reasonable commercial efforts to destroy such information). Any Confidential Information that is not returned or destroyed, including without limitation, any oral Confidential Information, shall remain subject to the confidentiality obligations set forth in this Agreement. Notwithstanding the foregoing, Recipient and its Representatives may retain copies of Confidential Information in accordance with their internal compliance or monitoring procedures, protocols, or regulatory requirements.

     7.    Nothing in this Agreement shall preclude any of the Parties hereto from taking any action against the other Party, including, without limitation, to obtain information relating to that Party, including Confidential Information, through other lawful means, including, without limitation, in, through or in connection with any legal proceeding, by subpoena, discovery request or otherwise (collectively, a "**Legal Action**").

     8.    It is understood and agreed that money damages would not be a sufficient remedy for any breach or threatened breach of this Agreement and that the Company shall be entitled in such circumstances to specific performance and injunctive or other equitable relief as a remedy for any such breach or threatened breach, provided that the foregoing shall not waive or otherwise limit the rights of Recipient to argue that no breach or threatened breach has occurred or will occur. Such remedy or remedies shall not, however, be deemed to be the exclusive remedy or remedies for breach or threatened breach of this Agreement but shall be in addition to all other remedies available at law or equity to the Company. Recipient hereby (a) waives any requirement for the security or posting of any bond in connection with such remedies and (b) agrees to the granting of injunctive relief in the Company's favor without proof of actual damages.

WEIL_SSBLCM_00011925
SSB_ADVERSARY00268679

9.      Unless extended in writing (email shall suffice) by mutual agreement of the Parties, each of the obligations of the Parties (which, for the avoidance of doubt, shall not include any Clients) under this Agreement with respect to Confidential Information shall terminate twelve (12) months from the date hereof.

10.     The Parties agree that they will not be under any legal obligation of any kind whatsoever with respect to any possible Transaction by virtue of this or any written or oral expression with respect to such a transaction by any of the Parties' respective Representatives or any representatives thereof, unless and until a final and definitive agreement with respect to the Transaction has been executed and delivered. Except as may be otherwise provided in a separate written agreement executed by the Company, Recipient acknowledges, on behalf of itself and its Representatives, that neither the Company nor its Representatives makes any representations or warranties, express or implied, as to the accuracy or completeness of the Confidential Information, that neither the Company nor its Representatives shall have any liability whatsoever to Recipient or its Representatives or any other person as a result of the use of the Confidential Information or any errors therein or omissions therefrom by virtue of this Agreement, provided that such errors or omissions do not constitute intentional fraud, and that Recipient and its Representatives shall assume full responsibility for all conclusions derived from the Confidential Information.

11.     This Agreement is for the benefit of each of Recipient and Company and is governed by the laws of the State of New York without regard to any conflict of laws principles thereof. Any action brought in connection with this Agreement shall be brought in the federal or state courts located in the Borough of Manhattan in the State of New York (except that in the event the Company or any of its affiliates becomes the subject of any bankruptcy cases under chapter 11 of Title 11 of the United States Code, then the presiding bankruptcy court), and the Parties hereby irrevocably consent to the jurisdiction of such courts and waive any objections as to venue or inconvenient forum. This Agreement may not be assigned by Recipient without the prior written consent of Company. This Agreement sets forth the entire agreement between the Parties as to the subject matter hereof, and none of the terms of this Agreement may be amended except in a writing signed by each of the Parties. This Agreement shall be binding on the successors and permitted assigns of each Party. No failure or delay by a Party in exercising any right hereunder or any partial exercise thereof shall operate as a waiver thereof or preclude any other or further exercise of any right hereunder. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect. This Agreement may be executed by facsimile or PDF and in counterparts, each of which shall constitute one and the same agreement.

12.     Notwithstanding anything to the contrary provided elsewhere herein, the Company expressly acknowledges and agrees that neither Recipient's acceptance of Confidential Information nor the execution of this Confidentiality Agreement shall in any way restrict Recipient from being engaged or mandated by any third party, or otherwise participating or assisting with any transaction involving any other party, provided that the provisions relating to Confidential Information shall continue to apply notwithstanding such engagement.

[Signature Page Follows]

WEIL_SSBLCM_00011926
SSB_ADVERSARY00268680

IN WITNESS WHEREOF, the Company and Recipient have executed this Agreement as of the date first written above.

**Dawn Intermediate LLC**

By: *[signature]*
Name: Kristen McGuffey
Title: Executive Vice President, General Counsel and Secretary

Address for Notices:

    Dawn Intermediate, LLC
    2451 Industry Avenue
    Doraville, GA 30360
    Email: kmcguffey@sertasimmons.com

**PJT PARTNERS LP**

By: **PJT Management, LLC, its general partner**

By: *[signature: James Baird]*  
     *Partner*
Name:
Title:

[Signature Page to Confidentiality Agreement]

WEIL_SSBLCM_00011928
SSB_ADVERSARY00268682

## **ANNEX A**

Apollo
Angelo Gordon
Gamut

WEIL_SSBLCM_00011929
SSB_ADVERSARY00268683