# EXHIBIT 1

## **PROPOSED FINDINGS OF FACT**

1. The Court should report and recommend to the United States District Court for the Southern District of Texas that the district court make the following findings of fact:

2. On November 8, 2016, Serta Simmons Bedding, LLC ("**Serta**") raised capital by entering into a First Lien Term Loan Agreement (the "**Credit Agreement**" or "**Agreement**") with a number of lenders (the "**First Lien Lenders**"). *See* Debtors' Ex. 6, ECF No. 853-6.[1]

3. That Agreement specifies in Section 2.18 that any payment by Serta on account of the loans would be made *pro rata* to all First Lien Lenders based on the face amount of ownership—meaning no First Lien Lender would receive better treatment in payment priority (the "**First Lien Loans**"). *See id*. at 81-82.

4. By March 2020, in the face of liquidity concerns occasioned by a weakening financial performance and the substantial impact of the COVID-19 pandemic, Serta began to search for refinancing alternatives that would infuse new money into the company and prevent it from defaulting on the Agreement. *See* Trial Transcript ("Tr.") at 140:4:17, 141:2-7.

5. Serta, acting with and through its advisors at Evercore Group L.L.C. and Weil Gotshal & Manges LLP, and largely directed by its private-equity sponsor, Advent International ("**Advent**"), engaged in negotiations with a substantial number of financial institutions—including Oaktree, Barings, Sixth Street, Fortress, Blue Torch Capital, Charlesbank, and an ad hoc group of lenders (hereafter, the "**Apollo Group**") affiliated with Apollo Global Management, Angelo Gordon, and Gamut Capital. *Id*. at 144:1-14; 154:12-25.

---

[1] References to "ECF No." with respect to Debtor's Exhibits refer to the docket entry in the main proceeding (No. 23-90020); references to "ECF No." with respect to Defendants' Exhibits refer to the docket entry in the adversary proceeding (No. 23-90001).

6. These firms proposed to infuse new money into the business through what is colloquially known as a "drop-down" transaction, whereby an infusion of new capital would be collateralized by the transfer of assets into a so-called unrestricted subsidiary. *Id*. at 988:10-17, 1001:18-24.

7. In such a transaction, there is no subordination (rather, there is a change to the pool of collateral securing the first lien loans), and the first lien loans remain first lien. *Id*. at 973:15–975:13.

8. In parallel, Serta and its advisors explored a different kind of transaction with an ad hoc group of existing first- and second-lien lenders represented by Gibson Dunn & Crutcher LLP and Centerview Partners LLC (hereafter, the "**PTL Lenders**"). ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

9. As the engagement lead from Centerview explained, the PTL Lenders' first term sheet contemplated that this new money financing would be backstopped by the ad hoc group but that it would be available to all first lien lenders. Tr. at 468:17-20 (discussing Defs. Ex. 64, ECF No. 248-64); 721:12-17.

10. Later, the PTL Lenders and Serta began to discuss not only providing Serta with liquidity through a new-money tranche, but also engaging in an "exchange" by which certain of Serta's first-lien and second-lien lenders would exchange their existing debt for a discount to par in return for a priming lien that would sit below the new money tranche but above Serta's then-existing first- and second-lien debt. *Id*. at 207:10-13; 555:3-24.

11. This deal encompassing both the new money and exchange tranches (hereafter, the "**Exchange Transaction**") required amendments to the Agreement. *See* Debtors' Ex. 250, ECF 857-99.

12. The PTL Lenders did not seek the approval of all lenders or otherwise to offer the deal to all lenders. 503:25–504:4.

13. On Monday, June 8, 2020, Serta publicly announced the Exchange Transaction. Tr. at 583:3-4.

14. The LCM Defendants did not participate in any discussions with Serta before June 8 regarding a potential restructuring of the Company's debt. Tr. at 237:7-19, 346-347, 501-503, 669:3-17, 765:5-14, 811-812, 846-847.

15. The LCM Defendants were not invited to participate in the transaction after it was announced on June 8. Tr. at 237:7-19, 346-347, 501-503, 669:3-17, 765:5-14, 811-812, 846-847.

16. The LCM Defendants invest in "large financings" and hold other debt. Tr. at 764:22–765:4; 669:19-24.

17. The LCM Defendants are not considered to be predatory lenders. Tr. at 764:22–765:4.

18. The Agreement stated in Section 9.02(b) that it could be amended with the approval of the "Required Lenders," and the Agreement in Section 1.01 defined the term "Required Lenders" to mean "Lenders having Loans . . . representing more than 50% of the sum of the total Loans." Debtors' Ex. 6, ECF No. 853-6 at 54.

19. The PTL Lenders who negotiated the deal with Serta prior to June 8 did not comprise 50% of lenders. Tr. at 213:4-9.

20. The PTL Lenders and Serta amended Section 1.01 of the Agreement to change the definition of "Incremental Equivalent Debt" to include new money priority term loans that could be senior in right of payment (to account for the new money tranche); and they excised Section 7.01(*l*) from the Agreement, which had previously defined any subordination of the first lien loans as an event of default (to prevent the issuance of the new loans from creating an event of default that would have accelerated repayment). *See* Debtors' Ex. 250, ECF No. 857-99 at 158, 258.

21. The PTL Lenders executed these amendments on the condition that they would no longer be parties to the Agreement, as they contemporaneously exchanged their existing debt for new, super-priority debt.

22. The "Open Market Purchase and Cashless Exchange Agreement" (*see* Debtors' Ex. 251, ECF No. 865-41), by which the PTL Lenders exchanged their existing loans for super-priority debt, and the Amendment (*see* Debtors' Ex. 250, ECF No. 857-99), by which the PTL Lenders ratified Serta's incurrence of super-priority debt, were executed by the PTL Lenders at precisely the same time, and became effective contemporaneously.

23. The Super-Priority Term Loan Agreement (the "**PTL Agreement**") says that "each Exchanging Lender (x) sold, in an open market purchase and sale transaction, its Relevant Existing Loans to [Serta] in exchange for consideration consisting of a new Class of term loans . . . as further described in the Open Market Purchase and Cashless Exchange Agreement . . . [and] (y) provided their consent to . . . Amendment No. 1 to First Lien Term Loan Agreement." Defs. Ex. 304 at 7, ECF No. 256-4 at Recitals B.

24. The Open Market Purchase and Cashless Exchange Agreement, in turn, recites that ███████████████████████████████████████████████████████████████████████████

5

███████████████████████████████████████ Debtors' Ex. 251 at 4, ECF No. 865-41.

25. Section 6 of the First Amendment then states that "[i]mmediately following" the execution of the amendment "the PTL Credit Agreement shall become effective and . . . the PTL New Money Term Loans shall be funded and the Initial PTL Exchange Transactions shall be consummated." Debtors' Ex. 250 at 4, ECF No. 857-99.

26. The PTL Lenders would not have executed the amendments if they were not simultaneously exchanging their newly minted third- or fourth-lien paper for what would now become the new, real first- and second-lien Serta debt. Tr. at 882:3-5; *id*. at 882:6-8.

## PROPOSED CONCLUSIONS OF LAW

27. The Court should report and recommend to the United States District Court for the Southern District of Texas that the district court make the following conclusions of law:

28. For the reasons described in the LCM Defendants' Post-Trial brief, filed simultaneously herewith, the PTL Lenders and Serta breached the November 8, 2016 First Lien Term Loan Agreement in effectuating the Exchange Transaction, and thus are liable to the LCM Defendants pursuant to the LCM Defendants' First Cause of Action in its April 7, 2023 counterclaims. ECF No. 146.

29. For the reasons described in the LCM Defendants' Post-Trial brief, filed simultaneously herewith, the Exchange Transaction violated the implied covenant of good faith and fair dealing, and the PTL Lenders and Serta are liable to the LCM Defendants pursuant to the LCM Defendants' Second Cause of Action in its April 7, 2023 counterclaims. ECF No. 146.

30. The PTL Lenders' and Serta's' request for a judgment declaring that the Exchange Transaction was permitted under the November 8, 2016 First Lien Term Loan Agreement is denied.

31. The PTL Lenders' and Serta's' request for a judgment declaring that the Exchange Transaction did not violate the implied covenant of good faith and fair dealing is denied.

32. The Court will separately determine the amount of damages suffered by the LCM Defendants on the above-listed claims.

33. The LCM Defendants are entitled to their reasonable attorneys' fees and expenses.