

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **SERTA SIMMONS BEDDING, LLC,** | § | **Case No. 23-90020** |
| *et al.,* | § | |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |
| -------------------------------------------------------- | § | |
| | § | |
| **SERTA SIMMONS BEDDING, LLC,** | § | **Adversary Proc. No. 23-09001** |
| *et al.,* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| **AG CENTRE STREET PARTNERSHIP,** | § | |
| *et al.,* | § | |
| | § | |
| Defendants. | § | |
| | § | |
| -------------------------------------------------------- | § | |

**NOTICE OF FILING
<u>CONFIRMATION HEARING CLOSING DEMONSTRATIVE</u>**

On May 15, 2023, a trial (the "<u>Confirmation Hearing</u>") commenced in the above-captioned

adversary proceeding and chapter 11 cases regarding the *Second Amended Joint Chapter 11 Plan*

*of Serta Simmons Bedding, LLC and Its Affiliated Debtors* [Docket No. 977] (the "<u>Plan</u>") and the

claims in the adversary proceeding.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Dawn Intermediate, LLC (6123); Serta Simmons Bedding, LLC (1874); Serta International Holdco, LLC (6101); National Bedding Company L.L.C. (0695); SSB Manufacturing Company (5743); The Simmons Manufacturing Co., LLC (0960); Dreamwell, Ltd. (2419); SSB Hospitality, LLC (2016); SSB Logistics, LLC (6691); Simmons Bedding Company, LLC (2552); Tuft & Needle, LLC (6215); Tomorrow Sleep LLC (0678); SSB Retail, LLC (9245); and World of Sleep Outlets, LLC (0957). The Debtors' corporate headquarters and service address for these chapter 11 cases is 2451 Industry Avenue, Doraville, Georgia 30360.

The Confirmation Hearing concluded with closing arguments taking place on May 25, 2023 starting at 2:00 p.m. (prevailing Central Time), at which counsel for the PTL Lenders[2] presented the demonstrative attached hereto as **<u>Exhibit A</u>**.

---

[2] References to "PTL Lenders" include both the Lender Plaintiffs-Counterclaim Defendants, as well as the Additional Counterclaim Defendants that have responded to Counterclaim Plaintiffs' counterclaims. *See* ECF Nos. 217 & 220, Adv. No. 23-9001.

Dated: May 25, 2023
Houston, Texas

Respectfully submitted,

*/s/ Gregg Costa*

GIBSON, DUNN & CRUTCHER LLP
Gregg Costa (24028160)
Samuel D. Adkisson (24131212)
811 Main Street, Suite 3000
Houston, TX 77002
Tel:    (346) 718-6600
Fax:    (346) 718-6620
Email:  gcosta@gibsondunn.com
        sadkisson@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
Scott Greenberg (admitted *pro hac vice*)
C. Lee Wilson (admitted *pro hac vice*)
Akiva Shapiro (*pro hac vice* pending)
Amanda M. Aycock (admitted *pro hac vice*)
Alexandra Perloff-Giles (*pro hac vice* pending)
200 Park Avenue
New York, NY 10166
Tel:    (212) 351-4000
Fax:    (212) 351-4035
Email: sgreenberg@gibsondunn.com
        clwilson@gibsondunn.com
        ashapiro@gibsondunn.com
        aaycock@gibsondunn.com
        aperloff-giles@gibsondunn.com

*Counsel for Plaintiffs Invesco Senior Secured
Management, Inc., Boston Management and
Research, Credit Suisse Asset Management,
LLC, Eaton Vance Management, and Barings,
LLC and Represented Additional Counterclaim
Defendants*

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 25, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and will be served as set forth in the Affidavit of Service to be filed by the Debtors' claims, noticing, and solicitation agent.

<u>  /s/ Bruce J. Ruzinsky              </u>
Bruce J. Ruzinsky

**Exhibit A**

# Serta Simmons Bedding, LLC, et al.
# v. AG Centre Street Partnership L.P., et al.

United States Bankruptcy Court Southern District of Texas
Honorable David R. Jones

## Priority Lenders' Closing Argument

Thursday, May 25, 2023

# Businesses Can Rely On

# WORDS OF CONTRACTS

# Businesses Have A Duty To

# SEEK PROFIT & PREVENT LOSS

3

# PTL Lenders' Closing Argument

| 1 | Reliance On The Words Of Contracts |
|---|---|
| 2 | Parties Understood PETs Were Possible And Permitted |
| 3 | Business Justification |
| 4 | Defendants' Arguments Fall Short |

# PTL Lenders' Closing Argument

| **1** | Reliance On The Words Of Contracts |
|---|---|
| **2** | Parties Understood PETs Were Possible And Permitted |
| **3** | Business Justification |
| **4** | Defendants' Arguments Fall Short |

# Reliance On The Words Of Contracts

## Implied Covenant Is A Narrow Doctrine

" The implied duty must arise from the contract "

*Cordero* v. *Transamerica Annuity Service Corp.,*
--- N.E.3d ---, 2023 WL 3061503, at *5 (N.Y. Apr. 25, 2023)

6

# Reliance On The Words Of Contracts

## Covenant Cannot Override Contract

> "It cannot be a breach of the implied covenant of good faith and fair dealing to do what a contract explicitly authorizes a party to do."

*JN Contemporary Art LLC* v. *Phillips Auctioneers LLC,*
507 F. Supp. 3d 490, 505 (S.D.N.Y. 2020)

7

# Reliance On The Words Of Contracts

## Especially Narrow For Sophisticated Parties

> **"**It is not the place of the Court to imply . . . a provision after the fact when sophisticated, counseled businesspeople did not explicitly include it.**"**

*Wagner* v. *JP Morgan Chase Bank,*
2011 WL 856262, at *5 (S.D.N.Y. Mar. 9, 2011)

8

# Reliance On The Words Of Contracts

## Court Ruled 2020 Transaction Is An Open Market Purchase

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| SERTA SIMMONS BEDDING, LLC, ET AL | § | CASE NO. 23-09001-ADV |
| | § | |
| | § | HOUSTON, TEXAS |
| VERSUS | § | TUESDAY, |
| | § | MARCH 28, 2023 |

> In looking at what occurred, it's very clear to me that this is what was intended by the agreements. It's what's intended by a concept of an open market purchase.

JUDICIAL TRANSCRIBERS OF TEXAS, LLC
935 Eldridge Road, #144
Sugar Land, TX 77478
281-277-5325
www.judicialtranscribers.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

JUDICIAL TRANSCRIBERS OF TEXAS, LLC

Transcript of Summary Judgment Motion Hearing 134:19–21; *see also* ECF No. 133

9

# Reliance On The Words Of Contracts

## No Absolute Right to Pro Rata Treatment: "Open Market Purchases" Expressly Carved Out

Case 23-90020

Case 23-090

**Section 2.18.**     ==Payments Generally; Allocation of Proceeds; Sharing of Payments.==

(c)     If any Lender obtains payment (whether voluntary, involuntary, through the exercise of any right of set-off or otherwise) in respect of any principal of or interest on any of its Loans of any Class held by it resulting in such Lender receiving payment of a greater proportion of the aggregate amount of its Loans of such Class and accrued interest thereon than the proportion received by any other Lender with Loans of such Class, then the Lender receiving such greater proportion shall purchase (for Cash at face value) participations in the Loans of other Lenders of such Class at such time outstanding to the extent necessary so that the benefit of all such payments shall be shared by the Lenders of such Class ==ratably== in accordance with the aggregate amount of principal of and accrued interest on their respective Loans of such Class; ==provided that== (i) if any such participations are purchased and all or any portion of the payment giving rise thereto is recovered, such participations shall be rescinded and the purchase price restored to the extent of such recovery, without interest, and ==(ii) the provisions of this paragraph shall not apply to== (A) any payment made by any Borrower pursuant to and in accordance with the express terms of this Agreement or (B) ==any payment obtained by any Lender as consideration for the assignment of or sale of a participation in any of its Loans to any permitted assignee or participant, including any payment made or deemed made in connection with Sections 2.22, 2.23, 9.02(c) and/or Section 9.05.==   Each Borrower consents to the foregoing and agrees, to the extent it may

WEIL.98674770919074339.0001

Debtors' Ex. 5 (ECF No. 853-5) § 2.18(c)

10

# Reliance On The Words Of Contracts

## No Absolute Right to Pro Rata Treatment: "Open Market Purchases" Expressly Carved Out



Debtors' Ex. 5 (ECF No. 853-5) §§ 9.02(b)(A)(6), 9.05(g)

11

# Implied Covenant Claims Are Duplicative



Covenant Claim



Contract Claim

# PTL Lenders' Closing Argument

| | |
|---|---|
| **1** | Reliance On The Words Of Contracts |
| **2** | Parties Understood PETs Were Possible And Permitted |
| **3** | Business Justification |
| **4** | Defendants' Arguments Fall Short |

# Parties Understood PETs Were Possible And Permitted



**KARN CHOPRA**

CENTER|VIEW PARTNERS

Trial Tr. 5/16 PM 199:22–200:4
(ECF No. 957)

"In 2016, we were actually just coming out of a relatively aggressive period of liability management transactions from the wave of distress in oil and gas companies. . . . The 2016 term loan had numerous borrower friendly terms that were consistent with terms being negotiated in leveraged loan market at the time."

14

# Parties Understood PETs Were Possible And Permitted



**ANDREW N. SVEEN**



"[T]he Serta credit agreement in 2016 was loose, and . . . that wasn't unusual for that time frame."

Trial Tr. 5/17 AM 96:12–14
(ECF No. 964)

15

# Parties Understood PETs Were Possible And Permitted



**MICHAEL SEARLES**



"We understood the document was fairly loose and gave the company significant flexibility with respect to a liability management transaction."

Trial Tr. 5/17 PM 35:8–11
(ECF No. 966)

16

# Parties Understood PETs Were Possible And Permitted



**PHILIP YARROW**



Trial Tr. 5/17 PM 104:8–12
(ECF No. 966)

"And when you have looser credit agreements . . . you're taking a lot more risk that if the company doesn't perform as you expect, then there's a lot more chance that you could see collateral moved away from you or the sponsor trying to leak money away from you."

# Parties Understood PETs Were Possible And Permitted



Defendants Presented No Evidence To The Contrary

# Parties Understood PETs Were Possible And Permitted



**THEO KWON**

APOLLO

Trial Tr. 5/18 AM 56:23–57:4
(ECF No. 967)

**Q.** And you concluded that the credit agreement, the 2016 credit agreement, was very loose, right?

**A.** Correct.

**Q.** And by 'loose,' you mean company friendly, right?

**A.** Company friendly with the respect to the ability to move assets and execute liability management transactions that we had seen in the market, yes.

19

# Parties Understood PETs Were Possible And Permitted



**MICHAEL HANIGAN**



Can't remember "ever focusing on 9.05(g) before buying the debt." Trial Tr. 5/18 PM 35:1–3 (ECF No. 968)

"No experience" with "open market purchase" provisions. Trial Tr. 5/18 PM 34:15–17 (ECF No. 968)

Agrees "people would have expected" a drop-down PET. Trial Tr. 5/18 PM 36:3–5 (ECF No. 968)

20

# Parties Understood PETs Were Possible And Permitted



**JACOB GLADSTONE**



Depo. Tr. 63:3–66:24
(Debtors' Ex. 372, ECF No. 941)

- No Angelo Gordon witness testified at trial

- Deposition witness not main employee on transaction

- Deposition testimony:

  Angelo Gordon proposed a PET drop-down transaction to Serta's sponsor, Advent, on March 4, 2020.

# Parties Understood PETs Were Possible And Permitted

DRAFT – FOR INTERNAL PURPOSES ONLY

 ANGELO GORDON

**Serta Simmons ("SSB") Recap**

- January 2020 • Serta Simmons • Bryce & Austin

| **Thesis** | ▪ While struggling from various industry wide factors especially mattress-in-a-box ("MiB"), the Serta and Simmons brands carry high brand awareness<br>▪ <mark>Loose credit documents may present a liability management solution</mark> anchored by IP / brand value |
|---|---|
| **Control (-):** | ▪ <mark>Weak credit agreements strip standard 1L protections</mark>; maturities in 2023 / 24 also weaken control |

Debtors' Ex. 8 (ECF No. 861-3) at 44

22

# Parties Understood PETs Were Possible And Permitted



**From:** Theodore Kwon <tkwon@apollo.com>
**Sent:** Friday, March 27, 2020 9:39 AM
**To:** David Sambur <Sambur@apollo.com>
**Subject:** Quick Serta Update

David – Just a quick update on Serta.

So far, I've connected with:

- Gamut – talked to Mike Kreger (Jordan's partner on the deal) multiple times now and we're on the same page on forming a group and advisors
- Josh at PJT – they're going to send ideas they had on Serta but they're thinking about it just like we were (want to be driving the process given loose docs but be aggressive)
- Paul Weiss – Saferstein reached out and is just waiting our direction

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

APO_SSBADVERSARY-00001533

Debtors' Exhibit No. 43
Page 1 of 2

Debtors' Ex. 43 (ECF No. 861-37) at 1

23

# Parties Understood PETs Were Possible And Permitted

## Drop-Down Group Made Similar Proposal

| | Drop-Down Proposal |
|---|---|
| Relied on the Open Market Purchase Provision | ☑ |
| Privately Negotiated | ☑ |
| Required New Credit Agreement | ☑ |
| Participation Limited | ☑ |
| Participants Prioritized in Default Scenario | ☑ |
| Debt Repurchased at Above Secondary Market Trading Price | ☑ |

# Parties Understood PETs Were Possible And Permitted

## Defendants Did Similar Deals





# Parties Understood PETs Were Possible And Permitted

**FIRST LIEN CREDIT AGREEMENT**

dated as of November 30, 2018

among

MLN TopCo Ltd.,
as Holdings,

MLN UK HoldCo Limited,
as Intermediate Holdings,

MLN US TopCo Inc.,
as U.S. Holdings,

MLN US HoldCo LLC,
as Borrower,

THE LENDERS AND ISSUING BANKS PARTY HERETO,

CREDIT SUISSE AG, CAYMAN ISLANDS BRANCH,
as Administrative Agent and Collateral Agent,

_____

CREDIT SUISSE LOAN FUNDING LLC,

BMO CAPITAL MARKETS CORP.,

and

TD SECURITIES (USA) LLC
as Joint Lead Arrangers and Joint Bookrunners,

BMO CAPITAL MARKETS CORP.,

and

TD SECURITIES (USA) LLC
as Syndication Agents,

and

FIFTH THIRD BANK,

as Documentation Agent





Debtors' Ex. 361 (ECF No. 933)

# Parties Understood PETs Were Possible And Permitted



**THEO KWON**

APOLLO

Trial Tr. 5/18 AM 123:15–24
(ECF No. 967)

**Q.** And in [Mitel], the lenders there uptiered their existing debt holdings into debt that was structurally senior through an exchange.  Right?

**A.** That's my understanding, except for the term 'structurally senior.'  Just senior. . . .

**Q.** You would agree with me that Apollo received financial benefits in the [Mitel] transaction it participated in that excluded lenders did not receive?

**A.** To my understanding, yes.

# Parties Understood PETs Were Possible And Permitted

**CREDIT AGREEMENT**

Dated as of October 11, 2018

among

**ENTERPRISE INTERMEDIATE HOLDINGS INC.,**
as Holdings,

**ENTERPRISE MERGER SUB INC.,**
as Merger Sub and, at any time prior to the consummation of the Acquisition, the Borrower,

**ENVISION HEALTHCARE CORPORATION,**
as the Company and, upon and at any time after the consummation of the Acquisition, the Borrower,

The Lenders
from Time to Time Party Hereto,
and

**CREDIT SUISSE AG, CAYMAN ISLANDS BRANCH,**
as the Administrative Agent and the Collateral Agent





Debtors' Ex. 375 (ECF No. 960)

# Parties Understood PETs Were Possible And Permitted



**THEO KWON**

APOLLO

Trial Tr. 5/18 AM 115:13–116:1
(ECF No. 967)

**Q.** With respect to Envision Apollo participated in an uptier debt exchange transaction involving Envision Healthcare.  Correct?

**A.** Correct.

**Q.** And a majority of the creditors amended the parties' existing agreements to permit issuance of new senior priming debt in that case.  Right?

**A.** As I understand, yes.

**Q.** That amendment had been negotiated with holders of a majority of Envision's first lien term loan facility.  Right?

**A.** As I – I believe so.

**Q.** And the participating lenders in that instance, including Apollo, put in new money.  Right?

**A.** Yes.  . . .

29

# Parties Understood PETs Were Possible And Permitted



Subject to and without waiver of the foregoing reservation, North Star admits and avers that, to the best of its knowledge, its participation in the Envision and Mitel Transactions, as described in North Star's Responses and Objections to Plaintiffs' Second Set of Interrogatories, complied with any covenant of good faith and fair dealing implicit in the relevant credit agreements or other documentation governing the debt involved in those Transactions.

Debtors' Ex. 360 (ECF No. 932-1) at 3

30

# Parties Understood PETs Were Possible And Permitted

IN THE UNITED STATES BANKRUPTCY C...
FOR THE SOUTHERN DISTRICT OF TE...
HOUSTON DIVISION

In re:                                                          Chap...

SERTA SIMMONS BEDDING, LLC, et al.,                Cas...

    Debtors.                                      (Joint...

SERTA SIMMONS BEDDING, LLC, et al.,

    Plaintiffs and Counterclaim Defendants,        Adve...

    v.

AG CENTRE STREET PARTNERSHIP L.P., et al.,

    Defendants, Counterclaim Plaintiffs and
    Third-Party Plaintiffs,

    v.

AGF FLOATING RATE INCOME FUND, et al.,

    Third-Party Defendants.

**RESPONSES AND OBJECTIONS OF DEFENDANT AND**
**PLAINTIFFS' JOINT SECOND SET OF INTERR...**

Pursuant to Rules 9014, 7026, and 7033 of the Federal...

Procedure, and Rules 26 and 33 of the Federal Rules of Civil Proced...

Local Rules of the United States Bankruptcy Court for the Southern D...

Rules"), defendants AG Centre Street Partnership L.P., AG Credit So...

Fund, L.P., AG SF Master (L), L.P., AG Super Fund Master, L.P., an...

L.L.C. (collectively, "Angelo Gordon"), by and through their undersi...

following responses and objections (each, a "Response and Objection...

"Responses and Objections") to the Second Set of Interrogatories to ...

Debtors' Exhibit No. 316
Page 1 of 15

### The Envision/AmSurg Transaction

In April 2022, Envision Healthcare Corporation ("Envision") designated its subsidiary AmSurg, LLC ("AmSurg") as "unrestricted" for purposes of Envision's existing indebtedness. Funds managed by Angelo Gordon (along with other lenders) loaned approximately $1.1 billion to AmSurg, LLC (the "AmSurg First Lien Facility"). At that time, certain Angelo Gordon-managed collateralized loan obligations ("CLOs") that did not participate in the new money loan owned approximately $14 million of Envision loans and sold those loans to Envision for cash at the prevailing market price at the time they agreed to the trade (a discount to par).

Also in April 2022, certain other lenders to Envision (the "AmSurg Second Lien Lenders") loaned additional amounts to AmSurg on a second lien basis. Angelo Gordon understands that the proceeds of these loans were lent by AmSurg to Envision, which in turn used the funds to repurchase Envision loans held by the AmSurg Second Lien Lenders for cash at a discount to par. Angelo Gordon did not own Envision loans at such time and did not participate in these transactions but refers to them here in the interest of full disclosure. The





Debtors' Ex. 316 (ECF No. 859-14) at 2–3

31

# Parties Understood PETs Were Possible And Permitted



Debtors' Ex. 317 (ECF No. 859-15) at 4

# PTL Lenders' Closing Argument



| 1 | Reliance On The Words Of Contracts |
| 2 | Parties Understood PETs Were Possible And Permitted |
| 3 | Business Justification |
| 4 | Defendants' Arguments Fall Short |

# Business Justification

Decisions "made for a legitimate business purpose" do not violate implied covenant.

*State St. Bank & Tr. Co.* v. *Inversiones Errazuriz Limitada*,
374 F.3d 158, 170 (2d Cir. 2004)

So long as the party acts "consistent with its rights under the contract," it may "act in its own self-interest."

*Citibank, N.A.* v. *United Subcontractors, Inc.*,
581 F. Supp. 2d 640, 646 (S.D.N.Y. 2008)

# Business Justification



**May 22, 2020 Centerview Presentation**

**1** Status Quo assumes no new money and a chapter 11 filing at the end of Q3 2020

**2a Supersenior Financing**
- Existing Ad-hoc Group provides $200mm new money financing ("Superpriority Term Loan")
- Superpriority Term Loan is senior to existing 1L Term Loan, but junior to ABL

**2b Supersenior Financing with 1L Exchange**
*Same as 2a, except:*
- $200mm of new money financing as a first out priming facility
- Assumes 50.1% of existing 1L Term Loan is exchanged into last out priming facility at 60% of par

**3a "Basket" Financing with 1L Exchange**
- Company suggesting usage of $600mm UnSub basket and $150mm non-loan party basket (subject to diligence and challenge)
  - For illustrative purposes, assumes new financing against both baskets simultaneously
- Third party receives new $525mm security at UnSub:
  - $200mm of new money
  - Exchange of $542mm in 1L TL at 60% of par into $325 of the new security

**3b "Basket" Financing with 1L/2L Exchange**
*Same as 3a, except:*
- Third party receives new $525mm security at UnSub:
  - $200mm of new money
  - Exchange of $423mm of 2L TL at 35% of par into $148mm of the new security
  - Exchange of $295mm in 1L TL at 60% of par into $177mm of the new security

Transaction Description / Assumptions

*Assumes a chapter 11 filing at the end of Q4 2021*

| | Supersenior Financing | Supersenior Financing with 1L Exchange | "Basket" Financing with 1L Exchange | "Basket" Financing with 1L/2L Exchange |
|---|---|---|---|---|
| Recovery Range %[1] | ~45% – 81% | ~64% – 84% [2] | ~13% – 70% | ~11% – 59% |
| Discount Captured | NA | $378mm | $217mm | $393mm |

Debtors' Ex. 144 (ECF No. 863-37) at 14

# Business Justification



**PHILIP YARROW**



Trial Tr. 5/17 PM 115:9–11
(ECF No. 966)

"[T]he only reason why we put that deal in front of the company was to essentially stop them from doing the Gamut transaction."

# Business Justification



**ANDREW N. SVEEN**



"But here, because we were being backed into the corner a bit and having to come up with a more—a competitive alternative, we were being forced to realize a 25-cent hit up front on our principal, and that's the part that was tough for me to swallow."

Trial Tr. 5/17 AM 117:3–7
(ECF No. 964)

# Business Justification

| | |
|---|---|
| **January 25, 2020** | Angelo Gordon and PJT begin formulating PET proposal. |
| **March 4, 2020** | Angelo Gordon proposes PET to Company's sponsor. |
| **Early – Mid-April 2020** | Rumors swirl that certain first lien lenders and third parties are negotiating with the Company to provide new money financing. |
| **April 24, 2020** | PTL Lender Group offers new money financing proposal to the Company. |
| **Mid-May 2020** | PTL Lender Group and advisors go under NDA; learn Company is seeking to delever and that other lenders are offering to sell debt at a discount. |
| **May 22-26, 2020** | PTL Lender Group analyzes effects of alternative transaction and contemplates a proposal in response. |
| **May 26, 2020** | PTL Lender Group proposes defensive PET. |
| **June 4, 2020** | After extensive negotiations, PTL Lender Group and Company agree to a transaction. |

# Business Justification



**ANDREW N. SVEEN**



Trial Tr. 5/17 AM 108:20–23
(ECF No. 964)

"I was disappointed, and primarily in the fact that we were going to have to forego so much principal in [order] to counter the other transaction to be somewhat competitive with our offering to the company."

# Business Justification

**From:** Lukkes, David <David.Lukkes@invesco.com>

**Sent:** Sunday, May 24, 2020 12:32 PM

**To:** Yarrow, Philip <Philip.Yarrow@invesco.com >; Egan, Kevin T <Kevin.Egan@invesco.com >; *NY- HYL PMS <*NY-HYLPMS@invesco.com>

**Subject:** RE: Serta Simmons Bedding, LLC - Need any IC Feedback on Potentially Putting Together a New Money/Discounted 1L Exchange into Priming Facility Proposal

Thanks Phil. Without knowing what the pricing differential looks like for a FO/LO structure versus a large super priority tranche, the exchange rates and the impact on the recovery scenarios it's a little hard to say, but my inclination is that the FO/LO structure makes more sense. As you point out, it protects our new money and at L+550/600 we need to be protected as that rate isn't overwhelmingly attractive.

Pricing- I agree it seems low, but the risk of getting our collateral taken away puts us in the position of likely having to accept something lower than we otherwise would. The FO piece (if that's the ultimate structure) will be 1x levered so it's not horrible compensation for the risks involved.

**Redact**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
Highly Confidential

LCMvSerta_Invesco_0001593
SSB_ADVERSARY00153828

**Debtors' Exhibit No. 149**
Page 1 of 6

Debtors' Ex. 149 (ECF No. 863-42) at 1

# Business Justification



**PHILIP YARROW**



Trial Tr. 5/17 PM 120:17–21
(ECF No. 966)

"I think looking at it now, we certainly did benefit, but at the time, it was really hard to say. We were taking a very large discount on our loan, and we were kind of forced to do that as a defensive measure to stop the alternative transaction, which would have, in our opinion, have been, you know, very bad for us."

# Business Justification

## As The Debt Recovered, Looked Like A Bad Decision



Debtors' Demonstrative No. 1 (ECF No. 914)

42

# Business Justification



**ANDREW N. SVEEN**



Trial Tr. 5/17 AM 127:7–9; 127:18–22
(ECF No. 964)

"I think there was plenty of time to reflect and second guess, and that was especially true in the fall, as we entered the fall and things started opening more."

\* \* \*

"Like, boy, did I pull the trigger on . . . the loss of 26 cents on the dollar, . . . and we could have got 100, we could have got our full principal back. So, at that time, there was some second-guessing."



# Counterclaim Defendants: No Evidence

## 300+ Funds

## No Evidence

Apollo Am. Answer and Counterclaims (ECF No. 148)

# PTL Lenders' Closing Argument



**1** Reliance On The Words Of Contracts

**2** Parties Understood PETs Were Possible And Permitted

**3** Business Justification

**4** Defendants' Arguments Fall Short

# Jurisdiction

# Statutory Jurisdiction

## Disputes That Impact Creditor Priority Are Core Under 28 U.S.C. § 157(b)(2)(K)

> "Fixing the order of priority of creditor claims against a debtor is an integral and historic bankruptcy function, and without this power the bankruptcy court would be rendered powerless to rehabilitate a debtor."

*In re Best Prods. Co.,*
68 F.3d 26, 31 (2d Cir. 1995)

# Constitutional Jurisdiction

*Stern* exempts claims that would necessarily be "resolved in the process of ruling on a creditor's proof of claim."

*Stern* v. *Marshall,*
564 U.S. 462, 503 (2011)

Fifth Circuit indicated that § 157(b)(2)(K) proceedings do not "encroach[]" Article III courts after *Stern*.

*In re Renaissance Hosp. Grand Prairie Inc.,*
713 F.3d 285, 294 n.12 (5th Cir. 2013)

Consent

Precedent For Transaction

# Original Parties Understood PETs Were Possible



## ANDREW N. SVEEN

**Eaton Vance**

INVOLVED IN PAR PURCHASES AT
ISSUANCE IN NOV. 2016

**Q.** And how would you have characterized the Serta credit agreement on a loose or tight scale that you mentioned?

**A.** The -- the Serta credit agreement in 2016 was loose, and the -- the -- you know, that wasn't unusual for that time frame. And you know, it was -- but that was a loose document, yes.

Trial Tr. 5/17 AM 89:1–2, 96:10–15
(ECF No. 964)



## PHILIP YARROW

**Invesco**

INVOLVED IN PAR PURCHASES AT
ISSUANCE IN NOV. 2016

**Q.** How would you characterize the 2016 credit agreement?

**A.** I would characterize it as a loose agreement.

**Q.** And what's a "loose" agreement?

**A.** One that gives the company and the sponsor quite a lot of flexibility as far as its terms are concerned, and in particular there's quite large baskets for making investments or making restricted payments or adding additional debt.

Trial Tr. 5/17 PM 102:13–14,
103:6-13 (ECF No. 966)

# Apollo Diligences The Possibility Of This PET



## Serta Simmons Update

- Fund IX has invested $86 million at cost to purchase $192 million of Serta's 1st Lien Term Loans (average price of 45), which represents 10% of the 1L class
- As discussed previously, Serta reached out to various lenders for a $200 million new money and liability management transaction to opportunistically capture debt discount
- Fund IX grouped together w[...]                    TBU                    [...]wns 31% of the 1st Lien class)
- However, despite making si[...]group, the Company agreed to a deal with a cross-holder gr[...]ans
  - Group is led by Eaton Va[...]
  - We believe that the grou[...]dinate all other lenders

Proposed transaction
  - New Money Tranche: $2[...]
  - Exchange Tranche: $875[...]
    - Delivers $410 million[...]
  - Fund IX's position would be subordinated in the waterfall by the new $1,075 million super-senior debt
  - A transaction support agreement is in place with 51% of creditors but definitive documents have not yet been finalized
- ==This specific risk of amending the waterfall with a majority was extensively diligenced with Paul Weiss during the original distressed debt underwriting and during this current transaction process==

Debtors' Ex. 261 (ECF No. 889-2) at 2

51

# Components Of The Transaction Well Known To The Market

▶ Priming Debt

▶ Debt Repurchases

▶ Limited Participation

▶ Amendments by Required Lenders

# Components Of The Transaction Well Known To The Market

"And while we never actually engaged in a transaction that had all the exact components, the different components apart have certainly been utilized."

Sveen, Trial Tr. 5/17 AM 124:14-18 (ECF No. 964)

"Open market purchases [were] very commonplace in transactions and in credit agreements and have been for many years. And these different components all existed."

Sveen, Trial Tr. 5/17 AM 124:19-21 (ECF No. 964)

"Yeah, I've seen a transaction structure like this before. Every transaction is unique and so I've never seen a transaction identical to another one in my career, but there have been transactions that have been similar in certain aspects to this one."

Searles, Trial Tr. 5/17 PM 47:13-17 (ECF No. 966)

"I don't think it was inconsistent with what we've seen prior and what you might expect."

Meiering, Trial Tr. 5/17 PM 81:9-11 (ECF No. 966)

"Q. Had you seen transactions like the one you ultimately entered into with Serta before?
A. Certainly ones with similar components."

Yarrow, Trial Tr. 5/17 PM 119:14-16 (ECF No. 966)

"And generally speaking, the transaction that we consummated had component pieces that everyone was very familiar with. I had worked on a number of superpriority financings in other instances. So it was pretty commonplace in the marketplace."

Chopra, Trial Tr. 5/16 PM 200:5-9 (ECF No. 957)

# No Bad Faith

# June 4 UBS Letter Is A Red Herring



**KARN CHOPRA**

CENTERVIEW PARTNERS

Trial Tr. 5/17 AM 71:18–24,
72:25–73:4 (ECF No. 964)

**Q.** Was it possible that whatever proposal the Angelo Gordon and Apollo, Gamut group was making, might have violated the terms of the credit agreement?

**A.** It is.

**Q.** But you didn't know, because you didn't know the terms, correct?

**A.** Correct.

\* \* \*

**Q.** In your view, is there anything inappropriate about sending a letter to make sure that the agent for the lenders focuses on whether a particular transaction is compliant with the terms of the credit agreement?

**A.** No.

55

# Defendants Offer PTL Lenders $30 Million To Abandon Deal With Company

Case 23-90020   Document 865-5 *SEALED*   Filed in TXSB on 05/12/23   Page 1 of 6

**From:** David Sambur <Sambur@apollo.com>
**Sent:** Sat, 6 Jun 2020 16:12:58 -0400 (EDT)
**To:** "Evarts, William" <Evarts@pjtpartners.com>
**Cc:** "Cajigas, Daniel" <cajigas@pjtpartners.com>; "Midha, Ashim"<Midha@pjtpartners.com>; Theodore Kwon <tkwon@apollo.com>; Jordan Zaken<zaken@gamutcapital.com>; Ryan Mollett <rmollett@angelogordon.com>; "Greg Ezring" <gezring@paulweiss.com>; Bryce Fraser <BFraser@angelogordon.com>; Michael Kreger <kreger@gamutcapital.com>; Matthew Manin <mmanin@apollo.com>; David Cheon <dcheon@apollo.com>; Lauren Heller <lheller@apollo.com>; "Brendan McCaffrey" <BMcCaffrey@angelogordon.com>; Austin Kaplan<AKaplan@angelogordon.com>; Michael Hanigan <hanigan@gamutcapital.com>; "Ryan Brady" <Brady@gamutcapital.com>; Mark Bernstein<MBernstein@angelogordon.com>; Project Serial<ProjectSerial@pjtpartners.com>; "Hermann, Brian S"<bhermann@paulweiss.com>; "Janson, Brian M" <bjanson@paulweiss.com>; "Jeffrey Saferstein" <jsaferstein@paulweiss.com>; "Clayton, Lewis R"<lclayton@paulweiss.com>; "Perrin, Andrew" <aperrin@paulweiss.com>; "Witt, Austin" <awitt@paulweiss.com>; Andrew Ehrlich <aehrlich@paulweiss.com>; "Baird, Jamie" <Baird@pjtpartners.com>; "Christopher D. Moore" <cmoore@angelogordon.com>
**Subject:** Re: [External] RE: [Serta] Group Call

Spoke with Evercore

They have a 3 page term sheet that will take 2 weeks to get documented
The person on the call said '1 have no idea why they would have told you that you lost with 2 weeks left to document the deal'
Between now and then the board has a fiduciary obligation to review any superior proposal
Roepsith last given PJT guidance on the other deal, so we know what we are shooting for
Dan can help guide us before we propose something

On Jun 6, 2020 at 2:01 PM, Evarts, William <Evarts@pjtpartners.com> wrote:

Updated version below.

1.   Advent has played our two groups off of each other and continues to do so
a.   We concede that the Gibson/Centerview group has outmaneuvered our group
b.   However, we don't want to let Advent be the winners
c.   We are concerned about two outcomes:
          i.   [Race to the bottom – while we would rather not, we are being encouraged / are being forced to underbid you]
          ii.   Litigation – risk that any transaction will result in significant litigation for all parties involved
2.   Outline of offer

CONFIDENTIAL                              PJT_SSBADVERSARY-00001183

**Debtors' Exhibit No. 212**
**Page 1 of 6**

---

On Jun 6, 2020, at 2:01 PM, Evarts, William <Evarts@pjtpartners.com> wrote:

1.   Advent has played our two groups off of each other and continues to do so

a.   We concede that the Gibson/Centerview group has outmaneuvered our group

b.   However, we don't want to let Advent be the winners

c.   We are concerned about two outcomes:

          i.   [Race to the bottom – while we would rather not, we are being encouraged / are being forced to underbid you]

          ii.   Litigation – risk that any transaction will result in significant litigation for all parties involved

2.   Outline of offer

a.   We will sign a lock-up that ties us all together that Gibson can draft

          i.   The group will only pursue transactions that treat all parties the same and are supported by the group

          ii.   We wait to properly restructure this business

b.   **Payment to Gibson/Centerview Group. Option:**

          i.   Ad Hoc Group purchase of $200mm of face value at 65 cents, or

          ii.   $30 million fee paid directly to ad hoc group members

Debtors' Ex. 212 (ECF No. 866-5)

56

# Participation Limited For Economic Reasons



**KARN CHOPRA**

CENTER|VIEW PARTNERS

Trial Tr. 5/16 PM 178:14–179:3
(ECF No. 957)

"So we felt the need to offer the discount. The only way that you would be comfortable as a lender in conceding discount and crystalizing that discount and not having the ability to earn it back over time is if you were getting a quid pro quo.

The quid pro quo was to be moved into an instrument that, as I said, we would trade better or hopefully recover better in a down side scenario. So in order to do that, you needed to limit the size of the instrument you were exchanging it to.

And by definition, the way to limit the size of that instrument was to limit the participation level. So, unfortunately, the only way to offer the company the discount and really to work the alternative would be to convert, which was being pursued by other lenders at your expense was to limit the size of the [FLSO]…"

# 2020 Indemnity

# Indemnity In The 2020 Agreement Was Reasonable



**THEO KWON**

Indemnification provisions for the benefit of lenders are "standard in the industry"

APOLLO

Depo. Tr. 119:9–13
(Debtors' Ex. 374, ECF No. 941-2)



**PHILIP YARROW**

"[W]e were already being sued and so we wanted to have some protection about this around that."



Trial Tr. 5/17 PM 116:25–117:1
(ECF No. 966)

# Indemnity: Identical To Angelo Gordon's Envision-AmSurg Transaction

## PTL Credit Agreement

order, preliminary injunction or any similar request for relief); **provided** that such indemnity shall not (i) (A) as to any Indemnitee, be available to the extent that any such loss, claim, damage, or liability is determined by a final and non-appealable judgment of a court of competent jurisdiction (or documented in any settlement agreement referred to below) to have resulted from the gross negligence, bad faith or willful misconduct of such Indemnitee or (B) as to any Indemnitee (other than the Administrative Agent), be available to the extent such judgment finds (or any such settlement agreement acknowledges) that any such loss, claim, damage, or liability has resulted from such Person's material breach of the Loan Documents ==(excluding, in each case, for the avoidance of doubt, any Indemnitee's participation in the Exchange Transactions and the Transactions)== or (ii) as

UBS AG, STAMFORD BRANCH
as Administrative Agent

Confidential
Confidential

SSB_LCM_00002024
SSB_ADVERSARY00002024

**Debtors' Exhibit No. 252**
**Page 1 of 558**

*Execution Version*

CREDIT AGREEMENT

Dated as of April 29, 2022

among

ENTERPRISE INTERMEDIATE HOLDINGS INC.,

ENVISION HEALTHCARE CORPORATION,

AMSURG HOLDCO, LLC,

AMSURG, LLC,
as the Borrower,

The Lenders
from Time to Time Party Hereto,

and

ALTER DOMUS (US) LLC,
as the Administrative Agent and the Collateral Agent

## Envision/AmSurg Agreement

**provided** that AmSurg Holdings and the Borrower shall have no obligation hereunder to any Indemnified Person with respect to Indemnified Liabilities to the extent arising from (i) the gross negligence or willful misconduct of such Indemnified Person or any of its Related Parties as determined in a final and non-appealable judgment of a court of competent jurisdiction ==(excluding, in each case, for the avoidance of doubt, arising from any Indemnified Person's participation in the Transactions)==, (ii) except with respect to the

Debtors' Ex. 252 (ECF No. 865-42) § 9.03(b); Debtors' Ex. 359 (ECF 889-5) §13.5(a)(iii)

# LCM's Arguments Fall Short

# Amend And Exit

**1** Attempt to retry the failed breach of contract claim

**2** All amendments were made with Required Lenders

## *Murray Energy*

▸ Rejected "Zombified Votes" theory

▸ Held that there was "no merit" to the argument that superpriority lenders lacked authority to enter into an amendment because they had committed to sell back their loans

*In re Murray Energy Holdings Co.*, 616 B.R. 84, 98 (Bankr. S.D. Ohio 2020)

# To Sum Up

